Mark Selwyn (SBN 244180)
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

William F. Lee
Joseph J. Mueller
Mark A. Ford
Timothy Syrett
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

*Attorneys for Non-Party Intel Corporation*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION<br><br>            Plaintiff,<br><br>    v.<br><br>QUALCOMM INCORPORATED,<br>a Delaware corporation,<br><br>            Defendant. | Case No. 5:17-cv-00220-LHK<br><br>**NON-PARTY INTEL CORPORATION'S MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR ENTRY OF SUPPLEMENTAL PROTECTIVE ORDER**<br><br>Date: June 28, 2017<br>Time: 1:00pm<br>Courtroom: 7, 4th Floor<br>Hon. Nathanael M. Cousins |

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL BACKGROUND ....................................................................................2

        A.      Intel's Production of Highly Confidential and Competitively-Sensitive
                Documents to Federal Trade Commission ............................................2

        B.      Protective Order Provisions Applicable to Intel Information.................3

III.    ARGUMENT .........................................................................................................4

        A.      Qualcomm's In-House Counsel Should Not be Granted Access to
                Intel's Highly Confidential Information Because the Risk of Disclosure
                of Such Information Outweighs In-House Counsel's Need for the
                Information ..................................................................................................5

                1.      Disclosure of Intel's Highly Confidential Information to Qualcomm In-
                        House Counsel Poses Great Risk of Harm to Intel ...............................6

                2.      Intel's Status as a Non-Party to this Antitrust Enforcement Action
                        Weighs Against Disclosure to Qualcomm In-House Counsel...............10

                3.      Qualcomm's Ability to Litigate Will Not be Prejudiced if Access to
                        Intel's Confidential Information is Limited to Outside Counsel ...........11

        B.      The Appropriateness of Barring In-House Counsel Access to
                Confidential Information Has Been Recognized by the Court and by
                Qualcomm ........................................................................................................12

                1.      This Court Has Entered Protective Orders Barring In-House Counsel
                        Access to Confidential and Competitively-Sensitive Information.........12

                2.      Qualcomm Has Opposed Disclosure of Confidential Information to In-
                        House Counsel, Particularly When it is a Non-Party ...........................12

IV.     CONCLUSION ......................................................................................................14

Page(s)

**Cases**

*A. Hirsh, Inc. v. United States*,

    657 F. Supp. 1297 (Ct. Int'l Trade 1987) ...................................................................11

*Adaptix v. Dell,* No. 14-01259 (N.D. Cal. Sep. 8, 2014),

    2015 WL 12839125 ................................................................................................ 13, 14

*Adkins v. Apple*, No. 14- 01619 (N.D. Cal. Jan. 27, 2015),

    Dkt. No. 127 ...........................................................................................................12

*Adobe Sys. v. Davachi,*

    2011 U.S. Dist. LEXIS 71296 (N.D. Cal. July 1, 2011) ................................................6

*Apple Inc. v. Samsung Elecs. Co.,*

    2012 U.S. Dist. LEXIS 49201 (N.D. Cal. Jan. 30, 2012) ............................................12

*Apple Inc. v. Samsung Elecs. Co.,*

    2013 WL 3958232 (N.D. Cal. July 29, 2013) ............................................................2

*Brown Bag Software v. Symantec Corp.*,

    960 F.2d 1465 (9th Cir. 1992) ......................................................................... 6, 9, 13

*Clark v. Bunker,*

    453 F.2d 1006 (9th Cir. 1972) .....................................................................................2

*FastDO v. AT&T Mobility*, No. 16-00385 (S.D. Cal. Jun. 28, 2016),

    Dkt. No. 146 ...........................................................................................................13

*Fed. Trade Comm'n v. Qualcomm Incorporated Complaint,*

    Dkt. No. 1 ..............................................................................................................7, 9

*Fed. Trade Comm'n v. Foster*,

    2007 U.S. Dist. LEXIS 55163 ..................................................................................11

*In re High-Tech Emp. Antitrust Litig.,*

    2013 WL 5486230 (N.D. Cal. Sept. 30, 2013) ..........................................................2

*In Re: Viagra (Sildenafil Citrate) Prod. Liab. Litig.*, No. 16-02691, MDL No.

