CRAVATH, SWAINE & MOORE LLP
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
825 Eighth Avenue
New York, New York 10019-7475
Telephone:  (212) 474-1000
Facsimile:   (212) 474-3700

KEKER, VAN NEST & PETERS LLP
Robert A. Van Nest
rvannest@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  (415) 676-2289
Facsimile:  (415) 397-7188

MORGAN, LEWIS & BOCKIUS LLP
Richard S. Taffet (*pro hac vice*)
richard.taffet@morganlewis.com
101 Park Avenue
New York, NY 10178-0060
Telephone:  (212) 309-6000
Facsimile:  (212) 309-6001

Attorneys for Defendant
QUALCOMM INCORPORATED

*Additional counsel listed in the signature block*

BOIES SCHILLER FLEXNER LLP
William A. Isaacson, DC Bar No. 414788
wisaacson@bsfllp.com
Karen L. Dunn, DC Bar No. 1002520
kdunn@bsfllp.com
Amy J. Mauser, DC Bar No. 424065
amauser@bsfllp.com
1401 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 237-2727
Facsimile: (202) 237-6131

BOIES SCHILLER FLEXNER LLP
Edward H. Takashima, SBN 270945
etakashima@bsfllp.com
401 Wilshire Blvd, Suite 850
Santa Monica, CA 90401
Telephone:  (310) 752-2408
Facsimile:  (310) 752-2490

Attorneys for Non-Party APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION<br><br>                    Plaintiff,<br><br>          v.<br><br>QUALCOMM INCORPORATED, a Delaware corporation,<br><br>                    Defendant. | Case No. 5:17-CV-00220-LHK-NMC<br><br>**DEFENDANT QUALCOMM INCORPORATED'S AND NON-PARTY APPLE INC.'S JOINT DISCOVERY STATEMENT**<br><br>Courtroom:  7, 4th Floor<br><br>Judge:   Hon. Nathanael M. Cousins |
| IN RE QUALCOMM ANTITRUST LITIGATION | Case No. 5:17-MD-02773-LHK-NMC |

Defendant Qualcomm Incorporated ("Qualcomm") and Non-Party Apple Inc. ("Apple") submit this joint statement concerning a dispute over a request seeking certain proposed or actual component supply agreements, arising out of subpoenas (the "Subpoenas") Qualcomm issued to Apple on May 18, 2017 and June 1, 2017 in the above-captioned cases (the "FTC Action" and the "MDL Action" respectively, and together the "Actions").[1]  Qualcomm and Apple have met and conferred by telephone nine times but have been unable to reach agreement on this request.[2]

**I.  Qualcomm's Position**

Agreements between Qualcomm and Apple regarding the supply of baseband processors for use in Apple's cellular devices are a key issue in both Actions.  (*See* Compl. ¶¶ 116-130, FTC Action (Jan. 17, 2017), ECF No. 1; Compl. ¶¶ 96-117, MDL Action (July 11, 2017), ECF No. 94.)  Both the FTC and the MDL plaintiffs (together, "Plaintiffs") allege that Qualcomm provided financial incentives to Apple conditioned on Apple's exclusive use of Qualcomm baseband processors in new iPhones and iPads—and that those agreements harmed competition in alleged baseband processor markets.  (*Id.*)  In its defense, Qualcomm will prove (among other things) that there were legitimate business justifications for the contested terms, including costly up-front investments Qualcomm had to make to supply products that met Apple's demands.  Qualcomm will also prove that—contrary to Plaintiffs' allegations—Apple willingly agreed to and in some instances affirmatively suggested the terms that Plaintiffs now challenge.  Apple's consideration of comparable agreements for other components is squarely relevant to these claims and defenses.  Such other proposed or actual supply agreements are relevant to assessing the business justifications for Apple's agreements with Qualcomm.  They are also relevant to assessing the credibility of the claim that Apple was coerced into those agreements, or if it was following a practice it has pursued with other suppliers to maximize available discounts.

Request No. 45 in the MDL Action Subpoena (No. 43 in the FTC Action Subpoena)—as limited by Qualcomm during the meet-and-confer process—seeks:

> "Documents sufficient to show pricing structures proposed to, proposed by or considered by Apple for components other than Baseband Processors, for actual or potential use in Apple Cellular Devices, in which pricing or related terms were conditioned on: (1) exclusive supply of the component(s) from a particular supplier; (2) supply of a particular percentage of Apple's demand for the component(s); or (3) any other arrangement where Apple's satisfaction of a purchasing threshold (whether based on volume, revenue or otherwise) affects the price of any component procured by Apple before hitting such threshold (whether by applying a retroactive discount to such component, through the payment of a rebate or lump sum, through a true-up mechanism or through any other mechanism affecting the effective price of pre-threshold components) (*i.e.*, any arrangement akin to a retroactive rebate)."  (Ex. 8 at 5.)

