**Pages 1 - 28**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Nathanael M. Cousins, Judge

```
FEDERAL TRADE COMMISSION,        )
                                 )
            Plaintiff,           )
                                 )
  VS.                            )    NO. C 17-00220 LHK (NC)
                                 )
QUALCOMM INCORPORATED, A         )
DELAWARE CORPORATION,            )
                                 )
            Defendant.           )
_____  )
```

San Francisco, California
Wednesday, August 9, 2017

<u>**TRANSCRIPT OF OFFICIAL ELECTRONIC SOUND RECORDING
OF PROCEEDINGS**</u>

<u>**APPEARANCES**</u>:
For Plaintiff Federal Trade Commission:
                        Federal Trade Commission
                        600 Pennsylvania Avenue, N.W.,
                        Washington, D.C.  20580
                        (202) 326 2912
            BY:  **JENNIFER MILICI**
                 **WESLEY GLEN CARSON**

For Defendant Qualcomm Incorporated:
                        Keker, Van Nest & Peters LLP
                        633 Battery Street
                        San Francisco, CA  94111-1809
                        (415) 391-5400
                        (415) 397-7188 (fax)
            BY:  **ROBERT ADDY VAN NEST**
                 **ALEXANDER BARNES DRYER**

Also Present:  Carol Lam, Mark Snyder

Transcribed By:  Lydia Zinn, CSR No. 9223, Official Reporter

PROCEEDINGS

1    Wednesday - August 9, 2017                          3:08 p.m.

2             THE CLERK:  Calling Civil 17-0220, Federal Trade

3    Commission versus Qualcomm Incorporated.

4             MR. VAN NEST:  Good afternoon, Your Honor.

5    Bob Van Nest, of Keker Van Nest and Peters, for Qualcomm.  I'm

6    here with my colleague, Alexander Dryer.

7             THE COURT:  Good afternoon.

8             MR. VAN NEST:  And we also have Carol Lam and

9    Mark Snyder here from Qualcomm.

10            THE COURT:  Thanks for being here.  Good afternoon.

11            MS. MILICI:  Good afternoon, Your Honor.

12   Jennifer Milici, for the Federal Trade Commission.  And I'm

13   joined by Wes Carson, from the Federal Trade Commission.

14            THE COURT:  Good afternoon.  Thank you both.  Thanks

15   for being here.  You can stand up, Mr. Van Nest.  We'll kind of

16   have a little back-and-forth on the issues.

17            MR. VAN NEST:  Perfect.

18            THE COURT:  We are making a recording of today's

19   hearing.  And there is no transcript that's being made

20   automatically, but either party or both may request one, and we

21   will create one.  For that reason, we'll try to restate who's

22   speaking, to make for a good transcript.

23        Any objection to my ruling on the discovery issues will,

24   of course, go next door to Judge Koh, the trial judge in the

25   case, and must be filed within 14 days of my Order on the

PROCEEDINGS

1  discovery issues.

2          **MR. VAN NEST:**  Understood, Your Honor.

3          **THE COURT:**  So that's the scene.

4      Have there been any further discussions and limiting of

5  the issues, or agreements, or partial agreements, or a changing

6  of the issues between the time of your brief and today?

7          **MR. VAN NEST:**  I don't believe so, Your Honor,

8  unfortunately.

9          **THE COURT:**  All right.  And let me tell you my

10  thoughts.  Having read the papers and the law, and having had

11  some firsthand experience with international antitrust

12  investigations in my past, there are two issues presented.

13      One is the challenge to the so-called "Dual Submissions";

14  those that were collected outside the United States, and then

15  came to the FTC and are in the possession, custody, or

16  control -- or all of the above -- of the FTC now.  And Qualcomm

17  seeks production of those.

18      And a principal issue there is comity; not "comedy" -- we

19  need more comedy -- but "comity," with a "t," as to whether the

20  objections raised by the foreign antitrust enforcer should be

21  honored here in this country, and should be a bar to production

22  to Qualcomm in this case.

23      My instinct on that issue is that I don't see case

24  authority that applies in this circumstance, where the

25  materials are already in the United States, and are already in

PROCEEDINGS

1  the possession of the FTC.  There is authority where the

2  materials are outside the United States, and are being sought

3  by a party.  That seems to me to be factually distinct from

4  what we're talking about here.

