```
                                            PAGES 1 - 19

              UNITED STATES DISTRICT COURT

            NORTHERN DISTRICT OF CALIFORNIA

         BEFORE THE HONORABLE NATHANAEL COUSINS

FEDERAL TRADE COMMISSION,         )
                                  )
              PLAINTIFF,          )
                                  )
  VS.                             ) NO. 17-CV-00220-LHK-NMC
                                  )
QUALCOMM INCORPORATED, A DELAWARE )
CORPORATION,                      )
                                  ) SAN JOSE, CALIFORNIA
              DEFENDANT.          ) WEDNESDAY
                                  ) JUNE 28, 2017
_____ )
```

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND**

**RECORDING  1:12 P.M. – 1:36 P.M.**

**APPEARANCES:**

| | |
|---|---|
| **FOR INTERESTED PARTY** | WILMER CUTLER PICKERING HALE AND DORR<br>60 STATE STREET<br>BOSTON, MA 02109<br>**BY: JOSEPH J. MUELLER, ESQUIRE** |
| **FOR DEFENDANT** | CRAVATH, SWAINE MOORE LLP<br>825 EIGHTH AVENUE<br>NEW YORK, NEW YORK 10019<br>**BY: NICOLE PELES, ESQUIRE**<br>**GARY A. BORNSTEIN, ESQUIRE** |

*TRANSCRIBED BY: JOAN MARIE COLUMBINI, CSR #5435, RPR*
*RETIRED OFFICIAL COURT REPORTER, USDC*

```
 1  WEDNESDAY, JUNE 28, 2017                                1:12 P.M.
 2  (TRANSCRIBER'S NOTE: DUE AT TIMES TO COUNSELS' FAILURE TO
 3  IDENTIFY THEMSELVES WHEN SPEAKING, CERTAIN SPEAKER
 4  ATTRIBUTIONS ARE BASED ON EDUCATED GUESS.)
 5                             ---O0O---
 6                            PROCEEDINGS
 7         THE CLERK:  CALLING CIVIL 17-0220, FEDERAL TRADE
 8  COMMISSION VERSUS QUALCOMM, INCORPORATED.
 9         THE COURT:  ALL RIGHT.  COME ON UP.  DON'T BE SHY.
10         MR. MUELLER:  GOOD AFTERNOON, YOUR HONOR.  JOE
11  MUELLER ON BEHALF OF INTEL, AND WITH ME IS SHELLY WEBB,
12  ASSOCIATE GENERAL COUNSEL AT INTEL.
13         THE COURT:  GOOD AFTERNOON.  WELCOME BOTH.
14         MS. PELES:  GOOD AFTERNOON, YOUR HONOR.  NICOLE PELES
15  FROM CRAVATH ON BEHALF OF QUALCOMM.  WITH ME IS GARY BORNSTEIN,
16  ALSO FROM CRAVATH.
17         THE COURT:  GREAT.  WELCOME BOTH.
18         WE'RE HERE ON DISCOVERY WITH INTEL HAVING PRESENTED
19  AT DOCKET 110 ITS MOTION FOR A PROTECTIVE ORDER AND,
20  CONVENIENTLY FOR THE COURT, AND THANK YOU FOR THAT CONVENIENCE,
21  WE'VE GOT ATTACHED TO IT EXHIBIT A, WHICH IS INTEL'S PROPOSAL
22  THAT IS NOT AGREED TO BY QUALCOMM, AND EXHIBIT B, WHICH IS A
23  LESS STRENUOUS PROTECTIVE ORDER FROM INTEL'S PERSPECTIVE THAT,
24  AS I UNDERSTAND IT, IS AGREED BY ALL THE PARTIES, AND FTC, OF
25  COURSE, IS NOT PRESENT IN THE COURTROOM, AT LEAST NOT ON THE
```

1  RECORD, BUT THEY HAVE AN INTEREST IN HOW THE PROTECTIVE ORDER
2  GETS RESOLVED.  AS I UNDERSTAND IT, THEY'VE AGREED TO THE
3  VERSION IN B.
4          **MR. MUELLER:**  THAT'S CORRECT, YOUR HONOR.
5          **THE COURT:**  AND THE PRINCIPAL DISPUTE IS AS TO THE
6  USE OF HIGHLY CONFIDENTIAL MATERIAL AND THE ACCESS OF
7  QUALCOMM'S IN-HOUSE COUNSEL TO THOSE MATERIALS, AND THE
8  PROCEDURE THROUGH WHICH THOSE ATTORNEYS MAY OR MAY NOT ACCESS
9  THE HIGHLY CONFIDENTIAL MATERIAL.
10         IS THAT FRAMING PROPERLY THE DISPUTE?
11         **MR. MUELLER:**  THAT'S CORRECT, YOUR HONOR.  THAT'S THE
12 PRINCIPAL DISPUTE.  THERE ARE SOME SMALLER DISPUTES, BUT THAT
13 IS THE CORE DISPUTE.
14         **THE COURT:**  VERY WELL.  AND JUST TO REMIND BOTH
15 PARTIES, ON THE DISCOVERY REFERRAL IN THIS CASE AND THE RELATED
16 CASES HEREIN THE MDL -- AND EITHER PARTY OR BOTH PARTIES, IF I
17 REALLY MESS IT UP, CAN APPEAL TO JUDGE KOH WITHIN 14 DAYS OF
18 ANY RULING ON THE PROTECTIVE ORDER.
19         WITHOUT NEEDING MUCH EXPLANATION, THE STANDARD FOR
20 PROTECTIVE ORDER IS GOOD CAUSE.  THERE IS NO DISPUTE AS TO
21 WHETHER THERE'S GOOD CAUSE FOR A PROTECTIVE ORDER.  THE
22 QUESTION IS WHAT ARE THE APPROPRIATE PARAMETERS OF THE
23 PROTECTIVE ORDER IN THIS CIRCUMSTANCE.
24         I'M INTENDING TO GRANT ONE OF THE PROTECTIVE ORDERS,
25 THE QUESTION IS WHICH ONE SHOULD I CHOOSE.  AND, OF COURSE, I

