CRAVATH, SWAINE & MOORE LLP
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
825 Eighth Avenue
New York, New York 10019-7475
Telephone:  (212) 474-1000
Facsimile:   (212) 474-3700

KEKER, VAN NEST & PETERS LLP
Robert A. Van Nest, SBN 84065
rvannest@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  (415) 676-2289
Facsimile:  (415) 397-7188

MORGAN, LEWIS & BOCKIUS LLP
Richard S. Taffet (*pro hac vice*)
richard.taffet@morganlewis.com
101 Park Avenue
New York, NY 10178-0060
Telephone:  (212) 309-6000
Facsimile:  (212) 309-6001

BOIES SCHILLER FLEXNER LLP
William A. Isaacson, DC Bar No. 414788
wisaacson@bsfllp.com
Karen L. Dunn, DC Bar No. 1002520
kdunn@bsfllp.com
Amy J. Mauser, DC Bar No. 424065
amauser@bsfllp.com
1401 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 237-2727
Facsimile: (202) 237-6131

BOIES SCHILLER FLEXNER LLP
Edward H. Takashima
etakashima@bsfllp.com
401 Wilshire Blvd, Suite 850
Santa Monica, CA 90401
Telephone:  (310) 752-2400
Facsimile:  (310) 752-2490

Attorneys for Defendant
QUALCOMM INCORPORATED

Attorneys for Non-Party
APPLE INC.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION<br><br>  Plaintiff,<br><br>v.<br><br>QUALCOMM INCORPORATED, a Delaware corporation,<br><br>  Defendant. | Case No. 5:17-CV-00220-LHK-NMC<br><br>**DEFENDANT QUALCOMM INCORPORATED'S AND NON-PARTY APPLE INC.'S JOINT STATEMENT ON APPLE'S DOCUMENT PRODUCTION STATUS AND DOCUMENT LOGGING**<br><br>Courtroom:  7, 4th Floor<br>Judge:   Hon. Nathanael M. Cousins |
| IN RE QUALCOMM ANTITRUST LITIGATION | Case No. 5:17-MD-02773-LHK-NMC |

Defendant Qualcomm Incorporated ("Qualcomm") and Non-Party Apple Inc. ("Apple") submit this joint discovery statement regarding two issues. The first issue is the status of Apple's compliance with the Court's order to substantially complete its production of documents by December 15, 2017. The second issue is whether Apple should be required to log certain withheld communications over which it asserts a non-waiver of privilege pursuant to the common interest doctrine. Qualcomm and Apple met and conferred about these issues on November 29 and December 1, 5, 7, 11 and 13, but were unable to come to resolution.

## I.      Qualcomm's Position

### A.      Apple Has Not Met the Court's Substantial Completion of Production Deadline.

Apple's figures below definitively prove it failed to meet this Court's December 15 deadline to substantially complete its production of documents. (ECF No. 239). Apple states that it has produced 2.6 million documents and determined another 350,000 documents to be non-responsive. But Apple admits that there are another *1.3 million* documents hit by the Court-ordered search terms, on which Apple has done only an "initial review". In other words, the deadline for substantial completion has arrived, and Apple still has not produced well over one million documents. Nor does Apple even venture an estimate as to when those documents will be produced.[1] To make matters worse, the as-yet unproduced documents are heavily weighted toward custodians that Qualcomm has said it will depose, meaning that Apple's failure to comply with the deadline is materially impairing Qualcomm's ability to prepare for depositions. Qualcomm also notes that approximately 2.25 million documents remain unaccounted for in Apple's statistics. In Apple's December 15 Status Report (ECF No. 403), Apple stated that "6.5 million documents have been slated for review". Apple's numbers below add up to only 4.25 million documents. Apple does not explain what has happened to the remainder.

