CRAVATH, SWAINE & MOORE LLP
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
825 Eighth Avenue
New York, NY 10019-7475
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

KEKER, VAN NEST & PETERS LLP
Robert A. Van Nest, SBN 84065
rvannest@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  (415) 676-2289
Facsimile:  (415) 397-7188

MORGAN, LEWIS & BOCKIUS LLP
Richard S. Taffet (*pro hac vice*)
richard.taffet@morganlewis.com
101 Park Avenue
New York, NY 10178-0060
Telephone:  (212) 309-6000
Facsimile:  (212) 309-6001

Attorneys for Defendant
QUALCOMM INCORPORATED

*Additional counsel on the signature page.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION<br><br>Plaintiff,<br><br>v.<br><br>QUALCOMM INCORPORATED, a Delaware corporation,<br><br>Defendant. | Case No. 5:17-cv-00220-LHK-NMC<br><br>**DEFENDANT QUALCOMM INCORPORATED'S SUBMISSION REGARDING APPLE'S COMPLIANCE WITH THE COURT'S ORDERED PRODUCTION DEADLINES.**<br><br>Courtroom:  7, 4th Floor<br>Judge:   Hon. Nathanael M. Cousins |
| IN RE QUALCOMM ANTITRUST LITIGATION | Case No. 5:17-md-02773-LHK-NMC |

Pursuant to the Court's January 5, 2018 Order (ECF No. 450), Qualcomm respectfully submits the following statement regarding Apple's compliance with the December 21, 2017 Order imposing sanctions on Apple (the "December 21 Order"). (ECF No. 421.)

In the December 21 Order, the Court required Apple to "complete its document production to Qualcomm of the 1.3 million documents identified in initial review, and hit by Court-ordered search terms by December 29, 2017". (ECF No. 421 at 2.) In doing so, the Court made clear that Apple is to err on the side of over-producing, *i.e.,* that if Apple determines that it is unable to conduct a thorough review, it is to produce all documents, subject to a right to claw documents back. (*See* 12/20/17 Hearing Tr. 62:13-15 ("THE COURT: . . . I want you to complete your review by [December] 29th and produce the stuff that's responsive. But if you can't get it done by the 29th, then my order is . . . you should produce whatever you've got subject to clawback.").) Apple has represented that it has complied with the Court's order through its production to Qualcomm of 280,853 documents out of the 1.3 million, which according to Apple constitutes "all responsive non-privileged documents from the quality control population at the time". (*See* 1/11/18 Email from E. Takashima to G. Bornstein.)

Qualcomm questions whether the production of these 280,853 documents constitutes full compliance with the letter and the spirit of the December 21 Order, for two principal reasons. *First*, the discrepancy between the number of documents actually produced and the number of documents represented to have been in the "quality control process" is surprisingly large. *Second*, as discussed more fully in the Joint Status Report, it appears likely that Apple has over-withheld a material number of documents based on unsupportable assertions of privilege. As a result of these issues, Qualcomm believes that rather than err on the side of over-production, Apple has erred on the side of under-production by deeming documents non-responsive or privileged. Qualcomm believes that a further factual record is necessary to assess whether Apple has met the

requirements in the December 21 Order for the termination of sanctions and respectfully suggests that Apple be required to submit a declaration addressing the issues discussed herein.

## I.     Concerns Regarding Apple's Responsiveness Determinations.

Apple acknowledges that of the 1.3 million documents that were the subject of the Court's order, ***one million were not produced***.   In a meet and confer on January 9, 2018, Apple represented that those one million documents were either withheld as privileged or were deemed non-responsive.  In response to questions from Qualcomm as to how so many documents that had already been reviewed once could subsequently be deemed non-responsive, Apple asserted that the 1.3 million documents in the "quality control" process included documents that had been deemed non-responsive upon initial review.  That was never made clear in Apple's prior status reports, the parties' numerous meet and confers or discussion at hearings before the Court.  Nor would it be typical, in Qualcomm's experience, for *all* documents deemed non-responsive on initial review to be counted as part of a second-round quality control process.  Even if Apple's quality control process included a sampling of documents deemed non-responsive, it is unclear why Apple would include all non-responsive documents in the 1.3 million figure disclosed to the Court, when only a small portion of them would actually be reviewed again.  Despite meet and confer discussions, Apple's production process remains opaque, and the basis for the discrepancy of one million documents remains unclear.

Qualcomm notes that this is not the only instance in which the number of documents Apple had indicated were in the production pipeline did not translate to documents actually produced to Qualcomm.  For example, in its November 17, 2017 status report, Apple indicated that it was "in the process of producing approximately 1.1 million documents". (ECF No. 318.)  Of that 1.1 million documents, Qualcomm ultimately received only approximately 689,000 documents, ten days later.  Likewise, in

the November 17 status report, Apple stated that "695,000 documents are currently in the quality control process". (ECF No. 318 at 1.) But Qualcomm did not receive *any* documents that were the subject of manual review until nearly one month later—on December 12, 2017—and at that point received only 103,057 such documents.

