CRAVATH, SWAINE & MOORE LLP
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
825 Eighth Avenue
New York, New York 10019-7475
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

KEKER, VAN NEST & PETERS LLP
Robert A. Van Nest
rvannest@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  (415) 676-2289
Facsimile:  (415) 397-7188

MORGAN, LEWIS & BOCKIUS LLP
Richard S. Taffet (*pro hac vice*)
richard.taffet@morganlewis.com
101 Park Avenue
New York, NY 10178-0060
Telephone:  (212) 309-6000
Facsimile:  (212) 309-6001

Attorneys for Defendant
QUALCOMM INCORPORATED

THEODORE J. BOUTROUS, JR. (SBN 132099)
tboutrous@gibsondunn.com
DANIEL G. SWANSON (SBN 116556)
dswanson@gibsondunn.com
JASON C. LO (SBN 219030)
jlo@gibsondunn.com
JENNIFER J. RHO (SBN 254312)
jrho@gibsondunn.com
MELISSA PHAN (SBN 266880)
mphan@gibsondunn.com
RYAN K. IWAHASHI (SBN 284766)
riwahashi@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Tel:  (213) 229-7000
Fax:  (213) 229-7520

Attorneys for Non-Parties COMPAL ELECTRONICS INC., FIH MOBILE LTD., HON HAI PRECISION INDUSTRY CO., LTD., PEGATRON CORPORATION, AND WISTRON CORPORATION

*Additional counsel listed in the signature block*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION<br><br>            Plaintiff,<br><br>    v.<br><br>QUALCOMM INCORPORATED, a Delaware corporation,<br><br>            Defendant. | Case No. 5:17-CV-00220-LHK-NMC<br><br>**DEFENDANT QUALCOMM INCORPORATED'S AND NON-PARTY CONTRACT MANUFACTURERS' JOINT DISCOVERY STATEMENT**<br><br>Courtroom:  7, 4th Floor<br><br>Judge:   Hon. Nathanael M. Cousins |
| IN RE QUALCOMM ANTITRUST LITIGATION | Case No. 5:17-MD-02773-LHK-NMC |

Case No. 5:17-cv-220-LHK-NMC; Case No. 5:17-md-2773-LHK-NMC

Defendant Qualcomm Incorporated ("Qualcomm") and Non-Parties Compal Electronics, Inc., FIH Mobile Ltd., Hon Hai Precision Industry Co., Ltd., Pegatron Corporation, and Wistron Corporation (collectively, the "CMs") submit this joint statement concerning the CMs' document productions.

**I.  Qualcomm's Position**

The CMs have violated this Court's order that third parties complete document production by January 5, 2018. (ECF No. 308.)  While fully aware of this deadline, they simply decided, without the Court's permission, not to meet it.  In October 2017, the CMs agreed to search for and produce documents from 27 custodians.  At the December 20, 2017 hearing, the CMs further agreed to produce documents from an additional seven custodians, later reduced to six.  Notwithstanding the Court's order that third parties complete document production by January 5, 2018, the CMs informed Qualcomm on January 8 that their productions to date, which consist of approximately 154,000 documents,[1] do not include all responsive documents from the original 27 CM custodians.  (*See* Jan. 8, 2018 Ltr. from J. Lo to R. Stark.)  Although Qualcomm repeatedly asked the CMs to confirm their substantial completion date, for the first time since being served with subpoenas last summer, the CMs informed Qualcomm that they will not complete document production until February 16, 2018—a mere six weeks before the close of fact discovery.  (*Id.*)  Qualcomm requests that the Court (i) order the CMs to complete production of all responsive documents by January 19, 2018, and (ii) impose sanctions on each CM until they complete the production of documents from the original 27 custodians.

