# Exhibit E

1    CRAVATH, SWAINE & MOORE LLP          MORGAN, LEWIS & BOCKIUS LLP
     Gary A. Bornstein (*pro hac vice*)        Richard S. Taffet (*pro hac vice*)
2    Yonatan Even (*pro hac vice*)             101 Park Avenue
     825 Eighth Avenue                         New York, New York  10178-0060
3    New York, New York  10019-7475            Telephone:   (212) 309-6000
     Telephone:   (212) 474-1000               Facsimile:    (212) 309-6001
4    Facsimile:    (212) 474-3700
                                               MORGAN, LEWIS & BOCKIUS LLP
5    KEKER, VAN NEST & PETERS LLP          Willard K. Tom (*pro hac vice*)
     Robert A. Van Nest (SBN 84065)            1111 Pennsylvania Avenue NW
6    Asim M. Bhansali (SBN 194925)             Washington, DC  20004-2541
     Eugene M. Paige (SBN 202849)              Telephone:   (202) 739-3000
7    633 Battery Street                        Facsimile:    (202) 739 3001
     San Francisco, Ca 94111-1809
8    Telephone:    (415) 391-5400              MORGAN, LEWIS & BOCKIUS LLP
     Facsimile:    (415) 397-7188              Donn P. Pickett (SBN 72257)
9                                              Geoffrey T. Holtz (SBN 191370)
                                               One Market, Spear Street Tower
10                                             San Francisco, CA  94105-1596
     Attorneys for Defendant,                  Telephone:   (415) 442-1000
11   QUALCOMM INCORPORATED                     Facsimile:    (415) 442-1001

12

13                              UNITED STATES DISTRICT COURT

14                           NORTHERN DISTRICT OF CALIFORNIA

15                                    SAN JOSE DIVISION

16   IN RE QUALCOMM ANTITRUST              Case No. 5:17-md-02773-LHK-NMC
     LITIGATION
17                                         **LETTER OF REQUEST TO THE**
     ALL ACTIONS                           **COMPETENT AUTHORITY FOR**
18                                         **THE REPUBLIC OF KOREA FOR**
                                           **INTERNATIONAL JUDICIAL**
19                                         **ASSISTANCE PURSUANT TO THE**
                                           **HAGUE CONVENTION OF 18**
20                                         **MARCH 1970 ON THE TAKING OF**
                                           **EVIDENCE ABROAD IN CIVIL OR**
21                                         **COMMERCIAL MATTERS**

22   **TO:**     National Court Administration
                 Attn:  Director of International Affairs
23               Seocho-daero 219
                 Seocho-gu
24               SEOUL 06590
                 Republic of Korea

25   **FROM:** The United States District Court for the Northern District of California

26

27

28

This request is made pursuant to Article 3 of the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil and Commercial Matters (the "Convention"), 23 U.S.T. 2555, T.I.A.S. No. 7444, 847 U.N.T.S. 231.

The United States District Court for the Northern District of California presents its compliments to the National Court Administration of the Republic of Korea ("the Authority"), and requests international assistance to obtain evidence from LG Electronics, Inc. ("LG"), a corporation headquartered in Seoul and organized under the laws of the Republic of Korea. Evidence obtained through this request will be used in a civil action pending in the Northern District of California captioned *In re: Qualcomm Antitrust Litigation*, Case No. 17-md-02773-LHK (the "Action").

The United States District Court for the Northern District of California is a competent court of law and equity and properly has jurisdiction over the Action. In the proper exercise of its authority, this Court has determined that a request for documents from LG pursuant to the Requests below is necessary to develop the factual record needed for the complete and just resolution of the issues in this case. This Court therefore requests the assistance described herein in the interests of justice.

A purported class of consumers filed suit against Defendant Qualcomm Incorporated ("Qualcomm") in the United States District Court for the Northern District of California, seeking a judgment that Qualcomm's business practices relating to sales of CDMA and premium LTE baseband processor chips for cellular devices, and relating to the licensing of Qualcomm's cellular standard essential patents, violates United States and California competition law.

Specifically, the purported class alleges that Qualcomm has monopoly power in alleged markets for both CDMA baseband processors and premium LTE baseband processors, which it has maintained through a course of allegedly anticompetitive conduct, including (a) allegedly refusing to license its cellular standard essential patents to competing baseband processor suppliers; (b) allegedly conditioning original equipment

Hague Convention Letters of Request
Case No. 5:17-MD-02773-LHK-NMC

manufacturers' access to its baseband processors on the acceptance of Qualcomm's allegedly unfair licensing terms and (c) allegedly coercing original equipment manufacturers into entering into allegedly anticompetitive agreements.  The purported class also alleges that Qualcomm's practices constitute unfair methods of competition.

Qualcomm disputes all of the claims asserted by the purported class and contends that all of the challenged conduct is lawful.  Qualcomm has sufficiently demonstrated to this Court that LG possesses evidence necessary to evaluate the purported class's claims because LG purchases baseband processors and has entered into one or more license and supply agreements that are the subject of the purported class's claims. Evidence obtained from LG will therefore be used at trial to determine the merit of the purported class's claims and of Qualcomm's defenses.

The undersigned, as a United States Magistrate Judge of the United States District Court for the Northern District of California (located at the United States District Court, 280 South 1st Street, Courtroom 7 – 4th Floor, San Jose, California 95113 and with phone number (408) 535-5061, hereby issues this Letter of Request for judicial assistance to the National Court Administration of Korea as follows:

| | | |
|---|---|---|
| 1. | **Sender** | The Honorable Nathanael M. Cousins<br>United States Magistrate Judge<br>United States District Court of the Northern District of California<br>280 South 1st Street<br>Courtroom 7 – 4th Floor<br>San Jose, California 95113<br>United States of America |
| 2. | **Central Authority of the Requested State** | National Court Administration<br>Attn:  Director of International Affairs<br>Seocho-daero 219<br>Seocho-gu<br>SEOUL 06590<br>Republic of Korea |
| 3. | **Persons to Whom the Executed Request is to be Returned** | Gary A. Bornstein<br>Yonatan Even<br>Cravath, Swaine & Moore LLP<br>825 Eighth Avenue<br>New York, New York  10019-7475<br>United States of America |

Hague Convention Letters of Request
Case No. 5:17-MD-02773-LHK-NMC

| 4. | | **Specification of the Date by Which the Requesting Authority Requires Receipt of the Response to the Letter of Request** | As soon as practicable. |
|---|---|---|---|
| 5. | a. | **Requesting Judicial Authority** | The Honorable Nathanael M. Cousins<br>United States Magistrate Judge<br>United States District Court of the Northern District of California<br>280 South 1st Street<br>Courtroom 7 – 4th Floor<br>San Jose, California 95113<br>United States of America |
| | b. | **To the Competent Authority of** | National Court Administration<br>Attn: Director of International Affairs<br>Seocho-daero 219<br>Seocho-gu<br>SEOUL 06590<br>Republic of Korea |
| | c. | **Name of the Case and any Identifying Number** | *In re: Qualcomm Antitrust Litigation*, Case No. 5:17-md-02773-LHK-NMC |
| 6. | | **Names and Addresses of the Parties and Their Representatives** | |
| | a. | **Plaintiff** | Plaintiffs Sarah Key, Andrew Westley, Terese Russell and Carra Abernathy, on behalf of themselves and all others similarly situated<br><br>Represented by:<br><br>Kalpana Srinivasan<br>Marc M. Seltzer<br>Steven G. Sklaver<br>Amanda K. Bonn<br>Oleg Elkhunovich<br>Carel Alé<br>SUSMAN GODFREY L.L.P.<br>1901 Avenue of the Stars, Suite 950<br>Los Angeles, CA 90067-6029<br>Tel.: (310) 789-3100<br>Fax: (310) 789-3150<br><br>Joseph Grinstein<br>SUSMAN GODFREY L.L.P.<br>1000 Louisiana Street, Suite 5100 |

