BOIES SCHILLER FLEXNER LLP
William A. Isaacson (*Pro Hac Vice App.* to be filed)
DC Bar No. 414788, wisaacson@bsfllp.com
Karen L. Dunn (*Pro Hac Vice App.* to be filed)
DC Bar No. 1002520, kdunn@bsfllp.com
Amy J. Mauser (*Pro Hac Vice App.* to be filed)
DC Bar No. 424065, amauser@bsfllp.com
1401 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 237-2727
Facsimile: (202) 237-6131

BOIES SCHILLER FLEXNER LLP
Edward H. Takashima, SBN 270945
etakashima@bsfllp.com
401 Wilshire Blvd., Suite 850
Santa Monica, CA 90401
Telephone:  (310) 752-2400
Facsimile:  (310) 752-2490

Attorneys for Non-Party APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION<br>　　　　　Plaintiff,<br><br>　　　v.<br><br>QUALCOMM INCORPORATED, a Delaware corporation,<br><br>　　　　　Defendant. | Case No. 5:17-cv-00220-LHK-NMC<br><br>**NON-PARTY APPLE INC.'S RESPONSE TO QUALCOMM'S SUBMISSION REGARDING APPLE'S COMPLIANCE WITH PRODUCTION DEADLINES**<br><br>Courtroom:  7, 4th Floor<br><br>Judge:  Hon. Nathanael M. Cousins |
| IN RE QUALCOMM ANTITRUST LITIGATION | Case No. 5:17-md-02773-LHK-NMC |

1    Pursuant to the Court's January 5, 2018 Order (ECF 450), Non-Party Apple Inc.

2  ("Apple") hereby submits this response to Qualcomm Incorporated's ("Qualcomm") January 12,

3  2018 submission (ECF 483) concerning the calculation of the sanction imposed by the Court on

4  December 21, 2017 (ECF 421).

5    Apple completed its production of responsive non-privileged documents from the 1.3

6  million documents that were in Apple's quality control process as of December 15, 2017 on

7  December 27, 2017.  As a result, the monetary sanctions set by the Court should terminate as of

8  December 27, 2017.

9    Qualcomm tellingly has not offered *any* factual basis for a later termination date.  Instead,

10  it "questions" whether Apple's production of documents "constitutes full compliance with the

11  letter and spirit of the December 21 Order." (ECF 483 at 1.)  Those "questions," in turn, are based

12  on nothing more than suspicion; Qualcomm's misunderstandings about Apple's quality control

13  process; unfounded conjecture concerning the number of responsive, non-privileged documents

14  Qualcomm *thinks* Apple *should* have; and privilege log issues that are already being addressed or

15  are the subject of meet and confers—and that in any case the Court instructed were *not* to be the

16  subject of these submissions.  (ECF 467 at 12:19-12:23 ("I'm not looking to, for example, to

17  bring in the privilege log disputes into this sanctions issue because I want you to confer with each

18  other before we have any discussion about sanctions.")).  Those are inadequate grounds to justify

19  the fishing Qualcomm desires, in its attempt to burden Apple further, rather than proceeding with

20  substantive fact discovery.

21    Qualcomm's demand for a declaration should be denied, and the Court should conclude

22  that December 27, 2017 is the appropriate end date for its monetary sanction.

23  **I.   Background**

24    At the December 20, 2017 discovery hearing, Apple identified three principal groups of

25  documents that had not yet been produced:  (1) approximately 1.3 million documents that had

26  gone through initial manual review, and were in the quality control process; (2) approximately

27  215,000 documents that had not yet been reviewed; and (3) approximately 1 million documents

28  that had been identified as privileged or highly likely to be privileged.  (ECF 424 at 21:25-23:5;

1

*see* ECF 403 at 1.)  The Court concluded that Apple had not substantially completed its document production as of December 15, 2017, and *sua sponte* imposed a monetary sanction of $25,000 per day, running from December 15 through the production of responsive, non-privileged documents from the population of 1.3 million documents in quality control.  (ECF 421 at 2-3; ECF 424 at 57:16-61:22.)

With respect *only* to the 1.3 million documents in the quality control process, the Court ordered a new production deadline of December 29, 2017 (ECF 424 at 61:5-62:15) and stated:  "I want you to complete your review by the 29th and produce the stuff that's responsive.  But if you can't get it done by the 29th, then my order is, yes, you should produce whatever you've got subject to clawback."[1]  (*Id.* at 62:12-62:15.)

