CRAVATH, SWAINE & MOORE LLP
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
825 Eighth Avenue
New York, New York 10019-7475
Telephone:  (212) 474-1000
Facsimile:   (212) 474-3700

KEKER, VAN NEST & PETERS LLP
Robert A. Van Nest, SBN 84065
rvannest@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  (415) 676-2289
Facsimile:  (415) 397-7188

MORGAN, LEWIS & BOCKIUS LLP
Richard S. Taffet (*pro hac vice*)
richard.taffet@morganlewis.com
101 Park Avenue
New York, NY 10178-0060
Telephone:  (212) 309-6000
Facsimile:  (212) 309-6001

Attorneys for Defendant
QUALCOMM INCORPORATED

BOIES SCHILLER FLEXNER LLP
William A. Isaacson, DC Bar No. 414788
wisaacson@bsfllp.com
Karen L. Dunn, DC Bar No. 1002520
kdunn@bsfllp.com
Amy J. Mauser, DC Bar No. 424065
amauser@bsfllp.com
1401 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 237-2727
Facsimile: (202) 237-6131

BOIES SCHILLER FLEXNER LLP
Edward H. Takashima
etakashima@bsfllp.com
401 Wilshire Blvd, Suite 850
Santa Monica, CA 90401
Telephone:  (310) 752-2408
Facsimile:  (310) 752-2490

Attorneys for Non-Party
APPLE INC.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION<br><br>Plaintiff,<br><br>v.<br><br>QUALCOMM INCORPORATED, a Delaware corporation,<br><br>Defendant. | Case No. 5:17-CV-00220-LHK-NMC<br><br>**REDACTED**<br><br>**DEFENDANT QUALCOMM INCORPORATED'S AND NON-PARTY APPLE INC.'S JOINT DISCOVERY STATEMENT REGARDING PRODUCTION OF A COMMON INTEREST AGREEMENT**<br><br>Courtroom:  7, 4th Floor;  Hon. Nathanael M. Cousins |
| IN RE QUALCOMM ANTITRUST LITIGATION | Case No. 5:17-MD-02773-LHK-NMC |

Defendant Qualcomm Incorporated ("Qualcomm") and Non-Party Apple Inc. ("Apple") submit this joint discovery statement regarding the production of a common interest agreement between Apple and Samsung Electronics Company ("Samsung").

**I.     Qualcomm's Position**

Qualcomm seeks an Order from the Court compelling Apple to produce its purported common interest agreement with Samsung, which according to Apple dates from Summer 2016, approximately six months before the Complaint in this action was filed. As the Court is aware, Apple has asserted that it has common interest agreements with the plaintiffs in these Actions—both the FTC and counsel for the putative class—as well as with Samsung, Intel Corporation, MediaTek Inc., Compal Electronics Company, FIH Mobile Limited, Hon Hai Precision Company, Pegatron Corporation and Wistron Corporation. (ECF No. 404.) On August 15, 2017, Qualcomm served a subpoena on Apple expressly calling for production of the purported common interest agreements with these entities. (ECF Nos. 209-10, 209-11.)[1]

No entity has objected to Apple's production of the purported common interest agreements except for Samsung. Notably, in its responses and objections to Qualcomm's subpoena, Apple did not state a specific objection to the relevance of the agreements, including the Samsung agreement, or assert that it was unduly burdensome to produce any of the agreements. Indeed, Apple actually produced the Samsung agreement to Qualcomm, but then on January 9, 2018 sent a letter requesting to claw it back on the ground that it (and other documents not at issue here) "are or may be" subject to "third party claims of attorney-client privilege or work product protection". (*See* 1/9/2018 Letter from E. Takashima to G. Bornstein.) Then, on January 11, Apple informed Qualcomm that Samsung objected to Apple's production of the agreement and that Apple intended to withhold the agreement from production on that basis.

The agreement should be produced. As an initial matter, Apple cannot withhold a document from production merely because a third party, which has not come before the Court, has expressed an objection to Apple. *See Dataquill Limited v. High Tech Computer Corp.*, No. 08cv543-IEG (BGS), 2011 WL 13100732, at *2 (S.D. Cal. Sept. 1, 2011). Samsung is a frequent litigant in this Court—and even filed an *amicus* brief in this litigation—so if Samsung wished to assert an objection, it could and should have filed a motion for a protective order. Samsung's objection is also substantively flawed. Contrary to Samsung's arguments, the agreement is relevant and it is not protected from discovery by the attorney-client privilege or the work product doctrine.

