Jennifer Milici, D.C. Bar No. 987096
Daniel Matheson, D.C. Bar No. 502490
J. Alexander Ansaldo, Va. Bar No. 75870
Joseph R. Baker, D.C. Bar No. 490802
Elizabeth A. Gillen, Cal. Bar No. 260667
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
(202) 326-2912; (202) 326-3496 (fax)
*jmilici@ftc.gov*

Lin W. Kahn, Cal. Bar No. 261387
Federal Trade Commission
901 Market Street, Suite 570
San Francisco, CA 94103
(415) 848-5115; (415) 848-5184 (fax)
*lkahn@ftc.gov*

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

CRAVATH, SWAINE & MOORE LLP
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
825 Eighth Avenue
New York, New York 10019-7475
Telephone:  (212) 474-1000
Facsimile:   (212) 474-3700

MORGAN, LEWIS & BOCKIUS LLP
Willard K. Tom (*pro hac vice*)
willard.tom@morganlewis.com
1111 Pennsylvania Avenue NW
Washington, DC 20004-2541
Telephone:  (202) 739-3000
Facsimile:   (202) 739 3001

MORGAN, LEWIS & BOCKIUS LLP
Richard S. Taffet (*pro hac vice*)
richard.taffet@morganlewis.com
101 Park Avenue
New York, NY 10178-0060
Telephone:  (212) 309-6000
Facsimile:   (212) 309-6001

MORGAN, LEWIS & BOCKIUS LLP
Donn P. Pickett (SBN 72257)
donn.pickett@morganlewis.com
Geoffrey T. Holtz (SBN 191370)
geoffrey.holtz@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone:  (415) 442-1000
Facsimile:   (415) 442-1001

Attorneys for Defendant
QUALCOMM INCORPORATED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION<br><br>Plaintiff,<br><br>v.<br><br>QUALCOMM INCORPORATED, a Delaware corporation,<br><br>Defendant. | Case No. 5:17-CV-00220-LHK-NMC<br><br>**PLAINTIFF FEDERAL TRADE COMMISSION'S AND DEFENDANT QUALCOMM INCORPORATED'S JOINT DISCOVERY STATEMENT REGARDING QUALCOMM'S RE-REVIEW OF PRIVILEGE LOG ENTRIES**<br><br>Courtroom:  7, 4th Floor<br>Judge:       Hon. Nathanael M. Cousins |

On December 20, 2017, the Court ordered Qualcomm to re-review 1,000 privilege assertions selected by the FTC and the Class Plaintiffs (collectively "Plaintiffs"). *See* ECF No. 421. On January 8, 2018, Qualcomm provided to the Plaintiffs the results of this re-review. The parties met and conferred regarding the re-review on January 25, 2018, but did not reach agreement.

## I.     Plaintiffs' Position

The January 8 re-review generated numerous controversial privilege assertions that require an independent examination. Further, the January 8 re-review confirms that Qualcomm continues to withhold an unacceptable number of important and plainly non-privileged documents involving key trial witnesses. Accordingly, this Court should appoint a Special Master to examine specific privilege assertions, selected by the Plaintiffs, which Qualcomm refused to withdraw upon re-review. In parallel, the Court should order Qualcomm to re-review (i) a set of ~10,000 privilege claims from Qualcomm's pre-Complaint production that is, statistically speaking, nearly certain to include ~2,700 erroneous claims, and (ii) similar claims made in response to Plaintiffs' Requests for Production (RFPs) in this litigation.

**Qualcomm Admits 382 of 1,000 Re-reviewed Log Entries Are Erroneous**
Plaintiffs selected 1,000 privilege log entries describing entirely withheld documents using two methods. First, Plaintiffs generated an entirely random sample of 373 entries from a population of 11,211 log entries asserting privilege over communications involving five key trial witnesses. *See* Ex. A (Ross Decl., describing random selection process); *see also* ECF No. 395-1 (Ansaldo Decl., describing process for identifying 11,211 log entries). On January 8, Qualcomm acknowledged that 100 of these 373 log entries erroneously asserted privilege over non-privileged material, for an error rate of 26.8% (100/373). Standard techniques for drawing statistical inferences from a random sample support a 95% confidence level that Qualcomm's error rate for the 373 entries is the same as, or very close to, its error rate for the broader population of 11,211. *See* Ex. A.[1] Now that data is available on a truly random sample it is, statistically speaking, nearly certain that Qualcomm is currently withholding more than 2,700 document families involving key trial witnesses that should have been produced during the pre-Complaint investigation.[2]

