CRAVATH, SWAINE & MOORE LLP
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
825 Eighth Avenue
New York, New York 10019-7475
Telephone:  (212) 474-1000
Facsimile:   (212) 474-3700

KEKER, VAN NEST & PETERS LLP
Robert A. Van Nest (SBN 84065)
Asim M. Bhansali (SBN 194925)
Eugene M. Paige (SBN 202849)
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Defendant
QUALCOMM INCORPORATED

MORGAN, LEWIS & BOCKIUS LLP
Richard S. Taffet (pro hac vice)
richard.taffet@morganlewis.com
Willard K. Tom (pro hac vice)
willard.tom@morganlewis.com
Donn P. Pickett (SBN 72257)
donn.pickett@morganlewis.com
Geoffrey T. Holtz (SBN 191370)
geoffrey.holtz@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone:  (415) 442-1000
Facsimile:   (415) 442-1001

Jennifer Milici, D.C. Bar No. 987096
Daniel Matheson, D.C. Bar No. 502490
J. Alexander Ansaldo, Va. Bar No. 75870
Joseph R. Baker, D.C. Bar No. 490802
Kenneth H. Merber, D.C. Bar No. 985703
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
(202) 326-2912; (202) 326-3496 (fax)
*jmilici@ftc.gov*

Lin W. Kahn, Cal. Bar No. 261387
Federal Trade Commission
901 Market Street, Suite 570
San Francisco, CA 94103
(415) 848-5115; (415) 848-5184 (fax)
*lkahn@ftc.gov*

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>QUALCOMM INCORPORATED, a Delaware corporation,<br><br>　　　　Defendant. | Case No. 5:17-CV-00220-LHK-NMC<br><br>**DEFENDANT QUALCOMM INCORPORATED AND PLAINTIFF FEDERAL TRADE COMMISSION'S JOINT DISCOVERY STATEMENT**<br><br>Courtroom:  7, 4th Floor<br>Judge:      Hon. Nathanael M. Cousins |

**PUBLIC VERSION**
**REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED**

Qualcomm and the FTC submit this joint statement.  The parties have met and conferred on the issue discussed herein and have not been able to reach agreement.

**Qualcomm's Position**

Qualcomm requests that the Court direct the FTC, in response to Qualcomm's Third Set of Requests for Production Nos. 4-6,[1] to produce all communications with certain third parties, including their counsel, as set forth in those requests.[2]  The FTC's purported justifications for withholding these communications have changed over time.  Beginning in December 2017 and through the parties' final meet and confer on the subject in January 2018, the FTC objected to producing such communications based on its purported oral common-interest agreements and on relevance and burden grounds.  Then, after reviewing Qualcomm's draft of its half of this Statement, the FTC abandoned its reliance on the common-interest doctrine and instead claims that the work-product doctrine shields the communications from discovery.  The FTC's arguments fail.  *First*, the FTC has not established work-product protection. ██████████

██████████  Moreover, the FTC contends that Apple is a co-conspirator in a Section 1 antitrust conspiracy *with Qualcomm* and thus, by its own contention, the FTC is *adverse* to Apple.[3]  This adversity alone is enough to eviscerate any work-product protection that might otherwise apply.  The FTC has not agreed to forego prosecuting a claim against Apple directly, and also has not agreed to withhold Apple's materials from other government entities that may choose to pursue Apple, further waiving any work-product protection.  *Second*, the FTC's relevance and burden objections are undercut by ██████████████ and by its admission that it has located but not produced other such material.

A.      *The requested FTC communications may not be withheld as work product*

As with its now-abandoned common-interest doctrine argument, the FTC's work-product doctrine argument fails for multiple reasons.  As an initial matter, the FTC has not specified *what* it claims as work product.  Communications do not become work product simply because they are exchanged between litigants facing a common adversary, ██████████████████████ ████████████████████  *See also, e.g., California Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*, 299 F.R.D. 638, 644 (E.D. Cal. 2014).  In claiming work-product privilege, the FTC bears the burden of showing it—something it has not even attempted.

But even if the FTC did show the existence of work-product protection for these materials prior to their exchange between the FTC and the third parties, it would have to further show that the exchange did not waive any privilege claim.  Doing so would require showing that the exchange was made *either* (1) with a party with which it had a common interest *or* (2) in a manner that would not increase a potential adversary's access to the materials.  *See, e.g., California Sportfishing*, 299 F.R.D. at 647.

