CRAVATH, SWAINE & MOORE LLP
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
825 Eighth Avenue
New York, New York 10019-7475
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

KEKER, VAN NEST & PETERS LLP
Robert A. Van Nest, SBN 84065
rvannest@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 676-2289
Facsimile: (415) 397-7188

MORGAN, LEWIS & BOCKIUS LLP
Richard S. Taffet (*pro hac vice*)
richard.taffet@morganlewis.com
101 Park Avenue
New York, NY 10178-0060
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

Attorneys for Defendant
QUALCOMM INCORPORATED

*Additional counsel in the signature block.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION<br><br>Plaintiff,<br><br>v.<br><br>QUALCOMM INCORPORATED, a Delaware corporation,<br><br>Defendant. | Case No. 5:17-CV-00220-LHK-NMC<br><br>**DEFENDANT QUALCOMM INCORPORATED'S BRIEF REGARDING *IN CAMERA* REVIEW PURSUANT TO MAGISTRATE JUDGE'S FEBRUARY 24, 2018 ORDER**<br><br>Courtroom: 8, 4th Floor<br>Judge: Hon. Lucy H. Koh<br>Date: March 5, 2018 |
| IN RE QUALCOMM ANTITRUST LITIGATION | Case No. 5:17-MD-02773-LHK-NMC |

Pursuant to the Court's February 24, 2018 Order (ECF No. 591) ("February 24 Order"), Qualcomm has re-reviewed 5,250 privilege log entries: 4,250 entries described on the log as "regarding QC business plans"; 500 entries selected by Plaintiffs in connection with the deposition of Michael Hartogs; and 500 entries selected by Plaintiffs in connection with the deposition of Fabian Gonell.[1] In compliance with the February 24 Order, by March 2, Qualcomm produced documents to Plaintiffs that, as a result of its re-review, Qualcomm concluded were not privileged, either in whole or in part (if the latter, Qualcomm produced the document in redacted form).[2] Today, pursuant to the February 24 Order, Qualcomm provides to the Court for *in camera* review the documents that were re-reviewed and remain withheld as privileged, as well as the corresponding privilege log entries. In the February 24 Order, the Court permitted the parties to submit briefs on the legal framework that should guide the Court's *in camera* review. To assist the Court, we set forth below the basic legal framework, as well as information about some of the specific lawyers and issues that appear in the privileged documents submitted for *in camera* review.

I.  **Qualcomm's Re-Review**

To comply with the February 24 Order, between February 25 and March 2, a team of thirteen Qualcomm lawyers re-reviewed over 8,500 individual documents (including attachments). The Qualcomm lawyers who conducted the re-review are among the most experienced on Qualcomm's review team, both in terms of their general experience and in terms of their experience in reviewing Qualcomm documents and addressing the unique issues they

---

[1] To date, Qualcomm has re-reviewed more than 10,000 privilege log entries (and many more documents), and continues to re-review even more, upon reasonable requests by Plaintiffs. For example, on March 1, Plaintiffs sent a list of 1,504 log entries for Qualcomm to re-review in advance of the deposition of Steve Altman, and Qualcomm is in the process of re-reviewing those documents and will endeavor to provide Plaintiffs with the results of that re-review ahead of that deposition.

[2] Qualcomm produced the de-prived documents from among the 500 entries related to the Hartogs deposition on February 26, so that Plaintiffs would have those documents prior to that deposition.

raise.  Accordingly, these attorneys are better equipped than other reviewers to make the difficult, close calls often necessary to distinguish between legal advice and business advice in the context of Qualcomm's documents.  These reviewers include eight Cravath, Swaine & Moore LLP Discovery Attorneys, two of the best contract reviewers who work with them, and three Norton Rose Fulbright attorneys.

Because of the compressed time for the re-review, Qualcomm did not have an opportunity to examine how much of the content over which privilege claims were withdrawn had already been produced to Plaintiffs in whole or in part in other documents in the production.  Such examination was undertaken, at least partially, with respect to prior re-reviews, and has consistently shown that incidence to be significant (*e.g.*, in a prior re-review of 1,520 log entries ordered by the Court, the content of over 45% of the documents that fell off the log and were produced without redactions had been previously produced in whole or in part).  Qualcomm expects that this would be true for this re-review as well; because Qualcomm agreed to search the files of many custodians from its licensing arm, most documents in the production appear in multiple iterations, and different iterations often were analyzed differently for privilege purposes.  These inconsistencies in how similar or identical documents are treated for privilege across the production are the result primarily of three features of Qualcomm's very large document review: the number of review attorneys (several hundreds) required to complete the review; a de-duplication process that, while consistent with industry standards, does not perfectly eliminate all substantively duplicative and overlapping documents from review; and above all, the difficulty involved in making the privilege calls on many of these documents.  At the end of the day, many privilege determinations are close calls, on which reasonable minds can disagree.  Here, many such reasonable minds were reviewing thousands of similar documents, often leading to slightly different outcomes.[3]

