1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
2    Including Professional Corporations
   GARY L. HALLING, Cal. Bar No. 66087
3  MICHAEL W. SCARBOROUGH, Cal. Bar No. 203524
   Four Embarcadero Center, 17th Floor
4  San Francisco, CA 94111
   Telephone:    415.434.9100
5  Facsimile:    415.434.3947
   E-mail:       ghalling@sheppardmullin.com
6                mscarborough@sheppardmullin.com

7  LEO D. CASERIA, Cal. Bar No. 240323
   333 South Hope Street, 43rd Floor
8  Los Angeles, California 90071-1422
   Telephone:    213.620.1780
9  Facsimile:    213.620.1398
   E-mail:       lcaseria@sheppardmullin.com
10
   Attorneys for Non-Party Samsung Electronics
11 Co., Ltd.

12                    UNITED STATES DISTRICT COURT

13         NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

14

15

16 | FEDERAL TRADE COMMISSION | Case No. 5:17-CV-00220-LHK-NMC |
|---|---|
| Plaintiff, | **NON-PARTY SAMSUNG ELECTRONICS CO., LTD.'S STATEMENT REGARDING COMMON INTEREST AGREEMENT** |
| v. | |
| QUALCOMM INCORPORATED, a Delaware corporation, | Date:  March 7, 2018 |
| | Time:  2:00 p.m. |
| Defendant. | Courtroom:  7, 4th Floor |
| | Judge:   Hon. Nathanael M. Cousins |
| IN RE QUALCOMM ANTITRUST LITIGATION | Case No. 5:17-MD-02773-LHK-NMC |

28

SMRH:485630961.3      NON-PARTY SAMSUNG ELECTRONICS CO., LTD.'S STATEMENT REGARDING
                                       COMMON INTEREST AGREEMENT

Non-party Samsung Electronics co., Ltd. ("Samsung") submits this statement in response to the Court's March 2, 2018 Order Requiring Further Briefing Regarding Purported Common Interest Agreement ("Order").  The Order required Samsung, non-party Apple, Inc. ("Apple"), and defendant Qualcomm Incorporated ("Qualcomm") to each submit a brief addressing three topics relating to the June 23, 2016 Common Interest Agreement between SEC and Apple ("Common Interest Agreement").  Samsung's positions on those three topics are set forth below.

Samsung objects to the production of the Common Interest Agreement because (1) it is not relevant to the antitrust claims against Qualcomm in this case; (2) it is attorney work product protected by the common interest doctrine, and Qualcomm cannot demonstrate substantial need to overcome the work product doctrine; and (3) the Common Interest Agreement itself shows that Samsung and Apple had a shared legal interest in ensuring that standard essential patent holders complied with their FRAND obligations and antitrust law.

Requiring Samsung or Apple to produce the Common Interest Agreement to Qualcomm is bad public policy.  It would be a strong disincentive to parties entering into written common interest agreements in the future.

## I.   The Common Interest Agreement Is Not Relevant To The Issues In The Case.

The Common Interest Agreement between non-parties Apple and Samsung is not relevant or potentially relevant to any issues in dispute between Qualcomm and the N.D. Cal. plaintiffs, nor is Samsung aware of any valid document request from Qualcomm that seeks production of the Common Interest Agreement in the N.D. Cal. cases.  It has no bearing on the claims or defenses in these antitrust cases.  The Common Interest Agreement, which the Court has reviewed in camera, does not does not even refer to Qualcomm.

Only relevant materials are discoverable.  *See* Fed. R. Civ. Proc. 26(b)(1) (parties may obtain discovery of matters that are "relevant to any party's claim or defense and proportional to the needs of the case.").  These cases concern Qualcomm's alleged antitrust violations in connection with its licensing of standard essential patents and its chipset sales practices.  The cases do not concern an agreement between two non-parties regarding their common interest privilege.  The Common Interest Agreement between non-parties Samsung and Apple will not help prove or

disprove any claim or defense or fact of consequence in these cases.  It merely describes a common legal interest between Apple and Samsung and sets forth some terms relating to cooperation in furtherance of that interest.

