CRAVATH, SWAINE & MOORE LLP
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
825 Eighth Avenue
New York, NY 10019-7475
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

KEKER, VAN NEST & PETERS LLP
Robert A. Van Nest, SBN 84065
rvannest@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 676-2289
Facsimile: (415) 397-7188

MORGAN, LEWIS & BOCKIUS LLP
Richard S. Taffet (*pro hac vice*)
richard.taffet@morganlewis.com
101 Park Avenue
New York, NY 10178-0060
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

Attorneys for Defendant
QUALCOMM INCORPORATED

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>QUALCOMM INCORPORATED, a Delaware corporation,<br><br>Defendant. | Case No. 5:17-cv-00220-LHK-NMC<br><br>**DEFENDANT QUALCOMM INCORPORATED'S STATEMENT REGARDING NON-PARTY APPLE INC.'S PURPORTED COMMON INTEREST AGREEMENTS**<br><br>Courtroom: 7, 4th Floor<br>Judge: Hon. Nathanael M. Cousins |
| IN RE QUALCOMM ANTITRUST LITIGATION | Case No. 5:17-md-02773-LHK-NMC |

Pursuant to the Court's March 2, 2018 Order, Defendant Qualcomm Incorporated ("Qualcomm") submits this statement in further support of its request to compel production of the purported Common Interest Agreement between Non-Parties Apple Inc. ("Apple") and Samsung Electronics Co., Ltd. ("Samsung") (the "Agreement").

The common interest doctrine is an exception to the ordinary rule that communications between unrelated entities cannot be shielded by the attorney-client privilege or work product doctrine. The doctrine applies only when the parties to the communications share a common *legal* interest, and when the communications were made in furtherance of that legal interest.

The doctrine does not apply to the Agreement because Apple and Samsung did not share such a legal interest when the Agreement was executed (nor do they share such a legal interest now). With respect to their device businesses, Apple and Samsung simply share a strong *commercial* interest in paying Qualcomm as little as possible for Qualcomm's intellectual property. But that is a purely commercial interest. Their commercial interest in reducing their supply costs cannot be transformed into a *legal* interest by virtue of the fact that they have used regulatory proceedings, including this action and the FTC's investigation that preceded it, as one method to advance their commercial goal. And Samsung cannot transform that common commercial interest into a legal interest such that a highly relevant agreement that is being used to withhold relevant and responsive documents is itself rendered undiscoverable.

In the sections that follow, Qualcomm addresses the questions raised by the Court in its March 2 Order. Following a brief summary of the background of its request (Part I), Qualcomm first shows that the Agreement evidences Apple's and Samsung's shared commercial interests, is probative of their bias and motivations, and is therefore relevant to the claims and defenses in this case (Part II). Qualcomm next shows why the Agreement is not shielded from discovery by the attorney-client privilege or work product doctrine, and why even if it were, its disclosure would be necessary due to Qualcomm's substantial need for the document (Part III). Finally, although Qualcomm does not have access to the Common Interest Agreement at issue,

Qualcomm notes briefly several factors suggesting that Apple and Samsung do not share a common legal interest that could protect communications between them from discovery (Part IV).

**I.      Background.**

On August 8, 2017, Apple informed Qualcomm that, beginning in the summer of 2016, well before the filing of the complaints in these cases, it had entered into a number of purported common interest agreements on which it is relying in this litigation to withhold certain documents from production.  (ECF No. 536.)  Specifically, Apple stated that it entered into written agreements with Samsung, Intel Corporation, MediaTek Inc., and Apple's Contract Manufacturers (Compal Electronics Company, FIH Mobile Limited/Hon Hai Precision Company, Pegatron Corporation, and Wistron Corporation).[1]  (*Id.*)  On August 15, Qualcomm served Apple with subpoenas for the written agreements.  (ECF Nos. 209-10, 209-11.)  In seeking the agreements, Qualcomm sought to obtain information to assess Apple's purported common interests because it was then clear that Apple intended to invoke these agreements to withhold responsive documents.  Qualcomm also sought the agreements to obtain information relevant to the bias and credibility of witnesses from Apple and the relevant third parties.  Apple produced all the common interest agreements it had previously identified, including the Agreement with Samsung, but it then clawed back the Agreement with Samsung, stating that Samsung had objected to the Agreement's production.  Qualcomm and Apple submitted a joint discovery statement on February 5, 2018 (ECF No. 536) regarding Qualcomm's request that Apple produce the Agreement.  On February 5, the Court ordered Apple to produce the Agreement for *in camera* review.  On March 2, 2018, the Court found that its review of the Agreement "raises additional issues and presents new questions", and ordered each of Qualcomm, Apple and Samsung to submit supplemental briefing.

