| | |
|---|---|
| CRAVATH, SWAINE & MOORE LLP<br>Antony L. Ryan (*pro hac vice*)<br>aryan@cravath.com<br>825 Eighth Avenue<br>New York, NY 10019-7475<br>Telephone: (212) 474-1000<br>Facsimile: (212) 474-3700 | WILMER CUTLER PICKERING<br>HALE AND DORR LLP<br>Mark D. Selwyn (CA SBN 244180)<br>950 Page Mill Road<br>Palo Alto, California 94304<br>Telephone: (650) 858-6000<br>Facsimile: (650) 858-6100 |
| MORGAN, LEWIS & BOCKIUS LLP<br>Richard S. Taffet (*pro hac vice*)<br>richard.taffet@morganlewis.com<br>101 Park Avenue<br>New York, NY 10178-0060<br>Telephone: (212) 309-6000<br>Facsimile: (212) 309-6001 | William F. Lee (*pro hac vice*)<br>Joseph J. Mueller (*pro hac vice*)<br>Mark A. Ford (*pro hac vice*)<br>Timothy Syrett (*pro hac vice*)<br>60 State Street<br>Boston, MA 02109<br>Telephone: (617) 526-6000<br>Facsimile: (617) 526-5000 |
| Attorneys for Defendant<br>QUALCOMM INCORPORATED | Attorneys for Non-Party<br>INTEL CORPORATION |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>QUALCOMM INCORPORATED, a Delaware corporation,<br><br>　　　　　Defendant. | Case No. 5:17-CV-00220-LHK-NMC<br><br>**DEFENDANT QUALCOMM INCORPORATED'S AND NON-PARTY INTEL CORP.'S JOINT DISCOVERY STATEMENT**<br><br>Courtroom: 7, 4th Floor<br><br>Judge: Hon. Nathanael M. Cousins |
| IN RE QUALCOMM ANTITRUST LITIGATION | Case No. 5:17-MD-02773-LHK-NMC |

Defendant Qualcomm Incorporated ("Qualcomm") and Non-Party Intel Corporation ("Intel") submit this joint statement concerning redactions in certain documents prepared by or sent to Dana Hayter, which have been produced in the above-captioned cases (the "FTC Action" and the "MDL Action", respectively) and in the related cases consolidated under the single caption *In re: Qualcomm Litigation*, No. 3:17-cv-00108-GPC-MDD (S.D. Cal.) (the "Apple and CM Actions").

**I. Qualcomm's Position**

Dana Hayter is a former in-house Intel licensing lawyer who from 2005 to 2009 attended a series of business meetings with Qualcomm to discuss a potential patent agreement. These meetings were attended by employees in business roles and lawyers for each party. While the parties explored the potential for a deal, their interests were not aligned. Intel and Qualcomm were unable to agree on terms, and the talks terminated.

The FTC has included Mr. Hayter on its witness list. Based on the Investigational Hearing transcript, and the FTC's examination of Mr. Hayter at deposition in this case, the FTC intends to call Mr. Hayter at trial to testify about Intel's discussions with Qualcomm from 2005 to 2009 over a potential patent agreement.[1] Nevertheless, Intel asserts attorney-client privilege and refuses to produce any portion of Intel's summaries of the meetings Mr. Hayter attended. Intel's records of what Intel said to Qualcomm, and what Qualcomm said to Intel, are not privileged. Moreover, it would be profoundly prejudicial to Qualcomm if Mr. Hayter testifies at trial concerning these meetings with Qualcomm, which took place a decade ago, while Intel prevents Qualcomm from seeing contemporaneous summaries of the meetings and using them to cross-examine Mr. Hayter.

Qualcomm therefore seeks an order compelling Intel to produce the factual summaries of business meetings with Qualcomm. Qualcomm has identified two such meeting summaries, each prepared by Mr. Hayter.[2] In its document production, Intel redacted the meeting summary *in full* in each instance, withholding from Qualcomm in this litigation Intel's contemporaneous record of what each party said to the other at the business meeting. Likewise, at Mr. Hayter's deposition, Intel's privilege assertions prevented Qualcomm from examining Mr. Hayter with respect to the content of these documents.

