BOIES SCHILLER FLEXNER LLP
William A. Isaacson (*Pro Hac Vice App.* to be filed)
DC Bar No. 414788, wisaacson@bsfllp.com
Karen L. Dunn (*Pro Hac Vice App.* to be filed)
DC Bar No. 1002520, kdunn@bsfllp.com
Amy J. Mauser (*Pro Hac Vice App.* to be filed)
DC Bar No. 424065, amauser@bsfllp.com
1401 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 237-2727
Facsimile: (202) 237-6131

BOIES SCHILLER FLEXNER LLP
Edward H. Takashima, SBN 270945
etakashima@bsfllp.com
401 Wilshire Blvd, Suite 850
Santa Monica, CA 90401
Telephone: (310) 752-2400
Facsimile: (310) 752-2490

Attorneys for Non-Party APPLE INC.

CRAVATH, SWAINE & MOORE LLP
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
825 Eighth Avenue
New York, NY 10019-7475
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

KEKER, VAN NEST & PETERS LLP
Robert A. Van Nest, SBN 84065
rvannest@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 676-2289
Facsimile: (415) 397-7188

MORGAN, LEWIS & BOCKIUS LLP
Richard S. Taffet (*pro hac vice*)
richard.taffet@morganlewis.com
101 Park Avenue
New York, NY 10178-0060
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

Attorneys for Defendant
QUALCOMM INCORPORATED

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION<br><br>Plaintiff,<br><br>v.<br><br>QUALCOMM INCORPORATED, a Delaware corporation,<br><br>Defendant. | Case No. 5:17-cv-00220-LHK-NMC<br><br>**NON-PARTY APPLE INC. AND DEFENDANT QUALCOMM INCORPORATED'S JOINT STATUS REPORT**<br><br>Courtroom: 7, 4th Floor<br>Judge: Hon. Nathanael M. Cousins |
| IN RE QUALCOMM ANTITRUST LITIGATION | Case No. 5:17-md-02773-LHK-NMC |

**~~UNDER SEAL~~**
**UNREDACTED ~~VERSION OF DOCUMENT SOUGHT TO BE SEALED~~**

Pursuant to the Court's February 26, 2018 docket entry, Non-Party Apple Inc. ("Apple") and Defendant Qualcomm Incorporated ("Qualcomm") submit this Joint Status Report.

## I. Apple's Document Production

### A. *Apple's Position*

To date, Apple has produced more than 4.1 million documents totaling over 37 million pages. Apple's anticipated document production is complete, with the following exceptions:

(1) Apple is finalizing a production of documents it has downgraded from its privilege logs. Apple will produce any such documents from an Apple witness's custodial files in advance of his or her deposition.

(2) Apple is reviewing certain privilege log entries identified by Qualcomm as part of the meet and confer process, and may downgrade some of those documents from its privilege logs. Apple may also re-review other privilege log entries and determine that documents are non-privileged. If so, Apple will produce any such downgrades that are responsive and non-privileged on a rolling basis.

### B. *Qualcomm's Position*

Qualcomm received productions from Apple on March 10, 12 and 13. These productions included documents from the custodial files of Messrs. Blevins, Williams and Srouji that were produced just before and during their respective depositions. Qualcomm has urged Apple to prioritize the production of documents from upcoming deponents, so that they are produced sufficiently in advance of the deposition.

## II. Apple's Privilege Log

### A. *Qualcomm's Position*

<u>Clawbacks.</u> On March 7, Qualcomm raised with the Court a dispute regarding Apple's clawback the prior evening of two substantively similar documents Bates numbered APL-QC-FTC_22482289-96 and AAPL-FTC-00004898-4906 (the "Document"). During the hearing, Apple stated that "we determined during the course of deposition prep that the document had, in

fact, not been disclosed to anybody outside of Apple" and that "it was still subject to a work product claim". (3/7/2018 Hrg. Tg. 23:17-22.) The Court "permit[ted] the clawback, and that's on the basis of the privilege being asserted by Mr. Takashima in his representation about the foundation, describing the document and where it was found", and then ordered Apple to produce a declaration substantiating its privilege assertion. (*Id.* at 26:1-10; ECF No. 607.) On March 14 and 15, Apple produced declarations in support of its clawback from Mark D. Selwyn ("Selwyn Declaration") and Bruce "B.J." Hilton Watrous ("Watrous Declaration"), respectively.

