Jennifer Milici, D.C. Bar No. 987096
Daniel Matheson, D.C. Bar No. 502490
J. Alexander Ansaldo, Va. Bar No. 75870
Joseph R. Baker, D.C. Bar No. 490802
Elizabeth A. Gillen, Ca. Bar No. 260667
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
Tel: (202) 326-2912; Fax (202) 326-3496
*jmilici@ftc.gov*

Lin W. Kahn, Ca. Bar No. 261387
Federal Trade Commission
901 Market Street, Suite 570
San Francisco, CA 94103
Tel: (415) 848-5115; Fax: (415) 848-5184
*lkahn@ftc.gov*

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

CRAVATH, SWAINE & MOORE LLP
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven @cravath.com
825 Eighth Avenue
New York, NY 10019-7475
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

KEKER VAN NEST & PETERS LLP
Robert A. Van Nest
rvannest@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 676-2289
Facsimile: (415) 397-7188

MORGAN, LEWIS & BOCKIUS LLP
Richard S. Taffet (*pro hac vice*)
richard.taffet@morganlewis.com
101 Park Avenue
New York, NY 10178-0060
Telephone: (212) 309-0060
Facsimile: (212) 309-6001

MORGAN, LEWIS & BOCKIUS LLP
Donn P. Pickett (SBN 72257)
Donn.pickett@morganlewis.com
Geoffrey T. Holtz (SBN 191370)
Geoffrey.holtz@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000
Facsimile: (415) 442-1001

Attorneys for Defendant
QUALCOMM INCORPORATED

*Additional Counsel listed on the Signature Page*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION<br><br>Plaintiff,<br>v.<br><br>QUALCOMM INCORPORATED,<br>a Delaware corporation,<br><br>Defendant | Case No. 5:17-cv-00220-LHK-NMC<br><br>**PLAINTIFF FEDERAL TRADE COMMISSION AND DEFENDANT QUALCOMM INCORPORATED'S JOINT DISCOVERY STATEMENT REGARDING INTERROGATORY NOS. 14-20**<br><br>Magistrate Judge:<br>Hon. Nathaniel M. Cousins |

Defendant Qualcomm Incorporated ("Qualcomm") and Plaintiff Federal Trade Commission ("FTC") hereby submit this joint statement. The parties have met and conferred in person, but have been unable to reach agreement on the issues addressed herein.

**I. Qualcomm's Position**

On February 6, 2018, Qualcomm served Interrogatory Nos. 14 and 15, seeking information that is central to the FTC's claims. The FTC refused to respond to either Interrogatory, claiming that Qualcomm already exceeded its limit of 20 interrogatories, that Nos. 14 and 15 are burdensome and disproportionate, and that they prematurely seek "expert materials." The FTC then wholly ignored two subsequent sets of Interrogatories, comprising Nos. 16-20, thereby waiving all objections to them. The FTC's refusal to respond to any of these Interrogatories is another example of the FTC's continuing effort to avoid providing facts, or acknowledging their absence, regarding its claims. Qualcomm moves to compel the FTC to respond to Interrogatory Nos. 14-20 within five (5) days of the Court's order.

**A. Each of Interrogatory Nos. 1-13 Should Be Counted as Only One Interrogatory.**

While Rule 33(a) (as modified by the Court's Case Management Order) imposes a limit of 20 interrogatories "including all discrete subparts," it is black letter law that not all subparts of an interrogatory are "*discrete*" and count against the limit. The FTC made the same argument it now makes with respect to Interrogatory Nos. 1-13 in a prior Joint Discovery Statement. (ECF No. 434.) This Court concluded that "if the Court were focused on the [subpart counting] question only, it would find that Qualcomm has the better argument," and directed the FTC to respond to all of the Interrogatories. (ECF No. 435 at 1.)

