# Exhibit 1

CRAVATH, SWAINE & MOORE LLP
Gary A. Bornstein (*pro hac vice*)
Yonatan Even (*pro hac vice*)
825 Eighth Avenue
New York, New York 10019-7475
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

KEKER, VAN NEST & PETERS LLP
Robert A. Van Nest (SBN 84065)
Asim M. Bhansali (SBN 194925)
Eugene M. Paige (SBN 202849)
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Defendant,
QUALCOMM INCORPORATED

MORGAN, LEWIS & BOCKIUS LLP
Richard S. Taffet (*pro hac vice*)
101 Park Avenue
New York, New York 10178-0060
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

MORGAN, LEWIS & BOCKIUS LLP
Willard K. Tom (*pro hac vice*)
1111 Pennsylvania Avenue NW
Washington, DC 20004-2541
Telephone: (202) 739-3000
Facsimile: (202) 739 3001

MORGAN, LEWIS & BOCKIUS LLP
Donn P. Pickett (SBN 72257)
Geoffrey T. Holtz (SBN 191370)
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000
Facsimile: (415) 442-1001

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION<br><br>Plaintiff,<br><br>v.<br><br>QUALCOMM INCORPORATED, a Delaware corporation,<br><br>Defendant. | No. 5:17-CV-00220-LHK<br><br>**DEFENDANT QUALCOMM INCORPORATED'S SECOND SET OF INTERROGATORIES** |

Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendant Qualcomm Incorporated hereby requests that Plaintiff answer the following interrogatories.

## INSTRUCTIONS

1. A party's full or abbreviated name or a pronoun referring to a party means the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

2. The wording of any interrogatory does not constitute an admission of what the facts or evidence will ultimately show.

3. The following rules of construction shall apply to all interrogatories:

    a) The use of a verb in any tense shall be construed as the use of that verb in all other tenses;

    b) the use of a word in its singular form shall be deemed to include within its use the plural form;

    c) the connectives "and" and "or" shall be construed either disjunctively or conjunctively, whichever makes the interrogatory, definition, or instruction more inclusive;

    d) the terms "any," and "each" shall be construed to encompass "all";

    e) the term "including" means "including but not limited to"; and,

    f) the use of the word "the" shall not be construed as limiting the scope of any interrogatory.

4. These interrogatories are to be considered continuing in nature, and Plaintiff must promptly furnish supplemental responses if any additional responsive information is discovered or created after Plaintiff's responses are tendered, or if any of Plaintiff's responses are subsequently determined to be incorrect, incomplete, or misleading in any respect.

# DEFINITIONS

Notwithstanding any definition below, each word, term, or phrase used in these interrogatories is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

A. The term "Apple" refers to Apple, Inc., with its principal place of business in Cupertino, California, United States, and its predecessors, successors, assigns and present and/or former affiliates and subsidiaries and any of its respective officers, directors, employees, agents, attorneys, representatives, or any other person acting or purporting to act on its behalf.

B. The term "Baseband Processor" means any component that, when embedded within or connected to a Cellular Device, is capable of performing modulation and/or demodulation functions in connection with any portion of any wireless cellular communications transmission.

C. The term "Cellular Communications Standard" means any wireless air interface standard that can be used in a wireless wide area communications network and that has been developed or adopted by a Standard-Setting Organization.

D. The term "Cellular Device" means any device capable of implementing, without any additional equipment or components being attached or connected thereto, wireless communications transmissions in accordance with any Cellular Communications Standard. Examples of Cellular Devices include, without limitation, cellular phones and cellular-enabled tablets.

E. The term "Complaint" means the Federal Trade Commission's Complaint for Equitable Relief, filed January 17, 2017, in the Action, and any subsequent amendments or alterations thereto.

F. The terms "FTC", "You", or "Your" mean the United States Federal Trade Commission, including its employees, agents, attorneys, consultants, representatives, and all other persons acting or purporting to act on its behalf.

