Jennifer Milici, D.C. Bar No. 987096
Daniel Matheson, D.C. Bar No. 502490
J. Alexander Ansaldo, Va. Bar No. 75870
Joseph R. Baker, D.C. Bar No. 490802
Elizabeth A. Gillen, Ca. Bar No. 260667
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
Tel: (202) 326-2912; Fax (202) 326-3496
*jmilici@ftc.gov*

Lin W. Kahn, Ca. Bar No. 261387
Federal Trade Commission
901 Market Street, Suite 570
San Francisco, CA 94103
Tel: (415) 848-5115; Fax: (415) 848-5184
*lkahn@ftc.gov*

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

CRAVATH, SWAINE & MOORE LLP
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven @cravath.com
825 Eighth Avenue
New York, NY 10019-7475
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

KEKER VAN NEST & PETERS LLP
Robert A. Van Nest
rvannest@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 676-2289
Facsimile: (415) 397-7188

MORGAN, LEWIS & BOCKIUS LLP
Richard S. Taffet (*pro hac vice*)
richard.taffet@morganlewis.com
101 Park Avenue
New York, NY 10178-0060
Telephone: (212) 309-0060
Facsimile: (212) 309-6001

MORGAN, LEWIS & BOCKIUS LLP
Donn P. Pickett (SBN 72257)
Donn.pickett@morganlewis.com
Geoffrey T. Holtz (SBN 191370)
Geoffrey.holtz@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000
Facsimile: (415) 442-1001

Attorneys for Defendant
QUALCOMM INCORPORATED

*Additional Counsel listed on the Signature Page*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>        Plaintiff,<br>   v.<br><br>QUALCOMM INCORPORATED,<br>a Delaware corporation,<br><br>        Defendant | Case No. 5:17-cv-00220-LHK-NMC<br><br>**PLAINTIFF FEDERAL TRADE COMMISSION AND DEFENDANT QUALCOMM INCORPORATED'S JOINT DISCOVERY STATEMENT REGARDING ASSERTION OF PRIVILEGE**<br><br>Magistrate Judge:<br>Hon. Nathaniel M. Cousins |

Plaintiff Federal Trade Commission ("FTC") and Defendant Qualcomm Incorporated ("Qualcomm") hereby submit this joint statement. The parties have met and conferred by telephone, but have been unable to reach agreement on the issues addressed herein.

I.     **The FTC's Position**

This dispute arises out of Qualcomm's assertion of privilege over a database of certain metrics Qualcomm uses to classify the perceived technical merit and relative values of intellectual property. These metrics, referred to as "ratings," are used by business personnel to make business decisions: for example, the data sought by this motion is presented to Qualcomm's Chief Technology Officer during periodic meetings held to evaluate research and development projects, and the data is considered by Qualcomm executives in connection with intellectual property acquisitions and corporate restructuring organization proposals. *See infra*.

Qualcomm cannot carry its burden of showing that this data is privileged, because disclosing the data would not reveal the content of a confidential communication between an attorney and her client. Data relevant to the value of a business's assets, which is accessed for business purposes, cannot be withheld on the grounds that the same data is used by lawyers to render legal advice. Nor can it be withheld based on an assertion that the valuation is influenced in part by legal advice. A contrary result would flout controlling precedent and allow businesses to conduct their affairs in secret: a company's view of the value and boundaries of its real estate assets would be secret if based in part on a lawyer's view regarding clarity of title or liability for environmental damage; and a company's assessment of the strength and scope of intellectual property would be secret if based in part on a lawyer's view regarding the likely outcome of patent proceedings or future litigation. This would contradict the maxim that the attorney-client privilege "ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle.'" *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009).

   A.     **Qualcomm's Patent Ratings Data Are Based on an Idea's "Technical Merit" and Used for Non-Privileged Business Purposes**

Qualcomm Senior Vice President Baaziz Achour explained at his deposition that patent ratings are assigned to an "idea" before it may become the subject of a patent application, and that ratings are assigned by one of many "Patent Review Boards" based on the idea's perceived "technical merit." Achour Dep. Tr. at 425:13-18.[1] Each "Patent Review Board" consists of technology experts who are familiar with a particular technology area to which the "idea" pertains. *Id*. at 419:10-18, 420:7-13, 421:6-10, 423:14-20. The ratings are driven by *technical merit*, not legal analyses. *Id*. at 425:13-18. That the ratings are technology-centric is confirmed by Qualcomm's formation of multiple, different Patent Review Boards across different technical areas of Qualcomm's engineering operations (*e.g.*, the modem group). *Id*. at 417:2-9, 418:13-16.

