1    *Counsel Listed on Signature Page*

2

3

4

5

6

7

8

9

10

11

12           **UNITED STATES DISTRICT COURT**
          **NORTHERN DISTRICT OF CALIFORNIA**

13           **SAN JOSE DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>         Plaintiff,<br><br>         vs.<br><br>QUALCOMM INCORPORATED, a Delaware corporation,<br><br>         Defendant. | Case No. 5:17-cv-00220-LHK-NMC<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>DATE:     April 24, 2018<br>TIME:     2:00 PM PST<br>CTRM:   Courtroom 8<br>JUDGE:  Hon. Lucy H. Koh |
| IN RE QUALCOMM ANTITRUST LITIGATION | Case No. 5:17-MD-02773-LHK-NMC |

28

Pursuant to the Court's April 6, 2018 Case Management Order (ECF No. 678), Plaintiff Federal Trade Commission (the "FTC") and the MDL Plaintiffs (collectively, "Plaintiffs") and Defendant Qualcomm Incorporated ("Qualcomm") (collectively, the "Parties") have met and conferred and hereby submit this Joint Case Management Statement.

## I.  MOTIONS

Since filing the April 3, 2018 Case Management Statement (ECF No. 672), the Parties have engaged in the following motion practice:

### A.  FTC's Dispute with Qualcomm Regarding Qualcomm's Assertions of Privilege

On April 5, 2018, the FTC and Qualcomm submitted a joint discovery statement in which the FTC moved to compel Qualcomm's production of documents regarding its patent ratings and metrics.  (ECF No. 673.)  Judge Cousins denied the FTC's motion to compel. (ECF No. 691.) The FTC states that it is determining whether to seek review of Judge Cousins's ruling.

### B.  Qualcomm's Dispute with the FTC Regarding the FTC's Interrogatory Responses

On April 12, 2018, the FTC and Qualcomm submitted a joint discovery statement in which Qualcomm moved to compel the FTC's responses to Qualcomm's Interrogatories 14-20. (ECF No. 682.)  The FTC had objected to Interrogatories 14 and 15 on the grounds that they were disproportionate and sought premature expert discovery and based on the FTC's contention that Qualcomm had exceeded the limit of 20 interrogatories set by this Court's April 19, 2017 Case Management Order (ECF No. 75.)  The FTC did not serve any objections or responses to Interrogatories 16-20 within the 30-day deadline, stating that Qualcomm had exceeded the 20-interrogatory limit.  Judge Cousins found that Interrogatories 14 and 15 were "a little bit cumulative to [Interrogatories] 6 and 13," but that "they're also a little bit different. So I am order them – I'm ordering them to be answered" by the same day on which the FTC serves its opening expert reports.  Judge Cousins further found that the FTC had not waived its objections to

1   Interrogatories 16-20,[1] but nonetheless granted Qualcomm's motion to compel with respect to

2   Interrogatories 18 and 19, ordering the FTC to provide responses to those Interrogatories by April

3   25, 2018.  Judge Cousins denied Qualcomm's motion with respect to Interrogatories 16, 17, and

4   20, finding that they were "cumulative and not proportional" to the needs of the case.[2]  (*Id.*)

5   **II.   PARTY DISCOVERY**

6       **A.   Written Discovery**

7       The Parties have not served any new requests for written discovery since the April 3, 2018

8   Case Management Statement.  (ECF No. 672.)

9       *MDL Plaintiffs' Position*

10      The parties are meeting and conferring regarding Qualcomm's responses to MDL

11  Plaintiffs' Third Set of Interrogatories.  Qualcomm failed to serve its Third Set of Interrogatories

12  to MDL Plaintiffs in accordance with the parties' agreement.  However, MDL Plaintiffs agreed to

13  respond to the Interrogatories by April 30, 2018.

14      *Qualcomm's Position*

15      On April 5, 2018, MDL Plaintiffs asked Qualcomm to meet and confer regarding

16  Qualcomm's responses to Plaintiffs' Third Set of Interrogatories.  Qualcomm responded the next

17  day with its availability the following week.  Plaintiffs did not respond or otherwise follow up

18  until today, when they asked what times Qualcomm could meet and confer this week.

19      Qualcomm served its Third Set of Interrogatories to MDL Plaintiffs on February 28, 2018.

20  Plaintiffs stated that they would respond to those Interrogatories by April 30.

21      **B.   Qualcomm's Re-Review and Production of Documents Pursuant to Judge**

22          **Cousins' March 30, 2018 Order**

23      On April 11, 2018, Qualcomm completed re-review of approximately 4,200 documents

24  previously withheld or redacted from the files of Dr. Paul Jacobs, pursuant to the first re-review

25

26  [1] 4/18/2018 Hr'g Tr. 21:10-15, 23:13-15.

27  [2] *Id*. 23:19-20.

