BOIES SCHILLER FLEXNER LLP
William A. Isaacson (*Pro Hac Vice App.* to be filed)
DC Bar No. 414788, wisaacson@bsfllp.com
Karen L. Dunn (*Pro Hac Vice App.* to be filed)
DC Bar No. 1002520, kdunn@bsfllp.com
Amy J. Mauser (*Pro Hac Vice App.* to be filed)
DC Bar No. 424065, amauser@bsfllp.com
1401 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 237-2727
Facsimile: (202) 237-6131

BOIES SCHILLER FLEXNER LLP
Edward H. Takashima, SBN 270945
etakashima@bsfllp.com
401 Wilshire Blvd, Suite 850
Santa Monica, CA 90401
Telephone:  (310) 752-2400
Facsimile:  (310) 752-2490

Attorneys for Non-Party APPLE INC.

CRAVATH, SWAINE & MOORE LLP
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
825 Eighth Avenue
New York, NY 10019-7475
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

KEKER, VAN NEST & PETERS LLP
Robert A. Van Nest, SBN 84065
rvannest@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  (415) 676-2289
Facsimile:  (415) 397-7188

MORGAN, LEWIS & BOCKIUS LLP
Richard S. Taffet (*pro hac vice*)
richard.taffet@morganlewis.com
101 Park Avenue
New York, NY 10178-0060
Telephone:  (212) 309-6000
Facsimile:  (212) 309-6001

Attorneys for Defendant
QUALCOMM INCORPORATED

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION<br><br>                    Plaintiff,<br><br>v.<br><br>QUALCOMM INCORPORATED, a<br>Delaware corporation,<br><br>                    Defendant. | Case No. 5:17-cv-00220-LHK-NMC<br><br>**NON-PARTY APPLE INC. AND DEFENDANT QUALCOMM INCORPORATED'S JOINT STATUS REPORT**<br><br>**FILED UNDER SEAL**<br><br>Courtroom:  7, 4th Floor<br>Judge:   Hon. Nathanael M. Cousins |
| IN RE QUALCOMM ANTITRUST<br>LITIGATION | Case No. 5:17-md-02773-LHK-NMC |

Pursuant to the Court's May 4, 2018 Order (ECF No. 724), Non-Party Apple Inc. ("Apple") and Defendant Qualcomm Incorporated ("Qualcomm") submit this Joint Status Report.

**I.     Apple's Documents Withheld Pursuant to a Claim of Common Interest.**

   A.     *Qualcomm's Position*

Qualcomm contests Apple's assertion of a common interest with certain third parties as a basis for withholding numerous documents from production.  Apple has withheld as privileged at least 3,921 documents exchanged between Apple and third parties on the basis of assertions of both privilege and a common interest between Apple and the third party with whom the documents were exchanged.  Although Qualcomm is skeptical of the appropriateness of a very large portion of those assertions, it focused its challenge to only 44 such documents (*see* Appendix A), in an effort to be targeted, and with the expectation that Apple would apply the Court's guidance on the issues relevant to these documents to re-assess the remaining claims. Qualcomm identified those documents to Apple on May 14 and proposed to meet and confer, but Apple did not respond.  Instead, Apple said nothing until after receiving Qualcomm's portion of this Joint Status Report.  At 6:23 pm on the day this report was due, Apple withdrew its assertion of common interest over 37 of the 44 documents Qualcomm had identified—and for the first time provided its explanation for withholding the other 7 documents.  Thus, Apple's portion of the Joint Status Report defends its claim of common interest regarding those 7 documents, on grounds that Apple did not share with Qualcomm until hours before this report needed to be submitted.  Because of Apple's failure to meet and confer, Qualcomm's ability to respond to those arguments on such short notice is necessarily limited.

Although Apple has withdrawn its common interest claim over most of the documents Qualcomm challenged, Qualcomm still explains here the basis for its challenge, because it believes Apple should apply these principles to its remaining claims of common interest, relating to other documents that were not among the 44 that Qualcomm targeted.  Apple's withdrawal of

the vast majority of its common interest assertions shows that it has broadly misapplied the doctrine, and that needs to be corrected more globally.

> i. The Withheld Communications Were Not Made in Furtherance of a Common Legal Interest.

