1

2

3

4

5

6

7

8

9

10

11

United States District Court
Northern District of California

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>QUALCOMM INCORPORATED, et al.,<br><br>Defendants. | Case No. 17-CV-00220-LHK<br><br>**ORDER DENYING MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE AND GRANTING IN PART AND DENYING IN PART ADMINISTRATIVE MOTION TO SEAL**<br><br>Re: Dkt. Nos. 715, 729, 734 |

Before the Court are two motions: (1) a motion for relief from a nondispositive pretrial order of U.S. Magistrate Judge Nathanael M. Cousins, filed by Plaintiff Federal Trade Commission ("FTC"), ECF No. 715 ("Mot."); and (2) a motion to file under seal portions of the opposition to FTC's motion and supporting exhibits, filed by Defendant Qualcomm Inc. ("Qualcomm"), ECF No. 734.  Having considered the parties' submissions, the relevant law, and the record in this case, the Court DENIES FTC's motion for relief and GRANTS IN PART AND DENIES IN PART Qualcomm's motion to seal.

I.      **BACKGROUND**

The instant litigation concerns Qualcomm's patent-licensing practices.  Specifically, FTC

1

Case No. 17-CV-00220-LHK
ORDER DENYING MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE
JUDGE AND GRANTING IN PART AND DENYING IN PART ADMINISTRATIVE MOTION TO SEAL

alleges that Qualcomm has violated the antitrust laws by leveraging its market power in modem chips to impose unfair licensing terms and harm competition.  *See* ECF No. 1.  In pursuing those allegations, FTC has raised multiple discovery disputes in an effort to obtain Qualcomm's internal ratings of its patents and patent applications.  ECF Nos. 249, 673.  Whether those ratings are protected by attorney–client privilege is the core issue in FTC's instant motion for relief.

In a previous dispute commencing in late October 2017, FTC opposed Qualcomm's clawback of a presentation slide, which included an analysis based on Qualcomm's patent ratings. *See* ECF No. 249 at 2–3.  Qualcomm explained that "the redacted slide was created by and at the request of [Qualcomm's in-house counsel] to provide legal advice to Qualcomm's Board and executives."  *Id.* at 5.  Judge Cousins was "persuaded by Qualcomm's assertion of the attorney– client privilege" and denied FTC's motion on November 13, 2017.  ECF No. 290.  On November 27, 2017, FTC filed a motion for relief from Judge Cousins's nondispositive pretrial order; that motion was deemed denied on January 8, 2018.  ECF Nos. 334, 456.

The current dispute began on April 5, 2018.  In a joint discovery statement submitted to Judge Cousins, FTC requested that "Qualcomm immediately produce the contents of its patent rating database, and any related documents concerning its patent-related ratings and metrics which Qualcomm has withheld."  ECF No. 673 at 3.  In particular, FTC asserted that the primary purpose of the ratings was to provide business, not legal, advice.  *Id.* at 1–2.  Qualcomm disagreed, contending that "the evidence demonstrates that ratings are primarily used for legal purposes: to develop patent prosecution and litigation strategies, including to assess the suitability of patents for assertion in litigation."  *Id.* at 4.

On April 18, 2018, Judge Cousins held a hearing on the privilege issue.  ECF No. 691. FTC argued that Qualcomm's former CEO Paul Jacobs testified that the ratings "are used as metric for value that's used to decide where and how much money to invest in these inventions." Mot., Ex. 1 at 25:14–16.  In response, Qualcomm relied on declarations and an interrogatory response providing that the ratings reflect legal advice about patent prosecution and litigation

2

1    because they are prepared by attorneys and based on judgments about the scope and enforceability

2    of Qualcomm's patents.  *Id.* at 28:3–21.

3          At the end of the hearing, Judge Cousins denied FTC's motion; his ruling was later

4    memorialized in a minute order.  ECF No. 691.  Judge Cousins credited Qualcomm's declarations

5    and interrogatory responses and reasoned that Qualcomm had substantiated its assertion of

6    attorney–client privilege because the submitted evidence was sufficient to establish that the ratings

7    serve a legal purpose.  Mot., Ex. 1 at 30:20–24.

