Jennifer Milici, D.C. Bar No. 987096
Daniel Matheson, D.C. Bar No. 502490
J. Alexander Ansaldo, Va. Bar No. 75870
Joseph R. Baker, D.C. Bar No. 490802
Elizabeth A. Gillen, Ca. Bar No. 260667
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
Tel:  (202) 326-2912; Fax (202) 326-3496
*jmilici@ftc.gov*

Lin W. Kahn, Ca. Bar No. 261387
Federal Trade Commission
901 Market Street, Suite 570
San Francisco, CA 94103
Tel:  (415) 848-5115; Fax:  (415) 848-5184
*lkahn@ftc.gov*

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

SUSMAN GODFREY L.L.P.
Kalpana Srinivasan (237460)
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067
(310) 789-3100; (310) 789-3006 (fax)
*ksrinivasan@susmangodfrey.com*

Plaintiffs' Interim Co-Lead Counsel

CRAVATH, SWAINE & MOORE LLP
Gary A. Bornstein (*pro hac vice*)
Yonatan Even (*pro hac vice*)
825 Eighth Avenue
New York, NY 10019-7475
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700
*gbornstein@cravath.com*
*yeven@cravath.com*

KEKER, VAN NEST & PETERS LLP
Robert A. Van Nest
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  (415) 676-2289
Facsimile:  (415) 397-7188
*rvannest@keker.com*

MORGAN, LEWIS & BOCKIUS LLP
Donn P. Pickett (SBN 72257)
Geoffrey T. Holtz (SBN 191370)
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone:  (415) 442-1000
Facsimile:  (415) 442-1001
*Donn.pickett@morganlewis.com*
*Geoffrey.holtz@morganlewis.com*

Attorneys for Defendant
QUALCOMM INCORPORATED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION | Case No. 5:17-CV-00220-LHK-NMC |
| Plaintiff, | |
| v. | **DEFENDANT QUALCOMM INCORPORATED, PLAINTIFF FEDERAL TRADE COMMISSION AND MDL PLAINTIFFS' JOINT STATUS REPORT** |
| QUALCOMM INCORPORATED, a Delaware corporation, | |
| Defendant. | Judge:  Hon. Nathanael M. Cousins |
| IN RE QUALCOMM ANTITRUST LITIGATION | Case No. 5:17-MD-02773-LHK-NMC |

Plaintiffs Federal Trade Commission ("FTC") and the MDL Plaintiffs (together, "Plaintiffs") and Defendant Qualcomm Incorporated ("Qualcomm") hereby submit this Joint Status Report pursuant to Magistrate Judge Cousins's March 30, 2018 Order (ECF No. 664) and the April 4, 2018 Order Regarding Privilege Re-Review for Qualcomm and Apple (MDL ECF No. 427; the "Re-Review Order").

## A.     Status of Re-Review

Since the last Joint Status Report (ECF No. 739), submitted on May 16, 2018, Qualcomm has made two productions as a result of the ongoing re-review.  On May 29, 2018, Qualcomm produced revised privilege log entries for 3,442 documents that remained on its privilege logs after re-review, as well as new log entries for 3,580 previously redacted documents in which redactions were not changed.  Qualcomm produced 1,995 documents (either in redacted form or without redactions) that had previously been withheld as privileged, and Qualcomm produced 936 previously redacted documents on which it reduced or eliminated redactions.  The newly redacted documents, including those produced from Qualcomm's privilege log and those produced with reduced redactions, were logged as well.

On June 12, 2018, Qualcomm produced revised privilege log entries for 8,279 documents that remained on its privilege logs after re-review, as well as new log entries for 3,165 previously redacted documents in which redactions were not changed.  Qualcomm produced 2,464 documents (either in redacted form or without redactions) that had previously been withheld as privileged, and Qualcomm produced 889 previously redacted documents on which it reduced or eliminated redactions.  The newly redacted documents, including those produced from Qualcomm's privilege log and those produced with reduced redactions, were logged as well.

