1    *Counsel Listed on Signature Page*

2

3

4

5

6

7

8

9

10

11

12                    **UNITED STATES DISTRICT COURT**
                    **NORTHERN DISTRICT OF CALIFORNIA**
13                         **SAN JOSE DIVISION**

14
     FEDERAL TRADE COMMISSION,              Case No. 5:17-cv-00220-LHK-NMC
15
                        Plaintiff,          **JOINT CASE MANAGEMENT**
16                                          **STATEMENT**
               vs.
17                                          DATE:     July 25, 2018
     QUALCOMM INCORPORATED, a Delaware      TIME:     2:00 p.m.
18   corporation,                           CTRM:     Courtroom 8
                                            JUDGE:    Hon. Lucy H. Koh
19                      Defendant.
                                            Case No. 5:17-MD-02773-LHK-NMC
20   IN RE QUALCOMM ANTITRUST
     LITIGATION
21

22

23

24

25

26

27

28

Pursuant to the Court's June 15, 2018 Order Continuing Further Case Management Conference (FTC ECF No. 767), Plaintiff Federal Trade Commission (the "FTC") and the MDL Plaintiffs (collectively, "Plaintiffs") and Defendant Qualcomm Incorporated ("Qualcomm") (collectively, the "Parties") have met and conferred and hereby submit this Joint Case Management Statement, which reports on developments since the Parties filed the June 13, 2018 Joint Case Management Statement (FTC ECF No. 766).

## I. PLEADINGS AND MOTIONS

On June 27, 2018, Qualcomm filed an Answer to the MDL Plaintiffs' First Amended Consolidated Class Action Complaint. (MDL ECF No. 495.)

On June 28, 2018, the MDL Plaintiffs filed a motion for a preliminary injunction concerning proceedings that Qualcomm initiated before the International Trade Commission. (MDL ECF No. 496.) Qualcomm filed its opposition to the motion on July 12, 2018. (MDL ECF No. 573.) The Court set a hearing for August 30, 2018. Unfortunately, that date conflicts with long-scheduled international travel for Qualcomm's counsel. Qualcomm and the MDL Plaintiffs are meeting and conferring regarding a new hearing date and will be filing a stipulated request, subject to the Court's availability and approval, to move the hearing to that date.

On July 5, 2018, the MDL Plaintiffs filed a motion for class certification pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3). (MDL ECF No. 524.)

On July 18, 2018, this Court denied Qualcomm's motion for an extension of one week to file Qualcomm's Opposition to MDL Plaintiffs' motion for class certification and any related *Daubert* motion. (MDL ECF No. 611.)

The Parties have not filed any other motions since the June 13 Joint Case Management Statement. (FTC ECF No. 766.)

## II. PARTY DISCOVERY

### A. Written Discovery

On July 5, 2018, the MDL Plaintiffs served Responses and Objections to Qualcomm's Interrogatories and Requests for Admission concerning the MDL Plaintiffs' First Amended Consolidated Class Action Complaint.

**B.**     **Document Discovery Issues**

Qualcomm has completed the re-review of documents pursuant to Magistrate Judge Cousins's April 4, 2018 Order Regarding Privilege Re-Review for Qualcomm and Apple (MDL ECF No. 427).  As a result of this re-review process Qualcomm reviewed approximately 110,000 redacted or withheld documents.  Qualcomm produced 21,804 documents (either in redacted form or without redactions) that had previously been withheld as privileged, and 11,388 previously redacted documents on which it reduced or eliminated redactions.  Some but not all of the previously withheld or redacted content had already been produced in other documents before the re-review productions.

The Parties submitted Joint Status Reports concerning the re-review pursuant to Judge Cousins's Order on June 18 and July 16, 2018.  (FTC ECF Nos. 769, 778.)

**C.**     **Party Depositions**

There have been no new developments since the June 13 Joint Case Management Statement.  (FTC ECF No. 766.)

**D.**     **Expert Discovery**

On June 28, 2018, Qualcomm served its expert disclosures in the *FTC* case pursuant to Federal Rule of Civil Procedure 26(a)(2).  The FTC and Qualcomm are in the process of scheduling expert depositions.

On July 5, 2018, MDL Plaintiffs served their expert disclosures in connection with their motion for class certification.  The MDL Plaintiffs and Qualcomm are in the process of scheduling expert depositions relating to class certification.

**E.**     **The FTC's Objections to Qualcomm's Trial Witness List**

***Qualcomm's Position***

On June 19, 2018, Qualcomm added three third-party witnesses to its list of likely trial witnesses:  one employee of Boston Consulting Group ("BCG") and two employees of Apple.  In response, the FTC asserted that "Qualcomm's failure to identify third party witnesses prior to the close of fact discovery is prejudicial to the FTC", and reserved the right to object to testimony from these three witnesses.  (June 26, 2018 Letter from J. Milici.)  The FTC's claim of prejudice

1   is without merit.  All three witnesses' documents have already been produced.  The FTC already

2   deposed the BCG witness during its pre-Complaint investigation, and the FTC is in a common

3   interest agreement and actively cooperating with the employer of the other two witnesses (Apple).

4   If the FTC wishes to take additional deposition testimony, there is ample time to do so before a

5   January 2019 trial.  The Court has previously declared its strong preference to resolve this case

6   "on the merits" on a full evidentiary record, and not because "relevant information has been

7   withheld".  (ECF No. 649 at 12:9-12);[1] *see also Guzik Tech. Enters. v. W. Dig. Corp.*, 2013 WL

8   6070414, at \*7 (N.D. Cal. Nov. 18, 2013) ("[T]he court's goal always is to resolve the case on the

9   merits so long as undue prejudice can be avoided.").  The FTC's attempt to deny Qualcomm the

10  opportunity to present the Court with material evidence should be rejected.  *Wendt v. Host Int'l,*

11  *Inc.*, 125 F.3d 806, 814 (9th Cir. 1997) (preclusion of evidence is a "drastic sanction" that should

12  be avoided if possible).

