Jennifer Milici, D.C. Bar No. 987096
Joseph R. Baker, D.C. Bar No. 490802
Geoffrey M. Green, D.C. Bar No. 428392
Nathaniel Hopkin, N.Y. Bar No. 5191598
Rajesh S. James, N.Y. Bar No. 4209367
Philip J. Kehl, D.C. Bar No. 1010284
Daniel Matheson, D.C. Bar No. 502490
Kenneth H. Merber, D.C. Bar No. 985703
Mark J. Woodward, D.C. Bar. No. 479537
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
(202) 326-3695; (202) 326-3496 (fax)
*jmilici@ftc.gov*

*Attorneys for Plaintiff Federal Trade Commission*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br>Plaintiff<br><br>v.<br><br>QUALCOMM INCORPORATED, a Delaware Corporation,<br>Defendant. | Case No. 5:17-cv-00220-LHK-NMC<br><br>**FEDERAL TRADE COMMISSION'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON QUALCOMM'S STANDARD ESSENTIAL PATENT LICENSING COMMITMENTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**<br><br>Date:        October 18, 2018<br>Time:       1:30 p.m.<br>Courtroom: 8, 4th Floor<br>Judge:      Hon. Lucy H. Koh |

**NOTICE OF MOTION AND MOTION**

To the Honorable Court, all parties, and their attorneys of record:

Please take notice that on October 18, 2018, at 1:30 p.m., in Courtroom 8, United States Courthouse, 280 South 1st Street, San Jose, California 95113, Plaintiff Federal Trade Commission will and hereby does move the Court for partial summary judgment that Defendant Qualcomm Incorporated's commitments to the Alliance for Telecommunications Industry Solutions ("ATIS") and the Telecommunications Industry Association ("TIA") to make licenses to relevant standard-essential patents ("SEPs") available to "applicants" on fair, reasonable, and non-discriminatory ("FRAND") terms require and have required Qualcomm to make such licenses available to rival sellers of modem chips.

This motion is made pursuant to Federal Rule of Civil Procedure 56, and is based on the ground that, as a matter of law, Qualcomm's contractual commitments to ATIS and TIA to make licenses to relevant SEPs available to "applicants" on FRAND terms require Qualcomm to make such licenses available to rival modem-chip sellers.

This motion is based on this Notice of Motion and the Memorandum of Points and Authorities in Support filed concurrently, the pleadings and documents on file in this case, and other such argument as may be presented by counsel at the hearing on this motion.

**ISSUE TO BE DECIDED**

Whether the Court should grant partial summary judgment that Qualcomm's commitments to make licenses to covered SEPs available (1) "to applicants desiring to utilize the license for the purpose of implementing the [relevant ATIS] standard . . . under reasonable terms and conditions that are demonstrably free of any unfair discrimination" and (2) "to all applicants under terms and conditions that are reasonable and non-discriminatory . . . to the extent necessary for the practice of [the relevant TIA standard]" require Qualcomm to make such licenses available to competing modem-chip sellers whose chips implement those standards.

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND FACTS.....................................................................................3

        A.      Overview of Standards and SSOs in 2G, 3G, and 4G .............................3

        B.      Modem Chips Practice Qualcomm's Cellular SEPs.................................5

        C.      Qualcomm Does Not License Rivals That Request a License .................5

III.    UNDISPUTED MATERIAL FACTS SUPPORTING
        PARTIAL SUMMARY JUDGMENT ..................................................................7

        A.      Qualcomm Voluntarily Committed under the ATIS IPR Policy
                to Make Available Licenses to Patents Essential to UMTS and LTE Standards.....7

        B.      Qualcomm Voluntarily Committed under the TIA IPR Policy
                to Make Available Licenses to Patents Essential to CDMA Standards................10

IV.     LEGAL STANDARD..........................................................................................14

V.      QUALCOMM'S FRAND COMMITMENTS REQUIRE IT, AS A MATTER
        OF CONTRACT LAW, TO MAKE LICENSES AVAILABLE TO
        COMPETING CHIP SELLERS .........................................................................17

        A.      Qualcomm's FRAND Commitments Are Binding Contracts ...............17

        B.      The Plain Language of the TIA IPR Policy Requires Qualcomm
                to Make Licenses Available to Competing Sellers of Modem Chips...................18

        C.      The Plain Language of the ATIS IPR Policy Requires Qualcomm
                to Make Licenses Available to Competing Sellers of Modem Chips...................20

VI.     CONCLUSION....................................................................................................21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**

*AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807 (1990) ........................................................16, 18

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................15

*Apple, Inc. v. Motorola Mobility, Inc.*, 886 F. Supp. 2d 1061 (W.D. Wisc. 2012)............16, 17, 18

*Bank of the West v. Superior Court*, 2 Cal. 4th 1254 (1992) ......................................................16

*Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d 866 (9th Cir. 1979) ...............................16

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...........................................................................15

