KEKER, VAN NEST & PETERS LLP
Robert A. Van Nest (SBN 84065)
rvannest@keker.com
Eugene M. Paige (SBN 202849)
epaige@keker.com
Justina Sessions (SBN 270914)
jsessions@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
Facsimile:  (415) 397-7188

CRAVATH, SWAINE & MOORE LLP
Gary A. Bornstein *(pro hac vice)*
gbornstein@cravath.com
Yonatan Even *(pro hac vice)*
yeven@cravath.com
825 Eighth Avenue
New York, New York 10019-7475
Telephone: (212) 474-1000
Facsimile:  (212) 474-3700

Attorneys for Defendant
QUALCOMM INCORPORATED

MORGAN, LEWIS & BOCKIUS LLP
Richard S. Taffet *(pro hac vice)*
richard.taffet@morganlewis.com
101 Park Avenue
New York, NY 10178-0060
Telephone: (212) 309-6000
Facsimile:  (212) 309-6001

MORGAN, LEWIS & BOCKIUS LLP
Willard K. Tom *(pro hac vice)*
willard.tom@morganlewis.com
1111 Pennsylvania Avenue NW
Washington, DC 20004-2541
Telephone: (202) 739-3000
Facsimile:  (202) 739-3001

MORGAN, LEWIS & BOCKIUS LLP
Geoffrey T. Holtz (SBN 191370)
gholtz@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000
Facsimile:  (415) 442-1001

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>QUALCOMM INCORPORATED, a Delaware corporation,<br><br>Defendant. | Case No. 17-cv-0220-LHK-NMC<br><br>**DEFENDANT QUALCOMM INCORPORATED'S MOTION TO EXCLUDE EXPERT REPORTS OF RICHARD L. DONALDSON**<br><br>Date:      October 18, 2018<br>Time:     1:30 p.m.<br>Dept.:     Courtroom 8, 4th Floor<br>Judge:    Hon. Lucy H. Koh<br><br>Trial Date: January 4, 2019 |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................................1

II. BACKGROUND .....................................................................................................................2

III. LEGAL STANDARD ..............................................................................................................3

IV. ARGUMENT ...........................................................................................................................4

    A. Mr. Donaldson Invades the Province of the Factfinder by Improperly Speculating Regarding Licensees' State of Mind ......................................................4

    B. Mr. Donaldson Improperly Bases Broad Opinions on a Handful of License Negotiations Cherry Picked for His Review by FTC Counsel ...............................7

    C. Mr. Donaldson Opines on Causation But Makes No Attempt to Test Alternative Causes ....................................................................................................8

    D. Mr. Donaldson's Opinions on the "Viability" of Component-Level Licensing Are Not Based Upon Sufficient or Reliable Evidence .........................10

V. CONCLUSION.......................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Barber v. United Airlines, Inc.*,
   17 F. App'x 433 (7th Cir. Aug. 16, 2001) .................................................................................8

*Bloom v. J.P. Morgan Chase & Co.*,
   2010 WL 4939951 (N.D. Cal. Nov. 30, 2010) ..................................................................7, 8, 9

*CFTC v. Moncada*,
   2014 WL 2945793 (S.D.N.Y. 2014) .........................................................................................4

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) .......................................................................................1, 3, 4, 8, 9

*Elsayed Mukhtar v. Cal. State Univ., Hayward*,
   299 F.3d 1053 (9th Cir. 2002) ..................................................................................................3

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) ..................................................................................................................9

*Guzman v. Bridgepoint Educ., Inc.*,
   305 F.R.D. 594 (S.D. Cal. 2015) ............................................................................................11

*Hartford-Empire Co. v. United States*,
   323 U.S. 386 (1945) ................................................................................................................11

*Hoffman v. Constr. Prot. Servs., Inc.*,
   541 F.3d 1175 (9th Cir. 2008) ................................................................................................11

*In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*,
   524 F. Supp. 2d 1166 (N.D. Cal. 2007) ....................................................................................8

