SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
GARY L. HALLING, Cal. Bar No. 66087
ghalling@sheppardmullin.com
MICHAEL W. SCARBOROUGH, Cal. Bar No. 203524
mscarborough@sheppardmullin.com
MONA SOLOUKI, Cal. Bar No. 215145
msolouki@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone: 415.434.9100
Facsimile: 415.434.3947

Attorneys for Non-Parties
SAMSUNG ELECTRONICS CO., LTD.,
SAMSUNG SEMICONDUCTOR, INC. and
SAMSUNG ELECTRONICS AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION<br><br>Plaintiff,<br><br>v.<br><br>QUALCOMM INCORPORATED,<br>a Delaware corporation,<br><br>Defendant | Case No. 5:17-cv-00220-LHK<br><br>The Hon. Lucy H. Koh<br><br>**DECLARATION OF SANGHOON PARK IN SUPPORT OF PLAINTIFF FEDERAL TRADE COMMISSION'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL** |

SMRH:487694697.1                          SANGHOON PARK DECLARATION I/S/O FTC'S
                                          ADMINISTRATIVE MOTION TO SEAL DOCUMENTS

I, Sanghoon Park, do declare and state as follows:

1. I am a Vice President with responsibility for Global Legal Affairs. I have been employed at Samsung Electronics Co. Ltd. since 2004, and in the course of my responsibilities have become familiar with Samsung's treatment of its trade secrets and other proprietary business information, such those outlined below. I make this declaration on behalf of non-party Samsung Electronics Company Ltd., Samsung Semiconductor Inc., and Samsung Electronics America Inc. (collectively "Samsung") in this action in support of the Federal Trade Commission's Administrative Motion to File Under Seal Portions of its Motion to Exclude Expert Testimony of Dr. Edward A. Snyder and Accompanying Exhibits. Except for those matters stated on information and belief, about which I am informed and which I believe to be true, I have personal knowledge of the matters set forth herein, and could and would testify competently to each of them.

2. It is my understanding that, in response to compulsory process, non-party Samsung has produced to the parties in this multidistrict litigation certain documents and information designated as either "Confidential" or "Highly Confidential – Attorneys' Eyes Only" pursuant to the Stipulated Protective Order entered in the MDL litigation on May 29, 2017 (Dkt. No. 46), the Protective Order entered in the FTC litigation (Dkt. No. 81), the Protective Order entered in the S.D. Cal. litigation (Dkt. No. 163), and the Samsung Supplemental Protective Order (Dkt. Nos. 415 and 420).

3. I have reviewed selected portions of the Federal Trade Commission's Motion to Exclude Expert Testimony of Dr. Edward A. Snyder ("FTC's Mot. to Exclude") (Dkt. No. 788); the Declaration of Jennifer Milici in Support of Federal Trade Commission's Motion to Exclude Expert Testimony of Dr. Edward A. Snyder ("Milici Decl.") (Dkt. No. 788-1); Exhibit 1 to the Milici Decl. (Expert Report of Edward A. Snyder) (Dkt. No. 788-2); Exhibit 2 to the Milici Decl. (Deposition of Edward A. Snyder) (Dkt. No. 788-2); and Exhibit 4 to the Milici Decl. (Expert Report of Prof. Carl Shapiro) (Dkt. No. 788-2). These documents, lodged August 30, 2018, include or reference Samsung Confidential or Highly Confidential materials that are the

subject of this declaration.[1] The Federal Trade Commission has provided non-party Samsung with unredacted excerpts of selected portions of the FTC's filings that may contain Samsung's confidential information.

4. I have also reviewed the Federal Trade Commission's Administrative Motion to File Under Seal Portions of its Motion to Exclude Expert Testimony of Dr. Edward A. Snyder and Accompanying Exhibits (Dkt. No. 789) ("FTC Sealing Mot."), filed on August 30, 2018; and the Declaration of Jennifer Milici In Support of FTC's Sealing Mot. (Dkt. No. 789-1) ("Milici Sealing Decl."), filed on August 30, 2018. The Court has extended Samsung's deadline to file this declaration in support of sealing to September 12, 2018 (Dkt. No. 821).

