CRAVATH, SWAINE & MOORE LLP
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
825 Eighth Avenue
New York, New York 10019-7475
Telephone: (212) 474-1000
Facsimile:  (212) 474-3700

KEKER, VAN NEST & PETERS LLP
Robert A. Van Nest (SBN 84065)
rvannest@keker.com
Eugene M. Paige (SBN 202849)
epaige@keker.com
Justina Sessions (SBN 270914)
jsessions@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
Facsimile:  (415) 397-7188

Attorneys for Defendant
QUALCOMM INCORPORATED

MORGAN LEWIS & BOCKIUS LLP
Richard S. Taffet (*pro hac vice*)
richard.taffet@morganlewis.com
101 Park Avenue
New York, New York 10178-0060
Tel: (212) 309-6000
Fax: (212) 309-6001

MORGAN LEWIS & BOCKIUS LLP
Willard K. Tom (*pro hac vice*)
willard.tom@morganlewis.com.com
1111 Pennsylvania Ave. NW
Washington, DC 20004-2541
Telephone: (202) 739-3000
Facsimile:  (202) 739-3001

MORGAN LEWIS & BOCKIUS LLP
Geoffrey T. Holtz (SBN 191370)
geoffrey.holz@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000
Facsimile:  (415) 442-1001

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>QUALCOMM INCORPORATED, a Delaware corporation,<br><br>Defendant. | NO. 5:17-CV-00220-LHK-NMC<br><br>**DECLARATION OF MATTHEW GETTINGER IN SUPPORT OF FEDERAL TRADE COMMISSION'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL PORTIONS OF ITS MOTION TO EXCLUDE EXPERT TESTIMONY OF PROFESSOR AVIV NEVO AND ACCOMPANYING EXHIBITS**<br><br>CTRM: COURTROOM 8<br><br>JUDGE: HON. LUCY H. KOH |

I, Matthew Gettinger, declare as follows:

1. I am currently Vice President, Business Development, Qualcomm Technology Licensing ("QTL"), the division of Qualcomm responsible for Qualcomm's licensing program. I received my Bachelor of Arts from Wesleyan University in 1979 and my Juris Doctor from Vanderbilt University in 1984. I have been employed by Qualcomm and have worked in QTL since 2007. My current position is in QTL's licensing group and includes formulating core business strategies and negotiating licenses. I have held my current position since November 2017. Prior to my current position, I was in QTL's licensing operations group from February to November 2017. I was Vice President, Business Development from October 2012 and Senior Director, Business Development prior to October 2012, responsible for negotiating and entering into licenses and other agreements concerning Qualcomm's patent portfolio. Over the course of my employment in QTL, I have acquired personal knowledge of QTL's practices and procedures concerning the maintenance of the confidentiality of its strategic, business and licensing information.

2. The contents of this declaration are true and correct to the best of my knowledge, information and belief, and are based on my personal knowledge of the facts set forth herein and such material that was provided to me and reviewed by me. If called upon as a witness in this action, I could and would testify competently thereto.

3. QTL follows a strict practice that requires confidential treatment of all contract negotiations. Such negotiations are undertaken pursuant to non-disclosure agreements, which provide that information exchanged and the terms discussed during negotiations are to be maintained in confidence.

4. It is likewise QTL's practice to include in its agreements confidentiality obligations that prohibit the disclosure of the agreements themselves or the terms included in them, except in limited authorized circumstances, such as

when it is required by law or when sufficient notice is given in advance of disclosure. These confidentiality obligations survive termination of QTL's agreements.

5. It is likewise QTL's practice to require confidential treatment of QTL's internal business analysis, strategy and decision-making. QTL's business analysis, strategy and decision-making incorporates highly sensitive and proprietary information and processes that QTL relies upon to pursue its commercial interests.

6. These practices are important to QTL and counterparties with which QTL contracts for several reasons. Both QTL and prospective contractual counterparties seek to maintain their negotiations in confidence to afford each the ability to engage in arm's-length commercial bargaining, each bringing to bear their own unique circumstances and business goals, without such circumstances and goals being disclosed to their competitors, customers and other actual and potential licensees.

7. QTL's confidentiality practices concerning negotiations of agreements and the agreements and their terms themselves are also consistent with QTL's longstanding confidentiality policy concerning the treatment of information received from third parties under our agreements. This policy, among other things, obligates QTL employees to maintain in confidence a variety of information received from counterparties with which we have contracted.

