CRAVATH, SWAINE & MOORE LLP
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
825 Eighth Avenue
New York, New York 10019-7475
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

KEKER, VAN NEST & PETERS LLP
Robert A. Van Nest (SBN 84065)
rvannest@keker.com
Eugene M. Paige (SBN 202849)
epaige@keker.com
Justina K. Sessions (SBN 270914)
jsessions@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Defendant
QUALCOMM INCORPORATED

MORGAN LEWIS & BOCKIUS LLP
Richard S. Taffet (*pro hac vice*)
richard.taffet@morganlewis.com
101 Park Avenue
New York, New York 10178-0060
Tel: (212) 309-6000
Fax: (212) 309-6001

MORGAN LEWIS & BOCKIUS LLP
Willard K. Tom (*pro hac vice*)
willard.tom@morganlewis.com
1111 Pennsylvania Ave. NW
Washington, DC 20004-2541
Telephone: (202) 739-3000
Facsimile: (202) 739-3001

MORGAN LEWIS & BOCKIUS LLP
Geoffrey T. Holtz (SBN 191370)
geoffrey.holtz@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000
Facsimile: (415) 442-1001

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>QUALCOMM INCORPORATED, a Delaware corporation,<br><br>Defendant. | NO. 5:17-CV-00220-LHK-NMC<br><br>**DECLARATION OF OKTAY GUMUS IN SUPPORT OF JOINT ADMINISTRATIVE MOTION TO FILE UNDER SEAL PORTIONS OF EXHIBIT 9 ASSOCIATED WITH FTC'S OPPOSITION TO QUALCOMM'S MOTION TO EXCLUDE EXPERT REPORTS OF RICHARD L. DONALDSON**<br><br>CTRM: COURTROOM 8<br><br>JUDGE: HON. LUCY H. KOH |

1. I, Oktay Gumus, declare as follows:

2. I am currently Senior Director, Program Manager, Qualcomm CDMA Technologies ("QCT"), which is Qualcomm's product and services business. QCT is operated by Qualcomm Technologies, Inc., a wholly owned subsidiary of Qualcomm Incorporated. I have been employed by Qualcomm since April 2004, and I have held my current position since September 2013. Over the course of my employment in QCT, I have acquired personal knowledge of QCT's practices and procedures concerning the maintenance of the confidentiality of information related to research and development strategy, product development, product strategy, competitive analysis, pricing and sales.

3. The contents of this declaration are true and correct to the best of my knowledge, information and belief, and are based on my personal knowledge of the facts set forth herein and such material that was provided to me and reviewed by me. If called upon as a witness in this action, I could and would testify competently thereto.

4. QCT follows a strict practice that requires confidential treatment of information related to the above-identified categories. Such information is highly sensitive and proprietary.

5. These practices are important to QCT and its customers for several reasons. QCT relies on this information in order to pursue its commercial interests, including especially by competing with other providers of similar products and services. Further, both QCT and prospective customers seek to maintain sales and pricing negotiations in confidence to afford each the ability to engage in arm's-length commercial bargaining, each bringing to bear their own unique circumstances and business goals, without such circumstances and goals being disclosed to those prospective customers' competitors and customers, or to QCT's competitors and other actual and potential customers.

6. QCT's confidentiality practices concerning such information are also

consistent with QCT's longstanding confidentiality policy concerning the treatment of information received from third parties. This policy, among other things, obligates QCT employees to maintain in confidence a variety of information (both technical and strategic) received from its customers.

7. The disclosure of QCT's confidential information, such as its R&D activities, future products and commercial strategy, could significantly harm QCT's relationships with its customers and would materially harm QCT's ability to compete effectively for the development and sale of products and services.

8. QCT goes to great lengths to protect its confidential information. Personnel with access to data storage locations where confidential information is stored and maintained are advised of QCT's practices and required to acknowledge in writing a QCT confidentiality policy. The same is true for any QCT personnel who request access to such information and all new QCT employees.

9. In addition, every QCT database and system that contains confidential information is access-restricted and requires login by QCT employees.

10. In my experience and to the best of my knowledge, the confidentiality obligations specified above have been strictly followed at QCT. I was informed of QCT's practices and policies described herein when I first joined QCT, and I have informed others at QCT of our confidentiality obligations and practices.

