CRAVATH, SWAINE & MOORE LLP
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
825 Eighth Avenue
New York, New York 10019-7475
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

KEKER, VAN NEST & PETERS LLP
Robert A. Van Nest (SBN 84065)
rvannest@keker.com
Eugene M. Paige (SBN 202849)
epaige@keker.com
Justina K. Sessions (SBN 270914)
jsessions@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Defendant
QUALCOMM INCORPORATED

MORGAN LEWIS & BOCKIUS LLP
Richard S. Taffet (*pro hac vice*)
richard.taffet@morganlewis.com
101 Park Avenue
New York, New York 10178-0060
Tel: (212) 309-6000
Fax: (212) 309-6001

MORGAN LEWIS & BOCKIUS LLP
Willard K. Tom (*pro hac vice*)
willard.tom@morganlewis.com
1111 Pennsylvania Ave. NW
Washington, DC 20004-2541
Telephone: (202) 739-3000
Facsimile: (202) 739-3001

MORGAN LEWIS & BOCKIUS LLP
Geoffrey T. Holtz (SBN 191370)
geoffrey.holtz@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000
Facsimile: (415) 442-1001

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>QUALCOMM INCORPORATED, a Delaware corporation,<br><br>Defendant. | NO. 5:17-CV-00220-LHK-NMC<br><br>**DECLARATION OF MATTHEW GETTINGER IN SUPPORT OF JOINT ADMINISTRATIVE MOTION TO FILE UNDER SEAL PORTIONS OF EXHIBITS 1, 5 AND 7, 8, 10, 11 ASSOCIATED WITH FTC'S OPPOSITION TO QUALCOMM'S MOTION TO EXCLUDE EXPERT REPORTS OF RICHARD L. DONALDSON**<br><br>CTRM: COURTROOM 8<br><br>JUDGE: HON. LUCY H. KOH |

I, Matthew Gettinger, declare as follows:

1. I am currently Vice President, Business Development, Qualcomm Technology Licensing ("QTL"), the division of Qualcomm responsible for Qualcomm's licensing program. I received my Bachelor of Arts from Wesleyan University in 1979 and my Juris Doctor from Vanderbilt University in 1984. I have been employed by Qualcomm and have worked in QTL since 2007. My current position is in QTL's licensing group and includes formulating core business strategies and negotiating license agreements. I have held my current position since November 2017. Prior to my current position, I was in QTL's licensing operations group from February to November 2017. I was Vice President, Business Development from October 2012 and Senior Director, Business Development prior to October 2012, responsible for negotiating and entering into license agreements and other agreements concerning Qualcomm's patent portfolio. Over the course of my employment in QTL, I have acquired personal knowledge of QTL's practices and procedures concerning the maintenance of the confidentiality of its strategic, business and licensing information.

2. The contents of this declaration are true and correct to the best of my knowledge, information and belief, and are based on my personal knowledge of the facts set forth herein and such material that was provided to me and reviewed by me. If called upon as a witness in this action, I could and would testify competently thereto.

3. QTL follows a strict practice that requires confidential treatment of all contract negotiations. All such negotiations are undertaken pursuant to non-disclosure agreements, which provide that all information exchanged and terms discussed during negotiations are to be maintained in confidence by both parties to the negotiations.

4. It is likewise QTL's practice to include in its licensing and other patent agreements confidentiality obligations that prohibit the disclosure of the agreements

themselves or any of their terms, except in limited authorized circumstances. These confidentiality obligations survive termination of QTL's agreements.

5. It is likewise QTL's practice to require confidential treatment of QTL's internal business analyses, strategy and decision-making. QTL's business analyses, strategy and decision-making incorporate highly sensitive and proprietary information and processes that QTL relies upon to pursue its commercial interests.

6. These confidentiality practices are important to QTL and to counterparties with which QTL contracts for several reasons. Both QTL and prospective contractual counterparties seek to maintain their negotiations in confidence to afford each the ability to engage in arm's-length commercial bargaining, each bringing to bear their own unique circumstances and business goals, without such circumstances and goals being disclosed to their competitors, customers and other actual and potential licensees.

7. The disclosure of QTL's confidential information, such as information contained in licensing negotiations, the terms of its licensing agreements, and QTL's internal business analyses, strategies and decision-making, could significantly harm QTL's relationships and ability to conduct business with counterparties and prospective counterparties.