2691 (N.D. Cal. May 3, 2016), Dkt. No. 471...............................................12

*Intel Corp. v. VIA Techs., Inc.*,

198 F.R.D. 525 (N.D. Cal. 2000) ............................................................6, 11

*Kaseberg v. Conaco*,

2016 U.S. Dist. LEXIS 97581 (S.D. Cal. July 26, 2016) ................................ 5

*Paul v. Intel Corp. (In re Intel Corp. Microprocessor Antitrust Litig.)*,

2007 U.S. Dist. LEXIS 103979 (D. Del. May 18, 2007)............................10

*Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*,

307 F.3d 1206 (9th Cir. 2002)................................................................... 5

*Pinterest, Inc. v. Pintrips, Inc.*,

2014 U.S. Dist. LEXIS 149497 (N.D. Cal. Oct. 21, 2014)........................... 6

*Qualcomm v. Broadcom*, No. 05-1392 (S.D. Cal. Feb. 4, 2006),

Dkt. No. 48 ..............................................................................12, 13

*Qualcomm v. Broadcom*, No. 05-1392 (S.D. Cal. May 3, 2006),

Dkt. No. 125 ............................................................................13, 14

*Rivera v. NIBCO, Inc.*,

384 F.3d 822 (9th Cir. 2004)..................................................................... 5

*Tech. Properties v. Barnes & Noble*, No. 12-03863 (N.D. Cal. July 8, 2015),

Dkt. No. 146 .................................................................................... 13

*United States v. Dentsply Int'l, Inc.*,

187 F.R.D. 152 (D. Del. 1999)..................................................................10

*U.S. Steel v. United States*,

730 F.2d 1465 (Fed. Cir. 1984) ................................................................. 3

**Rules**

Fed. R. Civ. P. 26(c) .............................................................................1, 5, 14

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 28, 2017 at 1:00pm, in Courtroom 7, 4th Floor, United States District Court for the Northern District of California, San Jose Courthouse, 280 South 1st Street, San Jose, CA 95113, Non-Party Intel Corporation ("Intel") shall and hereby does move for entry of a supplemental protective order governing the production of the highly confidential information of Intel to Qualcomm Inc. ("Qualcomm). This motion is supported by the following Memorandum of Points and Authorities and such other written or oral argument as may be presented at or before the time this motion is taken under submission by the Court.

## STATEMENT OF RELIEF REQUESTED

Pursuant to Federal Rule of Civil Procedure 26(c), and §§ 5.4(b) and 10.1 of the entered Protective Order, Intel seeks entry of the Supplemental Protective Order Governing Production of Non-Party Intel Corporation's Protected Materials, attached hereto as Exhibit A.[1]

## STATEMENT OF ISSUES TO BE DECIDED

Whether good cause exists to deny in-house counsel of Qualcomm access to "INTEL HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY" Information or Items because the risk of harm posed by disclosure of such information outweighs Qualcomm's need for in-house counsel to access such information.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 26(c), and §§ 5.4(b) and 10.1 of the entered Protective Order, Intel Corporation brings this motion for entry of a supplemental protective

---

[1] Although Intel, Qualcomm, and the Federal Trade Commission have agreed on a number of the terms contained in Intel's Proposed Supplemental Protective Order, Qualcomm and Intel have reached an impasse with respect to other terms—notably Qualcomm in-house counsel's access to Intel's "HIGHLY CONFIDENTIAL" material. Exhibit B is an alternative Proposed Supplemental Protective Order that contains only terms to which Intel and the Parties have agreed. But to be clear, Intel does not believe Exhibit B is sufficient protection for its most sensitive information, and respectfully requests that the Court enter the proposed protective order at Exhibit A for the reasons stated herein.

order to govern any discovery from Intel in this matter. Because Intel is a direct competitor to Qualcomm and the claims in this case center on Qualcomm's licensing conduct, contractual terms with customers, and other actions that necessarily involve Qualcomm's in-house counsel, disclosure of Intel's highly confidential information to Qualcomm's in-house counsel would cause undue risk to Intel. Accordingly, Intel seeks a supplemental protective order that would safeguard its highly confidential information from in-house counsel—while still providing the Federal Trade Commission and Qualcomm's outside counsel with access to such information, enabling full and fair adjudication of any merits issues to which Intel's materials may be relevant.