Apple initially refused to produce any documents in response to this Request and still objects to producing many of the documents sought.  It has agreed to produce only documents sufficient to show pricing structures it has entered into for Apple Cellular Device components other than Baseband Processors where pricing is (i) "conditioned on exclusivity" (Ex. 7 at 4) or (ii) based

---

[1] The Subpoenas overlap in all respects relevant to this joint statement.
[2] *See* Declaration of Gary Bornstein ("Bornstein Decl."), dated August 11, 2017, Ex. 3 at 6; *id.* Ex. 4 at 5; *id.* Ex. 5 at 9-10; *id.* Ex. 6 at 8-9; Ex. 7 at 4; Ex. 8 at 5; Ex. 9 at 3-4.  All exhibits cited in this submission are exhibits to the Bornstein Decl.

1

on "certain types of volume[] arrangements that are similar to exclusive supply agreements". (Ex. 9 at 4.) Apple's proposed production would exclude important, relevant documents.

*First*, Apple seeks to exclude documents sufficient to show relevant pricing structures that were "proposed to, proposed by or considered by" Apple but not agreed upon. Documents sufficient to show circumstances in which Apple itself *proposed* such pricing structures are plainly relevant to determining whether the agreements at issue resulted from Apple's own supply practices and/or buying power. Similarly, documents sufficient to show prospective suppliers' proposals to Apple are relevant to assessing the business justifications behind such pricing structures. These documents will be particularly important for the cross-examination of any Apple witness who testifies about Qualcomm's purported coercion of Apple.

*Second*, Apple seeks to limit the Request to agreements where pricing is conditioned on strict exclusivity or includes volume pricing structures "that are similar to exclusive supply agreements". (Ex. 9 at 4.) This limitation is too strict. Pricing structures with retroactive rebates or other retroactive benefits—even without purchasing thresholds "similar to exclusivity"—are often grounded in the same business justifications that underlie Qualcomm's agreements with Apple, *i.e.*, the seller's need for some assurance of sufficient sales volumes to recoup relationship-specific investments and justify the buyer's discounted pricing demands. Documents sufficient to show such proposals or agreements—for any type of component—are relevant to show that other suppliers have pursued or been offered contractual terms that provide such assurances due to the substantial investments and favorable terms demanded by Apple. A limitation allowing Apple to produce only agreements that are "similar to exclusive" agreements would allow Apple, in its sole discretion, to rely on a vague distinction to exclude relevant proposals or agreements that show Apple was not coerced by Qualcomm. It would also allow Apple to exclude proposals or agreements demonstrating that other suppliers, when faced with similar demands from Apple, were motivated by the same legitimate business rationales justifying the agreements challenged in the Actions.

Apple's burden argument is also meritless. *First*, Qualcomm seeks only documents "sufficient to show" the identified agreements, as opposed to all documents concerning those agreements. *Second*, any burden can be addressed through negotiation of custodians and search terms, which Qualcomm has sought to do for many weeks.[3] As it stands, however, Apple has said that even if it came across responsive documents in the course of its custodial review, it still would not produce them. Apple's assertion below that "adding the generic pricing search terms necessary to collect documents responsive to this request would vastly increase the number of documents that Apple would need to review" is without basis. To date, Apple has been unwilling to consider, let alone negotiate, *any* search for the documents at issue. And Apple has not provided Qualcomm or the Court any facts as to the number of documents it would have to review to respond to this Request. Nor has Apple provided any information about the existence

---

[3] Qualcomm has requested that Apple propose search terms for over a month, so that Qualcomm and Apple can discuss those terms and assess Apple's burden of compliance. Apple has repeatedly represented that it would provide the terms "shortly" or "in a matter of days". However, to date, despite reaching agreement on the scope of production for most of the Requests, Apple has not shared *any* proposed search terms with Qualcomm—even though it has prepared terms on a Request-by-Request basis (and could have provided Qualcomm with terms relating to this Request). For weeks, Apple has said that it is "running metrics" on its search terms but has been unwilling to provide them to Qualcomm. Until writing footnote 5 below, Apple had not even agreed to a date by which it will provide the terms. Likewise, for over a month, Qualcomm has repeatedly asked Apple to provide organizational charts or employee directory information to facilitate the discussion of appropriate document custodians. Apple still has not produced any such information and did not agree to a date by which it would do so until writing footnote 5.