5      And then, secondly, I'm not overwhelmed by the degree of

6  the objections raised by the foreign antitrust authorities, as

7  far as the privilege or statutory basis that would say these

8  materials can't be produced.  I get that they have a preference

9  that these things not be shared here, but as to a strength of

10  saying the FTC should not or may not provide them here -- I

11  don't really see it.  It's more than a preference.

12      So I want the FTC to address the -- sort of the

13  seriousness and degree of the concerns raised by the foreign

14  investigators, because if it's not -- if it's just a

15  suggestion, and not something stronger, then I don't think that

16  carries as much comity weight here in this country.  So that's

17  the issue number one.  And I'll hear argument from both parties

18  in a moment as to what to do on that score.

19      And then there's the second issue, which is the assertion

20  of an informant's privilege.  And that gets raised in various

21  contexts; both in a criminal context -- and this is not a

22  criminal proceeding, but there's an investigative proceeding

23  here.

24      And the parties cited to a previous case that I worked on

25  as a Judge -- the *Seafood Peddler* case -- in a different

procedural context, where the Department of Labor asserted an

informant's privilege there.  And so there is such a privilege.

It's a qualified privilege.

     And what I'm going to seek more information from the

parties on here is how this discussion fits in with the bigger

case-management issues in the case; and that is if the FTC is

asserting, as it is, an informant's privilege for these

documents and for these witnesses, what's going to happen going

forward?  Are you going to be disclosing that later?  Are you

going to be agreeing not to use this information at trial or in

the case in some way?  How are you going to carve out that

information from the case, if that's what you're proposing?

     Even in a criminal case, which this is not, oftentimes

informants are protected at the early stages of the case; but

as the case gets closer to trial or at trial, there is an

obligation for the prosecution to -- even for someone who might

have their life threatened, they still are turned over at or

before trial.

     And so oftentimes in cases there's just a case-management

process of, *All right*.  *If we're not going to disclose it now*,

*maybe down the road it gets disclosed*.  And there might be also

some substantive way to provide the information, without

disclosing all that perhaps in a narrative form.

     So I'm interested in both parties' ideas about the

case-management ways to provide this; or if the FTC is going to

PROCEEDINGS

1  take the view that this privilege is so strong and inviolate,

2  that you'll never have to disclose it and never should be asked

3  about it, I'll want to hear what your plan is for how that's

4  going to play out if the case goes to trial some day, because

5  my tentative view here is that I think that there are -- I

6  recognize there's a privilege, but that there might be

7  disclosure somehow, some way.  The question is when, and what

8  level of detail to allow Qualcomm to investigate and to ask

9  questions in discovery about what's been disclosed to the FTC;

10 but recognizing that these informants have some interest in

11 what's going on, and may have even a basis to at least defer

12 learning of them.  So those are my tentative views.

13     Let's start with the Dual Submissions issue.  And if I can

14 hear from the FTC first as to the strength of the objections,

15 and why I should honor that here.

16        MS. MILICI:  Sure.  Thank you, Your Honor.  On the

17 Foreign Submissions we submitted with our -- with the Letter

18 Brief that -- the letters from both Directorate General for

19 Competition of the European Commission, and the KFTC.  And both

20 of those letters expressed the sovereign interest of foreign

21 governments in the nondisclosure of these materials.  And those

22 letters stated the position that disclosure to Qualcomm, who is

23 the target of their ongoing investigations, would impede

24 effective law enforcement in those countries, and have an

25 effect on international cooperation.

1      So in the *Aerospatiale* case, the Supreme Court directed

2  American courts to exercise special vigilance to demonstrate

3  respect for any sovereign interest expressed by a foreign

4  state.

5      And in this case we have two foreign states who have

6  expressed sovereign interest.  And to accord those due respect,

7  courts generally apply the balancing test from *Aerospatiale*.

8  And I think that the factors from that test weigh very heavily

9  against disclosure.

10         **THE COURT:**  And in applying that balancing test, how

11  should the Court evaluate sort of the strength of the interest

12  expressed?  Is it just sufficient to have the other sovereigns

13  say, *We're interested, and want you to not disclose it*; or

14  should the Court -- should I be doing some deeper analysis into

15  the statutory basis for sort of where that interest comes from?

16         **MS. MILICI:**  Well, I think, Your Honor, that if there

17  are questions for the Court about what the position is of the

18  foreign governments, or what that position is based on, that

19  probably the appropriate thing to do would be to ask for

20  briefing from -- from those agencies.  I believe that the

21  KFTC's letter expressed or the EC's letter expressly offered to

22  do that.  These were preliminary letters sent to the FTC.