1  COULD MELD THEM TOGETHER AND TAKE SOME PARTS OF EACH AND
2  FASHION SOMETHING IN BETWEEN AS WELL, BUT I'M STARTING FROM
3  HAVING EXHIBIT A AND EXHIBIT B AS THE TWO PROPOSALS BEFORE ME.
4         I WOULD APPRECIATE -- THIS, I BELIEVE, IS OUR FIRST
5  HEARING IN THIS CASE -- GETTING A LITTLE BIT OF CONTEXT FROM
6  EACH PARTY, NOT THE CLOSING ARGUMENTS AT TRIAL, THAT'S NOT WHAT
7  WE'RE DOING TODAY, BUT AS TO WHY THIS MATTERS TO EACH PARTY,
8  BOTH FROM QUALCOMM'S PERSPECTIVE, THE ROLE THAT THE IN-HOUSE
9  COUNSEL PLAY IN THIS LITIGATION AND PLAY OUTSIDE THIS
10 LITIGATION, SO HOW IT WOULD IMPACT QUALCOMM IF I GRANTED THE
11 EXHIBIT A VERSION PROPOSED BY INTEL?
12         AND THEN, CONVERSELY, FROM INTEL, I KNOW WE ARE
13 TALKING ABOUT HIGHLY CONFIDENTIAL INFORMATION, BUT JUST HOW
14 IMPORTANT THIS IS AND SORT OF WHY IT MAKES A DIFFERENCE TO
15 INTEL THAT QUALCOMM'S IN-HOUSE COUNSEL ACCESS OR DON'T ACCESS
16 MATERIAL AND SORT OF WHY THAT MATTERS FROM INTEL'S PERSPECTIVE,
17 BECAUSE THAT IS THE MOST SIGNIFICANT DIFFERENCE BETWEEN THE
18 TWO.
19         AND FOR THOSE IN THE AUDIENCE, THE KEY QUESTION IS
20 WHOSE BURDEN WILL IT BE LATER ON TO ESTABLISH SOME VARIANCE
21 FROM THESE GROUND RULES, AND THERE ARE VARIOUS APPLICATIONS OF
22 THAT, INCLUDING HOW IT'S ACCESSED, HOW IT'S PRESENTED DURING
23 THE CASE, HOW IT'S PRESENTED AT TRIAL, BUT THE STARTING POINT
24 IS WHO GETS TO SEE IT.
25         SO WHY DON'T I START, MR. MUELLER, WITH THE INTEL

1   SIDE, SINCE YOU'RE THE MOVING PARTY HERE, TO GIVE ME SOME MORE
2   CONTEXT AS TO WHY THIS MATTERS FROM INTEL, AND THEN I'LL GET
3   QUALCOMM'S PERSPECTIVE ON WHY IT MATTERS TO THEM.
4           **MR. MUELLER:**  CERTAINLY, YOUR HONOR.  SO I'LL GIVE
5   YOU A BRIEF OVERVIEW OF THE CASE AND HOW THAT LINKS UP WITH THE
6   PARTICULAR ISSUE.
7           **THE COURT:**  I JUST FRESHLY READ JUDGE KOH'S RULING ON
8   THE MOTION TO DISMISS, WHICH IS AS USUAL VERY THOROUGH AND HAS
9   A LOT OF CONTEXT FOR THE CLAIMS IN THE CASE AND THE PARTIES.
10  SO I DON'T THINK I NEED MUCH ON THAT.  BUT IF YOU CAN JUMP FROM
11  THERE INTO WHY THIS MATTERS.
12          **MR. MUELLER:**  ABSOLUTELY.  SO AS YOUR HONOR KNOWS
13  FROM THE DECISION, THERE'S THREE TYPES OF CONDUCT THAT JUDGE
14  KOH EXAMINED AS BASIS FOR THE CLAIMS BROUGHT BY THE FEDERAL
15  TRADE COMMISSION AGAINST QUALCOMM.  FIRST, WHAT THE FEDERAL
16  TRADE COMMISSION DESCRIBES AS QUALCOMM'S NO LICENSE, NO CHIPS
17  POLICY; SECOND, THE REFUSAL TO LICENSE STANDARD ESSENTIAL
18  PATENTS TO CHIP COMPETITORS; AND, THIRD A SERIES OF CONTRACTS
19  THAT THE FTC HAS ARGUED ARE EXCLUSIONARY THAT WHERE ARE
20  NEGOTIATED BETWEEN QUALCOMM AND APPLE.
21          NOW, THE MARKET AT ISSUE OR ONE OF THE MARKETS AT
22  ISSUE IS BASEBAND PROCESSOR CHIPS FOR PREMIUM LTE PRODUCTS, AND
23  THE ONLY QUALCOMM COMPETITOR FOR THAT PARTICULAR MARKET IS
24  INTEL.  INTEL IS NOT A PARTY TO THE CASE, BUT THE IMPACT OF THE
25  CONDUCT THAT THE FEDERAL TRADE COMMISSION HAS ASSERTED AS