This Court warned Apple that its Orders are "not just made-up deadlines; they're necessary in order to get the depositions done in an orderly fashion in this case."[2] Depending on how long it takes Apple to complete its production, Qualcomm now faces the prospect of being meaningfully prejudiced in its ability to defend itself—being squeezed between Apple's delayed production of documents and the March 30, 2018 close of fact discovery. Given Apple's failure to meet a critical deadline it has known about for months, Qualcomm now petitions the Court to require Apple to produce immediately, subject to the already-entered Rule 502(d) Order (ECF No. 355), (i) all 1.3 million potentially responsive documents for which Apple has conducted an "initial review", and (ii) any documents hitting the Court-ordered search terms that Apple has yet to review. Moreover, Qualcomm reserves its right to seek appropriate sanctions in the light of the additional burdens to be imposed on Qualcomm.

### B.      Apple Should Be Required To Log Communications Withheld on the Basis of a Common Interest Agreement.

Apple has indicated that it intends to withhold from production, on the basis of a purported privilege, communications that Apple and its representatives had with a variety of third parties. In particular, Apple asserts that it has common interest agreements with the

---

[1] Qualcomm's concerns about timing are born of experience: in Apple's November 17 Status Report, Apple noted that it was "in the process" of producing roughly 1.1 million documents to Qualcomm (ECF No. 318). Qualcomm first received a *subset* of those documents on November 27—*sixteen days* after Apple said those documents were "in the process" of being produced. And to date, Apple has produced fewer than 100 documents for several key custodians Apple knows are likely to be deposed.

[2] Nov. 27, 2017 Hearing Tr. 21:16-18.

1

plaintiffs in these actions—both the FTC and counsel for the putative class—as well as with Intel, MediaTek, Samsung, Compal, Foxconn, Pegatron and Wistron.[3]  The validity of Apple's privilege claims over these external communications is dubious, and will depend on the circumstances and content of each communication.  Accordingly, Qualcomm is entitled to a privilege log (which is due to Qualcomm on December 29, 2017) containing those communications, because Qualcomm may wish to challenge some or all of the privilege claims.  However, Apple has refused to log—or provide any other information about—any such communications dated after the January 17, 2017 filing of the FTC's Complaint.  Qualcomm hereby seeks an order requiring Apple to log any responsive post-Complaint communications that it withholds on the basis of common interest agreements.

       Notably, for no other category of documents is Apple drawing a distinction between documents dated before the Complaint and documents dated after the Complaint.  It is otherwise producing and logging both pre- and post-Complaint documents.  It has singled out for special treatment only those documents withheld on the basis of a common interest agreement.  For those documents, Apple proposes to provide Qualcomm no information at all, allowing its responsive post-Complaint communications with the plaintiffs, and with important third-party sources of documents and testimony, to remain completely secret.

       Apple's primary basis for opposing this reasonable request is to rely on cases that discuss the logging of communications between a party and *its own counsel*, not those involving a common interest agreement.[4]  The concerns expressed in those cases about chilling attorney-client communications are obviously not present when Apple communicates with a third party, such as its arch-rival Samsung.  Apple's responsibility to log documents withheld subject to its common interest agreements should be strictly enforced here given the tenuous nature of Apple's claim to any cognizable common legal interest.

       To withhold a document under a common interest agreement, Apple must establish that the communication is privileged and that a common *legal* interest exists between the communicating parties with respect to the communication.  *See Elan Microelectronics Corp. v. Apple Inc.*, No. C 09-1531 RS (PSG), 2011 WL 3443923, at *2 (N.D. Cal. Aug. 8, 2011); *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007).  Courts have rejected the application of common interest agreement protections where the overriding commonality in the parties' communication is *commercial* in nature.  *Elan Microelectronics Corp.*, 2011 WL 3443923, at *2 ("[Common interest agreements] 'do[] not extend to communications about a joint business strategy that happens to include a concern about litigation.'").  Here, there is no shared legal interest.  Apple is a party to agreements with Qualcomm that the FTC and MDL Plaintiffs challenge as violations of the antitrust laws.  Apple cannot share a common legal interest with consumers and a government agency who consider agreements signed by Apple to be part of an unlawful antitrust conspiracy.

---

[3] Aug. 7, 2017 Ltr. from E. Takashima to G. Bornstein, at 1.  Apple notably has only an oral agreement with the FTC, a fact that further underscores the need for close scrutiny of the privilege claim.