The low volume of documents Apple has produced from key custodians also raises questions about the adequacy of Apple's production. Two examples highlight Qualcomm's concerns. For example, Johny Srouji, Apple's Senior Vice President of Hardware Technologies, is one of the key executives involved in selecting baseband processors and other components for Apple's devices. But Apple has produced only 7,552 documents that appear in Mr. Srouji's files, and logged and withheld an additional 598 as privileged.[1] It is difficult to accept that in his nine years at Apple, Mr. Srouji had only 8,150 emails and other documents that are responsive to Qualcomm's requests for documents concerning issues that are central to his job, such as Apple's complicated baseband processor selection process and its extensive technical requirements and demands for baseband processors to be used in its devices.

A second example is Apple's Chief IP Counsel, BJ Watrous, who has led or otherwise been directly involved in license negotiations with Qualcomm and other third parties that are a core focus of Qualcomm's subpoenas. But Apple has produced only 2,260 documents that appear in Mr. Watrous's files and logged and withheld a further 14,132 documents as privileged. It is likewise difficult to accept that in the six years Mr. Watrous served as Chief IP Counsel, he had only 16,392 emails and other documents that are responsive to Qualcomm's requests for documents concerning issues that are central to his job, such as the licensing of cellular patents.

---

[1] These numbers include all documents for which Mr. Srouji was identified as a custodian or an alternate custodian, thereby including all documents that appeared in his files, even if the specific copy of the document produced to Qualcomm came from the files of a different custodian. The same is true for the numbers appearing in the following paragraph.

The discrepancies and unusual document volumes described above cause Qualcomm concern about the adequacy and completeness of Apple's responsiveness determinations and, in Qualcomm's view, militate in favor of developing a more complete factual record regarding Qualcomm's compliance with the December 21 Order.

## II.    Concerns Regarding Apple's Privilege Determinations.

As noted in the parties' January 12, 2018 Joint Status Report, Apple's privilege logs reveal that Apple expansively and improperly asserted privilege to withhold a large volume of documents from production. Without repeating in detail all the issues regarding Apple's privilege logs that appear in the Joint Status Report, for the Court's reference Qualcomm summarizes here the relevant substantive defects in Apple's privilege determinations that Qualcomm has so far identified:

*First*, Apple appears to have improperly withheld documents in their entirety whenever the documents contain *any* content over which Apple asserts a privilege claim, even if the documents also contain non-privileged content.

*Second*, Apple has asserted attorney-client privilege or work product protection for communications that—on the face of the email subject lines—appear to constitute business discussions rather than communications of legal advice, including when no lawyer authored, received or is copied on the document.

*Third*, Apple's privilege logs contain numerous communications with third parties such as standards-setting organizations or commercial entities, including entities with which Apple was negotiating agreements or from which Apple was considering purchasing products. These documents cannot possibly be privileged. Indeed, Qualcomm has definitively confirmed the non-privileged status of some of these documents, which actually appear in Qualcomm's own files or in document productions made to Qualcomm by third parties in this case.

*Fourth*, the appearance on Apple's privilege logs of documents that are obviously "spam" emails suggests a process in which Apple grossly over-privileged its

documents, perhaps using a privilege filter, without adequate attorney review to assess whether the privilege call was appropriate.

Qualcomm recognizes that there can be good-faith errors in a large-scale privilege review, and Qualcomm does not believe that such errors, by themselves, would warrant a finding of non-compliance with the Court's order.  But if there were a process designed to grossly over-withhold documents as privileged, subject to further review and downgrading, as part of the effort to complete production by the Court-ordered date, then Qualcomm believes such a process would be inconsistent with the December 21 Order and the Court's instructions to "produce whatever you've got subject to clawback" under the November 30, 2017 Rule 502(d) order.  (12/20/17 Hearing Tr. 62:15.)

### III. Conclusion.

For the foregoing reasons, Qualcomm believes that a further factual record is necessary to assess whether Apple has met the requirements in the December 21 Order for the termination of sanctions.  Qualcomm respectfully suggests that Apple should be required to submit a declaration addressing the issues set forth above.

Dated: January 12, 2018

Respectfully submitted,

CRAVATH, SWAINE & MOORE LLP,

*/s/ Gary A. Bornstein*

_____
Gary A. Bornstein

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Tel: (212) 474-1000
Fax: (212) 474-3700
gbornstein@cravath.com

Robert A. Van Nest
Asim M. Bhansali
Eugene M. Paige
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Tel: (415) 676-2289
Fax: (415) 397-7188
rvannest@keker.com
abhansali@keker.com
epaige@keker.com

Richard S. Taffet
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178-0060
Tel: (212) 309-6000
Fax: (212) 309-6001
richard.taffet@morganlewis.com

Willard K. Tom
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave. NW
Washington, DC 20004-2541
Tel: (202) 739-3000
Fax: (202) 739 3001
willard.tom@morganlewis.com

Donn P. Pickett
Geoffrey T. Holtz
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: (415) 442-1000
Fax: (415) 442-1001
donn.pickett@morganlewis.com
geoffrey.holtz@morganlewis.com

*Attorneys for Qualcomm Incorporated*