On October 13, 2017, over two months after being served with Qualcomm's subpoenas, the CMs agreed to collect and produce documents from 27 custodians.  At the time, Qualcomm asked the CMs to adhere to the December 15 deadline the Court imposed on Apple, and the CMs repeatedly stated that they were "working towards a December 15, 2017 deadline for substantial completion of production of the responsive documents, utilizing in the first instance the [October 31, 2017 revised] custodian and search term disclosures that the CMs have provided".  (*E.g.*, Nov. 10, 2017 Ltr. from J. Rho to R. Stark.)  After the Court ordered that third-party productions be completed by January 5, 2018, Qualcomm repeatedly stated its expectation that the CMs meet that deadline at least for the original 27 CM custodians.  (*See, e.g.*, Dec. 21, 2017 Ltr. from R. Stark to J. Lo.)  The CMs' representations before this Court furthered that expectation.  During the December 20 hearing, the Court stated, "[t]here's been a suggestion that it might take more time than January 5th [to complete production] . . . . I haven't granted that request".  (Tr. 49:13-15.)  Qualcomm explained that its "understanding from Mr. Lo is [that the CMs] believe they'll make the January 5th deadline, at least for their original set of custodians".  (*Id.* at 49:19-22.)  The CMs agreed with the Court's summary and stated that "with what Mr. Stark said, I think we have a basic set of agreements".  (*Id.* at 50:3-8.)  The Court's subsequent order reflected the same understanding:  "The Court reiterates that it will not be granting an extension to the January 5, 2018, deadline for third party discovery production".  (ECF No. 421.)  Ten days prior to the January 5 deadline, the CMs told Qualcomm that they would be "continuously monitoring the progress of the review toward [the January 5 production] deadline and will confer with [Qualcomm] in the event we anticipate any exceptions with respect to individual custodians".  (*See* Dec. 26, 2017 Ltr. from J. Lo to R. Stark.)  But the CMs never told Qualcomm or the Court that they would not meet the Court's January 5 deadline for any of the original 27 custodians until January 8—three days after the Court's deadline had passed.  Indeed, in their December 26

---

[1] The CMs produced an additional 48,000 documents on January 12, 2018, the date of the filing of this motion.

1

Case No. 5:17-cv-220-LHK-NMC; Case No. 5:17-md-2773-LHK-NMC

letter, the CMs stated that their "intention remains to make every effort to complete review of all of the original custodians by January 5, 2018 using the revised search terms".

With respect to the additional six custodians the CMs belatedly agreed to add, Qualcomm acknowledged that the CMs would not be able to meet the Court's January 5 deadline but repeatedly asked them if they would be able to produce those custodians' documents by the end of January or to propose a date by which they would complete such production. (*See e.g.*, Dec. 21, 2017 Ltr. from R. Stark to J. Lo.) Qualcomm also pointed out that "the January 5 deadline remains in force" and that if the CMs "need to propose to Judge Koh some modest stipulated extension of time for completion on the seven additional custodians, we will need to address that soon". (Dec. 21, 2017 Ltr. from R. Stark to J. Lo.) The CMs never proposed such a stipulation.

Rather than respond to these requests or abide by their prior representations, on January 8, 2018, the CMs stated that they would "adhere as closely as possible to" a production deadline of February 9, 2018, for the original 27 custodians, and of February 16, 2018, for the additional six custodians. (Jan. 8, 2018 Ltr. from J. Lo to R. Stark.) The CMs' proposed production schedule, which exceeds the Court-ordered deadline by more than a month, is unacceptable and would severely prejudice Qualcomm's ability to defend itself in these Actions.

The CMs' failure to comply with the January 5 production deadline is due to their own foot dragging. The CMs repeatedly refused to identify any of their employees who would have relevant documents and refused to provide search strings that reflected Qualcomm's subpoena. The CMs allege that they were unable to meet the January 5 deadline because the Court ordered compromises regarding custodians and search terms on December 20, 2017 and January 2, 2018. But the CMs have had nearly three months to collect, review, and produce documents from the original 27 custodians. Any delay in reaching agreement on additional custodians was due to the CMs' repeated refusal to provide information about anyone other than the original custodians. Similarly, the search strings ordered by the Court on January 2 were hardly "additional" terms. The CMs first proposed search terms on October 13, 2017, and served a revised proposal on October 31, 2017. (*See* Oct. 31, 2017 Ltr. from J. Rho to R. Stark.) Qualcomm proposed modifications to the CMs' October 31 proposal on December 7, 2017, three days after the CMs first provided metrics to Qualcomm. Of the 11 search strings resolved by the Court's January 2, 2018 order, only one string was initially drafted by Qualcomm, which it proposed on December 7. The Court further ordered that the CMs (i) run six strings as originally drafted in the CMs' October 31 proposal, (ii) run one string with Qualcomm's proposed edits, and (iii) omit three strings first proposed by the CMs. The search strings ordered by the Court thus do not justify the CMs' delay. In fact, during the January 2 hearing, the CMs did not give any indication to the Court or to Qualcomm that they would be unable to meet the January 5 deadline as a result of the Court's order.