3

Houston, TX 77002
Tel.: (713) 651-9366
Fax: (713) 654-6666

Steven N. Williams
Joseph W. Cotchett
Joyce M. Chang
Mark F. Ram
Brian Danitz
COTCHETT, PITRE & McCARTHY, LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel.: (650) 697-6000
Fax: (650) 697-0577

b.   **Defendant**

Qualcomm Incorporated
5775 Morehouse Drive,
San Diego, California 92121
United States of America

Represented by:

Gary A. Bornstein
Yonatan Even
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY  10019

c.   **Nonparty Recipient of this Request.**

LG Electronics, Inc.
Yeoui-daero 128 (Yeoui-do dong) Yeongdeungpo-gu,
Seoul 07336
Republic of Korea

7.   **Nature and purpose of the Proceedings and Summary of the Facts**

Qualcomm's description of the nature and purpose of the proceedings and summary of the facts is below.

This legal dispute is an existing civil action that commenced on January 18, 2017.  On that date, and following, several plaintiffs filed suit on behalf of a purported class of consumers against Defendant Qualcomm in the United States District Court for the Northern District of California and in the United States District Court for the Southern District of California. On July 11, 2017, after the cases were consolidated in the Northern District of California and a lead plaintiff was appointed, the purported class of consumers filed a consolidated amended class action complaint seeking a judgment that certain Qualcomm business practices concerning the sale of CDMA and premium LTE baseband processor chips for cellular devices and Qualcomm's patent licenses violate United States and California law.

Specifically the purported class alleges that Qualcomm has monopoly power in alleged markets for both CDMA baseband processors and premium LTE baseband processors, which it has maintained through a course of allegedly anticompetitive

conduct, including (a) allegedly refusing to license its cellular standard essential patents to competing baseband processor suppliers; (b) allegedly conditioning original equipment manufacturers' access to its baseband processors on the acceptance of Qualcomm's allegedly unfair licensing terms and (c) allegedly coercing original equipment manufacturers into entering into allegedly anticompetitive agreements. The purported class also alleges that Qualcomm's practices constitute unfair methods of competition.

The purported class of consumers seek injunctive relief and monetary relief, including damages, restitution and disgorgement.

8.    a.    **Evidence to be Obtained or Other Judicial Act to be Performed**

The evidence requested herein by the Requesting Court consists of documents from LG that concern the alleged markets for CDMA and premium LTE baseband processor chips and the licensing of Qualcomm's cellular standard essential patents, that are the subject of the purported class's amended complaint. Defendant Qualcomm anticipates that this evidence will be used at the trial of this matter.

b.    **Purpose of the Evidence or Other Judicial Act to be Performed.**

The evidence sought from LG will be covered by the Protective Orders in the Action, attached hereto as Exhibit B, which limits access to this information to a limited set of individuals only for use in this litigation. *See* Exhibit B, § 7.4 at 11-12. The purpose of the requested documentary evidence is to obtain evidence for use at the trial of this matter. Through an investigation, Defendant Qualcomm has determined that LG purchases baseband processors that are within the relevant markets alleged by the purported class and has entered into one or more license and supply agreements that are the subject of the purported class's claims. Thus, LG possesses evidence relevant to the purported class' claims of harm to competition and the competitive process. Defendant seeks evidence about LG's procurement from Qualcomm and other suppliers of baseband processors for use in LG's products, the licenses that LG has obtained from Qualcomm and other patent holders to use patented inventions in its products, and the licenses to LG's or its affiliates' cellular standard essential patents it has offered to other entities. This evidence will be used at the trial to rebut the purported class's claims.

The purported class of consumers has indicated that Qualcomm's licensees are likely to have information that they may use to support their claims. As a Qualcomm licensee, LG falls into this group. LG's 2016 arbitration with Qualcomm is also mentioned in the purported class's amended complaint. Therefore, the Requesting Court seeks assistance for this ongoing proceeding via this Letter of Request.

If any portion of this Request is deemed to be unacceptable under the laws of the Republic of Korea, please disregard that portion and continue to comply with as much of the Request as is legally permissible.

Hague Convention Letters of Request
Case No. 5:17-MD-02773-LHK-NMC

| 9. | Identity and Address of Any Person to be Examined | LG Electronics, Inc. Yeoui-daero 128 (Yeoui-do dong) Yeongdeungpo-gu, Seoul 07336 Republic of Korea |
|---|---|---|
| 10 | Questions to be Put to the Person to be Examined or Statement of the Subject-Matter about which he is to be Examined. | N/A |
| 11 | Documents or Other Property to be Inspected | It is requested that, to the full extent allowed under the law, LG be required to provide the documents and things described in Exhibit A, Schedules A-D. |
| 12. | Any Requirement that the Evidence be Given on Oath or Affirmation and Any Special Form to be Used | N/A |
| 13. | Special Methods or Procedure to be Followed | **Expedited Review.** This Court respectfully asks that this Request be processed and executed by the Authority as soon as possible, given the case schedule of this Action.<br><br>**Method of Requesting Information and Evidence.** This Court requests that information and evidence be provided in accordance with an order to submit documents, pursuant to Article 343 of the Civil Procedure Act, and production of written evidence outside of court, pursuant to Article 297 of the same Act. |
| 14. | Request for Notification of the Time and Place for the Execution of the Request, and the Identity and Address of Any Person to be Notified | The Requesting Court respectfully requests that it be informed of the place, date and time for the execution of the Letter of Request. It is requested that this information be sent directly to the parties' legal representatives, as listed below, with a copy to the Requesting Court.<br><br>Sung Bom Park<br>Yulchon LLC<br>Parnas Tower, 38F<br>521 Teheran-ro<br>Gangnam-gu<br>Seoul 06164<br>Republic of Korea<br><br><br>Gary A. Bornstein<br>Yonatan Even<br>Cravath, Swaine & Moore LLP<br>825 Eighth Avenue |

6

New York, New York  10019-7475
United States of America

| | | |
|---|---|---|
| 15. | **Specification of privilege or duty to refuse to give evidence under the law of the State of origin (Article 11, b)** | Under the laws of the United States, a witness has a privilege to refuse to provide evidence if the evidence discloses a confidential communication between that witness and an attorney for that witness that was made for the purpose of obtaining legal advice. |

United States law also recognizes a privilege against criminal self-incrimination.

Outside the strict area of privilege, certain limited immunities are available that may place restriction on the giving of evidence, such as the limited protection of documents created as the work product of attorneys during or in anticipation of litigation.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**16.**  **The Fees and Costs Incurred Which are Reimbursable**

The Requesting Court understands that any fees and costs incurred in the execution of this Letter of Request are reimbursable under the second paragraph of Article 14 or under Article 26 of the Hague Evidence Convention. These fees and costs, if any, will be reimbursed by Qualcomm. Any request for reimbursement shall be sent to Qualcomm's legal representatives, as listed above.