In its December 29, 2017 joint submission with Qualcomm, Apple confirmed that it had completed its production of responsive non-privileged documents from the 1.3 million documents in quality control.  (ECF 431 at 1.)  Qualcomm confirmed it received that production on December 27, 2017.  (*Id.*)  Accordingly, Apple submits that the Court's monetary sanction should end on December 27, 2017.  (*Id.*)

## II.    Apple's Document Production

Qualcomm first "questions" whether Apple has complied with the Court's December 21 Order because it believes it should have received more documents than it has from Apple.  Qualcomm's concerns on this point are entirely unfounded.

### A.    Total Volume of Documents from the 1.3 Million in Quality Control

Apple has produced approximately 280,000 responsive, non-privileged documents from the population of 1.3 million documents in quality control as of December 15, 2017.  Qualcomm does not dispute that, but believes that the "discrepancy" between the number of documents produced and the larger population of documents in quality control is "surprisingly large."  (ECF 483 at 1.)  This argument is without merit.

---

[1] Qualcomm erroneously characterizes this as an instruction from the Court that Apple was to "err on the side of over-producing."  (ECF 483 at 1.)

NON-PARTY APPLE INC.'S RESPONSE TO QUALCOMM'S SUBMISSION RE: APPLE'S
COMPLIANCE WITH PRODUCTION DEADLINES
CASE NOS. 5:17-CV-00220-LHK-NMC & 5:17-MD-02773-LHK-NMC

*First*, there is no "discrepancy."  As Apple explained to Qualcomm during the meet and confer process, Apple's practice is to put virtually *all* documents that have gone through an initial review through a quality control process, including non-responsive and privileged documents.  In this case, a substantial number of documents in quality control were non-responsive and/or privileged.  That is hardly surprising given that the search terms set for Apple were broad, fourteen of Apple's forty-five custodians are attorneys, and documents concerning several of the topics covered by Qualcomm's subpoenas, such as patent licensing and FRAND analyses, are often subject to the attorney-client privilege or work product protection.

*Second,* Qualcomm alleges fault with the fact that Apple included non-responsive documents in "the 1.3 million figure disclosed to the Court."  (*Id.* at 2.)  This perfectly illustrates Qualcomm's dealings with Apple in discovery.  The documents in quality control included some documents that had been coded as non-responsive on initial review but *could* be re-coded as responsive during the quality control process.  If Apple had *not* accounted for those documents in its submissions to the Court, Qualcomm surely would have accused Apple of misconduct.  Instead, somehow, Apple's *transparency* is grounds for suspicion in Qualcomm's eyes.

*Third*, Qualcomm notes that in Apple's November 17, 2017 status report, Apple indicated that it was "in the process of producing approximately 1.1 million documents" but that Apple subsequently produced "only" approximately 689,000 documents.  (*Id.*)  Qualcomm also notes that as of November 17, approximately 695,000 documents were in quality control, and claims it only received approximately 103,000 documents from that population.  (*Id.* at 3.)  These are non-issues.  As Apple has previously explained, after the Court's November 15, 2017 ruling regarding Apple's proposed use of CAL, Apple identified approximately 1.1 million potential documents for immediate production, but subsequently determined that only a subset of those documents could be produced without manual review.  (ECF 327 at 1.)  Here, on the other hand, Apple produced responsive non-privileged documents *after* manual review.  And, for the reasons discussed above, there is nothing surprising or unusual about the fact that many of the documents in quality control as of November 17 were non-responsive or privileged.

1

### B. Srouji and Watrous Documents

Qualcomm also believes—based on nothing more than speculation and suspicion—that it should have received more documents for two custodians, BJ Watrous and Johny Srouji. The numbers Qualcomm identifies, however, are not a cause for concern.

Apple has produced or logged as privileged approximately 19,300 documents from the custodial files of BJ Watrous, Apple's Vice President and Chief IP Counsel.[2] That represents an average of 10.6 unique responsive documents each workday over the course of the seven years covered by Mr. Watrous's employment at Apple and Qualcomm's subpoenas. Although Mr. Watrous is involved in issues that pertain to this lawsuit, his employment is hardly *limited* to issues that relate to this case and fall within Qualcomm's subpoenas. Far from suggesting any kind of problem, Apple's identification of a substantial volume of documents for Mr. Watrous demonstrates that Apple's search for and identification of documents was thorough.

Similarly, Apple produced or logged approximately 9,300 documents from the custodial files of Johny Srouji, Apple's Senior Vice President of Hardware Technologies. That figure corresponds to an average of 4.0 unique responsive documents each workday over the course of over nine years. The baseband chipsets at issue in this case are not the only hardware technology that goes into Apple products and Mr. Srouji's work extends far beyond the issues relevant to this lawsuit.