*First*, the agreement between Apple and Samsung is relevant to evaluating the basis and scope of any purported common legal interest between the two entities. Apple and Samsung may have a *business* interest in lowering what they pay for the rights to practice Qualcomm's intellectual property, but the validity of a common interest agreement turns on whether there is a common *legal* interest. *See Elan Microelectronics Corp. v. Apple Inc.*, No. C-09-1531 RS (PSG), 2011 WL 3443923, at *2 (N.D. Cal. Aug. 8, 2011); *Nidec Corp. v. Victor Co. of Japan*,

---

[1] Samsung's assertion below that it is not "aware of any valid document request from Qualcomm that seeks production of the Common Interest Agreement in the N.D. Cal. cases" is mistaken. As Apple acknowledges below, Qualcomm requested "Documents Concerning any Common Interest Agreement [Apple has] entered into with any Person Concerning Qualcomm". Samsung's reliance on *Castaneda v. Burger King Corp.*, 259 F.R.D. 194, 200 (N.D. Cal. 2009), in which there was no such request, is therefore misplaced.

249 F.R.D. 575, 578 (N.D. Cal. 2007).  Because the agreement between Apple and Samsung was entered several months before any of the present actions were filed, and Samsung is not even a party to any pending case, there is strong reason to doubt Apple's reliance on a common interest privilege to justify withholding the hundreds of communications with Samsung that appear on Apple's privilege log.[2]  (*See, e.g.*, 12/20/2017 Hrg. Tr. 29:3-11 ("THE COURT: . . . I am skeptical about the scope of the common-interest privilege that's been asserted . . . .").)  The terms of the agreement are relevant to assessing whether the asserted common interest privilege should be upheld.[3]

*Second*, the agreement is not protected from discovery by "the common interest doctrine".  Samsung asserts below that it and Apple had "common interests with respect to the government's antitrust investigations into standard essential patents".  Whether this is a valid common *legal* interest that could justify the withholding of communications between Apple and Samsung (as opposed to a shared commercial goal, which would not justify withholding the communications) is a matter in dispute.  Therefore, Samsung's assertion that production of the agreement would have a "chilling effect" on communications between Apple and Samsung puts the cart before the horse.  If there is no valid common legal interest, then those communications do not merit protection from discovery.  Nor would production of the agreement itself—which is the only document at issue in this motion—chill the underlying substantive communications.  Indeed, *R.F.M.A.S. v. So*, 2008 U.S. Dist. LEXIS 14969 (S.D.N.Y. Feb. 15, 2008), on which Samsung relies, affirmatively rejects Samsung's argument that joint defense and common interest agreements necessarily incorporate the mental processes of attorneys; such agreements instead establish the framework for future communications.

Further, the common interest doctrine is not an independent basis for withholding a document from discovery.  As Samsung admits, it is "an exception to ordinary waiver rules", meaning that before it applies, there must be an underlying attorney-client privilege or work product protection.  Here, the document at issue is an executed agreement between two sophisticated parties negotiated at arms' length, and it therefore does not constitute a privileged communication between an attorney and his or her client.  As for the work product protection, Samsung has not established that the agreement itself is work product.  Moreover, work product protection is conditional and can be overcome by a showing of substantial need.  *See, e.g.*, *In re Takata Airbag Prods. Liab. Litig.*, 2017 U.S. Dist. LEXIS 76100 (S.D. Fla. Mar. 7, 2017); *McNally Tunneling Corp. v. City of Evanston*, 2001 U.S. Dist. LEXIS 17090 (N.D. Ill. Oct. 16, 2001).  Here, Qualcomm has a substantial need for production of the agreement between Apple and Samsung to evaluate (i) the validity of the asserted common legal interest, and (ii) the appropriateness of Apple's decision to withhold hundreds of communications with Samsung on that basis.  Qualcomm has no other means to discover the terms of the agreement.

Qualcomm therefore respectfully requests that this Court order Apple to produce the purported common interest agreement between Apple and Samsung, which Apple has withheld solely on the basis of Samsung's objection.

---

[2] Indeed, Apple's privilege logs identify numerous withheld communications between Apple and Samsung that *predate* the purported common interest agreement in Summer 2016.