Second, Plaintiffs identified 627 log entries that seemed particularly interesting. On January 8, Qualcomm acknowledged that 282 of these log entries withheld non-privileged material from production. This is an error rate of 45% (282/627).[3]

**Qualcomm's Re-Review Claimed Privilege Over Business Communications That Do Not Constitute Legal Advice: A Special Master is Required**
Qualcomm's re-review led to the production of numerous redacted documents previously

---

[1] This is a matter of serious concern, but not a surprise, as it is consistent with Qualcomm's 27% error rate for the ~1,110 withheld log entries Qualcomm re-reviewed in November. *See* Ex. B (ECF No. 395-2, Appendix A to ECF No. 395). Qualcomm created Ex. B to explain the error rate it contends is applicable to its November re-review.
[2] 26.8% of 10,317 = 2,764. (10,317 because the January 8 re-review captured 894 of the 11,211).
[3] On January 8, Qualcomm provided an Excel sheet identifying 277 of these 627 entries as resulting in the production of new documents, and noted in its correspondence that 5 of these 627 entries refer to documents that are not privileged and were previously produced (17005, 28951, 30651, 30667, 36905). Y. Even Ltr. to D. Matheson and R. Pierce (Jan 8, 2018) at 1 n. 1.

withheld in their entirety. Many of these redactions appear to conceal business communications that do not constitute "legal advice," demonstrating that Qualcomm continues to apply a legally incorrect standard to its privilege claims. In particular, Qualcomm routinely asserts privilege over business communications relating to contract negotiations. Two examples, of many, indicate that Qualcomm applied an incorrect standard during its re-review.

 Ex. C redacts a proposal sent to a non-lawyer (Mr. Hal Hahn). The communication says ███████████████████████████████████████████████████████████████████████████████████████████████████████ *See* Ex. C at QNDCAL04494357. This is not legal advice, it is not a request for legal advice, and it is not a confidential communication from a client to an attorney. It is a business proposal that a business person was instructed to discuss with two key trial witnesses, and it cannot be withheld because no privilege attaches to emails "addressed to both lawyers and non-lawyers for review, comment, and approval." *In re Vioxx Products Liability Litigation*, 501 F.Supp.2d 789, 809 (E.D. La. 2007).[5] The fact that the business proposal was sent by an attorney (Ms. Victoria Chen) does not provide a basis for shielding the communication, because the attorney was acting in a business capacity, not providing advice requiring the specialized training attorneys receive. *Id.* at 797-799. Nor would it matter if Ms. Chen acted as a scrivener in memorializing the proposal in written form.

 Ex. D redacts another proposal Qualcomm considered making to Apple, this one sent to Qualcomm's current President (Mr. Amon) at his request, and then forwarded by a non-lawyer (Mr. McCloskey) to another non-lawyer (Mr. Wyatt). On re-review, Qualcomm redacted the proposal in its entirety. This redaction cannot be justified if the proposal was sent to Mr. Amon, and also forwarded to Mr. McCloskey, for a business purpose. *Fourth Age Ltd. v. Warner Bros. Digital Dist.*, 2015 WL 12720324 (C.D. Cal. Aug. 6, 2015) at *6 (""No privilege can attach to any communication as to which a business purpose would have served as a *sufficient cause*, *i.e.*, any communication that would have been made because of a business purpose, even if there had been no perceived additional interest in securing legal advice."") (emphasis in original) (quoting *McCaugherty v. Siffermann*, 132 F.R.D. 234, 238 (N.D. Cal. 1990)). As with all Qualcomm's privilege assertions, Plaintiffs cannot see the redacted content, and thus lack critical information that might allow Plaintiffs to demonstrate conclusively that Qualcomm's re-review withheld non-privileged information (except in the rare instances, such as those already brought to the Court's attention, that Qualcomm accidentally produces a non-redacted version of a document over which it has erroneously asserted privilege after re-review – *see* ECF No. 396). But a Special Master would not be so encumbered: a Special Master could be empowered to review the redacted material in camera, and thus reach a fully informed conclusion about the standards applied during Qualcomm's re-review.[6]

 Therefore, to efficiently address these, and many similar erroneous assertions of attorney-client privilege, the Court should appoint a Special Master to review 500 documents selected by the Plaintiffs that Qualcomm asserts, after re-review, are privileged. A Proposed Order

---

[4] The privilege log entry for this document claimed it constituted an "Email chain reflecting a request for legal advice and legal advice regarding decision on product pricing (Attorney: Chen, Victoria)."