As to the first prong, the FTC cannot show a common interest due to adversity.  Here, FTC-Apple adversity exists even without the FTC filing suit against Apple *directly*, because the finding that the FTC seeks—that Qualcomm and Apple engaged in a conspiracy, in violation of

---

[1] Qualcomm has not, contrary to FTC's claim, abandoned Requests 4–5 regarding the CMs and MDL Plaintiffs. As Apple's indemnitees, the arguments here regarding Apple would apply equally to the CMs; note 4 below explains the conflict between the MDL Plaintiffs' and the FTC's theories that undercuts the purported common interest.

[2] These RFPs seek: "All Communications between You and Apple or Apple's attorneys Relating to any of the Actions" (No. 4); "All Communications between You and any of the Contract Manufacturers or their attorneys Relating to any of the Actions" (No. 5); and "All Communications between You and any of the plaintiffs in [the MDL action], or their attorneys, Relating to any of the Actions" (No. 6).

[3] The FTC has said that it considers "*Qualcomm's de facto exclusive dealing and related contracts with Apple*" to violate Section 1 of the Sherman Act. FTC Obj. & Resp. to Qualcomm Rog. No. 2 (12/15/17).

Section 1 of the Sherman Act—is *inherently* adverse to Apple.[4]  That is, Apple would be jointly and severally liable for a judicial finding that it participated in a Section 1 conspiracy, thereby increasing the risk of future litigation by other plaintiffs.[5]  The FTC attempts to confuse this issue by noting that the FTC and Apple are both adverse to Qualcomm.  But the question is whether *Apple* is adverse to *the FTC*; if they are, the privilege is waived.  There is no "the-enemy-of-my-enemy-is-my-friend" exception to the rules of work product and waiver.  As to the second prong, the FTC cannot show that the material communicated will be withheld from potential adversaries because, as stated, the FTC itself is an *actual* adversary of Apple.  Indeed, any commitment to keep the materials confidential would require the FTC, on behalf of itself and other agencies that might seek to share the information, to forego any action against Apple based on what Apple provided—an effective grant of immunity to Apple.[6]  Put simply, material exchanged between the FTC and Apple is material exchanged between adversaries, and material sent from Apple to the FTC is material from an adversary that the FTC can share such material with other potential governmental adversaries, *e.g.*, the DOJ, given the lack of a confidentiality obligation.[7]  In sum, the FTC's ability to rely on the work product doctrine fails under either prong.[8]

B.      *The requested materials are relevant and not unduly burdensome to produce*

This Court has already ruled, in the context of the so-called informant materials, that the FTC's communications with commercially interested third parties are discoverable.  D.E. 176 at 4–5.  The communications now at issue are no different.  The FTC's suggestion that the Court has ruled otherwise is misplaced.  The Court's decision that a *third party* (*i.e.*, Apple) should not have to produce post-complaint communications with other *third parties*, is fundamentally different from the situation here.  Qualcomm is asking a *party* (*i.e.*, the FTC) to make an unquestionably non-burdensome production of communications it had with counsel for a commercially interested non-party (*i.e.*, Apple) that claims it was coerced by Qualcomm, while at the same time the FTC expressly identifies Apple as a co-conspirator that violated Section 1 of the Sherman Act.

The relevance of the documents is clear.  █████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████[9]
███████████████████████████████████████████████████████████████████████████

---

[4] Moreover, the FTC and Apple have dissimilar, conflicting theories.  As just one example, the FTC alleges that Qualcomm maintains *lower* prices for its chipsets as part of an alleged scheme to foreclose competitor chipmakers.  FTC Compl. ¶ 94.  But Apple alleges that Qualcomm charges *supra-competitive* chip prices, Apple First Am. Compl. ¶ 650, as does the MDL Plaintiff who has testified regarding the issue.

[5] This risk is more than hypothetical; a class suit in Israel, relying on an EU fine *against Qualcomm* (pertaining to the same allegations made by the FTC) names *both* Qualcomm *and* Apple as co-conspirators and co-defendants.

[6] *See* 15 U.S.C. §§ 46(f), 57b-2 (statutory ability to share information with Congress and other agencies).

[7] The work product cases the FTC cites are factually and legally distinguishable, and Qualcomm is prepared to address them in further briefing should the Court wish.  However, given the clear adversity between Apple and the FTC, the Court can resolve the FTC's work product claim without an account of the many differences in those cases.