---

[3] In the process of the re-reviews, Qualcomm's reviewers have identified many documents where some on the team felt that certain information that should have been redacted was nonetheless disclosed, either in partially redacted documents subject to re-review or in other versions of the re-reviewed documents that had been previously produced without or with lesser

QUALCOMM'S BRIEF REGARDING *IN CAMERA* REVIEW
Case Nos. 17-cv-0220-LHK-NMC & 17-md-2773-LHK-NMC

## II. Qualcomm Attorneys Commonly Appearing on Privileged Documents

To assist the Court, below we describe some of the key attorneys who commonly appear in Qualcomm's privileged documents. Some of these attorneys have (or had) primarily or exclusively a legal role. Notably, however, some have dual business and legal roles. Indeed, several Qualcomm business executives are or were attorneys; several served as outside counsel, including to Qualcomm, before joining the company; and practically all of them continued to provide legal advice to the company after assuming a business executive role.

Attorneys appearing commonly in privileged documents whose job positions at Qualcomm are purely legal, and whose work involved little or no business advice, include (in alphabetical order):

- **"DMO"**: Discovery Management Organization (DMO) is the group within Qualcomm that manages the discovery process for litigation.
- **Roy Hoffinger**: Vice President, Legal Counsel, through 2015, since joining Qualcomm from private law practice in 2006. Mr. Hoffinger was responsible for advising the company on antitrust and competition law matters.
- **Carol Lam**: Senior Vice President and Deputy General Counsel since 2008. Ms. Lam joined Qualcomm as Legal Counsel in 2007, after having served as the U.S. Attorney for the Southern District of California (2002-2007).
- **Don Rosenberg**: Executive Vice President, General Counsel, and Corporate Secretary of Qualcomm since 2007. In his role as chief legal officer, he is responsible for overseeing Qualcomm's worldwide legal affairs including litigation, intellectual property and corporate matters.
- **Mark Snyder**: Senior Vice President and Head of Litigation, formerly Vice President and Patent Counsel. Mr. Snyder joined Qualcomm in 2008 after practicing

---

redactions. Qualcomm has typically avoided clawing back such documents except where the error was particularly egregious or could give rise to a claim of subject matter waiver going beyond the specific document.

both in-house and in private practice.

- **David Zuckerman**: Vice President and Legal Counsel. Mr. Zuckerman joined Qualcomm in 2012. He is the primary legal contact for Qualcomm's securities matters, managing the legal aspects of SEC reporting, and he is the primary legal interface to the Qualcomm finance organization for SEC and NASDAQ filings.

Attorneys appearing commonly in privileged documents who have given business advice in addition to legal advice include (in alphabetical order):

- **Derek Aberle**: Prior to joining Qualcomm in 2000, Mr. Aberle represented the company as outside counsel for several years at the law firms of Pillsbury Madison & Sutro and Heller Ehrman. At Qualcomm, he had a succession of purely legal job positions: Legal Counsel; Legal Counsel, Senior; and Vice President and Legal Counsel. In June of 2005, Mr. Aberle became Senior Vice President and General Manager of CDMA Licensing. As Mr. Aberle testified, while in that position, he continued to provide legal advice to the company. (Aberle Oct. 6, 2016 IH Tr. at 8:22-8:25.) Mr. Aberle left the company in 2017, after having served also as President of Qualcomm's Technology Licensing (QTL) division (2008-2011), Group President of Qualcomm (2011-2014), and President of Qualcomm (2014-2017). He became an inactive member of the California bar on June 30, 2013.

- **Steve Altman**: Prior to joining Qualcomm in 1989, Mr. Altman was in private practice. At Qualcomm, he began as Corporate Counsel, with responsibility for licensing and contracts. He became General Counsel in 1992, and held that position through 2000. Since 1992, Mr. Altman also held several business positions, including General Manager of QTL (1992-1995), President of QTL (1995-2005), and President of Qualcomm (2005-2011). He has been a Strategic Consultant to Qualcomm since 2013. Mr. Altman became an inactive member of the California bar on October 12, 2006.