Under similar circumstances, courts routinely refuse to compel production of common interest agreements on the grounds that they are not relevant or responsive.  *See, e.g., Castaneda v. Burger King Corp.*, 259 F.R.D. 194, 200 (N.D. Cal. 2009) (Burger King did not produce a joint defense agreement and did not include it on its privilege log, which the court noted was "probably legitimate if Plaintiffs didn't make a formal discovery request for it."); *In re Takata Airbag Prods. Liab. Litig.*, 2017 U.S. Dist. LEXIS 76100, *105-112 (S.D. Fla. Mar. 7, 2017) (denying motion to compel production of joint defense agreement because its content was "not relevant to any claim or defense in this matter") (collecting cases); *Ellis v. J.P. Morgan Chase & Co.*, 2014 U.S. Dist. LEXIS 45681, *9-10 (N.D. Cal. Apr. 1, 2014) (letter and attached joint defense agreement not relevant because it did not contain "any information that is relevant to the underlying claims."); *Warren Distrib. Co. v. InBev USA L.L.C.*, 2008 U.S. Dist. LEXIS 71320, *9 (D.N.J. Sept. 18, 2008) (joint defense agreement not relevant and not discoverable because it "merely contains language that parties typically include in joint defense agreements to protect from discovery privileged information revealed to a third party.").

For instance, in *Takata*, plaintiffs sought to compel production of a joint defense agreement between defendants Honda and TK Holdings in a product liability case based on allegedly defective airbags used in automobiles.  Like the Common Interest Agreement between Apple and Samsung, the Honda-TK agreement was formed in connection with a government investigation.  *See In re Takata Airbag Prods. Liab. Litig.*, 2017 U.S. Dist. LEXIS 76100, *106-107 (S.D. Fla. Mar. 7, 2017).  Following an *in camera* review, the court held that the Honda-TK agreement merely contained "standard" language found in most joint defense agreements, and did not "contain any substantive information, factual details or other case-specific information that is relevant to the Plaintiff's claims and defenses."  *Id.* at *109-110.  The Court held that the Honda-TK agreement was "therefore irrelevant under Rule 26(b)(1)."  *Id.*  Indeed, the Court even went so far as to note that the Honda-TK joint defense agreement was "not relevant to any claim or

1   defense in this matter, even under the extremely broad discovery standards set forth in Rule 26."

2   *Id.* at 108.  Likewise, the Common Interest Agreement between Samsung and Apple contains no

3   information bearing on any matter of consequence in these cases.

4         In addition to being irrelevant with respect to the merits of the issues in these cases, the

5   Common Interest Agreement is also not relevant to determining whether documents listed on

6   Apple's privilege log are actually privileged or work product.  The common interest doctrine is a

7   non-waiver rule, and, as a result, only applies to documents or communications that are protected

8   by the attorney-client privilege or attorney work product doctrine to begin with.  A similar

9   relevance argument was rejected by the court in *Warren Distrib. Co. v. InBev USA L.L.C.*, 2008

10  U.S. Dist. LEXIS 71320, *13 (D.N.J. Sept. 18, 2008), where the court explained:

11      "Plaintiffs contend they must review the actual Agreement in order to assess the
    'merits of the [defendants'] privilege claim.' Brief at 4. Plaintiffs are mistaken.

12      Plaintiffs are already in possession of the information they need to determine the
    merits of defendants' privilege claims. As noted by A-B, 'the joint defense privilege

13      was not used to confer privilege upon an otherwise unprivileged document….
    Rather, it was used only to ensure that an otherwise privileged communication was

14      not waived simply because it was shared between Anheuser-Busch and InBev.' Id.
    Further, if the Court accepts plaintiffs' argument that they must review the

15      Agreement in order for them to evaluate the merits of defendants' privilege claim,
    then joint defense agreements would be routinely produced in discovery. This

16      position is contrary to the applicable case law."