---

[1] Apple also stated that it had an "oral" common interest agreement with the FTC and a written agreement with the MDL Plaintiffs.  (ECF No. 404.)

## II. The Purported Common Interest Agreement Is Relevant to the Actions.

Qualcomm is entitled to obtain discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case". Fed. R. Civ. P. 26(b)(1).[2] Apple has not contested the relevance of the Agreement. And the Agreement is indeed relevant to these actions, in at least the following two important ways. *First*, Apple has withheld numerous responsive communications and documents from its production by invoking its Agreement with Samsung and claiming that many communications with Samsung remain immune from discovery under the attorney-client privilege and/or work product doctrine. Production of the Agreement will allow Qualcomm to evaluate the validity of any purported common interest and whether the withheld communications were actually made in furtherance of the asserted common interest.[3]

*Second*, the FTC has indicated its intent to rely at trial on the testimony of multiple Apple and Samsung witnesses; the Agreement is relevant to the credibility of those witnesses' testimony. Specifically, the Agreement evidences Apple's and Samsung's interests and motivations with respect to the outcome of this litigation and is therefore relevant to the biases of witnesses from these companies. *See United States v. Abel*, 469 U.S. 45, 52 (1984) ("Proof of bias is almost always relevant . . . ."). The Agreement is relevant to how Apple and Samsung have coordinated their attacks on Qualcomm's intellectual property rights and business, both before and after this litigation commenced, to further each company's commercial goal of reducing the price each of them pays for cellular communication technologies.

---

[2] Rule 26(b)(1) directs that proportionality be examined in light of certain enumerated factors, which militate for broad discovery here. Most specifically, the issues in this case are crucially important to Qualcomm, as the FTC challenges longstanding business practices, and seeks relief that would affect Qualcomm's entire licensing program, including potentially over 300 license agreements; the amount in controversy is large; and Apple's and Samsung's resources are vast.

[3] Notwithstanding Samsung's assertion that the "Common Interest Agreement at issue does not concern Qualcomm and never once refers to Qualcomm" (ECF No. 536, at 3 n.5), Apple has used the Agreement as a basis to withhold communications that are undisputedly relevant to these actions against Qualcomm and responsive to the requests in Qualcomm's subpoenas.

### III. The Agreement Is Not Protected from Discovery by the Attorney-Client Privilege or the Work Product Doctrine.

Samsung (but not Apple) asserts that the Agreement should be withheld from discovery. (2/15/18 Hrg. Tr. 74:1-6. (Counsel for Apple: "As we said, your Honor, the only reason we have not produced the document is because Samsung has objected to its production. We have relayed their position regarding privilege in the joint statement, but we are not, ourselves, in privilege of the document [sic]").) That, in and of itself, should end the inquiry; if one of the parties to a purported common interest communication does not consider the communication privileged and, in fact, discloses it, there is no basis to continue protecting the communication from disclosure. Privilege cannot be maintained where there is no meeting of the minds that a communication is intended to remain shrouded by privilege.

Neither the attorney-client privilege nor the work product doctrine could apply to the Agreement. And even if the work product doctrine did apply, Apple has disclaimed privilege over the document, and Samsung as a non-party to any relevant pending litigation is not entitled to assert work product protection to preclude its production, particularly where Apple is not asserting the work product protection. In any event, Qualcomm's substantial need for the document outweighs any interest Samsung could have in withholding it.