For example, Exhibit QX9 is an email dated April 18, 2007, with the subject "Trip Report Sanchez". Mr. Hayter and others from Intel visited Qualcomm's offices in San Diego that day and met with Qualcomm representatives. Mr. Hayter confirmed that "Sanchez" was a code name for Qualcomm. Mr. Hayter testified further that "on occasion" when he worked at Intel he "sent emails" reporting on "meetings that [he] had with counterparties that [he was] negotiating with." Mr. Hayter also testified that he had no "independent recollection" of the meeting on April 18, 2017.[3] Based on the subject line of the email ("Trip Report Sanchez"), it appears that the email is a report of discussions that Intel had with Qualcomm. A factual record of what the parties said

---

[1] *See* Hayter Investigational Hearing Tr. (Mar. 28, 2016); Hayter Dep. Tr. (Jan. 31, 2018), 187:11-213:25 (examination by FTC).

[2] Qualcomm also identified a third document (QX11), a meeting summary prepared by a non-lawyer and sent to Mr. Hayter, but Intel has now withdrawn its privilege assertion and has agreed to produce the document.

[3] *See* Hayter Dep. Tr. at 101:21-23 (Sanchez code name), 102:7-12 (practice of sending meeting reports), 102:13-19 (no independent recollection of meeting).

1

to each other in these meetings is not privileged. After repeated attempts to resolve this dispute, Intel continues to assert that Exhibit QX9 and similar documents are privileged. For the reasons outlined below, Intel should not prevail on these privilege claims.

*First,* factual summaries of business meetings with another party do not fall within the attorney-client privilege. It is well established that the privilege "does not protect the disclosure of the underlying facts by those who communicated with the attorney." *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). *See also Matter of Fischel*, 557 F.2d 209, 211 (9th Cir. 1977) (an attorney's summaries of a client's business transactions with third parties are not protected from disclosure); *In re Grand Jury Subpoenas*, 179 F. Supp. 2d 270, 291 (S.D.N.Y. 2001) (when "one lawyer is merely relaying factual information, such as a conversation with a third party to another lawyer" that account is not protected by privilege); *Standard-Chartered Bank PLC v. Ayala Int'l Holdings Inc.*, 111 F.R.D. 76, 80 (S.D.N.Y. 1986) ("The [attorney-client] privilege does not protect facts which an attorney obtains from independent sources and then conveys to his client."). Even if there were some privileged content interspersed in the summaries, Intel's privilege treatment (to redact the meeting summaries in full) would not be proper.

*Second*, Intel does not claim work-product protection and lacks a viable basis for doing so in any event. The work-product protection applies only to "documents . . . prepared in anticipation of litigation for trial". Fed. R. Civ. P. 26(b)(3). There is no evidence to suggest that either of the documents addressed in this letter was prepared in anticipation of litigation.

Qualcomm seeks the production in unredacted form of the following documents:
- QX9 (8660DOC105979), 4/18/2007 email from Mr. Hayter to 13 recipients, with the subject line, "Trip Report Sanchez—Privileged & Confidential."[4]
- QX16 (8660DOC106854), 10/5/2009 email from Mr. Hayter to 6 recipients, with the subject line "Meeting Notes October 1 Marley Patent Agreement Talks Attorney Client Privileged and Intel Confidential."

These documents are Mr. Hayter's summary of an April 18, 2007 meeting with Qualcomm; and Mr. Hayter's summary of an October 1, 2009 meeting with Qualcomm. Despite the privilege legends included in the email subject lines, neither document appears to be privileged.

Intel's own description of the documents (below) confirms that they are not privileged. Intel states that Exhibit QX9 contains "a summary of Intel's and Qualcomm's negotiating positions", and Mr. Hayter sent it broadly to lawyers and non-lawyers at Intel "for feedback and comment" (*infra* p. 3). A communication from attorney to client (not constituting legal advice) is not privileged unless it "directly or indirectly reveal[s] communications of a confidential nature by the client to the attorney." *United States v. Christensen*, 828 F.3d 763, 802 (9th Cir. 2015) (quoting *Fischel*, 557 F.2d at 212);[5] *see also Evans v. Atwood*, 177 F.R.D. 1, 3 (D.D.C.