The declarations reveal that Apple's representation to the Court on March 7 was not accurate. The Document was in fact disclosed to the mediator presiding over the mediation between Samsung and Apple. (Watrous Decl. ¶ 7.) This disclosure waived any attorney-client privilege. *See Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007) (disclosing an attorney-client communication to a third party waives privilege); *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1127 (9th Cir. 2012) (rejecting selective waiver of privilege). It does not matter that Apple and Samsung agreed that "the privileged character of any information is not altered by disclosure to the mediator". (Selwyn Decl. ¶ 4.) Even if there was such an agreement between Samsung and Apple (which Apple has not produced), it could not prevent a waiver of privilege as against a third party like Qualcomm. All that such an agreement could do is limit the ability of the parties to that agreement (Samsung and Apple) to make waiver claims as against each other. The disclosure to the mediator waived privilege, as a matter of law, which Samsung and Apple could not contract around.[1]

---

[1] To the extent non-party Apple bases its clawback solely on a claim of work-product protection (and not attorney-client privilege), that claim is misplaced. (ECF No. 614 (citing *In re California Pub. Utilities Comm'n*, 892 F.2d 778, 781 (9th Cir. 1989); *United States v. Graham*, 555 F. Supp. 2d 1046, 1050 (N.D. Cal. 2008); *San Francisco Bay Area Rapid Transit Dist. v. Spencer*, No. 04-cv-04632 SI, 2006 WL 2734284, at *2 (N.D. Cal. Sept. 25, 2006) ("'documents prepared for one who is not a party to the present suit are wholly unprotected by Rule 26(b)(3) even though the person may be a party to a closely related lawsuit in which he will be disadvantaged if he must disclose in the present suit.'" (citations omitted)).)

In any event, Apple has not substantiated its new claim that, although the Document went to the mediator, it did not go to Samsung. Mr. Selwyn, Apple's outside counsel who attended the mediation, very carefully states that he has "no record" of disclosure to Samsung and that to his "knowledge" the Document was not disclosed to Samsung. (Selwyn Decl. ¶ 5.) Mr. Watrous of Apple, who does not claim to have attended the mediation, is even more oblique. He avers that Apple "submitted statements to a mediator" and that "[a]t least one of the statements was provided to the mediator, but not to Samsung"—implying that other statements *did* go to Samsung. (Watrous Decl. ¶ 7.) Mr. Watrous further states that by "agreement, the document was to be maintained in confidence and not provided to Samsung." (Watrous Decl. at ¶ 7.) But Apple has not produced any such agreement with the mediator covering either the Document itself or any information contained therein.

Even aside from whether the physical Document itself was given to Samsung, Apple has not met its burden to show that the *content* of the Document was not disclosed. Nor could it credibly do so. The entire point of the Document was to provide the mediator with a series of arguments and comparisons (including a comparison to Qualcomm) that were intended to justify Apple's licensing proposal in the mediation. The Document also walks through the risks to Samsung from rejecting Apple's offer. By giving it to the mediator, Apple naturally intended to convey information and arguments for the mediator to use in discussions with Samsung. Even if the physical Document was not provided to Samsung, the content of the Document plainly was intended to be shared and therefore not subject to work-product protection. And because the mediation actually happened, the content of the Document almost certainly was shared. In fact, even though it has the burden here, Apple does not specifically contend otherwise. *See S.E.C. v. Roberts*, 254 F.R.D. 371, 378-79 (N.D. Cal. 2008) (orally conveying thoughts and impressions to an adversary effectuates waiver); *Bergonzi*, 216 F.R.D. at 493 ("The party asserting the privilege must make a *prima facie* showing the privilege protects the information the party intends to

withhold." (citations omitted)).  The Document is therefore not protected and Apple's clawback should be rejected.[2]

Other Clawbacks.  In the seven days since the last Status Report, Apple has sent three letters clawing back 174 additional documents right before or during the depositions of Apple's witnesses.  In total, Apple has now sent 11 clawback letters, of which 10 were sent immediately before or even during the scheduled depositions of Apple's witnesses.  Apple's clawbacks total 437 documents, the majority of which were in de-privileged productions made on Apple's "rolling basis" after its Court-ordered production deadlines.  (ECF No. 602.)