Under Rule 33 and governing law, all subparts that are subsumed within and necessarily related to the overarching request count, in the aggregate, as only one interrogatory. For example, in *Synopsys Inc. v. ATopTech, Inc.*, 319 F.R.D. 293 (N.D. Cal. 2016), a patent case, the defendant refused to answer the plaintiff's five interrogatories, contending that they comprised "at least 21 discrete subparts." *Id.* at 294. The Court rejected the defendant's position, observing that "interrogatory subparts are to be *counted as one interrogatory . . . if they are logically or factually subsumed within and necessarily related to the primary question*." *Id.* (quotations omitted, emphasis added). Thus, an interrogatory asking the defendant to identify each accused instrumentality of infringement, with subparts seeking "an identification of the product name and version (e.g., release number), the date(s) on which the accused instrumentality was made, used, sold, licensed, and offered for sale, and the person(s) most knowledgeable about this response," constituted one interrogatory. *Id.* at 298; *see also In re Lithium Ion Batteries*, 2015 WL 1221924 (N.D. Cal. Mar. 17, 2015). For the reasons Qualcomm provided in the parties' prior Joint Discovery Statement, each of Interrogatory Nos. 1-13 comprises a single interrogatory. (ECF No. 434.)[1] Accordingly, Qualcomm has not exceeded its interrogatory limit.

**B. Interrogatory Nos. 14 and 15 Seek Important Facts Underlying the FTC's Core Claims, Not Premature Expert Discovery.**

Interrogatory Nos. 14 and 15 (Ex. 1) are neither overly burdensome nor disproportionate. Interrogatory No. 14 seeks critical facts underlying a central claim in this case, that Qualcomm coerced device makers—including some of the largest companies in the world—into paying "elevated" royalties. (*See* Compl. Part VI, headed "Qualcomm uses its dominant position in baseband processors to preclude OEMs from challenging its preferred license terms." and ¶ 143.) The Interrogatory requests the identities of such OEMs, how any agreement was coerced, the amount of "elevated" royalties that were coerced, and a description of supporting documents. The FTC says that it provided this information in response to a prior Qualcomm Interrogatory (No. 6), which sought the identities of licensees that agreed to pay higher royalties as a result of Qualcomm's alleged conduct. As the FTC admits, its answer to that Interrogatory was,

---

[1] None of the FTC's non-binding precedent, including the decision of the FTC's own Administrative Law Judge applying the FTC's own rules, contradicts these principles or undermines this Court's prior finding.

essentially, "all of them", and the FTC suggests that Qualcomm should examine its own records and discovery responses to ascertain the specific licensees, agreements, methods of coercion, elevated royalties and supporting documents that the FTC intends to rely upon. This Court recently determined that another, similar response by the FTC—that an alleged tax "represents an economic cost to all rival baseband processor suppliers"—was "a legal generality, where specific facts are requested" and ordered the FTC to provide "specific facts" including "specific rivals and specific costs". (ECF No. 628.) The same conclusion is warranted here.[2] Regardless of whether the FTC intends to provide an expert opinion on this issue, the FTC should respond with facts that support its claim and the quantum of elevated royalties or state that it has no such facts.

Interrogatory No. 15 seeks facts underlying another central claim by the FTC: that Apple's alleged agreement to "exclusively" use Qualcomm's modem chips foreclosed would-be competitors. (*See* Compl. Part VIII, headed "Qualcomm extracted baseband processor exclusivity from Apple . . .".) This Interrogatory is limited to the 2011-16 time frame the FTC has put at issue in its Complaint and goes to the heart of the alleged foreclosure: specifically, whether there were other options besides Qualcomm's chips that met Apple's technical, performance, and scheduling requirements. If there were no other suitable suppliers, Apple's allegedly "exclusive" purchase of Qualcomm's chips simply reflects the fact that no other supplier was satisfactory. The FTC resists answering this Interrogatory primarily because it includes the purportedly vague terms "Apple's technical requirements" and "performance specifications". Those terms are not vague, as demonstrated by the FTC's *own allegations* regarding "Apple's demanding technical requirements" (Compl. ¶ 129(d)) and its *own discovery requests* for documents concerning Apple's "actual or desired technical specifications and performance" (6/1/17 FTC Subpoena to Apple Req. No. 34). This Interrogatory does not ask the FTC to "scour the discovery record" or to "create this information for Qualcomm's benefit", but to identify the facts supporting one of its core claims. If the FTC has not identified any facts supporting its contention that competing baseband processors were foreclosed, then its response should so state.