G.     The term "License" means authorization by a Patent holder to practice a claimed invention in whole or in part, including but not limited to covenants not to assert or to delay the assertion of any Patent.

H.     The term "Patent" means any patent issued in any jurisdiction.

I.     The term "Qualcomm" refers to Qualcomm Incorporated with its principal place of business in San Diego, California, United States, and its predecessors, successors, assigns and present and/or former affiliates and subsidiaries, and any of its respective officers, directors, employees, agents, attorneys, representatives, or any other person acting or purporting to act on its behalf.

J.     The term "Standard-Setting Organization" or "SSO" means any organization, group, joint venture, or consortium that develops standards for the design, performance, or other characteristics of cellular products or other technologies, including but not limited to the following organizations and their Related Persons: the 3rd Generation Partnership Project("3GPP"); the Third Generation Partnership Project 2 ("3GPP2"); the American National Standards Institute ("ANSI"); the Association of Radio Industries and Businesses ("ARIB"); the Alliance for Telecommunications Industry Solutions ("ATIS"); the China Communications Standards Association ("CCSA"); the European Telecommunications Standards Institute ("ETSI"); the Institute of Electrical and Electronics Engineers, Inc., and the Institute of Electrical and Electronics Engineers Standards Association ("IEEE"); the International Telecommunication Unit's Telecommunication Standardization Sector including the World Telecommunication Standardization Assembly and the Telecommunication Standardization Advisory Group ("ITU"); the Telecommunications Industry Association; the Telecommunications Standards Development Society, India ("TSDSI"); the Telecommunications Technology Association ("TTA"); and the Telecommunication Technology Committee ("TTC"); and each of their respective boards, societies, technical committees, special committees, including user groups, working groups, task groups, sponsor ballot or balloting groups, projects, councils, subcommittees, directors, officers, trustees, employees, attorneys, agents, consultants, representatives, predecessors, successors,

divisions, subsidiaries, affiliates, partnerships, and joint ventures, and the directors, officers, trustees, employees, attorneys, agents, consultants and representatives of its predecessors, successors, divisions, subsidiaries, affiliates, partnerships, and joint venture.

# INTERROGATORIES

**INTERROGATORY NO. 14:**

If You contend that any Cellular Device manufacturer who was never before licensed to Qualcomm's Patents agreed to pay "elevated royalties"– as that term is used in Paragraph 4 of Your Complaint – upon entering into a License with Qualcomm, then specify all legal and factual bases for Your contention, including:

(a) The identity of any such Cellular Device manufacturer;

(b) The reasons each such Cellular Device manufacturer was unable to negotiate a License with Qualcomm that did not require payment of "elevated royalties";

(c) Whether and how each such Cellular Device manufacturer was coerced or threatened into agreeing to such "elevated royalties";

(d) Whether and how each such Cellular Device manufacturer faced any increased costs from a potential challenge to any of the terms of any of their Licenses with Qualcomm, as referenced in Paragraphs 78 and 79 of Your Complaint;

(e) The amount of elevated royalties paid by each such licensee; and

(f) The identity of all documents that support your contention.

**INTERROGATORY NO. 15:**

If You contend that from 2011 through 2016, any Baseband Processor from a supplier other than Qualcomm could have satisfied Apple's technical specifications, supply scheduling requirements, and performance requirements for the iPhones or iPads first sold during that period of time, then specify all factual bases for Your contention.

Dated: February 6, 2018

Gary A. Bornstein
Yonatan Even
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
Telephone: (212) 474-1000

Robert A. Van Nest
Asim M. Bhansali

Eugene M. Paige
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  (415) 391-5400
Facsimile:   (415) 397-7188
rvannest@kvn.com
abhansali@kvn.com
epaige@kvn.com

Richard S. Taffet
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY  10178-0060
Telephone: (212) 309-6000

Willard K. Tom
MORGAN LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Telephone: (202) 739-3001

Donn P. Pickett
Geoffrey T. Holtz
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA  94105-1596
Telephone: (415) 442-1000

*Attorneys for Qualcomm Incorporated*