Sworn testimony and documentary evidence shows the database containing ratings data is available for – and used by – various executives within Qualcomm's management team. *E.g.*, Achour Dep. Tr. at 411:19-412:13, 412:25-413:5, 414:2-8; Martin Dep. Tr. at 558:6-11, 60:20-61:6, 94:19-95:14; Q2014FTC04774115 at 1-2 (Qualcomm's CTO, Mr. Grob, when asked "Do we have fundamental/killer IPR in 802.11 vs other key players[,]" responded "best to ask patent group / Roger Martin those questions – *they have the compilation of data like that*") (emphasis added). Qualcomm has not established that the primary purpose for which these executives use this information relates to legal advice. To the contrary, the evidence shows the rating information in the database is used for business purposes.

Specifically, Qualcomm's Strategic IP Department ("Strat IP") created the ratings in part for use by Qualcomm's licensing business unit ("QTL"). Martin Dep. Tr. at 37:14-17; *see also id.* at 65:5-8, 86:15-19. QTL uses the ratings to assess ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[1] The FTC is happy to provide the deposition transcripts and documents cited herein upon request.

1

Hence, these ratings and metrics are business tools, and are fairly discoverable.[2]

Qualcomm's use of ratings data in this context precisely aligns with *TCL Communication Technology Holdings Ltd. v. Telefonaktenbologet LM Ericsson*, No. 14–cv–341, 2016 WL 6921124 (C.D. Cal. May 3, 2016), in which the Court ordered Ericsson to provide discovery on the "Relevancy Rankings" of its standard-essential patents. Just like Qualcomm, Ericsson argued that in-house attorneys had a primary role in assigning the ratings and that the ratings aided in patent prosecution efforts.[3] *TCL*, 2016 WL 6921124, at *2; *see also* Ex. 1 (*TCL* Magistrate Judge Order) at 4. But the Court rejected this argument, because the Relevancy Rankings contained "information that [is] used for management purposes," including "how [Ericsson] value[s] the different patents" and "this value is intended to govern future investments in those patents." Ex. 1 at 3. Inevitably, how Ericsson valued the different patents incorporated its attorneys' views on patent validity and enforceability, but that happenstance could not protect the Relevancy Rankings, because the Court concluded "that the primary purpose of the [Relevancy Rankings] is not legal advice." *Id.*; *see also TCL*, 2016 WL 6921124, at *3.

This Court should reach the same conclusion. Just as in *TCL v. Ericsson*, the rating system developed by Strat IP is a tool used for business purposes. For example, QTL's 2012 strategic plan noted that "Strat IP work has put us in a better position to make informed decisions about acquisitions." Q2014FTC01517586 at 10-11. Qualcomm argues that Mr. Martin and other attorneys within Strat IP do not formulate views on patent monetization. But that is precisely the point: Strat IP creates an assessment based on an idea's technical merit and commercial importance, and QTL uses that data to make business decisions.

Accordingly, even if Qualcomm's ratings and metrics were solely used to identify the highest value intellectual property, the ratings still would not constitute legal advice. *See SanDisk Corp. v. Round Rock Research*, No. 11–cv–5243, 2014 WL 691565, at *3 (N.D. Cal. Feb. 21, 2014) (holding IP valuation documents not privileged where purpose was to analyze a potential licensing target, not primarily legal advice). Nor does the fact that *one* use of the ratings is to inform legal decisions transform the ratings into legal advice. *Cf. United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (appraisal for an IRS submission not privileged where it was made "for the purpose of determining the value of the Easement").

### B. Qualcomm Cannot Withhold Its Patent Ratings and Metrics Because Qualcomm Intends to Offer Evidence of the Value of Its Patents at Trial

Qualcomm's Rule 26 Disclosures make clear that Qualcomm intends to offer evidence at trial that Qualcomm's royalty rates are reasonable in light of the value of Qualcomm's contributions to cellular technologies, listing multiple Qualcomm witnesses who may testify on this topic. Qualcomm witnesses have indeed testified that Qualcomm has made valuable

---

[2] Qualcomm argues that the FTC has not shown these ratings were primarily used for business purposes. But it is *Qualcomm's* burden to show that the primary purpose of the ratings was legal advice. *TCL*, 2016 WL 6921124, at *5. Qualcomm has not done so. At best, the evidence is conflicting. *Compare* Q2014FTC04774115 at 1-2 (noting the patent group maintains data to compare IPR to competitors) *with infra* note 6 (citing attorney declaration stating the data is not used for such purposes). Furthermore, Qualcomm claims privilege over the potentially relevant evidence. *See, e.g.*, Mar. 28, 2018 Ltr. from James Carlson (clawing back QNDCAL04937515 to redact a discussion about Samsung's "IP strength").