28
                        JOINT CASE MANAGEMENT STATEMENT
                        Case No. 5:17-cv-00220-LHK-NMC
                        and 5:17-md-02773-LHK-NMC

1    deadline set by Judge Cousins on March 30, 2018.[3]  Qualcomm has approximately 105,000

2    documents remaining to re-review.  (ECF No. 688 at 2).  Roughly 51,000 of those documents

3    were authored, sent, or received by Mr. Aberle (*id.* at 3), and the results of the re-review of Mr.

4    Aberle's documents will be provided to Plaintiffs on May 2 pursuant to this Court's April 6, 2018

5    order.  (ECF No. 678.)[4]

6       *Plaintiffs' Position*[5]

7       The results of Qualcomm's review of ~4,200 documents related to Dr. Jacobs are:

8    •   Qualcomm produced 61.9% of the documents previously withheld in their entirety

9        (1,438 of 2,323 withheld documents);[6]

10   •   Of the previously redacted documents, Qualcomm eliminated or reduced redactions

11       for approximately 38.4% (749 of 1,946 redacted documents).[7]

12      These results confirm that Qualcomm has systematically advanced unsupportable privilege

13   claims over thousands of documents from its top executives, many of whom are key trial

14   witnesses.

15

16   [3] On March 30, 2018, Judge Cousins ordered Qualcomm to re-review by July 1, 2018, all
     redacted and withheld documents involving ten employees selected by Plaintiffs, excluding only
17   "(1) documents involving outside counsel as an author, sender, or recipient; (2) privilege log
     entries that identify a specific litigation or investigation; (3) documents Qualcomm has already re-
18   reviewed; (4) documents that consist only of communications between Qualcomm in-house
     counsel without any involvement of Qualcomm business executives."  (ECF Nos. 653 at 1-2, 664
19   at 2).  Judge Cousins ordered the parties to submit status reports on April 16, May 16, June 18
     and July 16, 2018, as to the progress of the privilege re-review.  (ECF No. 664 at 2.)  In each of
20   these reports, MDL Plaintiffs and the FTC "may request in camera review of up to 50 document
     families," provided that they have first met and conferred with Qualcomm about those document
21   families.  (*Id.*)
     [4] Judge Cousins granted Qualcomm's request to waive an April 25 interim production deadline
22   (ECF No. 692).  Plaintiffs did not oppose this request based on an agreement between the parties.
     [5] In its section below, Qualcomm asserts facts about Apple's privilege log and review as a "point
23   of reference."  Apple is not a party to this filing and has not had an opportunity to review or
24   respond to these assertions.
     [6] *See* ECF No. 688 at 4 (calculations based on statistics provided by Qualcomm in ECF No. 688).
25   Qualcomm provided more specific log entries for the remainder (885 documents) pursuant to
     Judge Cousins' Order.
26   [7] *See id.*

27

28

1    On April 16, 2018, the Parties submitted a Joint Status Report regarding the progress of

2  Qualcomm's re-review to Judge Cousins.  (ECF No. 688.)  The Re-Review Order provides that in

3  each status report, Plaintiffs "may collectively request *in camera* review for up to 50 document

4  families. "  (MDL ECF No. 427.)  On April 16, 2018, Plaintiffs identified to Qualcomm eight log

5  entries from the April 11 re-review production that Plaintiffs contend, when considered along

6  with the non-redacted content of the redacted documents, fail to support a privilege assertion.

7  During a meet and confer on April 16, 2018 following that identification, Plaintiffs offered to

8  discuss the log entries on a subsequent phone call that day after Qualcomm had additional time to

9  review the entries.  Qualcomm never attempted to schedule an additional call to discuss the

10  identified entries.  Plaintiffs requested that Judge Cousins review those identified documents *in*

11  *camera*.  (ECF No. 688 at 5-6.)  Judge Cousins has set a discovery status hearing for May 2, 2018

12  to address any remaining issues related to Qualcomm's April 11 production.  (ECF No. 692.)

13          *Qualcomm's Position*

14          Qualcomm continues the process of re-reviewing documents pursuant to Judge Cousins's

15  Order Regarding Privilege Re-Review for Qualcomm and Apple.  (MDL ECF 427.)  Qualcomm

16  is devoting enormous attorney resources to the re-review process in order to meet the deadlines

17  set by the Court.  Because almost 50% of the total documents involve Mr. Aberle, Qualcomm's

18  re-review will be heavily concentrated at the beginning of the re-review period.  (ECF No. 664.)