Qualcomm identified and challenged common interest claims covering communications between Apple and third parties regarding efforts to influence SEP licensing practices in the cellular industry and communications between Apple and third parties related to regulatory investigations of Qualcomm. These documents were generated as part of a broad effort by Apple and others to coordinate their attacks on Qualcomm to further their respective business interests. But the common interest doctrine prevents the waiver of privilege through disclosure of privileged information to a third party only when the parties share a common *legal* interest, and when the communications were made in furtherance of that interest. *See Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007) (doctrine protects only communications and documents exchanged for "matters of common *legal* interest, for the purpose of preparing a joint strategy") (emphasis added). Common interest protection is a "narrow exception" that "does not extend to communications about a joint business strategy that happens to include a concern about litigation." *Elan Microelectrs. Corp. v. Apple, Inc.*, No. C 09 01541 RS (PSG), 2011 WL 3443923, at *2 (N.D. Cal. Aug. 8, 2011) ("Generally, as the alternative name 'joint defense privilege' suggests, the doctrine applies to cases where 'allied lawyers and clients' work together in prosecuting or defending a lawsuit.").

Here, the business advantage that Apple and the other third parties sought to achieve together was a purely *commercial* interest that does not justify withholding their communications. *First*, Apple's communications with third parties about SEP licensing practices reflect only shared financial interests as implementers of standardized technology, rather than any legal interests. These documents include subject lines such as "RE: First Draft for Review - re 5G Forum" (Row 60789), "Re: NGMN IPR Forum - Documents to be considered by Pillar 1 and Pillar 3" (Row

42016) and "Revised draft articles and internal rules" (Row 37865).  Even if these documents were privileged in the first instance, their evident purpose was to discuss efforts to influence SSO licensing policies in a direction that would be favorable to Apple and other implementers, and not to prepare a joint legal strategy to prosecute or defend legal rights.

*Second*, Apple cannot claim a common legal interest over its communications with third parties related to regulatory investigations of Qualcomm.  The communications that Qualcomm challenges here were all made prior to any litigation in which Apple was a party, and they were all with Samsung and/or Intel – two parties that to this day have no pending litigation with Qualcomm.  Neither of those companies shared a common *legal* interest with Apple relating to the Qualcomm investigations.  As to Samsung, its interest (like Apple's) was solely commercial: to reduce the price of Qualcomm's patented inventions.  Samsung's internal documents demonstrate the commercial purpose of its cooperation with Apple.  Samsung states ███████

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████
Samsung joined forces with Apple in instigating these investigations and advocating its positions in order to achieve their common business purposes, *i.e.*, reducing Qualcomm's royalties and impairing Qualcomm's strength in the development and sale of baseband processors.

Likewise, Apple and Intel do not share a commercial legal interest.  Instead, they share a commercial interest in weakening Qualcomm as a competitor in the baseband processor business.  The Samsung document noted above ███████████████████████████.  Intel competes with Qualcomm in the sale of baseband modem chips, including for use in Apple devices.  Intel therefore had a strong commercial interest in helping Apple in its use of investigations of Qualcomm to impair Qualcomm's position in baseband chip sales.  And Apple,

for its part, ████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████ This shared business

purpose does not constitute a common legal interest that justifies withholding the documents at

issue.

To support its claim of a common interest, Apple pointed to a series of nearly identical

common interest agreements that it entered into with Samsung and Intel (as well as several other

companies over the span of five weeks in 2016). Each agreement claims the same interest "in

responding to requests from and thereby cooperating with various governmental agencies

worldwide in connection with those agencies' on-going investigations".[1] But the facts discussed

above show that the true interest underlying these agreements was commercial rather than legal.

Courts have repeatedly rejected attempts to convert a shared business interest into a purported

legal one, even when related to litigation. For example, in *Johnson Mattey Inc. v. Research

Corp.*, the Court found that a party receiving royalty income from certain patents did not have a

common interest in litigation between the owner of those patents and a third party regarding their

licensing, even though the outcome of the litigation would likely lower the party's royalty

income. 2002 WL 1728566, at *6 (S.D.N.Y. Oct. 3, 2002). The court explained that "[a] shared

desire to succeed in an action does not, however, rise to the level of a common legal interest" and

"[t]he shared desire to maximize royalty income is . . . simply a commercial concern." *Id.*

Similarly, in *McAirlaids, Inc. v. Kimberly-Clark Corp.*, the court found that a customer selling

products made using a patent that was subject of litigation did not have a common legal interest

with the patent holder because "interest in enforcement of the patent" was "purely commercial"

---

[1] *See* "Common Interest Agreement" between Apple and Intel signed June 9, 2016 (with an amendment signed May 7, 2017), APL-QC-FTC_37224841, APL-QC-FTC_37291745; "Common Interest Agreement" between Apple and Samsung signed June 23, 2016, APL-QC-FTC_37291747.

1  and "mutual concern about litigation does not transform a common commercial interest into a

2  legal matter".  2014 WL 12782814, at *3 (W. D. Va. Sept. 26, 2014).