8          On May 2, 2018, FTC filed the instant motion for relief from Judge Cousins's

9    nondispositive pretrial order.  *See* Mot.  On May 3, 2018, the Court issued an Order Setting

10   Schedule for FTC's Motion for Relief from Magistrate Judge's Nondispositive Pretrial Order.

11   ECF No. 718.  On May 10, 2018, Qualcomm timely filed an opposition.  ECF No. 734-2 ("Opp.").

12   At the same time, Qualcomm filed a motion to seal portions of the opposition and supporting

13   exhibits.  ECF No. 734.  On May 17, 2018, FTC timely filed a reply.  ECF No. 741 ("Reply").

## II.    LEGAL STANDARD

15         The district court may designate any nondispositive pretrial matter to be determined by a

16   magistrate judge, whose ruling on the matter may be modified or set aside only if "clearly

17   erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).  A magistrate

18   judge's factual determinations are reviewed for clear error, a standard that allows the district court

19   to overturn those factual determinations only when the court reaches a "definite and firm

20   conviction that a mistake has been committed."  *Perry v. Schwarzenegger*, 268 F.R.D. 344, 348

21   (N.D. Cal. 2010).  In addition, a magistrate judge's legal conclusions are reviewed de novo to

22   determine whether they are contrary to law.  *Id.*

## III.   DISCUSSION

24         The Court first addresses FTC's motion for relief from Judge Cousins's nondispositive

25   pretrial order, then addresses Qualcomm's administrative motion to file under seal.

26

27

28   Case No. 17-CV-00220-LHK
ORDER DENYING MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE
JUDGE AND GRANTING IN PART AND DENYING IN PART ADMINISTRATIVE MOTION TO SEAL

United States District Court
Northern District of California

United States District Court
Northern District of California

**A.      FTC's Motion for Relief**

As a general matter, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Here, FTC has asked Qualcomm to "produce the contents of its patent rating database, and any related documents concerning its patent-related ratings and metrics." ECF No. 673 at 3. The relevant question is whether Qualcomm properly withheld the requested information on the basis that the information is protected by attorney–client privilege.

Attorney–client privilege is an evidentiary rule that prevents compelled disclosure in judicial proceedings of certain communications between clients and their attorneys. *See In re Pac. Pictures Corp.*, 679 F.3d 1121, 1126 (9th Cir. 2012). The privilege recognizes "the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation" in order to provide sound legal advice. *Trammel v. United States*, 445 U.S. 40, 51 (1980). Because the privilege encroaches on the truth-finding process, the privilege's scope is limited by its underlying justification—namely, to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *In re Pac. Pictures*, 679 F.3d at 1126 (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).

The Ninth Circuit has developed an eight-factor test for determining the applicability of attorney–client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (quoting *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n.2 (9th Cir. 1992)). Here, the parties' dispute centers on factor (3), which requires that Qualcomm's patent ratings relate to the purpose of obtaining legal advice. As the party asserting the privilege, Qualcomm bears the burden of establishing that the

4

1  element is met.  *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010).

2        Based on Judge Cousins's unchallenged factual findings, Reply at 1, the Court concludes

3  that Qualcomm has satisfied its burden of showing that the ratings are privileged legal assessments

4  of Qualcomm's patents and patent applications.  As a starting point, the ratings are prepared by

5  lawyers—namely, in-house attorneys or outside legal counsel.  Opp., Ex. 3 ¶ 8.  Those lawyers

6  sometimes receive input and information from non-lawyers (such as engineers and other

7  personnel), but the lawyers have the ultimate responsibility of assigning ratings.  *Id.* ¶¶ 4–5, 8.

8  Thus, the record supports that the persons who craft the ratings for the client, Qualcomm, are

9  attorneys.  That conclusion, however, does not end the analysis because "[t]he fact that a person is

10 a lawyer does not make all communications with that person privileged."  *United States v. Martin*,

11 278 F.3d 988, 999 (9th Cir. 2002).

12       More importantly, the legal nature of the ratings is apparent from the work entailed in

13 formulating them.  The ratings consist of either a color-coded ranking ("Gold," "Red," "Yellow,"

14 or "Green") or a numerical ranking (from "0" or "1" to "5"), depending on when the patent or

15 patent application was assessed.  Opp., Ex. 1 at 11, 13.  The numerical ranking is slightly more

16 detailed—patents and patent applications are scored in individual categories and then assigned an

17 overall score.  *Id.* at 13.  In either event, the ratings are based on the reviewing attorneys' decisions

18 about the scope, validity (or patentability), and enforceability of Qualcomm's patents and patent

19 applications.  Opp., Ex. 2 ¶ 5.  These judgments are quintessential legal determinations about the

20 strength of Qualcomm's patent rights and therefore subject to attorney–client privilege.  *See In re*

21 *Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000).