Qualcomm estimates that it completed re-review of a total of 101,873 redacted or withheld documents by June 12, 2018, and that approximately 8,264 documents remain to be re-reviewed by July 1, 2018.  As a result of this re-review process, to this point, Qualcomm has produced 20,308 documents (either in redacted form or without redactions) that had previously

1   been withheld as privileged, and 10,759 previously redacted documents on which it reduced or

2   eliminated redactions.  Some but not all of the previously withheld or redacted content had

3   already been produced in other documents before the re-review productions.

4       **B.      Plaintiffs' Request for *In Camera* Review**

5           On June 15, 2018, Qualcomm and the Plaintiffs met and conferred with respect to certain

6   documents that Plaintiffs intended to request permission to submit for *in camera* review.  As a

7   result of this meet and confer, Qualcomm and Plaintiffs narrowed the number of documents to be

8   submitted for *in camera* review to the seven documents discussed below.

9                                    **Plaintiffs' Position**

10          The parties met and conferred on Friday, June 15 regarding 25 redacted documents and

11  58 privilege log entries that Plaintiffs had identified to Qualcomm in anticipation of requesting *in*

12  *camera* review from the Court.  Qualcomm produced either in full or in part materials from 9 of

13  the 25 redacted documents (36%) and 28 of the 58 log entries (48%) and provided further

14  explanations for the redacted documents and log entries that they were continuing to withhold.

15  Plaintiffs further reviewed the log entries in question and are now requesting that the Court do an

16  *in camera* review of four redacted documents and three privilege log entries: entries 17157 and

17  25327 from the ESI Investigation Privilege Log, and entry 74157 from the ESI Litigation

18  Privilege Log.

19      1.  **QNDCAL05080969** is an entirely redacted 9 page memorandum referred to as a White
20          Paper dealing with the likely "Competitive Response" to a contemplated business
21          strategy. The Court should review this document because (1) much of its content appears
            to relate solely to business concerns, as demonstrated by non-privileged summaries of its
22          content about which Qualcomm's witnesses testified at length during their depositions;
            and (2) it was shared with outside parties.
23
            Qualcomm claims that the redacted memorandum is duplicative of a document that the
24          FTC previously asked the Court to review. *See* ECF No. 265 at 1-2.[1] At the time, the

25      _____
26          [1] This claim is inconsistent with Qualcomm's changing privilege assertions. In the previous
        dispute, Qualcomm asserted that the memo at issue "contains Derek Aberle's legal analysis
        relating to patent claims and existing and potential litigation." Y. Even email to D. Matheson
27

28

Court found no good cause to review the document. Now, the FTC has uncovered information that the White Paper addresses at least one purely business-related topic: Qualcomm's assessment of the likely "Competitive Response" to a business proposal. This is an exclusively business issue that Qualcomm concedes is not privileged – indeed, Qualcomm witnesses testified at length about a summary of this portion of the White Paper.[2] As a result of this additional information, the Court should now review the White Paper to determine if it represents non-privileged business advice provided by an executive with a J.D.,[3] or/and a non-privileged communication which would have been transmitted to provide information on the pros and cons of a business course of action, "even if there had been no perceived interest in securing legal advice."[4]

Moreover, QNDCAL05080969 was sent to individuals not employed by Qualcomm. The document's cover email is addressed to "QUALCOMM Board Special Committee Participants," which appears to include outside directors as well as attorneys and investment bankers who were not retained by Qualcomm. *See* QNDCAL05080915 (cover email). While in some circumstances a Board Special Committee could be equivalent to Qualcomm itself, Qualcomm has not made this showing here, nor have they claimed a common legal interest with the Special Committee.