13          On July 3, the parties met and conferred but did not reach agreement.  The parties disagree

14  as to whether this dispute is required to be submitted to Magistrate Judge Cousins, in accordance

15  with this Court's standing referral to the magistrate judges of "[a]ll disclosure or discovery

16  disputes".  (June 20, 2018 Standing Order Regarding Case Management in Civil Cases at 1).

17  Qualcomm therefore provides below a summary of its position, subject to the Court's guidance as

18  to whether the issue should be submitted to Magistrate Judge Cousins in the first instance, either

19  in the form of a Joint Discovery Statement or on the basis of the parties' arguments in this Case

20  Management Statement.

21          1.      Federal Rules of Civil Procedure 26 and 37 Do Not Bar Qualcomm's

22                  Additions to Its Trial Witness List.

23          The FTC's objection is based on the incorrect premise that Qualcomm did not include

24  these witnesses in its Rule 26 disclosures.  In fact, well before the end of the discovery period,

25  Qualcomm's Rule 26(a)(1) disclosures on April 12, 2017 stated that employees of Apple were

26  likely to have discoverable information that Qualcomm may use to support its defenses, and its

27

28  [1] All references to ECF numbers in this section of the Case Management Statement correspond to
    the docket in the *FTC v. Qualcomm* matter.

Rule 26(a)(1) disclosures on November 17, 2017 identified employees of both Apple and BCG.[2]

The FTC nevertheless contends that Qualcomm should be precluded from calling the three Apple and BCG witnesses because Qualcomm did not include them on a January 31, 2018 list of individual witnesses that each party in good faith believed it was reasonably likely to rely upon at trial.  The parties exchanged such lists in December and January by agreement, in an effort to streamline the fact deposition period (ECF No. 496), but recognized that they were not final trial witness lists; indeed, both parties reserved the right to add witnesses to those lists as discovery proceeded.  (*See* January 31, 2018 Letter from Y. Even at 1; January 31, 2018 Letter from D. Matheson at 1.)  The FTC now argues that the lists were "initial disclosures" or "supplement[s] to those disclosures" that are subject to fact discovery deadlines pursuant to Federal Rules of Civil Procedure 26 and 37.  In previous correspondence with Qualcomm, however, the FTC took precisely the *opposite* position.  The FTC argued that its preliminary witness lists *did not* modify its April 2017 Rule 26 disclosures, which it said remained operative even after serving its preliminary witness lists in December 2017 and January 2018.  (*See* December 5, 2017 email from J. Milici to Y. Even.)  Under the FTC's own prior position, the now-disputed witnesses were timely disclosed under Rule 26(a)(1).  Accordingly, the premise of the FTC's objection to those witnesses is incorrect.

The FTC asserts (below at 12) that the strictures of Rule 37 must apply to the January 31 exchange of preliminary witness lists, or else those lists would be "meaningless".  That is not true.  As the FTC acknowledges, the parties agreed to exchange the lists of individual witnesses in order to streamline the deposition schedule, and each party reserved the right to add witnesses (and to object to any additions).  The parties did not agree that any such additions must be made prior to the fact discovery deadline, as the FTC now contends, or that the omission of any individual witness from those lists would result in the "sanction" imposed by Federal Rule of Civil Procedure 37(c)(1) for non-compliance with a party's Rule 26(a) disclosure obligations.  The FTC is wrongly seeking to convert the parties' good-faith effort to make fact discovery more

---

[2] The FTC's Rule 26 disclosures likewise identified third-party entities without naming specific individuals employed by those entities.

1    manageable into an absolute procedural bar that was not intended or discussed at the time.

2          There is no other applicable deadline that has elapsed.  This Court's Guidelines for Final

3    Pretrial Conferences in Bench Trials (at B(7)) do not require the disclosure of final witness lists

4    until the Joint Pretrial Statement and Order is filed 14 days prior to the final Pretrial Conference.

5    The FTC's objection that Qualcomm's additions to its witness list are untimely because they were

6    not disclosed before the fact discovery deadline also fails on this basis.

7                    2.      The Addition of the Witnesses Is Harmless.

8          Even if Qualcomm had not timely disclosed the three witnesses, it should not be precluded

9    from introducing their testimony because the June 2018 disclosure, more than six months before

10   the start of trial, is harmless.  *See* Fed. R. Civ. P. 37(c)(1); *Guzik Tech. Enterprises*, 2013 WL

11   6070414, at *3 (allowing witness disclosures even after an applicable deadline when they are

12   "substantially justified or harmless").  The FTC already has the witnesses' documents, it has

13   already taken testimony from one of them, and it has ready access to the other two through a

14   common interest agreement (as well as ample time to take one or more depositions if it so

15   desires).

16         Specifically, the FTC has already served a subpoena on BCG and obtained the documents

17   of the BCG witness, Raj Varadarajan.  The FTC also took sworn testimony from Mr. Varadarajan

18   during its pre-Complaint investigation.  In the event the FTC needed further testimony from

19   Mr. Varadarajan or BCG to prepare for trial, it had the opportunity.  Qualcomm notified the FTC

20   on June 19, 2018, of a then-forthcoming deposition of BCG being taken by Apple in the

21   coordinated Southern District of California litigation.  The FTC could have sought to participate

22   in that deposition, but chose not to do so.[3]  Even now, there is sufficient time before trial for the

23   FTC to depose Mr. Varadarajan if it wishes, and Qualcomm would not oppose a request for such

24

25   [3] The FTC claims (below at 16) that it had "no right or ability" to participate in Mr. Varadarajan's
     deposition because it is not a party in the Southern District litigation and because the deposition
26   occurred after the close of fact discovery in this action.  But the FTC could easily have requested
     permission to take an out-of-time deposition, as it has previously done (ECF Nos. 580, 672 at 10-
27   11), and Qualcomm would not have opposed such a request.  As the FTC knows, Qualcomm has
     not opposed the participation of the Northern District parties in other depositions taken in the
28   coordinated Southern District litigation, even after the close of fact discovery.