*Epiphany, Inc. v. St. Paul Fire & Marine Ins. Co.*, 590 F. Supp. 2d 1244 (N.D. Cal. 2008)........15

*Galen v. Cnty. of L.A.*, 477 F.3d 652 (9th Cir. 2007).................................................................15

*Gerdlund v. Elec. Dispensers Int'l*, 190 Cal. App. 3d 263 (1987)...............................................16

*GPNE Corp. v. Apple, Inc.*, No. 12-CV-02885-LHK,
    2014 WL 1494247 (N.D. Cal. Apr. 16, 2014) .........................................................................5

*Hariri v. Reliance Standard Life Ins. Co.*, No. 15-CV-03054,
    2017 WL 3422029 (N.D. Cal. Aug. 9, 2017) .........................................................................15

*In re Innovatio IP Ventures, LLC Patent Litig.*, 956 F. Supp. 2d 925 (N.D. Ill. 2013)...........17, 18

*Lies v. Farrell Lines, Inc.*, 641 F.2d 765 (9th Cir. 1981)............................................................15

*Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872 (9th Cir. 2012)..........................................17, 19

*Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024 (9th Cir. 2015)................................................4

*Microsoft Corp. v. Motorola, Inc.*, 854 F. Supp. 2d 993 (W.D. Wash. 2012)..............................16

*Microsoft Corp. v. Motorola, Inc.*, 864 F. Supp. 2d 1023 (W.D. Wash. 2012).................16, 17, 18

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Argonaut Ins. Co.*,
    701 F.2d 95 (9th Cir. 1983) ...................................................................................................16

*Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Riggigin Co.*, 69 Cal. 2d 33 (1968)...............16

*Palo Alto Town & Country Village, Inc. v. BBTC Co.*, 11 Cal. 3d 494 (1974) ............................16

*Paracor Fin. Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151 (9th Cir. 1996)..............................15

*Realtek Semiconductor Corp. v. LSI Corp.*, 946 F. Supp. 2d 998 (N.D. Cal. 2013) ....................17

*St. Paul Mercury Ins. Co. v. Am. Safety Indem. Co.*, No. 12-CV-05952,
    2014 WL 2120347 (N.D. Cal. May 21, 2014) ..................................................................15, 16

*Super98, LLC, v. Delta Air Lines, Inc.*, 309 F. Supp. 3d 1368 (N.D. Ga. 2018) ...........................15

*TCL Commc'n Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*,
  No. SACV 14-341, 2017 WL 6611635 (C.D. Cal. Dec. 21, 2017) ................................17, 18

*Welles v. Turner Entm't Co.*, 503 F.3d 728 (9th Cir. 2007) ...................................................15, 16

**Statutes**

Cal. Civ. Code § 1583 .............................................................................................................16

Cal. Civ. Code § 1646 .............................................................................................................15

**Rules**

Fed. R. Civ. P. 56 ....................................................................................................................14, 15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.      INTRODUCTION

Qualcomm has committed to telecommunications industry standard setting organizations ("SSOs") that Qualcomm will grant licenses to the company's standard-essential patents ("SEPs") on fair, reasonable and non-discriminatory ("FRAND") terms to applicants that wish to implement cellular standards.  In breach of these contractual commitments, Qualcomm has rejected requests from modem-chip competitors to license patents essential to practicing these standards.  Together with other challenged practices, including a "no license-no chips" policy to which Qualcomm subjects its chip customers, Qualcomm's refusal to license chip competitors has significantly contributed to Qualcomm's unlawful maintenance of monopoly power in markets for CDMA and premium LTE modem chips.

Through this motion, the FTC does not seek summary judgment on the competitive effects of Qualcomm's refusal to license its competitors.  These effects must be evaluated, at trial, together with the effects of Qualcomm's other related conduct.[1]  Order Denying Motion to Dismiss (Dkt. 134), at 31.  Nor does the FTC seek through this motion to establish that Qualcomm has an antitrust duty to deal with its competitors.  Order Denying Motion to Dismiss (Dkt. 134), at 41-44 (antitrust duty to deal exists where a defendant alters a voluntary course of dealing with evidence of anticompetitive malice).  This, too, will be a subject addressed at trial.

Rather, the FTC seeks partial summary judgment on a narrow legal issue relevant to evaluation of Qualcomm's conduct under the antitrust laws:  a ruling that Qualcomm's voluntary FRAND licensing commitments to two United States-based SSOs, under the plain meaning of these SSOs' intellectual property rights ("IPR") policies, require Qualcomm to make licenses available to competing modem-chip sellers.  The two SSOs are the Telecommunications Industry Association ("TIA"), the U.S. SSO that adopted the CDMA family of standards, and the Alliance

---

[1] Evidence at trial will show that Qualcomm's refusal to license FRAND-encumbered SEPs to competitors discourages investment and works in conjunction with its no license-no chips policy to tax competitors' chip sales.  Unlike handset makers, Qualcomm's chip competitors do not depend on Qualcomm's modem chips, and thus could negotiate licenses with reference to Qualcomm's likely infringement remedies instead of a threatened supply disruption.

for Telecommunications Industry Solutions ("ATIS"), the U.S. SSO that adopted the UMTS and LTE families of standards. Because Qualcomm's FRAND commitments formed contracts with these SSOs, the Court may appropriately interpret the scope of the duty as a matter of contract law on summary judgment.