*In re ConAgra Foods, Inc.*,
   302 F.R.D. 537 (C.D. Cal. 2014) ..............................................................................................4

*In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*,
   984 F. Supp. 2d 1021 (C.D. Cal. 2013) ....................................................................................8

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) ..................................................................................................................3

*Marvel Characters, Inc. v. Kirby*,
   726 F.3d 119 (2d Cir. 2013) .............................................................................................4, 5, 9

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
   523 F.3d 1051 (9th Cir. 2008) ..................................................................................................6

*Parenti v. Cty. of Monterey*,
   2017 WL 1709349 (N.D. Cal. May 3, 2017) ........................................................................4, 5

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*S.E.C. v. Johnson*,
  525 F. Supp. 2d 70 (D.D.C. 2007) ......................................................................... 5

*Scott v. Chipotle Mexican Grill, Inc.*,
  313 F.R.D. 33 (S.D.N.Y. 2016) ............................................................................. 4

*Seaboard Lumber Co. v. United States*,
  308 F.3d 1283 (Fed. Cir. 2002) ............................................................................. 4

*United States v. Frazier*,
  387 F.3d 1244 (11th Cir. 2004) ............................................................................. 4

**RULES**

Fed. R. Civ. P.
  26(a)(1)(A) .......................................................................................................... 11
  37(c)(1) ............................................................................................................... 11

Fed. R. Evid.
  702 ........................................................................................................ 1, 3, 4, 5, 10
  702(a) .................................................................................................................. 10
  702(b) .................................................................................................................. 10
  702(c) .................................................................................................................... 7
  702(d) .................................................................................................................... 7
  703 ...................................................................................................................... 10
  704(a) .................................................................................................................... 4

I.      INTRODUCTION

The FTC has proffered Richard Donaldson as an expert to opine about ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The Court should exclude Mr. Donaldson's opinions in their entirety, for several reasons.

*First*, Mr. Donaldson's opinions on the impact of modem chips on the negotiation of patent licenses are nothing more than his improper speculation regarding the subjective intent and motivations of the parties to specific licensing negotiations to which Mr. Donaldson was not privy. Mr. Donaldson purports to opine that numerous Qualcomm licensees accepted certain licensing terms specifically *because* they subjectively wanted to purchase Qualcomm chips. To support these opinions, Mr. Donaldson simply quotes from documents and witness testimony that FTC counsel cherry-picked for him pertaining to a handful of negotiations, offers his opinion as to how the factfinder should interpret them, and then extrapolates that opinion without basis to numerous other negotiations. But that is not proper expert testimony. It is for the finder of fact—not an expert—to consider admissible evidence, presented through fact witnesses, and reach conclusions as to any contracting party's subjective motivations or intent in agreeing to contract.

*Second*, Mr. Donaldson's attempt to extrapolate his subjective opinions concerning a selected body of evidence more broadly is not founded on reliable principles or methods applied to the facts of the case, as required under FRE 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Instead, Mr. Donaldson purports to base his conclusions on interpreting just six licensing negotiations with Qualcomm and counterparties, among hundreds, based solely on documents counsel provided him, while ignoring all other evidence. Mr. Donaldson's attempt to draw sweeping conclusions from the limited documents the FTC selected for him, without any independent methodology as to why his narrow sample is representative, is improper expert testimony. The Court should strike his opinions for this reason.

*Third*, Mr. Donaldson's opinion regarding Qualcomm's practice of licensing only device makers centers on his assertion that licensing at both the device and chip levels would be a

1

1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ He bases this opinion solely on his assertion that his former employer, Texas Instruments ("TI"), engaged in multi-level licensing of a much smaller portfolio of non-cellular and primarily non-standard-essential semiconductor patents more than 20 years ago. Importantly, Mr. Donaldson concedes that he neither looked at nor has any knowledge of Qualcomm's patent portfolio, how one would differentiate "chip" patents from "device" patents within Qualcomm's portfolio, how long such a process (if possible) would take, or otherwise how Qualcomm's licensing circumstances are comparable to – or distinguishable from – TI's licensing circumstances. These deficiencies are even more notable as Mr. Donaldson concedes that in the cellular industry, licensing *only* at the device-level is the long-standing industry practice for all licensors, not just Qualcomm. As such, Mr. Donaldson's opinion on this matter lacks any reliable methodology or sufficient factual basis and should be excluded.