5. Pursuant to Civil Local Rules 7-11 and 79-5 and the Stipulated Protective Order, I make this declaration in support of sealing limited portions of Defendant's submissions that reveal Samsung's trade secrets and other competitively sensitive information the disclosure of which would significantly harm Samsung's current and future negotiating position with various licensors, customer and suppliers, and allow Samsung's competitors and licensors to formulate business counter-strategies based on the confidential submissions to the detriment of Samsung. The information Samsung seeks to seal reflect the realities of Samsung's current business, ongoing strategies, and recent licensing terms; not stale information that no longer reflects the realities of Samsung's current business. For example, Samsung has been engaged in on-going licensing discussions and negotiations with Qualcomm even after the parties executed a license agreement, and the parties recently amended that agreement pursuant to those negotiations that took place over a period of multiple years. Samsung anticipates that the parties may engage in future licensing negotiations as well.

6. The information that Samsung seeks to narrowly seal (separately described below) falls into five categories of competitively sensitive information the secrecy and confidentiality of which Samsung closely guards, even internally. Those categories involve:

---

[1] Unless otherwise indicated, all exhibits references throughout are to the exhibits to the Milici Decl.

    (1) Licensing strategies, risk assessments, negotiations, and concessions with different counterparties, and specific licensing terms ultimately agreed to with third parties, including royalty terms, effective royalty rates, and payments under existing licenses;

    (2) R&D expenditures and related investments in modem chipset development in connection with Samsung's attempted entry into the merchant modem market;

    (3) Internal efforts, strategies and analyses in connection with modem chipset market entry and related barriers, including options and strategies considered internally for acquiring and/or developing certain implementation technologies;

    (4) Chipset procurement strategies and decisions, including internal efforts to self-supply, negotiations with existing and potential suppliers, supplier evaluations, pricing strategies, and related supply and related agreements; and

    (5) Modem chipset sales and marketing strategies, and internal evaluations and assessments of specific business cases.

   7.  While I understand that the proceedings in this Court are generally open to the public, this right of access should not be freely extended to Samsung's competitors and business counterparties, such as existing and potential licensors, who could use Samsung's confidential material to advance their own business advantage to Samsung's detriment.

   8.  Accordingly, Samsung respectfully requests that the Court seal the following limited material to prevent such competitive harm from being perpetuated through access to the Court's files.

### Exhibit 1 (Expert Report of Edward A. Snyder).

   9.  Dr. Snyder's Expert Report, submitted on behalf of Defendant Qualcomm, contains, cites and directly quotes from a myriad of confidential sources containing Samsung's highly confidential documents, data and testimony. The table in <u>Attachment A</u> categorizes the references to Samsung confidential information contained in the Snyder Expert Report and explains the reason for maintaining each under seal. Generally, the references in the Snyder Expert Report reveal highly sensitive and confidential details of Samsung's license agreements

SMRH:487694697.1   -3-   SANGHOON PARK DECLARATION I/S/O FTC'S ADMINISTRATIVE MOTION TO SEAL DOCUMENTS

(including various amendments and addenda thereto) with specific third parties, Samsung's sourcing practices, R&D investment and strategy, procurement strategy and competitive position, pricing strategy, internal competitive analyses and marketing strategy, past and present product roadmaps, and reveal customer relationships for modem and even non-modem sales.

10. Specifically, the document references in Category No. 1(licensing) include confidential details of the term of licensing agreements, the technologies and scope of patents covered by those agreements, the extent of cross licenses and releases agreed to and the period covered by such releases, the specific royalties and licensing fees, and Samsung's negotiation strategy and business concerns relating to licensing. References in Category No. 2 (R&D) lay out System LSI's growth strategy, including its strategy for entering the merchant modem chipset business and assessment of certain licensing risks and options for future engagement. Documents in Category No. 3 (entry) reveal the confidential details of Samsung's negotiations related to a chipset joint venture for which none of the confidential terms and obligations (which reflect Samsung's business risk assessments and strategies) were ever made public. References in Category No. 4 (procurement) describe Samsung's internal procurement strategy and internal assessments for achieving price competitiveness for its mobile devices in various tiers through chipset selection decisions, revealing where Samsung thought it needed to achieve more competitiveness, and thus providing competitors in that tier invaluable information about Samsung procurement and pricing strategies. Finally, documents in Category No. 5 (sales) reveal Samsung's internal business strategies for selling and marketing both chipsets and handsets, including customer-specific risk assessments and product roadmaps and marketing positioning. The references and documents falling into each of these categories are detailed in Attachment A.