8. QTL also goes to great lengths to protect the confidential information relating to its negotiations, agreements and business strategies. Personnel with access to data storage locations where confidential information is stored and maintained are advised of QTL's practices and required to acknowledge in writing a QTL confidentiality policy. The same is true for any QTL personnel who request access to such information and all new QTL employees.

9. In addition, every QTL database and system that contains confidential information is access restricted and requires login by QTL employees.

10. In my experience and to the best of my knowledge, the confidentiality obligations specified above have been strictly followed at QTL. I was informed of QTL's practices and policies described herein when I first joined QTL, and I have informed others at QTL of our confidentiality obligations and practices.

11. I have reviewed the Federal Trade Commission's Motion To Exclude Expert Testimony of Professor Aviv Nevo, the August 30, 2018 Declaration of Jennifer Milici in Support of Federal Trade Commission's Motion To Exclude Expert Testimony of Professor Aviv Nevo ("Milici Decl.") and Exhibits 1-8 thereto (collectively, the "FTC's Nevo Submissions"), from the perspective of whether they include information that QTL would consider confidential under the practices and policies described above. Based on this review, I have determined that the FTC's Nevo Submissions do include confidential QTL information, specifically in all or portions of the following:

- Motion To Exclude:
    - Page 2, lines 4-5;
    - Page 2 note 3;
    - Page 3, lines 3-4,
    - Page 4, line 6;
    - Page 4 note 5;
    - Page 5, line 8, and
    - Page 5 note 6.
- Milici Decl.:
    - Pages 2-3; and
    - Exhibits 1-8.

12. The information in these documents reflects the type of negotiating information, contract terms and business strategies that QTL maintains as confidential. The FTC's Nevo Submissions reveal details about QTL and its contractual and negotiating counterparties that include highly sensitive and

proprietary information, including QTL's confidential intellectual property licensing communications, contractual terms and business analysis, strategy and decision-making that incorporates highly sensitive and proprietary information and processes that QTL relies upon to pursue its commercial interests.

13. Specifically, in Exhibit 1, the final sentence of paragraph 94 and the portion of the first sentence of paragraph 296 starting after the words "market power in 5G," through the end of the sentence, and notes 179 and 513, contain information about agreements, including specific contractual terms contained within those agreements, subject to confidentiality obligations that prohibit the disclosure of those agreements or the disclosure of the specific terms contained within those agreements, or contain a description of contract negotiations with prospective counterparties that are subject to nondisclosure agreements, or contain information about QTL's business analysis, strategy and decision-making that incorporates highly sensitive and proprietary information and processes that QTL relies upon to pursue its commercial interests.

14. Specifically, Exhibit 2 page 256 line 12 through page 257 line 23 contain information about agreements, including specific contractual terms contained within those agreements, subject to confidentiality obligations that prohibit the disclosure of those agreements or the disclosure of the specific terms contained within those agreements. Those portions of Exhibit 2 also contain information about contract negotiations with prospective counterparties that are subject to nondisclosure agreements.

15. Specifically, all of the excerpts of the Motion To Exclude identified in paragraph 11, above, and Exhibits 3-8, contain information about agreements, including specific contractual terms contained within those agreements, subject to confidentiality obligations that prohibit the disclosure of those agreements or the disclosure of the specific terms contained within those agreements.

16. Specifically, page 4, line 6 and page 5 note 6 of the Motion To

Exclude contain information about contract negotiations with prospective counterparties that are subject to nondisclosure agreements.

17. Specifically, page 4 note 5 of the Motion to Exclude and Exhibit 8 contain information about QTL's business analysis, strategy and decision-making that incorporates highly sensitive and proprietary information and processes that QTL relies upon to pursue its commercial interests.

18. Specifically, within paragraphs 5, 6, 7, 8 and 9 of the Milici Decl., the names of the agreements, the names of the parties to the agreements, and the effective dates of the agreements contain information subject to confidentiality obligations that prohibit the disclosure of those agreements.

19. Public disclosure of this information would harm QTL by potentially advantaging its competitors which would have insights into QTL's business practices. Disclosure could also unfairly benefit actual and potential third parties with respect to QTL's contracting activities by disclosing confidential information that will disadvantage QTL in ongoing and future contract negotiations. This is because counterparties in such negotiations could use confidential information included in the FTC's Nevo Submissions to gain an advantage that would not otherwise be possible absent disclosure of the confidential information and thereby compromise QTL's commercial interests.

20. This confidential information is not publicly known, and QTL recognizes and protects the enormous value of this information through its various policies and procedures designed to protect confidential information from disclosure.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I executed this declaration on September 12, 2018, in San Diego, California.

_____
Matthew Gettinger