11. I have reviewed Exhibit 9 to the FTC's Declaration associated with FTC's Opposition to Qualcomm's Motion to Exclude Expert Reports of Richard L. Donaldson ("Donaldson Exhibit 9"), from the perspective of whether it includes information that QCT would consider confidential under the practices and policies described above. Based on this review, I have determined that Donaldson Exhibit 9 does include confidential QCT information.

12. Certain information in Donaldson Exhibit 9 reveals details about QCT that include highly sensitive and proprietary information, including information relating to QCT's commercial and operational strategies, sales and pricing

negotiations and strategies, QCT's competitive positioning for sales of certain products and for certain customers, product development and finances. All of this information is used by QCT to pursue its commercial interests, and its disclosure could harm QCT's ability to compete effectively for the development and sale of products and services.

13. Specifically, in Donaldson Exhibit 9, the portion of page 148 that includes the portion of lines 9 and 10 that begins after "that says" and ends with the end of line 10 contains information relating to QCT's product and sales strategy and customer sales negotiations with a specifically identified customer that are subject to nondisclosure agreements. Its disclosure could harm QCT's ability to compete effectively for the development and sale of products and services.

14. Specifically, in Donaldson Exhibit 9, the portion of page 148 in lines 15-17 contains information relating to QCT's product and sales strategy and customer sales negotiations with a specifically identified customer that are subject to nondisclosure agreements. Its disclosure could harm QCT's ability to compete effectively for the development and sale of products and services.

15. Specifically, in Exhibit Donaldson Exhibit 9, the portion of page 148 that begins with the last two words of line 24 and continues to the second to last word of line 25 contains information relating to QCT's product and sales strategy and customer sales negotiations with a specifically identified customer that are subject to nondisclosure agreements. Its disclosure could harm QCT's ability to compete effectively for the development and sale of products and services.

16. Specifically, in Donaldson Exhibit 9, the portion of page 149 in line 9 that begins after "12-9-15." and ends before "—so does that suggest" contains information related to QCT's customer sales negotiations with a specifically identified customer that are subject to nondisclosure agreements. Its disclosure could harm QCT's ability to compete effectively for the development and sale of products and services.

17. Specifically, in Donaldson Exhibit 9, the portion of pages 149 and 150 that begins with the last word of line 23 on page 149 and continues to the end of line 1 in page 150 contains information related to QCT's customer sales negotiations with a specifically identified customer that are subject to nondisclosure agreements. Its disclosure could harm QCT's ability to compete effectively for the development and sale of products and services.

18. Specifically, in Donaldson Exhibit 9, the portion of page 150 in lines 3 and 4 that begins in line 3 after "The first line under", excludes "says" in line 4, and ends before "right?" contains information about contract negotiations with a specifically identified customer that are subject to nondisclosure agreements. Its disclosure could harm QCT's ability to compete effectively for the development and sale of products and services.

19. Specifically, in Donaldson Exhibit 9, the portion of page 150 in lines 6 and 7 that begins after "Next is" and ends before "right?" contains information about contract negotiations with a specifically identified customer that are subject to nondisclosure agreements. Its disclosure could harm QCT's ability to compete effectively for the development and sale of products and services.

20. Specifically, in Donaldson Exhibit 9, the portion of page 150 in line 10 that starts after "pursuant to" and ends before "right?" contains information about contract negotiations with a specifically identified customer that are subject to nondisclosure agreements. Its disclosure could harm QCT's ability to compete effectively for the development and sale of products and services.

21. Specifically, in Donaldson Exhibit 9, page 150, line 14 contains information about contract negotiations with a specifically identified customer that are subject to nondisclosure agreements. Its disclosure could harm QCT's ability to compete effectively for the development and sale of products and services.

22. Specifically, in Donaldson Exhibit 9, the portion of page 150 in lines 17-18 that begins after "numeral 1" and ends before "also relates to" contains

1  information about contract negotiations with a specifically identified customer that
2  are subject to nondisclosure agreements. Its disclosure could harm QCT's ability to
3  compete effectively for the development and sale of products and services.

4      23.    Specifically, in Donaldson Exhibit 9, page 150, line 19 contains
5  information about contract negotiations with a specifically identified customer that
6  are subject to nondisclosure agreements. Its disclosure could harm QCT's ability to
7  compete effectively for the development and sale of products and services.

8      24.    Specifically, in Donaldson Exhibit 9, the portion of page 150 that is
9  the last three words of line 22 contains information about contract negotiations with
10 a specifically identified customer that are subject to nondisclosure agreements. Its
11 disclosure could harm QCT's ability to compete effectively for the development
12 and sale of products and services.