8. QTL's confidentiality practices concerning the negotiations and terms of patent agreements are also consistent with QTL's longstanding confidentiality policy concerning the treatment of information that third parties report to QTL under their patent agreements. This policy, among other things, obligates QTL employees to maintain in strict confidence all information received from counterparties with which we have contracted, and to refrain from any disclosure of such information, either internally at Qualcomm or externally, except as required to meet Qualcomm's legal reporting and similar obligations.

9. In my experience and to the best of my knowledge, the confidentiality obligations specified above have always been strictly followed at QTL. I was

informed of QTL's practices and policies described herein when I first joined QTL, and I have informed others at QTL of our confidentiality obligations and practices.

10. QTL also goes to great lengths to ensure that confidential information relating to its negotiations, agreements and business strategies is well protected. Personnel with access to data storage locations where confidential information is stored and maintained are advised of QTL's practices and policies and are required to acknowledge in writing their awareness of and compliance with QTL's confidentiality policy. The same is true for any QTL personnel who request access to such information and all new QTL employees.

11. In addition, every QTL database and system that contains confidential information is access-restricted and requires login by QTL employees.

12. I have reviewed Exhibits 1, 5 and 7, 8, 10, 11 to the FTC's Declaration associated with FTC's Opposition to Qualcomm's Motion to Exclude Expert Reports of Richard L. Donaldson (collectively, the "Donaldson Exhibits"), to determine whether the Donaldson Exhibits include information that QTL would consider confidential under the practices and policies described above. Based on this review, I have determined that the Donaldson Exhibits do include confidential QTL information, specifically in all or portions of the following:

- Exhibit 1
- Exhibit 5
- Exhibit 7
- Exhibit 8
- Exhibit 10
- Exhibit 11

13. The information in these documents reflects the type of negotiating information, contract terms and business strategies that QTL maintains as confidential. The Donaldson Exhibits reveal details about QTL and its contractual and negotiating counterparties that include highly sensitive and proprietary

information, including QTL's confidential intellectual property licensing communications, contractual terms and business analyses, strategy and decision-making that incorporates highly sensitive and proprietary information and processes that QTL relies upon to pursue its commercial interests.

14. Specifically, in Exhibit 1, page 118, the portion of line 21 between "situations" and "who" contains information about contract negotiations with certain prospective counterparties that are subject to nondisclosure agreements.

15. Specifically, Exhibit 5 contains information about QTL's business analysis, strategy and decision-making looking ahead several years. It incorporates large volumes of highly sensitive and proprietary information and processes that QTL relies upon to pursue its commercial interests, the disclosure of which could interfere with QTL's ability to pursue those goals effectively.

16. Specifically, Exhibit 7 contains highly sensitive information about contract negotiations with prospective counterparties that are subject to nondisclosure agreements.

17. Specifically, Exhibit 8 is an email chain between Qualcomm and a specifically identified prospective counterparty, contains highly sensitive, detailed information about contract negotiations, including specific positions and potential terms, that are subject to nondisclosure agreements.

18. Specifically, Exhibit 10 contains highly sensitive information about contract negotiations, including specific contract terms and discussion of the potential parties' ongoing relationship, with a specifically identified prospective counterparty that are subject to nondisclosure agreements.

19. Specifically, Exhibit 11, an email chain between Qualcomm and a specifically identified prospective counterparty, contains highly sensitive, detailed information about contract negotiations, including specific positions and potential terms, that are subject to nondisclosure agreements.

20. Public disclosure of this information would harm QTL by potentially

advantaging its competitors by giving them insights into QTL's business practices. Disclosure could also unfairly benefit actual and potential third parties with respect to QTL's contracting activities by disclosing confidential information that will disadvantage QTL in ongoing and future contract negotiations. This is because counterparties in such negotiations could use confidential information included in the Donaldson Exhibits to gain an advantage that would not otherwise be possible absent disclosure of the confidential information and thereby compromise QTL's commercial interests.

21. This confidential information is not publicly known, and QTL recognizes and protects the enormous value of this information through its various policies and procedures designed to protect confidential information from disclosure.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I executed this declaration on September 24, 2018, in San Diego, California.

_____
Matthew Gettinger