## II.  FACTUAL BACKGROUND

### A.  Intel's Production of Highly Confidential and Competitively-Sensitive Documents to Federal Trade Commission

On November 5, 2014, the Federal Trade Commission ("FTC") requested that Intel cooperate with its investigation into whether Qualcomm or its affiliates had engaged in unfair methods of competition. The FTC requested that Intel produce certain categories of documents voluntarily, in lieu of compulsory process. Intel complied with this request. On April 29, 2015, Intel received a subpoena from the FTC, requiring production of additional documents related to the FTC's investigation of Qualcomm. Intel complied with this subpoena and produced some 23,533 documents in rolling productions over the summer and fall of 2015. Intel has produced to the FTC numerous highly confidential and competitively-sensitive documents containing business and trade secrets.[2] These documents evidence, e.g., Intel's negotiations with customers, Intel's licenses with third parties for certain standard essential patents ("SEPs"),

---

[2] The Ninth Circuit has adopted the definition of "trade secret" as set forth in the Restatement of Torts, holding that a trade secret "may consist of any formula, pattern, device or **compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.**" *In re High-Tech Emp. Antitrust Litig.*, No. 11-02509, 2013 WL 5486230, at *1 (N.D. Cal. Sept. 30, 2013) (citing *Clark v. Bunker*, 453 F.2d 1006, 1009 (9th Cir. 1972)) (emphasis added); *see also Apple Inc. v. Samsung Elecs. Co.,* No. 11-01846, 2013 WL 3958232, at *3 (N.D. Cal. July 29, 2013).

pricing information, strategic planning documents, sales forecast documents, and technical information regarding Intel's products.

**B.      Protective Order Provisions Applicable to Intel Information**

On May 1, 2017, the Court entered the Protective Order Governing Confidential Material in the above-captioned case, to which Qualcomm and the Federal Trade Commission ("FTC"), had stipulated.  Docket No. 81 (the "Protective Order").  Intel, as a non-party to this ligation, was not involved in negotiations regarding the terms of the Protective Order and was not afforded an opportunity to provide input or comment prior to its entry.  On May 4, 2017, the FTC notified Intel that Qualcomm has requested production of Intel's information submitted to the FTC during the Commission's pre-complaint investigation.

Pursuant to § 5.4(b) of the Protective Order, Intel may designate its produced materials as "CONFIDENTIAL" or "HIGHLY-CONFIDENTIAL – ATTORNEYS' EYES ONLY." Under the current terms, Intel's information designated "CONFIDENTIAL" may be freely disclosed to Qualcomm "House Counsel," defined as five Qualcomm attorneys listed in Exhibit B to the Protective Order,  who are  not involved in competitive decision-making as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), to whom Qualcomm deems disclosure is "reasonably necessary" for this litigation, and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A to the Protective Order), as well as their support staff, provided that such support staff are not involved in competitive decision-making and have signed Exhibit A to the Protective Order.  Protective Order § 7.2(b).  No additional procedures must be followed for the disclosure of Intel's "CONFIDENTIAL" information.

Intel's information designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" may be disclosed to "Designated House Counsel," following a written request from the party seeking disclosure that provides additional information about the identities and job responsibilities of House Counsel and identifies the specific information the party seeks to disclose.  *Id*. §§ 7.3(b), 7.4.  The default presumption of the Protective Order is that the information may then be disclosed, "unless, within 14 days of delivering the request, the Party

receives a written objection from [Intel]." The Protective Order then directs the parties to meet and confer, and provides that the issue of disclosure may be brought before this Court on motion practice. The Protective Order contemplates that this practice will occur *each* time Non-Party Intel objects to a request for its "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" to be shared with Qualcomm House Counsel.

Pursuant to § 5.4(b) of the entered Protective Order, Intel may seek a protective order from this Court regarding the FTC's production of its confidential information. Section 10.1 of the Protective Order provides that "nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections."