2

of centralized repositories from which it could collect documents sufficient to show responsive agreements. Therefore, Apple's burden argument on this Request is unsubstantiated.

<u>Compromise Position</u>: If the Court disagrees with Qualcomm's position above, Qualcomm proposes limiting: (1) responsive agreements proposed *to* Apple by prospective suppliers to proposals for 15 components to be designated by Qualcomm, and (2) *all* responsive agreements to those with a 40% or greater purchasing threshold.[4] As limited, this Request would seek "Documents sufficient to show pricing structures executed or proposed by Apple for components other than Baseband Processors, and pricing structures proposed to Apple for 15 specific components to be designated by Qualcomm, for actual or potential use in Apple Cellular Devices, with pricing or related terms (1) that were conditioned on exclusive supply of the component(s) from a particular supplier, or (2) under which Apple's satisfaction of a purchasing threshold of 40% or greater (whether based on percentage of Apple's demand for the component(s), a volume threshold expected to equal or exceed 40% of total units purchased by Apple, a dollar threshold expect to equal or exceed 40% of Apple's expenditures on the component, or otherwise) affects the price of any component procured by Apple before hitting such threshold (whether by applying a retroactive discount to such component, through the payment of a rebate or lump sum, a true-up mechanism or any other mechanism affecting the effective price of pre-threshold components) (*i.e.*, any arrangement akin to a retroactive rebate)."

## II. Nonparty Apple's Position

Qualcomm seeks documents sufficient to show *any* pricing structures (actual, proposed, or contemplated) for iPhone and iPad components *other than* baseband processors, where "pricing or related terms were conditioned on exclusivity or on Apple's satisfaction of specified purchasing thresholds (whether based on volume, percentage, revenue or otherwise)." (Ex. 2, Req. No. 45; Ex. 1, Req. No. 43.) Notably, this request *solely* concerns components *other than* the baseband processors at issue in the N.D. Cal. actions. Moreover, Qualcomm is demanding information about pricing structures Apple never entered into, components Apple never purchased, and all pricing based on volume thresholds, without any attempt to limit its request to agreements with exclusivity or de facto exclusivity provisions similar to those found in the contracts between Apple and Qualcomm. Apple has agreed to produce documents regarding *actual* pricing structures for components in its Cellular Devices where pricing or related terms are based on exclusivity. (Ex. 7 at 4.) To the extent any pricing structures for components other than baseband processors could possibly be relevant, Apple's agreed-upon production is proportional to the needs of the N.D. Cal. actions. The remainder of this request is disproportional to the needs of the N.D. Cal. actions and would place undue burden on Apple.

*First*, Qualcomm is demanding documents concerning pricing structures that were merely proposed or contemplated (rather than entered into) by Apple, claiming they would have bearing on whether Apple was coerced into entering into exclusive or quasi-exclusive pricing structures with Qualcomm for baseband processors. (Ex. 6 at 8.) Apple has released dozens of separate iPhone and iPad models over the last decade, each containing hundreds of individual

---

[4] Apple's claim that a 40% threshold is far "from quasi exclusivity" is a red herring. Any retroactive rebate would be relevant to show the business justifications raised by Qualcomm, *i.e.* suppliers' need to ensure certain sales levels to justify Apple's investment and pricing demands. Qualcomm's proposed 40% threshold is meant merely to exclude *de minimis* thresholds in the spirit of compromise, given Apple's objection. Apple has made no representation that it has a significant number—or any number—of agreements with thresholds at any particular level, and therefore cannot credibly argue that the proposed limit would add burden. The proposed 15-component limit on supplier proposals will also alleviate any claimed burden.

components. As a result, Apple has actually procured at least thousands of components for its cellular devices—and considered procuring countless more. Apple has already agreed to produce documents concerning any exclusivity-based pricing structures it entered into, but this request would call on Apple to review *every* pricing proposal for thousands of components, including both proposals made in negotiations and one-way offers from prospective suppliers, and determine whether those proposals made any reference to exclusivity or threshold-based pricing. This request is grossly disproportional to the needs of the case.