23  Obviously, if the Court has more questions, they would be

24  better positioned to answer those.

25         **THE COURT:**  And are you in a good position to

1  communicate to them that request?

2          **MS. MILICI:**  I believe we can.

3          **THE COURT:**  All right.  Mr. Van Nest, let me hear

4  from you on the comity issue.

5          **MR. VAN NEST:**  Your Honor, I think we see it pretty

6  much the way you sized it up.  This isn't a traditional comity

7  case.  I don't think the comity rules even apply.

8      These are documents that were provided by their authors to

9  the FTC.  We're not seeking discovery from foreign authorities.

10  We're not seeking any foreign documents.  It's irrelevant to us

11  that these documents were submitted to someone else.

12      They were submitted to the FTC.  They've had the benefit

13  of them to guide their investigation, structure their

14  Complaint, evaluate the facts.  And all we're seeking is a

15  level playing field.

16      I agree with you completely that these are very soft lobs

17  from these authorities.  They could have intervened here.  They

18  know the schedule.  They're in touch with the FTC.  They chose

19  not to do that.

20      We've got a lot of work to do.  Judge Koh has us on a very

21  tight time schedule.  I think Your Honor's aware of that.

22      So I don't think the comity rules even apply here.  Even

23  if they did, though, their interests haven't really been

24  identified.

25      Our interest is very clear that these are important,

PROCEEDINGS

1   operative witnesses in the investigation.  These statements may

2   or may not be inconsistent with each other.  They may be have

3   exculpatory material.  We would need them to confront the

4   witnesses.  I just think this is sort of a no-brainer, in that

5   this claim is not well made.  The privilege is not well stated.

6         **THE COURT:**  And speak to that; to what you'll do if

7   the information, should you get it -- of course, you're having

8   to speculate a little bit about what might be in there, but as

9   far as the timing of when you've got depositions coming.  And

10  I'm thinking here about the remedy, and when things should

11  occur.

12        **MR. VAN NEST:**  We need these right away.  I mean,

13  discovery is under way right now.  We have a very tight

14  calendar, where discovery closes early next year.  Depositions

15  will begin soon, as soon as summer's over.  We have subpoenas

16  out.  Some of those subpoenas will take a little time to be

17  responded to.  We're already feeling behind.  And, as we all

18  know, it's not likely Judge Koh's going to move the trial date,

19  which is January 4th, 2019.  There's just a lot to do.

20        **THE COURT:**  I will go stronger than that, and say she

21  will not move the trial date; but yes, you're being generous.

22        **MR. VAN NEST:**  There we go.  Being polite.

23      But there's no reason to delay these.

24      And I think our request is that we get them ASAP.  They're

25  in the possession of the FTC.  Again, they were provided by the

PROCEEDINGS

1  authors to the FTC.  We didn't go to the foreign authorities.

2  They really don't have a dog in this fight.

3      In the case of the Korean authority, their investigation's

4  done.  Right?  That one's on appeal.

5      In the case of the EC, there are some parts of the

6  investigation may be still open; but most of that's closed up,

7  too.

8      So I really would urge the Court, if you see it our way,

9  to get this done promptly, and have these things turned over so

10 we can conduct further discovery if necessary, pursue further

11 witnesses if necessary, pursue further subpoenas if necessary,

12 because the clock is running, and it's not a long clock.

13          **THE COURT:**  All right.  Thank you.

14      Let's turn to the informant-privilege issue.  So what's

15 the plan?  If I uphold your informant privilege now, do you

16 have in mind disclosing something later, or is this going to be

17 through trial?  What's your thought?

18          **MS. MILICI:**  Let me start by explaining a little bit

19 about what's being withheld under the privilege.  And what's

20 being withheld are communications with third parties that

21 identify them as informants.  The bulk of these materials are

22 e-mails scheduling appointments and scheduling telephone calls.

23      There's a small subset of documents that are white papers,

24 or presentations.  These are not akin to the kind of witness

25 statements that are in the Department of Labor cases.  These

PROCEEDINGS

1   are not, you know, factual recitations.  So their use as

2   impeachment at trial, I think, is fundamentally different than

3   in some of these other cases with the case-management issues

4   that you mention.

5       That said, I think that we could revisit this as trial

6   gets closer, and once witnesses have been identified, and, you

7   know, we have some sense of what discovery has been obtained

8   from these third parties.

9       And we are happy to submit these documents and the other

10  documents withheld as Foreign Submissions for *in camera* review

11  at any time.