1   ANTI-COMPETITIVE IMPACTS QUALCOMM, IMPACTS INTEL AS THE SOLE
2   COMPETITOR TO QUALCOMM FOR PREMIUM LTE CHIPS.  AND JUDGE KOH
3   GOES THROUGH INTEL AND ITS RELATIVE RELATIONSHIP TO QUALCOMM
4   AND THE IMPACT OF THE CONDUCT AT ISSUE ON COMPETITORS LIKE
5   INTEL.
6           SO THE PARTICULAR CONCERNS THAT INTEL HAS IN THIS
7   CASE DERIVE ENTIRELY FROM THE NATURE OF THE CLAIMS IN THE CASE.
8   THERE ARE THESE THREE SETS OF CONDUCT:  NO LICENSE, NO CHIPS;
9   REFUSAL TO ENTER INTO STANDARD ESSENTIAL PATENT LICENSES WITH
10  COMPETITORS; AND THE EXCLUSIONARY AGREEMENTS BETWEEN APPLE AND
11  QUALCOMM.
12          EACH OF THOSE THREE SETS OF CONDUCT INVOLVE LAWYERS.
13  THE FIRST ONE WOULD INVOLVE AT A BARE MINIMUM LICENSING
14  ATTORNEYS, AS WELL AS ATTORNEYS WHO MIGHT BE INVOLVED IN SALES
15  AGREEMENTS OR CONFERRING WITH FOLKS WHO ARE SELLING QUALCOMM
16  CHIPS, BUT THERE'S LEGAL CONDUCT THAT'S INTERTWINED IN THAT
17  FIRST SET OF CONDUCT, NECESSARILY.
18          SO, TOO, WITH THE SECOND SET, REFUSAL TO DEAL ON
19  STANDARD ESSENTIAL PATENTS.  AGAIN, AT A BARE MINIMUM,
20  LICENSING ATTORNEYS WOULD BE INVOLVED IN THAT REFUSAL TO DEAL.
21          AND THE THIRD PIECE OF CONDUCT ALSO WOULD INVOLVE
22  LAWYERS; THAT IS, THE AGREEMENTS BETWEEN QUALCOMM AND APPLE
23  WHICH WERE DRAFTED, SURELY, WITH THE ASSISTANCE OF LAWYERS.
24          AND THE POINT IS FOR EACH OF THE THREE TYPES OF
25  CONDUCT THAT ARE AT ISSUE IN THIS CASE THAT HAVE BEEN THE

1  TARGET OF THE FEDERAL TRADE COMMISSION'S COMPLAINT, LAWYERS'
2  CONDUCT IS INVOLVED.  THE QUALCOMM IN-HOUSE LEGAL DEPARTMENT'S
3  CONDUCT IS INVOLVED TO THE DETRIMENT OF THE COMPETITORS IN THE
4  MARKET, INCLUDING INTEL.
5       SO WE HAVE CONDUCT INVOLVING LAWYERS THAT'S HARMING
6  CHIP COMPETITORS, AND THERE'S ONLY ONE CHIP COMPETITOR IN THE
7  PREMIUM LTE MARKET, INTEL.  AND SO THIS CASE, WE BELIEVE
8  PRESENTS A UNIQUE INTERTWINEMENT OF IN-HOUSE LEGAL CONDUCT AND
9  THE PARTICULAR WRONGS AT ISSUE AND THE PARTICULAR HARM TO MY
10 CLIENT, NONPARTY, INTEL.
11      I WOULD DISTINGUISH THIS FACT PATTERN FROM CASES LIKE
12 A PATENT CASE, FOR EXAMPLE, WHERE THE ALLEGED INFRINGEMENT IS
13 ACTIONS THAT ARE CONDUCTED BY ENGINEERS ON A MANUFACTURING LINE
14 OR IN A LABORATORY, TRADE SECRET THEFT.  AGAIN, THAT COULD BE
15 BY TECHNICAL FOLKS WHO ARE NOT WORKING WITH A LEGAL DEPARTMENT.
16      IN THOSE CIRCUMSTANCES, YOU COULD ENVISION DISCLOSURE
17 OF HIGHLY CONFIDENTIAL TECHNICAL MATERIAL TO IN-HOUSE LAWYERS
18 IN A WAY THAT WOULDN'T JEOPARDIZE THE UNDERLYING OR -- NOT
19 IMPLICATE THE UNDERLYING HARM AT ISSUE, BECAUSE THERE'S A
20 DIVISION BETWEEN THE IN-HOUSE LEGAL FOLKS AND THE CONDUCT BEING
21 TARGETED IN THE CASE; ENGINEERS ON THE ONE HAND, IN-HOUSE LEGAL
22 FOLKS ON THE OTHER.
23      HERE IT'S ONE IN THE SAME.  THE CONDUCT AT ISSUE IS
24 INTERTWINED WITH THE ACTIONS OF QUALCOMM'S IN-HOUSE LEGAL
25 DEPARTMENT.  SO THIS IS NOT A CASE WHERE THEY CAN BE SEGREGATED