[4] *See Ryan Inv. Corp. v. Pedregal de Cabo San Lucas*, No. C 06-3219 JWRS, 2009 WL 5114077, at *3 (N.D. Cal. Dec. 18, 2009); *Netbula, LLC v. Chordiant Software, Inc.*, No. C08-00019 JW (HRL), 2009 WL 3919495, at *3 (N.D. Cal. Nov. 18, 2009); *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 140 n.22 (3d Cir. 2009); *Kellgren v. Petco Animal Supplies, Inc.*, No. 13-CV-644 L (KSC), 2016 WL 4097522, at *6 (S.D. Cal. July 7, 2016).  *In re Imperial Corp. v. America*, 174 F.R.D. 475 (S.D. Cal. 1997), addressed a common interest agreement, but the key issue revolved around the level of detail that would be required by the log, given three years of litigation, 50 parties and 20 law firms, and potentially millions of documents.

Furthermore, the common interest Apple shares with the entities besides the FTC and MDL Plaintiffs is a commercial interest, not a legal interest. Of the nine entities with which Apple has entered into its purported common interest agreements, four are Apple's own contract manufacturers – entities that have stopped paying royalties to Qualcomm on Apple's directive and are litigating with Qualcomm on Apple's dime (through publicly disclosed indemnification agreements between Apple and each contract manufacturer); two more (Intel and MediaTek) are Qualcomm competitors hoping to hamstring Qualcomm and pursue future chip supply opportunities with Apple; and another (Samsung) is both a Qualcomm competitor and a Qualcomm licensee that shares Apple's commercial interest in depressing the value of Qualcomm's intellectual property. This Court recognized that "Apple is not an uninvolved, uninterested third party, but has a strong *commercial interest* in the [FTC's] proceeding." Aug. 31, 2017 Hearing Tr. 13:11-18 (emphasis added).[5]

Apple has not substantiated any burden objection from logging post-Complaint communications withheld on the basis of a common interest agreement. Indeed, Apple has not provided any information about the volume or frequency of such communications.[6]

Qualcomm respectfully requests that the Court require Apple to log otherwise responsive post-Complaint communications that Apple withholds on the basis of a common interest agreement.

## II.     Non-Party Apple's Position

### A.     Qualcomm Has No Basis to Demand that Apple Produce a Burdensome Log of Irrelevant, Post-Complaint Privileged Communications with Parties that Share a Common Interest.

The common interest doctrine allows material subject to the attorney client privilege or work product doctrine to be shared with third parties without waiving any applicable privilege. *See, e.g.*, *United States v. Gonzalez*, 669 F.3d 974 (9th Cir. 2012); *U.S. v. AT&T*, 642 F.2d 1285 (D.C. Cir. 1980). The rationale for the rule is that "persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims." *Gonzalez*, 669 F.3d at 978. Apple has entered into common interest agreements with the plaintiffs in these actions as well as several third parties in light of the overlapping issues between this litigation and related actions, including Apple's suit against Qualcomm[7] and Qualcomm's suit against Apple's contract manufacturers.[8] Apple, the FTC,[9] Class Plaintiffs, and the Contract Manufacturers have a common interest in, among other things, coordinating their litigation against Qualcomm. Apple and the non-parties have a common interest in, among other things, ensuring Qualcomm's compliance with its FRAND commitments.

Just as with any privileged documents, communications covered by common interest

---

[5] Apple contends that a shared commercial interest is a sufficient basis to prevent waiver of work product protection, but that issue remains open in the Ninth Circuit, *Rembrandt Patent Innovations, LLC v. Apple Inc.*, No. 14-cv-05094 WHA, 2016 WL 9114005, at *1 (N.D. Cal. Feb. 12, 2016), and even Apple does not contend that a shared commercial interest is sufficient to prevent waiver of attorney-client privilege.

[6] In fact, if there is a significant volume of communications withheld pursuant to Apple's common interest agreements, it would only increase the importance of a log to assess Apple's privilege assertion.

[7] *Apple Inc. v. Qualcomm, Inc.*, No. 17-cv-00108 (S.D. Cal. filed Jan. 20, 2017).

[8] *Qualcomm Inc. v. Compal Elec., Inc.*, No. 17-cv-1010 (S.D. Cal. filed May 17, 2017).