The CMs' failure to comply with the court-ordered deadline in this case is a result of their own inaction. The CMs claim that the application of the final search terms increases their pool of documents for review to at least 2.2 million. But, by their own admission, the CMs collected over 2 million documents only *after* November 30, 2017. (*See* Dec. 19, 2017 Ltr. from J. Lo to R. Stark.) The CMs most recent metrics (which they have not shared with Qualcomm) may indicate that CMs must review additional documents, but, if so, that likely is because their collection, review and production of documents only started in earnest in December. The CMs also contend that, because of the high volume of Chinese documents, "[i]mmediately after the hearing on December 20, [they] took steps to drastically increase [their] review capacity", Jan. 8, 2018, Ltr. from J. Lo to R. Stark, by opening a "new review center shortly after the new year",

Dec. 29, 2017 Ltr. from J. Lo. to R. Stark.  But the CMs, which are Taiwanese and Chinese corporations, have always known that their productions would include a significant number of Chinese documents; the CMs acknowledged the substantial volume of foreign language documents and the ensuing need for "document reviewers with special language skills" as early as October 2017.  (Oct. 23, 2017 Ltr. from J. Rho to R. Stark.)  The CMs have also been aware of the January 5 production deadline since November 15, 2017.  The CMs' decision to wait until January 2018 to add additional reviewers is inexplicable.  Contrary to their assertions, the CMs have not taken "all reasonable steps within [their] power to insure compliance with the court's orders".  Their failure to comply with the January 5 deadline is entirely of their own making.

Qualcomm is now severely prejudiced.  The CMs' productions are critical to the fact and expert depositions taking place in the coming months.  Nine of the FTC's disclosed witnesses are CM employees, and the CMs have accepted service of Qualcomm's deposition subpoenas that notice depositions of those witnesses as early as February 26, 2018.  If the CMs are permitted to flout the Court-ordered production deadline until mid-February, it will be impossible for Qualcomm to review the documents, obtain translations, and take depositions.  This Court has already warned third parties "that they, too, need to comply with the court deadlines".  (Dec. 20, 2017 Tr. 60:23-24.)  Given the rapidly approaching deadline for completion of all fact discovery, the Court should order the CMs to produce all responsive documents by January 19, 2018.  Because further encouragement will incentivize the CMs to timely complete their document productions, Qualcomm petitions the Court to order meaningful sanctions on each CM until they complete document production from the original 27 custodians, which should run retroactively to the date of noncompliance with the Court's Order.  Finally, Qualcomm requests that the Court order the CMs to produce a privilege log by January 25, 2018.

**II.  The CMs' Position**

Qualcomm's position ignores the most salient point: The dramatic increase in the CMs' document review burden that recently occurred was due solely to Qualcomm's refusal to limit the scope of its overbroad third-party subpoena requests and its unreasonable prolongation of the meet and confer process.  Although the CMs understood there was a cut-off for third-party discovery, because of the last minute increase in review scope—which required travel to Asia to collect documents—the CMs could not disclose by when they expected to complete their production or move for a meaningful extension before January 5.  In any event, the CMs are moving for a limited extension for their production of documents with Judge Koh, which may moot the issues in this discovery statement.  Ever since receiving the subpoenas in this case, the CMs have taken all reasonable steps to complete their production in a timely manner.  The CMs have already produced over 231,000 documents and 1.5 million pages, and Qualcomm will not suffer any prejudice while the CMs complete their expedited production of documents, particularly because the CMs have outlined a schedule whereby documents from expected deponents in this case will be produced over a month before their noticed deposition date.

*The scope of review increased at the last minute pursuant to Court order.*  As Qualcomm and the Court are aware, two major changes to the scope of document discovery occurred within the last four weeks.  First, although the CMs have been collecting documents since August 2017 and reviewing documents since October 2017, and although this Court denied Qualcomm's original motion to compel, at the strong suggestion by the Court, the CMs agreed to add six additional document custodians and dramatically alter the search terms used to identify documents for review in the last four weeks.  Specifically, on December 20, the CMs agreed to

add six additional document custodians[2] and substantially broaden the search terms used to identify documents for review, which involved revising over 90 of the search terms that the CMs had been using for months in order to accommodate Qualcomm's various requests to the Court. The application of these additional search terms increases the CMs' pool of documents for review to *at least 2.2 million documents*.

Second, the CMs' document discovery obligations again dramatically increased in scope on January 2, 2018 when—despite the CMs' prior agreements to add custodians and search terms—Qualcomm demanded, and the Court granted, an additional request that the CMs apply an additional 8 search strings to identify documents for manual review. The January 2, 2018 order again increased the total pool of documents beyond that resulting from the December 20, 2017 compromises by an additional 250,000 documents. These two events prevented the CMs from completing their productions by the January 5, 2018 deadline.