Dated: _____    _____

Hon. Nathanael M. Cousins
United States Magistrate Judge
United States District Court for the Northern District of California
280 South 1st Street, San Jose, CA 95113
United States of America

# Exhibit A

# SCHEDULE A

## REQUEST NO. 1.

**Indication of the Document**

All exhibits (Nos. 00 – 45) referenced in LG Electronics, Inc. ("LG")'s explanatory material on 2003-2004 negotiations with Qualcomm (2003-2004 Negotiation Summary), which were submitted to the Korea Fair Trade Commission (the "KFTC") in connection with its investigation of Qualcomm and attached as Exhibit No. 68 to the KFTC Decision No. 2017-025, dated January 20, 2017.

**Subject Matter Described in the Document**

The documents relate to the 2003-2004 negotiations of an amendment to the Infrastructure and Subscriber Unit and Technical Assistance Agreement between Qualcomm and LG, dated as of August 31, 1993 (the "1993 License Agreement").

**Holder of the Document**

LG Electronics, Inc.

Yeoui-daero 128 (Yeoui-do dong) Yeongdeungpo-gu, Seoul 07336

Republic of Korea

**Objective Evidence Supporting the Existence and Specificity of the Document**

As expressly referenced in the KFTC Decision No. 2017-025, dated January 20, 2017, LG submitted these documents to the KFTC.

**Facts to be Proven**

As explained in Qualcomm's Letter of Request, the purported class has alleged that Qualcomm used its alleged monopoly and market power in CDMA and premium LTE baseband processors to coerce original equipment manufacturers into agreeing to allegedly unfair licensing terms and allegedly anticompetitive agreements.

Based on evidence, including the aforementioned documents, Qualcomm intends to prove that the relevant license negotiations between Qualcomm and LG were conducted in good faith and on an arm's length basis. Qualcomm believes that these documents will show that LG aggressively negotiated with Qualcomm and received what it believed to be highly favorable terms.

**Legal Basis for the Obligation to Submit the Document**

☐ The requested party holds the document quoted in the lawsuit (quoted document).

☐ The applicant has the right under the law to request the holder of the document to transfer the document or to allow the applicant to see the document (transfer of or access to document).

☐ The document has been prepared for the benefit of the applicant (beneficial document).

☐ The document is in regard to the legal relationship between the applicant and the holder of the document (legal relationship document).

■ Other grounds for submitting the document (Grounds: Article 344(2) of the Civil Procedure Act).

**SCHEDULE B**

**REQUEST NO. 2.**

**Indication of the Document**

Reference materials and attachments (Nos. 1 – 35) to LG's first brief submitted to the KFTC during its investigation of Qualcomm and attached as Exhibit No. 67 to the KFTC Decision No. 2017-025, dated January 20, 2017.

**Subject Matter Described in the Document**

The relevant documents include correspondence and other documents regarding the negotiation of license agreements, reports regarding those negotiations, and the license agreements themselves.

**Holder of the Document**

LG Electronics, Inc.

Yeoui-daero 128 (Yeoui-do dong) Yeongdeungpo-gu, Seoul 07336

Republic of Korea

**Objective Evidence Supporting the Existence and Specificity of the Document**

As expressly referenced in Exhibit No. 67 to the KFTC Decision No. 2017-025, dated January 20, 2017, LG submitted these documents alongside its first brief to the KFTC.

**Facts to be Proven**

As explained in Qualcomm's Letter of Request, the purported class has alleged that Qualcomm used its alleged monopoly and market power in CDMA and premium LTE baseband processors to coerce original equipment manufacturers into agreeing to allegedly unfair licensing terms and allegedly anticompetitive agreements.

Based on evidence including LG's brief and its reference materials and attachments, Qualcomm intends to prove that the relevant license negotiations between

2

Qualcomm and LG were conducted in good faith and on an arm's length basis. Qualcomm believes that these documents will show that LG aggressively negotiated with Qualcomm and received what it believed to be highly favorable terms.

**Legal Basis for the Obligation to Submit the Document**

☐ The requested party holds the document quoted in the lawsuit (quoted document).

☐ The applicant has the right under the law to request the holder of the document to transfer the document or to allow the applicant to see the document (transfer of or access to document).

☐ The document has been prepared for the benefit of the applicant (beneficial document).

☐ The document is in regard to the legal relationship between the applicant and the holder of the document (legal relationship document).

■ Other grounds for submitting the document (Grounds: Article 344(2) of the Civil Procedure Act).

Hague Convention Letters of Request
Case No. 5:17-MD-02773-LHK-NMC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SCHEDULE C**

**REQUEST NO. 3.**

**Indication of the Document**

   Complete versions of all emails, reports, and other documents referenced in LG's initial report on the 2003-2004 negotiation status submitted to the KFTC during its investigation of Qualcomm and attached as Exhibit No. 69 to the KFTC Decision No. 2017-025, dated January 20, 2017.  The following documents are included in this request:

   (1)  Email from Jeong-Sik Juhn <juhn@lge.com> to Jae-Ok Koh and Hui-Jae Cho with subject "[Redraft] Third Qualcomm Meeting (8/5) Result Report" dated August 11, 2003 (Monday) at 6:22 PM.

   (2)  Message from Jeong-Sik Juhn beginning with text "Approval Opinion List" dated August 11, 2003 (Monday) at 6:08:49 PM.

   (3)  Email from Jeong-Sik Juhn <juhn@lge.com> to Hui-Jae Cho and Sang-Yong Lee with subject "Qualcomm Meeting (9/19, Fourth) Result Report" dated September 22, 2003 (Monday) at 2:44 PM.

   (4)  Message from Jeong-Sik Juhn beginning with text "Approval Opinion List" dated September 22, 2003 12:38:12 PM.

   (5)  Document from Patent Team Telecommunication Task [Force] Director Jeong-Sik Juhn titled "Qualcomm Negotiation Status and Plan" dated October 14, 2003.

   (6)  Document titled "Day 1 of Working Level Negotiation" beginning with text "Date and Location: December 1, 2003 10:00 ~ 15:00 Meeting room on 7th Floor of Qualcomm Headquarters".

   (7)  Document from "Patent Team Jeong-Sik Juhn"  titled "Qualcomm Meeting (12/2, Fifth Day 2) Result" dated December 8, 2003 (Monday).

(8)     Document from LG Electronics Inc. titled "Qualcomm Arbitration Status and Plan" beginning with text "I. Background" signed January 5, [year unknown] by LG CEO, CTO, and Team Leader.

(9)     Document from LG Electronics Inc. titled "Qualcomm Royalty Status Report" dated March 2, 2004 Patent Team Senior Advisor Soo-Young Ham signed March 5, [year unknown] by LG CTO and Vice Chairman.

(10)    Document from Technology Planning Team Patent Group titled "Qualcomm & LGE Meeting (4/12) Materials" dated March 8, 2004.

(11)    Document from Patent Team Telecommunication Task Director Jeong-Sik Juhn titled "Qualcomm Arbitration (Dae-Jang-Geum TDR), Qualcomm's Letter dated 5/6" dated May 10, 2004 signed June 10, [year unknown] by LG CTO and Team Leader.