Apple is of course willing to meet and confer with Qualcomm to the extent Qualcomm believes that there may be gaps or errors in Apple's document production and can identify a basis for those beliefs. *See Rio Tinto PLC v. Vale S.A.*, 306 F.R.D. 125, 127 (S.D.N.Y. 2015) ("If respondent believes that the ultimate discovery response is incomplete and can support that belief, he can file [a] motion to compel at that time."). Such discussions are commonplace in cases involving massive document reviews and productions. The fact that Qualcomm did not seek to

---

[2] Qualcomm's figures for Mr. Watrous's files do not appear to account for email attachments on Apple's privilege logs, or Apple's supplemental privilege logs. Qualcomm and Apple also have slightly different counts for produced documents, as noted in the parties' January 12, 2018 joint status report. (ECF 482 at 2-3.) There are similar issues for Qualcomm's figures concerning Mr. Srouji's files.

4

1   meet and confer regarding these issues highlights the fact that Qualcomm has no basis, and is

2   more interested in harassing Apple than actually conducting discovery.

3   **III.     Apple's Privilege Log**

4           Qualcomm's second basis for "questioning" Apple's satisfaction of the Court's December

5   21 Order focuses on concerns Qualcomm has regarding Apple's privilege log.

6           The Court specifically instructed Qualcomm *not* to bring disputes concerning the privilege

7   log into the current dispute regarding sanctions:

8               THE COURT:  I'll say this:  If there's some *new* category, *I'm not*
                *looking to*, for example, to *bring in the privilege log disputes into*
9               *this sanctions issue* because I want you to confer with each other
                before we have any discussion about sanctions.  So this is really
10              backward looking towards the productions that were due initially on
                December 15th and the sanction I ordered of $25,000 a day for its
11              noncompletion.

12  (ECF 467 at 12:19-25 (emphasis added).)  Moreover, as noted in the parties' January 12, 2018

13  status report, Apple is in the midst of a proactive effort to identify documents on its privilege log

14  that are non-responsive, non-privileged, or should be produced in redacted form, as well as to

15  provide more detailed privilege descriptions where appropriate.  (ECF 482 at 8-10.)  The parties

16  are also meeting and conferring over privilege log issues.  Yet, Qualcomm is attempting to

17  manufacture a dispute where none currently exist, by bringing privilege log issues into this

18  briefing.

19          Apple has already addressed Qualcomm's privilege log issues in the parties' joint status

20  report.  (*Id.*)  However, one additional issue bears discussion here.  Qualcomm quotes the

21  December 20, 2017 hearing out of context to suggest that the Court's statement that Apple was to

22  "produce whatever you've got subject to clawback" applied even to documents Apple had

23  identified as privileged or highly likely to be privileged.  (ECF 483 at 5.)  That is not accurate.

24  The Court's statement applied only to Apple's review of the 1.3 million documents in quality

25  control.  (ECF 424 at 62:5-15.)

26  **IV.     Conclusion**

27          Apple satisfied the Court's December 20, 2017 order on December 27, 2017, when

28  Qualcomm received Apple's last production of responsive non-privileged documents from the

population of 1.3 million documents in quality control as of December 15, 2017.  Qualcomm has

offered nothing but suspicion to dispute that, and does not even take the position that there should

be a later termination date for the sanctions imposed by the Court.  Rather, Qualcomm wants to

conduct an unwarranted fishing expedition into the details of Apple's document review and

production process, much of which is attorney client privileged and attorney work product.  The

Court should not entertain that effort.

Apple respectfully submits that the termination date for sanctions should be December 27,

2017, and that Qualcomm's request for what is essentially supplemental discovery should be

denied.


Dated: January 19, 2018                     Respectfully submitted,

                                            By:   /s/ Edward H. Takashima

                                                  William A. Isaacson
                                                  wisaacson@bsfllp.com
                                                  Karen L. Dunn
                                                  kdunn@bsfllp.com
                                                  Amy J. Mauser
                                                  amauser@bsfllp.com
                                                  BOIES SCHILLER FLEXNER LLP
                                                  1401 New York Avenue, N.W.
                                                  Washington, DC 20005
                                                  Telephone:     (202) 237-2727
                                                  Facsimile:     (202) 237-6131

                                                  Edward H. Takashima
                                                  etakashima@bsfllp.com
                                                  BOIES SCHILLER FLEXNER LLP
                                                  401 Wilshire Blvd., Suite 850
                                                  Santa Monica, CA 90401
                                                  Telephone:  (310) 752-2400
                                                  Facsimile:  (310) 752-2490

                                                  Attorneys for Non-Party APPLE INC.

NON-PARTY APPLE INC.'S RESPONSE TO QUALCOMM'S SUBMISSION RE: APPLE'S
COMPLIANCE WITH PRODUCTION DEADLINES
CASE NOS. 5:17-CV-00220-LHK-NMC & 5:17-MD-02773-LHK-NMC