[3] For this reason, Samsung's reliance on cases declining to order production of joint defense agreements on relevance grounds are distinguishable.  The validity of the common legal interest in those cases was not questioned.

Compromise Position: While Qualcomm believes that the agreement should be produced for the reasons stated above (and that Samsung's objection is not procedurally proper), Qualcomm is willing to have the agreement submitted for the Court to review *in camera* and determine whether the document should be produced.

## II. Apple's Position

In response to Qualcomm's subpoenas, Apple agreed to produce "Common Interest Agreements which it is invoking or relying upon in this litigation, consistent with the confidentiality obligations Apple may owe to third parties . . . ." (Apple Responses and Objections to Qualcomm Supp. Req. No. 1.) In doing so, Apple did not agree that such documents are relevant to any party's claims or defenses in this case. Rather, Apple hoped to avoid unnecessary motion practice concerning Qualcomm's sweeping request for "All Documents Concerning any Common Interest Agreement you have entered into with any Person Concerning Qualcomm, and any Communications relating thereto."

As Qualcomm notes, Apple has produced other written common interest agreements. However, [redacted] and Samsung has objected to production of the agreement on relevance, privilege and work product grounds. Samsung's objections, as Samsung has communicated them to Apple, are summarized below. Apple proposes that the Court review the agreement *in camera* to evaluate Samsung's privilege and work product claims.[4]

### A. Samsung's Position

Samsung objects to the production of the common interest agreement between Apple and Samsung on the grounds that it is not relevant, and also because it is protected by the attorney-client privilege and attorney work product doctrine, both of which apply to the common interest agreement as a result of the common interest doctrine.

First, the common interest agreement between non-parties Apple and Samsung is not relevant or potentially relevant to any issues in dispute between Qualcomm and the N.D. Cal. plaintiffs, nor is Samsung aware of any valid document request from Qualcomm that seeks production of the Common Interest Agreement in the N.D. Cal. cases.[5] The N.D. Cal. cases concern Qualcomm's alleged antitrust violations in connection with its licensing of standard essential patents and its chipset sales practices. The cases do not concern an agreement between two non-parties regarding their common interest privilege. Courts routinely refuse to compel production of common interest agreements on the grounds that they are not relevant or responsive. *See, e.g., Castaneda v. Burger King Corp.*, 259 F.R.D. 194, 200 (N.D. Cal. 2009) (Burger King did not produce a joint defense agreement and did not include it on its privilege

---

[4] Qualcomm's statement erroneously suggests that a written common interest agreement is dispositive of whether a common interest exists, and that a common interest is limited to the scope of a written common interest agreement. To the contrary, "it is clear that no written agreement is required, and that a JDA may be implied from conduct and situation." *United States v. Gonzalez*, 669 F.3d 974 (9th Cir. 2012). Qualcomm's statement also fails to note that the common interest agreement between Apple and Samsung was *inadvertently* produced on January 8, 2018, before it was clawed back the next day.

[5] Footnote 1 in Qualcomm's position statement refers to a request for common interest agreements "Concerning Qualcomm," but the Common Interest Agreement at issue does not concern Qualcomm and never once refers to Qualcomm.

log, which the court noted was "probably legitimate if Plaintiffs didn't make a formal discovery request for it."); *In re Takata Airbag Prods. Liab. Litig.*, 2017 U.S. Dist. LEXIS 76100, *105-112 (S.D. Fla. Mar. 7, 2017) (denying motion to compel production of joint defense agreement because its content was "not relevant to any claim or defense in this matter") (collecting cases); *Warren Distrib. Co. v. InBev USA L.L.C.,* 2008 U.S. Dist. LEXIS 71320, *9 (D.N.J. Sept. 18, 2008) (joint defense agreement not relevant and not discoverable because it "merely contains language that parties typically include in joint defense agreements to protect from discovery privileged information revealed to a third party.").