[5] Courts in this Circuit have approvingly cited the *Vioxx* Court's "in-depth discussion of the attorney-client privilege." *Hulstedt v. City of Scottsdale, Ariz.*, 2011 WL 2836553, at *4 (D. Ariz. July 18, 2011).

[6] Good cause exists for *in camera* review of purportedly privileged material due to Qualcomm's high error rate and the high importance of the documents that have been withheld. But, in any event, a Special Master with a limited mandate does not need "good cause" to view purportedly privileged information in order to assess a privilege claim because, unlike a judge, there is no risk that viewing privileged material would impact the Special Master's view of any other aspect of the case.

describing the master's duties is attached as Ex. E. *See* Fed. R. Civ. Pro. 53(b). It is entirely fair to impose on Qualcomm the cost of a Special Master. *See* Fed. R. Civ. Pro. 53(a)(3). Qualcomm alone bears responsibility for erroneously asserting privilege over important business communications involving key trial witnesses. Already Plaintiffs have expended countless hours detecting and exposing nearly 2,000 erroneous privilege assertions, the Court has been unnecessarily burdened with numerous filings and two hearings, and only a small fraction of Qualcomm's 200,000+ privilege claims have been re-reviewed.

On January 25, 2018, Plaintiffs contacted a highly qualified candidate for a Special Master, Mr. John Cooper, with whom the Court is familiar. Mr. Cooper reports that he is available to act as a Special Master with respect to privilege disputes in this matter, and that he has no conflicts that would prevent him from doing so.

**In Parallel, Qualcomm Should Re-review Similar Entries Withheld From its RFP Responses**

Qualcomm employed the same privilege analysis procedures to respond to Plaintiffs' RFPs as to respond to the FTC's pre-Complaint subpoena, *see* ECF No. 299 (Ford Decl.) at 1, and there is no reason to believe its error rate is any lower for its RFP responses as for its subpoena responses. Qualcomm's privilege log for Plaintiffs' RFPs contains ~115,000 entries. The Court should order Qualcomm to re-review all entries on this log that meet the same criteria as the ~10,000 pre-Complaint investigation entries. Plaintiffs believe this would entail a re-review of approximately 9,000 privilege claims.

**II. Qualcomm's Position**

Plaintiffs' requests should be denied because (a) Qualcomm's re-review process was sound, and Plaintiffs present no evidence to the contrary, and (b) the wholesale re-review requested by Plaintiffs is unwarranted and unworkable. Qualcomm has already re-reviewed nearly 5,000 documents selected by Plaintiffs. Qualcomm has always been, and remains, open to reasonable specific requests to reconsider privilege calls on specific documents; indeed, Qualcomm has re-reviewed dozens of privilege calls identified by the Plaintiffs in connection with specific depositions. Plaintiffs' proposals would provide no benefit other than to divert significant Qualcomm resources to document re-review during a very condensed deposition period (involving over 60 depositions in the span of three months), in a case where Qualcomm has already produced to Plaintiffs approximately 3 million documents (over 25 million pages).

**Qualcomm's Meticulous Re-Review of 1,000 Privilege Log Entries**

At the December 20, 2017 hearing, the Court directed Plaintiffs to select 1,000 additional entries from Qualcomm's log – above and beyond the 3,571 entries and redacted documents previously re-reviewed by Qualcomm – which Qualcomm was to re-review by January 8. The Court noted, "as a reminder – all parties know this – the objective in doing this was to have the FTC prioritize the things that were most important to it, and it was successful in identifying what was most important. And I'll give the FTC a further chance to that same exact process here . . . ." (Tr. 16.) Instead of selecting 1,000 entries that were "most important" to them, as instructed by the Court, Plaintiffs only identified 627 entries "that seemed particularly interesting . . . and substantively important". (Jan. 17, 2018 email from D. Matheson to Y. Even.) The other 373 were a purported "random sample" from the 11,211 cherry-picked entries that the FTC had previously identified as raising particularly close privilege calls. (ECF

3

No. 395.)  Plaintiffs thus wasted over one-third of the Court-ordered re-review on documents they specifically have *not* identified as "interesting" or "substantively important".