[8] The FTC previously claimed it "entered oral common interest agreements with Apple on April 13, 2017, and with Class Plaintiffs on May 18, 2017."  Resp. to Qualcomm Rog. No. 3 (12/15/17).  In the first draft of this Joint Discovery Statement, Qualcomm noted that the FTC could not withhold information under those purported agreements for similar reasons: adversity destroys any claim of common interest.  *United States v. Bergonzi*, 216 F.R.D. 487, 495–96 (N.D. Cal. 2003).  The FTC then abandoned its reliance on the common-interest doctrine, but now claims in a footnote not to have done so, without making any separate argument under that doctrine. The adversity between Apple and the FTC destroys any common-interest claim regardless.

[9] ████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████.[10] Indeed, discussions of legal or economic positions with third parties may go to the credibility of the FTC's experts (*e.g.*, if an expert is taking a position suggested to the FTC by Apple), but in any event, admissibility at trial is not the standard applied to a relevance determination. The FTC attempts to collapse the relevance and work product issues, arguing that *most* withheld documents are irrelevant[11] and the *remainder* are work product. But the FTC never denies that at least some of its purported work product is relevant—as even unquestionably privileged documents may be. Furthermore, the FTC faces no burden in collecting this information.[12] Emails exchanged between a handful of FTC attorneys and counsel for Apple, the CMs, or the MDL Plaintiffs are not difficult to obtain. In fact, the FTC's suggestion that doing so would be burdensome conflicts with its prior actions, such as its production of post-complaint communications from some custodians, ████████████ ████████████████████████[13]

## FTC's Position

Qualcomm insisted that the FTC and other plaintiffs coordinate discovery and is now seeking to thwart the effectiveness of that coordination by demanding the production of post-complaint communications among counsel for plaintiffs.[14] Qualcomm cannot muster a coherent argument about the relevance of these communications to any claim or defense. The vast majority of the communications concern non-substantive document production and logistical matters, which Qualcomm concedes are irrelevant. To the extent that any communications among counsel disclose litigation strategy, those communications would be both immaterial to the disputed issues and protected from disclosure by the work product doctrine. Work product protection is not waived by disclosure among parties litigating similar issues against a common adversary, because such disclosure does not substantially increase the likelihood that the disclosing party's opponent would obtain the information.[15] The burden of collecting and reviewing communications that are (a) of minimal, if any, relevance, and (b) protected from disclosure by the work product doctrine, is not proportional to the needs of the case.

   A.      *Qualcomm's requests do not satisfy Rule 26(b)(1)'s proportionality test*

Qualcomm's RFPs seek the FTC's post-complaint communications about this litigation with outside counsel for other plaintiffs.[16] This Court has already held that Apple need not

---

[10] ███████████████████████████████████████████████████████████████████████

[11] Qualcomm has not conceded that all Apple-FTC "communications" regarding document production are "irrelevant." Communications discussing the substance of documents or related testimony are relevant.

[12] Qualcomm's statements about burden (D.E. 378) are irrelevant. Qualcomm was describing burden in the context of its prior production of 1.2 MM documents, which would far exceed the volume of communications at issue here.

[13] Qualcomm is not thwarting coordination of discovery, which is an administrative matter. There is no reason why granting Qualcomm relief would chill communications about coordination matters such as sharing deposition time.

[14] Efficient coordination requires open communication about discovery strategy. Among other things, counsel must communicate openly to efficiently split extremely limited deposition time among plaintiffs in four different actions.

[15] The FTC does not understand the distinction that Qualcomm is making between non-waiver of work product protection and the "common interest doctrine"—which are just two different ways of saying the same thing. *See, e.g,* *Cal. Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*, 299 F.R.D. 638, 646 (E.D. Cal. 2014) ("The common interest doctrine is not a privilege in and of itself; rather, it constitutes an exception to the rule on waiver where communications are disclosed to third parties.") Common interest agreements are relevant, but not necessary, to establish that a disclosure among plaintiffs pursuing similar claims against the same defendant (and who therefore share a common interest) is unlikely to increase the opportunities for their mutual opponent to obtain that information. The FTC did not "abandon" the common interest doctrine by arguing non-waiver.

[16] The FTC produced its communications with third parties in response to earlier RFPs. The only responsive documents not already produced would be post-complaint communications with outside counsel for other plaintiffs.

3

undertake the burden of *logging* post-complaint communications between Apple custodians and entities with whom Apple shares a common interest, because "the post-complaint communications, even if relevant… have marginal utility." Dec. 20 Hrg. Tr. at 29.[17] Communications among *counsel* are obviously less relevant than communications involving potential witnesses. Indeed, Qualcomm disclaimed any interest in communications involving Apple's outside counsel for precisely this reason. *Id.* at 27 (Mr. Bornstein: "The only thing I would direct the court to is, to be clear, we're asking not for … Mr. Takashima's correspondence or outside counsel. We're looking just in the files of the individuals who are likely to be present presenting evidence."). The FTC's copy of its communications with Apple's outside counsel is no more relevant to a disputed issue than Apple's copy.