- **Yunhui Chae-Banks**: Vice President, Business Development at QTL. Before taking

this position in July 2016, Ms. Chae-Banks was Vice President and Legal Counsel. She had been Legal Counsel since 2003, supporting the complete range of QTL's day-to-day legal operations, including handling, as lead lawyer, drafting and legal counseling with respect to outbound licensing.

- **Victoria Chen**: Senior Vice President and Legal Counsel at Qualcomm's CDMA Technology division (QCT), Qualcomm's business unit responsible for the development and sale of semiconductors and software. Ms. Chen has been Legal Counsel since 2004, and was also Legal Counsel at Qualcomm from 1998 to 2000. Ms. Chen's primary responsibilities are drafting contracts, negotiating contracts, and advising business teams on legal issues.

- **Deborah Dwight**: Vice President and Division Counsel for QTL, since May 2017. Prior to becoming Division Counsel, she was Senior Legal Counsel, QTL Legal. Ms. Dwight joined Qualcomm in 2001. Ms. Dwight has supported the complete range of QTL's day-to-day legal operations. She has drafted and negotiated a broad set of license agreements and amendments, and she has taken a leading role in completing patent and licensing registration processes in India, negotiating license agreements in China, and resolving many licensee audits.

- **Fabian Gonell**: Senior Vice President, Licensing Strategy and Legal Counsel at QTL. Prior to his current position, Mr. Gonell was Vice President and Division Counsel for QTL, where his responsibilities included managing the division's legal department and overseeing the company's compliance with the rules of standards organizations. Prior to joining Qualcomm, Mr. Gonell was a litigator at Cravath, Swaine & Moore LLP, and in that role represented Qualcomm (among others).

- **Michael Hartogs**: Senior Vice President and Division Counsel for QTL, until his retirement in 2012. Mr. Hartogs joined Qualcomm in 1999, and was the lead lawyer for Qualcomm's patent licensing business. Mr. Hartogs provided legal advice and headed the legal team involved in Qualcomm's 3G and 4G licensing activities.

- **Lou Lupin**: General Counsel from 2000 to 2007. Mr. Lupin joined Qualcomm from private practice in 1995, holding a number of positions, including Senior Legal Counsel (1995-1996), and Proprietary Rights Counsel (1996-2000). He was a legal consultant to Qualcomm from 2008 to 2014.
- **Roger Martin**: Senior Vice President and Chief IP Strategist, until retiring in early 2018. Mr. Martin led the department that has overall responsibility for the development of Qualcomm's IP portfolio.
- **Eric Reifschneider**: Prior to joining Qualcomm in 2012, Mr. Reifschneider was outside counsel to Qualcomm, while practicing at Cooley Godward Kronish LLP and at Dewey & LeBouef. He was Senior Vice President and General Manager of QTL from 2012 to 2016, when he left Qualcomm. While he was at Qualcomm, Mr. Reifschneider continued to provide legal advice – in addition to business advice – to the company.
- **Tom Rouse**: Vice President, QTL Patent Counsel. Prior to joining Qualcomm in 1998, Mr. Rouse was a patent attorney in private practice. His positions at Qualcomm have included Associate Patent Counsel, Patent Counsel, Patent Counsel and Patent Portfolio Manager, and Chief Patent Counsel.

## III. Legal Standard and Common Issues

The attorney-client privilege "protects communications between an attorney and her client made in confidence for the purpose of securing legal advice from the lawyer". *U.S. v. ChevronTexaco Corp.*, 241 F. Supp.2d 1065, 1069 (N.D. Cal. 2002) (citing *U.S v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996). Other communications protected by the privilege include "a communication between nonlegal employees in which the employees discuss or transmit legal advice given by counsel", *ChevronTexaco*, 241 F. Supp.2d at 1077, "a communication between nonlegal employees in which an employee discusses her intent to seek legal advice about a particular issue", *id.*, and "communications between employees [that] were for the purpose of transmitting information to counsel for advice". *Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503,

514 (S.D. Cal. 2003).

As applied to Qualcomm's documents, the issue is often how to distinguish between legal advice and business advice. Courts in this District have recognized that where "the purported privileged communications involve attorneys who apparently performed the dual role of legal and business advisor, assessing whether a particular communication was made for the purpose of securing legal advice (as opposed to business advice) becomes a difficult task". *ChevronTexaco*, 241 F. Supp.2d at 1069. In that regard, Qualcomm has applied to its review (and its re-review) the standards set forth in the Declaration of Gerald A. Ford, dated November 13, 2017 (ECF No. 299) ("Ford Declaration"). The Ford Declaration was a basis of the Court's Supplemental Discovery Order Approving Qualcomm's Privilege Log (ECF No. 316) and the standard described therein is not in dispute.[4]

The work product doctrine protects documents prepared "in anticipation of litigation" by or for a party or its representatives. *ChevronTexaco*, 241 F. Supp.2d at 1081.[5] "As stated in Rule 26, the doctrine extends not only to work by the attorney but also to litigation preparation work by the party or its representatives". *Id.* Notably, "except where a document would have been generated in the normal course of business even if no litigation was anticipated, the work product doctrine can reach documents prepared 'because of litigation' even if they were prepared in connection with a business transaction or also served a business purpose". *Id.* at 1082.