17

18  **II.  The Common Interest Agreement Is Protected From Disclosure By The**

19        **Attorney Work Product Doctrine And/Or The Attorney Client Privilege**

20        As noted above and in the Court's Order, a document or communication must be protected

21  by the attorney-client privilege or attorney work product doctrine to begin with in order for the

22  common interest doctrine to apply.  This is because the common interest doctrine is a principle of

23  non-waiver.  It "is an exception to ordinary waiver rules designed to allow attorneys for different

24  clients pursuing a common legal strategy to communicate with each other." *In re Pac. Pictures*

25  *Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012).

26        The Common Interest Agreement between Samsung and Apple qualifies as attorney work

27  product.  The attorney work-product doctrine protects from discovery in litigation "mental

28  impressions, conclusions, or legal theories of a party's attorney" that were "prepared in

anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3).  The Common Interest Agreement is a document prepared and signed by outside counsel for both Apple and Samsung, describing certain legal impressions, theories and opinions, and containing a legal plan for cooperating in response to government requests for information in connection with antitrust investigations into standard essential patents.

In addition, only six months after the Common Interest Agreement was signed, Apple filed its own antitrust lawsuit against Qualcomm in S.D. Cal. in January 2017, shortly after the FTC filed its Complaint in these matters.  While the parties may have desired to avoid litigation, it was likely foreseeable by June 2016 when the Common Interest Agreement was signed that there was a reasonable probability of litigation.  Under similar circumstances, other courts have found that joint defense or common interest agreements qualify as work product.  *See, e.g., In re Takata Airbag Prods. Liab. Litig.*, 2017 U.S. Dist. LEXIS 76100, *112-116 (S.D. Fla. Mar. 7, 2017) (denying motion to compel production of joint defense agreement, holding that the agreement was "protected by the work product privilege, as it applies through the joint defense or common interest doctrines.") (collecting cases); *Ellis v. J.P. Morgan Chase & Co.*, 2014 U.S. Dist. LEXIS 45681, *12-16 (N.D. Cal. Apr. 1, 2014) (letter and attached joint defense agreement to third parties that received subpoenas qualified as work product because it was prepared by counsel in connection with litigation and contained a "plan" regarding the subpoenas); *R.F.M.A.S.*, 2008 U.S. Dist. LEXIS 14969, *3 (S.D.N.Y. Feb. 15, 2008) (noting that "most courts" have held that joint defense agreements are protected by the work product doctrine).

In *Takata*, the Court held that a Honda-TK joint defense agreement executed in connection with a government investigation prior to the litigation was protected attorney work product. The litigation involved product liability claims relating to defective airbags, and the joint defense agreement was signed years earlier, just before the National Highway Traffic Safety Administration closed its own investigation.  *In re Takata Airbag Prods. Liab. Litig.*, 2017 U.S. Dist. LEXIS 76100, *106-107 (S.D. Fla. Mar. 7, 2017).  The Court noted that the joint defense agreement was "executed by the parties' respective attorneys," was prepared in anticipation of litigation, and reflected opinion work product in the form of "collective legal opinions and

conclusions regarding the manner and method by which privileged information should be exchanged, and the conditions and limitations that should govern the parties' use of such information." *Id.* at 114.  These circumstances are very similar to the circumstances surrounding the Apple-Samsung Common Interest Agreement, which was also executed by the parties' attorneys, in connection with a government antitrust investigation that in fact led to litigation, and reflects the opinions of attorneys regarding the manner and method by which privileged information will be exchanged and used.  Accordingly, the Common Interest Agreement is protected as work product.

In order to overcome the protections afforded by the attorney work product doctrine, Qualcomm must show a "substantial need" with respect to non-opinion work product and an even greater showing for opinion work product.  *See* Fed. R. Civ. Proc. 26(b)(3)(A)(ii); *Upjohn Co. v. United States*, 449 U.S. 383, 400 (1981); *Holmgren v. State Farm Mutual Automobile Insurance Co.*, 976 F.2d 573, 577 (9th Cir. 1992).  As noted by the Court in *Takata*, a joint defense agreement like the Apple-Samsung Common Interest Agreement constitutes opinion work product.  It is therefore subject to a showing "beyond" substantial need.  *Holmgren*, 976 F.2d at 577.