#### A. The Agreement Is Not Protected by Attorney-Client Privilege.

Samsung has asserted that the Agreement is protected by attorney-client privilege. (ECF No. 536.) The attorney-client privilege "protects communications between an attorney and her client made in confidence for the purpose of securing legal advice from the lawyer". *U.S. v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1069 (N.D. Cal. 2002) (citing *U.S v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996)). Samsung has not established that the Agreement contains or reflects any confidential legal advice shared between a lawyer and her client. To the contrary, the Agreement is a contract like any other. It does not contain or convey legal advice; rather, it documents the rights and obligations of the signatories. Samsung's assertion that the Agreement is privileged because it supposedly sets forth "collective legal opinions and conclusions regarding

the manner and method by which privileged information should be exchanged" (ECF No. 536) is without merit. Although Apple and Samsung may each have been separately advised by their respective lawyers concerning the Agreement and how best to achieve their aims, the Agreement itself presumably does not communicate the actual advice given by either party's counsel. Samsung has not met its burden of showing that the Agreement itself is privileged.

### B. The Work Product Doctrine Should Not Shield Production of the Agreement.

The Ninth Circuit does not allow non-parties to a litigation to claim work product protection to withhold documents from production. *See In re California Public Utilities Comm'n*, 892 F.2d 778, 780-81 (9th Cir. 1989); *United States v. Graham*, 555 F. Supp. 2d 1046, 1050 (N.D. Cal. 2008). On this basis alone, Samsung cannot assert work product protection to prevent production of the Agreement in this litigation, where Samsung is not a party. Indeed, Samsung is not a party to any pending litigation against Qualcomm, nor has it been at any time since the Agreement was executed.

Even setting that aside, Samsung has not met its burden of demonstrating (1) that anticipated litigation was a substantial factor underlying the Agreement's creation, or (2) that substantial harm to its ability to craft legal strategy would result from its production. *See JumpSport, Inc. v. Jumpking, Inc.*, 213 F.R.D. 329, 348 (N.D. Cal. 2003). And even if the work product doctrine could be applied to the Agreement, Qualcomm's substantial need for it outweighs Samsung's interest in withholding it and requires that it be produced.

*First,* Samsung has not established that anticipated litigation was a factor underlying the Agreement's creation. The Agreement was formed well *before* the start of the litigation against Qualcomm now pending in this Court and the Southern District of California—cases to which, as noted, Samsung is not and has never been party. In its February 5 submission, Samsung claimed that it anticipated that the "active government antitrust investigations involving standard essential patents" could lead to litigation. (ECF No 536.) But Samsung has not established how such investigations could lead to litigation *involving Samsung* – or even Apple. None of the authorities to which Samsung cites, and no authority of which Qualcomm is aware,

1  supports the proposition that two non-targets to an ongoing government investigation can assert
2  work product protection for documents they created, as non-parties, during the pendency of such
3  investigation.  And Samsung cannot seriously claim protection of work product created in
4  anticipation of the litigation brought by Apple, given that Samsung is not a party to that litigation
5  either – and Apple, which is a party, does not assert any privilege over the Agreement.  Because
6  the Agreement was not entered into in anticipation of any litigation involving Samsung, its
7  production would not harm the interest at the heart of the work product doctrine, which is to
8  protect the "zone of privacy that courts have assumed that lawyers and clients need if they are to
9  think reliably, critically, and creatively about their litigation".  *JumpSport*, 213 F.R.D. at 353.

10         *Second*, Samsung has not shown that *any* harm would occur to its ability to craft its
11  legal strategy as a result of disclosure of the agreement.  Indeed, Samsung concedes that the
12  Agreement primarily relates only to "the manner and method by which privileged information
13  should be exchanged, and the conditions and limitations that should govern the parties' use of
14  such information.'" (ECF No. 536.)  Courts have found the work product doctrine inapplicable
15  to agreements that merely establish the framework for future communications.  *See, e.g.*,
16  *R.F.M.A.S., Inc. v. So.*, No. 06 Civ. 13114(VM)(MHD), 2008 WL 465113, at *1 (S.D.N.Y.
17  Feb. 15, 2008).  Indeed, the fact that Apple does not assert privilege over the Agreement speaks
18  volumes about whether disclosure of the Agreement would harm Apple's or Samsung's ability to
19  plan their legal strategy; it clearly would not.  Apple is actively engaged in extensive, high-stakes
20  litigation with Qualcomm around the world and has far more reason than Samsung to be
21  concerned about disclosures that could impair its litigation strategy.  As a result, Apple's
22  willingness to allow production of the Agreement (and the other common interest agreements
23  Apple has signed) is powerful evidence that disclosure would not in fact be prejudicial.