---

[4] Intel's production contains at least five more versions of the April 18, 2007 meeting summary, in which subsequent discussions ensued or Mr. Hayter forwarded the e-mail to other recipients. Intel has redacted all of these e-mails in full. (*See* 86600DOC106088; 86600DOC106262; 86600DOC106539; 86600DOC106851; 86600DOC106555.) Across the six versions, Mr. Hayter sent the summary to 14 recipients, of whom 9 were non-lawyers. Qualcomm seeks production of all copies.

[5] Intel relies on *Toyo Tire*, an unreported N.D. Ill. case, which is distinguishable because it involves litigation settlement discussions. In any event, Intel's broad reading of *Toyo Tire* is contrary to governing Ninth Circuit law.

1997) ("The privilege protects the communications made by the attorney to the client only insofar as the attorney's communications disclose the confidential communication from the client."). That is not the case here because the underlying communications were between Intel and Qualcomm. Moreover, Intel asserts that Exhibit QX16 should be withheld because it "*includes* a legal analysis of a proposed term sheet" (*infra* p. 4 (emphasis added)). If a portion of the email consists of such legal analysis, it may be redacted, but the rest of the email (summarizing what Intel and Qualcomm said to each other) should be produced.

Intel's privilege assertion over these documents is unsupported by privilege law. Moreover, Qualcomm would be unfairly prejudiced if Mr. Hayter may testify in generalities about these meetings, but Qualcomm cannot see Mr. Hayter's own contemporaneous factual summaries of the meetings and use them on cross-examination. Intel suggests that Mr. Hayter's documents are unnecessary because it is "undisputed" that Qualcomm did not grant an exhaustive license to Intel (*infra* p. 3). Intel's position is belied by the FTC's inclusion of Mr. Hayter on its witness list, and, even more importantly, it misses the fact that Qualcomm intends to show on cross-examination of Mr. Hayter (using his meeting summaries) that Intel in fact was willing to enter into a patent agreement with Qualcomm *without* an exhaustive license.

<u>Compromise Position</u>: Qualcomm requests an order compelling Intel to produce the documents without redaction. At a minimum, Qualcomm requests that the Court require Intel to provide these seven documents for in camera review by the Court. The Court can then determine whether Intel can meet its burden for establishing attorney-client privilege over any portion of any of these documents and order Intel otherwise to produce.

## II. Intel's Position

Qualcomm's motion has nothing to do with learning the history of licensing negotiations between Intel and Qualcomm. Those facts are already known to Qualcomm through its own witnesses and documents. And the key fact—that Qualcomm would not grant an exhaustive license to a competing baseband modem supplier—is undisputed anyway. *See* Motion to Dismiss, Dkt. No. 69, at 14 (acknowledging the "practice of licensing its patents only at the handset level"). Instead, this motion is at best, a fishing expedition and at worst, an attempt to pierce Intel's privilege by invading purely internal, confidential communications between and among Intel's lawyers and other executives involved in those licensing discussions. Given Qualcomm's admitted licensing policies, Intel questions the materiality of the challenged documents; but these are privileged communications and, on principle, Intel cannot step onto the slippery slope of waiving the privilege simply to avoid discovery disputes.

This dispute centers around documents of Dana Hayter, a former in-house counsel at Intel responsible for patent licensing and acquisitions. In that role, Mr. Hayter regularly advised the company concerning legal issues associated with licensing. While Intel produced negotiation correspondence with Qualcomm, Intel claimed privilege over confidential internal communications that took place for the purpose of securing or providing legal advice related to those negotiations, including the communications at issue here. Without divulging the substance, those communications are:

- An April 18, 2007 draft email entitled "Trip Project Sanchez-Privileged & Confidential," providing a summary of Intel's and Qualcomm's negotiating positions along with follow-up questions and next steps. The draft email was prepared by Dana Hayter and sent to others who participated in the negotiations for feedback and comment, and then more broadly to a group of both lawyers and non-lawyers involved in the licensing negotiations. *See* QX9 and documents cited in n.1 above.