With the benefit of the Court's rulings on March 7, Qualcomm is continuing to assess whether there are other clawback-related disputes to be raised with Apple.  If so, the parties will meet and confer and, if necessary, bring the issue before the Court.

Nonresponsive Documents.  Qualcomm has not yet received the list of documents that Apple deemed non-responsive in the course of revising its privilege log, which it first requested from Apple on February 23, and which the Court on March 7 ordered Apple to produce.  (ECF No. 602.)  The delay in producing this list has prejudiced Qualcomm's ability to raise any challenges that may be warranted in time to receive any additional documents for use at deposition.

B.   *Apple's Position*

Clawbacks. Pursuant to the Court's order at the March 7, 2018 discovery hearing, Apple served a declaration supporting its clawback of two substantially similar documents, APL-QC-FTC_22482289-96 and AAPL-FTC-00004898-4906, on March 14, 2018.  Apple served an additional supporting declaration on March 15, 2018.

---

[2] The Ninth Circuit has not recognized a mediation privilege for federal matters.  *See Wilcox v. Arpaio*, 753 F.3d 872, 876 (9th Cir. 2014).  Because federal privilege law applies here, given that both this case and the underlying mediated matter involved federal claims (Watrous Decl. ¶ 3), Apple's invocation of this *state* law doctrine is inapplicable.  *See id.*

Qualcomm raised its dispute with these clawbacks on the evening of March 6, 2017. At the March 7, 2018 hearing, Apple's counsel represented, based on the information Apple had at the time, that the final version of the documents above had not been disclosed to anyone outside of Apple. (3/7/2018 Hr'g Tr. at 23:17-23:22.) After the hearing, Apple determined that the document (or a substantially similar document) was likely disclosed to a mediator on a confidential basis. (Selwyn Decl. ¶ 5; Watrous Decl. ¶ 7). However, the document was not shared with Samsung. (Selwyn Decl. ¶ 5; Watrous Decl. ¶ 7). As a result, the documents in question remain subject to work product protection.

At the March 7, 2018 discovery hearing, Apple's counsel confirmed that Apple was asserting the work product privilege over the clawed-back documents. (3/7/2018 Hr'g Tr. at 24:4-24:7.) The Court upheld that privilege assertion, (*id.* at 25:24-26:13), and nothing material to that decision has changed. To the extent Qualcomm is asserting waiver of work production protection, its argument is based on a conflation of the legal standards for the attorney client privilege and work product protection.[3] "[W]aiver of attorney work-product protection requires more than the disclosure of confidential information, it requires an act inconsistent with the adversary system," such as disclosure to "a third party who is not bound to maintain its confidence. . . ." *Great Am. Assurance Co. v. Liberty Surplus Ins. Corp.*, 669 F. Supp. 2d 1084, 1092 (N.D. Cal. 2009) (citations and internal alternations omitted); *accord Nidec Corp.*, 249 F.R.D. at 580 ("[T]he disclosure to a third party does not necessarily constitute a waiver of the work product privilege. For work product, 'protection is waived where disclosure of the otherwise privileged documents is made to a third party, and that disclosure enables an adversary to gain access to the information.'") (citation omitted). The mediator presiding over the

---

[3] Qualcomm does not dispute that the document, as drafted, was subject to work product protection. Mr. Watrous has confirmed that the clawed-back documents "are examples of documents that I prepared that contain legal analysis for the Samsung litigation and mediation efforts." (Watrous Decl. ¶ 6.)

confidential mediation between Apple and Samsung was not Apple's adversary. Further, "[b]y agreement, the document was to be maintained in confidence and not provided to Samsung." (Watrous Decl. ¶ 7). The disclosure of the document in question to a mediator, on a confidential basis, did not waive work product protection.