The FTC also argues that Interrogatory Nos. 14-15 prematurely seek expert discovery. This is incorrect. Both seek the disclosure of factual information underlying the FTC's claims, on which the FTC bears the burden of proof. The facts requested by Interrogatory No. 14 are fundamental to the FTC's case: that licensees were coerced into paying "elevated royalties" is *the* central allegation in the FTC's Complaint. (*See* Compl. ¶¶ 1, 3(a), 4, 6, 7, 37, 47, 61-86, 96.) Interrogatory No. 15 requests the non-Qualcomm baseband processors that the FTC alleges were foreclosed by Qualcomm's agreements with Apple. The FTC may not refuse to provide *facts* underlying its own claims by asserting that "Qualcomm will have the FTC's expert reports in short order". *See Amgen Inc. v. Sandoz Inc.*, 2017 WL 1352052, at *2 (N.D. Cal. Apr. 13, 2017) ("The fact that expert reports are not due until June 16, 2017 does not excuse Amgen from disclosing responsive information regarding the underlying factual bases of its claim."); *see also Retiree Support Grp. v. Contra Costa Cnty.*, 2014 WL 7206849, at *3 (N.D. Cal. Dec. 18, 2014).

### C. The FTC Waived All Objections to Interrogatory Nos. 16-20.

A party cannot simply ignore discovery requests, but that is what the FTC did with respect to two additional sets of Qualcomm Interrogatories: its Third Set (Nos. 16-18, served

---

[2] The FTC argues that an interrogatory may not seek "narrative explanations". But, in the *SEC v. Berry* case it cites, the SEC had provided a "4-page narrative" including the types of documents and other evidence it relied upon; the Court decided only that the SEC's response was adequate. 2011 WL 2441706, at *4 (N.D. Cal. June 25, 2011). The FTC has not provided any response to these Interrogatories, narrative or otherwise.

2

February 16) and its Fourth Set (Nos. 19-20, served February 23). These Interrogatories seek important information about the FTC's contentions, including the alleged impacts of Qualcomm's conduct on competitor chip suppliers, a "premium handset market" alleged in a prior interrogatory response, and facts supporting below-cost chipset pricing alleged in the FTC's Complaint. On March 29, after the 30-day deadlines and only in response to Qualcomm's request, the FTC confirmed that it did not intend to respond to Nos. 16-20. The consequences are clear: the FTC waived any objections, including based on the numerical limit, to these Interrogatories. Fed. R. Civ. Pro. 33(b)(4) ("Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."); *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) ("It is well established that a failure to object . . . constitutes a waiver of any objections"); *Starline Windows v. Quanex Building Prods.*, 2016 WL 4485561, at *8 (S.D. Cal. June 21, 2016) (objection based on numerical limit was waived). The FTC does not assert any "good cause" that would excuse its failure.[3] Qualcomm respectfully requests that the Court determine that the FTC waived all objections to Interrogatory Nos. 16-20 and direct the FTC to provide complete answers to them immediately.

### II. The FTC's Position

The FTC resisted responding to Interrogatory Nos. 10, 11, 12, and 13 because it believed that Nos. 1-9 contained at least eleven discrete subparts, in addition to the nine numbered requests. *See* ECF No. 434 at 3. The Court found it unnecessary to resolve the counting dispute with precision, because "weighing the usefulness of these interrogatories against the burden of responding to them, the Court finds that there is good cause for the FTC to respond to all 13 interrogatories and their subparts." ECF No. 435 at 1-2. The opposite conclusion is called for with respect to Interrogatory Nos. 14-20. Collectively, Nos. 1-13 contain at least seven discrete subparts (in addition to the thirteen numbered requests). Thus, Qualcomm's limit of 20 interrogatories was exhausted after the FTC responded to Nos. 1-13. And no good cause exists to respond to Nos. 14 and 15 because their burden far outweighs their usefulness, and also because they prematurely seek expert opinions.