[3] Here, Qualcomm cites declarations and an interrogatory response making similar statements regarding how the assessments are used for patent prosecution and litigation strategies. *See infra.*

contributions to such technologies, which are monetized in the form of Intellectual Property Rights ("IPR"). *See* Grob Dep. Tr. at 150:8-151:17 (testifying Qualcomm has an "extensive portfolio of IP that relates to LTE" and that Qualcomm's IP has "value" and is "high quality").

        In order to probe the bases for these claims, the FTC needs access to the data relied on by Qualcomm's business personnel to make business decisions related to the technical merits of its intellectual property. The Court has not "previously addressed" this issue: the only issue presented to the Court in connection with Mr. Martin's Declaration (ECF No. 279) was one slide that Mr. Martin insisted was "prepared at the request of" Qualcomm's General Counsel "so that he could provide legal advice." ECF No. 279 at 1. The Court had no occasion to consider the privilege status of the underlying data relied on by Qualcomm's business executives.[4]

        Accordingly, the FTC asks that Qualcomm immediately produce the contents of its patent rating database, and any related documents concerning its patent-related ratings and metrics which Qualcomm has withheld. In addition, Qualcomm should be ordered not to instruct witnesses to refuse to answer related questions during depositions, and Qualcomm should reproduce witnesses who have refused to answer questions on this topic at past depositions.

## II.   Qualcomm's Position

### A.   The Patent Ratings Reflect Attorneys' Judgments and Are Used for Legal Purposes.

The FTC's argument that Qualcomm's patent ratings are not privileged is based on at least two significantly erroneous premises: (1) that Qualcomm's internal patent ratings are created by non-legal personnel and reflect "technical" rather than legal judgments, and (2) that the patent ratings are primarily used for business purposes. The FTC's motion disregards extensive evidence contradicting these premises, including a verified interrogatory response and sworn declarations by two Qualcomm IP lawyers who have overseen its patent ratings systems. Instead, the FTC relies on deposition testimony of a witness who disclaimed personal knowledge of the relevant facts and on mischaracterizations of Qualcomm documents. Both of the FTC's premises are wrong, and the ratings are privileged.

*First*, the patent ratings assigned to Qualcomm's patents and patent applications (whether as color codes or numerical) are assigned by IP lawyers and reflect legal analyses. As Roger Martin, Qualcomm's then Chief IP Strategist, explained in the declaration he submitted in connection with a prior FTC motion opposing the clawback of an analysis reflecting Qualcomm's patent ratings, Qualcomm IP attorneys assigned "color" ratings to patents or patent applications based on ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Qualcomm attorneys also have assigned numerical ratings to patents; a subset of those numerical ratings was determined by Qualcomm's *outside* counsel, whereas the remainder were determined by Qualcomm attorneys in its IP Department. (Resp. to Interrogatory No. 2 at 13-16 ("Resp. No. 2").) And although the criteria used to rate patents has evolved, those criteria themselves were developed by Qualcomm IP attorneys to accomplish legal purposes. (*Id.*)

---

[4] Qualcomm implies the Southern District of California has ruled that this data is not used to value patents (and is therefore privileged). In fact, however, that court held only that the data was not called for by Apple's interrogatories, and *specifically declined* to rule on whether the data was protected by privilege. Order (ECF No. 381), No. 17-cv-00108 (S.D. Cal. Mar. 20, 2018) ("[T]he Court will not rule on whether the rating system properly is the subject of attorney-client privilege or work-product protection.").