19          On April 16, 2018, the Parties submitted a Joint Status Report regarding the progress of

20  Qualcomm's re-review to Judge Cousins.  (ECF No. 688.)  The Re-Review Order provides that in

21  each status report, Plaintiffs "may collectively request *in camera* review for up to 50 document

22  families.  The status report must certify that counsel for the parties have met and conferred in

23  person or by phone in an effort to resolve the privilege disputes for any document submitted *in*

24  *camera*."  (MDL ECF No. 427.)  To make this certification, Qualcomm requested that Plaintiffs

25  identify any documents they intended to submit for *in camera* review by the end of the day on

26  Friday, April 13.  (ECF No. 688 at 2.)  Plaintiffs responded that "there is no further conversation

27  to be had.  We will identify 50 of those documents and there will be a dispute about those

28

JOINT CASE MANAGEMENT STATEMENT
Case No. 5:17-cv-00220-LHK-NMC
and 5:17-md-02773-LHK-NMC

1    documents." While the Parties did have a phone conversation on the afternoon of April 16 (the

2    day the Joint Status Report was due to the Court), Plaintiffs did not provide Qualcomm with a list

3    of *in camera* documents until minutes before the call. (ECF No. 688 at 2.) Because Plaintiffs did

4    not identify the documents they intended to propose for *in camera* review meaningfully in

5    advance of the meet and confer call and the subsequent filing of the joint report to the Court, the

6    parties were unable to meet and confer in any meaningful way regarding the *in camera*

7    documents. (ECF No. 688 at 5-6.)

8         In its first production pursuant to the Re-Review Order, Qualcomm produced certain

9    previously withheld or redacted documents involving Dr. Paul Jacobs with reduced or no

10   redactions. (ECF No. 688 at 1.) The numbers Plaintiffs provide above overstate the extent to

11   which Qualcomm has "reversed" privilege calls because they include documents that remain

12   privileged in part, but where Qualcomm unredacted other portions of the document, and because

13   they include documents with content that was previously produced to Plaintiffs without

14   redactions elsewhere in Qualcomm's production. Nevertheless, the results of this re-review

15   demonstrate that Qualcomm is acting in good faith to ensure that each document is re-reviewed

16   diligently. Conversely, Plaintiffs' unspoken suggestion that Qualcomm intentionally "advanced

17   unsupportable privilege claims" is without foundation. Unlike in many privilege reviews, the

18   majority of the documents here involve lawyers acting in dual roles—both lawyer and business

19   person—and involve unusually challenging privilege issues arising from the nature of a licensing

20   business, where legal issues arise much more often than in most other businesses. When coupled

21   with the sheer volume of documents to be reviewed (approximately 7.9 million documents) and

22   the tight schedule, and the resulting need to rely on outside contract attorneys (at times, over 400

23   full-time attorneys), mistakes are to be expected. Indeed, throughout Qualcomm's re-review

24   efforts, the "reversal" rate has consistently been much lower for documents from the pre-

25   Complaint investigation by the FTC, when Qualcomm had more time to prepare its privilege log,

26   than for documents collected and reviewed for the first time to respond to requests made in this

27   litigation. Further, to put the scope of the issue in context, Qualcomm has to date produced only

28

5

1    about 14,000 documents after privilege re-reviews, which are dwarfed by the overall size of

2    Qualcomm's production in these coordinated cases (over 4.3 million documents), and many of the

3    documents produced after re-review contain information that was already previously produced to

4    Plaintiffs in other documents in the production.  As a point of reference, Apple's original

5    privilege log in response to Qualcomm's subpoenas in these actions contained approximately

6    420,000 entries.  After re-review, Apple removed approximately 260,000 entries from the log.

7    And even on the revised log, Qualcomm has so far challenged 2,530 entries, and Apple has

8    reversed its privilege calls on 2,370 of them (or 93%).  By contrast, it is easy for the FTC and

9    MDL Plaintiffs to criticize Qualcomm, as neither has significant documents to produce; indeed,

10   the MDL Plaintiffs have no privilege log at all.

11          C.      **Other Document Discovery Issues**

12              1.   **The FTC's Request for Custodial and Other Documents Relating to**

13                   **Broadcom's Proposed Takeover of Qualcomm.**

14          *FTC's Position*

15          On January 30, 2018, the FTC served its Second Set of Requests for Production to

16   Qualcomm, seeking, among other things, documents relating to Broadcom's then-ongoing

17   attempt to acquire Qualcomm via hostile takeover.  The FTC's request is narrow in scope,

18   primarily seeking documents created, sent, or received by Qualcomm's Board of Directors and a

19   limited number of Qualcomm senior executives.  On March 1, 2018 Qualcomm served its

20   objections, stating, "Qualcomm will not produce documents in response to this Request, except

21   for documents submitted to the FTC pursuant to the Hart-Scott-Rodino ("HSR") Act on

22   December 26, 2017, subject to the entry of appropriate amendments to the Protective Order."

23   During subsequent meet and confer discussions, Qualcomm confirmed that it would not produce

24   responsive documents unless the Protective Order were modified to prevent Apple's outside

25   counsel from viewing any documents Qualcomm produced in response to the request.  The FTC

26   attempted, but failed, to secure Apple's counsel's agreement to this condition.  On April 10, 2018

27   the FTC informed Qualcomm that it should either produce responsive documents or seek an

28

JOINT CASE MANAGEMENT STATEMENT
Case No. 5:17-cv-00220-LHK-NMC
and 5:17-md-02773-LHK-NMC

1   appropriate modification of the Protective Order, and on April 11 provided Qualcomm with the