3        As the Court suggested when first reviewing the agreement between Apple and Samsung,

4  Apple and these other parties may have a united interest, but it is a business interest, not a legal

5  one.  (*See* 12/20/2017 Hr'g Tr. Re Disc. Ltr. Br. ("I am skeptical about the scope of the common-

6  interest privilege that's been asserted"); *see also* ECF No. 600 ("The Court is skeptical that the

7  Agreement qualifies as a common interest agreement, because it seems to the Court, upon

8  reviewing the Agreement, that Apple and Samsung did not have a joint *legal* interest.  Rather, the

9  Court is inclined to find that the Agreement expresses Apple and Samsung's joint *commercial*

10  interest instead.").)  Apple has now acknowledged as much with respect to 37 of the 44

11  documents Qualcomm challenged, meaning that it has to date applied the common interest

12  privilege far too broadly.  Apple must now apply the principles discussed above to the remaining

13  documents over which it claimed a common interest and assess whether those assertions can

14  properly be maintained.

15        ii.   <u>Apple's New Categories of Withheld Documents.</u>

16        Given the deadline for filing this report, Qualcomm offers below its initial responses to the

17  newly minted arguments that Apple raised for the first time after 6 pm on the filing day.

18  Qualcomm notes that Apple's arguments should be assessed against the backdrop of Apple's

19  extensive over-assertion of common interest to withhold documents from production, which has

20  already resulted in Apple withdrawing its assertion as to 84% of the documents Qualcomm

21  identified..

22      **Friends of FRAND:**  Apple contends that three of the seven documents relate to a "non-

23  profit association" it calls "Friends of FRAND".  Apple does not contend that it formed this

24  association as part of a joint effort to pursue or defend against litigation, or that its members

25

26

27

28

APPLE AND QUALCOMM'S JOINT STATUS REPORT
No. 17-cv-0220-LHK-NMC

shared a common legal interest regarding any particular patent or license agreement.[2]  Instead, regardless of the window dressing Apple tries to apply, Friends of FRAND is a group of commercial actors whose common interest is in lowering the royalties paid for the use of patented standardized technologies.  The group seeks to achieve this goal through advocacy and lobbying – not through litigation in which the members, or even the group, is a party.  Even if Apple and the other participants set up articles of association and other internal rules, their shared interest remained commercial rather than legal—just like the shareholders of a corporation have a shared commercial interest while interacting pursuant to a charter and bylaws.  The nature of the common interest is governed by the *substance* of the interest, rather than the form in which it may or may not be documented.  Therefore, the documents should not be withheld from production.

**Wireless Gigabit Alliance:**  Apple cannot assert a privilege or protection from production over its communications with the Wireless Gigabit Alliance, because *a Qualcomm entity* was a member of that association.  (*See* Wi-Fi Alliance (merger of Wireless Gigabit Alliance and Wi-Fi Alliance) Member Companies, https://www.wi-fi.org/membership/member-companies, including Qualcomm Atheros.)  On this basis alone, the documents must be produced.

**Expert Selection:**  Apple's claim of common interest protection over documents relating to the retention of experts in the KFTC proceeding against Qualcomm is unavailing because, as noted above, Apple joined with Samsung and Intel before the KFTC to pursue the shared commercial goal of reducing royalties and weakening Qualcomm's competitiveness as a supplier of baseband processors.  None of Apple, Samsung or Intel was a party to that proceeding, and none of them had any legal rights at stake; instead, they voluntarily retained experts to present arguments in that proceeding to further their joint business purpose of injuring Qualcomm.  And even if the documents were considered attorney work product, to the extent these documents

---

[2] Apple's reliance on *In re Regents of the University of California*, 101 F.3d 1386, 1390 (Fed. Cir. 1996), is therefore misplaced, because the common interest parties there had the same interest in *particular* patents, not in the rules of patent protection more generally.

reflect efforts by Apple to coordinate an attack on Qualcomm's business model, they bear directly on the potential bias of important witnesses from key industry participants.  Communications among Apple, Intel or Samsung are a unique and essential source of that information, for which Qualcomm has substantial need.  *See Fletcher v. Union Pac. R.R. Co.*, 194 F.R.D. 666, 671 (S.D. Cal. 2000) (work product protection is conditional, and may be overcome by a showing of substantial need).  Apple should be ordered to produce these documents.

### B.   *Apple's Position*

There are no "newly-minted" positions.  On May 14 at 11:11 pm eastern, Qualcomm emailed its list of documents that it intended to include in this filing.  In the email, Qualcomm stated that it "disputes Apple's withholding of certain third party communications under claims of a common interest."  Apple then narrowed the dispute so that the focus here is on seven documents:  it has agreed to produce all but seven of the documents Qualcomm challenges in this joint status report.  Those seven documents fall into three categories.