22       FTC attempts to override that conclusion by pointing out that the ratings also take into

23 account whether the patent protects an improvement or important feature in Qualcomm's products

24 and whether the patent is likely to be deemed essential to a technological standard.  Mot., Ex. 1 at

25 29:12–3; Reply at 1 & n.1.  But contrary to FTC's assertion, those inquiries are not purely

26 technical or commercial in nature.  Instead, such evaluations require Qualcomm's attorneys to

27

28

United States District Court
Northern District of California

5

provide legal opinions about the coverage of the patents.  *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015) (holding that the ultimate interpretation of a claim is a legal question).  Nor does the fact that Qualcomm's attorneys consider technical material in making their recommendations automatically render their assistance non-legal.  An understanding of the underlying technology is often integral to discerning patent scope and thus may form a part of legal advice.  *See In re Spalding Sports*, 203 F.3d at 806 ("[R]equests for legal advice on patentability . . . necessarily require the evaluation of technical information such as prior art.").  The law operates similarly outside the patent sphere—as one example, a tax lawyer may draw on accounting information and principles to reach legal conclusions.  *Cf.* 1 Paul R.Rice et al., Attorney–Client Privilege in the U.S. § 7:11 (noting that "if a lawyer requires the assistance of an accountant to perform legal services, communications between the attorney and the accountant he retained [may] be protected under the attorney–client privilege" where the accountant plays a consultative role); *accord United States v. Judson*, 322 F.2d 460, 462 (9th Cir. 1963).

Furthermore, the ratings are created for the purpose of informing Qualcomm's litigation and patent prosecution strategy, not for the purpose of monetization.  On this point, Judge Cousins found persuasive an interrogatory response and two sworn declarations from Qualcomm attorneys.  Mot., Ex. 1 at 30:21–31:3.  As one declaration explains, while the ratings convey Qualcomm's attorneys' legal analysis of the scope and strength of Qualcomm's patent portfolio, the ratings are not an "attempt to assess or estimate the pecuniary value of any Qualcomm patent."  Opp., Ex. 3 ¶¶ 8–10.  A review of the confidential description of Qualcomm's ratings system confirms that the ratings measure legal issues like scope and patentability.  Even FTC's own authority recognizes that attorney–client privilege may attach to ratings that "assist in making determinations of patentability or any of the other legal aspects of patent prosecution."  *TCL Commc'ns Tech. Holdings Ltd. v. Telefonaktenbologet LM Ericsson*, No. 14-CV-1400341-JVS, 2016 WL 6921124, at *2 (C.D. Cal. May 3, 2016).

FTC counters that certain aspects of patent prosecution strategy—such as "usefulness to

Case No. 17-CV-00220-LHK
ORDER DENYING MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE
JUDGE AND GRANTING IN PART AND DENYING IN PART ADMINISTRATIVE MOTION TO SEAL

the business of obtaining a patent in a particular field" and "determinations of willingness to spend a certain amount of resources to obtain a particular anticipated patent"—are more properly characterized as commercial than legal. *Id.* FTC cites to testimony by Qualcomm's former CEO providing that the ratings were "used . . . to make a decision about where in the world we would file patents and then sustain them." Mot., Ex. 2 at 130:23–24. However, FTC's argument fails to appreciate the distinction between the nature of the advice itself and decisions made based on that advice. In FTC's cited case, the magistrate judge concluded that the ratings served "a business function" because the ratings themselves were nothing more than "determination[s] of whether resources should be allocated to a particular patent." Mot., Ex. 3 at 5. Here, in contrast, the ratings are legal evaluations of the strength of Qualcomm's patents and patent applications. Privilege is not defeated merely because the client may in turn utilize that privileged legal advice to make real-world business decisions. *See United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996) ("A client is entitled to hire a lawyer, and have his secrets kept, for legal advice regarding the client's business affairs.").