2.   **QNDCAL05865173** redacts a half of a business proposal that Qualcomm intends to make to Samsung. The email summarizes (a) the "carrots" Qualcomm intends to offer to Samsung, and (b) the "asks" Qualcomm intends to make of Samsung in exchange for the carrots. Qualcomm admits that all content relating to the carrots is a non-privileged business communication about the business positions to take during a negotiation with a counterparty. Yet Qualcomm claims that it can withhold the "asks" because they "reflect"

---

(Oct. 31, 2017). Now, Qualcomm describes the redacted memorandum as "Memorandum disclosing legal advice regarding corporate reorganization (Paul Syrowik revising draft memorandum)."

[2] The FTC has not filed supporting documents with the Court to avoid unnecessary motions to seal. The FTC's information is based on: Deposition of Steven R. Altman (March 14, 2018) at 179-187 (testifying regarding CX6992); Q2014FTC03049268 at Q2014FTC03049309-310 (slide titled "Competitive Response to Spin", next slide titled "Spin Impact on Litigation Issues.")

[3] *In re Vioxx Products Liability Litigation*, 501 F.Supp.2d 789, 797 (E.D. La. 2007) ("courts require a clear showing that the attorney was acting in his professional legal capacity before cloaking documents in the privilege's protection.") (quoting Paul R. Rice, 1 Attorney-Client Privilege in the United States, § 7:2, pp. 24-25 (Thomson West 2d ed.1999)).

[4] *Fourth Age Ltd. v. Warner Bros. Digital Dist.*, 2015 WL 12720324 (C.D. Cal. Aug. 6, 2015) at *6 ("'No privilege can attach to any communication as to which a business purpose would have served as a *sufficient cause*, *i.e.*, any communication that would have been made because of a business purpose, even if there had been no perceived additional interest in securing legal advice.'") (emphasis in original) (quoting *McCaugherty v. Siffermann*, 132 F.R.D. 234, 238 (N.D. Cal. 1990)).

a communication with counsel. A series of business "asks" that Qualcomm intends to make of a counter-party in negotiations is not privileged – even if counsel approved these business "asks" (or even suggested them), this does not constitute legal advice. Instead, it constitutes business advice related to a business negotiation.

3. **QNDCAL05865159** redacts a small portion of a document that relates to "patent rating" issues that have been briefed on previous occasions. The Court should review the redacted portion to determine if it represents high-level summaries of Qualcomm's patent portfolio that can be disclosed without revealing the content of a privileged communication.

4. **QNDCAL05865161** redacts a small portion of a document that relates to "patent rating" issues that have been briefed on previous occasions. The Court should review the redacted portion to determine if it represents high-level summaries of Qualcomm's patent portfolio that can be disclosed without revealing the content of a privileged communication.

5. **Log Entry No. 17157** is a log entry concerning internal e-mail correspondence initiated by Qualcomm's CEO regarding a proposed email to a senior executive at Apple. The Court should review the e-mail communication to determine if any portion of the e-mail communication is related to business negotiation and can be produced in unredacted form.

6. **Log Entry No. 25327** is a log entry concerning Qualcomm's preparation of submissions to a third party regarding Qualcomm's licensing business practices. The Court should review the documents to determine if portions of the material intended for public statement can be produced in unredacted form. *See Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 78 (S.D.N.Y. 2010) (corporate communications regarding public statements on anticipated litigation not privileged).

7. **Log Entry No. 74157** is a log entry for an email communication that, based on its title, refers to ongoing business negotiations with Apple and includes Qualcomm executives serving in business roles, including Derek Aberle, president of Qualcomm, and Eric Reifschneider, general manager of Qualcomm Technology Licensing. The Court should review the e-mail communication to determine if any portion of the string is related to business advice and can be produced in unredacted form.

## Qualcomm's Position

Plaintiffs' claims that the seven documents are not privileged are unfounded.  To the extent the Court contemplates ordering the production of any of these documents, Qualcomm respectfully requests the opportunity to submit declarations providing the evidentiary foundation for its assertions of privilege over any such document.