1    a deposition.

2         Likewise, both of the Apple employees, Robert Mansfield and Philip Schiller, were

3    custodians whose documents were produced in response to subpoena.  The FTC also has a

4    common interest agreement with Apple, so the FTC presumably can discuss their expected

5    testimony directly with Apple.  Indeed, the FTC has already obtained from Apple the transcripts

6    of Mr. Mansfield and Mr. Schiller's depositions that were taken in the coordinated Southern

7    District of California litigation on the same topics on which they are expected to testify at trial in

8    this case.  Further, although the FTC has not requested an out-of-time deposition of

9    Mr. Mansfield or Mr. Schiller, Qualcomm would not oppose such a request, and there is sufficient

10   time in the schedule for such depositions to occur.  *See also Guzik*, 2013 WL 6070414, at *6

11   (denying motion to strike trial witnesses because the Court "d[id] not believe that taking three

12   additional depositions would be overly disruptive" six months before trial).

13        After addressing its objection to the addition of these witnesses, the FTC spends pages

14   below discussing the separate question whether the transcripts of the witnesses' depositions in the

15   Southern District case should be part of the record in this case.  That is a red herring.  Contrary to

16   the FTC's assertion below (at 16), Qualcomm does not seek "to introduce some [Southern

17   District] testimony that it considers favorable into evidence".  Rather, it seeks to present the

18   testimony of these witnesses *live at trial*.  Accordingly, the FTC's assertion that Qualcomm is

19   "rifl[ing] through the S.D. Cal. deposition transcripts in search of additional third-party testimony

20   to add to the record" is not true.  Instead, Qualcomm took steps to ensure only that it would be

21   able to use the deposition transcripts at trial for the purposes permitted by the Federal Rules, such

22   as to impeach or to refresh the memory of a witness.  *See, e.g.*, Fed. R. Evid. 801(d)(1)(A)

23   (excluding from the rule against hearsay a prior statement that is "inconsistent with the

24   declarant's testimony and was given under penalty of perjury . . . in a deposition"); Fed. R.

25   Evid. 612 (permitting the use of a writing to refresh a trial witness's recollection).  In any event,

26   the only issue presently before the Court is the addition of the three witnesses to Qualcomm's

27   preliminary trial witness list.  Whether and how the deposition transcripts may be used at trial is a

28   question better resolved in context, if and when Qualcomm ever seeks to use them.

1     The addition of the three witnesses will not cause any disruption to the Court's schedule.

2     Although the FTC claims that adding witnesses is "inherently prejudicial" to the FTC in light of

3     the case schedule and the parties' discovery plans (below at 13), the FTC does not identify any

4     specific way in which the additions will disrupt the progress of this action or require any

5     modification of the schedule.  The primary case the FTC cites in support of its request to preclude

6     the three disputed witnesses, *Ollier v. Sweetwater Union High School District*, 768 F.3d 843 (9th

7     Cir. 2014), confirms that courts should not preclude important evidence unless actual and serious

8     prejudice would result from a late disclosure.  In that case, the defendant attempted to add ***thirty-***

9     ***eight (38)*** previously undisclosed witnesses **15** months after the close of fact discovery.  *See id.* at

10    862.  And the defendant there did not provide "substantial justification" for adding *any* new

11    witnesses, let alone 38 of them, but instead argued only that prior disclosure was unnecessary

12    because the names of 30 witnesses had been "mentioned" in prior depositions and because the

13    other 8 new witnesses were not employed by the defendant during fact discovery (although they

14    had been employed many months before the defendant's late disclosure).  *Id*.  In these

15    circumstances, the Court of Appeals unsurprisingly concluded that the addition of 38 witnesses

16    about whom the parties had not conducted discovery was not "harmless".  *Id*. at 863.  Indeed, the

17    addition of so many new witnesses would have essentially required a re-do of fact discovery, or

18    would have forced the plaintiff to go to trial without discovery concerning a large number of trial

19    witnesses.  That is not the case here.  For the reasons described above, the FTC does not face ***any***

20    prejudice—let alone prejudice as significant and serious as in *Ollier*—resulting from the addition

21    of three witnesses in this case.[4]

22    _____

23    [4] The other cases cited by the FTC also do not support its request to preclude witnesses.  In
*Torres v. City of Los Angeles*, an expert witness offered by the defendants did not provide an
expert report as required by Rule 26(a)(2)(B).  548 F.3d 1197, 1213-14 (9th Cir. 2008).  The

24    Court of Appeals could not determine that the failure to serve an expert report under the
circumstances it confronted was substantially justified or harmless.  *Id*.  Accordingly, it required

25    the defendants, on remand, to provide an expert report, but ***did not preclude the witness***.  *Id*.  In
*Benjamin v. B&H Education*, a party was precluded from using certain witnesses' declarations in

26    connection with motions for summary judgment because the witnesses' names had not been
disclosed prior to the filing of the motions, which "likely prejudiced" the other party "by

27    depriving it of an opportunity to depose" the new witnesses.  2015 WL 6164891, at *2 (N.D. Cal.
Oct. 16, 2015).  Here, Qualcomm disclosed the three disputed witnesses well in advance of any

28    motions for summary judgment or trial, so there is no such prejudice to the FTC.  *Wong v.
Regents of University of California* concerned a plaintiff who failed to timely disclose an expert

3.    The Addition of Each Witness Is Substantially Justified.

As noted above, even if Qualcomm had not timely disclosed the witnesses, Rule 37(c)(1) would not require preclusion because the June 2018 disclosure of each witness was "substantially justified" by developments occurring after the close of fact discovery.