The relevant contract language is clear. TIA's IPR policy requires participants to make licenses to relevant SEPs available "to all applicants under terms and conditions that are reasonable and non-discriminatory . . . to the extent necessary for the practice of [the relevant TIA standard]." [2]  ATIS's IPR policy requires participants to make licenses to relevant SEPs available "to applicants desiring to utilize the license for the purpose of implementing the [relevant ATIS] standard . . . under reasonable terms and conditions that are demonstrably free of any unfair discrimination."[3]  Neither IPR policy permits participants to refuse licenses to certain applicants or categories of applicants.  To the contrary, official guidelines to the TIA IPR policy state:  "An example of conduct that would constitute discrimination is a willingness to license all applicants except for competitors of the licensor."[4]  As a matter of California contract law, Qualcomm's FRAND commitments under the terms of these policies mean that it must make licenses to relevant cellular SEPs available to competitors.[5]

The FTC's Complaint alleges that Qualcomm's commitments to TIA, ATIS, and other

[2] Ex. 1 (TIA Intellectual Property Rights Policy, at 8-9, Oct. 21, 2016). All exhibits are attached to the Declaration for Jennifer Milici in Support of the FTC's Motion for Partial Summary Judgment unless noted otherwise.

[3] Ex. 2 (Q2017MDL1_00024028, ATIS Operating Procedures § 10.1, at 10, Mar. 1, 2015), *also available at* https://www.atis.org/01_legal/docs/OP.pdf.

[4] Ex. 3 (Q2017MDL1_00025790, Guidelines to the Telecommunications Industry Association Intellectual Property Rights Policy, at 4, May 1, 2014), *also available at* https://www.tiaonline.org/wp-content/uploads/2018/05/Guidelines_to_the_Intellectual_Rights_Policy_of_the_Telecommunications_Industry_Association.pdf.

[5] The FTC's motion concerns Qualcomm's licensing obligations under the TIA and ATIS IPR policies.  However, the FTC does not waive any arguments that Qualcomm's numerous FRAND licensing commitments to other SSOs, including the European Telecommunication Standards Institute ("ETSI"), also require Qualcomm to license competing modem-chip sellers under the plain and unambiguous terms of the relevant IPR policies.

SSOs require it to license its SEPs to rival modem-chip sellers.  Federal Trade Commission's Complaint for Equitable Relief, ECF No. 1 ("Compl.") ¶ 108.  As the FTC also alleged, and as evidence at trial will show, Qualcomm's breach of those commitments contributed to its ability to tax its competitors' sales and maintain its monopoly in markets for modem chips.  Compl. ¶ 115.  Granting partial summary judgment on the meaning of Qualcomm's FRAND commitments to TIA and ATIS should streamline trial by obviating the need for evidence regarding the meaning of Qualcomm's commitments to a third SSO, the European Telecommunication Standards Institute ("ETSI").  Qualcomm has submitted two expert reports addressing whether the ETSI IPR Policy requires it to license competitors under French law.[6] However, to the extent that Qualcomm's commitments to TIA and ATIS require Qualcomm to license relevant cellular SEPs to modem-chip sellers, the ETSI IPR Policy is immaterial—it makes no difference under the FTC's antitrust claim whether there are additional, duplicative obligations flowing from Qualcomm's ETSI commitments.

Because the interpretation of Qualcomm's contractual FRAND commitments to TIA and ATIS involves no genuine dispute as to any material fact, the Court should grant summary judgment that Qualcomm's contractual commitments to make licenses available to "applicants" on non-discriminatory terms require Qualcomm to make such licenses available to competing modem-chip sellers.

## II.        BACKGROUND FACTS

### A.        Overview of Standards and SSOs in 2G, 3G, and 4G

Cellular telecommunications rely on standards that allow equipment made by many

---

different companies to interoperate.  Four families of cellular standards are relevant to this case: second-generation CDMA (known as "cdmaOne"), third-generation CDMA (known as "CDMA2000"), third-generation Universal Mobile Telecommunications System ("UMTS"), and fourth-generation Long-Term Evolution ("LTE").