Accordingly, the Court should strike Mr. Donaldson's opening and rebuttal reports, and should not permit him to testify at trial in this case.

## II.     BACKGROUND

Mr. Donaldson is a former Senior Vice Present and General Patent Counsel of TI who retired in 2000. Expert Report of Richard Donaldson ("Report"), ¶ 2, attached as Exhibit 1 to the Declaration of Geoffrey T. Holtz In Support of Qualcomm Incorporated's Motion to Exclude Expert Reports of Richard L. Donaldson ("Holtz Decl."). While at TI, Mr. Donaldson's responsibilities included developing global semiconductor patent licensing strategies and negotiating patent licenses. *Id.*, ¶ 4. He holds a bachelor's degree in electrical engineering and is an attorney. In arriving at his opinions, Mr. Donaldson reviewed a curated set of documents regarding license agreements between Qualcomm and only six Original Equipment Manufacturers ("OEMs"), including Huawei, Samsung and Lenovo, and claims to base his opinions on these limited materials and his prior work experience at TI and subsequently as a consulting expert. *Id.*, ¶ 13.

Mr. Donaldson states that he was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ In his Report, Mr. Donaldson provides his understanding of
2  SEPs and the requirement that they be licensed on FRAND terms. Report, ¶¶ 21-35. He observes
3  that this requirement was set forth by ETSI and similar organizations to ensure access to
4  standardized technology. *Id.*, ¶ 22. But Mr. Donaldson confirms that ▮▮▮▮▮▮▮▮▮▮▮▮▮
5  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
6  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Rebuttal Report
7  of Richard Donaldson ("Rebuttal Report"), ¶38, attached as Exhibit 2 to Holtz Decl.; Deposition
8  of Richard L. Donaldson ("Tr.") at 195:6-10, attached as Exhibit 3 to Holtz Decl.
9  Mr. Donaldson testified ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
10 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
11 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
12 ▮▮▮▮▮▮▮▮▮▮▮ He took no initiative to access other available record evidence, particularly
13 the nature and scope of the supplier/customer relationship for chips, nor the long history between
14 Qualcomm and the licensees he reviewed. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
15 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
16 ▮▮▮▮▮▮ *Id.* at 283:17-283:24.

### III. LEGAL STANDARD

Federal Rule of Evidence 702 allows an expert to offer opinions at trial only if "(1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Courts applying this rule must ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. The trial court acts as a "gatekeeper" by "making a preliminary determination that the expert's testimony is reliable" and excluding evidence that does not meet the standards under Rule 702. *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002); *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-48 (1999). The Rule 702 and *Daubert* standards apply in a bench trial.

*Seaboard Lumber Co. v. United States*, 308 F.3d 1283, 1302 (Fed. Cir. 2002).  The FTC has the burden of proof to establish these requirements are satisfied.  *Daubert*, 509 U.S. at 592.

A proffered opinion does not meet the standard if it supplies mere emphasis or argument, offering "nothing more than what lawyers for the parties can argue in closing arguments."  *United States v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004); *accord Scott v. Chipotle Mexican Grill, Inc.*, 313 F.R.D. 33, 48-49 (S.D.N.Y. 2016).  Nor may an expert interpret the evidence or render legal conclusions.  *See* Fed. R. Evid. 704(a); *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 558 (C.D. Cal. 2014) ("[E]xpert should not 'usurp' the role of the court by utilizing 'judicially defined terms' that offer 'improper legal opinion'").  An expert cannot opine on a party's or non-party's intent or motivation.  *See, e.g., Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013); *CFTC v. Moncada*, 2014 WL 2945793, at *4 (S.D.N.Y. 2014) ("None of that testimony [about market manipulation], which is based on nothing more than [the expert's] surmise and one brief conversation with defendant, is admissible.").