11. Public disclosure of such highly sensitive information to Samsung's competitors and licensors would irreparably harm Samsung's competitive positions, as those competitors and licensors could formulate counter-strategies based on Samsung's confidential strategies and license terms. For example, public disclosure of Samsung's royalty rates and negotiation strategies could be used by Samsung's licensors to extract more advantageous terms that are

disadvantageous to Samsung. Moreover, public disclosure of confidential business information would permit competitors to develop counterstrategies to Samsung's business practices in the US and abroad. Accordingly, Samsung respectfully requests that the Court seal these portions of Qualcomm's expert report in order to prevent the Court's files from serving as a source of competitive harm to Samsung. Because absent sealing, the Court could not prevent disclosure to Samsung's licensors and competitors, there is no more limited means to prevent harm to Samsung.

**Exhibit 3 (Rebuttal Report of Prof. Carl Shapiro).**

12. Samsung also requests that the Court seal one sentence and one footnote citation parenthetical in the Shapiro Rebuttal Expert Report, submitted as Exhibit 3 to the Milici Decl. The sentence associated with footnote 607 in paragraph 327 of the Shapiro Expert Report, as well as the parenthetical in footnote 327, reveal the confidential details of Samsung's negotiations related to a chipset joint venture with certain Japanese companies. While the fact of the joint venture itself and its later abandonment were publicly announced, none of the confidential terms and obligations that were being negotiated over a period of many months, including the conditions insisted on by Samsung that reflect Samsung's business risk assessments related to licensing and chip sales were ever made public. This type of information reveals Samsung's internal risk assessments regarding certain licensing issues and potential risk thresholds that may have been acceptable or unacceptable to Samsung – all of which would provide competitors and licensors with invaluable information about Samsung's internal business strategies and the degree of certain business risks that Samsung may be willing to undertake in connection with certain ventures. Such competitors and business counterparties could use this information to advance their business advantage and agenda to the detriment of Samsung's in current and future dealings and negotiations. On balance, the competitive harm to Samsung would far outweigh the public's right to know the manner in which Samsung assesses new business ventures and strategies.

13. Samsung keeps its business risk assessments and strategy confidential and

secret. As explained in the previous paragraph, public disclosure of this sensitive information would irreparably harm Samsung's competitive position vis-à-vis its competitors and licensors. To prevent such harm, Samsung closely guards the confidentiality of its contract terms and negotiation strategy, and internally limits its disclosure to those individuals whose job duties and responsibilities necessarily implicate access to such information.

14. Accordingly, Samsung respectfully requests that the Court grant Samsung's request to seal this one sentence and one parenthetical in Prof. Shapiro's report.

* * *

15. Samsung has narrowly tailored this sealing request to only those references necessary to protect its proprietary and sensitive business information. Samsung has provided facts demonstrating that the materials cited above contain competitively sensitive information the disclosure of which would significantly harm Samsung's current and future licensing and negotiating positions in its chipset business. For the reasons stated above, Samsung requests that the Court maintain under seal the aforementioned information.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed on September 12, 2018 at Suwon Korea.

_____
SANGHOON PARK

# ATTACHMENT A

## Samsung Moves to Maintain Under Seal The Following Narrowly Tailored Portions of Exhibit 1 (Snyder Expert Report)

| Paragraph | Footnote | Redaction Description |
|---|---|---|
| **(1) Licensing strategies, related negotiations and concessions with different counterparties, and specific licensing terms ultimately agreed to with third parties** | | |
|  | 1392 | Entire footnote 1392 describing Samsung's negotiations with Qualcomm from 2007 through 2018. |
| **(2) R&D expenditures and related investments in modem chipset development** | | |
| 36c |  | First two sentences after "Samsung planned to invest". Second to last sentence after "was terminated". |
| 528 |  | The sentence after "Samsung and other partners". |
| **(3) Internal efforts and strategies in connection modem chipset market entry, including options and strategies considered internally for acquiring and/or developing certain implementation technologies** | | |
| 237iv |  | The sentence after "Samsung was developing CDMA chips internally". |
|  | 1510 | The quote in footnote 1510. |
| 529 | 1512, 513 | The sentences associated with footnotes 1512 and 1513. Parentheticals corresponding to footnotes 1512 and 1513. |
| 531 | 1516 | The sentence associated with footnote 1516 and the parenthetical in the corresponding footnote. |
|  | 1517 | Parenthetical in footnote 1517. |
| 532 | 1518 | The sentence associated with footnote 1518. |
| 532 | 1519 | The full sentence after "the memo notes that". The second sentence of footnote 1519 that quotes from SFT-0036334-36. |
| 536 | 1523 | The sentence associated with footnote 1523 and the parenthetical corresponding to footnote 1523. |
| 537 | 1528 | The sentence associated with footnote 1528. |