13     25.    Specifically, in Donaldson Exhibit 9, the portion of page 151 in
14 lines 11-12 contains information about contract negotiations with a specifically
15 identified customer that are subject to nondisclosure agreements. It also contains
16 information relating to QCT's product and sales strategy. Its disclosure could harm
17 QCT's ability to compete effectively for the development and sale of products and
18 services.

19     26.    Specifically, in Donaldson Exhibit 9, the portion of page 151 in line 15
20 that begins after "Or could that be" and ends before "I can't" contains information
21 about contract negotiations with a specifically identified customer that are subject
22 to nondisclosure agreements. Its disclosure could harm QCT's ability to compete
23 effectively for the development and sale of products and services.

24     27.    Specifically, in Donaldson Exhibit 9, the portion of page 151 in
25 lines 17-18 contains information about contract negotiations with a specifically
26 identified customer that are subject to nondisclosure agreements. Its disclosure
27 could harm QCT's ability to compete effectively for the development and sale of
28 products and services.

28. Specifically, in Donaldson Exhibit 9, the portion of page 151 in lines 20-21 contains information about contract negotiations with a specifically identified customer that are subject to nondisclosure agreements. It also contains information relating to QCT's product and sales strategy. Its disclosure could harm QCT's ability to compete effectively for the development and sale of products and services.

29. Specifically, in Donaldson Exhibit 9, the portion of page 152 in lines 4-6 that begins after "Do you recall being told by", excludes "that" on line 4, and continues to the end of line 6 contains information about contract negotiations with a specifically identified customer that are subject to nondisclosure agreements. It also contains information relating to QCT's product and sales strategy. Its disclosure could harm QCT's ability to compete effectively for the development and sale of products and services.

30. Specifically, in Donaldson Exhibit 9, the first word of page 152, line 20 contains information about contract negotiations with a specifically identified customer that are subject to nondisclosure agreements. Its disclosure could harm QCT's ability to compete effectively for the development and sale of products and services.

31. Specifically, in Donaldson Exhibit 9, the portion of page 152 in line 21 that begins after "represented to me it is from" and ends before "So I don't" contains information about contract negotiations with a specifically identified customer that are subject to nondisclosure agreements. Its disclosure could harm QCT's ability to compete effectively for the development and sale of products and services.

32. Specifically, in Donaldson Exhibit 9, the portion of page 153 in lines 3-4 contains information about contract negotiations with a specifically identified customer and prospective counterparty that are subject to nondisclosure agreements. Its disclosure could harm QCT's ability to compete effectively for the

1  development and sale of products and services.

2  33. Specifically, in Exhibit [Amon deposition excerpt], the portion of page
3  153 that begins in line 8 after "Exactly what it said" and continues to the end of
4  line 20 contains information about contract negotiations with a specifically
5  identified prospective counterparty that are subject to nondisclosure agreements. Its
6  disclosure could harm QCT's ability to compete effectively for the development
7  and sale of products and services.

8  34. Specifically, in Donaldson Exhibit 9, the portion of page 153 in
9  lines 23-24 contains information about contract negotiations with a specifically
10 identified prospective counterparty that are subject to nondisclosure agreements. Its
11 disclosure could harm QCT's ability to compete effectively for the development
12 and sale of products and services.

13 35. Public disclosure of the above-referenced information in Donaldson
14 Exhibit 9 would harm QCT by potentially advantaging its competitors, which
15 would have insights into QCT's business practices and financials. Disclosure could
16 also unfairly benefit actual and potential third parties with respect to QCT's pricing
17 and sales strategies by disclosing confidential information that will disadvantage
18 QCT in ongoing and future pricing and sales negotiations. This is because
19 counterparties in such negotiations could use confidential information included in
20 Donaldson Exhibit 9 to gain an advantage that would not otherwise be possible
21 absent disclosure of the confidential information and thereby compromise QCT's
22 commercial interests.

23 36. This confidential information is not publicly known, and QCT
24 recognizes and protects the enormous value of this information through its various
25 policies and procedures designed to protect confidential information from
26 disclosure.

27
28

1 | I declare under penalty of perjury that the foregoing is true and correct and
2 | that I executed this declaration on September 24, 2018, in San Diego, California.

_____
Oktay Gumus