## III. ARGUMENT

The Protective Order does not adequately protect Intel's information designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," including by imposing on Intel the obligation to continually seek protection of its most sensitive confidential information from review by Qualcomm's in-house counsel. Intel seeks entry of the Supplemental Protective Order Governing Production of Non-Party Intel Corporation's Protected Materials, attached hereto as Exhibit A, to provide further safeguards for Intel's information designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY"—most significantly, by precluding access by Qualcomm's in-house counsel.[3] As explained below, the highly sensitive nature of this information, the fact that Intel is not a party to this litigation, and Qualcomm's ability to litigate the merits without in-house access to Intel trade secrets and other sensitive materials, justify imposing a bar on such information being provided to Qualcomm's in-house counsel—rather than imposing the burden on Intel to repeatedly seek protection of such information from the Court. To the extent truly exceptional circumstances required Qualcomm's in-house counsel having access to such materials—which Intel cannot presently envision—Qualcomm could seek

---

[3] Intel's Proposed Order also provides additional modest protections—such as restricting the access of jury or trial consultants and mock jurors to Intel "HIGHLY CONFIDENTIAL" information, requiring Intel's consent to disclose such information in an open hearing, and establishing criteria and conditions for witness access to such information—intended to limit the unnecessary dissemination of Intel's sensitive business secrets.

an exception to this bar at the appropriate time. But Intel respectfully submits that in the absence of such exceptional circumstances, an in-house bar should apply.

As legal context, under Federal Rule of Civil Procedure 26(c), "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is." The party seeking a protective order bears the burden of establishing good cause, which is established by demonstrating that disclosure will cause a "specific prejudice or harm." *See Rivera v. NIBCO, Inc.*, 384 F.3d 822, 827 (9th Cir. 2004); *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211-12 (9th Cir. 2002). "'If a court finds particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary.'" *Kaseberg v. Conaco*, 2016 U.S. Dist. LEXIS 97581, at *35-36 (S.D. Cal. July 26, 2016) (quoting *Rivera v. NIBCO*, Inc. 364 F.3d 1057, 1063-64 (9th Cir. 2004)).

The parties have acknowledged that good cause exists to prevent disclosure to the public of the confidential information produced in this action, Protective Order § 1, and Intel submits that good cause also exists to protect Intel's highly confidential information from disclosure to Qualcomm's in-house counsel, for the following reasons: (A) the risk to Intel of Qualcomm in-house access outweighs any benefit to Qualcomm—Qualcomm's outside counsel can ably represent Qualcomm's interests; and (B) both this Court and Qualcomm itself have recognized, in other cases, the need to place stringent limits on in-house counsel's access to highly sensitive information like Intel's materials here. Again, to the extent that Qualcomm later identifies discrete information for which it believes it has a compelling need to disclose to in-house counsel, it could raise such an argument at the appropriate time. Intel asks, however, that the general rule be a bar on in-house access to Intel's information designated "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY."

### A. Qualcomm's In-House Counsel Should Not be Granted Access to Intel's Highly Confidential Information Because the Risk of Disclosure of Such Information Outweighs In-House Counsel's Need for the Information

When evaluating whether in-house counsel should be granted access to confidential information, courts must weigh the risk of harm to the disclosing party against the requesting

party's need for in-house counsel to view the information to adequately present its claims or defense. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992). In so doing, courts should consider the nature of the claims and of a party's opportunity to develop its case through alternative discovery procedures. *Id.* Here, Intel is a direct competitor to Qualcomm, and the conduct at issue focuses on licensing conduct, contractual agreements, and other actions that necessarily involve Qualcomm's in-house legal department. In these circumstances, disclosure of highly confidential competitor information to individuals within Qualcomm's legal department creates significant risk of harm to Intel. In contrast, Qualcomm can effectively litigate this case without in-house access; Qualcomm is represented by experienced outside counsel who will have full access to such information and can advise Qualcomm as to its implications. In sum, the balance of interests weighs against disclosure to Qualcomm's in-house counsel.

### 1. Disclosure of Intel's Highly Confidential Information to Qualcomm In-House Counsel Poses Great Risk of Harm to Intel

This Court has recognized that "[t]he concern for inadvertent disclosure is particularly acute where the party seeking access to the information is a direct competitor." *Pinterest, Inc. v. Pintrips, Inc.,* 2014 U.S. Dist. LEXIS 149497, at *8 (N.D. Cal. Oct. 21, 2014) (finding it appropriate to bar an in-house counsel's access where companies were direct competitors and counsel had a substantial role on the legal team, control over intellectual property, influence over whether the company pursued litigation against another business, and played an advisory role on product teams) (citing *Adobe Sys. v. Davachi*, 2011 U.S. Dist. LEXIS 71296, at *5 (N.D. Cal. July 1, 2011)); *see also Intel Corp. v. VIA Techs., Inc.,* 198 F.R.D. 525, 529 (N.D. Cal. 2000) (noting that even a seemingly insignificant risk of disclosure cannot be ignored due to the threat of significant potential injury, [and] the potential injury is great when the information could be used to duplicate products, compete for customers, or interfere with the producing party's business plan and thereby gain a competitive advantage in the marketplace). Here, Intel would be placed at a significant risk of injury, given (1) the competitive relationship between

Intel and Qualcomm, and (2) the nature of the claims in this case, which implicate legal issues and strategy in which Qualcomm's in-house counsel necessarily are involved.