*Second*, Qualcomm is demanding documents that concern "pricing or related terms [that] were conditioned on Apple's satisfaction of specified purchasing thresholds (whether based on volume, percentage, revenue or otherwise)." Although proposed or contemplated pricing terms regarding *exclusivity* could be relevant to the case (particularly with regard to baseband processor pricing terms), the same is not true for volume-based pricing structures (or other threshold-based pricing structures). To the extent those pricing structures are not exclusive or quasi-exclusive, they do not have any relevance here.

Qualcomm contends that such pricing structures are relevant because they are "often grounded in the same business justifications underlying Qualcomm's agreements with Apple, *i.e.*, the seller's need for some assurance of recouping relationship-specific investments incurred to meet the buyer's demands." But Apple has already agreed to produce documents that would go to this issue, at least with regard to the baseband processors that are actually relevant in the N.D. Cal. actions. Specifically, MDL Request Nos. 24–29 require Apple to produce "All Documents" concerning Apple's requirements for baseband chipsets, and suppliers' readiness to meet those requirements across a number of different metrics. (Ex. 2., Reqs. Nos. 24–29.) And Request No. 31 requires Apple to produce "All Documents Concerning any Agreement or potential Agreement Concerning the proposed or actual procurement of Baseband Processors for use in Apple Cellular Devices, including but not limited to *any Agreement or potential Agreement* with a Third Party *providing Apple with any payment discount, rebate or other benefit conditioned on the consideration or use of Baseband Processors (or some threshold of Baseband Processors)* from that Third Party in Apple Cellular Devices. (*Id.*, Req. No. 31) Apple has agreed to *all* of these requests, which will provide Qualcomm the information it seeks for the *relevant* product: baseband chipsets.

Qualcomm has not been willing to reduce the potentially enormous burden on Apple by limiting its request to pricing structures similar to those at issue in these actions. For example, Apple asked whether Qualcomm would limit its request to pricing structures conditioned on exclusivity or volume thresholds rising to the level of de facto exclusivity, as opposed to other volume-based pricing structures that are irrelevant here. *See W. Parcel Exp. v. United Parcel Serv. of Am., Inc.*, 190 F.3d 974, 976 (9th Cir. 1999) (upholding volume-based discounts that do not "preclude competition"). In response, Qualcomm agreed only to limit its request to pricing terms conditioned on (1) exclusivity, (2) volume percentages, or (3) retroactive volume-based rebates. (Ex. 8 at 5.) But this "limitation" does not meaningfully change the scope of the documents Apple would have to collect and review, because Apple would still need to produce documents concerning pricing structures with *any* volume percentages and *any* retroactive rebates, even if the volume threshold was extremely low (e.g., 5%). Such pricing structures do not have any relevance to the N.D. Cal. actions. Searching and reviewing all of Apple's actual, proposed, and considered pricing structures for such volume conditions would therefore be disproportional to the needs of the case and unduly burdensome.

Nonetheless, Qualcomm argues that its request will impose little burden on Apple because Qualcomm seeks only documents "'sufficient to show' the identified agreements" (or

*proposed* agreements) "as opposed to all documents concerning those agreements." But as noted above, the number of components Apple actually procures (let alone *considers* procuring) for its Cellular Devices is in the thousands. Accordingly, Apple negotiates with a large number of suppliers, and the terms and pricing structures that are proposed by those suppliers are diverse. Searching for and reviewing references to pricing structures that would (a) fit within Qualcomm's (irrelevant) categories of volume percentages and retroactive volume-based rebates and (b) be representative of any responsive pricing structure ever discussed, even in passing, would be an enormous undertaking.

Qualcomm also argues that the burden of this request will be minimal because the parties have agreed to conduct the review using agreed-upon custodians and search terms.[5] But unless Qualcomm is willing to agree that Apple would not need to run search terms directed at this request, and further agree that Apple would not need to conduct any search for responsive documents *outside* of custodial files, Qualcomm's argument is disingenuous. Apple has proffered several high-level custodians involved in iPhone and iPad procurement (including Apple's Chief Operating Officer and its Vice President of Procurement), and adding the generic pricing search terms necessary to collect documents responsive to this request would greatly increase the number of documents that Apple would need to review. Likewise, searching for the non-custodial documents that would allow Apple to produce even documents "sufficient to show" the various pricing structures proposed to or by Apple (or actually entered into) would be extremely burdensome. There are no "centralized repositories" containing all of Apple's component contracts, let alone repositories containing all draft contracts and supply negotiation documents.[6]

Apple remains willing to produce documents responsive to this request to the extent they are relevant and proportional to the needs of the case. But the scope of Qualcomm's current request is staggering, particularly Qualcomm's demands for documents concerning pricing structures never entered into, and for pricing structures that are irrelevant to those at issue in these actions.