12           **THE COURT:**  So if you have a -- theoretically.  I'm

13  not compelling you to identify a particular informant or

14  witness, but if you theoretically have a witness at trial who's

15  going to testify about what Qualcomm did, and they wrote a

16  white paper, or they made a submission, they had a meeting,

17  they had some communication -- e-mails with the FTC -- when is

18  that -- you know, and you're asserting there may not be

19  something exculpatory.  I do not know.  I haven't seen it.  Are

20  you suggesting you will turn over a white paper from that

21  witness before trial; and if so, when?  What's your thought on

22  that?

23           **MS. MILICI:**  Again, I think the thought is that the

24  discussion is somewhat premature; that we don't know who the

25  witnesses are, so we don't know what the content of the

PROCEEDINGS

1  relevant white papers, if there are any relevant white papers,

2  is, and if they would be related at all to potential testimony.

3      But you know, we would certainly be willing to participate

4  in a process further down the road, once we know what the

5  discovery has been from third parties, and we know who the

6  witnesses are going to be; that the Court can view these

7  documents, and you can make a call.

8      **THE COURT:**  And at this point in time, you've

9  identified in your Rule 26 -- have you made witness

10 disclosures, at all?  I know it's asserted by Qualcomm that

11 there's been already some disclosure of who these -- quote,

12 unquote -- "informants" are, so it's not a big deal to compel

13 more.  What have you disclosed so far?  And I'm trying to get a

14 better understanding of what remains to be disclosed, as far as

15 your actual witnesses.

16     **MS. MILICI:**  Sure.  We've disclosed our Rule 26

17 disclosures; a list of entities that are likely to have

18 knowledge about the facts.

19     We separately disclosed a list of the third parties that

20 submitted documents during the FTC's investigation.

21     As the case law cited in the brief sets forth, there is a

22 difference in the law between who's a submitter, or who submits

23 a witness statement, and who's an informant.

24     We only withhold those documents that identify which of

25 those third parties is an informant.  If that company also

1  submitted documents, then we produced all of those documents.

2  If they sat for investigational hearing, we've produced that

3  transcript.

4      So -- so it's -- the materials being withheld are only the

5  things that identify them as informants, which is different

6  from identifying them as a submitter, or a person with

7  knowledge.

8          **THE COURT:**  Mm-hm.  All right.  Mr. Van Nest.

9          **MR. VAN NEST:**  Your Honor, I was frankly shocked to

10  hear an informant's privilege invoked here, for a couple of

11  reasons.

12      We have a letter from the FTC, which Your Honor has seen.

13  It lists all of the folks from whom these documents were

14  received.  They're all major, multinational,

15  multibillion-dollar corporations.  Most of them have

16  self-identified.

17      For example, in the Korean investigation, NVIDIA, LG, and

18  Huawei -- they've all filed publicly adverse documents

19  expressing their view that Qualcomm did something wrong, and

20  identifying themselves as people that initiated the

21  investigation.  Okay?

22      In the appeal from KFTC, Apple, Samsung, Huawei

23  MediaTek -- they've all intervened and filed adverse pleadings.

24      Apple has sued us in forums all over the world.

25      Nvidia has sued us in forums all over the world.

1      Samsung has filed amicus briefs in this case.

2      Intel has filed amicus briefs in this case.

3      A lot of these folks have self-identified.

4      And every single one of them and every single one on this

5  list I have is a major, multinational corporation.  We all know

6  that this informant's privilege is for individuals; generally,

7  confidential informants.  All of the cases that they've cited,

8  including Your Honor's case in *Seafood Peddler*, up from

9  San Rafael, that's either employees of a company who blew the

10  whistle, or it's individual confidential informants in drug or

11  gambling investigations.

12      It wasn't even contemplated -- I don't believe -- that

13  this privilege would apply in an investigation like this, where

14  these folks are publicly campaigning against Qualcomm, and

15  they're all multinational, multibillion-dollar companies.

16      **THE COURT:**  Are there any cases that limit the

17  informant's privilege to individuals, and not to companies?

18      **MR. VAN NEST:**  Well, the cases that I've seen, save

19  one, are all individuals.

20      In other words, if you want to talk about *Roviaro* --

21  *Roviaro*, the Supreme Court case -- that's a drug case.  It's a

22  confidential informant.

23      *Reyes*.  Confidential informant.  Drug case.

24      *Tsannos*.  Informant in a gambling case.

25      *Hodgson*.  Employees in a Fair Labor Standards Act case.