1   APART AND WHERE THE LAWYERS IN THE IN-HOUSE GROUP ARE REMOVED
2   FROM THE CONDUCT AT ISSUE IN THIS CASE.  IT'S BOUND UP
3   TOGETHER.  THAT PRESENTS SPECIAL CONCERNS TO INTEL, BECAUSE IF
4   INTEL'S HIGHLY CONFIDENTIAL MATERIAL RELEVANT TO THE CLAIMS IN
5   THIS CASE, CLAIMS WHICH IMPLICATE THE CONDUCT OF QUALCOMM'S
6   IN-HOUSE FOLKS, WERE GIVEN TO QUALCOMM'S IN-HOUSE FOLKS, IT
7   PRESENTS EXACTLY THE RISK OF THE PARTY WHO'S ACCUSED OF BEING
8   ENGAGED IN WRONGDOING MISUSING THAT INFORMATION.
9          I WANT TO UNDERSCORE HERE, WE'RE NOT SAYING THIS WILL
10  BE DONE WITH ILL INTENT.  THERE COULD BE ALL THE BEST
11  INTENTIONS AND WALLS SET UP AND ALL THE REST.  BUT IF
12  INFORMATION ABOUT INTEL'S LICENSES FOR PATENTS OR SALES
13  PRACTICES OR STRATEGIC PLANNING WERE GIVEN TO QUALCOMM IN-HOUSE
14  LEGAL DEPARTMENT PERSONNEL, THERE IS A REAL RISK THAT AT SOME
15  POINT THOSE PERSONNEL COULD BE INVOLVED IN THE TYPES OF CONDUCT
16  THAT IS SQUARELY AT ISSUE IN THE FEDERAL TRADE COMMISSION'S
17  COMPLAINT.  AND THAT'S THE CONCERN OF INTEL.
18         AS WE SAID IN OUR BRIEFING, YOUR HONOR, IF THERE WERE
19  A SHOWING OF TRUE EXIGENT NEED FOR IN-HOUSE PERSONNEL TO HAVE
20  ACCESS TO INTEL'S HIGHLY CONFIDENTIAL INFORMATION, QUALCOMM
21  COULD APPROACH THE COURT AT THAT TIME AND MAKE A SHOWING TO
22  THAT EFFECT.  WE DON'T THINK THAT'S GOING TO HAPPEN FOR TWO
23  REASONS.  ONE, THE QUALCOMM IN-HOUSE PERSONNEL WOULD HAVE, EVEN
24  UNDER OUR PROPOSAL, ACCESS TO CONFIDENTIAL INTEL INFORMATION.
25  THERE'S TWO TIERS.  THERE'S CONFIDENTIAL AND HIGHLY

1  CONFIDENTIAL.  WE ARE NOT DISPUTING THE PROTECTIVE ORDER'S
2  TREATMENT WITH RESPECT TO CONFIDENTIAL INFORMATION, AND THAT
3  CAN BE GIVEN TO A DESIGNATED TO A GROUP OF QUALCOMM IN-HOUSE
4  PERSONNEL.
5            **THE COURT:**  SORRY TO INTERRUPT.  WHAT'S YOUR ESTIMATE
6  OF THE VOLUME OF HIGHLY-CONFIDENTIAL INFORMATION, EITHER IN
7  PERCENTAGE OR SOME OTHER BASIS?
8            **MR. MUELLER:**  I WOULD SAY ON A PERCENTAGE BASIS,
9  THERE WOULD BE A FAIRLY HIGH PERCENTAGE OF THE MATERIAL THAT'S
10 GOING TO BE REQUESTED BY QUALCOMM AND HAS BEEN REQUESTED IN A
11 SUBPOENA THAT WE'VE RECEIVED SINCE WE FIRST FILED OUR BRIEF, AS
12 WELL AS MATERIAL THAT WAS GIVEN TO THE FEDERAL TRADE COMMISSION
13 BEFORE THIS LITIGATION, WHICH WE UNDERSTAND QUALCOMM HAS
14 REQUESTED FROM THE FEDERAL TRADE COMMISSION.
15           SO ON A PERCENTAGE BASIS, I'D SAY IT WOULD BE A
16 DECENTLY HIGH AMOUNT.  I CAN'T GIVE YOU AN EXACT VOLUME
17 ESTIMATE.  BUT THERE WOULD BE SOME INFORMATION THAT WOULD BE
18 NON-HIGHLY CONFIDENTIAL, AND THE IN-HOUSE FOLKS WOULD HAVE
19 THAT.
20           WITH RESPECT TO THE HIGHLY CONFIDENTIAL INFORMATION,
21 OF COURSE, THEY HAVE HIGHLY EXPERIENCED COUNSEL WHO WILL BE
22 ABLE TO REVIEW ALL OF IT AND WHO HAVE THE ABILITY TO ADVISE
23 THEIR CLIENTS, AS I THINK ALL OF US ARE ACCUSTOMED TO DOING IN
24 MANY, MANY CASES, ABOUT THE IMPORT OF WHAT THEY'VE SEEN AND
25 GIVE THEM THEIR BEST JUDGMENT BASED ON THE INFORMATION THEY