[9] Qualcomm's claim that additional scrutiny is warranted because Apple's common interest agreement with the FTC is an oral agreement is meritless. *Gonzalez*, 669 F.3d at 979 ("it is clear that no written agreement is required, and that a JDA may be implied from conduct and situation").

3

doctrine that post-date the filing of the complaint are not required to be entered into a privilege log.[10]  *See In re Imperial Corp. of Am.,* 174 F.R.D. 475, 478-79 (S.D. Cal. 1997) (subpoenaed party not required to produce detailed privilege log after the commencement of litigation because documents involved parties and counsel who shared a common interest); *Dear v. Crown Castle S., LLC*, No. 3:13-CV-212-WHB-RHW, 2016 WL 7985436, at *8-9 (S.D. Miss. June 9, 2016) (common interest agreements not required to be logged); *see also Ryan Inv. Corp. v. Pedregal de Cabo San Lucas*, No. C 06-3219 JWRS, 2009 WL 5114077, at *3 (N.D. Cal. Dec. 18, 2009) ("[C]ounsel's communications with the client and work product developed once the litigation commences are presumptively privileged and need not be included on any privilege log."); *Netbula, LLC v. Chordiant Software, Inc.*, No. C08-00019 JW (HRL), 2009 WL 3919495, at *3 (N.D. Cal. Nov. 18, 2009).  A contrary rule "requiring creation of an ongoing log of all post-complaint privileged communications would have a chilling effect on the attorney-client relationship."  *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 140 n.22 (3d Cir. 2009); *Kellgren v. Petco Animal Supplies, Inc.*, No. 13-CV-644 L (KSC), 2016 WL 4097522, at *6 (S.D. Cal. July 7, 2016) (adopting the reasoning in *Grider*).  Subsequent to the filing of the FTC's complaint, Apple's communications with the FTC, the Class Plaintiffs, and other third-parties that are related to the litigations against Qualcomm are covered by the common interest doctrine, and need not be entered on privilege logs.

Moreover, Apple's post-suit communications with the FTC, the Class Plaintiffs, or other third parties are irrelevant to the antitrust claims and defenses at issue in this case.  The lawsuits against Qualcomm are about *Qualcomm's* anticompetitive conduct over the past decade and beyond.

Qualcomm argues that Apple should be required to log post-complaint communications subject to the common interest doctrine because it claims the common legal interest among the parties is "tenuous."  All of the parties with whom Apple has a common interest agreement have been sued by Qualcomm, have sued Qualcomm, or have been subpoenaed by Qualcomm in this litigation or related actions; thus, the relationship that these parties have with Apple is not merely a commercial one.  *See AT&T*, 642 F.2d at 1299-1300 (parties may have a common interest if they "anticipate litigation against a common adversary on the same issue or issues").  But even if these parties had only a commercial relationship with Apple, a common commercial interest *is sufficient* to avoid waiver of work product protection.  *Pecover v. Elec. Arts Inc.*, No. C08–2820 CW (BZ), 2011 WL 6020412, at *2 (N.D. Cal. Dec. 2, 2011) ("Thus, even if I were to find that the sole shared interest between Defendant and the NFL were commercial or financial in nature, that shared interest would be sufficient to maintain the work product protection over the email at issue."); *but see Rembrandt Patent Innovations, LLC v. Apple Inc.*, No. C 14-05094 WHA, 2016 WL 9114005 (N.D. Cal. Feb. 12, 2016) (recognizing that the Ninth Circuit has not "addressed the proper standard for waiver of work-product immunity").  Apple's post-complaint communications with these parties are directly related to legal strategy in this lawsuit and related lawsuits.

Qualcomm's demand is simply intended to chill communications between Apple and those who share a common interest in these cases. The log Qualcomm is seeking would add to the substantial burden Qualcomm has already imposed on Apple in discovery, and further would

---

[10] In an effort to avoid unnecessary privilege disputes with Qualcomm, Apple will log privileged or protected post-complaint communications (other than those subject to the common interest doctrine) that do not concern these lawsuits or related lawsuits between Apple, Qualcomm, and the Contract Manufacturers.