***Qualcomm will not suffer any prejudice from the CMs' proposed schedule.*** The CMs have produced, and will continue to produce, documents on a rolling basis. The CMs have provided Qualcomm with a proposed production schedule that specifies when the production of custodial documents will be complete, with the completion of production from all of original custodians by January 19 for two CMs, January 26 for three CMs, and February 9 for all CMs, followed by completion of production for the six additional custodians by February 16. Moreover, the CMs' proposed schedule specifies, on a custodian-by-custodian basis, that the production of each custodian noticed for deposition will be complete *over a month before their respective deposition date noticed by Qualcomm*.

The CMs have taken all reasonable steps to complete the review in a timely fashion. The review of documents by the CMs is particularly difficult and burdensome because many of the documents are primarily in Chinese. Of course, the CMs anticipated that most of their documents would be in Chinese and took steps to start the review early. The CMs started collecting documents from custodians in Asia the week of August 21, began hiring bilingual reviewers, and began reviewing documents hitting on their proposed search terms within three days of proposing such terms. Since that time, the CMs have increased their review capacity substantially and now have over 70 attorneys—most of whom are bilingual—reviewing documents around the clock across 3 different time zones, including through weekends and holidays. As of January 5, the CMs had produced over 182,000 documents and 1.3 million pages, and produced another 49,000 documents today.

***Any alleged prejudice is of Qualcomm's own creation***. That Qualcomm has noticed the depositions of the CMs' witnesses for no earlier than February 26 confirms that Qualcomm will not suffer prejudice caused by the CMs' schedule. Moreover, Qualcomm refused to propose any search terms or custodians specific to this action, despite repeated requests from the CMs, until December. Because Qualcomm remained silent about its position, and did not meaningfully meet and confer with the CMs, the CMs proactively began searching for and reviewing documents for production in October.

Qualcomm's failure to limit its requests or to substantively meet and confer caused the delay about which it now complains. The last-minute increases in the CMs' review scope could have been resolved earlier had Qualcomm participated in the meet and confer process in a meaningful manner prior to December. Although Qualcomm first served its subpoenas in July

---

[2] The CMs were not able to obtain all of these custodians' documents until January 8, 2018, because of the impending holidays and the fact that all six of the additional custodians reside and are employed in Asia, where each CM is headquartered.

and August 2017, Qualcomm's subpoena requests were substantially overbroad and not proportional to the needs of the case. As a result, on numerous occasions, the CMs offered to meet and confer to discuss the scope of the requests. Throughout these meet and confer discussions, Qualcomm insisted that the CMs' concerns and objections would be addressed through limited search terms and custodians, as opposed to narrowing the scope of Qualcomm's requests. *E.g.*, August 10, 2017 letter from R. Stark to J. Rho[3] ("We responded that—as for other Requests—any concerns regarding burden can adequately be addressed through custodial limitations and the use of search terms."). When it came time to discuss those search terms and custodians, however, Qualcomm refused to negotiate meaningfully.

For example, at Qualcomm's insistence, in October, the CMs proposed detailed search strings based upon Qualcomm's search terms and the meet and confer discussions. Qualcomm refused even to discuss the CMs' proposed search terms at that time, instead serving a competing set of search terms based not upon its third party subpoena requests to the CMs, but upon search terms it used against Apple Inc., a different third party in these cases. *See* October 26 letter from R. Stark to J. Lo ("Qualcomm based its counterproposal on search terms that Qualcomm sent to Apple."). Indeed, Qualcomm sought to compel a modified version of these search terms in the November 18 discovery statement—notably, *without even attaching the subpoena requests for the Court's review*. At the hearing on November 30, 2017, the Court properly denied Qualcomm's motion, but ordered the parties to continue to meet and confer. A full week after that Order, and on December 7, nearly two months after the CMs first proposed search terms, Qualcomm finally proposed modifications and additions to the CMs' proposed search strings.

Qualcomm used the same delay tactic with its proposed custodians. Qualcomm moved to add 17 custodians in the November 18 discovery statement. After the Court denied that request on November 30, Qualcomm withdrew its request for 13 of those 17 custodians, and for 2 other custodians they had demanded, and instead, on December 6, insisted upon 14 *different* custodians identified for the first time.

In sum, Qualcomm did not engage meaningfully in the meet and confer process until less than a month before January 5. As a result, the Court did not have an opportunity to rule upon the issues until late December, causing substantial changes to the scope of the CMs' document review obligations right before and after the Christmas and New Year's holidays.