(11)    Document titled "Qualcomm Negotiation" from LG Electronics Inc. beginning with text "I. Analysis of Qualcomm (Rebate) Proposal" signed June 7, [year unknown] by LG Team Leader.

(12)    Document titled "LGE Rebate Offer (Proposal) (Based on 2004 Data)" beginning with text "LGE Proposal" and table titled "NCDMA MSM Chipset".

(13)    Email from: Soo-Young Ham <ham@lge.com> to Woo-Hyun Baik cc'ing Jeong-Sik Juhn with subject "Qualcomm Negotiation Update" dated June 18, 2004 (Friday) at 11:12 AM.

(14)    Document from Patent Team – Director – Jeong-Sik Juh titled "Electronic Approval" dated July 11, 2004 10:40:11 PM.

**Subject Matter Described in the Document**

The relevant documents include correspondence, attachments, meeting summaries and other reports regarding the negotiation of license agreements, reports regarding those negotiations, and market analyses relevant to license negotiations.

**Holder of the Document**

LG Electronics, Inc.

Yeoui-daero 128 (Yeoui-do dong) Yeongdeungpo-gu, Seoul 07336

Republic of Korea

**Objective Evidence Supporting the Existence and Specificity of the Document**

These documents are expressly referenced in Exhibit No. 69 to the KFTC Decision No. 2017-025, dated January 20, 2017, which was submitted by LG to the KFTC.

**Facts to be Proven**

As explained in Qualcomm's Letter of Request, the purported class has alleged that Qualcomm used its alleged monopoly and market power in CDMA and premium LTE baseband processors to coerce original equipment manufacturers into agreeing to allegedly unfair licensing terms and allegedly anticompetitive agreements.

Based on evidence including the aforementioned documents, Qualcomm intends to prove that the relevant license negotiations between Qualcomm and LG were conducted in good faith and on an arm's length basis.  Qualcomm believes that these documents will show that LG aggressively negotiated with Qualcomm and received what it believed to be highly favorable terms.

**Legal Basis for the Obligation to Submit the Document**

☐ The requested party holds the document quoted in the lawsuit (quoted document).

☐ The applicant has the right under the law to request the holder of the document to transfer the document or to allow the applicant to see the document (transfer of or access to document).

☐ The document has been prepared for the benefit of the applicant (beneficial document).

☐ The document is in regard to the legal relationship between the applicant and the holder of the document (legal relationship document).

■ Other grounds for submitting the document (Grounds: Article 344(2) of the Civil Procedure Act).

Hague Convention Letters of Request
Case No. 5:17-MD-02773-LHK-NMC

## SCHEDULE D

## <u>REQUEST NO. 4.</u>

**Indication of the Document**

The following list of LG's inbound and outbound license agreements, covenants or other patent agreements for the manufacture, assembly, use, importation or sale of cellular devices and any amendments thereto involving the following entities:

- (1) License Agreement between LG and Child Protect LLC dated on or about April 1, 2009

- (2) Patent Cross Licensing Agreement between LG and Google Inc. dated on or about November 5, 2014

- (3) License Agreement between LG and Immersion Corporation dated on or about February 4, 2013

- (4) Patent License Agreement between LG and Intel Corporation dated on or about August 28, 2000

- (5) Wireless Patent License Agreement by and between InterDigital Group and LG Electronics, Inc. dated January 1, 2006

- (6) Patent Agreement Covering Android and Chrome OS Based Devices between LG and Microsoft Corp. dated on or about January 12, 2012

- (7) Royalty-Bearing Smartphone Patent License from Nokia Technologies to LG dated on or about June 16, 2016

- (8) License Agreement between LG and Nuance Communications, Inc. dated on or about October 11, 2006

- (9) Royalty-Free Patent Licenses Covering Android and Google Applications on Qualified Devices between LG and all PAX Members,

including Google, Samsung Electronics, Foxconn Technology Group, HMD Global, HTC, Coolpad, BQ and Allview dated on or about April 3, 2017

- (10) Cross-Licensing Deal between LG and Sony Corporation dated on or about August 10, 2011

- (11) Patent License Agreement between LG and Technicolor dated on or about February 11, 2014

- (12) License Agreement between LG and Wi-LAN Inc. dated on or about December 22, 2010

**Subject Matter Described in the Document**

License agreements between LG and various original equipment manufacturers, baseband processor suppliers and patent holders.

**Holder of the Document**

LG Electronics, Inc.

Yeoui-daero 128 (Yeoui-do dong) Yeongdeungpo-gu, Seoul 07336

Republic of Korea

**Objective Evidence Supporting the Existence and Specificity of the Document**

(1) *Child Protect*

Acacia Research Corporation announced that "its Child Protect LLC subsidiary has entered into a license agreement with LG Electronics, Inc. covering a portfolio of patents that applies to controlling incoming and/or outgoing calls from a telephone" (Acacia Subsidiary Licenses Telephone Call Control Technology to LG Electronics (on April 1, 2009), https://www.businesswire.com/news/home/20090401005426/en/Acacia-

Subsidiary-Licenses-Telephone-Call-Control-Technology).  Furthermore, Acacia Research Corporation stated in its First Quarter 2009 Financial Results that its subsidiary "Child Protect LLC entered into a license agreement with LG Electronics, Inc. covering a portfolio of patents that apply to controlling incoming and/or outgoing calls from a telephone" (Acacia Research Reports First Quarter 2009 Financial Results (April 23, 2009), https://www.sec.gov/Archives/edgar/containers/fix067/934549/000101968709001469/acri_8k-ex9901.htm).

(2) *Google*

LG has publicly acknowledged on its website the existence of a license agreement with Google Inc. "covering a broad range of products and technologies" (Google and LG Enter Into Global Patent License Agreement (November 5, 2014), http://www.lg.com/au/press-release/google-and-lg-enter-into-global-patent-license-agreement).

(3) *Immersion*

Immersion Corporation stated on its website that it had "expanded its existing agreement with LG Electronics Inc. to include a patent license covering LG's use of simple forms of haptic effects, sometimes referred to as Basic Haptics, in its smartphones and other mobile devices" (Immersion Expands License with LG Electronics (February 4, 2013), http://ir.immersion.com/news-releases/news-release-details/immersion-expands-license-lg-electronics).

(4) *Intel*

Intel Corporation stated on its website that it had "entered into a patent cross-license agreement [that] provides for an undisclosed payment from Intel to LG[]" (Intel

And LG Electronics Announce Long-Term Business Agreement (August 28, 2000),

https://www.intel.com/pressroom/archive/releases/2000/cn082800.htm).

(5) *InterDigital*

A redacted copy of the Wireless Patent License Agreement by and between

InterDigital Group and LG Electronics, Inc. dated January 1, 2006 was publicly filed with

the United States Securities and Exchange Commission as an exhibit to Interdigital, Inc.'s

Form 10-Q for the Period Ending 03/31/06 (Wireless Patent License Agreement (January

1, 2006),

https://www.sec.gov/Archives/edgar/data/354913/000119312506107083/dex1082.htm).