  Second, the common interest doctrine protects the common interest agreement between Apple and Samsung from discovery. The common interest doctrine "is an exception to ordinary waiver rules designed to allow attorneys for different clients pursuing a common legal strategy to communicate with each other." *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012). Apple and Samsung have common legal interests with respect to the government's antitrust investigations into standard essential patents. Thus, even if the common interest agreement were relevant, which it isn't, the document is protected by the common interest doctrine, which extends the attorney-client privilege and attorney work product protections to the agreement itself. *See, e.g.*, *In re Takata Airbag Prods. Liab. Litig.*, 2017 U.S. Dist. LEXIS 76100, *112-116 (S.D. Fla. Mar. 7, 2017) (denying motion to compel production of joint defense agreement, holding that the agreement was "protected by the work product privilege, as it applies through the joint defense or common interest doctrines.") (collecting cases); *Ellis v. J.P. Morgan Chase & Co.,* 2014 U.S. Dist. LEXIS 45681, *15 (N.D. Cal. Apr. 1, 2014) (common interest privilege applied to document created and sent "in the course of a matter of common interest" which "was intended to initiate collaboration on this matter"); *R.F.M.A.S.*, 2008 U.S. Dist. LEXIS 14969, *3 (S.D.N.Y. Feb. 15, 2008) (noting that "most courts" have held that joint defense agreements are protected by the work product doctrine); *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc*., 2007 U.S. Dist. LEXIS 22090, *39 (D. Kan. Mar. 26, 2007) (denying motion to compel production of joint defense agreement in antitrust case, holding that "the applicability of the privilege is clear to the Court."); *McNally Tunneling Corp. v. City of Evanston*, 2001 U.S. Dist. LEXIS 17090, *10-14 (N.D. Ill. Oct. 16, 2001) (denying motion to compel production of joint defense agreement because it was protected by attorney client privilege and attorney work product doctrine).

  Specifically as to the work product doctrine, like the joint defense agreement in *In re Takata*, the common interest agreement between Apple and Samsung reflects Apple's and Samsung's attorneys' "collective legal opinions and conclusions regarding the manner and method by which privileged information should be exchanged, and the conditions and limitations that should govern the parties' use of such information," in connection with the parties' common legal positions on active government antitrust investigations involving standard essential patents, which by 2016 the parties anticipated could lead to litigation. *In re Takata Airbag Prods. Liab. Litig.*, 2017 U.S. Dist. LEXIS 76100, *114 (S.D. Fla. Mar. 7, 2017). As Qualcomm notes in its position statement, the common interest agreement was signed only six months before the FTC filed its complaint against Qualcomm. In addition, Apple has filed its own antitrust lawsuit against Qualcomm in the Southern District of California, which overlaps to some extent with the N.D. Cal. cases.

  Third, to the extent that the Court needs to review the common interest agreement to resolve Qualcomm's motion or to determine whether a common interest privilege existed between Apple and Samsung, Samsung consents to an *in camera* review of the common interest

agreement by the Court. Notably, all parties here, including Qualcomm, are willing to proceed with an *in camera* review. Indeed, courts routinely conduct *in camera* review, and parties routinely propose *in camera* review, to resolve such issues. *See, e.g., Castaneda v. Burger King Corp.*, 259 F.R.D. 194, 200 (N.D. Cal. 2009); *In re Takata Airbag Prods. Liab. Litig.*, 2017 U.S. Dist. LEXIS 76100, *113-114 (S.D. Fla. Mar. 7, 2017); *Warren Distrib. Co. v. InBev USA L.L.C.*, 2008 U.S. Dist. LEXIS 71320, *2 (D.N.J. Sept. 18, 2008); *McNally Tunneling Corp. v. City of Evanston*, 2001 U.S. Dist. LEXIS 17090, *1 (N.D. Ill. Oct. 16, 2001).

As the Ninth Circuit has recognized, an in camera review by a judge "mitigates any chilling effect" that would otherwise result from the disclosure of privileged communications. *United States v. Zolin*, 842 F.2d 1135, 1137 (9th Cir. 1988). Any broader disclosure of the common interest agreement, particularly when the document is irrelevant to the claims and defenses in the N.D. Cal. cases, would have a chilling effect on joint defense or common interest discussions not only between Samsung and Apple, but between other parties in other matters as well. This is contrary to the purpose of the attorney client privilege, which is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). If similarly situated parties with common legal positions cannot coordinate on legal strategy with the confidence that their communications are privileged, those discussions may not happen at all. The common interest agreement itself is fundamental to any such coordination or communication.

**FILER'S ATTESTATION**

I, Edward H. Takashima, am the ECF user whose identification and password are being used to file this Joint Discovery Submission.  In compliance with Civil Local Rule 5-1 (i)(3), I hereby attest that the signatories of this document have concurred in this filing.

DATED:  February 5, 2018                                        */s/ Edward H. Takashima*_____
                                                                                Edward H. Takashima