Over the Holiday season, and while preparing for dozens of depositions, Qualcomm conducted the required "meticulous and proper" re-review (Nov. 6 Tr. at 31) of those 1,000 log entries, as it had done with respect to the thousands of other documents previously identified by Plaintiffs.  Qualcomm concluded that five of the 1,000 entries had been previously produced.  Of the remaining 995, some entries were inconsistent with other versions of the documents that had been produced to Plaintiffs *already*.  Qualcomm corrected those inconsistencies, resulting in the production of 89 document families for which Plaintiffs already had all of the previously withheld content.  Qualcomm further produced 168 document families with redactions and 120 without redactions (for 186 of these, portions of the content had already been previously produced to Plaintiffs; thus, the re-review resulted in the production of limited new information.[7]

**Plaintiffs' Request for a Special Master is Unwarranted**

Plaintiffs identify two documents – out of 1,000 – as their sole evidence of a purportedly improper re-review by Qualcomm.[8]  But both documents are precisely and properly redacted – and even if they were not, two errors would not warrant the appointment of a special master.

During the meet and confer process following the re-review, Plaintiffs did not identify *any* document as improperly re-reviewed.  Nor did Plaintiffs ever ask Qualcomm about the redacted content in the two specific documents they now identify.  Had they asked, Qualcomm would have explained that the challenged redacted content in both documents is a lawyer's draft contractual language.  In Ex. C, Qualcomm Senior Vice President, Legal Counsel Victoria Chen,[9] sends draft contract provisions to Mr. Hahn, a Qualcomm executive; Qualcomm was careful not to redact the portion of her email introducing the draft contract, but to redact only the draft contract language itself.  Similarly, in Ex. D, the redacted "proposal" cited by Plaintiffs consists of two attachments, both of which are a lawyer's drafts of contracts.  Qualcomm did not redact the file names of the drafts (which are on the top of the parent email),[10] or the non-privileged portions of the parent emails, but redacted only the attached draft agreements, as prepared and/or revised by Ms. Chen and by Division Counsel Jonathan Weiser.  Plaintiffs' assertions that these documents do not reflect "advice requiring the specialized training attorneys receive" is thus plainly wrong, and the two documents cited by Plaintiffs *confirm* that Qualcomm's re-review was meticulous and proper.  Indeed, as the *Vioxx* case states, "[i]f the memorandum and attachment related to identifiable legal instruments like a proposed contract, these generally were found to be privileged."  501 F. Supp.2d at 811.[11]

But even if Plaintiffs could identify an error in the review process, that still would not warrant the extensive and expensive re-re-review by a special master that Plaintiffs ask the Court to order.  As the Court noted at the December 20 hearing, "given the timing, the cost of a special master and the success of this rereview process . . . there's not good cause to order [a special

---

[7] Plaintiffs have not identified the documents selected as "important" or purportedly "random", and therefore Qualcomm cannot assess Plaintiffs' statistics on "error rates" within each group.

[8] Plaintiffs say that the re-review generated "numerous controversial privilege assertions" and "many similar erroneous assertions", but they only identify two documents.

[9] Ms. Chen has a legal (not business) position only and has been a member of the California bar since 1992.

[10] They are "SOW Mav11 (061614.1)QCR.docx" and "Apple-QC Second Amendment to TA (061214).docx".

[11] The FTC, in an Oct. 30 Joint Discovery Statement, noted that "attorney-executives' . . . advice regarding the legal ramifications of contractual language might constitute appropriately redacted 'legal advice.'"  (ECF No. 248, at 3.)

master] right now." (Tr. 16.) Nothing has changed since, except that Plaintiffs have now had the benefit of yet further re-review by Qualcomm, and that the Parties are further into an exceedingly busy deposition period, with the close of fact discovery fast approaching. Plaintiffs' request, if granted, would impose an extreme burden on Qualcomm. As with Special Master Rice's review in *Vioxx*, Plaintiffs' proposed order contemplates "briefing, argument, declarations, or other materials," a Special Master's report, objections to the report, responses to the objections, motion practice, and then *de novo* review by the Court.[12] In *Vioxx*, the parties incurred over $400,000 in direct fees and expenses to sustain the special master process, which lasted for three months. 501 F. Supp.2d at 792, 794, 815 n.35. And the use of a special master in this case would be particularly challenging because it would be necessary for any special master to take substantial time to learn about the industry and Qualcomm's business and personnel in order to assess privilege claims. For these reasons, the "appointment of a special master is the exception, not the rule." *Idan Computer, Ltd. v. Intelepix, LLC*, 2010 WL 3516167, at *3 (E.D.N.Y. Aug. 27, 2010). Here, there is no basis justifying this exceptional process.