Qualcomm's current arguments are thus even less persuasive than its failed arguments in December. Qualcomm does not argue that the communications it seeks are relevant to a claim or defense, but instead notes that during the investigation, ███████████████████████ ████████████████████████████ that may affect the "credibility" of the FTC's legal positions or its experts' opinions.   The FTC routinely seeks industry input when engaged in pre-complaint settlement negotiations, and such a document does not suggest bias.[19] Neither the FTC nor its experts would be less credible if they were to pursue an argument or theory suggested by one of the industry participants that responded to an FTC request for input regarding a potential consent order. A legal argument or economic theory is sound or it is not; the person who suggests its application is irrelevant to its merit.

Finally, Qualcomm repeatedly asserts that collecting and reviewing these documents would not be burdensome. But as Qualcomm itself informed the Court to justify its delay in providing its "refresh" collections of just two custodians, the burden of "collection and processing … remains the same" even for smaller volumes. (D.E. 378). Similar processes are needed for the FTC to collect and review its emails, which would also require significant attorney time given the potentially privileged nature of the documents. Because the majority of the documents are concededly irrelevant, and others would also be privileged, Qualcomm's requests are not proportional to the needs of the case.[20]

B.       *The substantive documents sought by Qualcomm would be work product*

The only communications Qualcomm argues are relevant—post-complaint discussions among counsel about legal and economic theories—would, by definition, have been prepared in anticipation of trial and protected from disclosure by the work product doctrine, as preserved by the common interest doctrine. It would be unduly burdensome to collect documents where the only result is likely to be a privilege log that identifies documents of marginal utility.

---

[17] Qualcomm's reliance on the Court's order regarding the informant's privilege is misplaced. That decision simply held that a different privilege was overcome, it said nothing about whether post-complaint communications among outside counsel are important or relevant to any issue in dispute.

[18] The FTC does not understand why Qualcomm believes proof of the "but for" world would be affected in any way by post-complaint communications among counsel, rather than the underlying facts of the case.

[19] The FTC does not allege that any communication 'transformed' into work product upon the filing of its complaint, and produced the specific communication at issue. Moreover, the FTC entered common interest agreements with other plaintiffs after they filed their own complaints and after Qualcomm argued that discovery ought to be coordinated across the actions. While express common interest agreements are not necessary to preserve work product protection, the FTC has not withheld from its productions any communications that predate those agreements. As Qualcomm admits, none of the produced communications disclose work product.

[20] Qualcomm's statement that the FTC has "located," but not produced, documents is misleading. FTC staff has engaged in communications with counsel for other plaintiffs as a necessary part of discovery coordination. Any response to these RFPs, however, would require a dedicated collection, which has not been undertaken.

If plaintiffs shared documents disclosing their views about economic or legal theories, or about discovery strategy, that disclosure would not waive work product protection. *See Ellis v. J.P. Morgan Chase & Co.,* No. 12-cv-03897-YGR (JCS), 2014 U.S. Dist. LEXIS 45681, at *15-16 (N.D. Cal. Apr. 1, 2014) (correspondence sent by defendants' attorney to other potential defendants protected by work product). "[T]he purpose of the work-product rule is not to protect the evidence from disclosure to the outside world but rather to protect it only from the knowledge of opposing counsel and his client." *Cal. Sportfishing*, 299 F.R.D. at 645 (citing Wright, Miller, *et al.*, 8 Fed. Prac. & Proc. Civ. § 2024 (3d ed.)). A disclosure among plaintiffs' counsel would not "substantially increase the opportunities for potential adversaries to obtain the information." *Id.; see also Skynet Electronics Co. v. Flextronics Int'l, Ltd.*, No. 12-6317, 2013 U.S. Dist. LEXIS 176372 at *3 (N.D. Cal. Dec. 16, 2013) (no waiver where disclosure of work product to third party did not make it substantially more likely defendants would discover it).