---

[4] FTC has acknowledged that the Ford Declaration describes a "careful process". (12/20/17 Tr. at 7.) MDL Plaintiffs have stated: "The Ford Declaration sets forth an excellent approach to privilege review to which Plaintiffs have no objection". (12/12/17 Email from R. Pierce to A. Bhansali, G. Bornstein, D. Rizk, and A. Dryer.)

[5] "Litigation" includes government investigations. *See, e.g., In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235 (5th Cir. 1982). Accordingly, the FTC itself includes "Attorney Work Product" claims for documents withheld on its December 19, 2017 Privilege Log that were prepared in the course of its (pre-litigation) investigation of Qualcomm.

To assist the Court, we describe below some of the privilege/work product issues – often very difficult issues – that appear in Qualcomm's documents and that Qualcomm has been endeavoring to address:

- **Legal advice regarding licensing and contractual issues.** "[A]dvice on transactional matters" is "just the sort of lawyerly thing one would expect of an in-house lawyer". *Exxon Mobil Corp. v. Hill*, 751 F.3d 379, 382 (5th Cir. 2014).[6] Qualcomm attorneys routinely provide legal advice regarding transactional matters, including the drafting of license and other agreements, and legal issues concerning proposed and existing commercial relationships. However, many of these lawyers, as noted above, also hold business roles and provide – often in the very same document – business advice. Distinguishing between the two is a judgment call that is hard to make in many cases, especially without engaging in a factual investigation that is simply impossible given the volume of documents involved. Where the documents contain both legal and business advice, reviewers are instructed to redact legal advice, and produce business advice.

- **Legal advice regarding intellectual property.** Qualcomm attorneys regularly provide legal advice on IP issues. Communications to or from lawyers regarding legal advice on patent and patentability issues are privileged. *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000); *Games2U, Inc., v. Game Truck Lic., LLC*, 2013 WL 4046655, *3 (D. Ariz. Aug. 9, 2013). Privilege determinations with respect to Qualcomm IP issues are often difficult, as business discussions often also involve or are informed by complicated legal issues, such as patent exhaustion and numerous contractual issues.

---

[6] *See, e.g., In re Bard IVC Filters Prods. Liability Litig.*, 2016 WL 3970338, at *9 (D. Ariz. 2016) ("Log 3, Control 1694 is an email from outside counsel attaching a draft letter to opposing counsel relating to contract negotiations. The email requests feedback on the letter, and a response provides feedback. The communications are privileged.").

- **Legal advice and/or work product regarding government investigations**: Qualcomm lawyers and others at the company have been involved in defending the company in investigations brought in several non-U.S. jurisdictions. The fact that the company has been subject to such investigations complicates matters from the perspective of attorney-client privilege and work product, because the company operates in what is a heavily regulated and litigious environment, and much of the company's business advice is commingled with legal and compliance advice.

IV. Conclusion

If the Court has any factual or legal questions about documents subject to *in camera* review that it would like to discuss with Qualcomm, we are available at the Court's convenience.

Dated: March 5, 2018          Respectfully submitted,

/s/ Yonatan Even
Gary A. Bornstein
Yonatan Even
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
Tel: (212) 474-1000
Fax: (212) 474-3700
gbornstein@cravath.com
yeven@cravath.com

Robert A. Van Nest
Asim M. Bhansali
Eugene M. Paige
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Tel: (415) 676-2289
Fax: (415) 397-7188
rvannest@keker.com
abhansali@keker.com
epaige@keker.com

Richard S. Taffet
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178-0060
Tel: (212) 309-6000
Fax: (212) 309-6001
richard.taffet@morganlewis.com

Willard K. Tom
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave. NW
Washington, DC 20004-2541
Tel: (202) 739-3000
Fax: (202) 739 3001
willard.tom@morganlewis.com

Donn P. Pickett
Geoffrey T. Holtz
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: (415) 442-1000
Fax: (415) 442-1001
donn.pickett@morganlewis.com
geoffrey.holtz@morganlewis.com

*Attorneys for Qualcomm Incorporated*