Regardless, Qualcomm cannot establish even a substantial need for the Common Interest Agreement that overcomes its work product protection, much less a showing beyond substantial need.  As Qualcomm's arguments in the February 16, 2018 Joint Statement establish, Qualcomm is only interested in the Common Interest Agreement because it wants to determine whether other Apple-Samsung communications listed on Apple's privilege log are actually privileged.  (*See* Dkt. 575 at 3).  Qualcomm does not need the Common Interest Agreement to do this.

As already explained above, the common interest doctrine is a non-waiver principle that only applies to materials that are privileged or work product in the first place.  *See supra* at 3.  The Common Interest Agreement can therefore shed no light on whether any particular document was initially privileged or work product.  *See Warren Distrib. Co. v. InBev USA L.L.C.*, 2008 U.S. Dist. LEXIS 71320, *13 (D.N.J. Sept. 18, 2008) (common interest agreement has no bearing on this question).  Qualcomm also cannot establish a substantial need for production of the Common

-5-

Interest Agreement to determine whether the common interest doctrine applies to prevent waiver of the attorney client privilege or attorney work product protection.  That is because the existence of a common interest agreement can be established without a written agreement.  *See, e.g., United States v. Gonzalez*, 669 F.3d 974 (9th Cir. 2012) ("[I]t is clear that no written agreement is required, and that a JDA may be implied from conduct and situation, such as attorneys exchanging confidential communications from clients who are or potentially may be codefendants or have common interests in litigation.").  Qualcomm therefore has other ways to determine the extent to which the common interest doctrine applies to Samsung-Apple communications, primarily by examining the underlying communications themselves and the circumstances surrounding them.  Indeed, even assuming the Apple-Samsung Common Interest Agreement is produced, it would not obviate the need for this type of analysis.

Qualcomm also no substantial need for the Common Interest Agreement with respect to the actual claims and defenses at issue in this case.  Again, this is an antitrust case against Qualcomm, not a case about whether Apple and Samsung have a common legal interest.  The parties have a multitude of other and better ways to establish the claims and defenses in this case, including through documents, data and testimony that actually relate to the claims at issue.  There has been a substantial amount of discovery in this case regarding relevant matters, including millions of documents as well as deposition testimony, and under these circumstances there is no substantial need for production of an irrelevant Common Interest Agreement.  *See R.F.M.A.S.*, 2008 U.S. Dist. LEXIS 14969, *3 (S.D.N.Y. Feb. 15, 2008) ("Plaintiff has been provided the pertinent corporate documents except for the joint-defense agreement . . . . Based on our in camera review of the agreement, it contains nothing else that would materially add to or change the plaintiff's case for imposing responsibility on [defendant], and hence plaintiff has not shown the requisite compelling need for the document that would justify overriding the normal work-product immunity associated with a joint-defense agreement.").

Finally, Samsung notes that several courts have also rejected efforts to compel disclosure of joint defense or common interest agreements on the grounds that they are privileged.  *See, e.g., Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, 2007 U.S. Dist. LEXIS 22090,

1   *30 (D. Kan. Mar. 26, 2007) (denying motion to compel production of joint defense agreement in

2   antitrust case, holding that "the applicability of the privilege is clear to the Court."); *McNally*

3   *Tunneling Corp. v. City of Evanston*, 2001 U.S. Dist. LEXIS 17090, *10-14 (N.D. Ill. Oct. 16,

4   2001) (denying motion to compel production of joint defense agreement because it was protected

5   by attorney client privilege and attorney work product doctrine); *A.I. Credit Corp. v. Providence*

6   Washington Insurance Co., 1997 U.S. Dist. LEXIS 6223, *12 (S.D.N.Y. 1997) ("joint defense

7   agreements are generally considered privileged").