24         Finally, even if the Agreement were subject to the work product doctrine,
25  Qualcomm nevertheless has a substantial need for the Agreement that outweighs any interest
26  Samsung might have (such as it is) in non-disclosure.  *See Gilead Sciences, Inc. v. Merck & Co.,*
27  *Inc.*, No. 5:13-cv-04057-BLF, 2016 WL 107484, at *2 (N.D. Cal. Jan. 1, 2016) (substantial need
28

established if the materials are needed to prepare the case, and cannot, without undue hardship, be obtained elsewhere).  Apple is currently withholding from production numerous communications with Samsung that it has acknowledged to be relevant and responsive but that, in Apple's view, are properly withheld because of the existence of a purported common interest between Apple and Samsung.  Qualcomm has a substantial need for those documents, which have the potential to be critical documents in the case that are highly probative of important witnesses' biases and motivations.  And Qualcomm has no other means to discover the content of the withheld communications.

Accordingly, Qualcomm has a substantial need for discovery of the Agreement, which is a necessary step toward obtaining discovery of the underlying withheld documents.  By withholding the written Agreement, Apple and Samsung are refusing to produce an obviously critical document against which Qualcomm would evaluate the merits of a claim of a common legal interest.  It is Apple and Samsung's burden, not Qualcomm's, to establish *both* the underlying privilege or protection *and* the existence of a common legal interest sufficient to conclude that any privilege or protection has not been waived, *see United States v. Bergonzi*, 216 F.R.D. 487, 493, 495 (N.D. Cal. 2003), and shielding the Agreement materially curtails Qualcomm's ability to challenge any showing they might make.  That is particularly troubling here, where the evidence strongly indicates that the relevant shared interests between Apple and Samsung were commercial rather than legal.  The commercial interests that Apple and Samsung share in minimizing what they pay Qualcomm for certain intellectual property are not a basis for claiming privilege; those interests are in fact exactly why Qualcomm has a substantial need for the documents and communications.

**IV.    Based on the Information Available to Qualcomm, the Asserted Common Interest is Merely Commercial, not Legal.**

Following its review of the Common Interest Agreement, the Court stated that it "is skeptical that the Agreement qualifies as a common interest agreement, because it seems to the Court, upon reviewing the Agreement, that Apple and Samsung did not have a joint *legal* interest.

Rather, the Court is inclined to find that the Agreement expresses Apple and Samsung's joint *commercial* interest instead." The Court invited Apple and Samsung to provide additional evidence, including declarations, as to the propriety of the agreement and the nature of the underlying asserted common interest.

Qualcomm, of course, stands at an informational disadvantage on this topic at this point. Nonetheless, Qualcomm notes the following in aid of the Court's consideration of this matter.

*First*, under the common interest doctrine, attorney-client privilege is waived when shared between parties unless (1) the communications are made by the parties sharing a common *legal* interest, (2) the communications are designed to further that legal interest, and (3) the privilege is not otherwise waived. *See Elan Microelectronics Corp. v. Apple, Inc.*, No. C 09-01531 RS (PSG) 2011 WL 3443923, at *2 (N.D. Cal. Aug. 8, 2011); *Verigy US, Inc. v. Mayder*, No. C07-04330 RMW (HRL), 2008 WL 5063873, at *1 (N.D. Cal. Nov. 21, 2008). In the paradigmatic common legal interest scenario, "allied lawyers and clients work together in prosecuting or defending a lawsuit so that they may exchange information among themselves without waiving the privilege". *Elan Microelectronics*, 2011 WL 3443923, at *4. But here, Apple and Samsung are not co-plaintiffs or co-defendants in any action related to these issues. If parties share no more than a commercial interest, including a "joint business strategy that happens to include a concern about litigation", attorney-client privilege is waived. *Id.* at *2. For example, courts have found privilege to be waived for shared communications that contemplate the litigation risks arising out of an acquisition or transaction, or business strategies that reduce the risk of litigation. *See id.* at *2; *Verigy*, 2008 WL 5063873, at *1. Legal interests are therefore construed narrowly. *See Elan Microelectronics*, 2011 WL 3443923, at *2.[4]