3

- An October 5, 2009 email entitled "Meeting Notes October 1 Marley Patent Agreement Talks Attorney Client Privileged and Intel Confidential," from Mr. Hayter to fellow in-house counsel Suzan Miller, coping five others (three of whom were lawyers within Mr. Hayter's licensing group). The email includes a legal analysis of a proposed term sheet. *See* QX16.[6]

Qualcomm's position that these documents should be produced because they are mere "factual summaries of business meetings" is wrong as a matter of law and fact.

First, the *communication* of facts from a lawyer to a client is a privileged communication if done to prepare or provide legal advice. While it is true the Supreme Court in *Upjohn* observed (as Qualcomm notes) that the privilege "does not protect the disclosure of the underlying facts by those who communicated with the attorney," the Court went on to distinguish between discovery of the "underlying facts" (which is not barred by the privilege) and discovery of the attorney-client communication discussing those facts (which is), stating plainly: "A fact is one thing and a communication concerning a fact is an entirely different thing." *Upjohn*, 449 U.S. at 395-96. *Upjohn*'s example makes this distinction clear: "The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney." *Id.*

*Toyo Tire* is squarely on point. In that case, the attorney "memorialized and reported back" to his client discussions the lawyer had with another party, and the court maintained those communications as privileged. *Toyo Tire & Rubber Co. v. Atturo Tire Corp.*, 2016 U.S. Dist. LEXIS 72756, *5-6 (N.D. Ill. June 3, 2016). The court explained: "Many cases note that facts are not protected by the attorney-client privilege … [h]owever this carve-out to the attorney-client privilege for underlying facts does not erode the protection afforded to the communications relaying those facts." *Id.* at *5-6. Rejecting the same argument advanced by Qualcomm here the court held, "the emails themselves are communications, not facts, and these communications were sent for the purpose of obtaining or conveying legal advice." *Id.* at *7.

Qualcomm cites *dictum* in *Christensen* for the proposition that the privilege protects only factual communications from a client and advice from a lawyer. To be sure, parties cannot cloak factual communications in the privilege by using a lawyer as a mere conduit, but where a lawyer is rendering legal advice, the facts upon which he relies to frame his opinions fall within the scope of the privilege. *In re Lidoderm* is instructive. There, the lawyer summarized to his client conversations with a third party, and although the document at issue contained "little formal legal advice" on its face, the context of the communication made clear that it was "part of a larger conversation" in which the lawyer would formulate and explain legal strategy. 2015 U.S. Dist. LEXIS 159601, *41 (N.D. Cal. Nov. 25, 2015). In fact, here, Mr. Hayter directed his communication to other attorneys, further evidencing his intent to facilitate legal advice from other lawyers involved.

Thus, while Qualcomm's counsel was free to examine Mr. Hayter regarding his negotiation with Qualcomm—and did exactly that during his depositions—confidential internal communications between Mr. Hayter, his co-counsel, and his clients remain privileged even if they include discussions of those otherwise unprivileged facts.

---

[6] Intel does not submit a declaration based on the Court's prior instructions not to absent a specific request. Should the Court require a witness declaration in support of the facts above, Intel will promptly provide one.

4

Second, the documents at issue do not merely recite facts; they include legal analysis of licensing provisions, questions from counsel, and identify specific legal issues to be addressed by company counsel. Qualcomm acknowledges those aspects would be privileged, but its suggestion that Intel should sort through these communications and redact only those portions does not comport with the law (*supra*) and is impractical. After all, "[t]he vast majority of communications between attorneys and clients contain some mixture of fact and legal opinion." *Toyo Tire*, 2016 U.S. Dist. LEXIS 72756, *7. Thus, "[i]f every litigant were required to comb through every communication with its attorneys, determine which portions of those communications contained facts and which contained legal opinion, redact the portions that consisted of legal opinion… civil litigation would be ground to halt." *Id.*