Neither of the cases cited by Qualcomm is to the contrary. *In re Pacific Pictures Corp.* only addresses selective waiver of the attorney-client privilege, 679 F.3d at 1123, and does not address the less restrictive waiver principles applicable to work product. *See Nidec Corp.*, 249 F.R.D. at 580 ("The work product privilege provides protection against adversaries and is not as easily waived as the attorney-client privilege."). And, as noted above, the *Nidec* court's explanation of *work product*—rather than the explanation of attorney-client privilege Qualcomm cites—supports Apple's position, not Qualcomm's. *Id.* at 580.

Qualcomm's claim that the clawed-back document was shared with Samsung is unfounded. Mr. Selwyn, who represented Apple in its litigation with Samsung, attended the mediation between the parties. (Selwyn Decl. ¶ 3). He attested that "[t]o the best of my knowledge, there was no disclosure of these documents (or substantially similar versions of them) outside of Apple other than to its counsel and to Mr. Piazza," the mediator. (*Id.* ¶¶ 3, 5). Mr. Selwyn also confirmed that based on a review of his internal files and productions to Samsung, "I and staff working at my direction have found no record of these documents being produced in the litigation or otherwise disclosed to Samsung." (*Id.* ¶ 5.) Qualcomm also seems to think that Mr. Watrous' declaration indicates that some version of the document in question was provided to Samsung. It does not. Mr. Watrous has explained that the two clawed-back documents are "either the same as, or substantially similar to, [a] confidential statement provided to the mediator," which "was to be maintained in confidence and not provided to Samsung." (Watrous Decl. ¶ 7.) Mr. Watrous' and Mr. Selwyn's statements firmly establish that the document was not shared with Samsung.

Qualcomm's third argument is even weaker, as it is based solely on speculation that although the *document* in question was not disclosed to Samsung, its *contents* may have been shared. Qualcomm has nothing to support this claim, which is inconsistent with the typical use of confidential documents provided to mediators, and with the specific agreement in the mediation that "the document was to be maintained in confidence and not provided to Samsung." (*Id.* ¶ 7).

Finally, Qualcomm argues that work product protection is inapplicable because Apple is a non-party—an argument it raised for the first time at 9:48 p.m. on the day this Joint Status Report was due. Although Apple cannot respond fully to that argument within the time constraint imposed by Qualcomm, Apple notes that courts may protect work product material from discovery under Rule 26(c) even where Rule 26(b)(3) is not applicable. *See CPUC*, 892 F.2d at 781 ("To the extent that disclosure causes hardship to the CPUC, it is free to seek a protective order under Rule 26(c)."). Moreover, "it must be remembered that protection may exist under *Hickman v. Taylor* itself, even if it is not provided also under the rule, so long as the materials in question were prepared in anticipation of litigation by an attorney." 8 Charles Alan Wright, *et al.*, Federal Practice & Procedure: Civil 3d § 2024 (3d ed. West 2017). Apple's clawback—which the Court has *already* upheld on work product grounds—is fully justified, and should be maintained by the Court.[4]

---

[4] In addition, even if the documents in question were not protected by work product protection—and they are—Apple's clawback would be justified based on mediation privilege. *See Silicon Storage Tech., Inc. v. Nat'l Union Fire Ins. Co.*, No. 13-cv-05658-LHK, 2015 WL 5168696, at *5 (N.D. Cal. Sept. 3, 2015); *Folb v. Motion Picture Industry Pension & Health Plans*, 16 F. Supp. 2d 1164, 1179-80 (C.D. Cal. 1998). Qualcomm suggests that the Ninth Circuit has rejected a federal mediation privilege. That is not the case. The *Wilcox* court found that it did not need to address the existence of a federal mediation privilege. *See* 753 F.3d at 877 ("We thus need not determine whether a mediation privilege should be recognized under federal common law and, if so, the scope of such a privilege."). However, district courts within this Circuit *have* recognized a federal mediation privilege. *See Folb*, 16 F. Supp. 2d at 1179 ("Accordingly, this Court finds it is appropriate, in light of reason and experience, to adopt a federal mediation privilege applicable to all communications made in conjunction with a formal mediation.").