No response is required to Nos. 16-20 because Qualcomm's limit is exhausted. Qualcomm suggests that the FTC failed to preserve this objection, but Rule 33's limitation on the number of interrogatories is self-enforcing. *See* Fed. R. Civ. Pro. 33(a) ("Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than [20] written interrogatories, including all discrete subparts."). Qualcomm flouted Rule 33, as modified by the Scheduling Order, when it served its twenty-first interrogatory, and the only authority to the contrary Qualcomm cites is inapposite and unconvincing. In any event, the fact that the FTC served its objections on March 30 caused no prejudice to Qualcomm, thus even if explicit objections should have been provided earlier, the Court should not deem them waived.

### A. Interrogatory Nos. 1-13 Contain At Least Seven Additional Discrete Subparts

The FTC set forth its proposed count of the discrete subparts contained in Nos. 1-13 in ECF No. 434, and will not repeat all of these arguments here. *See* ECF No. 434, Attachment A. Nonetheless, at least some of Nos. 1-13 contain "discrete subparts" which require a "separate and distinct" inquiry, even if they share a "common theme." *See, e.g., Paananen v. Cellco P'ship*,

---

[3] Purportedly "in the spirit of compromise", the FTC served belated objections on March 30, more than a week after the Third Set deadline (not "a few days" late, as the FTC states). In response to each Interrogatory, the FTC stated only that it "incorporates by reference its General Objections", including an objection based on the numerical limit. (Ex. 2.) The FTC cannot rely on such objections, because they lack the "specificity" required by Rule 33(b)(4), and because they were untimely, *Okada v. Whitehead*, 2017 WL 4570770, at *3 (C.D. Cal. Oct. 12, 2017). Now past the close of fact discovery, Qualcomm has not received any responses, causing it significant prejudice.

No. C08-1042 RSM, 2009 WL 3327227, at *3 (W.D. Wash. Oct. 8, 2009); *Waterbury v. Scribner*, No. 105CV-0764, 2008 WL 2018432, at *3 (E.D. Cal. May 8, 2008). For example:

- Nos. 4 and 7 each seek information about two entirely different markets: the market for CDMA modem chips and the market for premium-LTE chips. A request that requires a separate response for each relevant market requires two distinct inquiries. *See, e.g.*, *In Re McWane, Inc.*, 2012 WL 2450564, at *2 (FTC May 17, 2012). Thus each of Nos. 4 and 7 contains at least two discrete subparts.
- No. 5 likewise seeks information on two different product markets, and requests multiple distinct categories of information about each, including: (i) the products included in each market, (ii) the market shares of each company selling in each market, and (iii) the time period during which Qualcomm had monopoly power. Each of these is an entirely distinct inquiry, thus No. 5, standing alone, contains (at least) six discrete subparts.[4]

Thus, Nos. 4, 5, and 7 contain seven (or more) additional discrete subparts, and no further addition is required to establish that Qualcomm exhausted its limit of interrogatories before it served Interrogatory Nos. 14 and 15. If further counting were necessary, at least Nos. 11 and 12 likewise contain additional discrete subparts. *See* ECF No. 434 at 5.

**B. Interrogatory Nos. 14 and 15 are Disproportionate**

The Court should strictly enforce the twenty-interrogatory limit, as Nos. 14 and 15 are unduly burdensome and disproportionate. No. 14 is a more granular re-tread of No. 6, which sought (among other things) the identity of licensees which "agreed to pay a higher royalty than the licensee otherwise would have agreed to pay" as a result of any Qualcomm threats or actions "regarding the supply of baseband processors." The FTC has already answered quite clearly: all of Qualcomm's licensees pay elevated royalties as a result of Qualcomm's threats. And the FTC even identified each relevant licensee for Qualcomm's convenience in the response, referring Qualcomm to a list of licensees Qualcomm itself generated.