The FTC's reference to Qualcomm's Patent Review Boards ("PRBs") is a red herring. The PRBs *do not* determine patent ratings. Attorneys in Qualcomm's IP Department convene and chair the PRBs, which are designed to provide those attorneys with information to inform their legal decisions concerning patent prosecution. (Wadrzyk Decl. at ¶¶3-8.) To erroneously claim that PRBs assign patent ratings based on an invention's "technical merit" instead of legal analyses, the FTC relies exclusively on testimony by Dr. Baaziz Achour, an engineer who leads Qualcomm's modem development efforts, but who takes no part in PRBs or in patent ratings. Indeed, Dr. Achour repeatedly testified that he was not involved in rating patents, did not even know what his own patents had been rated, did not know who the members of the PRBs are, and had not so much as interacted with any PRB in "15 years". (Achour Tr. at 411:7-18; 415:7-11; 416:16-23; 420:17-22.) In any event, it is well-settled that technical discussions with lawyers concerning patent and patentability issues, like those that occur in connection with the PRBs, are privileged. *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed Cir. 2000); *Games2U, Inc., v. Game Truck Lic., LLC*, 2013 WL 4046655, *3 (D. Ariz. Aug. 9, 2013); *see also California Inst. of Tech. v. Broadcom Ltd.*, No. CV 16-3714-GW (AGRX), 2018 WL 1468371, at *3 (C.D. Cal. Mar. 19, 2018) ("The fact that attorneys on [a Patent Review Committee] required engineers or technical experts to assist them in evaluating the invention for purposes of determining whether to pursue a patent does not disqualify [a submission to the Committee] from being covered by the attorney client privilege.").

*Second*, the evidence demonstrates that ratings are primarily used for legal purposes: to develop patent prosecution and litigation strategies, including to assess the suitability of patents for assertion in litigation. (*E.g.*, Resp. No. 2 at 12-13, 15; ECF No. 279 at 7; Wadryzk Decl. at 3-5, 8.) The FTC's assertion that the evidence on this issue is "at best, conflicting" is based on mischaracterizations of the documents and testimony it cites. For example, the cited testimony by Mr. Martin shows that members of the IP Department, not Qualcomm's management team, can access the database containing information about Qualcomm's patents; and that only on certain occasions has he provided ratings-related information to QTL. (Martin Tr. at 37:3-18; 61:4-6; 94:9-95:14.) Importantly, no QTL witness has suggested that ratings were used in license negotiations, and, contrary to the FTC's assertion, the ratings are not an attempt to "monetize" Qualcomm's patent portfolio. (*Id.* at 36:14-20 ("I haven't spent any time trying to think about relationships between color codes and monetary value to Qualcomm."); *see also* Resp. No. 2 at 16; Wadrzyk Decl. at ¶ 10.)[5] Finally, the FTC suggests that ratings are used at R&D meetings "to evaluate research and development projects", but the cited testimony by Dr. Achour was only that ratings were "sometimes mention[ed]" at those meetings. (Achour Tr. at 411:19-412:9.) That does not a primary purpose make. Even if legal advice may assist the evaluation of a potential business transaction, like an acquisition or a corporate restructuring,

---

[5] The FTC refers to several documents *generally* concerning the IP Department, but none of the cited documents, including the clawed-back document the FTC refers to, concern patent ratings, and ratings are *not* used to compare Qualcomm's portfolio to others' (Wadzryk Decl. ¶ 9). Qualcomm does not claim that *all* of the IP Department's documents are privileged, and has in fact produced responsive, non-privileged IP Department materials. The issue here is limited to a specific set of information—the patent ratings—and the documents cited by the FTC do not relate to them. The FTC's suggestion that Qualcomm "claims privilege over the potentially relevant evidence" is wrong; Qualcomm has provided extensive information concerning the nature and purposes of the ratings. Qualcomm will provide any of the documents to the Court upon request.

"advice on transactional matters" is "just the sort of lawyerly thing one would expect of an in-house lawyer". *Exxon Mobil Corp. v. Hill*, 751 F.3d 379, 382 (5th Cir. 2014).

The *TCL* decision, relied upon by the FTC, confirms that Qualcomm's patent ratings are privileged. In *TCL*, unlike in this case, Ericsson's witnesses testified that its ratings were "used for management purposes, such as how we value the different patents". (Ex. 1 at 3.) Further, Ericsson refused to provide *any* information concerning "what factors influence" its ratings. The court therefore was unable to conclude that the ratings reflected Ericsson attorneys' legal judgments or served primarily a legal purpose. (Ex. 1 at 4.) Here, Qualcomm has offered two declarations and an extensive interrogatory response establishing the legal purpose and content of the patent ratings.[6] The FTC simply chooses to disregard such evidence.