2   FTC's half of a joint discovery statement.

3        On April 15, 2018, Qualcomm offered to produce "promptly" a copy of Qualcomm's HSR

4   filing, without a modification to the Protective Order.  Qualcomm produced the HSR filing on

5   April 20.  During a subsequent meet and confer, Qualcomm offered to provide certain additional

6   Board documents related to the Broadcom proposal, but stated it will oppose any further requests

7   for responsive materials, including any custodial collections.  As of the date of this filing,

8   Qualcomm has not provided the FTC with any such Board documents.  While the FTC believes a

9   custodial collection from a limited number of senior executives is appropriate, it has agreed to

10  review a sample of the documents Qualcomm consented to producing and evaluate whether such

11  documents provide the necessary information.  The FTC reserves the right to seek additional

12  documents if it deems the HSR and Board documents are insufficient.

13       *Qualcomm's Position*

14       One of the requests in the FTC's Second Set of Requests for Production to Qualcomm

15  seeks "[a]ll documents relating to any Broadcom M&A Proposal" that were created or sent to

16  Qualcomm's Board of Directors or a list of ten senior executives, as well as any documents

17  relating to any Broadcom M&A proposal that reflect "Qualcomm's valuation of its own business"

18  or "the financial impact of any changes in business strategy that might be implemented post-

19  acquisition".  These broad requests, served while Broadcom's offer to acquire Qualcomm was

20  still pending, seek highly confidential business information that is neither relevant to any claim or

21  defense nor proportional to the needs of the case.  Given the tangential nature of these broad

22  Requests, the late stage of discovery when these Requests were served (*i.e.*, well into the

23  deposition period), and the extraordinarily sensitive nature of these documents during the

24  pendency of a hostile takeover bid, Qualcomm objected to the FTC's Requests.  Nonetheless,

25  Qualcomm advised the FTC on a February 27, 2018 meet-and-confer that it would produce its

26  Hart-Scott-Rodino ("HSR") filing relating to Broadcom's offer, provided that the production

27  would be made to the FTC and MDL Plaintiffs only—which would require a modification of the

28

7

JOINT CASE MANAGEMENT STATEMENT
Case No. 5:17-cv-00220-LHK-NMC
and 5:17-md-02773-LHK-NMC

1  Coordination Order that would prevent production of the documents to counsel for Apple and the

2  Contract Manufacturers in the coordinated litigation in the Southern District of California.  (ECF

3  No. 513.)  Qualcomm insisted on such a modification because Qualcomm had sound basis to

4  believe that Apple was in communication with Broadcom regarding its proposed hostile takeover,

5  including based on public statements made by Broadcom itself.  Notably, the FTC also served

6  Broadcom with a subpoena requesting similar documents, and on February 20, 2018, Broadcom

7  informed the FTC that Broadcom would not produce any documents responsive to the subpoena.

8  The FTC did not take action to pursue that subpoena any further.

9       The FTC did not raise the Requests with Qualcomm again until March 19, 2018.

10       In the meantime, the sensitivity of the information the FTC requested was further

11  highlighted on March 5, 2018, when the Committee on Foreign Investment in the United States

12  ("CFIUS") "identified potential national security concerns" with Broadcom's bid, including that

13  "changes to Qualcomm's business model would likely negatively impact the core R&D

14  expenditures of national security concern."[8]  Based on the investigation and recommendation of

15  CFIUS, on March 14, 2018, pursuant to authority granted under Section 721 of the Defense

16  Production Act of 1950, 50 U.S.C. § 4565, the President ordered Broadcom to, among other

17  things, "immediately and permanently abandon the proposed takeover".[9]

18       It was not until April 10, 2018, that the FTC re-raised its Requests for takeover-related

19  materials.  The FTC advised Qualcomm that the FTC had been unable to persuade Apple and the

20  CMs to agree to a modification of the Coordination Order that would allow Qualcomm to produce

21  documents relating to Broadcom's offer in the Northern District Actions only.  On April 11,

22  2018, the FTC provided Qualcomm with its portion of a Joint Discovery Statement, identifying

23  for the first time a single purportedly relevant statement made in an investor presentation filed

24

25  [8] March 5, 2018 Letter from Aimen N. Mir re: CFIUS Case 19-036, Broadcom Limited
26  (Singapore)/Qualcomm Incorporated
   [9] March 12, 2018 Presidential Order Regarding the Proposed Takeover of Qualcomm
27  Incorporated by Broadcom Limited.

28

with the SEC on February 9, 2018 (and available to the FTC since that time).  Based on this single statement, the FTC requested invasive custodial searches of Qualcomm's ten most senior executives for "[a]ll documents relating to any Broadcom M&A proposal" reflecting the "valuation of Qualcomm's own business" and the "financial impact of any changes in business strategy".