**Friends of FRAND (three documents)**:[3] These documents are attorney-client privileged. They relate to "Friends of FRAND," a non-profit association created to promote rules for the licensing of SEPs on FRAND terms.  It was not part of an effort to "coordinate . . . attacks on Qualcomm," and, in fact, the privileged communications make no mention of Qualcomm.  (*Supra* at 1.)  The organization was governed by Articles of Association and a set of Internal Rules, and had retained outside counsel for legal advice on its formation and activities.  Apple was a member of the Friends of FRAND.  And before becoming a member, Apple was involved in its formation, including communicating with other potential members about the rules and legal principles that should govern and guide the association.  On June 30, 2015, Apple signed a Non-Disclosure Agreement in which it agreed to maintain these communications in confidence.

---

[3] Three of the documents identified by Qualcomm concern the Friends of FRAND: EM0cu600000001676203, EM0cu600000001683149, and EM0cu600000001702801.

1    Because the documents fall within the common interest doctrine, privilege over the

2   communications was not waived when they were shared with the third parties sharing the interest.

3   The organizers of the Friends of FRAND shared a common interest because they were "allied in a

4   common legal cause" (1) in seeking to form an association that offered an accurate and consistent

5   interpretation of FRAND terms; and (2) in seeking to create rules and guidelines to govern the

6   association. *In re Regents of the University of California*, 101 F.3d 1386, 1390 (Fed. Cir. 1996)

7   (upholding common interest where "[b]oth parties had the same interest in obtaining strong and

8   enforceable patents"); *see Apple Inc. v. Qualcomm Inc.*, No. 317CV00108GPCMDD, 2017 WL

9   3966944, at *1 (S.D. Cal. Sept. 7, 2017) ("The 'FRAND commitment' or 'FRAND bargain,'. . . is

10  a contractual obligation between the SEP holder and the SSO.").  The privileged documents fall

11  within this latter category:  they are emails among counsel in the common interest group

12  providing legal advice regarding the rules and guidelines that should govern the association, as

13  well as a request for legal advice to outside counsel regarding the same subject.

14    Contrary to Qualcomm's contention, the fact that the organizers of the Friends of FRAND

15  may have also had unrelated commercial interests "does not negate the effect of the legal interest

16  for purposes of the common interest doctrine." *Harris v. Lang Pharma Nutrition, Inc.*, No. MC

17  14-1154-UA (AGRX), 2015 WL 12832093, at *2 (C.D. Cal. May 22, 2015).  Like all

18  organizations and companies, it needed internal guidelines and rules to guide its operations.  And

19  like other organizations and companies, lawyers assisted with this process.  The privilege

20  determination does not turn on the ultimate business goals of the organization.  It turns on the

21  purposes of the communications-in-question.

22    Moreover, where business concerns and legal concerns coexist, courts still apply the

23  common interest doctrine to shield communications between separately represented parties with

24  common interests.  For example, in *Hewlett-Packard*, the court held there was no waiver of

25  attorney-client privilege where the client shared its attorney's opinion letter with a potential

26  purchaser. *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308, 310, 312 (N. D. Cal.

27

28

1   1987).  Even though the parties shared privileged information in the context of the potential sale

2   of the company—a decidedly commercial endeavor—the non-waiver principle still applied

3   because the parties also shared a common interest in defending against anticipated litigation.  *See*

4   *id.*; *see also Youngevity Int'l, Inc. v. Smith*, Case No. 16-cv-704 BTM (JLB), 2017 WL 4227025,

5   at **4-6 (S.D. Cal. Sept. 22, 2017); *Morvil Technology, LLC v. Ablation Frontiers, Inc.*, 2012 WL

6   760603, at *2-3 (S.D. Cal. Mar. 8, 2012).

7        Nor does it matter that the Friends of FRAND was not facing impeding litigation:

8   neither attorney-client privilege nor the common interest exception to waiver require the threat of

9   litigation.  *See id.* at *1; *United States v. Zolin*, 809 F.2d 1411, 1417 (9th Cir. 1987) (nonparty

10  who "has never been sued on the matter of common interest and faces no immediate liability" can

11  "still be found to have a common interest with the party seeking to protect the communications"),

12  *vacated on other grounds*, 491 U.S. 554 (1989).  The members of the Friends of FRAND formed

13  a non-profit organization to pursue a legal goal, and sought legal advice from outside counsel

14  regarding its Articles of Association and Internal Rules.  Because the communications fall within

15  the scope of the common interest doctrine, privilege is not waived.