The Court also rejects FTC's final contention that attorney–client privilege is inapplicable because "disclosing a color rating (e.g., 'red') or a numerical rating (e.g., '3') would not reveal anything about what the attorney told her client." Mot. at 5. Although this argument may have some surface-level appeal, it fails for the reasons already discussed. In particular, as the Court has described, Qualcomm has shown that the ratings themselves are legal assessments of its patents and patent applications. To be sure, the ratings do not lay out the specifics of the attorneys' thinking, but they do indicate a legal judgment with a defined meaning. For example, "[i]n the color rating system," with regard to the relevant criteria, "gold reflects the highest of the four possible ratings assigned to patent cases." Opp., Ex. 1 at 12. In this way, the ratings here are quite unlike the discoverable "financial data and calculations" in *William F. Shea, LLC v. Bonutti Research, Inc.*, No. 10-CV-00615-GLF, 2013 WL 1499609 (S.D. Ohio Apr. 11, 2013). There, the court explained that disclosure of the financial data could not divulge legal advice because the

United States District Court
Northern District of California

1    parties agreed that the data was "just numbers" providing valuations of certain patents.  *Id.* at *2.

2    Perhaps anticipating a case like this one, the court expressly distinguished communications

3    "contain[ing] legal advice with respect to the strength of the patent claims."  *Id.*

4              In these circumstances, Qualcomm has met its burden of showing that its internal patent

5    ratings relate to the purpose of securing legal advice.  The Court finds that protection from

6    disclosure is appropriate because the ratings were "necessary to obtain informed legal advice

7    which might not have been made absent the privilege."  *Fisher v. United States*, 425 U.S. 391, 403

8    (1976).  Accordingly, Judge Cousins's ruling is affirmed and FTC's motion for relief is DENIED.

9    **B.    Qualcomm's Motion to Seal**

10             "Historically, courts have recognized a 'general right to inspect and copy public records

11   and documents, including judicial records and documents.'"  *Kamakana v. City & Cnty. of*

12   *Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435

13   U.S. 589, 597 & n.7 (1978)).  Accordingly, when considering a sealing request, "a strong

14   presumption in favor of access is the starting point."  *Id.* (internal quotation marks omitted).

15             Parties seeking to seal judicial records relating to motions that are "more than tangentially

16   related to the underlying cause of action," *Ctr. for Auto Safety v. Chrysler Grp.*, 809 F.3d 1092,

17   1099 (9th Cir. 2016), bear the burden of overcoming the presumption with "compelling reasons

18   supported by specific factual findings that outweigh the general history of access and the public

19   policies favoring disclosure," *Kamakana*, 447 F.3d at 1178–79 (internal quotation marks and

20   citation omitted).  Compelling reasons justifying the sealing of court records generally exist "when

21   such 'court files might have become a vehicle for improper purposes,' such as the use of records to

22   gratify private spite, promote public scandal, circulate libelous statements, or release trade

23   secrets."  *Id.* at 1179 (quoting *Nixon*, 435 U.S. at 598).  However, "[t]he mere fact that the

24   production of records may lead to a litigant's embarrassment, incrimination, or exposure to further

25   litigation will not, without more, compel the court to seal its records."  *Id.*

26             Records attached to motions that are "not related, or only tangentially related, to the merits

27

28   Case No. 17-CV-00220-LHK
     ORDER DENYING MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE
     JUDGE AND GRANTING IN PART AND DENYING IN PART ADMINISTRATIVE MOTION TO SEAL

of a case" are not subject to the strong presumption of access. *Ctr. for Auto Safety*, 809 F.3d at 1099; *see also Kamakana*, 447 F.3d at 1179 ("[T]he public has less of a need for access to court records attached only to non-dispositive motions because those documents are often unrelated, or only tangentially related, to the underlying cause of action." (internal quotation marks and citation omitted)). Parties moving to seal records attached to motions unrelated or only tangentially related to the merits of a case must meet the lower "good cause" standard of Rule 26(c) of the Federal Rules of Civil Procedure. *Ctr. for Auto Safety*, 809 F.3d at 1098–99; *Kamakana*, 447 F.3d at 1179–80. The "good cause" standard requires a "particularized showing" that "specific prejudice or harm will result" if the information is disclosed. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002) (citation omitted); *see* Fed. R. Civ. P. 26(c). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning" will not suffice. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (citation omitted).