1. **QNDCAL05080969**:  This Court has already rejected the FTC's request for the Court to review this document *in camera*.  (ECF No. 265 (motion); ECF No. 274 (order); Nov. 6, 2017 Hr'g Tr. at 34:12-15 ("As to Docket 265 where the FTC is requesting *in camera* review, admitting that it's a shot in the dark, I don't find that the FTC has met its burden to persuade me to engage in *in camera* review at this point in time.").)

Nothing has changed.  The White Paper was authored by a lawyer and provides legal advice regarding actions that third parties might take with respect to pending private litigations and government proceedings, and includes a discussion of Qualcomm's potential legal responses to those actions.  And Plaintiffs' waiver claim borders on the frivolous as Qualcomm's Board of Directors is not a third party.

*First*, the document was initially drafted by Derek Aberle, a lawyer whose job responsibilities at the time included providing legal advice, and then revised by another lawyer, Paul Syrowik, who had exclusively legal responsibilities.  When Mr. Aberle prepared the document in 2007, he was not, as Plaintiffs dismissively assert, just "an executive with a J.D."  Prior to joining Qualcomm in 2000, Mr. Aberle represented the company as outside counsel for several years at the law firms of Pillsbury Madison & Sutro and Heller Ehrman.  At Qualcomm, he had a succession of purely legal job positions:  Legal Counsel; Legal Counsel, Senior; and Vice President and Legal Counsel.  In June of 2005, he took the job he had when authoring the documents at issue, Senior Vice President and General Manager of CDMA Licensing.  As Mr. Aberle testified, while in that position, he continued to provide legal advice to the company:

> "Q:  In 2005, as general manager of QTL, did you have responsibilities to provide legal advice?
>
> A:  I did continue to provide legal advice in various aspects, yes."[5]

The document at issue plainly constitutes such advice from Mr. Aberle (as revised by Mr. Syrowik).  This nine-page "White Paper" was part of a package of materials prepared for an October 2007 meeting of a Special Committee of Qualcomm's Board of Directors and a January 2008 special meeting of Qualcomm's Board of Directors to consider a potential corporate restructuring.  In the document, Messrs. Aberle and Syrowik provide legal advice on how the potential restructuring would affect existing litigation, potential litigation and other legal strategies that companies could pursue.  At the time they prepared this analysis, Qualcomm was engaged in extensive litigation with both Nokia and Broadcom, and the first five of the nine pages in the White Paper analyze how the potential restructuring could affect those two litigations, as well as potential litigation with another company.  Those five pages include counsel's assessments of claims and defenses that could be asserted by Qualcomm or its litigation adversaries and how the potential restructuring could affect the strength (and availability) of such claims and defenses.

---

[5] Aberle Oct. 6, 2016 IH Tr. at 8:22-8:25.

The remaining four pages are equally focused on legal advice. At the time the document was created, Qualcomm was involved in legal proceedings conducted by regulators in Europe, Korea and Japan, and the White Paper analyzes actions that competitors could take in response to the potential restructuring in the context of those proceedings and other potential regulatory actions. The White Paper also contains legal advice from Messrs. Aberle and Syrowik regarding potential arbitration and patent infringement claims that could be brought by or against Qualcomm.

Contrary to Plaintiffs' speculation, the White Paper contains core legal advice given by lawyers to their client, and was properly redacted as privileged.