Raj Varadarajan, Senior Partner and Managing Director of Boston Consulting Group: BCG is a consulting firm that advised Qualcomm regarding certain strategic alternatives, including a 2015 proposal to separate Qualcomm's licensing and chipset business units. Although the FTC took extensive discovery of the work that BCG performed for Qualcomm, including by way of a deposition of Mr. Varadarajan, neither he nor anyone else from BCG appeared on the FTC's January 31 preliminary witness list. Instead, on May 31, 2018, two months after the close of fact discovery, the FTC sent Qualcomm a declaration that it had obtained from Mr. Varadarajan purporting to establish that certain BCG documents were records of a regularly conducted business activity pursuant to Federal Rule of Evidence 902(11). The FTC therefore seeks to admit BCG-generated documents as evidence, without any sponsoring witness or testimony explaining the context, purpose or meaning of the documents. To respond to the documents appearing in the May 31 declaration, Qualcomm may present trial testimony from Mr. Varadarajan concerning BCG's work for Qualcomm, as it reserved its right to do.

Robert Mansfield, Senior Vice President of Technologies, Apple: Mr. Mansfield played an important and unique role in Apple's selection of the baseband chip to be included in certain iPads that the FTC contends Qualcomm foreclosed competitors from supplying. It was not until after the close of fact discovery that the FTC identified these specific products, which made Mr. Mansfield a far more important witness than Qualcomm had previously anticipated.

Specifically, on April 25, 2018 (after fact discovery had closed on March 30), in response

_____

opinion supporting an element of his claim. 410 F.3d 1052, 1060-62 (9th Cir. 2005). The Court of Appeals affirmed the preclusion of the late-disclosed expert because the plaintiff had no justification for failing to provide an expert opinion on an issue on which he bore the burden of proof. *Id.* Qualcomm does not bear the burden of proof here and, as explained below, could not have anticipated the importance of the additional witnesses' testimony until after the close of fact discovery. *Marchand v. Mercy Medical Center* did not concern a request to preclude a witness, but a motion for costs resulting from a party's improper refusal to admit facts pursuant to requests for admission. 22 F.3d 933 (9th Cir. 1994).

8

1  to an Order by Magistrate Judge Cousins compelling the FTC to respond to Qualcomm's

2  Interrogatory No. 19 (ECF No. 691), the FTC for the first time identified the specific Apple

3  devices (consisting of five iPad models) that it alleged Apple "was likely to use . . . to develop

4  alternative suppliers [to Qualcomm]", but for the challenged agreements between Qualcomm and

5  Apple.  (*See* FTC's Supp. Objs. and Resps. to Qualcomm's Interrog. Nos. 18 & 19 at 12.)  On

6  May 24, after further motion practice and in response to another Order by Magistrate Judge

7  Cousins compelling further interrogatory responses by the FTC (ECF No. 755), the FTC stated

8  that it believed those five iPad models—and only those five iPad models—were "contestable" by

9  Qualcomm's baseband processor competitors.  (*See* FTC's First Supp. Objs. and Resps. to

10  Qualcomm's Interrog. Nos. 14 & 15 at 8; May 24, 2018 Hearing Tr. at 59.)  Also on May 24, the

11  FTC served the report of its proffered expert economist, Dr. Carl Shapiro, in which he opined that

12  Qualcomm "sacrificed profits" on chipsets supplied for incorporation into the five iPad models in

13  order to exclude its competitors from chipset sales for those devices.  The FTC misleadingly

14  asserts (below at 14) that its Complaint "explicitly alleged" that Qualcomm's conduct excluded

15  competitors "for the iPad between 2014 and 2016".  In fact, its Complaint alleged that

16  Qualcomm's conduct excluded competitors for "*all* new iPad *and iPhone* products" between

17  *2011* and 2016.  (*E.g.*, Compl. ¶ 126 (emphasis added).)  It was therefore not until after the close

18  of fact discovery that the FTC contended that only five specific iPad models released between

19  2014 and 2016 (and no other iPads or iPhones) were contestable by Qualcomm competitors—

20  much less identified the devices at issue.[5]  The FTC asserts that Qualcomm's decision to depose

21  Mr. Mansfield in the Southern District case demonstrates that Qualcomm knew about his

22  relevance prior to the close of fact discovery in this action.  But that fact only demonstrates that

23  Qualcomm was aware of Mr. Mansfield's potential relevance in the broader *Southern District*

24  *litigation*, not in the FTC's case.  Qualcomm was not aware of the central importance of the five

_____

[5] The FTC's assertion that Qualcomm "affirmatively dropp[ed]" Mr. Mansfield as a witness on its
January 31 list is off point.  Qualcomm never determined that Mr. Mansfield was irrelevant but
rather removed him as part of a good-faith effort—undertaken at the FTC's request—to narrow
the list of individuals who would need to be deposed in this action.  Qualcomm did so before the
FTC had narrowed its allegations to the five iPads released in 2014 to 2016, thereby making
Mr. Mansfield's testimony more central.

1    iPad models featured in the FTC's interrogatory responses and expert reports—and thus, of Mr.