SSOs have adopted these standards, which incorporate technology contributed by their members.  TIA adopted the 2G cdmaOne family of standards.[7]  TIA is also the North American organizational partner of 3GPP2, the collaboration that developed the 3G CDMA2000 family of standards as an evolution of cdmaOne.[8]  ATIS is the North American organizational partner of 3GPP, the collaboration that developed the 3G UMTS and 4G LTE families of standards.[9]

The SSO members that contribute technologies to cellular standards include firms that sell standard-compliant products such as modem chips, phones, infrastructure, or cellular network services.  Though firms may retain patents on contributed technologies, SSOs will not incorporate patented technologies into a cellular standard without assurances that the patents will be available for license on FRAND terms.[10]  SSOs—including TIA and ATIS—typically set out their rules regarding patent licensing assurances in an IPR Policy, which describes the purpose and scope of the FRAND requirement.  *See infra* Sections III.A, III.B.  Qualcomm has made a

---

[7] ████████████████████████████████████████████████████
████████████████

[8] ████████████████████████████████████████████████████
████████████████

[9] ████████████████████████████████████████████████████
████████████████

[10] *See, e.g.,* Ex. 5 (3GPP Working Procedures, art. 55, at 26) ("Individual Members should declare at the earliest opportunity, any IPRs which they believe to be essential, or potentially essential, to any work ongoing within 3GPP. . . . Organizational Partners should encourage their respective members to grant licences on fair, reasonable terms and conditions and on a non-discriminatory basis."). Some SSOs refer to "fair, reasonable, and non-discriminatory" ("FRAND") terms, while others, including TIA and ATIS, refer to "reasonable and non-discriminatory" ("RAND") terms.  This Memorandum refers to "FRAND" terms, consistent with courts' conclusion that "FRAND and RAND have the same meaning in the world of SEP licensing." *Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1031 n.2 (9th Cir. 2015).

large number of licensing commitments to TIA, ATIS, and other SSOs relating to 2G (CDMA), 3G (UMTS and CDMA2000), and 4G (LTE) cellular standards.[11]

### B.      Modem Chips Practice Qualcomm's Cellular SEPs

Modem chips, sometimes referred to as baseband chips, are cellular-handset components that implement cellular standards and allow handsets to communicate with a cellular network.[12] Modem chips implementing CDMA, UMTS, and LTE standards practice claims of cellular SEPs owned by Qualcomm, ███████████████████████████████████████████

███████████████████████████████████████████████████████

███

### C.      Qualcomm Does Not License Rivals That Request a License

As set forth below (Section III, *infra*), Qualcomm has voluntarily committed to TIA and ATIS that it will license SEPs essential to cellular standards to applicants that want to implement

---

[11] See Ex. 6 ████████████████████████████████████████

████████████████████████████████████████

[12] *See, e.g.,* Ex. 7 ████████████████████████████████

████████████████████████████████████

[13] Ex. 8 ████████████████████████████████████████████

██████████████ Ex. 9 ████████████████████████████████

██████ *see also, e.g.,* Ex. 10 ██████████████████████████

████████████████████████████████████████████

████████████████████████ ); Ex. 11 █████████████████████

█████████████████████████████████████████████████████

████████████████ Ex. 12 ███████████████████████████████

███████████████████████ Ex. 13 █████████████████████████

███████████████████████████████████████████ This is consistent with holdings in other cases.  *See, e.g., GPNE Corp. v. Apple, Inc.*, No. 12-CV-02885-LHK, 2014 WL 1494247, at *13 (N.D. Cal. Apr. 16, 2014) ("[T]he Court holds as a matter of law that in this case, the baseband processor is the proper smallest salable patent-practicing unit" [relating to certain cellular SEPs]).

1  the standards. To resolve this motion, the Court need not determine whether Qualcomm has

2  breached its licensing commitments by refusing to license competitors. 

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

III.     UNDISPUTED MATERIAL FACTS SUPPORTING PARTIAL SUMMARY
         JUDGMENT

A.      Qualcomm Voluntarily Committed under the ATIS IPR Policy to Make
        Available Licenses to Patents Essential to UMTS and LTE Standards

3GPP, which developed UMTS and LTE standards, is a collaboration among SSOs headquartered throughout the world.[18]  These SSO are known as 3GPP's "Organizational Partners."[19]  3GPP's Organizational Partner from the United States is the Alliance for Telecommunications Industry Solutions ("ATIS"),[20] which is accredited by the American National Standards Institute ("ANSI").[21]  Once 3GPP adopts a standard, ATIS will "transpose" the 3GPP standard specifications into its own ATIS standard, or "deliverable."[22]

Companies that are members of ATIS, such as Qualcomm, may participate in 3GPP activities, subject to the ATIS IPR Policy.[23]  The ATIS IPR Policy states that "it is the intention of ATIS and its Forums to benefit the public while respecting the legitimate rights of intellectual property owners."[24]  With respect to patents, the policy provides that ATIS standards may refer

---

[18] Ex. 5 (3GPP Working Procedures art. 1, at 7, Oct. 20, 2016).

[19] Id. (3GPP Working Procedures art. 6, at 8–9).

[20] Ex. 4 ▮▮▮▮▮▮▮▮▮▮▮▮ ETSI is 3GPP's European Organizational Partner. Id.; Ex. 5 (3GPP Working Procedures art. 1, at 7, Oct. 20, 2016).