## IV.   ARGUMENT

Failing to meet any one of the requirements set forth in Rule 702 renders a proffered expert opinion inadmissible, and Mr. Donaldson's opinions fail on a number of independent grounds.

### A.   Mr. Donaldson Invades the Province of the Factfinder by Improperly Speculating Regarding Licensees' State of Mind

Mr. Donaldson's opinions regarding the purported effect of Qualcomm's conduct are nothing more than speculation concerning the subjective intent and motivation of certain third parties who negotiated license agreements with Qualcomm.  Holtz Decl., Ex. 3 (Tr. at 106:8).

An expert may not opine on a party's or non-party's subjective intent, motivation or state of mind.  *See, e.g., Marvel Characters*, 726 F.3d at 136; *Moncada*, 2014 WL 2945793, at *4 (testimony based only on expert's surmise and one brief conversation with defendant, is not admissible); *Parenti v. Cty. of Monterey*, 2017 WL 1709349, at *2 (N.D. Cal. May 3, 2017) (excluding expert's "opinions regarding the state of mind" and noting that "[c]ourts routinely exclude as impermissible expert testimony as to intent, motive, or state of mind").  In *Marvel*

4

*Characters*, for example, the Second Circuit held that the district court properly excluded opinions speculating "as to the motivations and intentions of certain parties" with regard to whether certain material was a "work made for hire." 726 F. 3d at 136. In *Parenti*, the court excluded testimony of an expert in a medical malpractice action who sought to offer her opinion on whether hospital staff were "aware" of certain facts and whether they "did not attempt to harm" the patient. 2017 WL 1709349, at *2.

Here, Mr. Donaldson similarly speculates about how various aspects of Qualcomm's licensing practices motivated or affected the state of mind of the OEMs he considered. For example, he asserts that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Report, ¶ 118 (emphasis supplied). That is nothing more than speculation that licensees' motivation or intent in agreeing to certain terms was to obtain access to Qualcomm's chips, as opposed to the myriad other factors that could have motivated licensees' decision-making. Mr. Donaldson similarly opines that licensees ▮▮▮▮▮▮▮▮▮▮ (Holtz Decl., Ex. 3 (Tr. at 287:17 (emphasis added))), and that Qualcomm's purported leverage (which Mr. Donaldson does not analyze, either generally or vis-à-vis any specific licensee) ▮▮▮▮▮▮▮▮ *Id*., at 109:4-10. Expert testimony drawing conclusions about intent "invades the province" of the trier of fact and should be excluded under Federal Rule of Evidence 702. *S.E.C. v. Johnson*, 525 F. Supp. 2d 70, 78-79 (D.D.C. 2007) (excluding opinion that third parties "were misled" by defendants).

Mr. Donaldson's speculation regarding the meaning of third parties' statements, whether it concerns their motive and intentions or otherwise, is also inadmissible because it is an improper attempt to tell the trier of fact – here the Court – *how* to interpret evidence. That is precisely what Mr. Donaldson does here. He spends much of his Report interpreting and characterizing emails, testimony and agreements in order to draw a raft of conclusions about the motivations behind the parties' decision-making in negotiations. *See* Report, ¶¶123-133. For example, regarding



[redacted]

Mr. Donaldson repeats this exercise with respect to other third parties, namely Lenovo, Blackberry, LG, Sony and Samsung. *See, e.g.*, Report ¶ 145 [redacted] *id.*, ¶ 147 [redacted] In doing so, Mr. Donaldson does not even attempt to assess the actual circumstances of each party to the negotiation – *e.g.*, its need (or lack thereof) for Qualcomm chips, its appetite for litigating the licensing terms, the cost to Qualcomm of reaching impasse and foregoing both royalty payments and potentially significant chip sales to the putative licensee, and other considerations. Instead, Mr. Donaldson simply opines on the meaning, in his view, of some cherry-picked documents, based on his purported experience in other, unrelated negotiations largely outside the cellular industry, to reach conclusions on what OEMs believed. This is improper. *See Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1060 (9th Cir. 2008).