| Paragraph | Footnote | Redaction Description |
|---|---|---|
| 537 | 1529, 1530 | The sentences associated with footnotes 1529 and 1530. |
|  |  | Footnotes 1529 and 1530 exclusive of citations. |
| 537 |  | The sentence associated with footnote 1531. |
| **(4) Chipset procurement strategies and decisions, including negotiations with existing and potential suppliers, supplier evaluations, pricing strategies, and supply agreements** | | |
| 116 | 239 | Parenthetical quoting directly from the Kang deposition. |
| 134 | 277 | Second parenthetical quoting from page 46 of the Kang deposition. |
| 235 | 452 | The sentence corresponding to footnote 452. |
|  |  | Parenthetical in the footnote quoting from the Kang deposition. |
| 359 | 954 | The sentence associated with footnote 954 (after "SoCs at Samsung,") and the parenthetical in the corresponding footnote. |
| 361 | 960 | The sentence associated with footnote 960 and the parenthetical in the corresponding footnote. |
| 362 | 962, 964 | The sentences associated with footnotes 962 and 964, and the parentheticals in the corresponding footnotes. |
|  | 969 | The document title and parenthetical in footnote 969 quoting from SFT-07563848. |
| 364 | 970 | The sentence associated with footnote 970 and the parenthetical in the corresponding footnote. |
|  | 972, 974 | Parentheticals in footnotes 972 and 974. |
| 365 | 975 | The sentence associated with footnote 975 and the parenthetical in the corresponding footnote. |
|  | 1140 | Parenthetical in footnote 1140 quoting from the Kang deposition. |
| 472d |  | The rest of the sentence after "internal self-supply:". |
| 527d |  | The rest of the sentence after "as good as Qualcomm's," |
| **(5) Modem chipset sales and marketing, including strategies, internal evaluations, and assessments of specific business cases** | | |
|  | 260 | Title of the document corresponding to SFT-07740063-85 and the parenthetical quoting from the document. |
|  | 296 | Parenthetical quoting from the Kalkman deposition. |

| Paragraph | Footnote | Redaction Description |
|---|---|---|
| 243 | 502 | The sentence associated with footnote 502 and the parenthetical in the corresponding footnote. |
|  | 512 | The parenthetical quoting directly from SFT-07228696-97. |
| 246 | 513 | The sentence associated with footnote 513 and the title of the document in the corresponding footnote. |
|  | 515 | The parenthetical quoting from SFT-027228696-97. |
| 247 | 516 | The sentence associated with footnote 516 (after "for example,") and the parenthetical in the corresponding footnote. |
| 247 |  | The sentence after "Samsung S-LSI initially" |
| 250 |  | The sentence after "It chose to" |
| 364 | 971 | The sentence associated with footnote 974 and the parenthetical in the corresponding footnote. |
|  | 978 | Parenthetical in footnote 978 quoting from Kalkman deposition. |
| 366 | 979 | The sentence associated with footnote 979 and the parenthetical in the corresponding footnote. |
|  | 981 | The first parenthetical quoting from the Hong deposition. |
|  | 986 | Document title and parenthetical in footnote 981. |

**ATTESTATION**

Pursuant to Civil Local Rule 5-1 (i)(3), I , Gary L. Halling, attest that the signatory of this document, and on whose behalf the filing is submitted, concurs with the filing's content and has authorized the filing.

Dated: September 12, 2018

                              SHEPPARD MULLIN RICHTER & HAMPTON LLP

                              */s/ Gary L. Halling*

                              GARY L. HALLING