**First**, Intel and Qualcomm are direct competitors in the cellular baseband processor market, and Intel is Qualcomm's only remaining competitor in the premium LTE chipset market for sales to third party OEM handset makers. *See* Compl. ¶¶ 130, 139. As such, any harm to Intel's premium chipset business will have profound anticompetitive effects on the market as a whole. Disclosure of Intel's highly confidential information—such as arrangements with customers, SEP licenses, pricing information, strategic planning and sales forecast documents, and technical product information—would give Qualcomm a competitive advantage over Intel and could further cement Qualcomm's hold on the baseband processor market.

**Second**, the risk to Intel is magnified given the facts of this case. Qualcomm's licensing arm (QTL) is responsible for a disproportionate share of Qualcomm's overall profitability, accounting for approximately 75% of Qualcomm's earnings before taxes in 2016. Qualcomm 2016 Form 10-K at 46; *see also* Compl. ¶ 17. Indeed, reflecting the centrality of licensing to Qualcomm's business, Qualcomm's President, Derek Aberle, is a lawyer who formerly headed the licensing group.[4] And the FTC's allegations focus largely on conduct in which Qualcomm's in-house legal department must have been involved, such as negotiating patent license agreements, developing terms for sales agreements, and setting general legal policies and strategies. The particular asserted violations of antitrust law include, among others, Qualcomm's refusal to license claimed standard-essential patents to competitors in violation of Qualcomm's FRAND commitments, charging royalties based on a percentage of a handset's price, entering into exclusive dealing agreements with cell phone manufacturers, and employing a "no-license-no-chips" policy that prevents challenges to its licensing terms and allows Qualcomm to extract elevated royalties and other unreasonable license terms. *See, e.g.*, Compl.

---

[4] *See Derek K. Aberle*, QUALCOMM,
https://www.qualcomm.com/company/about/leadership/derek-aberle (last visited May 18, 2017).

¶¶ 3-8, 77. Thus, this case is not one where in-house counsel have roles that are separate from the business conduct at issue in the litigation. Rather, here, the two are one and the same.

To give Qualcomm's in-house legal department—whose work is accused of being in violation of antitrust law that has, e.g., led to unlawful maintenance of monopoly power in the baseband processor market—access to Intel's own highly confidential information would risk amplifying the very harms that are the subject of this case. As examples:

- Knowledge of the terms in Intel's sales and supply agreements could provide Qualcomm's in-house counsel with a competitive advantage in evaluating and providing counsel regarding Qualcomm terms in similar agreements—including in the market at issue in this case;

- Knowledge of the terms (including royalty rates and scope of patent grants) in Intel's licenses would give Qualcomm's counsel an unwarranted advantage in negotiating Qualcomm license agreements, including the types of licenses at issue in this case;

- Knowledge of Intel strategic planning could allow Qualcomm's in-house counsel to provide strategic counsel with knowledge of a direct competitor's long-range plans in the market at issue in this case; and

- Knowledge of Intel's own internal technical analysis could influence Qualcomm's counsel's advice regarding patent strategy and other legal issues that are intertwined with technical issues.

**_Third_**, we assume that Qualcomm will agree to set up firewalls or other mechanisms designed to prevent such information from being used. But this is not a case where in-house litigation counsel will be exposed only to stale information about some older technology or discontinued strategy. Rather, in this case Qualcomm's legal strategy goes to the heart of the matter, and Intel's past and contemplated future competitive reaction to that strategy will be a merits issue. Moreover, the Intel information that will be disclosed has value to multiple aspects of the work of Qualcomm's in-house counsel, including the examples listed above.