Apple's Response to Qualcomm's Proposed "Compromise": While Qualcomm's proposal would reduce Apple's burden to some extent, it does not justify the remaining burden or cure the defects inherent in Qualcomm's Request. Qualcomm still demands irrelevant documents about non-baseband components that are not at issue in the N.D. Cal. actions. Qualcomm does not attempt to justify the relevance of the 15 components and has instead refused to identify the components until *after* the parties file this joint submission. Moreover, Qualcomm's proposed volume threshold of 40% remains far removed from any quasi-exclusive level comparable to the exclusive or quasi-exclusive Apple-Qualcomm contracts at issue in the N.D. Cal. actions. Apple notes (again) that it has already agreed to provide all documents concerning threshold-based pricing structures for baseband processors—the *relevant* product in these actions. Apple objects to providing additional documents concerning *irrelevant* products.

---

[5] Qualcomm's reference to search terms and employee directories is a red herring. Apple will send the search terms to Qualcomm by the end of this week. And with respect to employee directories, Apple has repeatedly informed Qualcomm that the employee directory information Qualcomm *informally* requested (without issuing a Request for Production or Interrogatory in the N.D. Cal. actions) does not exist in the form Qualcomm has demanded. On July 25, Apple *voluntarily* offered to provide information about the direct reports (up and down) of both parties' proposed custodians. (Ex. 9 at 1–2.) Apple is working to compile this information, which does not exist natively in producible form, and will provide it to Qualcomm this week, as soon as it is available.

[6] Apple and Qualcomm have never discussed whether such repositories for this information exist during meet and confer negotiations. Had Qualcomm asked, Apple would have informed Qualcomm that such repositories do not exist.

5

Dated: August 11, 2017

          Respectfully submitted,

          CRAVATH, SWAINE & MOORE LLP,

          */s/ Gary A. Bornstein*
          Gary A. Bornstein
          Yonatan Even

Worldwide Plaza
   825 Eighth Avenue
      New York, NY 10019
         Tel: (212) 474-1000
           Fax: (212) 474-3700
             gbornstein@cravath.com
             yeven@cravath.com


Robert A. Van Nest
Asim M. Bhansali
Eugene M. Paige
KEKER, VAN NEST & PETERS LLP
   633 Battery Street
      San Francisco, CA 94111-1809
         Tel: (415) 676-2289
           Fax: (415) 397-7188
             rvannest@keker.com
             abhansali@keker.com
             epaige@keker.com


Richard S. Taffet
MORGAN, LEWIS & BOCKIUS LLP
   101 Park Avenue
      New York, NY 10178-0060
         Tel: (212) 309-6000
           Fax: (212) 309-6001
             richard.taffet@morganlewis.com

Willard K. Tom
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave. NW
Washington, DC 20004-2541
Tel: (202) 739-3000
Fax: (202) 739 3001
willard.tom@morganlewis.com


Donn P. Pickett
Geoffrey T. Holtz
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: (415) 442-1000
Fax: (415) 442-1001
donn.pickett@morganlewis.com
geoffrey.holtz@morganlewis.com


*Attorneys for Qualcomm Incorporated*


BOIES SCHILLER FLEXNER LLP,

  */s/ Edward H. Takashima*
Edward H. Takashima

William A. Isaacson, DC Bar No. 414788
Karen L. Dunn, DC Bar No. 1002520
Amy J. Mauser, DC Bar No. 424065
1401 New York Avenue, N.W.
Washington, DC 20005
Tel: (202) 237-2727
Fax: (202) 237-6131
wisaacson@bsfllp.com
kdunn@bsfllp.com
amauser@bsfllp.com

Steven C. Holtzman, SBN 144177
1999 Harrison Street, Suite 900
Oakland, CA 94612
Tel: (510) 874-1000
Fax: (510) 874-1460
sholtzman@bsfllp.com

Edward H. Takashima, SBN 270945
401 Wilshire Blvd, Suite 850
Santa Monica, CA 90401
Tel: (310) 752-2408
Fax: (310) 752-2490
etakashima@bsfllp.com

*Attorneys for Non-Party APPLE INC.*

## **FILER'S ATTESTATION**

I, Gary A. Bornstein, am the ECF user whose identification and password are being used to file this Joint Discovery Submission. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that the signatories of this document have concurred in this filing.

                                                      */s/ Gary A. Bornstein*
                                                        Gary A. Bornstein