1      *Seafood Peddler*, same thing.

2      *Martin*, same thing.

3      There's one case, the *Pools* case, where they don't

4   identify whether the so-called "informants" are individuals, or

5   companies; big companies.  There's just simply no

6   identification, because that was a civil case here in the U.S.

7   where the FTC intervened, and the statement of the case is very

8   thin.  So I haven't seen it.

9      If -- if the concern is somehow retaliation, or some such

10   thing, we can make these available to outside counsel only.

11      I mean, I have frankly never been in a situation where

12   this stuff of this nature was handled in this way, or where a

13   privilege was asserted.

14      Certainly, Your Honor, with respect to the folks I

15   identified that self-identified themselves and are openly

16   adverse publicly campaigning, there's no question there that

17   the privilege doesn't apply, because their identities are

18   known.

19      So those -- I think there's no question they have to be

20   turned over, and should be turned over, you know, right away.

21   I think that's true for everything on here.  This list of 16 or

22   18 you've got as well as I do, Your Honor -- it's confidential

23   to the clients, so I'm not going to mention the names; but you

24   can peruse this.  And you can tell me if there's any little

25   guys on here.  I don't think so.  And so I think they should be

1    turned over, too.

2        If they're really, really concerned about retaliation,

3    then we can limit, you know, who gets access; but again, I

4    really don't want to push this down the road.  They've made

5    their Rule 26 disclosures, and we have, too.

6        Judge Koh has told us, *I'm not moving the schedule.  If*

7    *you guys have to subpoena people* -- and we're subpoenaing

8    people all over the world -- *you've got to do it now.  And if*

9    *you're going to do follow-up discovery, I don't want to hear*

10   *crying later about the deadline.*

11       And so, again, they're the ones -- the FTC -- that asked

12   for a short schedule.  They pushed for a short schedule.  They

13   asked that the schedule be as fast as possible.  And, okay,

14   that's what we're stuck with; but then please don't kick the

15   can down the road, as they like to do, and keep us from this

16   stuff.  We ought to have it, and we ought to have it as soon as

17   possible.

18           **THE COURT:**  All right.  Thanks.

19           **MR. VAN NEST:**  Thank you.

20           **THE COURT:**  Can you address whether the informant

21   privilege should have some special rule for corporate entities?

22           **MS. MILICI:**  Absolutely.  The informant privilege

23   belongs to the Government.  And it allows the Government to

24   withhold the identities of those -- furnish information about

25   possible law violations.

**PROCEEDINGS**

1          The purpose of the privilege is the for the furtherance of

2     protection of the public interest.  In law enforcement, that

3     policy applies no matter who the informant is.  There's no

4     policy reason to separate individuals from corporations.  The

5     interest here is if the -- if these disclosures are allowed,

6     will this chill future communications from industry

7     participants, which, as the declaration we submitted shows, is

8     key information that we rely on for our law-enforcement

9     function?  So there's no reason in the policy or the law for

10    treating companies any differently.

11         And then I'd just also like to respond to this argument

12    that somehow, Qualcomm nose who the informants are.  Qualcomm

13    does not know who the informants are.  Qualcomm is making

14    guesses about who the informants are.  And Qualcomm is arguing

15    that the informant's privilege shouldn't apply any time it

16    knows that -- that there are third parties who are adverse to

17    it; but knowing a third party is adverse to you is not the same

18    thing as knowing which of those third parties is an informant.

19         And the case law is clear that the informant's privilege

20    is only waived when the defendant knows the identity of the

21    informant as an informant; not that they know that this party

22    thinks that they're violating the law.  That's not the test.

23         The test is:  Do they know who the informants are?

24         And they have not met that test.

25              **THE COURT:**  And I understand the abstract concern

PROCEEDINGS

1   about law enforcement.

2       What's the particularized harm here that would be caused,

3   or there's a threat to be caused to the informants?

4       Other cases -- in a drug case there's an articulable -- a

5   risk that a person's going to be killed, or they're going to

6   disappear.  We don't have that sort of assertion in this case.

7   But the informant standard does not necessarily regard that

8   level of concern; but give me your best argument as to what the

9   harm would be if these informants were disclosed either now, or

10  soon.

11      **MS. MILICI:**  Absolutely.  First, I'd like to say that

12  the -- that the case law says that the Government can assert

13  the privilege as a right, and does not need to make a threshold

14  showing that retaliation is likely.  So I don't think that

15  that's part of the analysis.