1    HAVE WHICH WOULD BE COMPLETE AND ABSOLUTE.

2             SO, REALLY, THE QUESTION IS, IS THERE A NEED FOR

3    QUALCOMM'S IN-HOUSE COUNSEL TO HAVE ACCESS TO THE HIGHLY

4    CONFIDENTIAL INFORMATION, AND, MOREOVER, UNDER *BROWN BAG*, IN

5    THE *BROWN BAG* BALANCING FRAMEWORK, ARE UNDUE RISKS BEING PLACED

6    ON INTEL BY VIRTUE OF SUCH A DISCLOSURE.  AND WE WOULD SAY AT

7    LEAST AS DEFAULT IN THIS CASE THE ANSWER IS UNDUE RISK AND

8    BURDEN TO INTEL OUTWEIGHS ANY INCREMENTAL BENEFIT THAT QUALCOMM

9    COULD RECEIVE FROM HAVING IN-HOUSE COUNSEL HAVE ACCESS TO THIS

10   HIGHLY CONFIDENTIAL INFORMATION.  AND, AGAIN, WE THINK IT'S

11   REALLY A FUNCTION OF THE PARTICULAR CLAIMS IN THIS CASE.

12            WHAT WE THOUGHT WAS NOTABLE ABOUT THE COURSE OF THE

13   BRIEFING, YOUR HONOR, IS THAT WE FOCUSED IN OUR OPENING BRIEF

14   ON THE CLAIMS IN THIS CASE, THE SAME CLAIMS JUDGE KOH DEALT

15   WITH TWO DAYS AGO.  THE OPPOSITION BRIEF FOCUSED ON THE MODEL

16   PROTECTIVE ORDER IN THE ABSTRACT.

17            AND, RESPECTFULLY, THAT'S NOT THE ISSUE.  THE ISSUE

18   IS THE PARTICULAR CLAIMS AT ISSUE IN THIS CASE AND THE UNIQUE

19   WAY IN WHICH THOSE CLAIMS IMPLICATE THE WORK OF QUALCOMM'S

20   IN-HOUSE COUNSEL.  AND INTEL AS A DIRECT COMPETITOR AND A

21   NON-PARTY FACES RISK FROM DISCLOSING ITS HIGHLY CONFIDENTIAL

22   INFORMATION TO THE VERY DEPARTMENT WHOSE CONDUCT IS AT ISSUE IN

23   THIS CASE.

24            THE LAST POINT I MAKE, YOUR HONOR, IS, AGAIN, WE'RE

25   SAYING THIS WITH ALL DUE RESPECT TO QUALCOMM AND ITS COUNSEL.

1  WE ASSUME THEY ARE GOING TO TRY TO SET UP SOME SAFEGUARDS, BUT
2  PEOPLE MOVE IN DEPARTMENTS OVER TIME, AS THE CASES RECOGNIZE,
3  AS *BROWN BAG*, FOR EXAMPLE, RECOGNIZES; COMPARTMENTALIZING
4  INFORMATION IS DIFFICULT.  AND IN A CASE WHERE THE COURSE OF
5  CONDUCT AT ISSUE IS THE WORK OF THIS DEPARTMENT IN EACH OF THE
6  THREE CATEGORIES AT ISSUE, WE THINK THAT THE RISK THAT FOLKS
7  WILL MIGRATE FROM A POSITION TO ONE WHICH MIGHT INVOLVE ONE OR
8  MORE OF THOSE THREE SETS OF CONDUCT IS TOO GREAT A RISK FOR ITS
9  DIRECT COMPETITOR TO BEAR.
10         JUST ONE FINAL, FINAL POINT.
11         **THE COURT:**  I ALREADY GAVE YOU A FINAL, BUT I'LL GIVE
12 YOU ONE MORE FINAL.
13         **MR. MUELLER:**  SURE.  I APOLOGIZE.
14         THE FINAL, FINAL POINT IS THE COMPETITOR
15 DECISION-MAKING BAR, YOUR HONOR, IN THE CURRENT PROTECTIVE
16 ORDER IS ONE YEAR FROM RECEIPT OF THE INFORMATION, NOT ONE YEAR
17 AFTER THE CASE IS OVER, ONE YEAR AFTER RECEIPT OF THE
18 INFORMATION.  AND IT PLACES A BURDEN ON INTEL TO ESTABLISH THAT
19 THE INFORMATION SHOULD NOT BE DISCLOSED AND HOW -- QUALCOMM
20 IN-HOUSE COUNSEL.
21         SO WHAT WE'RE FACED WITH IS A CIRCUMSTANCE WHERE
22 FOLKS IN THE IN-HOUSE DEPARTMENT AT QUALCOMM WOULD RECEIVE THIS
23 INFORMATION UNLESS WE MET A BURDEN OF SHOWING THEY SHOULDN'T
24 RECEIVE IT, AND THEN ONE YEAR AFTER IT, THEY COULD MOVE INTO A
25 POSITION OF COMPETITIVE DECISION MAKING UNDER THE CURRENT

1  PROTECTIVE ORDER.
2            AND THAT'S SIMPLY TOO GREAT A RISK, WE WOULD ARGUE,
3  YOUR HONOR, TO ITS DIRECT COMPETITOR IN THE UNIQUE
4  CIRCUMSTANCES OF THIS CASE.
5            **THE COURT:**  THANK YOU VERY MUCH.
6            **MS. PELES:**  A COUPLE OF POINTS IN RESPONSE.
7            FIRST, QUALCOMM DISAGREES THAT THERE'S A MARKET FOR
8  PREMIUM LTE CHIPS AND ALSO WOULD DISAGREE THAT INTEL IS THE
9  ONLY COMPETITOR, EVEN IF THERE IS SUCH A MARKET.  I THINK WE
10 CAN PUT THAT ISSUE ASIDE FOR NOW.
11           MOST CRITICALLY, INTEL'S ARGUMENT INCORRECTLY ASSUMES
12 THAT ALL OF QUALCOMM'S IN-HOUSE ATTORNEYS HAVE INVOLVEMENT IN
13 THE LICENSING AND SALES PRACTICES THAT ARE AT ISSUE AND
14 ALLEGATIONS IN THE COMPLAINT, AND THAT'S SIMPLY NOT THE CASE.
15           THERE ARE LAWYERS THAT ARE HOUSED IN THE BUSINESS
16 UNITS AT QUALCOMM THAT DO HAVE RESPONSIBILITY FOR DRAFTING AND
17 NEGOTIATING THOSE AGREEMENTS.  THERE IS ALSO A CORPORATE LEGAL
18 DEPARTMENT AT QUALCOMM THAT HAS IN-HOUSE LAWYERS WHOSE PRIMARY
19 BUSINESS RESPONSIBILITIES INCLUDE MANAGING LITIGATIONS LIKE
20 THIS ONE, AND THOSE LAWYERS DO NOT HAVE BUSINESS
21 RESPONSIBILITIES FOR NEGOTIATING THE TYPES OF AGREEMENTS THAT
22 WOULD BE AT ISSUE HERE.
23           THE LAWYERS WITH BUSINESS RESPONSIBILITIES FOR
24 LICENSING AND CHIP SALES NEGOTIATIONS AND AGREEMENTS WOULD BE
25 BARRED UNDER THE PROTECTIVE ORDER AS CURRENTLY DRAFTED AND