4

reveal information about the parties' litigation strategy to the extent it showed the volume, frequency, timing, and types of common interest communications between Apple and others. This request is onerous and demonstrates why post-suit communications are regularly exempted from privilege logs.

### B.     Apple Has Met the Court's Substantial Completion Deadline.

As set forth in the status report it is filing today, Apple has:  (1) produced over 2.6 million documents (16.5 million pages), (2) completed its review of over 350,000 non-responsive documents; (3) completed an initial review of over 1.3 million additional documents, which are currently in the quality control process.  Apple believes it has substantially completed its review of documents for this case, and is working quickly to review its remaining documents. Apple will also continue producing documents as (1) documents that have already been reviewed are electronically processed and stamped for production; (2) further documents, including documents currently in the quality control process, are moved into production; and (3) documents currently coded as privileged are downgraded during the preparation of Apple's privilege log.  Apple will also be separately producing documents for one custodian for whom the parties have set a separate production deadline.

Any dispute Qualcomm may wish to raise about whether Apple's production is "substantially complete" is premature.  Apple shipped a production of approximately 250,000 documents yesterday, and will be filing a status report with the Court today.  To the extent Qualcomm has concerns after receiving those documents and that report, Apple is available to meet and confer.[11]

### III.    Joint Notification of Potential Discovery Issues

Qualcomm and Apple hereby inform the Court that they continue to discuss an issue regarding the review and production of certain types of files.  Qualcomm has requested further information from Apple; Apple is collecting information and preparing a response.  As a result, a dispute has not yet ripened for this Court's attention.  However, in light of the December 15 deadline by which Qualcomm and Apple must file any discovery disputes, the parties wish to notify the Court that this additional dispute may be outstanding.

---

[11] Qualcomm's request to compel the immediate production of documents—which it raised for the *first time* less than an hour before the deadline to file this joint statement—is also unwarranted.  Apple will produce remaining non-privileged responsive documents as soon as practicable.

Dated:  December 15, 2017

        Respectfully submitted,

        CRAVATH, SWAINE & MOORE LLP

          */s/ Gary A. Bornstein*
        Gary A. Bornstein
        Yonatan Even
        Worldwide Plaza
         825 Eighth Avenue
          New York, NY 10019
           Tel:  (212) 474-1000
            Fax:  (212) 474-3700
             gbornstein@cravath.com
             yeven@cravath.com

        Robert A. Van Nest
        Asim M. Bhansali
        Eugene M. Paige
        KEKER, VAN NEST & PETERS LLP
         633 Battery Street
          San Francisco, CA 94111
           Tel:  (415) 676-2289
            Fax:  (415) 397-7188
             rvannest@keker.com
             abhansali@keker.com
             epaige@keker.com

        Richard S. Taffet
        MORGAN, LEWIS & BOCKIUS LLP
         101 Park Avenue
          New York, NY 10178
           Tel: (212) 369-6000
            Fax:  (212) 369-6001
             richard.taffet@morganlewis.com

        Willard K. Tom
        MORGAN, LEWIS & BOCKIUS LLP
         1111 Pennsylvania Avenue, N.W.
          Washington, DC 20004
           Tel:  (202) 739-3000
            Fax:  (202) 739-3001
             willard.tom@morganlewis.com

Donn P. Pickett
Geoffrey T. Holtz
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Tel:  (415) 442-1000
Fax:  (415) 442-1001
donn.pickett@morganlewis.com
geoffrey.holtz@morganlewis.com

*Attorneys for Qualcomm Incorporated*

  */s/ Edward H. Takashima*

Edward H. Takashima
etakashima@bsfllp.com
BOIES SCHILLER FLEXNER LLP
401 Wilshire Blvd, Suite 850
Santa Monica, CA 90401
Tel:  (310) 752-2400
Fax:  (310) 752-2490

*Attorney for Non-Party APPLE INC.*

## **FILER'S ATTESTATION**

I, Gary A. Bornstein, am the ECF user whose identification and password are being used to file this Joint Discovery Statement. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that the signatories on this document have concurred in this filing.

*/s/ Gary A. Bornstein*
Gary A. Bornstein