***There is no cause to impose sanctions.*** Although the Court "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it," Fed. R. Civ. P. 45(g), a non-party cannot be held in contempt if it "ha[s] performed all reasonable steps within [its] power to insure compliance with the court's orders." *Stone v. City of San Francisco,* 968 F.2d 850, 856 (9th Cir. 1992) (internal quotation omitted). As described above, the CMs have taken all reasonable steps to adhere to the Court's schedule, but, as discussed above, were stymied by the last-minute increases in review scope caused by Qualcomm's own actions. The CMs have undertaken enormous expense to increase their review capacity, including by opening up a third review center to increase the pool of qualified Chinese-language reviewers. Although the CMs are willing to expend the resources to complete the review as quickly as possible, they are subject to the protections afforded to nonparties. *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. 09-CV-01967 CW (NC), 2012 WL 4846522, at *2 (N.D. Cal. Aug. 7, 2012) ("The Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts.").

---

[3] The CMs have not attached the cited discovery letters to this Statement in light of prior guidance from the Court, but are prepared to file them at the Court's request.

Dated:  January 13, 2017

        Respectfully submitted,

        CRAVATH, SWAINE & MOORE LLP

              */s/ Richard J. Stark*
        Gary A. Bornstein
        Richard J. Stark
          Worldwide Plaza
            825 Eighth Avenue
              New York, NY 10019
                Telephone:  (212) 474-1000
                  Facsimile:  (212) 474-3700
                    gbornstein@cravath.com
                    rstark@cravath.com

        Robert A. Van Nest
        Asim M. Bhansali
        Eugene M. Paige
        KEKER, VAN NEST & PETERS LLP
          633 Battery Street
            San Francisco, CA 94111
              Telephone:  (415) 676-2289
                Facsimile:  (415) 397-7188
                  rvannest@keker.com
                  abhansali@keker.com
                  epaige@keker.com

        Richard S. Taffet
        MORGAN, LEWIS & BOCKIUS LLP
          101 Park Avenue
            New York, NY 10178
              Telephone:  (212) 369-6000
                Facsimile:  (212) 309-6001
                  richard.taffet@morganlewis.com

        Willard K. Tom
        MORGAN, LEWIS & BOCKIUS LLP
          1111 Pennsylvania Avenue, N.W.
            Washington, DC 20004
              Telephone:  (202) 739-3000
                Facsimile:  (202) 739-3001
                  willard.tom@morganlewis.com

Donn P. Pickett
Geoffrey T. Holtz
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone:  (415) 442-1000
Facsimile:  (415) 442-1001
donn.pickett@morganlewis.com
geoffrey.holtz@morganlewis.com

*Attorneys for Qualcomm Incorporated*


  */s/ Jason C. Lo*

THEODORE J. BOUTROUS, JR. (SBN 132099)
tboutrous@gibsondunn.com
DANIEL G. SWANSON (SBN 116556)
dswanson@gibsondunn.com
JASON C. LO (SBN 219030)
jlo@gibsondunn.com
JENNIFER J. RHO (SBN 254312)
jrho@gibsondunn.com
MELISSA PHAN (SBN 266880)
mphan@gibsondunn.com
RYAN K. IWAHASHI (SBN 284766)
riwahashi@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Tel:  (213) 229-7000; Fax:  (213) 229-7520

CYNTHIA RICHMAN (DC Bar No. 492089)
crichman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Tel: (202) 955-8500; Fax: (202) 467-0539

*Attorneys for Non-Parties Compal Electronics, Inc., FIH Mobile Ltd., Hon Hai Precision Industry Co., Ltd., Pegatron Corporation, and Wistron Corporation*

HUGH F. BANGASSER
hugh.bangasser@klgates.com
CHRISTOPHER M. WYANT
chris.wyant@klgates.com
J. TIMOTHY HOBBS
tim.hobbs@klgates.com

K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, Washington 98104
Telephone: +1 206 623 7580
Facsimile: +1 206 370 6371

CAITLIN C. BLANCHE (SBN 254109)
caitlin.blanche@klgates.com
K&L GATES LLP
1 Park Plaza Twelfth Floor
Irvine, CA 92614
Telephone: +1 949 253 0900
Facsimile: +1 949 253 0902

*Attorneys for Non-Party Wistron Corporation*

.

## FILER'S ATTESTATION

I, Richard J. Stark, am the ECF user whose identification and password are being used to file this Joint Discovery Statement. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that the signatories on this document have concurred in this filing.

*/s/ Richard J. Stark*
Richard J. Stark

Case No. 5:17-cv-220-LHK-NMC; Case No. 5:17-md-2773-LHK-NMC