In addition, InterDigital issued a press release stating that its "patent licensing

subsidiaries have signed a multi-year, worldwide, non-exclusive patent license with LG

Electronics, Inc. ("LG")" that "covers the 3G, 4G and 5G terminal unit products of LG

and its affiliates" (InterDigital and LG Electronics, Inc. Sign Multi-Year Patent License

Agreement (December 4, 2017), https://globenewswire.com/news-

release/2017/12/04/1219995/0/en/InterDigital-and-LG-Electronics-Inc-Sign-Multi-Year-

Patent-License-Agreement.html).

(6) *Microsoft*

Microsoft issued a press release stating "Microsoft Corp. and LG Electronics have

signed a patent agreement that provides broad coverage under Microsoft's patent

portfolio for LG's tablets, mobile phones and other consumer devices running the

Android or Chrome OS Platform" (Microsoft and LG Sign Patent Agreement Covering

Android and Chrome OS Based Devices (January 12, 2012),

https://news.microsoft.com/2012/01/12/microsoft-and-lg-sign-patent-agreement-

covering-android-and-chrome-os-based-devices/).

(7) *Nokia*

Nokia stated on its website "LG Electronics has agreed to take a royalty-bearing smartphone patent license from Nokia Technologies. The Korean company is the latest of more than 60 licensees for Nokia's 2G, 3G and 4G mobile communication technologies" (LG Electronics and Nokia Technologies agree on smartphone patent license (June 16, 2016), https://www.nokia.com/en_int/news/releases/2015/06/16/lg-electronics-and-nokia-technologies-agree-on-smartphone-patent-license).

Nokia also stated on its website that it had "reached a favorable arbitration outcome with LG and have since reached agreement with them on a license for a longer term than what was set out in the arbitration" (Nokia Corporation Financial Report for Q3 and January-September 2017 (October 26, 2017), https://www.nokia.com/en_int/news/releases/2017/10/26/nokia-corporation-financial-report-for-q3-and-january-september-2017).

(8) *Nuance Communications*

Nuance Communications, Inc. issued a press release stating that "Nuance and LG Electronics have agreed to a license agreement for Nuance's voice-activated dialing patent (United States Patent No. 6,501,966), covering LG mobile phones using voice-activated dialing (Nuance and LG Electronics Sign License Agreement for Nuance's Voice-Activated Dialing Patent (October 11, 2006), https://www.businesswire.com/news/home/20061011005510/en/Nuance-LG-Electronics-Sign-License-Agreement-Nuances).

(9) *All PAX Members, Including Google, Samsung Electronics, Foxconn Technology Group, HMD Global, HTC, Coolpad, BQ and Allview*

Google stated on its website that under its patent licensing initiative, PAX, "members grant each other royalty-free patent licenses covering Android and Google Applications on qualified devices" and that "PAX members currently include Google, Samsung Electronics, LG Electronics, Foxconn Technology Group, HMD Global, HTC, Coolpad, BQ, and Allview" (Introducing PAX: the Android Networked Cross-License Agreement (April 3, 2017), https://blog.google/topics/public-policy/introducing-pax-android-networked-cross-license-agreement/).

(10) *Sony*

LG stated publicly that it had "signed a cross-licensing deal" with Sony to resolve a patent dispute involving smartphones (Sony, LG Electronics settle bitter patent dispute (August 10, 2011), https://www.reuters.com/article/us-sony-lg/sony-lg-electronics-settle-bitter-patent-dispute-idUSTRE77A0AF20110811).

(11) *Technicolor*

Technicolor stated on its website that it had "signed a multi-year patent license agreement with LG Electronics for the use of Technicolor patents for LG's smartphones and tablets" (Technicolor Signs New Patent License Agreement for Smartphones and Tablets (February 11, 2014), http://www.technicolor.com/en/who-we-are/press-news-center/press-releases/technicolor-signs-new-patent-license-agreement-smartphones-and-tablets).

(12) *Wi-LAN*

Wi-Lan Inc. stated on its website that "LG has obtained a multi-year license to certain patents of WiLAN".  (WiLAN and LG Settle Wireless Patent Litigation (December 22, 2010), http://www.wilan.com/news/news-releases/news-release-details/2010/wilan-and-lg-settle-wireless-patent-litigation/default.aspx).

**Facts to be Proven**

As explained in Qualcomm's Letter of Request, the purported class has alleged that Qualcomm has monopoly power in alleged markets for both CDMA baseband processors and premium LTE baseband processors, which it has maintained through a course of allegedly anticompetitive conduct, including by allegedly refusing to license its cellular standard essential patents to competing baseband processor suppliers.

Based on evidence including LG's agreements with the above entities, Qualcomm intends to show that Qualcomm's licensing practices are not contrary to industry practice and that exhaustive licenses for the manufacture and sale of baseband processors are not common in the industry.

**Legal Basis for the Obligation to Submit the Document**

☐ The requested party holds the document quoted in the lawsuit (quoted document).

☐ The applicant has the right under the law to request the holder of the document to transfer the document or to allow the applicant to see the document (transfer of or access to document).

☐ The document has been prepared for the benefit of the applicant (beneficial document).

☐ The document is in regard to the legal relationship between the applicant and the holder of the document (legal relationship document).

■ Other grounds for submitting the document (Grounds: Article 344(2) of the Civil Procedure Act).

# Exhibit B

1   KEKER, VAN NEST & PETERS LLP
    ROBERT A. VAN NEST - # 84065
2   rvannest@keker.com
    ASIM M. BHANSALI - # 194925
3   abhansali@keker.com
    EUGENE M. PAIGE - # 202849
4   epaige@keker.com
    JUSTINA SESSIONS - # 270914
5   jsessions@keker.com
    DAVID W. RIZK - # 284376
6   drizk@keker.com
    633 Battery Street
7   San Francisco, CA 94111-1809
    Telephone:    415 391 5400
8   Facsimile:    415 397 7188

9   Attorneys for Defendant
    QUALCOMM INCORPORATED

10               UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12                    SAN JOSE DIVISION

13

14  IN RE: QUALCOMM ANTITRUST           Case No. 17-md-02773-LHK
    LITIGATION
15                                      [DRAFT] PROTECTIVE ORDER
                                        GOVERNING CONFIDENTIAL
16                                      MATERIAL

    This Document Relates To:
17                                      Dept.:     Courtroom 8, 4th Floor
    ALL ACTIONS                         Judge:     Hon. Lucy H. Koh
18

19

20

21

22

23

24

25

26

27

28

1167045

**1.     PURPOSES AND LIMITATIONS**

Disclosure and discovery activity in this action are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted. Accordingly, the parties hereby stipulate to and petition the court to enter the following Stipulated Protective Order. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. The parties further acknowledge, as set forth in Section 13.3, below, that this Stipulated Protective Order does not entitle them to file confidential information under seal; Civil Local Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal.

**2.     DEFINITIONS**

2.1     <u>Challenging Party</u>:  a Party or Non-Party that challenges the designation of information or items under this Order.

2.2     <u>"CONFIDENTIAL" Information or Items</u>:  information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c).

2.3     <u>Counsel (without qualifier)</u>:  Outside Counsel of Record and House Counsel (as well as their support staff).

2.4     <u>Designated House Counsel</u>:  House Counsel who seek access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information in this matter under Section 7.4 of this Order.