**Plaintiffs' Request to Re-Review Another 20,000 Log Entries is Unwarranted**

At the November 6 hearing, the Court directed the parties to prioritize the privilege dispute on "the most important documents". (Nov. 6 Tr. at 32.) Qualcomm has already re-reviewed nearly 5,000 document families selected by the Plaintiffs. Yet Plaintiffs again ask the Court to order Qualcomm to re-review nearly 20,000 log entries (and an even larger number of documents), including the balance of the 11,211 entries that the FTC asked the Court to order Qualcomm to re-review on December 14. (ECF No. 395.) The Court already rejected that request, and accepted Qualcomm's compromise proposal to re-review 1,000 entries (in addition to the 3,571 document families the FTC had previously identified for re-review). And although Plaintiffs assert that the 10,000 remaining entries may contain 2,700 "erroneous claims", there is no basis to assume that these documents – or the thousands of purportedly similar entries on Qualcomm's litigation log – are particularly important or substantively "interesting". Plaintiffs have obtained over 3 million documents from Qualcomm and over 10 million documents from third parties; Qualcomm has re-reviewed thousands of documents subject to an assertion of privilege; and Qualcomm remains open to reasonable specific requests that it re-review additional documents. In fact, Qualcomm has done just that in connection with recent depositions, re-reviewing dozens of privilege assertions identified by Plaintiffs, providing Plaintiffs with revised calls where appropriate. Qualcomm believes that such targeted requests are a reasonable way to proceed, so that the parties can focus their attention on documents that are more likely to matter. For such ad hoc requests, Qualcomm has been able to mobilize senior lawyers, providing quick and meticulous re-review; a similar process would be impractical and unduly burdensome for the tens of thousands of documents Plaintiffs now seek to have re-reviewed.[13] Thus, Plaintiffs' request for wholesale re-review of tens of thousands of documents should also be denied.

---

[12] Unlike in *Vioxx*, Plaintiffs suggest that Qualcomm pay for the entire process.
[13] In *Vioxx,* it took the special master two months to review 2,600 documents, with the support of a law firm, including a "staff of paralegals". 501 F. Supp.2d at 791, 792, 794.

Dated: February 6, 2018

FEDERAL TRADE COMMISSION,


   */s/ Jennifer Milici*
Jennifer Milici
Daniel Matheson
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
(202) 326-2912; (202) 326-3496 (fax)
jmilici@ftc.gov

*Attorneys for Federal Trade Commission*


CRAVATH, SWAINE & MOORE LLP,


   */s/ Gary A. Bornstein*
Gary A. Bornstein
Yonatan Even
Worldwide Plaza
  825 Eighth Avenue
    New York, NY 10019
      Tel: (212) 474-1000
        Fax: (212) 474-3700
          gbornstein@cravath.com
          yeven@cravath.com

Richard S. Taffet
MORGAN, LEWIS & BOCKIUS LLP
  101 Park Avenue
    New York, NY 10178-0060
      Tel: (212) 309-6000
        Fax: (212) 309-6001
          richard.taffet@morganlewis.com

Willard K. Tom
MORGAN, LEWIS & BOCKIUS LLP
  1111 Pennsylvania Ave. NW
    Washington, DC 20004-2541
      Tel: (202) 739-3000
        Fax: (202) 739 3001
          willard.tom@morganlewis.com

Donn P. Pickett
Geoffrey T. Holtz
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: (415) 442-1000
Fax: (415) 442-1001
donn.pickett@morganlewis.com
geoffrey.holtz@morganlewis.com

*Attorneys for Qualcomm Incorporated*

## **FILER'S ATTESTATION**

I, Jennifer Milici, am the ECF user whose identification and password are being used to file this Joint Discovery Submission. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that the signatories of this document have concurred in this filing.

*/s/ Jennifer Milici*
Jennifer Milici