Plaintiffs with active antitrust claims against Qualcomm share a common interest in proving those claims and are unlikely to disclose any shared work product to Qualcomm.[21] *Cal. Sportfishing*, 299 F.R.D. at 647 (parties litigating similar issues against common adversary have reasonable basis to believe recipient will keep disclosed material confidential); *United States v. Deloitte LLP*, 610 F.3d 129, 141 (D.C. Cir. 2010) ("[R]easonable expectation of confidentiality may derive from common litigation interests."); *United States v. AT&T Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980) ("[W]ith common interests on a particular issue against a common adversary, the transferee is not at all likely to disclose the work product material to the adversary."). Private plaintiffs and government entities share a common interest sufficient to maintain work product protection if they are parties to similar suits against a common defendant. *See, e.g.*, *AT&T*, 642 F.2d at 1300 (no work product waiver where private plaintiff and United States were "proceeding on overlapping antitrust issues against a common adversary," and therefore "shared common interests in developing legal theories and analysis of documents on which to proceed on those issues"); *Cal. Sportfishing*, 299 F.R.D. at 647 (no work product waiver where private plaintiff and government were "pursuing…litigation based on a closely related set of facts" against a common defendant). The risk of disclosure to Qualcomm is particularly low here, where the FTC has entered common interest agreements with other plaintiffs.

Qualcomm argues that communications with Apple's counsel cannot be protected because the FTC is "adverse" to Apple. Even if Apple is a party to an agreement that violates Section 1 of the Sherman Act, however, it is entitled to sue Qualcomm for the anticompetitive effects of that agreement. *See Perma Life Mufflers v. Int'l Parts Corp.*, 392 US 134 (1968) (plaintiff franchisees could sue their franchisor for Section 1 violations based on the agreements those same plaintiffs signed). Apple has in fact sued Qualcomm, alleging that the agreements were anticompetitive. The FTC and Apple share a common interest in efficiently pursuing coordinated discovery relating to those common allegations. There is no requirement that they advance identical legal theories, or share a complete unity of interests. *See, e.g.*, *Cal. Sportfishing*, 299 F.R.D. at 647; *Narog v. City of Redwood City*, No. C-13-03237 DMR, 2014 U.S. Dist. LEXIS 36193, at *17 (N.D. Cal. Mar. 17, 2014). Indeed, a common interest "may apply where the parties' interests are adverse in substantial respects." *Ellis*, 2014 U.S. Dist. LEXIS 45681 at *19. Accordingly, disclosure of materials between counsel for the FTC and Apple would not waive any applicable work product protections.

---

[21] If parties share a common interest, that fact would be relevant to determining whether a disclosure among them increases an adversary's opportunity to obtain the disclosed information. These are not distinct concepts or separate prongs in any test.

Dated: February 7, 2018

Respectfully submitted,

KEKER, VAN NEST & PETERS LLP,

*/s/ Asim M. Bhansali*

Robert A. Van Nest
Asim M. Bhansali
Eugene M. Paige

Gary A. Bornstein
Yonatan Even
CRAVATH, SWAINE & MOORE LLP
   Worldwide Plaza
   825 Eighth Avenue
      New York, NY 10019
         Tel: (212) 474-1000
            Fax: (212) 474-3700
               gbornstein@cravath.com
               yeven@cravath.com

Richard S. Taffet
MORGAN, LEWIS & BOCKIUS LLP
   101 Park Avenue
      New York, NY 10178-0060
         Tel: (212) 309-6000
            Fax: (212) 309-6001
               richard.taffet@morganlewis.com

Willard K. Tom
MORGAN, LEWIS & BOCKIUS LLP
   1111 Pennsylvania Ave. NW
      Washington, DC 20004-2541
         Tel: (202) 739-3000
            Fax: (202) 739 3001
               willard.tom@morganlewis.com

Donn P. Pickett
Geoffrey T. Holtz
MORGAN, LEWIS & BOCKIUS LLP
   One Market, Spear Street Tower
      San Francisco, CA 94105-1126
         Tel: (415) 442-1000
            Fax: (415) 442-1001
               donn.pickett@morganlewis.com
               gholtz@morganlewis.com

*Attorneys for Qualcomm Incorporated*

6

FEDERAL TRADE COMMISSION,


  /s/  Jennifer Milici

Jennifer Milici
Daniel Matheson
J. Alexander Ansaldo
Joseph R. Baker
Kenneth H. Merber
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
(202) 326-2912; (202) 326-3496 (fax)
jmilici@ftc.gov

Attorneys for Federal Trade Commission

**FILER'S ATTESTATION**

I, Asim M. Bhansali, am the ECF user whose Login and Password authorized the filing of this document.  Under Civil L.R. 5-1(i)(3), I attest that counsel has concurred in this filing.


DATED: February 7, 2018                    /s/ *Asim M. Bhansali*

                                           Asim M. Bhansali
                                           KEKER, VAN NEST & PETERS LLP
                                           633 Battery Street
                                           San Francisco, CA 94111
                                           Telephone: (415) 391-5400
                                           Email: abhansali@keker.com