8           **III.    Samsung And Apple Had A Common Legal Interest**

9           Samsung and Apple described their common legal interest in the Common Interest

10   Agreement itself, which was signed by counsel for both parties.  As reflected in the Common

11   Interest Agreement, Samsung and Apple had a common legal interest in the government's antitrust

12   investigations into standard essential patents. Specifically, Samsung and Apple had a common

13   legal interest in ensuring that standard essential patent holders lived up to their FRAND licensing

14   obligations as well as the antitrust laws.   This common legal interest arose out of the fact that

15   Samsung and Apple are more frequently licensees of standard essential patents (often the exact

16   same patents) rather than licensors of standard essential patents, and also because the government

17   was requesting information from both Samsung and Apple in connection with its antitrust

18   investigations into standard essential patent licensing.  By cooperating and coordinating with

19   Apple pursuant to the Common Interest Agreement, Samsung hoped to reduce or avoid litigation

20   by ensuring that standard essential patent holders lived up to their FRAND obligations and

21   antitrust law.

22           Courts have recognized that parties can have common legal interests in patent licensing

23   issues that trigger the common interest doctrine, particularly when those efforts may help to

24   reduce or avoid litigation.  *See, e.g., In re Regents of the Univ. of Cal.*, 101 F.3d 1386 (Fed. Cir.

25   1996) (holding that common legal interest existed between Eli Lilly and the University of

26   California because they shared an interest in "valid and enforceable patents."); *Rembrandt Patent*

27   *Innovations, LLC v. Apple, Inc.*, 2016 U.S. Dist. LEXIS 13749, *17 (N.D. Cal. Feb. 4, 2016)

28   (holding that common legal interest existed where separate parties shared a "joint interest in

                                    -7-                          Case No. 5:17-CV-00220-LHK-NMC

generating revenue through licensing and litigation and maintaining the strength and validity of the patent" which "inherently relied on the joint pursuit of *legal* objectives.") (emphasis in original); *Morvil Tech., LLC v. Ablation Frontiers, Inc.*, 2012 U.S. Dist. LEXIS 30815 (S.D. Cal. Mar. 8, 2012) (holding that common legal interest existed between AFI and Medtronic, which was interested in acquiring AFI, because the parties wanted to make sure that AFI's patents did not infringe other parents).

The Court suggests in its Order that Samsung and Apple had a joint commercial interest and not a joint legal interest.  (*See* Dkt. 600 at 2).  The two are not mutually exclusive; Samsung and Apple may have had a commercial interest in avoiding non-FRAND "holdup" licensing terms for standard essential patents, but they also had a legal interest in ensuring that standard essential patent holders complied with their FRAND obligations and avoiding litigation regarding those issues.  *See, e.g.*, *In re Regents of the Univ. of Cal.*, 101 F.3d 1386, 1391 (Fed. Cir. 1996) (common interest doctrine applies to documents that "address either anticipated litigation or a joint effort to avoid litigation."); *Morvil Tech., LLC v. Ablation Frontiers, Inc.*, 2012 U.S. Dist. LEXIS 30815 (S.D. Cal. Mar. 8, 2012) ("There may indeed have been an overlap of commercial and legal interests given the purpose of the disclosure, namely wholesale purchase of AFI by Medtronic. But this overlap does not negate the effect of the legal interest in establishing a community of interest."); *Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1172 (D.S.C. 1974) ("The fact that there may be an overlap of a commercial and a legal interest for a third party does not negate the effect of the legal interest in establishing a community of interest."), cited in *In re Regents of the Univ. of Cal.*, 101 F.3d at 1390.

## IV.    Conclusion

For the foregoing reasons, Samsung respectfully requests that the Court deny Qualcomm's request for an order compelling production of the Common Interest Agreement.  The Court has already reviewed the agreement *in camera* and can determine whether other items listed on Apple's privilege log are privileged or not without requiring production of the Common Interest Agreement.  There is no sound legal basis for ordering Samsung to produce the Common Interest

1   Agreement and such production would have a chilling effect and make parties reluctant to enter

2   into written common interest agreements in the first place.

3

4   Dated:  March 6, 2018

5                                         SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

6

7                               By      _____
                                                /s/ Leo D. Caseria
8                                                LEO D. CASERIA

9                                       Attorneys for Samsung Electronics Co., Ltd.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 5:17-CV-00220-LHK-NMC
SMRH:485630961.3                   NON-PARTY SAMSUNG ELECTRONICS CO., LTD.'S STATEMENT REGARDING
                                             COMMON INTEREST AGREEMENT