---

[4] The fact that, as Samsung has said, the Agreement "at issue does not concern Qualcomm and never once refers to Qualcomm" (ECF No. 536) further supports the conclusion that the Agreement does not reflect—and was not created in furtherance of—a specific legal interest relating to disputes with Qualcomm, but was instead part of a commercial strategy to reduce royalties paid to Qualcomm and others.

*Second,* as Judge Alsup noted in *Rembrandt Patent Innovations, LLC v. Apple Inc.*, it remains an open question in the Ninth Circuit whether common commercial interests are sufficient to prevent waiver of work product protection, even with respect to parties. No. 15-cv-05094 WHA, 2016 WL 9114005, at *1 (N.D. Cal. Feb. 12, 2016). Qualcomm submits that a common *legal* interest in prosecuting or defending a case is necessary to prevent such a waiver when work product is shared. The overriding purpose of the work product doctrine is to preserve a "zone of privacy that courts have assumed that lawyers and clients need if they are to think reliably, critically, and creatively about their litigation". *JumpSport*, 213 F.R.D. at 353. Protection of communications with a nonparty with similar *commercial* interests (but not a specific common legal interest) would unduly stretch the scope of protection and would be at odds with Rule 26's mandate for liberal discovery.

*Third,* and as noted above, neither Apple nor Samsung have substantiated what litigation involving either party was anticipated at the time the agreement was formed. Work product protection cannot be invoked unless the documents were prepared with anticipated litigation as a *substantial factor* underlying the document's creation. *JumpSport*, 213 F.R.D. at 247. In this case, neither Apple nor Samsung is a party to the FTC action; neither has shown what action against Qualcomm was contemplated by them as a reason for entry into the Agreement at issue; and thus neither is in a position to rationalize *post hoc*, after litigation has commenced, that pre-existing documents constituted "work product" that may be shielded from production under the work product doctrine or the common interest doctrine. (*e.g.*, ECF No. 536, at 4.) Indeed, the burden lies on Apple and Samsung to establish that the "transferor and transferee anticipate[d] litigation against a common adversary on the same issue or issues, [such that] they have strong common interests in sharing the fruit of the trial preparation efforts". *Youngevity Int'l, Inc. v. Smith*, No. 16-cv-704 BTM (JLB), 2017 WL 4227025, at *4 (S.D. Cal. Sept. 22, 2017) (citations and quotations omitted). Absent a showing that Apple and Samsung reasonably anticipated their amorphous "common interest in governments' antitrust investigations into standard essential

1  patents" would lead to litigation to which both Apple and Samsung were parties, no documents
2  can be withheld under the work product doctrine.
3  **V.     Conclusion.**
4        For the foregoing reasons, Qualcomm respectfully requests that the Court order
5  Apple to produce the written Common Interest Agreement with Samsung.

Dated: March 6, 2018                        Respectfully submitted,

By: */s/ Gary A. Bornstein*

Gary A. Bornstein
Yonatan Even
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
Tel: (212) 474-1000
Fax: (212) 474-3700
gbornstein@cravath.com
yeven@cravath.com

Robert A. Van Nest
Asim M. Bhansali
Eugene M. Paige
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Tel: (415) 676-2289
Fax: (415) 397-7188
rvannest@keker.com
abhansali@keker.com
epaige@keker.com

Richard S. Taffet
Willard K. Tom
Donn P. Pickett
Geoffrey T. Holtz
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: (415) 442-1000
Fax: (415) 442-1001
richard.taffet@morganlewis.com
willard.tom@morganlewis.com
donn.pickett@morganlewis.com
geoffrey.holtz@morganlewis.com

*Attorneys for Qualcomm Incorporated*

QUALCOMM'S SUBMISSION ON APPLE'S COMMON INTEREST AGREEMENTS
No. 17-cv-0220-LHK-NMC, No. 17-md-2773-LHK-NMC