Third, Qualcomm's attempt to cast these as summaries of "business meetings" changes nothing. Mr. Hayter repeatedly made clear that *his* role was that of a legal advisor, not a business advisor.[7] Moreover, while certain aspects of a licensing agreement involve business considerations, those business decisions are so "infused with legal concerns" as to be inseparable. *See In re Ford Motor Co.*, 10 F.3d 954, 966 (3d Cir. 1997). For example, business judgment about a reasonable royalty is informed by legal analysis of patent coverage and risk. In this context, a lawyer's advice remains privileged even if utilized for purpose of informing a "business transaction." *Id.* ("Even if the decision was driven … principally by profit and loss … it was infused with legal concerns, and was reached only after securing legal advice.").

Nor does it matter that the protected material is relevant and theoretically could be used to examine Mr. Hayter at trial. Respecting the attorney-client privilege necessarily carries the risk that relevant information would not be turned over in discovery, but the privilege nevertheless should be "zealously protected." *Unigene Labs., Inv. v. Apotex, Inc.*, 2007 U.S. Dist. LEXIS 78410, *10 (N.D. Ill. Oct. 10, 2007); *citing Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994) ("Relevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged…."); *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, 2013 U.S. Dist. LEXIS 2013 U.S. Dist. LEXIS 196496, *31 (E.D. Pa. Aug. 5, 2013) (fact that communication would be helpful on cross-examination "is insufficient to overcome the attorney-client privilege.").[8]

Finally, *in camera* review is not, and should not be, automatic, *see AT&T Corp. v. Microsoft Corp.*, 2003 U.S. Dist. LEXIS 8710, *23 (N.D. Cal. Apr. 18, 2003), and Qualcomm has not provided sufficient basis to warrant *in camera* review of these documents. The law and the facts are clear, and this dispute can be resolved without such review.

---

[7] *See* Hayter Dep. at 151:1-4 ("I was serving as the lawyer …. So if we were talking, it was about, you know, what's your legal advice about this proposal?").

[8] The cases cited by Qualcomm are inapposite. *Standard Chartered Bank* stands only for the proposition that a client must disclose facts known to it even if those facts were later communicated to counsel. 111 F.R.D. at 80. *In re Grand Jury* merely holds that the privilege extends only to communications made "in confidence for the purposes of obtaining and giving legal advice" and that communication of non-privileged information between lawyers not for that purpose would be unprivileged. 179 F. Supp. 2d at 291. *In re Fischel* concerned production of a ledger prepared by an attorney performing tax planning services who was managing business transactions, and turned on the fact that the attorney was not acting in her professional capacity as an attorney. 557 F.2d at 210-11.

5

Dated: April 2, 2018

                        Respectfully submitted,

                        CRAVATH, SWAINE & MOORE LLP

                                  /s/ Antony L. Ryan
                        Antony L. Ryan
                            Worldwide Plaza
                                825 Eighth Avenue
                                    New York, NY 10019
                                        Telephone:  (212) 474-1000
                                            Facsimile:  (212) 474-3700
                                                aryan@cravath.com

                        Richard S. Taffet
                        MORGAN, LEWIS & BOCKIUS LLP
                            101 Park Avenue
                                New York, NY 10178
                                   Telephone:  (212) 369-6000
                                    Facsimile:  (212) 309-6001
                                         richard.taffet@morganlewis.com

*Attorneys for Qualcomm Incorporated*


                                   /s/ Mark A. Ford

WILMER CUTLER PICKERING
   HALE & DORR LLP
MARK D. SELWYN (CA SBN 244180)
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

WILLIAM F. LEE
JOSEPH J. MUELLER
MARK A. FORD
TIMOTHY SYRETT
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

*Attorneys for Non-Party Intel Corporation*

## FILER'S ATTESTATION

I, Antony L. Ryan, am the ECF user whose identification and password are being used to file this Joint Discovery Statement. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that the signatories on this document have concurred in this filing.

/s/ Antony L. Ryan
Antony L. Ryan