<u>Other Clawbacks.</u>  As discussed during the March 7, 2018 discovery hearing, Apple is continuing to claw back documents that it identified as containing inadvertently-produced privileged or work product material.  To date, Qualcomm has not raised any issues or disputes concerning any such clawbacks.

<u>Non-Responsive Documents.</u>  In the course of re-reviewing privilege log entries, Apple has identified some entries that are not privileged but whose documents are also non-responsive.  Apple is removing those entries from its logs, but because the documents are non-responsive, is not producing the downgraded documents.  Apple anticipates being able to provide Qualcomm with a list of log entries that it has determined to be non-responsive within the next week.

**III.    Deposition Scheduling**

Apple advised Qualcomm and the other parties today that, because of a personal matter, the deposition of Bruce Sewell originally scheduled for March 20-21 is being rescheduled.  Apple, Qualcomm, and the other parties will meet and confer on this issue promptly.

//

//

//

| | | |
|---|---|---|
| 1 | Dated: March 16, 2018 | Respectfully submitted, |
| 2 | | By:   */s/ Edward H. Takashima* |
| 3 | | William A. Isaacson |
| 4 | | wisaacson@bsfllp.com |
| 5 | | Karen L. Dunn |
| | | kdunn@bsfllp.com |
| 6 | | Amy J. Mauser |
| | | amauser@bsfllp.com |

Dated: March 16, 2018          Respectfully submitted,

By:   */s/ Edward H. Takashima*

William A. Isaacson
wisaacson@bsfllp.com
Karen L. Dunn
kdunn@bsfllp.com
Amy J. Mauser
amauser@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington, DC 20005
Telephone:     (202) 237-2727
Facsimile:     (202) 237-6131

Edward H. Takashima
etakashima@bsfllp.com
BOIES SCHILLER FLEXNER LLP
401 Wilshire Blvd, Suite 850
Santa Monica, CA 90401
Telephone:  (310) 752-2400
Facsimile:  (310) 752-2490

Attorneys for Non-Party APPLE INC.

By:   */s/ Gary A. Bornstein*

Gary A. Bornstein
Yonatan Even
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
Tel:  (212) 474-1000
Fax:  (212) 474-3700
gbornstein@cravath.com
yeven@cravath.com

| | |
|---|---|
| 1 | Robert A. Van Nest |
| 2 | Asim M. Bhansali |
|   | Eugene M. Paige |
| 3 | KEKER, VAN NEST & PETERS LLP |
|   | 633 Battery Street |
| 4 | San Francisco, CA 94111-1809 |
|   | Tel: (415) 676-2289 |
| 5 | Fax: (415) 397-7188 |
|   | rvannest@keker.com |
| 6 | abhansali@keker.com |
|   | epaige@keker.com |
| 7 | |
|   | Richard S. Taffet |
| 8 | Willard K. Tom |
|   | Donn P. Pickett |
| 9 | Geoffrey T. Holtz |
| 10 | MORGAN, LEWIS & BOCKIUS LLP |
|    | One Market, Spear Street Tower |
| 11 | San Francisco, CA 94105-1126 |
|    | Tel: (415) 442-1000 |
| 12 | Fax: (415) 442-1001 |
|    | richard.taffet@morganlewis.com |
| 13 | willard.tom@morganlewis.com |
|    | donn.pickett@morganlewis.com |
| 14 | geoffrey.holtz@morganlewis.com |
| 15 | |
|    | *Attorneys for Qualcomm Incorporated* |

# FILER'S ATTESTATION

I, Edward H. Takashima, am the ECF user whose identification and password are being used to file this Joint Status Report. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that the signatories on this document have concurred in this filing.

/s/ Edward H. Takashima
Edward H. Takashima