No. 14 asks basically the same question in more granular terms, rephrasing subpart (a) to seek information on licensees which are "Cellular Device manufacturers," and adding subparts (b) (c) and (d) regarding the FTC's contentions, subpart (e) seeking "the amount of elevated royalties paid by each such licensee," and subpart (f) seeking "the identity of all documents that support your contention." *See* Ex. 1. Thus, No. 14 does not seek new "facts," as Qualcomm claims, because Qualcomm already knows which of its "Cellular Device manufacturer" licensees the FTC contends paid elevated royalties: all of them. And Qualcomm already knows which licensees the FTC identified in response to No. 6 are "Cellular Device manufacturers."

Nor do subparts (b) (c) and (d) seek "facts," instead they seek narrative explanations of the FTC's contentions. The FTC has already explained its contentions, at length, repeatedly, and in detail, including in response to Nos. 6 and 13.[5] Further exhaustive explications of how Qualcomm's threats played out in every single negotiation with a "Cellular Device manufacturer" would be disproportionate, and also improper because "a party is "not obligated to put forth its entire case in response to a single interrogatory." *S.E.C. v. Berry*, 2011 WL 2441706, at *4 (N.D. Cal. June 15, 2011). The answers the FTC has provided to Nos. 6 and 13 (among others) fully explain its contentions, just like the four-page narrative response that sufficed in *Berry* (*see supra* at note 2), and excessive granular detail would be disproportionate.

Moreover subparts (b) (c) and (d) seek explanations which are the province of experts. *Gorrell v. Sneath*, 2013 WL 4517909, at *6-7 (E.D. Cal. Aug. 26, 2013) ("[t]o the extent [a

---

[4] While the FTC believes that No. 5 should be counted as eight discrete subparts, *see* ECF No. 434 at 5, it will not repeat that argument here, as even a more conservative count suffices.

[5] These are not attached to avoid a motion to seal, but can be provided if convenient for the Court.

party] seeks *explanations* . . . such information is within the province of an expert who possesses such specialized knowledge.") (emphasis in original).

Subpart (e) also seeks premature expert discovery. Qualcomm suggests that the "amount of elevated royalties paid" is a "fact" not requiring expert analysis, but this is disingenuous, as Qualcomm concedes that it seeks the "quantum" by which royalties were "*elevated*" compared to the but-for world. This would obviously require a model of the royalty applicable in the but-for world, which would have to be constructed through expert testimony. Moreover, the fact that No. 14 implicates expert discovery demonstrates why it is disproportionate: Qualcomm will have the FTC's expert reports in short order, and forcing the FTC to create written discovery responses just prior to expert reports would burden the FTC without providing any value to Qualcomm.

Finally, subpart (f) is disproportionate, because as written it would appear to require the FTC to identify every document relevant to the outcome of negotiations between Qualcomm and its "device maker" licensees. That would be a long list indeed. Providing it would place an unjustified burden on the FTC, while providing no additional "facts" to Qualcomm.

Interrogatory No. 15 is likewise disproportionate. First, it purports to require the FTC to scour the discovery record to create an interpretation of vague and undefined terms (*e.g.*, "Apple's technical specifications" and "performance requirements"). The meaning of such terms presumably changed enormously over the six-year period for which information is sought, as Apple released numerous products, mostly with different performance capabilities. If information relevant to the meaning of Apple's changing "performance requirements" and other "specifications" is available within the discovery record, it is equally available to Qualcomm, and it would be disproportionate to require the FTC to create this information for Qualcomm's benefit. Moreover, No. 15 purports to require the FTC, after creating this information, to specify "all factual bases" relevant to whether other suppliers could have satisfied these requirements. Again, this information is equally available to Qualcomm, and asking the FTC to locate and compile it for Qualcomm would be disproportionate and unduly burdensome. *Haggarty v. Wells Fargo Bank, N.A.*, 2012 WL 4113341, at *2 (N.D. Cal. Sept. 18, 2012) ("While contention interrogatories are permitted, they are often overly broad and unduly burdensome when they require a party to state every fact or all facts supporting identified allegations or defenses.")