> B. **Qualcomm Does Not Rely on the Privileged Ratings in This Litigation.**

Privilege is not waived unless a party places the privileged information itself at issue. *Rock River Comms. v. Universal Music Group*, 745 F.3d 343, 353-54 (9th Cir. 2014); *Dukes v. Wal-Mart Stores, Inc.*, No. 01-cv-2252 CRB (JSC), 2013 WL 1282892, at *6 (N.D. Cal. Mar. 26, 2013). Here, Qualcomm does not intend to offer any evidence based on its patent ratings. Although Qualcomm intends to offer evidence concerning its contributions to cellular technologies, such evidence will be based on witnesses' own expertise or knowledge, not on privileged patent ratings. (*E.g.,* Grob Tr. at 153:11-13.) Further, the patent ratings do not assess the monetary value of Qualcomm's inventions. Indeed, in the coordinated action in the Southern District, Apple moved to compel Qualcomm to respond to interrogatories asking Qualcomm to describe the value it attributes to its patents. Although the Court did not reach the privilege issue, Magistrate Judge Dembin denied Apple's request for patent ratings, concluding: "The Court is not persuaded that Qualcomm's internal patent rating system, as discussed in this motion, values the patents within the meaning of these interrogatories." (No. 17-cv-0108, ECF 381 at 3 (S.D. Cal.).)

> C. **The FTC's Renewed Attempt To Obtain Qualcomm's Privileged Patent Ratings Should Be Denied.**

Finally, this Court has previously addressed, and rejected, the FTC's arguments regarding analyses by Qualcomm lawyers of Qualcomm's patent portfolio. On October 30, 2017, the FTC moved to oppose Qualcomm's clawback of an analysis by Mr. Martin that was based on Qualcomm's patent ratings. (ECF No. 249.) Mr. Martin explained in a declaration that the patent ratings summarized in the clawed-back document ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ This Court was "persuaded by Qualcomm's assertion of the attorney-client privilege" and denied the FTC's motion on November 13, 2017. (ECF No. 290.) The FTC appealed this Court's ruling (ECF No. 334), and that appeal was denied (ECF No. 456). The FTC's renewed attempt to seek discovery of Qualcomm's privileged patent ratings should likewise be denied. The FTC has not sought or obtained leave to move for reconsideration of the Court's prior order. (*See* Civil L.R. 7-9.) And, as described above, the discovery record in this case confirms that Qualcomm's patent ratings are privileged.

//

---

[6] In *SanDisk Corp.*, the documents at issue did "not contain any legal advice". *SanDisk Corp.*, 2014 WL 691565, at *3 (N.D. Cal. Feb. 21, 2014).

Respectfully submitted,

*/s/ Jennifer Milici*
Jennifer Milici, D.C. Bar No. 987096
jmilici@ftc.gov
Daniel Matheson, D.C. Bar No. 502490
dmatheson@ftc.gov
J. Alexander Ansaldo, Va. Bar No. 75870
jansaldo@ftc.gov
Joseph R. Baker, D.C. Bar No. 490802
jbaker@ftc.gov
Elizabeth A. Gillen, Ca. Bar No. 260667
egillen@ftc.gov
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
Tel: (202) 326-2912; Fax (202) 326-3496

Lin W. Kahn, Ca. Bar No. 261387
lkahn@ftc.gov
Federal Trade Commission
901 Market Street, Suite 570
San Francisco, CA 94103
Tel: (415) 848-5115; Fax: (415) 848-5184

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

*/s/ Gary Bornstein*
CRAVATH, SWAINE & MOORE LLP
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven @cravath.com
825 Eighth Avenue
New York, NY 10019-7475
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

KEKER VAN NEST & PETERS LLP
Robert A. Van Nest
rvannest@keker.com
Asim M. Bhansali
abhansali@keker.com
Eugene M. Paige
epaige@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 676-2289
Facsimile: (415) 397-7188

6

MORGAN, LEWIS & BOCKIUS LLP
Richard S. Taffet (*pro hac vice*)
richard.taffet@morganlewis.com
101 Park Avenue
New York, NY 10178-0060
Telephone: (212) 309-0060
Facsimile: (212) 309-6001

MORGAN, LEWIS & BOCKIUS LLP
Donn P. Pickett (SBN 72257)
donn.pickett@morganlewis.com
Geoffrey T. Holtz (SBN 191370)
geoffrey.holtz@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000
Facsimile: (415) 442-1001

MORGAN, LEWIS & BOCKIUS LLP
Willard K. Tom
willard.tom@morganlewis.com
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2541
Telephone: (202) 739-3000
Facsimile: (202) 739-3001

Attorneys for Defendant
QUALCOMM INCORPORATED

**FILER'S ATTESTATION**

I, Gary A. Bornstein, am the ECF user whose identification and password are being used to file this Joint Discovery Statement. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that the signatories of this document have concurred in this filing.

                                                                */s/ Gary A. Bornstein*

                                                                Gary A. Bornstein