Given the withdrawal of Broadcom's hostile takeover bid, Qualcomm informed the FTC on April 15, 2018 that it would no longer seek a revision to the Coordination Order.  Following an April 16, 2018 meet-and-confer, the Parties agreed that Qualcomm would produce (1) its HSR filing and (2) any materials provided to the Board in connection with the February 9, 2018 investor presentation identified by the FTC (subject to Qualcomm's need to first confer with its CFIUS counsel to ensure compliance with its obligations to CFIUS and under the President's Order).  On April 20, 2018, Qualcomm produced the HSR filing.  Qualcomm continues to search for and review materials relating to the February 9, 2018 investor presentation identified by the FTC, and expects to produce additional documents this week.  If any dispute remains concerning this issue following Qualcomm's production and any subsequent meet and confer, Qualcomm believes that the appropriate course would be for the Parties to submit the dispute to Magistrate Judge Cousins in a Joint Discovery Statement.

## 2. Plaintiffs' Requests for Qualcomm to Collect and Produce Additional Documents and Data from Shared Databases

MDL Plaintiffs have been meeting and conferring with Qualcomm since March 23 regarding Qualcomm's production of materials from databases and other shared folders.   To address these issues, on April 19, the MDL Plaintiffs made a proposal to Qualcomm where Qualcomm would 1) collect and produce certain materials on Qualcomm's shared databases that the MDL Plaintiffs assert contain relevant materials;  2) produce certain additional transactional data with relevant metrics tracked by Qualcomm; 3) submit written answers to questions regarding Qualcomm's document collection efforts that Qualcomm's corporate representative was unable to answer, including questions to which she responded "I don't know" and I'm not

1   aware"; and 4) provide additional information regarding the shared databases that Qualcomm

2   uses, such as folder structures for the Reactor and Good servers.

3          The MDL Plaintiffs and Qualcomm had a meet and confer on these issues on April 23,

4   2018. The MDL Plaintiffs and Qualcomm reached agreement on several specific document

5   collection issues.  In particular, Qualcomm agreed to produce materials requested by the MDL

6   Plaintiffs that were stored under licensee specific subfolders on a shared Qualcomm database—

7   some of which were already produced today—as well as produce news summaries from an

8   internal Qualcomm website that MDL Plaintiffs believe is related to competition in the baseband

9   processor market. The MDL Plaintiffs also narrowed their request for certain materials based on

10  representations by Qualcomm about the burden posed by such collections. Qualcomm stated that

11  it was doing additional fact-gathering interviews in response to the MDL Plaintiffs recent

12  requests, including for files stored on shared databases that Plaintiffs believe are used by QCT

13  Finance and QTL Finance, as well as the availability of transactional data that includes relevant

14  data on chipset product tiers, features, and costs. The MDL Plaintiffs' position is that Plaintiffs'

15  requests for production of documents specifically sought such transactional data and it is of

16  particular importance in this litigation because it relates to key topics such as Qualcomm's market

17  power and Plaintiffs' estimates of damages. [10]

18          The MDL Plaintiffs are also preparing a written list of the numerous questions that, in

19  their view, Qualcomm's designated corporate representative on Qualcomm's document collection

20  was unable to answer at her deposition, and Qualcomm will consider how to address these

21  questions.  The parties agreed to continue to meet and confer on these issues in the coming days.

22

23

24

—————————————————

25  [10] *See e.g.,* Plaintiffs First Set of Requests for Production of Documents, Request 4 (requesting
    transactional data that included a description of the product and compatible cellular standards);
26  Request 5 (requesting transactional data sufficient to identify each cost incurred by Qualcomm in
    manufacturing, selling, and distributing modem chipsets).
27

28

JOINT CASE MANAGEMENT STATEMENT
Case No. 5:17-cv-00220-LHK-NMC
and 5:17-md-02773-LHK-NMC

**3.   The MDL Plaintiffs' Failure to Produce Documents Concerning Proposed Alternative Class Representatives.**

At the depositions of "alternate" class representatives Leonidas Miras and James Clark, Qualcomm requested that MDL Plaintiffs produce additional documents.

*Plaintiffs' Position*

Shortly following the depositions of these alternate class representatives, on April 6, 2018, MDL Plaintiffs produced the documents requested by Qualcomm on April 6, 2018, with a cover letter indicating the production "contains additional documents produced by plaintiffs' alternate class representatives James Clark and Leonidas Miras . . . ."  Plaintiffs also agreed to produce (1) any documents relating to Mr. Miras' insurance claims and previous phones; (2) Mr. Clark's Amnesty International phone; and (3) Mr. Clark's replacement Samsung device, to the extent they exist.  Qualcomm contends MDL Plaintiffs have failed to produce additional responsive documents, but MDL Plaintiffs are not aware of any additional responsive documents in Mr. Miras' or Mr. Clark's possession that have not been produced.  Qualcomm requested a meet and confer on April 20, and MDL Plaintiffs have agreed to meet and confer with Qualcomm, though they are unaware of the additional claimed deficiencies.