16       **Wireless Gigabit Alliance**:[4] The Wireless Gigabit Alliance documents are protected for

17  three reasons.  First, the documents are communications between an association's members and

18  the association's counsel.  *See In re Fresh & Process Potatoes Antitrust Litig.*, No. 2:13-CV-

19  2182-LAH, 2015 WL 1222278, at *5 (D. Idaho Mar. 17, 2015) ("[T]rade associations may

20  properly assert privilege over confidential communications made between its attorneys and its

21  members concerning legal advice for the association."; holding that communications between a

22  cooperative's general counsel and the lawyers of its member corporations were privileged).  The

23  Alliance was a trade association that developed and promoted the adoption of multi-gigabit per

24  second speed wireless communications technology.  Apple was not only a member of the

---

25       [4] Two of the documents concern the Wireless Gigabit Alliance: EM0ctu00000002015554 and
    EM0ctu00000002015552.

26

27

28

1   Alliance—it was on the board.  The two documents identified by Qualcomm are privileged

2   communications between the Alliance board and the Alliance's outside counsel concerning

3   interpretation of its IPR policy and a legal dispute and potential mediation between the Alliance

4   and Qualcomm.

5        Second, even if Apple counsel and the Alliance outside counsel did not have an attorney-

6   client relationship, privileged communications shared among them is not waived because the

7   members of the Alliance share a common legal interest with regard to a potential mediation

8   against an adverse party.  *See United States v. Gonzalez*, 669 F.3d 974, 978 (9th Cir. 2012)

9   ("Whether the jointly interested persons are defendants or plaintiffs, and whether the litigation or

10   potential litigation is civil or criminal, the rationale for the joint defense rule remains unchanged:

11   persons who share a common interest in litigation should be able to communicate with their

12   respective attorneys and with each other to more effectively prosecute or defend their claims.").

13        Third, these documents are protected from disclosure under the work product doctrine, as

14   they were prepared in anticipation of litigation between the Alliance and Qualcomm.  Work

15   product protection is not waived here because the communications were not shared (or likely to

16   be shared) with an adversary.  *See Great American Assur. Co. v. Liberty Surplus Ins. Co.*, 669 F.

17   Supp. 2d 1084, 1092 (N.D. Cal. 2009) ("[W]aiver of attorney work-product protection requires

18   more than the disclosure of confidential information, it requires an act inconsistent with the

19   adversary system.").

20        Qualcomm contends that one of its subsidiaries was a member of the organization.  First,

21   unless that subsidiary ignores corporate formalities, it is a different entity than Qualcomm.

22   Second, privileged documents relate to a potential dispute with Qualcomm and the organization.

23   Third, that dispute is not at-issue in this case.

24

25

26

27

28

**Expert Selection**:[5]  The final two documents (emails) are quintessential privileged communications falling within the common interest doctrine.  In June 2, 2016 (the date of the documents), Apple, Samsung, and Intel legal counsel worked together, with the assistance of outside counsel, for the purpose of, among other things, preparing a joint expert report in the KFTC's investigation of Qualcomm.  These two documents concern the selection of the expert to use for that report, and disclose outside counsel's legal advice about the expert selection and about the law related to consulting experts.  As parties sharing a common interest in preparing a legal document related to their shared legal interest in ensuring that a patent holder complied with their legal obligations, their communications are protected from disclosure.  *See Griffith v. Davis*, 161 F.R.D. 687, 693 (C.D. Cal. 1995) ("[T]he joint client doctrine typically has been applied to overcome what would otherwise have constituted a waiver of confidentiality because a communication had been shared between two clients.").

Apple, Samsung, and Intel shared a common legal interest in cooperating with agency investigations and in the outcome of those agency investigations relating to Qualcomm's market dominance and compliance with its FRAND obligations.  The two disputed documents fall squarely within the scope of that interest.

The common interest doctrine applies here even assuming for the sake of argument that Qualcomm is correct that Apple, Samsung, and Intel had an aligned business interest in working together with one another.  The alignment and coexistence of business and legal goals does not eliminate the common interest exception.  *See supra* discussion of *Hewlett-Packard*, 115 F.R.D. 308, 310, 312; *Youngevity*, 2017 WL 4227025, at **4-6; and *Morvil Tech.*, 2012 WL 760603, at *2-3.  Here, similar to a joint defense group in a litigation, the parties cooperated and shared advice with one another about their joint response to an agency, the expert that can be used to assist in the response, and legal advice on the use of consulting experts.

---

[5] Two of the documents concern the selection of and expert: EM0cur00000002986750 and EM0cur00000002989244.