Pursuant to Rule 26(c), a trial court has broad discretion to permit sealing of court documents for, inter alia, the protection of "a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 26(c)(1)(G). The Ninth Circuit has adopted the definition of "trade secrets" set forth in the Restatement of Torts, holding that "[a] trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Clark v. Bunker*, 453 F.2d 1006, 1009 (9th Cir. 1972) (quoting Restatement (First) of Torts § 757 cmt. b). "Generally [a trade secret] relates to the production of goods. . . . It may, however, relate to the sale of goods or to other operations in the business. . . ." *Id.* (ellipses in original). In addition, the U.S. Supreme Court has recognized that sealing may be justified to prevent judicial documents from being used "as sources of business information that might harm a litigant's competitive standing." *Nixon*, 435 U.S. at 598.

In addition, parties moving to seal documents must comply with the procedures established

9

United States District Court
Northern District of California

1   by Civil Local Rule 79-5.  Pursuant to that rule, a sealing order is appropriate only upon a request

2   that establishes the document is "sealable," or "privileged, protectable as a trade secret or

3   otherwise entitled to protection under the law."  Civ. L. R. 79-5(b).  "The request must be

4   narrowly tailored to seek sealing only of sealable material, and must conform with Civil L.R. 79-

5   5(d)."  *Id.*  Civil Local Rule 79-5(d), moreover, requires the submitting party to attach a "proposed

6   order that is narrowly tailored to seal only the sealable material" and that "lists in table format

7   each document or portion thereof that is sought to be sealed," as well as an "unredacted version of

8   the document" that "indicate[s], by highlighting or other clear method, the portions of the

9   document that have been omitted from the redacted version."  Civ. L. R. 79-5(d)(1).

10      Here, Qualcomm seeks to seal portions of three exhibits attached to its opposition and the

11  portions of the opposition that reference those sealed portions of the exhibits.  ECF No. 734.

12  Qualcomm's opposition to FTC's motion for relief from Judge Cousins's nondispositive pretrial

13  order deals with a privilege issue that is "only tangentially related[] to the merits of [the] case."

14  *Ctr. for Auto Safety*, 809 F.3d at 1099.  Therefore, the Court applies the lower "good cause"

15  standard of Rule 26(c) of the Federal Rules of Civil Procedure.  *Id.* at 1098–99; *see also Campbell*

16  *v. Facebook Inc.*, No. 13-CV-05996-PJH, 2016 WL 7888026, at *2 (N.D. Cal. Oct. 4, 2016)

17  (applying "good cause" standard to "discovery matter").

18      Qualcomm advances two legitimate justifications to support the sealing of some of the

19  information in the exhibits appended to Qualcomm's opposition.  First, Qualcomm contends that

20  certain information "describes circumstances under which Qualcomm sought and received legal

21  advice and the purposes of such advice."  ECF No. 734 at 2.  Courts have accepted attorney–client

22  privilege as a sufficient justification for sealing, even under the higher "compelling reason"

23  standard.  *See In re Hewlett-Packard Co. S'holder Derivative Litig.*, No. 15-16688, 2017 WL

24  5712130, at *4 (9th Cir. Nov. 28, 2017) (affirming sealing decision where "[t]he special master

25  found that HP provided compelling reasons to justify its sealing motion, including that the

26  documents at issue included . . . material protected by the attorney–client privilege"); *Lugosch v.*

27

28
ORDER DENYING MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE
JUDGE AND GRANTING IN PART AND DENYING IN PART ADMINISTRATIVE MOTION TO SEAL

10

1   *Pyramid Co. of Onondaga*, 435 F.3d 110, 125 (2d Cir. 2006) (stating that "attorney–client

2   privilege might well be such a compelling reason" to seal); *WatchGuard Techs., Inc. v. iValue*

3   *Infosolutions Pvt. Ltd.*, No. 15-CV-01697-BAT, 2017 WL 3581624, at *2 (W.D. Wash. Aug. 18,

4   2017) (collecting cases); *Guidiville Rancheria of Cal. v. United States*, No. 12-CV-01326-YGR,

5   2013 WL 6571945, at *9 (N.D. Cal. Dec. 13, 2013) ("The document is covered by the attorney–

6   client privilege, which establishes compelling reasons for sealing it from the public record.").