*Second*, the White Paper was not "shared with outside parties", as Plaintiffs claim. Instead, the document was provided to a Special Committee of Qualcomm's Board. Providing a document to Qualcomm's directors, who are by law responsible for overseeing the management of the company, does not vitiate the privilege. The fact that the Board formed a Special Committee to consider the potential restructuring does not change that basic principle, because there was no adversity between the Special Committee and the company (and Plaintiffs do not argue otherwise). In a non-adversarial context, communications with a special committee retain the privilege. *See In re BCE West LP*, 2000 WL 1239117, at *2 (S.D.N.Y. 2000) (holding that Special Committee's communications with the Board "were part of the transaction process" and did not destroy the special committee's privilege); *Picard Chemical, Inc. Profit Sharing Plan v. Perrigo Co.*, 951 F. Supp. 679, 689 (W.D. Mich. 1996) (disclosure of special litigation committee's report to the Board did not waive privilege); *cf. Ryan v. Gifford*, Civ. Action No. 2213-C, 2007 WL 4259557 (Del. Ch. Nov. 30, 2007) ("The decision [finding that privilege was waived] would not apply to a situation (unlike that presented in this case) in which board members are found to be acting in their fiduciary capacity, where their personal lawyers are not present, and where the board members do not use the privileged information to exculpate themselves.") Plaintiffs have not cited a single case in which a company's provision of information to a special committee of its own board waived the privilege, and they have not provided any factual or legal basis to warrant such a novel waiver finding here.

2. **QNDCAL05865173**: The redacted portions of this document refer to attorney-client privileged communications with Qualcomm's outside counsel and inside counsel, and constitute a request for legal advice from in-house Qualcomm attorneys including Don Rosenberg (General Counsel), Mark Snyder (the senior lawyer responsible for overseeing Qualcomm's litigation), Deborah Dwight (division counsel for the licensing business) and Jonathan Weiser (division counsel for the chip business). Specifically, the redacted portions of the document refer to communications with in-house litigation counsel and litigation counsel at Cravath regarding the potential impact of contemplated agreement terms on pending U.S. and Korean legal proceedings, and of provisions intended to settle potential claims by Qualcomm against Samsung. The document also seeks further input from the lawyers who appear in the "To" line on the legal impact of those provisions. Qualcomm recognizes that portions of this document also have a business purpose, and it has therefore left the majority of this document unredacted and applied redactions that are narrowly tailored to protect against the disclosure of privileged communications.

3. **QNDCAL05865159**:  The privileged portions of this document contain summaries of Qualcomm's internal patent ratings.  Plaintiffs admit that the "'patent ratings' issues" presented by this document have already been briefed (and decided) on multiple previous occasions, but they nevertheless request that the Court review this document *in camera* "to determine if it represents high-level summaries of Qualcomm's patent portfolio."  This Court and Judge Koh have ruled, on multiple occasions, that Qualcomm's patent ratings are privileged and that summaries of the patent ratings are likewise privileged.  In October, the FTC challenged Qualcomm's claim of privilege over a document that it characterized as "present[ing] the number of high-value patents for which each business unit is responsible[.]"  (ECF No. 249 at 2.)  This Court confirmed Qualcomm's privilege assertion.  (ECF No. 290.)  The FTC appealed this decision to Judge Koh, who denied the appeal without briefing.  (ECF No. 337 (motion); ECF No. 456 (order).)  The FTC once again challenged Qualcomm's assertion of privilege over the patent ratings system and accompanying summaries in April.  (ECF No. 673.)  This Court concluded for a second time that Qualcomm's patent rating system and summaries of patent ratings are privileged.  (ECF No. 691.)  This Court specifically found: "I'm persuaded that [Qualcomm] established the basis for the attorney-client privilege for the metrics and for their ratings"  (Apr. 18, 2018 Hr'g Tr. at 30:21-24.)  The FTC appealed this decision, characterizing its original motion as a motion to compel "production of the [patent ratings] database, as well as any related *business communications summarizing the contents of the database*".  (ECF No. 715 at 1:5-6 (emphasis added).)  Judge Koh issued an extensive decision denying the FTC's motion for relief and affirming the Court's decision.  (ECF No. 750 at 8 ("Qualcomm has met its burden of showing that its internal patent ratings relate to the purpose of securing legal advice").)  Qualcomm's redactions are appropriately tailored (and targeted) to protect against disclosure of its privileged patent ratings and summaries thereof and, therefore, Qualcomm's privilege assertions should yet again be upheld.  There is nothing new here that this Court and Judge Koh have not already addressed.