2    Mansfield's testimony—until the FTC served the discovery discussed above.

3         Mr. Mansfield's testimony will prove that the five iPads at issue were not, in fact,

4    contestable by Qualcomm's competitors, who were unable to meet Apple's engineering and

5    product scheduling requirements for those devices.  For example, Mr. Mansfield ████████

6    ████████████████████████████████████████████████████████████

7    ███████████████████████████████████████████████████████.[6]  His

8    testimony will therefore directly undermine the FTC's allegation that Qualcomm's conduct

9    foreclosed rivals from supplying Apple.[7]

10        Philip Schiller, Senior Vice President of Worldwide Marketing, Apple:  In his May 24,

11   2018 report, Dr. Shapiro opined that OEMs (like Apple) "inevitably" pass on higher chipset and

12   royalty costs allegedly caused by Qualcomm's conduct, resulting in higher prices for cellular

13   devices being charged to consumers.  Although the FTC's Complaint referred to the possibility of

14   higher handset prices (see, e.g., Compl. ¶ 95 ("OEMs likely pass some portion of these higher

15   prices on to consumers in the form of higher handset prices or reduced handset features.")

16   (emphasis added)), handset pricing had not been a focus of the FTC's fact discovery, and the FTC

17   did not articulate its contentions as to how Qualcomm's conduct allegedly increased handset

18   prices.  Dr. Shapiro's more definitive statement concerning allegedly higher handset prices, and

19   the increased focus on consumer pricing in Dr. Shapiro's report, directly put at issue the expected

20   testimony of Mr. Schiller, in a way that Qualcomm reasonably did not anticipate prior to the close

21   of fact discovery.

---

[6] The FTC suggests that Qualcomm can rely on other witnesses' testimony about Apple's chipset
selection process, but it does not show or even argue that those other (unidentified) witnesses
have the same knowledge as Mr. Mansfield.

[7] The FTC's suggestion, below at 14, that Dr. Shapiro and one of Qualcomm's expert economists,
Dr. Chipty, agree that the relevant analysis focuses on "the set of products that Qualcomm viewed
as contestable in early 2013", rather than on the set of products that were actually contestable, is
incorrect.  Dr. Chipty's expert disclosure explains that Dr. Shapiro's opinion that Qualcomm's
conduct foreclosed rivals is undermined by evidence supporting "the view that Apple would not
have used Intel sooner because ███████████████████████████████████
███████████████████████████".  (Chipty Rep. ¶ 260.) ████████████

1  Mr. Schiller is the Apple executive principally in charge of the marketing of relevant

2  Apple devices ████████████████████████████████████████████████

3  ███████████████████████████████████████████████████████████████

4  ██████████████████████████████████████████ His testimony will help

5  rebut the FTC's position that Qualcomm's alleged conduct led to price increases at the consumer

6  level.

7  * * *

8  As noted above, Qualcomm seeks the Court's guidance as to whether the dispute should

9  be presented to Magistrate Judge Cousins in the first instance.  However, should the Court take up

10  the dispute, Qualcomm respectfully submits that the FTC's objections to the likely trial witnesses

11  named by Qualcomm should be overruled.

12  ***FTC's Position***

13  Qualcomm is precluded from using any witness to supply evidence on a motion, at a

14  hearing, or at trial who it failed to identify in its initial disclosures or a timely supplement to those

15  disclosures. *See* Fed. R. Civ. P. 37(c) ("If a party fails to provide information or identify a witness

16  as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to

17  supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially

18  justified or is harmless"); *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 861 (9th Cir.

19  2014) (affirming the trial court's exclusion of witnesses identified 10 months before trial, but

20  after the close of fact discovery). Qualcomm failed to disclose Mssrs. Mansfield, Schiller, or

21  Varadarajan during fact discovery, as required by Rule 26 if Qualcomm planned to rely on their

22  testimony to support its defenses. *See* Fed. R. Civ. P. 26(a)(1)(A)(i) (requiring parties to disclose,

23  at a minimum, the name of individuals likely to have discoverable information that the disclosing

24  party may use to support its claims or defenses). No agreement of the parties relieved Qualcomm

25  of its obligations under the Federal Rules. If Qualcomm seeks to make use of these witnesses, the

26  FTC will file an appropriate motion to exclude the testimony. If the Court would prefer to receive

27  briefing on the issue now, the FTC will file its motion promptly.

28  Because Qualcomm has set forth specific arguments about its untimely disclosures, the

1  FTC will respond briefly to those arguments. However, if the Court chooses to take up the issue

2  now, the FTC respectfully requests the opportunity to brief the matter fully.

3      First, Qualcomm mischaracterizes the parties' agreements. No agreement between the

4  parties purports to abrogate the requirements of Rule 26(a) or (e). To the contrary, the parties

5  agreed to exchange lists of likely witnesses two months before the close of fact discovery so that

6  depositions could be scheduled within the discovery period. The purpose of the agreement was to

7  avoid having to schedule dozens of depositions in the last weeks of discovery, not to give any

8  party the right to delay making the disclosure required by Rule 26 of "each individual…it may

9  use to support its claims or defenses" until after fact discovery closed. Rather than agreeing to

10 post-discovery disclosures, the parties each reserved the right to oppose any supplementation of

11 the other party's witness list after January 31, 2018 – two months prior to the close of fact

12 discovery.  (FTC ECF No. 469 at 12.)