[21] Ex. 20 (ATIS, ATIS Telecom Glossary, Foreword, http://www.atis.org/glossary/foreword.aspx).

[22] Ex. 21 (3GPP website, http://www.3gpp.org/about-3gpp/partners) ("3GPP produces Technical Specifications, to be transposed by relevant Standardization Bodies (Organizational Partners) into appropriate deliverables (e.g., standards).").

[23] Ex. 5 (3GPP Working Procedures art. 55, at 26) ("Individual Members shall be bound by the IPR Policy of their respective Organizational Partner").

[24] Ex. 2 (Q2017MDL1_00024028, Operating Procedures for ATIS Forums and Committees § 10.1, at 8, Mar. 1, 2015).

to or require the use of patented technologies.[25]  If "use of a patented invention is required for purposes of adopting, complying with, or otherwise utilizing the standard," however, "the provisions of the ANSI Patent Policy, as adopted by ATIS . . . shall apply."[26]  Those provisions require that,

> Prior to approval of [an ATIS standard requiring use of a patented invention], ATIS shall receive . . .  assurance that a license to such essential patent claim(s) will be made available to applicants desiring to utilize the license for the purpose of implementing the standard . . . under reasonable terms and conditions that are demonstrably free of any unfair discrimination.[27]

Qualcomm is a member of ATIS and has made numerous commitments under the ATIS IPR Policy. ██████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████ ████████████████████████████████ ████████████████████████████████ ██████████████████████

---

[25] *Id.* (§ 10.4.1, at 9).  The policy also encourages disclosure of relevant patent rights.  *Id.*

[26] *Id.*

[27] *Id.* (§ 10.4.2, at 10).  Other acceptable assurances, such as that the submitter owns no relevant patent rights or intends to license relevant patent rights for free, are not relevant here. ██████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████. █████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████

*see also* Ex. 20 (ATIS, ATIS Telecom Glossary, Foreword http://www.atis.org/glossary/foreword.aspx (T1 a predecessor organization sunset in 2004)).



**B.      Qualcomm Voluntarily Committed under the TIA IPR Policy to Make Available Licenses to Patents Essential to CDMA Standards**

TIA, an ANSI-accredited standards developing organization, adopted the cdmaOne family of standards.[33]  TIA is also the U.S. "Organizational Partner" of 3GPP2, a partnership among SSOs that developed the CDMA2000 standard.[34]  Once 3GPP2 develops a standard, TIA will "transpose" 3GPP2's technical standard into its own standard or "deliverable."[35]

[33] Ex. 30 (Q2017MDL1_00025969, Guidelines to the Intellectual Property Rights Policy of the Telecommunications Industry Association, at 1, March 2005); Ex. 4

[34] See Ex. 4                                        Ex. 31 (3GPP2 Partnership Project Description, at 3, 13, 2002).

[35] *See* Ex. 31 (3GPP2 Partnership Project Description, at 6, 2002) (3GPP2 will develop a 3G standard "to be transposed by standardization bodies (Organizational Partners) into appropriate

Companies that are members of TIA, such as Qualcomm, may participate in 3GPP2 activities, subject to the TIA IPR Policy.[36] 

deliverables (e.g., standards).").

[36] *See id.* (3GPP2 Partnership Project Description, at 54).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19      The 2005 guidelines similarly explain that IPR may be included in TIA standards only

20  where it is "available on a reasonable and non-discriminatory basis *for all that would use it to*

21  *fashion products contemplated by the standard in question*."[46]  The guidelines further explain

22

23

24

25

26

27

28  [46] Ex. 30 (Q2017MDL1_00025969, Guidelines to the Intellectual Property Rights Policy of the

1  that:

2        Requiring reasonable and non-discriminatory (RAND)
3   licenses to all applicants prevents the inclusion of patented
    technology from resulting in a patent holder securing a monopoly
4   in any market as a result of the standardization process.  Thus,
    licensing offers which defeat this intention are likely to fail the
5   RAND test and do not comply with the Policy.

6

7        . . .

8        **_An example of conduct that would constitute discrimination is a_**
    **_willingness to license all applicants except for competitors of the_**
9   **_licensor_**.[47]

10  ███████████████████████████████████████

11  ███████████████████████████████████████████

12  ██████████████████████████████████████████████

13  ████████████████████████████

14  ████████████████████████████████████

15  ████████████████████████████████████████████████

16  █████████████████████████████████████████████████

17  ████████████████████

18  **IV.        LEGAL STANDARD**

19        Summary judgment is appropriate where "there is no genuine dispute as to any material

20  fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see*

21

22  ─────────────────────────────────────────────────

    Telecommunications Industry Association, at 1, March 2005) (emphasis added).

23  [47] *Id.* (Guidelines to the Intellectual Property Rights Policy of the Telecommunications Industry
24  Association, at 5) (emphasis added).