The Court should strike Mr. Donaldson's Report and Rebuttal Report and exclude his testimony as speculative interpretations of third parties' purported states of mind and intentions.

---

[1] See also Report, ¶ 149 [redacted] *id.*, ¶¶ 160-161 [redacted]

1   They are unhelpful to the Court.

        **B.   Mr. Donaldson Improperly Bases Broad Opinions on a Handful of License Negotiations Cherry Picked for His Review by FTC Counsel**

To be admissible, Mr. Donaldson's opinions must be based upon reliable principles and methods applied to the facts of this case. *See* Fed. R. Evid. 702(c) and (d); *Bloom v. J.P. Morgan Chase & Co.,* 2010 WL 4939951, at *3 (N.D. Cal. Nov. 30, 2010) (excluding an expert after finding that "she employed no method whatsoever… but instead simply 'picked' [her conclusion] based on her impression from talking to plaintiff"). Here, Mr. Donaldson applied none. Instead, Mr. Donaldson simply reviewed a limited number of documents, handpicked by the FTC and which concern negotiations with only six OEMs, and on the basis of this limited review, concludes that Qualcomm's policies, including its policy of not selling chips to infringers of its patents ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ with hundreds of OEMs. Report, ¶ 67 (emphasis supplied). This is impermissible expert opinion.

By his own admission, Mr. Donaldson limited his analysis to reviewing selected portions of the discovery record regarding just *six* license agreements out of the hundreds on which he opines (Report, ¶¶ 122-162; Holtz Decl., Ex. 3 (Tr. at 112:22-113:14)), and only the documents *the FTC* provided to him concerning these six license agreements. Mr. Donaldson does not explain why his review of cherry-picked documents concerning six licensees is a sufficient basis for him to opine on Qualcomm's licensing practices or licensing terms more generally. Mr. Donaldson has done nothing to determine the sufficiency of the documents he was provided – *i.e.*, whether they provide a complete picture as to the negotiations they pertain to, let alone their sufficiency to form a basis for opinions going well beyond the negotiations with these six OEMs. Indeed, in his deposition, Mr. Donaldson conceded that he was not even aware of the volume of licensees he failed to consider and yet is purporting to opine on. Undisclosed and unknown to Mr. Donaldson are agreements and documents reflecting hundreds of other licensing negotiations that Mr. Donaldson has not considered.

Under these circumstances, Mr. Donaldson does not and cannot offer any opinion that the

six license agreements he did review are a representative sample, making his conclusions as to Qualcomm's agreements more broadly necessarily uninformed and unreliable. *See In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*, 984 F. Supp. 2d 1021, 1040 (C.D. Cal. 2013) ("The Court cannot countenance the use of this type of convenience sample . . . . suffering from litigation selection bias."); *In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1176 (N.D. Cal. 2007) ("[C]herry-picking observational studies that support [the expert's] conclusion and rejecting or ignoring the great weight of the evidence that contradicts his conclusion . . . .' is not derived by the scientific method, and is not 'good science;' it is therefore inadmissible."); *see also Barber v. United Airlines, Inc.*, 17 F. App'x 433, 437 (7th Cir. Aug. 16, 2001) ("[A] selective use of facts fails to satisfy the scientific method and *Daubert*, and it thus fails to 'assist the trier of fact.'"). While an expert certainly is not obligated to review every discovery document, if the expert is going to purport to opine on a broad program, he or she plainly should do more than review a small, skewed sample of the relevant record; at the very least, the expert should attempt to understand the scope of the available record evidence and offer a reliable methodology for extrapolating general opinions from a narrow review. Mr. Donaldson has done none of that.