As a result, the risk of inadvertent use would be real—as would the difficulty in compartmentalizing such information within the minds of the receiving counsel. In sum, even with the best of intentions on Qualcomm's part, disclosing Intel's trade secrets and other highly sensitive information to Qualcomm's in-house counsel would create undue risk to Intel. *See Brown Bag Software*, 960 F.2d 1465 at 1471 (noting the difficulty that "counsel could lock-up trade secrets in his mind, safe from inadvertent disclosure to his employer once he had read the documents").

For the same reasons, the narrow "competitive decision-making bar," (Protective Order, § 8), would not alleviate the risk of harm to Intel. Moreover, the bar remains in effect for a mere *one-year* from *receipt* of the highly confidential information, which is not nearly long enough in the context of a litigation involving ongoing technological and marketplace developments with critical long-term consequences.

*Fourth*, there is no reciprocal risk to Qualcomm: Intel's in-house counsel will not receive similar Qualcomm materials. This magnifies the danger of Qualcomm pursuing overly aggressive disclosures to its in-house counsel, lacking the deterrent of mirror-image disclosures to Intel's in-house counsel.

*Fifth*, although the current Protective Order requires that Qualcomm provide notice before making disclosures to its in-house counsel, that process would result in Intel having to defend against such disclosures from a posture in which the disclosures would be presumptively permissible. Intel should not have such a burden—to the contrary, the burden should be on Qualcomm to demonstrate the truly exceptional circumstances that would justify departing from what Intel asks the Court to impose, i.e., a general bar on disclosures of trade secrets and other highly sensitive information to in-house counsel. The allocation of burdens under the current Protective Order also increases the chances that Qualcomm will make repetitive notices of such disclosures, increasing the burden on and risk to Intel. Intel's proposed process—in which the general rule would be no such disclosure, and the burden would be on Qualcomm to show exigent circumstances justifying a departure from that rule—would minimize the chances of such repetitive requests.

### 2. Intel's Status as a Non-Party to this Antitrust Enforcement Action Weighs Against Disclosure to Qualcomm In-House Counsel

In the context of antitrust actions, courts have considered the non-party status of competitors and distributors whose confidential information is at issue in balancing the risk of injury against in-house counsel's need for access, concluding that the risk of injury to the owner of confidential information is greater where the owner was never in a position to accept or reject the risk of disclosure. *United States v. Dentsply Int'l, Inc.*, 187 F.R.D. 152, 160 (D. Del. 1999); *Paul v. Intel Corp.* (*In re Intel Corp. Microprocessor Antitrust Litig.*), 2007 U.S. Dist. LEXIS 103979, at *34-35 n.11 (D. Del. May 18, 2007) (stating that non-parties to litigation are situated differently from parties, not having undertaken the risks of disclosure). In *Dentsply*, the court noted that non-parties produce information in the course of antitrust investigations because they are "law-abiding entities," and that the information of these non-parties is produced "not because they are a litigant seeking redress or an accused wrongdoer defending a lawsuit, but because they have valuable information which may or may not shed light on whether [the defendant] has engaged in proscribed anticompetitive activity." *Id.*

Intel's highly confidential information is at issue in this proceeding because Intel complied with requests made to it by the FTC. This cooperation now places Intel's highly confidential information at risk of disclosure—and (as noted above) in an asymmetric posture in which Qualcomm will receive Intel information, but not vice versa. Because it is not a party to the action, Intel had no opportunity to negotiate the terms of the Protective Order. As a government agency, the FTC does not possess competitively sensitive business information, and accordingly did not have the same institutional need to limit the risk of disclosure as would the owners of such information.

Furthermore, allowing in-house counsel of Intel's direct competitor to access Intel's highly confidential information would in effect penalize Intel for cooperating with the FTC's investigation. The FTC itself has recognized that protecting third-party information in antitrust actions is "crucial," because "if it is used to gain competitive advantage, companies will be

reluctant to provide information to the FTC in the future." *See Fed. Trade Comm'n v. Foster*, 2007 U.S. Dist. LEXIS 55163, at *21-22 (D. N.M. 2007).[5]

### 3. Qualcomm's Ability to Litigate Will Not be Prejudiced if Access to Intel's Confidential Information is Limited to Outside Counsel

The party seeking access for its in-house counsel must demonstrate that its ability to litigate will be prejudiced. *Intel Corp.*, 198 F.R.D. at 531 (citing *A. Hirsh, Inc. v. United States*, 657 F. Supp. 1297, 1305 (Ct. Int'l Trade 1987) (disclosure of confidential business information "could cause irreparable competitive injury," and "in view of retained counsel's competence, it is not clear how plaintiff's position will be prejudiced by excluding [in-house] counsel from access")). Requiring a party to rely on its competent outside counsel does not create an "undue and unnecessary burden." *Intel Corp.* at 529 (denying Intel's request for in-house counsel access).