16      That said, as set forth in the Declaration, this case

17  concerns allegations that Qualcomm is a monopolist supplier;

18  that it controls essential inputs both in technology, and in

19  components; and that it has threatened customers in the past

20  with supply disruptions.

21      I think in those circumstance, it's not unreasonable for

22  an informant to fear that if their identity was known, that the

23  monopolist who they're complaining about might retaliate

24  against them.

25      And I would also say that in the case law -- and this

1  is -- you can see this in the Department of Labor cases that we

2  cited -- the privilege isn't limited to informants who might

3  suffer some, you know, large retaliation.  It covers subtle

4  retaliation.  It covers social ostracism in cases.

5       So I think that asking, you know, *What is the big,*

6  *terrible thing that Qualcomm could do?* is a little bit of the

7  wrong question.

8       Could Qualcomm retaliate or make life more difficult for

9  these informants?

10      I think the answer to that is yes.  And it's not

11  unreasonable for them to fear that.

12          **THE COURT:**  And what about the timing?  So it's been

13  asserted that Judge Koh has a tight schedule, and that she will

14  not be likely to grant extensions.  And I agree that that is

15  unlikely to occur -- her granting an extension.  And I'm

16  unlikely to recommend any extension of discovery in the case.

17      So given that, and the need to have a process in discovery

18  where there's follow-up by both parties on what information you

19  learn, how can I address the concern asserted by Qualcomm that

20  if they don't do this now, then later if they get it, they're

21  going to miss out on an opportunity to follow up on what they

22  do learn from informants?

23          **MS. MILICI:**  Well, I -- I want to make a couple of

24  points --

25          **THE COURT:**  Mm-hm.

PROCEEDINGS

1      **MS. MILICI:**  -- to this argument that there's a

2   timing concern here.  First of all, we have been offering to

3   meet and confer about a date to exchange privilege logs

4   since -- oh, since discovery started.  And they have not

5   engaged in that conversation.  So this representation here that

6   there's some timing concern is, I think, not borne out by

7   actions that -- otherwise.

8      In addition, you know, as we've set forth in the brief,

9   Qualcomm has access to all of the information that it needs to

10  mount a defense.  We've produced 370,000 ordinary-course

11  business documents that we received from third parties.  We've

12  produced investigational hearing transcripts.  They've

13  subpoenaed, you know, more than 40 companies, including every

14  company on that list.

15     So the idea that they're going to discover something and

16  not have time to subpoena them is, I think, false.

17         **THE COURT:**  Now, what about the notion of using a

18  Protective Order as a protection for the informant companies

19  and their employees who have disclosed things, restricting the

20  use of that information, which is a lesser protection than

21  barring any discovery, but is some protection, nonetheless?

22  Why wouldn't that be a sufficient protection for them?

23         **MS. MILICI:**  I think this was addressed in the

24  Seventh Circuit's *Dole* case.  A Protective Order just isn't a

25  substitute for nondisclosure for privileged information.  And,

PROCEEDINGS

1  you know, I think that for the reasons stated there, that a

2  Protective Order -- it isn't sufficient.

3       In addition, when this was raised by Qualcomm during

4  meet-and-confers, we said we would be open to discussing

5  modifications to the Protective Order, but to make that

6  possible -- and never received a response.

7       But I think the Protective Order, as written, would not

8  give sufficient information -- protection to informants,

9  because it does allow in-house counsel to access the materials.

10 And frankly, you know, the case law says that the informant's

11 well-being shouldn't be placed in the hands of third-party

12 counsel who they don't know and don't trust.  So I think that

13 there would have to be some limitation to the outside counsel

14 that -- that were allowed to see this; but again, I think that

15 the proper thing is to not produce them, at all.

16       **THE COURT:**  And what is the status of the privilege

17 reference -- you've referenced that there's been privilege-log

18 negotiations and more conferring.  And it's -- of course,

19 everyone's favorite task is to create privilege logs.  Are

20 there internal deadlines set for when that's going to occur?

21 Can I help to move that process forward?

22       **MS. MILICI:**  No.  At this -- at this point, we

23 haven't been able to get Qualcomm to commit to when it's going

24 to finish its document production or produce a privilege log.

25 We've been in discussions about that.  We're hoping to have

1  that -- either an agreement or just submit to Judge Koh at the

2  next status conference.

3      At this point, the FTC is still working through documents,

4  and is -- and hasn't identified all of the privileged documents

5  yet.  But we put on a schedule if we were to agree to one --

6          **THE COURT:**  And the documents that you're seeking to

7  cloak under the informant's privilege -- are those all set

8  forth on a privilege log, or just -- at this moment, just by

9  category here in the Letter Brief?