1  INCLUDING THE EXHIBIT B OF PROVISIONS, WHICH BAR LAWYERS WITH
2  COMPETITIVE DECISION MAKING FROM HAVING DISCLOSURE FOR HIGHLY
3  CONFIDENTIAL INFORMATION.
4        MOST IMPORTANTLY, THIS IS A DISTINCTION THAT THE
5  SECTION 7.4 PROCESS, WHICH HAS BEEN APPROVED BY THIS COURT,
6  ALLOWS THE COURT TO MAKE AT THE APPROPRIATE TIME WHEN QUALCOMM
7  WOULD MAKE A MOTION UNDER SECTION 7.4 TO DISCLOSE PARTICULAR
8  DOCUMENTS TO PARTICULAR IN-HOUSE LAWYERS, AND AT THAT TIME THE
9  COURT COULD MAKE A DETERMINATION BASED ON A FULLY-INFORMED
10 FACTUAL RECORD AS TO WHETHER IT THINKS THE RISKS TO INTEL
11 OUTWEIGH THE NEED FOR DISCLOSURE.  AND SO WE WOULD SUBMIT THAT.
12       AT THIS POINT WE DON'T HAVE A FULLY-INFORMED FACTUAL
13 RECORD TO MAKE THAT DETERMINATION AND HAVING A CATEGORICAL BAR
14 AT THIS EARLY STAGE IS NOT WARRANTED AND THAT THE PROTECTIVE
15 ORDER WITH THE SECTION 7.4 MECHANISM ADEQUATELY PROTECTS
16 INTEL'S INTERESTS.
17       **THE COURT:**  LET ME ASK THIS:  FROM QUALCOMM'S
18 PERSPECTIVE, WHAT IS THE NEED FOR IN-HOUSE COUNSEL TO ACCESS
19 INFORMATION KNOWING WHAT WE KNOW RIGHT NOW?  TELL ME WHAT WOULD
20 BE LOST IF I GRANTED INTEL'S REQUEST.
21       **MS. PELES:**  CERTAINLY.  YOU KNOW, IT'S HARD TO
22 PREDICT ALL OF THE CIRCUMSTANCES THAT COULD ARISE THAT WOULD
23 REQUIRE IN-HOUSE COUNSEL TO HAVE ACCESS TO INTEL'S HIGHLY
24 CONFIDENTIAL INFORMATION, BUT SOME EXAMPLES THAT WE CAN, YOU
25 KNOW, THINK OF TODAY IS, YOU KNOW, QUALCOMM'S IN-HOUSE LAWYERS

1  HAVE TECHNICAL EXPERTISE.  THEY'VE BEEN DOING THIS WORK AND
2  HAVE BEEN INVOLVED WITH QUALCOMM FOR A LONG TIME.
3          SO TO THE EXTENT THAT WE WANTED THEIR INTERPRETATION
4  OF WHAT CERTAIN DOCUMENTS MEAN, WE WOULD LIKE TO BE ABLE TO AT
5  LEAST SEEK PERMISSION FROM INTEL AND THEN THE COURT IN ORDER TO
6  BE ABLE TO MAKE THAT DISCLOSURE.
7          THERE COULD BE DOCUMENTS THAT ARE CRITICALLY
8  IMPORTANT TO THE STRATEGIC DECISIONS THE LITIGATION WILL TAKE
9  GOING FORWARD, WHOSE DEPOSITION TO TAKE, WHAT LINE OF
10 QUESTIONING WE MIGHT WANT TO DO, WHETHER WE WANT TO MOVE FOR
11 SUMMARY JUDGMENT ON A PARTICULAR GROUND, AND WITHOUT HAVING THE
12 ABILITY TO DISCLOSE THE FACTUAL BASES ON WHICH WE'RE MAKING
13 THOSE DECISIONS IT WOULD BE, YOU KNOW, PROHIBITIVELY DIFFICULT
14 FOR QUALCOMM'S IN-HOUSE COUNSEL WHO HAVE LITIGATION MANAGEMENT
15 RESPONSIBILITIES TO ACTUALLY EXERCISE THOSE RESPONSIBILITIES.
16         **THE COURT:**  AND YOU MENTIONED THAT THERE ARE
17 DIFFERENT DEPARTMENTS WITHIN IN-HOUSE WITH DIFFERENT
18 RESPONSIBILITIES; THEY'RE NOT ALL DOING THE SAME THINGS, SOME
19 MIGHT HAVE OVERLAP BETWEEN LICENSING AND LITIGATION, SOME MIGHT
20 NOT.  CAN YOU SPECIFY PARTICULAR PERSONS WITHIN THE IN-HOUSE
21 WHO WE COULD CARVE OUT FROM INTEL'S PROPOSAL TO SAY THIS PERSON
22 OR THESE CERTAIN PEOPLE DON'T HAVE THAT OVERLAPPING CONCERN AND
23 DO HAVE A NEED TO ACCESS THE HIGHLY CONFIDENTIAL INFORMATION,
24 SO THEY SHOULD BE PERMITTED TO ACCESS THIS HIGHLY CONFIDENTIAL
25 INFORMATION?