2.5     <u>Designating Party</u>:  a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

2.6     <u>Disclosure or Discovery Material</u>:  all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things,

1167045

testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

2.7    Expert:  a person, who is not an employee of a Defendant or of any firm engaged in the design, manufacture or sale of cellular technology, cellular products or cellular subscriber services, with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action, as well as employees of the firm with which the Expert is associated or independent contractors who are necessary to assist the Expert's work.

2.8    HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items: extremely sensitive "Confidential Information or Items," disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

2.9    House Counsel:  attorneys who are employees in the Corporate Legal Department of Qualcomm Incorporated (and their support staff). House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.10    Non-Party:  any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

2.11    Outside Counsel of Record:  attorneys who are not employees of a party to this action but are retained to represent or advise a party to this action, and have appeared in this action on behalf of that party or are affiliated with a law firm that has appeared on behalf of that party, as well as such attorneys' support staffs.

2.12    Party:  any party to this action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

2.13    Producing Party:  a Party or Non-Party that produces Disclosure or Discovery Material in this action.

2.14    Professional Vendors:  persons or entities that provide litigation support services (*e.g.*, photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and

1167045

subcontractors.

2.15    Protected Material:  any Disclosure or Discovery Material that is designated as "CONFIDENTIAL," or as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

2.16    Receiving Party:  a Party that receives Disclosure or Discovery Material from a Producing Party.

**3.    SCOPE**

The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material. However, the protections conferred by this Stipulation and Order do not cover the following information:  (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order, including becoming part of the public record through trial or otherwise; and (b) any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party. Any use of Protected Material at trial shall be governed by a separate agreement or order.

**4.    DURATION**

Even after final disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs. Final disposition shall be deemed to be the later of (a) dismissal of all claims and defenses in this action, with or without prejudice; and (b) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

**5.    DESIGNATING PROTECTED MATERIAL**

5.1    Exercise of Restraint and Care in Designating Material for Protection.  Each Party or Non-Party that designates information or items for protection under this Order must take care

to limit any such designation to specific material that qualifies under the appropriate standards. To the extent it is practical to do so the Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify – so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.

Mass, indiscriminate, or routinized designations are prohibited except as provided specifically in this order or any federal statute or regulation. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (*e.g.*, to unnecessarily encumber or retard the case development process or to impose unnecessary expenses and burdens on other parties) expose the Designating Party to sanctions.

If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection at all or do not qualify for the level of protection initially asserted, that Designating Party must promptly notify all other parties that it is withdrawing the mistaken designation.

5.2     <u>Manner and Timing of Designations</u>.  Except as otherwise provided in this Order (*see, e.g.*, second paragraph of section 5.2(a) below), or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.  For the avoidance of doubt, Section 5.2 does not apply to documents submitted or produced by Non-Parties that are subject to Section 5.4 of this Order.

Designation in conformity with this Order requires:

(a)  for information in documentary form (*e.g.*, paper or electronically stored information ("ESI"), but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" to each page that contains protected material and also, for ESI, in the metadata field assigned to indicate the confidentiality designation.

A Party or Non-Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has indicated

which material it would like copied and produced. During the inspection and before the

designation, all of the material made available for inspection shall be deemed "HIGHLY

CONFIDENTIAL – ATTORNEYS' EYES ONLY." After the inspecting Party has identified the

documents it wants copied and produced, the Producing Party must determine which documents,

or portions thereof, qualify for protection under this Order. Then, before producing the specified

documents, the Producing Party must affix the appropriate legend ("CONFIDENTIAL" or

"HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY") as set forth in the preceding

paragraph.

       (b)    for testimony given in deposition or in other pretrial or trial proceedings,

that the Designating Party identify, either verbally on the record or in a writing served on all

Parties and the court reporter within 21 days after the close of the deposition, hearing, or other

proceeding, all protected testimony and specify the level of protection being asserted. Only those

portions of the testimony that are appropriately designated for protection shall be covered by the

provisions of this Stipulated Protective Order.

       Each Party shall give the other Party notice if it reasonably expects a deposition,

hearing or other proceeding to include Protected Material so that the other Party can ensure that

only authorized individuals are present at those proceedings. The use of a document as an exhibit

at a deposition shall not in any way affect its designation as "CONFIDENTIAL" or "HIGHLY

CONFIDENTIAL – ATTORNEYS' EYES ONLY."

       Transcripts containing Protected Material shall have an obvious legend on the title

page that the transcript contains Protected Material, and the title page shall be followed by a list

of all pages (including line numbers as appropriate) that have been designated as Protected

Material and the level of protection being asserted by the Designating Party. The Designating

Party shall inform the court reporter of these requirements. Any transcript that is prepared before

the expiration of the 21-day period for designation shall be treated during that period as if it had

been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" in its entirety

unless otherwise agreed. After the expiration of that period, the transcript shall be treated only as

and to the extent actually designated.

1167045

(c)     for all other information or tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information or item is stored the label "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."  If only a portion or portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portion(s) and specify the level of protection being asserted.

5.3     <u>Inadvertent Failures to Designate</u>.  If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. Upon timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order. Following a correction of a designation, the Producing Party shall provide re-labeled copies of the information or items to each Receiving Party reflecting the change in designation.

5.4     <u>Information Obtained from the Federal Trade Commission, or any of its</u> <u>employees, agents, attorneys, and all other persons acting on its behalf (together, "FTC")</u>.  The following procedure shall apply to the production in this action of any material that Defendant Qualcomm Incorporated obtained or obtains from the FTC through discovery in the matter entitled *Federal Trade Commission v. Qualcomm Incorporated*, No. 5:17-cv-00220-LHK ("FTC Action"), to the extent that the material constitutes: (i) a document or portion thereof submitted or produced to the FTC by a Non-Party, (ii) a transcript of an investigational hearing of a Non-Party taken during the FTC's investigation of Qualcomm, or (iii) a document that discloses the substance of such a document or transcript (together, "FTC Investigation Material").

(a)  Pursuant to the Court's Case Management Order (Dkt. 36), upon entry of this protective order, Defendant Qualcomm Incorporated immediately shall provide all Non-Parties who submitted FTC Investigation Material and who have been identified to Qualcomm by the FTC as having provided such material with notice that Plaintiffs have requested information submitted by the Non-Party, together with a copy of this Protective Order. This notice shall inform the Non-Party (i) that Qualcomm will be producing to Plaintiffs all the materials that were

1167045

the subject of the FTC's notice letter to the Non-Party sent in connection with the FTC Action

and that were produced to Qualcomm; (ii) that the Non-Party may, within fourteen (14) days of

such notice, seek a protective order from this court regarding Qualcomm's production of its

confidential information to Plaintiffs; (iii) that absent action by the Non-Party, within such 14-day

period, Qualcomm will produce the Non-Party's documents to Plaintiffs; and (iv) that any

confidentiality designation applied to the Non-Party's documents in the FTC Action will apply to

the documents as produced in this case, unless the Non-Party seeks a different designation within

fourteen (14) days, as provided in subsection (c) below.

      (b)  If the Non-Party fails to seek a protective order from this court within fourteen

(14) days of receiving the notice and accompanying information, Defendant Qualcomm

Incorporated shall not be prohibited from promptly producing the Non-Party's confidential

information to Plaintiffs.  If the Non-Party timely seeks a protective order, Qualcomm shall not

produce any information in its possession or control covered by the protective order sought by the

Non-Party before a determination by the court.  Absent a court order to the contrary, the Non-

Party shall bear the burden and expense of seeking protection in this court of its Protected

Material.