**C. The FTC Has Not Waived Objections to Interrogatory Nos. 16-20.**

Even if the Court concludes that Qualcomm did not exhaust its twenty interrogatory limit before serving No. 14, Qualcomm surely exhausted its limit prior to serving Nos. 16-20. No. 14 contains at least three discrete subparts, as subparts (a)-(d) (identity of licensees and explanation of negotiations) are discrete from subpart (e) (quantum by which the rate elevated) and (f) (identify documents). Thus, Qualcomm violated Rule 33 by serving Nos. 16-20.

Even if the FTC should have served explicit objections prior to March 30, good cause exists to excuse this failure, as the delay of a few days did not prejudice Qualcomm. Qualcomm's inapposite cited authority does not support a finding of waiver. *Starline* has nothing to do with timely objections to discovery requests.[6] *Richmark* is likewise inapposite: in that case the Court of Appeals held that a company that refused to provide any discovery for nearly a year could not raise a new issue when appealing a contempt finding, where it failed "to raise the issue before the district court as an objection to [the plaintiff's] discovery request, *or at the very least in response to the motion to compel*." 959 F.2d 1468, 1473.

---

[6] In *Starline*, the Court granted defendant's motion to compel for reasons that were not related to the (un)timeliness of an objection to the number of interrogatories. 2016 WL 4485561, *8. The Court's only comment about timeliness was that the objection was (apparently) not raised "with the Court" during a conference prior to the motion to compel. *Id.* at *1.

Respectfully submitted,

  s/ Jennifer Milici
Jennifer Milici, D.C. Bar No. 987096
jmilici@ftc.gov
Daniel Matheson, D.C. Bar No. 502490
dmatheson@ftc.gov
J. Alexander Ansaldo, Va. Bar No. 75870
jansaldo@ftc.gov
Joseph R. Baker, D.C. Bar No. 490802
jbaker@ftc.gov
Elizabeth A. Gillen, Ca. Bar No. 260667
egillen@ftc.gov
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
Tel: (202) 326-2912; Fax (202) 326-3496

Lin W. Kahn, Ca. Bar No. 261387
lkahn@ftc.gov
Federal Trade Commission
901 Market Street, Suite 570
San Francisco, CA 94103
Tel: (415) 848-5115; Fax: (415) 848-5184

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION


  s/ Gary A. Bornstein
CRAVATH, SWAINE & MOORE LLP
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven @cravath.com
825 Eighth Avenue
New York, NY 10019-7475
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

KEKER VAN NEST & PETERS LLP
Robert A. Van Nest
rvannest@keker.com
Asim M. Bhansali
abhansali@keker.com
Eugene M. Paige
epaige@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 676-2289
Facsimile: (415) 397-7188

MORGAN, LEWIS & BOCKIUS LLP
Richard S. Taffet (*pro hac vice*)
richard.taffet@morganlewis.com
101 Park Avenue
New York, NY 10178-0060
Telephone: (212) 309-0060
Facsimile: (212) 309-6001

MORGAN, LEWIS & BOCKIUS LLP
Donn P. Pickett (SBN 72257)
donn.pickett@morganlewis.com
Geoffrey T. Holtz (SBN 191370)
geoffrey.holtz@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000
Facsimile: (415) 442-1001

MORGAN, LEWIS & BOCKIUS LLP
Willard K. Tom
willard.tom@morganlewis.com
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2541
Telephone: (202) 739-3000
Facsimile: (202) 739-3001

Attorneys for Defendant
QUALCOMM INCORPORATED

**Filer's Attestation**

I, Gary A. Bornstein, am the ECF user whose identification and password are being used to file this Joint Discovery Statement. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that the signatories of this document have concurred in this filing.

    _s/ Gary A. Bornstein_____