*Qualcomm's Position*

At the depositions of "alternate" class representatives Leonidas Miras and James Clark, Qualcomm learned that MDL Plaintiffs had failed to produce numerous responsive documents related to these witnesses.  MDL Plaintiffs assured Qualcomm that they would produce additional documents including Mr. Miras' insurance records for his cellular devices and documents related to Mr. Miras' previous cellular devices.  On April 6, 2018, MDL Plaintiffs produced emails Mr. Miras received from insurance carrier Asurion showing that Mr. Miras has access to an "Online Claim Center" where he can "[d]ownload any necessary forms or documents."  See, e.g., MIRAS_00000331.  They produced no other records of Mr. Miras' insurance claims or policies.  On April 20, Qualcomm emailed MDL Plaintiffs asking them whether they intended to produce any additional responsive documents, including the insurance claims documents which Mr. Miras

1   evidently can access via the Online Claim Center.[11]   Qualcomm was still waiting for a response

2   as of the April 23 meet and confer.  MDL Plaintiffs were not prepared to address this issue on the

3   meet and confer.  They promised to follow up but still have not responded to Qualcomm's request

4   for the insurance records.

5       **D.      Depositions**

6               1.      Individual Depositions

7       Almost all depositions of current or former Qualcomm employees have concluded.  The

8   sole exception is Jeffrey Altman, with respect to whom the Court approved an out-of-time

9   deposition on February 20, 2018.  (ECF No. 580).  The Parties will meet and confer regarding re-

10  opening of depositions following the completion of Qualcomm's privilege re-review.

11      *Plaintiffs' Position*

12      Plaintiffs will likely need to re-open the deposition of Dr. Paul Jacobs based on Dr.

13  Jacobs's refusal to answer questions about his plans to purchase Qualcomm and his assessment of

14  Qualcomm's business model following his departure from Qualcomm's Board of Directors.

15  Counsel for Dr. Jacobs repeatedly instructed the witness not answer questions concerning these

16  topics, including Dr. Jacobs's own view of Qualcomm's business model since his departure and

17  limitations of that model in a public company structure, and communications with investment

18  banks about Qualcomm's business model, on the grounds that such testimony would constitute

19  "unretained expert testimony" and invade Dr. Jacobs's privacy.  Counsel for Qualcomm also

20  objected to this line of questioning.  Testimony regarding Qualcomm's business model, and the

21  value of retaining that model, is highly relevant.  Of note, Dr. Jacobs was identified as a person

22  with knowledge in Qualcomm's Rule 26 disclosures, including specifically on the issue of

23  corporate strategy.  The objections by Qualcomm's and Dr. Jacobs' counsel are not a basis for

24  withholding such testimony.

25      *Qualcomm's Position*

26

27  [11] 4/20/2018 email from J. Friley to A. Bonn.

28

At Dr. Jacobs's deposition, the FTC posed certain questions concerning his potential bid to acquire Qualcomm. Dr. Jacobs's individually retained counsel objected to these questions and directed Dr. Jacobs not to answer them. Qualcomm takes no position on the propriety of those instructions. Qualcomm, for its part, believes that deposition testimony on this topic is neither relevant nor proportional to the needs of this case, and objected to the questioning accordingly, but Qualcomm's counsel never instructed Dr. Jacobs not to respond to questions on this topic.[12]

## 2. Rule 30(b)(6) Depositions

On April 13, 2018, MDL Plaintiffs conducted the deposition of Pamela Schieffelin, who was designated as Qualcomm's corporate designee for Topic 11 of MDL Plaintiff's Rule 30(b)(6) notice as detailed above. On April 16, 2018, Plaintiffs conducted the deposition of Liren Chen, who was designated as Qualcomm's corporate designee for Topics 6-8 (excluding the portions related to "value") and 10 of the FTC's Rule 30(b)(6) notice; and Topics 4 (excluding the portions related to "value") and 10 of MDL Plaintiff's Rule 30(b)(6) notice. On April 17-18, 2018, MDL Plaintiffs conducted the deposition of Alex Katouzian, who was designated as Qualcomm's corporate designee for Topic 3 of MDL Plaintiff's Rule 30(b)(6) notice. On April 15, 2018 Qualcomm informed Plaintiffs that it would substitute Fabian Gonell for Derek Aberle as its corporate designee for Topics 6-8 (related to "value") and 10 of the FTC's Rule 30(b)(6) notice, and Topics 4 (related to "value"), 5, 6, 7, and 9 of MDL Plaintiff's Rule 30(b)(6) notice. Plaintiffs conducted the deposition of Mr. Gonell on April 20, 2018.

On April 5, 2018, Qualcomm provided the FTC with written responses to certain questions from the FTC related to Topic 11 of the FTC's Rule 30(b)(6) notice in lieu of a deposition on that topic. On April 6, 2018, Qualcomm offered to make two witnesses available on

---

[12] In the Southern District litigation, Apple has served on Dr. Jacobs a subpoena for documents regarding his contemplated bid for Qualcomm, and Dr. Jacobs, through his individually retained counsel, has objected to that subpoena. Qualcomm understands that counsel for Apple and counsel for Dr. Jacobs continue to discuss that subpoena, and that prior to Dr. Jacobs's deposition, they agreed to defer any questioning on this topic pending resolution of their differences concerning the subpoena (either by agreement or by the Southern District court).