1    Finally, the two challenged emails predate by a few weeks the written agreements that the

2    parties entered into memorializing their common interest related to, among other things

3    responding to agency requests involving investigations into standard essential patents.  Even

4    without those written agreements, however, the common interest exception would still apply

5    because the communications concern a common legal strategy that the parties understood they

6    were pursuing, and that they understood would be maintained in confidence.  *See Ellis v. J.P.*

7    *Morgan Chase & Co.*, No. 12CV03897YGRJCS, 2014 WL 1510884, at *7 (N.D. Cal. Apr. 1,

8    2014) (holding that communications prior to the execution of the written agreement were

9    protected by the common interest doctrine because "[d]ocuments created prior to formation of the

10   common interest still may be protected by that interest; it is the purpose for which the documents

11   were disclosed, and not whether they predated or post-dated the inception of the common interest,

12   which determines whether the common interest doctrine applies." (internal quotation and citation

13   omitted)); *see also U.S. v. Gonzalez*, 669 F.3d 974, 979 (9th Cir. 2012) ("[I]t is clear that no

14   written agreement is required, and that a JDA may be implied from conduct and situation, such as

15   attorneys exchanging confidential communications from clients who are or potentially may be

16   codefendants or have common interests in litigation."); *In re Regents of the University of*

17   *California*, 101 F.3d 1386, 1390 (Fed. Cir. 1996) (common interest protection can be inferred).

18   * * * *

19   If the Court is inclined to find that any of these documents are not subject to the common

20   interest doctrine or protected from discovery, Apple requests the opportunity to fully brief this

21   issue.

22   **II.    Apple's Non-Responsive Log.**

23          A.    *Qualcomm's Position*

24   On March 30, Apple served its Court-ordered "Non-Responsive Log", which included

25   more than 188,000 entries that Apple had originally withheld as privileged but then recoded as

26   not responsive when revising its privilege logs.  On April 15, 2018, Qualcomm sent to Apple a

27

28

list of 20,720 entries that appeared, based on their subject lines, so likely to be responsive as to warrant re-review.  On April 30, 2018, after two weeks of delay and shortly before the parties were scheduled to appear at a May 2 hearing before the Court, Apple offered to re-review a random selection of 500 entries.  Qualcomm maintained that a re-review of all 20,720 entries was warranted, but as a compromise, that Apple should re-review 1,000 entries as an intermediate step, consisting of 500 entries selected at random by Apple and a non-overlapping set of 500 entries selected by Qualcomm.

Apple provided the results of its re-review on May 11, 2018.  The results are astounding. Apple reversed its responsiveness determinations of ***405 out of 500*** entries (over 80%) selected by Qualcomm and ***150 out of 496*** entries (over 30%) selected by Apple.[6]  These high reversal rates for Apple's responsiveness calls speak to a systemic issue in Apple's review.  Even among the 441 entries that Apple maintains are "non-responsive", there continue to be many entries that appear facially responsive to Qualcomm's requests based on the subjects lines *and* the revised descriptions provided by Apple, including:

- EM0cur00000003050093, "KFTC Decision:  Tomorrow", "Document prepared in anticipation of litigation and/or reflecting/requesting legal advice re: Qualcomm case before the KFTC";

- EM0cur00000003003780, "Re: KFTC Meeting - List of Information Requested by KFTC", "Email chain between counsel (K Andeer and S Dillon) collaborating on legal advice/analysis re: KFTC requests for information about Qualcomm";

- EM0cur00000002986651, "Re: KFTC Hearing - Contents to be included in Apple's presentation at second hearing", "Email chain requesting legal advice from attorneys K. Andeer, B. Sewell, BJ Watrous, re: KFTC Qualcomm hearing";

- EM0d3w00000008527664, "Q/NXP", "Email reflecting request for information for the purpose of providing legal advice from B. McNamara re: competition effects of Qualcomm/NXP acquisition"; and

- EM0cu600000001682137, "Fwd: Ericsson on (F)RAND", "E-mail from attorney Helene Workman to attorneys including BJ Watrous related to legal advice re: Ericsson approach to FRAND".

---

[6] Apple has represented that 4 document families in its sample set have technical issues that it is working to resolve to evaluate those families for responsiveness.

Apple now concedes that the first four of these documents are indeed responsive, meaning that its reversal rates are even higher than stated above.  Apple provides no explanation for how, even in this small re-review of documents, it continued to identify as non-responsive documents that expressly refer to Qualcomm (nor does it explain how the fifth document, which expressly refers to FRAND licensing, could possibly be non-responsive).  Compounding these concerns, Apple has extensively revised its privilege assertions with respect to these documents.  Although all 1,000 documents originally appeared on its privilege log, Apple has now determined that among the 500 entries randomly selected by Apple, 267 entries (53.4%) are not privileged, and Apple withdrew its privilege claims over a further 93 entries from the set of 500 selected by Qualcomm.