7   Therefore, the exhibits may be sealed to the extent that they reveal confidential legal advice.

8          Second, Qualcomm posits that the exhibits "contain confidential business information with

9   respect to assessments of [Qualcomm's] patents and patent applications by counsel."  ECF No.

10  734 at 2.  Under Federal Rule of Civil Procedure 26(c)(1)(G), the Court may seal information that

11  qualifies as "a trade secret or other confidential research, development, or commercial

12  information."  Because Qualcomm would be competitively harmed by disclosure of such

13  information, *see* ECF No. 734-1 ¶ 9, the exhibits may be sealed to the extent that they contain

14  confidential business information.

15         Accordingly, the Court finds that good cause exists to seal material that contains

16  confidential legal advice or confidential business information.  To the extent that Qualcomm's

17  request is narrowly tailored to cover those categories, the Court grants its sealing request.  Where

18  Qualcomm's request goes beyond those categories including by redacting publicly disclosed

19  information, the Court finds sealing inappropriate.  With these standards in mind, the Court

20  GRANTS in part and DENIES in part Qualcomm's motion to seal as follows:

| Document | Line/Page | Ruling |
|---|---|---|
| Opp. (ECF No. 734-2) | Page 2, lines 15–23 | DENIED.  As explained below with respect to the individual exhibits, the information in these lines appears publicly in documents filed on the docket. |
| Ex. 1 (ECF No. 734-3) | Page 11, line 25– Page 12, line 14 | DENIED.  The information in these lines appears publicly in Opp. at 2–3, 5. |
|  | Page 12, line 16– Page 13, line 7 | GRANTED. |
|  | Page 13, lines 13–19 | DENIED.  The information in these lines appears publicly in Opp. at 2–3, 5. |

11

| Document | Line/Page | Ruling |
|---|---|---|
| | Page 13, line 20– Page 14, line 20 | GRANTED. |
| | Page 14, lines 21–22 | DENIED. The information in these lines appears publicly in Reply at 1 & n.1. |
| | Page 14, line 27– Page 15, line 19 | GRANTED. |
| | Page 15, lines 20–24 | DENIED. The information in these lines appears publicly in Opp. at 3 n.2; Reply at 1 n.1; and Mot., Ex. 1 at 29:12–23. |
| | Page 15, line 25– Page 16, line 11 | GRANTED. |
| | Page 16, lines 12–17 | DENIED. The information in these lines appears publicly in ECF No. 673 at 4. |
| Ex. 2 (ECF No. 734-4) | Portions of ¶ 3 | GRANTED. |
| | ¶ 4 | GRANTED. |
| | ¶ 5 | DENIED. The information in these lines appears publicly in Opp. at 2–3, 5. That document was filed after the Court's prior sealing decision. ECF No. 501. |
| | ¶ 6 | GRANTED as to the second and third sentences, but DENIED as to the first sentence. The information in the first sentence appears publicly in Opp., Ex. 1 at 12. That document was filed after the Court's prior sealing decision. ECF No. 501. |
| | ¶ 7 | DENIED. The information in this paragraph appears publicly in Opp. at 3. That document was filed after the Court's prior sealing decision. ECF No. 501. |
| Ex. 3 (ECF No. 734-5) | Portions of ¶ 7 | GRANTED. |
| | ¶ 8 | DENIED. The information in these lines appears publicly in Opp. at 2–3, 5. |

## IV.   CONCLUSION

For the foregoing reasons, the Court DENIES FTC's motion for relief from Judge Cousins's nondispositive pretrial order and GRANTS IN PART AND DENIES IN PART Qualcomm's motion to seal.

**IT IS SO ORDERED.**

Case No. 17-CV-00220-LHK
ORDER DENYING MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE
JUDGE AND GRANTING IN PART AND DENYING IN PART ADMINISTRATIVE MOTION TO SEAL

1    Dated: May 22, 2018

2

3                                     LUCY H. KOH
                                      United States District Judge

United States District Court
Northern District of California

Case No. 17-CV-00220-LHK
ORDER DENYING MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE
JUDGE AND GRANTING IN PART AND DENYING IN PART ADMINISTRATIVE MOTION TO SEAL