4. **QNDCAL05865161**:  This document is a later version of **QNDCAL05865159**, which is discussed above in Item 3.  Qualcomm accordingly refers the Court to that discussion.

5. **Log Entry No. 17157**:  This document is an internally circulated draft of an email from Steve Mollenkopf to Jeff Williams.  Contrary to Plaintiffs' assertion, Mr. Mollenkopf did not initiate the email but was instead responding to an email from Vicky Chen (counsel for the chip business) regarding a draft agreement she had revised.  In his response to Ms. Chen, Mr. Mollenkopf requests legal advice from Ms. Chen, Jonathan Weiser (division counsel for the chip business), and Don Rosenberg (General Counsel) regarding his proposed email to Mr. Williams.

6. **Log Entry No. 25327**:  This document, which was authored by a lawyer, Dan Hermele, is a non-final draft of a proposed submission to a standard-setting organization regarding Qualcomm's IPR policy.  The draft reflects Mr. Hermele's legal advice and analysis, and in the cover email he seeks further legal advice regarding his draft from additional lawyers, including Mark Snyder (who was then in-house litigation counsel), Roy Hoffinger (then in-house antitrust counsel), Fabian Gonell (then division counsel for the licensing business) and Amy Olsen (another lawyer in the licensing business).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

7. **Log Entry No. 74157**:  This document contains legal advice from Vicky Chen (a lawyer in the chip business) regarding draft contract language that she prepared, followed by a request for legal advice from Eric Reifschneider about other provisions of the proposed agreement directed to several lawyers, including Ms. Chen, Jonathan Weiser (division counsel for the chip business), Fabian Gonell (then division counsel for the licensing business) and Amy Olsen (another lawyer in the licensing business).

Dated:  June 18, 2018

Respectfully submitted,

FEDERAL TRADE COMMISSION,


_____/s/ Daniel Matheson_____
Jennifer Milici
Daniel Matheson
J. Alexander Ansaldo
Joseph R. Baker
Kenneth H. Merber
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
(202) 326-2912; (202) 326-3496 (fax)
jmilici@ftc.gov

*Attorneys for Federal Trade Commission*

_____/s/ Rio S. Pierce_____
HAGENS BERMAN SOBOL SHAPIRO LLP
Rio S. Pierce
715 Hearst Ave., Suite 202
Berkeley, CA 94710
(510) 725-3042
*riop@hbsslaw.com*

*Attorneys for MDL plaintiffs*



CRAVATH, SWAINE & MOORE LLP

_____/s/ Gary A. Bornstein_____
Gary A. Bornstein
Yonatan Even
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700
gbornstein@cravath.com
yeven@cravath.com

Robert A. Van Nest
Asim M. Bhansali
Eugene M. Paige
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111
Telephone:  (415) 676-2289
Facsimile:  (415) 397-7188
rvannest@keker.com
abhansali@keker.com
epaige@keker.com

Richard S. Taffet
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Telephone:  (212) 369-6000
Facsimile:  (212) 309-6001
richard.taffet@morganlewis.com

Willard K. Tom
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone:  (202) 739-3000
Facsimile:  (202) 739-3001
willard.tom@morganlewis.com

Donn P. Pickett
Geoffrey T. Holtz
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone:  (415) 442-1000
Facsimile:  (415) 442-1001
donn.pickett@morganlewis.com
geoffrey.holtz@morganlewis.com

*Attorneys for Qualcomm Incorporated*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>FILER'S ATTESTATION</u>**

I, Gary A. Bornstein, am the ECF user whose identification and password are being used to file this Joint Status Report.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that the signatories on this document have concurred in this filing.

*/s/ Gary A. Bornstein*

Gary A. Bornstein