13     Qualcomm now suggests that its representations regarding likely trial witnesses are not

14 true Rule 26 disclosures and should have no preclusive effect. Under Qualcomm's interpretation,

15 the parties' substantial efforts to narrow likely trial witnesses and focus discovery would be

16 meaningless, as Qualcomm could rely on its overly broad November 17, 2017 disclosures to call

17 at trial *any* employee of a company involved in the cellular industry, including Apple,

18 BlackBerry, Broadcom, Ericsson, Google, Intel, InterDigital, NVIDIA, Huawei, MediaTek,

19 Microsoft, Nokia, Samsung, Sony Mobile, Texas Instruments, VIA Technologies, and dozens of

20 others. *See Benjamin v. B &H Educ., Inc.*, No. 13-cv-04993-VC, 2015 U.S. Dist. LEXIS 144351,

21 at *5-8 (N.D. Cal. Oct. 16, 2015) ("The plaintiffs argue that they identified Nelson by including a

22 catch-all reference to 'other current and former Student-Employees of Marinello Schools of

23 Beauty' in their Rule 26 disclosure. That is ridiculous."). This is misguided at best, and runs

24 counter to this Circuit's admonition that "litigants should not indulge in gamesmanship with

25 respect to the disclosure obligations." *Marchand v. Mercy Med. Ctr.*, 22 F.3d 933, 936 n.3 (9th

26 Cir. 1994) (quoting Fed. R. Civ. P. 26 advisory committee's note (1993 amend.)).[8]

27 
_____

28 [8] Qualcomm references an email the FTC sent in December 2017, but this email provides no
support for Qualcomm's attempt to identify additional witnesses after the close of discovery. To

1       Second, Qualcomm's repeated attempts to shift the burden to the FTC to establish

2   prejudice from Qualcomm's late disclosures turn the law on its head. Under Rule 37(c)(1), the

3   party who fails to make timely disclosures has the burden of demonstrating that its failure to

4   disclosure was substantially justified or is harmless. *See R & R Sails, Inc. v. Ins. Co. of*

5   *Pennsylvania*, 673 F.3d 1240, 1246 (9th Cir. 2012); *Torres v. City of Los Angeles*, 548 F.3d 1197,

6   1214 (9th Cir. 2008) (party seeking sanction is "not required to articulate how they would be

7   prejudiced" by violation of Rule 26). Efforts to set schedules and establish deadlines to foster the

8   efficient treatment and resolution of cases "will be successful only if the deadlines are taken

9   seriously by the parties, and the best way to encourage that is to enforce the deadlines." *Wong v.*

10  *Regents of Univ. of California*, 410 F.3d 1052, 1060 (9th Cir. 2005).

11      Regardless, failing to identify a witness until after the discovery cutoff has passed is

12  inherently prejudicial.[9] Fact discovery has closed, both parties' opening expert reports have

13  already been served based on the evidence timely discovered, and the FTC's rebuttal expert

14  reports are due in just eight days.

15      Third, Qualcomm's justifications for its late disclosures do not withstand scrutiny.

16  Qualcomm had ample and unambiguous notice of the FTC's allegations regarding consumer

17  harm.  The allegation is in the first paragraph of the FTC's Complaint: "Qualcomm has engaged

18  in exclusionary conduct that taxes its competitors' baseband processor sales, reduces competitors'

19  ability and incentive to innovate, *and raises prices paid by consumers for cell phones and*

20  *tablets*."  (FTC ECF No. 1 ¶ 1 (emphasis added); *see also id.* ¶ 63 (Qualcomm's "no license-no

21  chips policy raise the all-in prices paid by OEMs, which reduce demand for competitors'

22  _____

23  the contrary, the December 2017 email explained that the FTC's witness disclosures represented a
list of individuals that – at the time – the FTC believed "in good faith…is reasonably likely to

24  rely upon at trial." Any attempts to add to this list are governed by the parties' January 17, 2018
Joint Case Management Statement, which made clear that "Each Party reserves the right to

25  oppose the supplementation of the other Party's witness list…from a witness not identified on
that Party's witness list as of January 31, 2018." FTC ECF No. 496 at 12.

26  [9] "The late disclosure of witnesses throws a wrench into the machinery. A party might be able to
scramble to make up for the delay, but last-minute discovery may disrupt other plans. And if the

27  discovery cutoff has passed, the party cannot conduct discovery without a court order permitting
extension. This in turn ... impairs the ability of every trial court to manage its docket." *Ollier,* 768

28  F.3d at 861.

13       JOINT CASE MANAGEMENT STATEMENT
Case No. 5:17-cv-00220-LHK-NMC
and 5:17-md-02773-LHK-NMC

processors and raise handset prices paid by consumers"); *id.* ¶ 87 ("The incremental royalty that OEMs pay to Qualcomm operates as a "tax" …[which] maintains Qualcomm's monopoly power and raises handset prices paid by consumers.")).  The FTC's Complaint plainly alleged that Qualcomm's conduct led to higher consumer prices and provided notice to Qualcomm that consumer prices were at issue in this case.[10]

Likewise, the FTC's Complaint explicitly alleged that Qualcomm's exclusive contract with Apple foreclosed competitors from supplying chipsets for a number of Apple products, including the iPad between 2014 and 2016. (*Id.* ¶¶ 121-123, 126.).[11] Chipset selection for iPads launched between 2014 and 2016 has therefore been the subject of extensive discovery in this case.  Qualcomm's specific claim that it needs the testimony of Mr. Mansfield to establish that iPads were not in fact "contestable" units is without merit. Both Dr. Shapiro and Qualcomm's expert, Dr. Chipty, agree that the relevant set of products is "the set of products that *Qualcomm viewed* as contestable in early 2013." (Chipty para. 255 (emphasis added)). The testimony of an Apple employee is surely not necessary to establish what Qualcomm's view of the market was in 2013. Even if Apple testimony were relevant to the question of which products Qualcomm viewed as contestable, Qualcomm has already questioned multiple properly disclosed witnesses from Apple and from Intel about chipset selection for iPads launched during the 2014 to 2016 time period. Moreover, Qualcomm identified Mr. Mansfield as a potential trial witness on December 4, 2017 before affirmatively dropping him from its January 31, 2018 list. Thus, Qualcomm (1) knew that the foreclosure of competition among chipset manufacturers for the

---

[10] According to Qualcomm, its late disclosure of Mr. Schiller is justified because the FTC did not explain *how* Qualcomm's conduct raised prices.  The FTC's complaint, however, repeatedly did exactly that.  Moreover, according to Qualcomm, Mr. Schiller ███████████████████████ ████████████████████████████████████████  His testimony is not uniquely responsive to any particular economic theory of *how* Qualcomm's conduct raised prices.