25  ██████████████████████████████████████████████

26  ██████████████████████████████████████████████████

27  █████████████████████████████████████████████

28  ████████████████████████

1   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658

2   (9th Cir. 2007).  Material facts are those "that might affect the outcome of the suit under the

3   governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Rule 56 allows a

4   court to grant summary judgment on a part of a claim or defense.  *See* Fed. R. Civ. P. 56(a) ("A

5   party may move for summary judgment, identifying each claim or defense—or the part of each

6   claim or defense—on which summary judgment is sought."); *Lies v. Farrell Lines, Inc.*, 641 F.2d

7   765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall

8   short of a final determination, even of a single claim") (internal quotation marks omitted); *see*

9   *also Hariri v. Reliance Standard Life Ins. Co.*, No. 15-CV-03054, 2017 WL 3422029, at *1

10  (N.D. Cal. Aug. 9, 2017) (granting motion for partial summary judgment on a single issue);

11  *Super98, LLC, v. Delta Air Lines, Inc.*, 309 F. Supp. 3d 1368, 1376 n.5 (N.D. Ga. 2018)

12  (granting in part motion for partial summary judgment on issues of contract interpretation and

13  noting that "[w]hile some courts used to prohibit motions for summary judgment on single issues

14  of elements that did not dispose of a claim, the 2010 Amendment to Rule 56 of the Federal Rules

15  of Civil Procedure expressly recognizes partial summary judgment.").  "The standards for partial

16  summary judgment are identical to the standards for summary judgment."  *St. Paul Mercury Ins.*

17  *Co. v. Am. Safety Indem. Co.*, No. 12-CV-05952, 2014 WL 2120347, at *6 (N.D. Cal. May 21,

18  2014) (Koh, J.) (citing *Epiphany, Inc. v. St. Paul Fire & Marine Ins. Co.*, 590 F. Supp. 2d 1244,

19  1250 (N.D. Cal. 2008)).

20          Under California law,[49] the interpretation of an unambiguous contract is a question of

21

22  _____

23  [49] It is appropriate for the Court to analyze this question under California law.  Neither ATIS nor
    TIA specifies what law governs their IPR Policies, and both organizations issue standards

24  applicable throughout North America.  In the analogous situation of a federal question action in
    which the federal court is "exercising supplemental jurisdiction over state claims, the federal

25  court applies the choice-of-law rules of the forum state—in this case, California."  *Paracor Fin.*
    *Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996).  California choice of law

26  rules provide that, absent an express agreement by the parties, "[a] contract is to be interpreted
    according to the law and usage of the place where it is to be performed; or, if it does not indicate

27  a place of performance, according to the law and usage of the place where it is made."  Cal. Civ.
    Code § 1646; *Welles v. Turner Entm't Co.*, 503 F.3d 728, 738 (9th Cir. 2007).  "When the

28

15

1  law. *Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d 866, 871-72 (9th Cir. 1979).

2  Summary judgment is therefore appropriate where there is no "genuine issue of material fact as

3  to [a] contract's proper interpretation . . . ." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v.*

4  *Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983).  Whether commitments to SSOs to license

5  patents on FRAND terms constitute binding contractual commitments is also a matter for

6  summary judgment.  *Microsoft Corp. v. Motorola, Inc.*, 854 F. Supp. 2d 993, 999 (W.D. Wash.

7  2012).

8  Contracts are to be interpreted, if possible, "solely from the written provisions of the

9  contracts," *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 822 (1990), and where contractual

10  language "is clear and explicit, it governs," *Bank of the West v. Superior Court*, 2 Cal. 4th 1254,

11  1264 (1992).  "Parol evidence is admissible to prove a meaning to which the language of the

12  instrument is reasonably susceptible."  *St. Paul Mercury Ins.*, 2014 WL 2120347, at *12 (citing

13  *Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Riggigin Co.*, 69 Cal. 2d 33, 37 (1968)).

14  "However, extrinsic evidence cannot be used to directly contradict an express term of a written

15  contract." *Id.* (citing *Gerdlund v. Elec. Dispensers Int'l*, 190 Cal. App. 3d 263, 271 (1987)).

16

17

18

19  contract does not specify a place of performance . . . the place of performance is the jurisdiction

20  in which the circumstances indicate the parties expected or intended the contract to be
    performed."  *Welles*, 503 F.3d at 738.  As discussed below, the relevant contracts were formed

21  by Qualcomm's commitments to the SSOs.  Because Qualcomm is headquartered in California,
    California is both the place of performance of the contracts as well as the place where the

22  contracts were formed.  *See* Cal. Civ. Code § 1583 ("Consent is deemed to be fully

23  communicated between the parties as soon as the party accepting a proposal has put his
    acceptance in the course of transmission to the proposer . . . ."); *Palo Alto Town & Country*

24  *Village, Inc. v. BBTC Co.*, 11 Cal. 3d 494, 500-01 (1974) (describing the "effective upon posting
    rule").  Federal courts that have interpreted similar contracts with SSOs, in the absence of a

25  choice of law provision in the SSO's policy, have likewise applied the contract law of the forum
    state.  *See Microsoft Corp. v. Motorola, Inc.*, 864 F. Supp. 2d 1023, 1033 (W.D. Wash. 2012)

26  (applying Washington law to analyze contracts with IEEE and ITU); *Apple, Inc. v. Motorola*

27  *Mobility, Inc.*, 886 F. Supp. 2d 1061, 1082 (W.D. Wisc. 2012) (applying Wisconsin law to
    analyze contract with IEEE).