### C.   Mr. Donaldson Opines on Causation But Makes No Attempt to Test Alternative Causes

Mr. Donaldson concedes that there are a number of variables that factor into any licensing negotiation, but he makes no effort to assess or control for any of them. Mr. Donaldson's failure to consider clearly relevant facts in reaching his opinions demonstrates that his opinions are not based on sufficient facts or data and do not result from the application of any reliable methodology to such facts or data. For example, according to Mr. Donaldson, the existence and scope of "leverage" would depend, among other things, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Holtz Decl., Ex. 3 (Tr. 180:15-22). Yet Mr. Donaldson makes no attempt to assess *any* of the factors he identifies. *Id.*, at 82:24-83:21. Similarly, Mr.

1  Donaldson testified that ████████████████████████████████████
2  ██████████████████████████████████████████ but he also did not
3  attempt to control for this factor. *Id.*, at 77:17-78:13. Mr. Donaldson further concedes that ████
4  ████████████████████████████████████████████████████████████
5  ████████████████████████████████████████████████████████████
6  ██████████████████████████████ *Id.*, at 187:2-21. But Mr. Donaldson makes
7  no effort to analyze or control for this factor, either. Indeed, he readily concedes that he only
8  ████████████████████████████████████████████████ *Id.*, at 182,
9  which would itself be improper cherry-picking. But he further made no effort to determine,
10 systematically or at all, whether chips were or were not important to any (or all) licensees, or
11 which chips, or in what numbers. He has simply reviewed curated evidence relating to a small
12 number of pre-selected licensees and attempted to extrapolate that to every one of the hundreds of
13 individualized negotiations that led to a Qualcomm license agreement.
14         In these circumstances, the Court should strike Mr. Donaldson's opinions because his
15 analysis is untethered to any reliable principles or methodology. Rather, it rests only on Mr.
16 Donaldson's subjective interpretations based on purported review of a discrete set of evidence
17 provided to him by the FTC. This is unreliable expert testimony. *See Gen. Elec. Co. v. Joiner*,
18 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires
19 a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit*
20 of the expert. A court may conclude that there is simply too great an analytical gap between the
21 data and the opinion proffered."). As the Second Circuit observed in affirming the exclusion of
22 experts who merely attempted to relate their interpretations of the evidence to the court: "The
23 appropriate way to adduce factual details of specific past events is, where possible, through
24 persons who witnessed those events. And the jobs of judging these witnesses' credibility and
25 drawing inferences from their testimony belong to the factfinder." *Marvel Characters*, 726 F.3d
26 at 136. Mr. Donaldson's opinions should therefore be excluded.
27
28

### D. Mr. Donaldson's Opinions on the "Viability" of Component-Level Licensing Are Not Based Upon Sufficient or Reliable Evidence

Mr. Donaldson also offers an opinion ████████████████████████████████████████████████████████████████████████████████████████ Report ¶ 1. He opines simply that licensing at the chip level would be a ████████████████████ Id. ¶165. On two independent grounds, this opinion fails to meet the requirements of Rules 702 and 703 because it is not based on sufficient facts or data, and therefore is not helpful to the trier of fact. Fed. R. Evid. 702(a), (b), 703.

*First*, in his deposition, Mr. Donaldson admits that licensing only at the device level is the long-standing industry practice:

████████████████████████████████████████████████████████████████████████████████████████

Holtz Decl., Ex. 3 (Tr. at 283:17-24). In his Report, however, contrary to his sworn deposition testimony, Mr. Donaldson asserts that he ██████████████████████████████████████ ████████████████████████████████████████████████████████ Report, ¶¶ 165-174. Accordingly, to the extent Mr. Donaldson still intends to offer any opinion other than his admission that the industry practice has long been to license at the device level, the Court should exclude it.