Here, Qualcomm has not shown—and cannot show—a need for its in-house counsel to access Intel's confidential information. Qualcomm is represented in this action by Cravath, Swaine and Moore, LLP, and Morgan, Lewis & Bockius LLP. Cravath's website states that antitrust litigation is one of its "core practice areas," and that it "was named one of *Law360*'s 2016 Competition Practice Groups of the Year and has ranked as a first-tier firm for antitrust law and antitrust litigation in the *U.S. News & World Report Best Lawyers* "Best Law Firms" survey from 2011 through 2017."[6] Similarly, Morgan Lewis states that it offers a "top-rated antitrust and competition team," and highlights that this team "includes lawyers with a thorough understanding of the interplay between IP and antitrust laws," particularly with respect to

---

[5] While *Foster* did allow a single in-house attorney from each defendant to access confidential information, this access was extremely limited and did not cover the type of highly confidential documents at issue here. In *Foster*, in-house counsel was granted access only to deposition and investigative proceeding transcripts, and unredacted pleadings. Furthermore, this access was to be exercised only at outside counsel's office, and in-house counsel was prohibited from removing any notes from outside counsel's office. Here, the access to Intel confidential information sought by Qualcomm in-house counsel is much broader.

[6] *Antitrust Litigation, Regulatory Clearance and Advisory*, CRAVATH, SWAINE & MOORE LLP, https://www.cravath.com/practices/DetailExtended.aspx?FirmService=28 (last visited May 15, 2017).

standard-setting and standard-essential patents, procurement and enforcement of patents, and licensing.[7]  Given the expertise of Qualcomm's outside counsel, Qualcomm's ability to present its defense will not be prejudiced if access to Intel's confidential information is limited to outside counsel.

**B.    The Appropriateness of Barring In-House Counsel Access to Confidential Information Has Been Recognized by the Court and by Qualcomm**

**1.    This Court Has Entered Protective Orders Barring In-House Counsel Access to Confidential and Competitively-Sensitive Information**

Further evidence of the reasonableness and propriety of Intel's requested order can be found in numerous orders entered by this court.[8]  *See, e.g.*, *In Re: Viagra (Sildenafil Citrate) Prod. Liab. Litig.*, No. 16-02691, MDL No. 2691 (N.D. Cal. May 3, 2016), Dkt. No. 471 at 12-13 ¶ 7.3 (a-e); *Adkins v. Apple*, No. 14- 01619 (N.D. Cal. Jan. 27, 2015), Dkt. No. 127 at ¶ 9; *Apple Inc. v. Samsung Elecs. Co.,* 2012 U.S. Dist. LEXIS 49201, at *13-20 (N.D. Cal. Jan. 30, 2012).  For example, in *Apple v. Samsung*, the parties stipulated, and this Court ordered, that confidential information (of all tiers) could only be disclosed to outside counsel.  *Apple v. Samsung*, at *13-20.  *Apple v. Samsung* similarly involved a dispute concerning patent licensing, among other things, between two direct competitors operating in a highly competitive market.  Given the conditions in the baseband processor market, and the alleged anticompetitive conduct of Qualcomm, this case merits at least the same level of protection for confidential information.

**2.    Qualcomm Has Opposed Disclosure of Confidential Information to In-House Counsel, Particularly When it is a Non-Party**

When faced with the prospect of disclosure of its own confidential information to in-house counsel of a direct competitor, Qualcomm has also opposed such disclosure.  For example, in *Qualcomm v. Broadcom*, Qualcomm opposed in-house counsel's access to its information

[7] *Antitrust & Competition*, MORGAN LEWIS, https://www.morganlewis.com/services/antitrust-competition (last visited May 15, 2017).