10          **MS. MILICI:**  They're just by category now.

11      I mean, we could produce a privilege log, but we have not.

12  Like I said, we haven't gone through all of the documents yet,

13  so we have -- we probably haven't identified them all yet.

14          **THE COURT:**  All right.  Thank you.

15      Mr. Van Nest, anything you want to follow up on?

16          **MR. VAN NEST:**  I would like to respond to a number of

17  things here, Your Honor.

18      First of all, I think, based on what I know of these

19  documents, they are not only important, but may be critical.

20  These are the arguments that folks have put forward to the FTC.

21  They are the basis in fact for drafting the Complaint, the

22  discovery they took, the investigation they conducted.  So to

23  say that they're not a big deal is absolutely wrong.  They're

24  critical.  And there's nothing else that replaces them.  These

25  are, as they put it, the "white papers"; the Advocacy

1   Documents.

2       Obviously, as Your Honor knows, in cross-examining some of

3   these folks and conducting further discovery, this is the

4   critical thing:  What did they tell the FTC?  What did they

5   argue?  What are the facts they presented in support of that?

6   Those are critical, number one.

7       Number two, it's not my point that the law doesn't allow

8   an application of this to a company -- this privilege.  My

9   point is that where you're talking about large multinational

10  companies, the concern about retaliation or disclosure is far,

11  far reduced.  We all know that.  The classic cases are cases

12  where individuals are at risk.  So I'm not arguing you could

13  never apply it to a company, but what I am arguing is:  This is

14  not such an occasion.

15      And, as Your Honor notes, a limitation that made these

16  available to outside counsel, which Your Honor could order, is

17  more than enough protection.  It's what Your Honor did in the

18  case when Intel was in here, arguing that they didn't want

19  inside Qualcomm folks looking at it.  You said, *Okay*.  *Fine*.

20  *Limit it to the outside lawyers*.

21      My firm and my co-counsel are pretty well known in this

22  District and in the country.  I don't think they really have a

23  concern about us retaliating against anybody.  And most of

24  these people -- most of the people on this list are people that

25  Qualcomm has accused of not dealing with, at all.  I'm not sure

1  how you retaliate against another chipmaker.  The argument

2  there:  You won't deal with them.  Okay.  I'm not sure what

3  form of retaliation they're worried about.  So I think this is

4  trumped up.  I think this is a delay tactic.

5          **THE COURT:**  Is that a capital "T," or lower case?

6          **MR. VAN NEST:**  Ah.  Ha, ha, ha.  Well put,

7  Your Honor.

8          **THE COURT:**  No, no, no.

9          **MR. VAN NEST:**  We'll keep that lower case.

10     But I would again urge the Court:  Delay is not a good

11 answer.

12     And I didn't hear them say they're not going to rely on

13 this stuff.  I didn't hear them say it's not going to be

14 relevant.  We all know that at some point, this stuff is all

15 going to have to come out.  And the sooner it does, the better,

16 in terms of keeping this case on track.

17     Thank you, Your Honor.

18          **THE COURT:**  Thank you.

19          **MS. MILICI:**  Your Honor, if I could respond just

20 briefly.  We are not going to rely on any of these materials.

21 We have said that in the briefings to the Court.  We've said

22 that in multiple letters to Qualcomm.  We have no intention of

23 relying on anything we withhold for any purpose.

24          **THE COURT:**  So what does that mean?  So what would be

25 the test of that at trial; that you didn't rely upon some white

1   paper you got from one of these informants?

2       MS. MILICI:  Well, we're not going to introduce them

3   into evidence.  We're not going to use them to cross-examine

4   anyone.

5       You know, the case that Qualcomm cited was a *Sysco* case,

6   where there were declarations from third parties that were

7   attached to a motion.

8       That is certainly not how we intend to use these.  And

9   this speculation that somehow we relied on these for our

10  allegations is speculation.

11      Our case is based on the allegations in our Complaint,

12  which do not rely on the white papers, or -- or any of the

13  withheld materials.  There we have provided -- we've produced

14  documents from which you could discern the factual basis for

15  our claims.  And, you know, the Qualcomm has -- has many

16  avenues in which to -- to discover the relevant facts in this

17  case.