1    **MS. PELES:** WE CERTAINLY COULD DO THAT. I DON'T HAVE
2    A LIST SITTING HERE WITH ME TODAY. CERTAINLY, THE FIVE PEOPLE
3    THAT ARE LISTED IN EXHIBIT B TO THE PROTECTIVE ORDER NOW AS
4    IN-HOUSE COUNSEL WHO CAN ACCESS CONFIDENTIAL INFORMATION WOULD
5    BE ON THAT LIST. THERE WOULD LIKELY BE OTHERS. AND, YOU KNOW,
6    IF THE COURT WOULD LIKE IT, WE'D BE HAPPY TO SUBMIT SUCH A
7    LIST.
8    **THE COURT:** ALL RIGHT. ANYTHING ELSE THAT YOU THINK
9    I SHOULD CONSIDER IN RULING ON THE MOTION?
10   **MS. PELES:** I GUESS ONE OTHER POINT I WOULD MAKE IS
11   THAT, YOU KNOW, INTEL'S COUNSEL MADE THE POINT THAT THE BURDEN
12   WOULD BE ON INTEL TO PROVE THAT DISCLOSURES SHOULD NOT BE MADE,
13   BUT THE -- THAT IS A BURDEN OF PERSUASION THAT IS FOUND IN THE
14   MODEL PROTECTIVE ORDER, BUT THERE IS SIGNIFICANT BURDEN THAT
15   QUALCOMM WOULD HAVE TO UNDERTAKE IN ORDER TO INITIATE THE 7.4
16   PROCESS, AND INCLUDING PROVIDING DETAILED INFORMATION TO BOTH
17   INTEL AND THE COURT ABOUT THE LAWYERS THAT IT WOULD SEEK TO
18   MAKE DISCLOSURE TO, AS WELL AS THE PARTICULAR DOCUMENTS AT
19   ISSUE.
20   IT WOULD ALSO, IF INTEL WERE NOT TO CONSENT, QUALCOMM
21   WOULD BE THE ONE MAKING THE MOTION TO A COURT DESCRIBING WITH
22   REASONABLE PARTICULARITY WHY IT FEELS DISCLOSURE IS NECESSARY,
23   AS WELL AS, YOU KNOW, WHAT TYPES OF PROTECTIONS ARE PUT IN
24   PLACE TO GUARD THE RISK OF DISCLOSURE OF INTEL'S HIGHLY
25   CONFIDENTIAL INFORMATION.

1      **THE COURT:**  ALL RIGHT.  MR. MUELLER -- THANK YOU.
2  THERE'S ONE OTHER ISSUE I WANTED TO ADDRESS.  THAT'S PARAGRAPH
3  15 OF THE EXHIBIT A PROPOSAL, AND THAT CONCERNS THE USE OF
4  DESIGNATED MATERIAL AT TRIAL OR HEARING, SOMETHING THAT WAS
5  ADDRESSED IN THE BRIEFS.
6      MY CONCERN IS THIS PARAGRAPH CONCERNS A TRIAL IN
7  FRONT OF ANOTHER JUDGE, AND THAT'S JUDGE KOH, AND SHE MAY HAVE
8  SOME CONCERNS ABOUT THE TYING OF HER HANDS AS TO HOW THINGS
9  WILL BE USED AT TRIAL, AND SHE MIGHT FIND THIS TO BE OVERLY
10 STRUCTURED IN PREVENTING HER ORDERLY PRESENTATION OF EVIDENCE
11 AT TRIAL OR HEARING.
12     I'M CONCERNED BY THAT, BUT I DON'T KNOW HOW SHE'LL
13 RESPOND.  SO I WILL PUT AS A CAVEAT, IF I WERE TO GRANT THIS
14 PARAGRAPH, SHE MIGHT DISAGREE WHEN YOU ACTUALLY GET TO A
15 HEARING OR TRIAL AND MIGHT IMPOSE SOMETHING DIFFERENT.  JUST
16 BUYER BEWARE, EVEN IF I GRANT THAT REQUEST, IT DOES NOT PREVENT
17 JUDGE KOH FROM VARYING THE RULE AT HEARING OR TRIAL AND
18 REQUIRING SOMETHING DIFFERENT.
19     **MR. MUELLER:**  UNDERSTOOD, YOUR HONOR.  MAY I BRIEFLY
20 RESPOND?
21     **THE COURT:**  VERY BRIEFLY.
22     **MR. MUELLER:**  JUST VERY BRIEFLY, YOUR HONOR.
23     TWO POINTS.  FIRST, THAT WITH RESPECT TO THE NEED FOR
24 QUALCOMM IN-HOUSE COUNSEL TO USE THE INFORMATION, TO THE EXTENT
25 THAT THE QUALCOMM IN-HOUSE COUNSEL HAVE PARTICULAR SUBJECT

1   MATTER EXPERTISE THAT WOULD LEND ITSELF TO AN ANALYSIS OF THE
2   MATERIALS PRODUCED BY INTEL, THAT'S EXACTLY OUR CONCERN, THAT
3   THEY WOULD HAVE THAT EXPERTISE AND THAT PRESENTS THE RISK WE'RE
4   CONCERNED ABOUT.  IF THEY DON'T HAVE THAT PARTICULAR EXPERTISE,
5   THERE'S LESS NEED SHOW IT TO THEM.
6            AND (INDISCERNIBLE) WE'VE ALL DEALT WITH SITUATIONS
7   IN WHICH WE DON'T HAVE THE ABILITY TO SHOW THESE TYPES OF
8   MATERIALS TO IN-HOUSE COUNSEL, AND WE'VE ALL FOUND WAYS TO
9   NONETHELESS ADVISE OUR CLIENTS WITH RESPECT TO SUMMARY JUDGMENT
10  AND LINES OF QUESTIONING AT DEPOSITIONS AND THE LIKE.
11           SECOND POINT, YOUR HONOR, IS WITH RESPECT TO THE
12  EXISTING PROTECTIVE ORDER, THE BURDEN, THE ULTIMATE BURDEN
13  UNDER PARAGRAPH 7.4 WOULD BE ON INTEL TO SHOW THAT DISCLOSURE
14  TO DESIGNATED HOUSE COUNSEL WOULD RISK HARM THAT WOULD OUTWEIGH
15  THE RECEIVING PARTY'S NEED TO DISCLOSE, AND THAT'S THE BURDEN
16  WE'RE CONCERNED ABOUT.  WE DON'T THINK THAT BURDEN SHOULD FALL
17  ON A NON-PARTY DIRECT COMPETITOR WHO THE FTC IS BEING HARMED BY
18  THE VERY CONDUCT AT ISSUE IN THE CASE.
19           FINALLY, THAT'S AMPLIFIED BY THE COMPETITIVE
20  DECISION-MAKING BAR, WHICH, AS I MENTIONED, IS ONLY ONE YEAR
21  FROM RECEIPT, MEANING A QUALCOMM IN-HOUSE LAWYER COULD RECEIVE
22  THE INFORMATION TODAY, ONE YEAR FROM NOW MOVE INTO A DIFFERENT
23  POSITION THAT INVOLVES COMPETITIVE DECISION MAKING, INCLUDING
24  IN THE THREE SETS OF CONDUCT BEING CHALLENGED BY THE FTC AND
25  THAT, AGAIN, MAGNIFIES OUR CONCERN.