      (c) A Non-Party may, within fourteen (14) days of the notice described in

subsection (a) above, designate any information as "CONFIDENTIAL" or "HIGHLY

CONFIDENTIAL – ATTORNEYS' EYES ONLY" pursuant to the terms of this Protective

Order.  After fourteen (14) days, the same confidentiality designations applied to a Non-Party's

documents produced in the FTC Action will likewise apply to those documents in this action,

without any further action by the Non-Party.  Any additional or different protection obtained by a

Non-Party for its documents in the FTC Action shall be implemented in this case by agreement or

stipulation of the Parties as needed.

## 6.  CHALLENGING CONFIDENTIALITY DESIGNATIONS

    6.1  <u>Timing of Challenges</u>.  Any Party or Non-Party may challenge a designation of

confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality

designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic

1167045

burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

6.2 <u>Meet and Confer</u>. The Challenging Party shall initiate the dispute resolution process by providing written notice of each designation it is challenging and describing the basis for each challenge. To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific paragraph of the Protective Order. The parties shall attempt to resolve each challenge in good faith and must begin the process by conferring directly (in voice-to-voice dialogue; other forms of communication are not sufficient) within fourteen (14) days of the date of service of notice. In conferring, the Challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation. A Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first or establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner.

6.3 <u>Judicial Intervention</u>. If the Parties cannot resolve a challenge without court intervention, the Designating Party shall file and serve a motion to retain confidentiality under Civil Local Rule 7 (and in compliance with Civil Local Rule 79-5, if applicable) within twenty-one (21) days of the initial notice of challenge or within fourteen (14) days of the parties agreeing that the meet and confer process will not resolve their dispute, whichever is earlier. Each such motion must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements imposed in the preceding paragraph. Failure by the Designating Party to make such a motion including the required declaration within twenty-one (21) days (or fourteen (14) days, if applicable) shall automatically waive the confidentiality designation for each challenged designation. The parties may stipulate without court order to amend the time period within which a motion shall be filed. In addition, the Challenging Party

1167045

may file a motion challenging a confidentiality designation at any time if there is good cause for doing so, including a challenge to the designation of a deposition transcript or any portions thereof. Any motion brought pursuant to this provision must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements imposed by the preceding paragraph.

The burden of persuasion in any such challenge proceeding shall be on the Designating Party. Frivolous challenges and those made for an improper purpose (*e.g.*, to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions. Unless the Designating Party has waived the confidentiality designation by failing to file a motion to retain confidentiality as described above, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the court rules on the challenge.

## 7.    ACCESS TO AND USE OF PROTECTED MATERIAL

7.1    <u>Basic Principles</u>. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle this litigation, including any related appellate proceeding. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the litigation has been terminated, a Receiving Party must comply with the provisions of Section 14 below.

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.2    <u>Disclosure of "CONFIDENTIAL" Information or Items</u>. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a)    the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record (1) who do not provide commercial advice (as opposed to legal advice) to a Defendant and (2) to whom it is reasonably necessary to disclose the information for this litigation;

9

1167045

(b)  House Counsel, identified in Exhibit B, (1) who have no involvement in competitive decision-making for a Defendant, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), (2) to whom disclosure is reasonably necessary for this litigation, and (3) who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), as well as their support staff, provided that such support staff are not involved in competitive decision-making and have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c)  Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d)  the court and its personnel;

(e)  court reporters and their staff, professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(f)  during their testimony or in preparation for their testimony, witnesses in the action and their counsel to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the court. Such disclosure may only occur for the purpose of assisting the preparation or examination of the witness. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Stipulated Protective Order; and

(g)  the Designating Party or its employees, the author or recipient of a document containing the information, or a custodian or other person who otherwise possessed or knew the information.

7.3     Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY

1167045

CONFIDENTIAL – ATTORNEYS' EYES ONLY" only to:

(a)     the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record (1) who do not provide commercial advice (as opposed to legal advice) to a Defendant and (2) to whom it is reasonably necessary to disclose the information for this litigation;

(b)  Designated House Counsel of the Receiving Party (1) who have no involvement in competitive decision-making for a Defendant, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), (2) to whom disclosure is reasonably necessary for this litigation, (3) who has signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), and (4) as to whom the procedures set forth in paragraph 7.4, below, have been followed;

(c)  Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d)  the court and its personnel;

(e)  court reporters and their staff, professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A); and

(f)  the Designating Party or its employees, the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

7.4     <u>Procedures for Approving or Objecting to Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items.</u>

(a)  Unless otherwise ordered by the court or agreed to in writing by the Designating Party, a Party that seeks to disclose to Designated House Counsel any information or item that has been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" pursuant to paragraph 7.3(b) first must make a written request to the Designating Party that (1) sets forth the full name of the Designated House Counsel and the city and state of his or her

1167045

residence, and (2) describes the Designated House Counsel's current and reasonably foreseeable future primary job duties and responsibilities in sufficient detail to determine if House Counsel is involved, or may become involved, in any competitive decision-making and (3) identifies with reasonable particularity the "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information that the Receiving Party seeks permission to disclose;

(b)  A Party that makes a request and provides the information specified in paragraph 7.4(a) may disclose the subject Protected Material to the identified Designated House Counsel unless, within 14 days of delivering the request, the Party receives a written objection from the Designating Party. Any such objection must set forth in detail the grounds on which it is based.

(c)  A Party that receives a timely written objection must meet and confer with the Designating Party (through direct voice-to-voice dialogue) to try to resolve the matter by agreement within seven days of the written objection. If no agreement is reached, the Party seeking to make the disclosure to Designated House Counsel may file a motion as provided in Civil Local Rule 7 (and in compliance with Civil Local Rule 79-5, if applicable) seeking permission from the court to do so. Any such motion must describe the circumstances with specificity, set forth in detail the reasons why the disclosure to Designated House Counsel is reasonably necessary, assess the risk of harm that the disclosure would entail, and suggest any additional means that could be used to reduce that risk. In addition, any such motion must be accompanied by a competent declaration describing the parties' efforts to resolve the matter by agreement (i.e., the extent and the content of the meet and confer discussions) and setting forth the reasons advanced by the Designating Party for its refusal to approve the disclosure.

In any such proceeding, the Party opposing disclosure to Designated House Counsel shall bear the burden of proving that the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Designated House Counsel.

1167045

**8.    COMPETITIVE DECISION-MAKING BAR**

Absent written consent from the Designating Party, any individual who receives access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items shall not be involved in competitive decision-making for a Defendant, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), relating to the subject matter of the Information or Items accessed by the individual.  This bar shall begin when access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items is first received by the affected individual and shall end one (1) year after access to such "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items is first received by the affected individual.

**9.    PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION**

If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY,"  that Party must:

(a)    promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or court order;

(b)    promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Stipulated Protective Order; and

(c)    cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected. If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material. Nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

13

1167045

## 10. A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION

10.1    The terms of this Order are applicable to information produced by a Non-Party in this action and designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order.  Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

10.2    For the avoidance of doubt, Sections 10.3 and 10.4 do not apply to documents submitted or produced by Non-Parties that are subject to Section 5.4 of this Order.