April 11 for follow –up questions relating to Qualcomm's written responses.  On April 10, the FTC stated that it was "still reviewing the written responses" but did not "anticipate seeking deposition testimony on these issues" and agreed to "release the April 11 date".

       *MDL Plaintiffs' Position*

       On April 20, 2018, MDL Plaintiffs provided Qualcomm with written questions related to topics 1, 2 and 8 of MDL Plaintiffs' 30(b)(6) notice in lieu of a deposition on those topics. Though MDL Plaintiffs believe the written questions are proper, MDL Plaintiffs subsequently offered a compromise proposal to Qualcomm on April 22nd whereby Qualcomm would designate certain portions of Alex Katouzian's transcript as to Topics 1 and 2 of MDL Plaintiffs' 30(b)(6) deposition notice, and Qualcomm would answer a subset of written questions as to Topics 1, 2, and 8.  MDL Plaintiffs have not yet heard back from Qualcomm regarding this proposal.

       *Qualcomm's Position*

       At the March 22, 2018 Case Management Conference, the MDL Plaintiffs represented to the Court that the MDL Plaintiffs would "absolutely" narrow Topics 1, 2 and 8 from the vastly overbroad topics presented to the Court at the time.  (3/22/2018 Hrg. Tr. 71:7-18.)  Accordingly, the Court allowed the MDL Plaintiffs "to provide specific, narrow questions". (ECF No. 403 at 2.)

       On April 20, 2018, the MDL Plaintiffs sent Qualcomm 78 questions, many containing dozens of subparts, for a total of nearly 1000 individual inquiries purportedly covering Topics 1, 2, and 8. On April 22, following Qualcomm's request to meet and confer about the overbreadth of MDL Plaitniffs' proposal, the MDL Plaintiffs offered a revised list of questions.  The revised list (including all subparts) still comprises over 500 questions, many of which Qualcomm believes to be vague and overbroad, unduly burdensome, outside the scope of the deposition topics, and inconsistent with the Court's Order.  Nonetheless, Qualcomm is still in the process of assessing the revised list and expects to meet-and-confer on this issue with the MDL Plaintiffs in short order.

**III.     THIRD-PARTY DISCOVERY**

    **A.     Document Production**

The vast majority of third parties subpoenaed have completed their document productions in this case.  Certain third parties are still producing small volumes of documents.

    **B.     Depositions**

The parties concluded depositions of third-party witnesses on April 20.

*MDL Plaintiffs' Position*

MDL Plaintiffs also intend to participate in the deposition of Tim Cook, which was noticed by Qualcomm in the S.D. Cal. litigation for June 27, 2018.   The Coordination Order provides "that [d]epositions subpoenaed, noticed, and/or taken in any of the Pending Cases shall be treated as if they were noticed and taken in each Pending Case, except insofar as a deposition relates solely to claims concerning the Patents-in-Suit in the SD Cal Litigation."  As Mr. Takashima clarified in a January 30, 2018 email to Qualcomm, "Mr. Cook's deposition would not relate solely to claims concerning the Patents-in-Suit in the SD Cal Litigation."  Accordingly, MDL Plaintiffs are entitled to attend the deposition, ask questions, and raise objections. *See* Dkt. 305 (Case No. 5:17-md-02773-LHK) at ¶ 11.

Furthermore, Apple indicated that Tim Cook would be made available for deposition February 22, 2018 and February 28, 2018 in the N.D. Cal. and S.D. Cal. actions.  Both the FTC and MDL Plaintiffs confirmed the February 22, 2018 and February 28, 2018 dates. *See* J. Ansaldo email to E. Takashima dated February 5, 2018; K. Pachman email to E. Takashima dated February 5, 2018.  It was only after Qualcomm unilaterally refused to participate in Tim Cook's deposition before close of discovery in the MDL Plaintiffs' case that the parties scheduled Mr. Cook's deposition for June 27, 2018.

*Qualcomm's Position*

Qualcomm notes that the MDL Plaintiffs did not notice Mr. Cook's deposition during the fact discovery period in this case.  Qualcomm will not object to the MDL Plaintiffs' participation in the deposition of Mr. Cook, subject to Qualcomm having sufficient time (*i.e.*, up to 7 hours) to

1    depose Mr. Cook.