Given the results of Apple's re-review of the 1,000 documents from its Non-Responsive Log, Qualcomm maintains that Apple should re-review all 20,720 entries from Apple's Non-Responsive Log that Qualcomm identified on April 15, 2018.  Following that re-review, the parties can meet and confer on whether any further steps are necessary.

B.      *Apple's Position*

Apple agrees to re-review the 20,720 entries Qualcomm identified from Apple's Non-Responsive Log.  After that review, Apple will meet and confer to discuss whether further re-review is necessary.

In response to Qualcomm's speculation about "a systemic issue in Apple's review," these entries are not representative of the documents reviewed or produced in the case.  Qualcomm chose 20,720 entries from the approximately 188,000 entries on the non-responsive log because it believed they *all* are "facially responsive to Qualcomm's document requests."  (4/15/18 Qualcomm letter.)[7]  And it chose 500 of those entries for a targeted re-review—presumably

---

[7] As the Court is aware, both Qualcomm's and Apple's productions and logs were massive and contained errors.  For example, Qualcomm continues to address its erroneous logging of entries for its former CEO, Paul Jacobs—an issue of significant importance to the case.  Given the rate of error in Qualcomm's privilege log—and its large productions—it also undoubtedly made non-responsiveness errors.  These errors, however, are not visible because there is no log of Qualcomm's non-responsive calls.

because they were in Qualcomm's view the most likely to be responsive.  These 500 entries

represent less than .025% of the more than 4.1 million documents produced in this action.

Though the responsiveness rate from that small sample is high, the rate on the random-sample

batch is much lower.  And even of the entries upgraded to responsive in Qualcomm's sample of

500, over 340 were withheld on privilege grounds (and logged).  Qualcomm cites five specific re-

reviewed entries designated as non-responsive that it contends are responsive.  However, those

documents have been logged as privileged, and as such are not discoverable anyway.[8]  Again,

Apple will re-review the remainder of the 20,720 entries identified by Qualcomm.  But any meet

and confer after that review should take into account the marginal value of any further re-review

in light of the massive amount of information already produced and the burden on non-party

Apple.

**III.     Apple's Re-Review of 1,000 Privilege Log Entries.**

      A.     *Qualcomm's Position*

On April 30, Qualcomm received the results of Apple's re-review of 1,000 entries from its

amended privilege log.  From that re-review set, Apple produced 384 documents from 274

document families, reflecting a reversal rate of over 27% of the 1,000 entries Apple re-reviewed.

Pursuant to the Court's March 30 Order (ECF No. 664), Qualcomm has identified a subset of

documents that it may wish to submit, subject to the Court's discretion, for *in camera* review.

Qualcomm has shared this list with Apple.  Once the parties conclude meeting and conferring

about these documents, Qualcomm will advise the Court if there are any documents for which it

requests *in camera* review.

      B.     *Apple's Position*

On April 24, Apple served a revised privilege log pursuant to the Court's March 30 Order.

(ECF 664.)  Late today—three-and-a-half weeks later—Qualcomm identified entries from that

---

[8] The first four of the entries were inadvertently tagged as non-responsive.

log that it may wish to submit, subject to the Court's discretion, for *in camera* review.  Apple will review and then meet and confer with Qualcomm about those entries.

As to the results of the re-review, Apple maintains a privilege claim for 83% of the documents.  It produced 17% of the re-reviewed documents in full,[9] and it produced an additional 7% of the re-reviewed documents in redacted form.

## IV.   Additional Issues.

Apple's Production Status.  Consistent with the Court's March 7 recognition of the need for "clarification as to what's being produced and what's not being produced" (3/7/2018 Hr'g Tr. 40:17-20), Qualcomm has evaluated the combination of Apple's productions, original privilege logs, amended privilege logs and the Non-Responsive Log to try to trace which documents continue to be withheld as privileged, which have been withheld as non-responsive and which have been produced.  At this time, Qualcomm is concerned that there are discrepancies based on the information Apple has provided thus far.  Apple states that to the extent Qualcomm identifies further issues, Apple will be available to meet and confer.  The process remains ongoing.  No assistance from the Court is needed on this issue at this time.

Apple's Pending Notice/Consent Issues.  In the April 16, 2018 Status Report (ECF No. 687), Apple reported that it was withholding from production two document families pending resolution of third party notice/consent issues.  Apple anticipates that it will be able to produce those two document families by the end of next week.

---

[9] The 1,000 entries represented 1,000 document families with 1,567 total documents.  Of those documents, 272 were downgraded to not privileged.