[11] Qualcomm's repeated suggestion that it could not know *which* specific models of iPads were contestable until it received the FTC's interrogatory response is incorrect and irrelevant.  Apple only launched five models of the iPad between 2014 and 2016 and Qualcomm therefore should have known based upon the FTC's Complaint that potential competition among chipset suppliers for those iPads would be at issue. That Qualcomm knew that competition for those iPads was an issue is also evident from its extensive questioning of multiple Apple and Intel witnesses – *prior* to the close of fact discovery – on the specific question of Apple's consideration of Intel chipsets for those products.

2014-2016 iPads was at issue in the litigation, (2) knew that its own documents identified iPads as the units it viewed as contestable, (3) deposed multiple witnesses on the topic, (4) had sufficient information to identify Mr. Mansfield as a witness in December 2017, and (5) actually deposed Mr. Mansfield in the S.D. Cal. cases on this topic *prior to* receiving the FTC's expert reports, which belies the claim that Qualcomm was unaware of the relevance of this topic prior to those reports. Qualcomm's failure to identify Mr. Mansfield as a potential trial witness before the close of fact discovery has no plausible justification.

Qualcomm also lacks any justification for its belated disclosure of Mr. Varadarajan as a potential trial witness. Mr. Varadarajan's declaration establishes that certain documents prepared by BCG while it was retained by Qualcomm are business records created when BCG was an agent of Qualcomm, a fact that Qualcomm has not disputed. To the extent that Qualcomm intends to offer Mr. Varadarajan's testimony on matters outside of the narrow scope of his declaration, Rule 26 required Qualcomm to timely disclose that fact to the FTC.[12] Qualcomm provides no justification for its failure to do so.

Fifth, Qualcomm cannot establish that its failure to provide timely Rule 26 disclosures is harmless. While Qualcomm points to the FTC's receipt of copies of Mr. Schiller's and Mr. Mansfield's deposition transcripts as evidence of a lack of harm, the S.D. Cal. depositions of these (and many other) witnesses actually undermine Qualcomm's proffered justifications for its late disclosures (as described above), and also demonstrate why the addition of these witnesses would be prejudicial to the FTC.[13] Fact discovery closed in this case on March 30, but continued in the coordinated S.D. Cal. cases for some months thereafter. While the FTC does not know the exact number of depositions taken in the S.D. Cal. cases, it is our understanding that there were at least several dozen depositions taken after the deadline for the completion of discovery set by this

---

[12] Qualcomm's assertion that the FTC could have participated in Mr. Varadarajan's June deposition is incorrect. This Court ordered the parties to complete discovery by March 30 and the parties lack any authority to modify that order. Qualcomm did not seek leave from the Court to re-open discovery and did not notice the deposition in this case.

[13] Among other things, the depositions of Mr. Mansfield and Mr. Schiller on the topics at issue prove that Qualcomm knew of the witnesses, and was able to prepare for their depositions on these topics, before the FTC submitted its expert disclosures.

1  Court. Qualcomm did not seek leave from this Court to take those depositions out of time and did

2  not notice them in this action. The FTC had no right or ability to participate in those depositions

3  and did not do so.

4       Qualcomm has now cherry-picked a couple of witnesses whose depositions were taken in

5  the S.D. Cal. actions without notice in this case, leave from this Court, or the participation of the

6  FTC, in an effort to introduce some testimony that it considers favorable into evidence. It would

7  be extremely prejudicial to allow Qualcomm to rifle through the S.D. Cal. deposition transcripts

8  in search of additional third-party testimony to rely upon in this case. The FTC was bound by the

9  Court's discovery orders, which did not permit it to continue to take discovery after March 30 in

10  search of incrementally better witnesses than those identified in its Rule 26 disclosures to testify

11  on topics that were already the subject of extensive discovery. *See, e.g., Ollier* ("if the discovery

12  cutoff has passed, the party cannot conduct discovery without a court order permitting

13  extension."). To allow Qualcomm to pick-and-choose favorable testimony from the S.D. Cal

14  depositions and then add the individuals whose testimony it likes to its disclosures would make

15  the Court's orders on discovery deadlines, and the parties' agreements on deposition limits,

16  meaningless.[14]

17       In particular, Mr. Mansfield and Mr. Schiller were deposed in the S.D. Cal cases on May 1

18  and May 31, respectively. Qualcomm did not seek relief from this Court's scheduling order prior

19  to taking the depositions, and did not notice the depositions in this case. Instead, Qualcomm took

20  the depositions without the FTC's participation and, after the depositions were complete, served a

21  subpoena on Apple demanding the production of the transcripts for use in this action.[15]

22  (Qualcomm's Second Supplemental Subpoena to Apple, June 19, 2018). When Apple declined to

23

24  [14] While Qualcomm is careful not to cite any post-discovery transcripts in its argument, it is
readily apparent that the S.D. Cal. depositions form the basis of Qualcomm's expectation that

25  each witness will provide the testimony described by Qualcomm.

[15] Qualcomm also demanded that Apple produce the transcript of Matthias Sauer's deposition.

26  Mr. Sauer was identified by Qualcomm as a potential witness on its January 31·2018 list, but
Qualcomm decided not to depose him in this action. Qualcomm noticed Mr. Sauer's deposition in

27  the S.D. Cal. cases and took the deposition on April 19 without seeking permission from this
Court to take an out of time deposition, without noticing the deposition in this action, and without

28  any participation from the FTC.