28

16

V.      **QUALCOMM'S FRAND COMMITMENTS REQUIRE IT, AS A MATTER OF CONTRACT LAW, TO MAKE LICENSES AVAILABLE TO COMPETING CHIP SELLERS**

A.      **Qualcomm's FRAND Commitments Are Binding Contracts**

Qualcomm's commitments to ATIS and TIA formed binding contracts in which Qualcomm agreed to comply with ATIS's and TIA's FRAND requirements.

The Ninth Circuit Court of Appeals, together with other courts, has held that SSOs' IPR policies, in conjunction with patent holders' licensing commitments, create binding contracts between the patent holder and the SSO.  In *Microsoft Corp. v. Motorola, Inc.*, the Ninth Circuit affirmed that "Motorola's RAND declarations to the ITU created a contract." 696 F.3d 872, 884 (9th Cir. 2012); *see also Microsoft*, 864 F. Supp. 2d at 1031 ("[A] contract is formed through Motorola's (or any essential patent holder's) commitment to the IEEE or the ITU to license patents on RAND terms."); *TCL Commc'n Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*, No. SACV 14-341, 2017 WL 6611635, at *5 (C.D. Cal. Dec. 21, 2017) ("ETSI's acceptance of a patent holder's patent as an SEP forms a contract which includes the patent holder's obligation to license."); *Realtek Semiconductor Corp. v. LSI Corp.*, 946 F. Supp. 2d 998, 1006 (N.D. Cal. 2013) ("Similar to the situation in *Motorola*, here, defendants' are contractually obligated under their Letters of Assurance to the IEEE to license . . . on RAND terms . . . ."). Courts in other circuits have reached similar conclusions.  *See, e.g.*, *In re Innovatio IP Ventures, LLC Patent Litig.*, 956 F. Supp. 2d 925, 933 (N.D. Ill. 2013) ("The parties do not dispute that the letters of Innovatio's predecessors in interest to the IEEE constitute binding contractual commitments to the IEEE and its members."); *Apple*, 886 F.Supp.2d at 1083-84 ("[T]he combination of the policies and bylaws of the standards-setting organizations, Motorola's membership in those organization and Motorola's assurances that it would license its essential patents on fair, reasonable and nondiscriminatory terms constitute contractual agreements."). Qualcomm's commitments to ATIS and TIA thus formed binding contracts to comply with these SSOs' SEP licensing requirements.

17

The terms of the contract include the SSOs' IPR policies and guidelines and the terms of Qualcomm's commitments to the SSOs. *See TCL Commc'n*, 2017 WL 6611635, at \*6 (interpreting Ericsson's contract with ETSI with reference to the ETSI IPR Policy and the ETSI Guide on IPRs); *Microsoft*, 864 F. Supp. 2d at 1032 n.6 ("The parties agree that the operative contract language includes the language of Motorola's statements to the IEEE and the ITU, as well as the relevant language in the IEEE and ITU Policies."); *Innovatio IP Ventures*, 956 F. Supp. 2d at 933 ("[T]he parties agreed that the terms of the RAND commitment by which Innovatio is bound are established by the current IEEE Standards Board Bylaws promulgated in 2007."); *Apple*, 886 F. Supp. 2d at 1083-85 (determining scope of Motorola's contractual obligations to ETSI with reference to ETSI IPR policy). These contract terms are discussed below.

**B.      The Plain Language of the TIA IPR Policy Requires Qualcomm to Make Licenses Available to Competing Sellers of Modem Chips**

The language of the TIA IPR Policy and accompanying guidelines, along with Qualcomm's licensing commitments under the terms of the IPR Policy, is clear: Qualcomm must make licenses to relevant SEPs available to rival modem-chip sellers. Because the relevant contract terms are clear, the Court need not consider parol evidence to decide the issue. *AIU Ins. Co.*, 51 Cal. 3d at 822.

Qualcomm has variously promised to make licenses available to "applicants" and "all applicants" that wish to "practice" TIA standards, without unfair "discrimination."[50] No language in the TIA IPR Policy suggests the term "applicants" is limited to applicants selling a particular type of product or occupying a particular level of the supply chain. The Ninth Circuit Court of Appeals addressed similar language in another SSO's IPR Policy, which required a promise to grant licenses to "an unrestricted number of applicants." *Microsoft*, 696 F.3d at

---

[50] *See supra* § III.