*Second*, Mr. Donaldson offers no valid basis for his opinion that licensing at the chip level *by Qualcomm* would be ████████████████████ The sole support he cites for his opinion is that TI licensed both computer chip makers and personal computer makers while Mr. Donaldson worked there from the 1970s to the 1990s. Report, ¶¶ 166-69. Mr. Donaldson did not have responsibility for formulating corporate strategy with respect to licensing cellular wireless patents. Holtz Decl., Ex. 3 (Tr. at 11:24-12:7). Mr. Donaldson's license negotiations at TI typically involved ████████████████████ Report ¶ 75, Ex. A at 2, but Qualcomm's patent portfolio contains *tens of thousands* of patents. Mr. Donaldson concedes that he knows nothing about Qualcomm's patent portfolio, has never reviewed any Qualcomm patents to ascertain how one would differentiate

"chip" patents from "device" patents, and cannot say how long it would take to do so. Holtz Decl., Ex. 3 (Tr. at 271:6-272:13). Without any knowledge of Qualcomm's patents, Mr. Donaldson has no basis to analogize between his past TI experience and the viability of alternative licensing practices for Qualcomm. Nor did he make any link between the computer industry and the cellular industry, or any attempt to justify why TI's choice should be imprinted onto the cellular industry.[2]

Mr. Donaldson's opinion that chip-level licensing is ▓▓▓▓ is thus based upon no "methodology" other than what he says was his TI experience 20-plus years ago, the applicability of which to Qualcomm's circumstances he cannot opine on.[3] The Court should strike this aspect of his opinions.

## V.   CONCLUSION

For the foregoing reasons, the Court should strike Mr. Donaldson's Report and his Rebuttal Report and exclude the improper opinion testimony described herein.

Dated: August 30, 2018

MORGAN, LEWIS & BOCKIUS LLP

By: */s/ Geoffrey T. Holtz*
Geoffrey T. Holtz

---

[2] Indeed, it is hornbook law that a patentee is free to license or not license its patents as it sees fit. *See Hartford-Empire Co. v. United States*, 323 U.S. 386, 432 (1945) ("A patent owner is not in the position of a quasi-trustee for the public or under any obligation to see that the public acquires the free right to use the invention. He has no obligation either to use it or to grant its use to others."). Mr. Donaldson expressly declines to offer any opinion that any FRAND commitment has affected the industry practice of licensing at the device level or requires anything different. Rebuttal Report, ¶38.

[3] Mr. Donaldson's testimony of practices at TI should also be excluded because they comprise undisclosed fact testimony. A party's initial disclosures must identify all fact witnesses. Fed. R. Civ. P. 26(a)(1)(A). Failure to disclose a witness precludes the party from calling that witness at trial. Fed. R. Civ. P. 37(c)(1); *Hoffman v. Constr. Prot. Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008); *Guzman v. Bridgepoint Educ., Inc.*, 305 F.R.D. 594, 607 (S.D. Cal. 2015). Donaldson was not disclosed as a fact witness under Rule 26(a)(1)(A), and Qualcomm suffers obvious prejudice by its inability to review, or even to seek, the TI licensing agreements about which Donaldson now purports to testify or any other documents to test Mr. Donaldson's testimony. Mr. Donaldson should be precluded from testifying regarding TI's licenses.

Robert A. Van Nest (SBN 84065)
Eugene M. Paige (SBN 202849)
Justina Sessions (SBN 270914)
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
Facsimile:  (415) 397-7188


Gary A. Bornstein *(pro hac vice)*
Yonatan Even *(pro hac vice)*
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
Tel.: (212) 474-1000
Fax: (212) 474-3700
gbornstein@cravath.com
yeven@cravath.com

Richard S. Taffet *(pro hac vice)*
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178-0060
Tel.: (212) 309-6000
Fax: (212) 309-6001
richard.taffet@morganlewis.com

Willard K. Tom *(pro hac vice)*
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue NW
Washington, DC 20004-2541
Tel.: (202) 739-3000
Fax: (202) 739 3001
willard.tom@morganlewis.com

Geoffrey T. Holtz (SBN 191370)
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Tel.: (415) 442-1000
Fax: (415) 442-1001
gholtz@morganlewis.com

Attorneys for Defendant
QUALCOMM INCORPORATED