[8] Indeed, this District's Model Protective Order acknowledges that in-house counsel access is not always appropriate.  Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets ¶ 2 (identifying "Designated House Counsel" as an optional category).

designated merely "CONFIDENTIAL," and sought a categorical bar preventing in-house counsel from viewing its information designated "OUTSIDE ATTORNEYS' EYES ONLY," which included source code and "sensitive commercial information, such as sales and licensing data and marketing plans."[9] No. 05-1392 (S.D. Cal. Feb. 4, 2006), Dkt. No. 48 at 6-8. In this case, Qualcomm would obtain much broader access to Intel's highly confidential information, as the Protective Order contemplates that *five* Qualcomm in-house attorneys would have access. Protective Order, Ex. B. Ultimately, Qualcomm and Broadcom agreed to a complete bar against in-house access to the higher tier of confidential information, and the court ruled that the lower tier of confidential information could be disclosed to a single in-house attorney for each party. *Qualcomm v. Broadcom*, No. 05-1392 (S.D. Cal. May 3, 2006), Dkt. No. 125 at 2-3. Notably, the provision allowing disclosure of the lower tier of confidential information to in-house counsel stated that "[t]his disclosure will be limited to "CONFIDENTIAL BUSINESS INFORMATION" submitted by BROADCOM and QUALCOMM *and specifically will not include any "CONFIDENTIAL BUSINESS INFORMATION" produced by a third party*." *Id.* at 3 (emphasis added).

When itself a third party to litigation, Qualcomm has repeatedly negotiated the entry of supplemental protective orders that categorically bar in-house counsel access to *all tiers* of Qualcomm confidential information, providing even greater restrictions than those Intel now seeks. *See, e.g.*, *FastDO v. AT&T Mobility*, No. 16-00385 (S.D. Cal. June 28, 2016), Dkt. No. 146 at 10; *Adaptix v. Dell*, No. 14-01259 (N.D. Cal. Sept. 8, 2014), 2015 WL 12839125 at *5; *Tech. Properties v. Barnes & Noble*, No. 12-03863 (N.D. Cal. July 8, 2015), Dkt. No. 146 at 10. For example, in *Adaptix v. Dell*, the supplemental protective order provided that "[a]bsent a court order or agreement of Non-Party QUALCOMM, Designated QUALCOMM Material may not be disclosed to employees of a Receiving Party, including its in-house attorneys and support staff." *Adaptix*, at *5. "QUALCOMM Material" was defined broadly as "Confidential

---

[9] While Qualcomm did not seek a categorical bar on in-house counsel access to the lower tier of confidential information, it opposed disclosure to each of the three Broadcom counsel at issue, on the grounds that they were involved in licensing to a degree that qualified them as competitive decision-makers under *Brown Bag*.

Information, that Non-Party QUALCOMM (i) would not normally reveal to third parties except in confidence, or has undertaken with others to maintain in confidence, (ii) believes in good faith is significantly sensitive, or (iii) protected by a right to privacy under federal or state law, or any other applicable privilege or right related to confidentiality or privacy." *Id.* at 1. Qualcomm's practice of negotiating protective orders barring in-house counsel access to its third-party productions—orders supplemental to those entered by the parties to the case and which bar in-house counsel access entirely—underscores the reasonableness of the supplemental protective order sought by Intel here.

## IV. CONCLUSION

For the above stated reasons, Qualcomm's in-house counsel should be barred from accessing Intel's highly confidential information. To the extent that Qualcomm later believes it has an exceptional need for such an in-house disclosure, it could raise such an argument at the appropriate time. Until then, Intel respectfully requests that this Court issue the attached protective order pursuant to Federal Rule 26(c) barring in-house attorney access to Intel highly confidential information.

Dated: May 23, 2017

Respectfully submitted,

/s/ *Mark D. Selwyn*

Mark D. Selwyn
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100
Mark.Selwyn@wilmerhale.com

William F. Lee
Joseph J. Mueller
Mark A. Ford
Timothy Syrett
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: 617-526-6000
Facsimile: 617-526-5000
William.Lee@wilmerhale.com
Joseph.Mueller@wilmerhale.com
Mark.Ford@wilmerhale.com
Timothy.Syrett@wilmerhale.com

*Attorneys for Non-Party Intel Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 23, 2017, I electronically filed the above document with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered counsel.

By:  <u>*/s/ Mark D. Selwyn*</u>
Mark D. Selwyn