18      THE COURT:  All right.  You invited me to do an

19  *in camera* review of some of these materials.  And I'm not

20  particularly enthusiastic about the idea, but when it comes to

21  asserting a privilege, one really does need a privilege log to

22  really thoroughly review the quality of the assertions, and

23  also to get a better sense of the volume and some of the

24  details of what's being withheld that sort of look at every

25  document, itself; but again, I'm not seeking to compel

1  disclosure of something here in open court.  But what kind of

2  volume are we talking about?  You don't have a log yet,

3  detailing this.

4           MS. MILICI:  Sure.

5           THE COURT:  So are we talking about a million

6  documents?  10,000 documents?  A thousand documents?  A

7  hundred?

8           MS. MILICI:  Oh.

9           THE COURT:  What's the magnitude of -- if I said,

10 *Give me a privilege log for what's being withheld on the*

11 *informant's privilege*, how long would that privilege log be?

12          MS. MILICI:  For the informant's privilege, we've

13 currently identified 273 documents, of which -- 50 to 60 of

14 them are substantive.  And the remainder are the kind of

15 e-mails I mentioned of, you know, scheduling meetings, or

16 scheduling phone calls, or transmitting substantive materials.

17 But it's a small --

18          THE COURT:  All right.  Thanks very much to you both

19 for your arguments.

20     Here's what I'm going to order.  I'm going to give one

21 more week to the FTC to provide any further declarations from

22 the foreign authorities.  Of course, you've already presented

23 me with some.  I'm not persuaded based on what I've seen so far

24 that I should bar discovery of what's come to the FTC from the

25 foreign authorities; but in the interest of giving full

 1  opportunity, and because you asked for more briefing -- and if

 2  they want to, you know, submit it directly to the Court, that's

 3  fine with me, or if they want to give it to you, and have you

 4  file it, same difference.  But I want to give them one more

 5  week to give me their best arguments factually as to the

 6  reasons that I should withhold production of something produced

 7  to them then on the FTC.

 8      Within that same time period, I want to have a privilege

 9  log from the FTC, detailing the documents that have been

10  withheld under the informant's privilege.  So the -- enough

11  information that I can make a determination as to whether the

12  privilege is properly made, or not.  The who, the when, the

13  what description, without revealing the actual privileged

14  information.  And that should be provided to Qualcomm, as well.

15      From there, I may decide that I want to look at the actual

16  documents to get a better or some of the actual documents, to

17  get -- you know, more granular information about what's in

18  there.

19      My feeling right now is that I -- if I were in Qualcomm's

20  position, I would be wanting to see those materials.  Maybe

21  it's just instinctual that if somebody does not want to give

22  it, it must be important; but white papers can be significant

23  in cross-examination, and might be a source of other discovery

24  that will lead to other things.  So I want to learn a little

25  more, and give you a chance to establish the informant

1    privilege with some more specificity.

2        I won't set a further hearing now.  I may want to have a

3    further hearing after I look at those.  So those will be due

4    both one week from today, August the 16th, to be filed and

5    provided to Qualcomm.

6        And I'll issue a ruling after that, or I'll schedule a

7    further hearing to discuss what I've received.

8        Thanks very much.

9            **MR. VAN NEST:**  Thank you, Your Honor.

10           **THE COURT:**  Yes.

11           **MS. MILICI:**  Your Honor, can I ask one clarifying

12   question?

13           **THE COURT:**  Yeah.

14           **MS. MILICI:**  For the privilege log we're going to

15   produce in a week, do you want just the documents that are

16   being withheld under the informant's privilege on that, or do

17   you want --

18           **THE COURT:**  Yes, just the ones covered by the

19   informant's privilege; the set of roughly 273 you identified

20   would be sufficient.  Thanks very much.

21           **MR. VAN NEST:**  Thank you, Your Honor.

22           **THE COURT:**  Have a good afternoon.

23       (At 3:44 p.m. the proceedings were adjourned.)

24

25

1                      **<u>CERTIFICATE OF REPORTER</u>**

2

3     I certify that the foregoing is a true and correct

4 transcript, to the best of my ability, of the above pages of

5 the official electronic sound recording provided to me by the

6 U. S. District Court, Northern District of California, of the

7 proceedings taken on the date and time previously stated in the

8 above matter.

9     I further certify that I am neither counsel for, related

10 to, nor employed by any of the parties to the action in which

11 this hearing was taken; and, further, that I am not financially

12 nor otherwise interested in the outcome of the action.

13

14           *Lydia Zinn*

15 _____    August 16, 2017

16         Signature of Transcriber    Date

17

18

19

20

21

22

23

24

25