1          LAST THING, YOUR HONOR, IS UNDER OUR PROPOSAL THEY
2  COULD APPROACH YOUR HONOR AND SAY:  WE HAVE DISCRETE
3  INFORMATION THAT WE NEED TO SHOW IN-HOUSE COUNSEL.  WE SAID
4  THAT IN OUR BRIEF.  IF THAT CIRCUMSTANCE ARISES, WE COULD BE
5  BACK IN FRONT OF YOUR HONOR, BUT WE BELIEVE ON THE FACTS OF THE
6  CASE, THE CLAIMS IN THE CASE, THE PRESUMPTIVE APPROACH SHOULD
7  BE NO DISCLOSURE OF INTEL HIGHLY CONFIDENTIAL INFORMATION.
8          **THE COURT:**  THANKS VERY MUCH.  HERE'S MY RULING FOR
9  THE MOTION ON PROTECTIVE ORDER.
10         I'M GRANTING INTEL'S REQUEST FOR PROTECTIVE ORDER AND
11 WILL ENTER THE FORM IN EXHIBIT A ATTACHED AS 110-2 IN THE
12 DOCKET.  THE REASONS ARE I FIND THERE'S GOOD CAUSE FOR THAT.
13         IN PARTICULAR, IT'S THE CIRCUMSTANCES OF THIS CASE
14 WITH THE CHARGES IN THIS CASE AND THE PROCEDURAL POSTURE OF
15 THIS CASE.  SO I'M NOT SUGGESTING THAT THE COURT'S STANDARD
16 PROTECTIVE ORDER SHOULD BE MODIFIED IN A WAY THAT EVERY CASE
17 WILL HAVE THIS SHIFTING OF BURDEN, BUT IN THIS CIRCUMSTANCE
18 WITH THE ALLEGATIONS AGAINST QUALCOMM AND THE PROFFERED ROLE OF
19 COUNSEL IN THE COMPANY, AND GIVEN THE TYPE OF INFORMATION THAT
20 HAS ALREADY BEEN PRODUCED TO THE FTC AND IS SUBJECT TO SUBPOENA
21 TO QUALCOMM, I AGREE WITH INTEL'S PRESENTATION THAT THE RISK
22 OUTWEIGHS THE BENEFIT BASED ON THE RECORD BEFORE ME.
23         BUT IN SO RULING, IF THERE'S A PARTICULAR -- IN THE
24 FUTURE, IF THERE'S A PARTICULAR IN-HOUSE ATTORNEY OR PARTICULAR
25 SET OF IN-HOUSE ATTORNEYS WHO CAN DEMONSTRATE WITH MORE

1   PARTICULARITY DOWN THE ROAD THAT THERE'S A PIECE OF INFORMATION
2   THAT THEY DO NEED TO ACCESS AND CAN EXPLAIN WHY, HAPPY TO COME
3   BACK TO HAVE A FURTHER DISCUSSION ABOUT THAT.  THAT WILL BE
4   LESS ABSTRACT.  IT MIGHT BE IN CONNECTION WITH A PARTICULAR
5   MOTION OR A PARTICULAR HEARING OR A PARTICULAR PIECE OF
6   EVIDENCE, AND THEN WE CAN GRAPPLE WITH WHETHER THAT PARTICULAR
7   SET OF INFORMATION SHOULD BE SHARED WITH THOSE INDIVIDUALS.
8          HERE WE'RE SETTING A TEMPLATE FOR WHAT'S GOING TO
9   TAKE PLACE OVER THE COURSE OF THE CASE, AND I THINK THE
10  APPROPRIATE AND PROTECTIVE TEMPLATE, RESPECTING THAT INTEL IS A
11  THIRD PARTY HERE, IS THE FORM THAT THEY HAVE SUGGESTED TO THE
12  COURT IN EXHIBIT A.
13         SO I'M GOING TO ENTER THAT EXHIBIT, KNOWING THERE
14  MIGHT BE CONTINUED NEED FOR FURTHER CONFERRING AND MODIFICATION
15  DOWN THE ROAD DEPENDING ON WHAT PARTICULAR CIRCUMSTANCES COME
16  UP IN THE CASE.
17         THAT'S THE COURT'S ORDER.  THANK YOU VERY MUCH.
18         **MR. MUELLER:**  THANK YOU, YOUR HONOR.
19         **MS. PELES:**  THANK YOU, YOUR HONOR.
20         **THE COURT:**  HAVE A GOOD DAY.
21         (PROCEEDINGS ADJOURNED AT 1:36 P.M.)

## CERTIFICATE OF TRANSCRIBER

I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT, TO THE BEST OF MY ABILITY, OF THE ABOVE PAGES OF THE OFFICIAL ELECTRONIC SOUND RECORDING PROVIDED TO ME BY THE U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, OF THE PROCEEDINGS TAKEN ON THE DATE AND TIME PREVIOUSLY STATED IN THE ABOVE MATTER.

I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR, RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN WHICH THIS HEARING WAS TAKEN; AND, FURTHER, THAT I AM NOT FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE ACTION.

*/s/ JOAN MARIE COLUMBINI*

JOAN MARIE COLUMBINI

JULY 28, 2017