10.3    In the event that a Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, custody or control, and the Party has a contractual or legal obligation not to produce the Non-Party's confidential information, then the Party shall:

(a)  promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

(b)  promptly provide the Non-Party with a copy of the Stipulated Protective Order in this litigation and the relevant discovery request(s); and

(c)  make the information requested available for inspection by the Non-Party.

10.4    If the Non-Party fails to object or seek a protective order from this court within fourteen (14) days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's confidential information responsive to the discovery request. If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court.  Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

## 11. UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the

14

1167045

unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the

Protected Material, (c) inform the person or persons to whom unauthorized disclosures were

made of all the terms of this Order, and (d) request such person or persons to execute the

"Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

**12.    INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE
        PROTECTED MATERIAL**

When a Producing Party gives notice to Receiving Parties that certain inadvertently

produced material is subject to a claim of privilege or other protection, the obligations of the

Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). Any

inadvertent production of privileged or otherwise protected material that satisfies Federal Rule of

Evidence 502(b) shall not be deemed to have waived the privilege or protection.

**13.    MISCELLANEOUS**

13.1    <u>Right to Further Relief</u>. Nothing in this Order abridges the right of any person to

seek its modification by the court in the future.

13.2    <u>Right to Assert Other Objections</u>. By stipulating to the entry of this Protective

Order no Party waives any right it otherwise would have to object to disclosing or producing any

information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no

Party waives any right to object on any ground to use in evidence of any of the material covered

by this Protective Order.

13.3    <u>Filing Protected Material</u>. Without written permission from the Designating Party

or a court order secured after appropriate notice to all interested persons, a Party may not file in

the public record in this action any Protected Material. A Party that seeks to file under seal any

Protected Material must comply with Civil Local Rule 79-5. Protected Material may only be filed

under seal pursuant to a court order authorizing the sealing of the specific Protected Material at

issue. Pursuant to Civil Local Rule 79-5, a sealing order will issue only upon a request

establishing that the Protected Material at issue is privileged, protectable as a trade secret, or

otherwise entitled to protection under the law. If a Receiving Party's request to file Protected

Material under seal pursuant to Civil Local Rule 79-5(e) is denied by the court, then the

Receiving Party may file the Protected Material in the public record pursuant to Civil Local Rule

1167045

79-5(e) unless otherwise instructed by the court.

## 14.    FINAL DISPOSITION

Within 60 days after the final disposition of this action, as defined in paragraph 4, each Receiving Party must return all Protected Material to the Producing Party or destroy such material. As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 60 day deadline that (a) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and (b) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Section 4.

///

[DRAFT] PROTECTIVE ORDER GOVERNING CONFIDENTIAL MATERIAL
Case No. 17-md-02773-LHK

1167045

1         IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

2

3  Dated:  May 26, 2017

4

                                        By:  */s/ Kalpana Srinivasan*

5                                            Kalpana Srinivasan
                                          Marc M. Seltzer

6                                            Steven G. Sklaver

7                                            Amanda Bonn
                                          Oleg Elkhunovich

8                                            SUSMAN GODFREY L.L.P.
                                          1901 Avenue of the Stars, Suite 950

9                                            Los Angeles, CA 90067
                                          Telephone: (310) 789-3100

10                                            Facsimile: (310) 789-3006
                                          Email: ksrinivasan@susmangodfrey.com

11                                            Email: mmseltzer@susmangodfrey.com
                                          Email: ssklaver@susmangodfrey.com

12                                            Email: jgrinstein@susmangodfrey.com
                                          Email: abonn@susmangodfrey.com

13                                            Email: oelkhunovich@susmangodfrey.com

14                                            Joseph Grinstein

15                                            SUSMAN GODFREY L.L.P.
                                          1000 Lousiana Street # 5100

16                                            Houston, TX 77002
                                          Telephone:  (713) 651-9366

17                                            Facsimile:  (713) 654-6666
                                          Email: jgrinstein@susmangodfrey.com

18                                            Steven N. Williams

19                                            COTCHETT, PITRE & MCCARTHY
                                          840 Malcolm Road, Suite 200

20                                            Burlingame, CA 94010
                                          Telephone: (650) 697-6000

21                                            Facsimile: (650) 697-0577
                                          Email: swilliams@cpmlegal.com

22                                            ***Plaintiffs' Co-Lead Counsel***

23                                            Steve W. Berman

24                                            HAGENS BERMAN SOBOL SHAPIRO LLP

25                                            1918 Eighth Avenue, Suite 3300
                                          Seattle, WA 98101

26                                            Telephone: (206) 268-9320
                                          Facsimile: (206) 623-0594

27                                            Email: steve@hbsslaw.com

28                                            ***Plaintiffs' Steering Committee***

[DRAFT] PROTECTIVE ORDER GOVERNING CONFIDENTIAL MATERIAL
Case No. 17-md-02773-LHK

1167045

Dated: May 26, 2017                                    KEKER, VAN NEST & PETERS LLP

                                        By:   /s/ Asim M. Bhansali
                                              ROBERT A. VAN NEST
                                              ASIM M. BHANSALI
                                              EUGENE M. PAIGE
                                              JUSTINA SESSIONS
                                              DAVID W. RIZK

                                              Attorneys for Defendant
                                              QUALCOMM INCORPORATED

## ATTESTATION

       Pursuant to Civil Local Rule 5-1(i)(3), the filer of this document attests that concurrence

in the filing of this document has been obtained from the other signatory above.


Dated: May 26, 2017
                              By:/s/ Asim M. Bhansali
                                  ASIM M. BHANSALI




PURSUANT TO STIPULATION, IT IS SO ORDERED.


DATED: _____May 29, 2017_____   _____
                                       Honorable Nathanael M. Cousins
                                       United States

GRANTED

Judge Nathanael M. Cousins

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

18

[DRAFT] PROTECTIVE ORDER GOVERNING CONFIDENTIAL MATERIAL
Case No. 17-md-02773-LHK

1167045

**EXHIBIT A**

**ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND**

I, _____ [print or type full name], of _____ [print or type full address], declare under penalty of perjury that I have read in its entirety and understand the Stipulated Protective Order that was issued by the United States District Court for the Northern District of California on [date] in the case of *In Re: Qualcomm Antitrust Litigation*, Case No. 17-MD-02773-LHK. I agree to comply with and to be bound by all the terms of this Stipulated Protective Order and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to this Stipulated Protective Order to any person or entity except in strict compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the United States District Court for the Northern District of California for the purpose of enforcing the terms of this Stipulated Protective Order, even if such enforcement proceedings occur after termination of this action.

I hereby appoint _____ [print or type full name] of _____ [print or type full address and telephone number] as my California agent for service of process in connection with this action or any proceedings related to enforcement of this Stipulated Protective Order.

Date: _____

City and State where sworn and signed: _____

Printed name: _____

Signature: _____

[DRAFT] PROTECTIVE ORDER GOVERNING CONFIDENTIAL MATERIAL
Case No. 17-md-02773-LHK

1167045

1

## EXHIBIT B

2

David Greenfield

3

Kevin Kelly

4

Kurt Kjelland

5

Carol Lam

6

William Sailer

7

John Scott

8

Mark Snyder

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[DRAFT] PROTECTIVE ORDER GOVERNING CONFIDENTIAL MATERIAL
Case No. 17-md-02773-LHK