2    **IV.**      <u>**ADR**</u>

3           The Parties have not engaged in any ADR conferences since the April 3, 2018 Case

4    Management Statement.  (ECF No. 672.)  The next ADR conference is scheduled for August 7,

5    2018.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT CASE MANAGEMENT STATEMENT
Case No. 5:17-cv-00220-LHK-NMC
and 5:17-md-02773-LHK-NMC

1 | Dated:  April 23, 2018

2 | Respectfully submitted,

3 | FEDERAL TRADE COMMISSION,

4 |

5 | _/s/  Jennifer Milici_
Jennifer Milici

6 | Wesley G. Carson
J. Alexander Ansaldo

7 | Joseph R. Baker

8 | Elizabeth A. Gillen
Federal Trade Commission

9 | 600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580

10 | (202) 326-2912; (202) 326-3496 (fax)
jmilici@ftc.gov

11 | **_Attorneys for Federal Trade Commission_**

12 |

13 | SUSMAN GODFREY LLP

14 |

15 | By:    _/s/ Kalpana Srinivasan_
Kalpana Srinivasan
Marc M. Seltzer

16 | Steven G. Sklaver
Amanda Bonn

17 | Oleg Elkhunovich
Krysta Kauble Pachman

18 | SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400

19 | Los Angeles, CA 90067
Telephone: (310) 789-3100

20 | Facsimile: (310) 789-3006
Email: ksrinivasan@susmangodfrey.com

21 | Email: mseltzer@susmangodfrey.com
Email: ssklaver@susmangodfrey.com

22 | Email: abonn@susmangodfrey.com
Email: oelkhunovich@susmangodfrey.com

23 | Email:  kpachman@susmangodfrey.com

24 | Joseph Grinstein
SUSMAN GODFREY L.L.P.

25 | 1000 Louisiana Street # 5100
Houston, TX 77002

26 | Telephone:  (713) 651-9366
Facsimile:  (713) 654-6666

27 | Email: jgrinstein@susmangodfrey.com

28 |

17

1

2      Joseph W. Cotchett
       Adam J. Zapala
3      Brian Danitz
       Mark F. Ram
4      Michael Montaño
       COTCHETT, PITRE & McCARTHY, LLP
5      840 Malcolm Road, Suite 200
       Burlingame, CA 94010
6      Telephone: (650) 697-6000
       Facsimile: (650) 697-0577
7      Email: jcotchett@cpmlegal.com
       Email: azapala@cpmlegal.com
8      Email: bdanitz@cpmlegal.com
       Email: mram@cpmlegal.com
       Email: mmontano@cpmlegal.com
9
       ***Plaintiffs' Interim Co-Lead Counsel***
10

11
       Dated:  April 23, 2018              HAGENS BERMAN SOBOL SHAPIRO
12                                         LLP

13
                                  By:      /s/  *Steve W. Berman*
14                                         Steve W. Berman
                                           HAGENS BERMAN SOBOL SHAPIRO
15                                         LLP
                                           1918 Eighth Avenue, Suite 3300
16                                         Seattle, WA 98101
                                           Telephone: (206) 268-9320
17                                         Facsimile: (206) 623-0594
                                           Email: steve@hbsslaw.com
18
                                           Jeff D. Friedman (173886)
19                                         Rio S. Pierce (298297)
                                           HAGENS BERMAN SOBOL SHAPIRO
20                                         LLP
                                           715 Hearst Avenue, Suite 202
21                                         Berkeley, CA 94710
                                           Telephone: (510) 725-3000
22                                         Facsimile: (510) 725-3001
                                           Email: jefff@hbsslaw.com
23                                         Email: riop@hbsslaw.com

24                                         ***Plaintiffs' Steering Committee***

25

26

27

28
                                           Joint Case Management Statement
                           18              Case No. 5:17-cv-00220-LHK-NMC
                                           and 5:17-md-02773-LHK-NMC

Dated:  April 23, 2018

CRAVATH, SWAINE & MOORE LLP

By:    /s/  *Gary A. Bornstein*

Gary A. Bornstein
Yonatan Even
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Tel: (212) 474-1000
Fax: (212) 474-3700
gbornstein@cravath.com
yeven@cravath.com

Robert A. Van Nest
Asim M. Bhansali
Eugene M. Paige
Justina Sessions
David W. Rizk
Alexander Dryer
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
Facsimile: (415) 397-7188
rvannest@keker.com
abhansali@keker.com
epaige@keker.com
jsessions@keker.com
drizk@keker.com
adryer@keker.com

Richard S. Taffet
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178-0060
Tel: (212) 309-6000
Fax: (212) 309-6001
richard.taffet@morganlewis.com

Willard K. Tom
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave. NW
Washington, DC 20004-2541
Tel: (202) 739-3000
Fax: (202) 739 3001
willard.tom@morganlewis.com

Donn P. Pickett
Geoffrey T. Holtz

19

MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: (415) 442-1000
Fax: (415) 442-1001
donn.pickett@morganlewis.com
geoffrey.holtz@morganlewis.com

***Attorneys for Defendant Qualcomm Incorporated***

**FILER'S ATTESTATION**

I, Jennifer Milici, am the ECF user whose identification and password are being used to file this Joint Case Management Statement. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that the signatories on this document have concurred in this filing.

*/s/ Jennifer Milici*
Jennifer Milici

JOINT CASE MANAGEMENT STATEMENT
Case No. 5:17-cv-00220-LHK-NMC
and 5:17-md-02773-LHK-NMC