Dated: May 18, 2018                       Respectfully submitted,

                                          By:   /s/ Eric J. Maurer

                                                William A. Isaacson
                                                wisaacson@bsfllp.com
                                                Karen L. Dunn
                                                kdunn@bsfllp.com
                                                Amy J. Mauser
                                                amauser@bsfllp.com
                                                BOIES SCHILLER FLEXNER LLP
                                                1401 New York Avenue, N.W.
                                                Washington, DC 20005
                                                Telephone:    (202) 237-2727
                                                Facsimile:    (202) 237-6131

                                                Edward H. Takashima
                                                etakashima@bsfllp.com
                                                BOIES SCHILLER FLEXNER LLP
                                                401 Wilshire Blvd, Suite 850
                                                Santa Monica, CA 90401
                                                Telephone:  (310) 752-2400
                                                Facsimile:  (310) 752-2490

                                                Attorneys for Non-Party APPLE INC.

                                          By:   /s/ Gary A. Bornstein

                                                Gary A. Bornstein
                                                Yonatan Even
                                                CRAVATH, SWAINE & MOORE LLP
                                                Worldwide Plaza
                                                825 Eighth Avenue
                                                New York, NY 10019-7475
                                                Tel:  (212) 474-1000
                                                Fax:  (212) 474-3700
                                                gbornstein@cravath.com
                                                yeven@cravath.com

Robert A. Van Nest
Eugene M. Paige
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Tel: (415) 676-2289
Fax: (415) 397-7188
rvannest@keker.com
abhansali@keker.com
epaige@keker.com

Richard S. Taffet
Willard K. Tom
Donn P. Pickett
Geoffrey T. Holtz
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: (415) 442-1000
Fax: (415) 442-1001
richard.taffet@morganlewis.com
willard.tom@morganlewis.com
donn.pickett@morganlewis.com
geoffrey.holtz@morganlewis.com

*Attorneys for Qualcomm Incorporated*

APPLE AND QUALCOMM'S JOINT STATUS REPORT
No. 17-cv-0220-LHK-NMC

## Appendix A

### Documents Qualcomm is Challenging

**Communications related to changing licensing practices**

| | |
|---|---|
| EM0cu600000001698120 (Row 40022) | EM0cu600000001722487 (Row 40877) |
| EM0cu700000001662329 (Row 43351) | EM0cu600000001733784 (Row 42016) |
| EM0cu700000001662330 (Row 43352) | EM0cu600000001735888 (Row 42342) |
| EM0cu700000001673826 (Row 44881) | EM0cu600000001735889 (Row 42343) |
| EM0cu700000001700183 (Row 48339) | EM0cu600000001735893 (Row 42346) |
| EM0cu700000001665604 (Row 44064) | EM0cu600000001702801 (Row 40380) |
| EM0cu700000001662355 (Row 43368) | EM0cu600000001676203 (Row 37865) |
| EM0cu700000001665583 (Row 44057) | EM0cu600000001683149 (Row 38621) |
| EM0cu700000001662367 (Row 43370) | EM0d4p00000009060849 (Row 43352) |
| EM0cu700000001662372 (Row 43373) | EM0cu600000001688112 (Row 39066) |
| EM0cu700000001665545 (Row 44052) | EM0cu600000001699669 (Row 40171) |
| EM0cu700000001665496 (Row 44041) | EM0cu600000001715886 (Row 40596) |
| EM0cu700000001665268 (Row 44020) | EM0cu600000001715893 (Row 40599) |
| EM0ctu00000002158677 (Row 29776) | EM0cu600000001716491 (Row 40645) |
| EM0d4p00000009065272 (Row 60789) | EM0cu600000001717272 (Row 40689) |
| EM0d4p00000009011650 (Row 42403) | |

**Communications related to regulatory investigations of Qualcomm**

| | |
|---|---|
| EM0ctu00000002122664 (Row 29757) | EM0cur00000002989244 (Row 36448) |
| EM0cur00000002980076 (Row 34340) | EM0cyd00000007205421 (Row 37806) |
| EM0cur00000002996944 (Row 37659) | EM0cur00000002985126 (Row 35492) |
| EM0cu600000001699707 (Row 40173) | EM0cur00000002990750 (Row 36835) |
| EM0cu600000001699709 (Row 40174) | EM0cur00000003007429 (Row 39718) |
| EM0c0x00000000047340 (Row 9115) | EM0cur00000003051211 (Row 43304) |
| EM0cur00000002986750 (Row 35880) | |

**Communications about letters to Qualcomm**

| | |
|---|---|
| EM0ctu00000002015552 (Row 16558) | EM0ctu00000002015554 (Row 16559) |

1

## **FILER'S ATTESTATION**

I, Gary A. Bornstein, am the ECF user whose identification and password are being used to file this Joint Status Report.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that the signatories on this document have concurred in this filing.

*/s/ Gary A. Bornstein*

Gary A. Bornstein

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28