1    produce documents in response to the subpoena, which was served more than two months after

2    the close of discovery, Qualcomm insisted on submitting that dispute to Judge Cousins for

3    resolution. Qualcomm only stopped pursuing its subpoena when Apple confirmed that it was not

4    asserting that any provision of the S.D. Cal. protective order prevented Qualcomm's disclosure of

5    the transcripts in this action. (July 12, 2018 email from B. Byars; July 13, 2018 email from E.

6    Takashima).

7           The FTC has objected to Qualcomm's use in this case, for any purpose, of these or any

8    other depositions taken in the S.D. Cal. cases, that were not noticed in this case, and in which the

9    FTC did not participate. (June 26, 2018 Letter from J. Milici.). The parties have met and

10   conferred, but Qualcomm has refused to tell the FTC whether it intends to rely on such deposition

11   transcripts in this matter.  Should Qualcomm try to evade the Court's scheduling orders, the

12   federal rules, and the parties' agreements, and submit such testimony to the Court, the FTC will

13   move to strike the transcripts from the record.[16] If the Court would prefer to address this issue

14   now, the FTC will promptly submit a motion.

15   **III.    THIRD-PARTY DISCOVERY**

16          **A.    Document Production**

17          On June 22, 2018, Judge Cousins granted in part Qualcomm's challenge to Apple's

18   assertions of privilege based on certain asserted common interest agreements and ordered Apple

19   to conduct a re-review of certain documents it had withheld.  (FTC ECF No. 775.)  Apple

20   subsequently produced the documents at issue.

21          **B.    Depositions**

22          There have been no new developments since the June 13 Joint Case Management

23   Statement.  (FTC ECF No. 766.)

24

25

26   _____

27   [16] Qualcomm has not shown any need to supplement the record with additional third party
     depositions.  If it had such a need, it should be required, as the FTC is, to seek permission from

28   this Court to re-open discovery and, if the Court granted its motion, notice the depositions in this
     action.

Dated:  July 18, 2018

Respectfully submitted,

FEDERAL TRADE COMMISSION,


/s/ Jennifer Milici
Jennifer Milici
Wesley G. Carson
J. Alexander Ansaldo
Joseph R. Baker
Elizabeth A. Gillen
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
(202) 326-2912; (202) 326-3496 (fax)
jmilici@ftc.gov

**Attorneys for Federal Trade Commission**


SUSMAN GODFREY LLP

By:      /s/ Kalpana Srinivasan
Kalpana Srinivasan
Marc M. Seltzer
Steven G. Sklaver
Amanda Bonn
Oleg Elkhunovich
Krysta Kauble Pachman
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3006
Email: ksrinivasan@susmangodfrey.com
Email: mseltzer@susmangodfrey.com
Email: ssklaver@susmangodfrey.com
Email: abonn@susmangodfrey.com
Email: oelkhunovich@susmangodfrey.com
Email:  kpachman@susmangodfrey.com

Joseph Grinstein
SUSMAN GODFREY L.L.P.
1000 Louisiana Street # 5100
Houston, TX 77002
Telephone:  (713) 651-9366
Facsimile:  (713) 654-6666
Email: jgrinstein@susmangodfrey.com

Joseph W. Cotchett
Adam J. Zapala
Brian Danitz
Mark F. Ram
Michael Montaño
COTCHETT, PITRE & McCARTHY, LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
Email: jcotchett@cpmlegal.com
Email: azapala@cpmlegal.com
Email: bdanitz@cpmlegal.com
Email: mram@cpmlegal.com
Email: mmontano@cpmlegal.com

***Plaintiffs' Interim Co-Lead Counsel***


HAGENS BERMAN SOBOL SHAPIRO LLP



Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 268-9320
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com

Jeff D. Friedman (173886)
Rio S. Pierce (298297)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
Email: jefff@hbsslaw.com
Email: riop@hbsslaw.com

***Plaintiffs' Steering Committee***

Dated:  July 18, 2018                    CRAVATH, SWAINE & MOORE LLP


                              By:    */s/ Gary A. Bornstein*

                                     Gary A. Bornstein
                                     Yonatan Even
                                     CRAVATH, SWAINE & MOORE LLP
                                     Worldwide Plaza

JOINT CASE MANAGEMENT STATEMENT
Case No. 5:17-cv-00220-LHK-NMC
and 5:17-md-02773-LHK-NMC

825 Eighth Avenue
New York, NY 10019
Tel: (212) 474-1000
Fax: (212) 474-3700
gbornstein@cravath.com
yeven@cravath.com

Robert A. Van Nest
Eugene M. Paige
Justina Sessions
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
Facsimile: (415) 397-7188
rvannest@keker.com
epaige@keker.com
jsessions@keker.com

Richard S. Taffet
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178-0060
Tel: (212) 309-6000
Fax: (212) 309-6001
richard.taffet@morganlewis.com

Willard K. Tom
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave. NW
Washington, DC 20004-2541
Tel: (202) 739-3000
Fax: (202) 739 3001
willard.tom@morganlewis.com

Donn P. Pickett
Geoffrey T. Holtz
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: (415) 442-1000
Fax: (415) 442-1001
donn.pickett@morganlewis.com
geoffrey.holtz@morganlewis.com

***Attorneys for Defendant Qualcomm
Incorporated***

**FILER'S ATTESTATION**

I, Gary A. Bornstein, am the ECF user whose identification and password are being used to file this Joint Case Management Statement. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that the signatories on this document have concurred in this filing.

*/s/ Gary A. Bornstein*
Gary A. Bornstein