884.[51]  The court explained that "[t]his language admits of no limitations as to who or how many applicants could receive a license."  *Id.*  The same is true here, where Qualcomm promised to make licenses to relevant SEPs available to "applicants" and "all applicants."  Neither formulation admits any limitation on who is eligible to receive a license, if requested.

The language that restricts licenses to those that "practice" the standards also provides no basis to exclude modem-chip sellers.  ███████████████████████████████████

████████████████████████████████████[52]  And modem chips are the principal component used by a handset to implement cellular standards.

Moreover, the 2005 TIA guidelines explain that technology subject to intellectual property rights may be included in TIA standards only where these rights are "available on a reasonable and non-discriminatory basis *for all that would use it to fashion products contemplated by the standard in question*."[53]  Modem chips are clearly a product contemplated by the standards at issue here, as they are necessary to implement the standards.

Finally, the commitment to license without "unfair discrimination" unambiguously prohibits Qualcomm from selectively choosing not to license its competitors that, like Qualcomm, practice cellular standards via the design and sale of modem chips.  It is clearly discriminatory for Qualcomm to refuse licenses only to its competitors.  Indeed, TIA's published guidelines expressly identify the refusal to license competitors as "[a]n example of conduct that would constitute discrimination."[54]

---

[51] The licensing commitment at issue in *Microsoft* stated: "The Patent Holder will grant a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to use the patented material necessary in order to manufacture, use, and/or sell implementations . . . ."  *Microsoft,* 696 F.3d at 876.

[52] *See supra* § II.B.

[53] Ex. 30 (Q2017MDL1_00025969, Guidelines to the Intellectual Property Rights Policy of the Telecommunications Industry Association, at 1, March 2005) (emphasis added).

[54] *Id.* (Guidelines to the TIA IPR Policy, at 5).

1
2

### C.     The Plain Language of the ATIS IPR Policy Requires Qualcomm to Make Licenses Available to Competing Sellers of Modem Chips

3

Like the TIA IPR Policy, the ATIS IPR Policy and Qualcomm's accompanying licensing

4   commitments are clear and may be interpreted without reference to parol evidence.  The IPR

5   Policy and Qualcomm's commitments to ATIS to license applicable SEPs in accordance with the

6   terms of the Policy plainly require Qualcomm to make licenses to SEPs available to competing

7   modem-chip sellers.  As with TIA, Qualcomm's commitments apply to "applicants" whose

8   products "implement the standard."[55]  Just as with Qualcomm's sweeping commitments under

9   the TIA policy, there is no limitation on the number or identity of "applicants" eligible to receive

10   licenses.

11

The limitation to applicants that wish to "implement" ATIS standards does not exclude

12   modem-chip sellers.  Qualcomm owns SEPs that are infringed by modem chips, and these chips

13   are sold for the purpose of implementing the standard.[56]  Moreover, the IPR Policy states that it

14   applies whenever "use of the patented invention is required for purposes of adopting, complying

15   with, or otherwise utilizing the standard, guideline, or other ATIS deliverable."[57]  This broad

16   language makes clear that patent declarations under the IPR Policy are intended to facilitate any

17   form of "utilizing" the standard, which a modem chip implementing standardized cellular

18   functionality clearly does.

19

Finally, as under the TIA IPR Policy, Qualcomm has promised under the ATIS IPR

20   Policy not to discriminate in its licensing of SEPs.  These commitments do not allow Qualcomm

21   to withhold licenses from competitors that implement the standard.

22
23
24
25

[55] *See supra* § III.A.

26
27   [56] *See supra* § II.B.

28   [57] Ex. 2 (Q2017MDL1_0024028, ATIS Operating Procedures § 10.4.1, Mar. 1, 2015).

1

## VI.       CONCLUSION

2

Over the past two decades, Qualcomm has repeatedly promised to make licenses to its

3

cellular SEPs available to "applicants" on FRAND terms. ██████████████████████████

4

████████████████████████████████████████████ The Court should

5

grant partial summary judgment that Qualcomm's simple, clear promises to ATIS and TIA

6

require Qualcomm to make licenses on FRAND terms available to competing modem-chip

7

sellers whose products implement or practice the relevant standards; the Court should do so both

8

to resolve a purely legal question and to streamline the trial in this matter.

9

10                                              Respectfully submitted,

11

12                                                _/s/ Jennifer Milici_

13    Dated: August 30, 2018              JENNIFER MILICI
                                          JOSEPH R. BAKER
14                                        GEOFFREY M. GREEN
                                          NATHANIEL HOPKIN
15                                        RAJESH S. JAMES
                                          PHILIP J. KEHL
16                                        DANIEL MATHESON
                                          KENNETH H. MERBER
17                                        MARK J. WOODWARD

18

19                                        Bureau of Competition

20                                        _Attorneys for Plaintiff Federal Trade_
                                          _Commission_
21

22

23

24

25

26

27

28