CRAVATH, SWAINE & MOORE LLP
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
825 Eighth Avenue
New York, New York 10019-7475
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

KEKER, VAN NEST & PETERS LLP
Robert A. Van Nest (SBN 84065)
rvannest@keker.com
Eugene M. Paige (SBN 202849)
epaige@keker.com
Justina K. Sessions (SBN 270914)
jsessions@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Defendant
QUALCOMM INCORPORATED

MORGAN LEWIS & BOCKIUS LLP
Richard S. Taffet (*pro hac vice*)
richard.taffet@morganlewis.com
101 Park Avenue
New York, New York 10178-0060
Tel: (212) 309-6000
Fax: (212) 309-6001

MORGAN LEWIS & BOCKIUS LLP
Willard K. Tom (*pro hac vice*)
willard.tom@morganlewis.com
1111 Pennsylvania Ave. NW
Washington, DC 20004-2541
Telephone: (202) 739-3000
Facsimile: (202) 739-3001

MORGAN LEWIS & BOCKIUS LLP
Geoffrey T. Holtz (SBN 191370)
geoffrey.holtz@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000
Facsimile: (415) 442-1001

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>QUALCOMM INCORPORATED, a Delaware corporation,<br><br>Defendant. | Case No. 5:17-cv-00220-LHK-NMC<br><br>**DEFENDANT QUALCOMM INCORPORATED'S OPPOSITION TO FEDERAL TRADE COMMISSION'S MOTION TO EXCLUDE EXPERT TESTIMONY OF PROFESSOR AVIV NEVO**<br><br>Date:      October 18, 2018<br>Time:      1:30 p.m.<br>Courtroom: 8, 4th Floor<br>Judge:     Hon. Lucy H. Koh |

**INTRODUCTION**

Based on an incorrect assertion that certain documents were improperly withheld by Qualcomm during fact discovery, the FTC seeks to exclude highly relevant opinions offered by Qualcomm's expert economist, Prof. Aviv Nevo, in direct response to opinions stated by the FTC's expert. In particular, the FTC asks the Court to exclude Prof. Nevo's opinions based on ▮ that the FTC incorrectly contends were "late-produced". (Mot. at 1, 6.) In fact, ▮ ▮—until after fact discovery ended. Qualcomm did not improperly withhold ▮, and the FTC's suggestion of discovery misconduct has no basis.

The FTC's motion is therefore not aimed at striking opinions based on belatedly produced documents; it is aimed at limiting the ability of Qualcomm's expert to opine about current market conditions and to assess their likely effect on prospective events—even though the FTC is asking the Court to impose prospective injunctive relief. The FTC's economic expert, Prof. Carl Shapiro, raised ▮ in his opening report, providing several opinions about the hypothesized future effects of Qualcomm's conduct on 5G technology. Prof. Shapiro offered these opinions to support the FTC's claim that forward-looking injunctive relief is necessary to restore competition in modem chip markets. In responding to Prof. Shapiro's opinions, Prof. Nevo observed in his rebuttal report that neither the FTC nor Prof. Shapiro had attempted to evaluate whether Qualcomm's announced 5G licensing terms are consistent with Qualcomm's FRAND commitments or include any alleged anticompetitive "tax". To support that point, Prof. Nevo noted that ▮ ▮ ▮ ▮

Thus, the FTC brought ▮ into the case, and Prof. Nevo responded by referring in part to recent events that are directly relevant to—and refute—the FTC's argument. The FTC

1

Qualcomm's Opposition to FTC's Motion to
Exclude Testimony of Prof. Aviv Nevo
Case No. 5:17-cv-00220-LHK-NMC

now asks the Court to prohibit Prof. Nevo from relying on these recent events and instead require him to respond to Prof. Shapiro's hypotheses about 5G as if these events had never occurred. There simply is no reason why Qualcomm's expert should be forced to opine about these issues—which the FTC has raised to support a request for prospective injunctive relief—without the benefit of real-world facts. Neither Prof. Nevo nor, eventually, the Court should have to speculate about events that already have transpired.

Prof. Nevo's opinions would cause no unfair prejudice to the FTC, let alone unfair prejudice that substantially outweighs the probative value of his opinions. The FTC's argument that it did not have the opportunity to "test or rebut Prof. Nevo's conclusions" regarding these ▬▬▬ is incorrect. (Mot. at 1.) Qualcomm produced the ▬▬▬ nearly one month before the FTC served its rebuttal expert reports, giving the FTC and its experts ample opportunity to respond to Prof. Nevo's opinions. By the time of Prof. Shapiro's rebuttal report, the FTC and Prof. Shapiro were fully aware of the ▬▬▬ and of Prof. Nevo's opinions based on them, but simply did not address them. Nor did the FTC raise any contemporaneous objection to the production of the ▬▬▬, but instead waited and raised the issue for the first time in this motion.

To the extent the FTC advocates a blanket rule prohibiting an expert from opining about events occurring after the close of fact discovery, that is contrary to law, and especially so in a case seeking prospective injunctive relief—which must necessarily take into account current conditions near the time any prospective remedy would be ordered. Because the FTC has failed to prove that the probative value of Prof. Nevo's opinions is substantially outweighed by any unfair prejudice, the FTC's motion should be denied.

**STATEMENT OF FACTS**

**A.** ▬▬▬.

The ▬▬▬

▬▬▬

(Declaration of J. Milici in Support of FTC's Motion ("Milici Decl.") Ex. 3), and the ▬▬▬

2

Qualcomm's Opposition to FTC's Motion to
Exclude Testimony of Prof. Aviv Nevo
Case No. 5:17-cv-00220-LHK-NMC

1 ███████████████████████████████████████████████████████

2 ███████████████████████████████████ (Milici Decl. Ex. 5). The FTC's

3 Motion asserts that, "[a]ccording to the [Rebuttal Report of Prof. Aviv Nevo ("Nevo Report")],

4 ██████████████████████████████████████████████████

5 █████. (Mot. at 3.) Prof. Nevo's Report, however, refers to the ████████████

6 ████, not to their dates of ██████. As explained in the Declaration of Fabian Gonell

7 accompanying this brief, ████████████████████████████████████████

8 ████████████████████████████████████████████████████

9 ████████████████████████████████████████████████████

10 ███████████████████████████████████. (Gonell Decl. ¶ 7.)

11     On its face, the ████████████████████████████████████

12 ██████████████████████████████. (Milici Decl. Ex. 5; see also Gonell Decl.

13 ¶ 6.)[1] ████████████████████████████████████████████

14 ████████████████████████████. (Gonell Decl. ¶ 4.) Accordingly,

15 Qualcomm could not have produced the ████████ prior to the close of fact discovery or prior to

16 the deposition of Qualcomm's Rule 30(b)(6) designee on certain licensing topics (Mr. Gonell)

17 because ██████████████████████. Had the FTC asked Qualcomm why the

18 ████████ were produced after the close of fact discovery, Qualcomm could and would have

19 provided information about ██████████████—but the FTC did not do so. It first registered

20 an objection to what it now alleges were "late-produced" ████████ by bringing the instant

21 motion. (Mot. at 6.) Similarly, the FTC's allegation that at deposition Mr. Gonell improperly

22 "made no mention of the ████████████, even though one had already been ████"

23 (Mot. at 4) is incorrect; ████████████████████████████ by the date of the deposition (Gonell

24 Decl. ¶¶ 4, 6), and the FTC did not ask Mr. Gonell any questions to which information about █

---

[1] Indeed, at one point, the FTC's motion acknowledges that the ████████████████████
██████████████████████ as the motion elsewhere suggests, but repeats the
FTC's erroneous assumption that ████████████████████████████████
(Mot. at 4 n.5.)

1  [REDACTED] would have been responsive.

2  The FTC contends that the [REDACTED] were produced "after . . . the

3  deadline for the submission of the FTC's expert reports had passed." (Mot. at 3.) But the [REDACTED]

4  [REDACTED] was produced on June 22, 2018, and the [REDACTED] was

5  produced on June 28, 2018, four weeks before the FTC's deadline for service of rebuttal expert

6  reports, on July 26, 2018. (Declaration of M. Brent Byars in Support of Qualcomm's Opposition

7  ("Byars Decl.") ¶¶ 2, 3.) Because the [REDACTED] and Prof. Nevo's

8  opinions based on them were disclosed in Prof. Nevo's report, which Prof. Shapiro responded to

9  in his rebuttal report, Prof. Shapiro knew about and had access to those [REDACTED]

10 [REDACTED] when preparing his rebuttal report. And in his rebuttal report, Prof. Shapiro

11 specifically addressed 5G, claiming that he "would expect the anticompetitive effects from the

12 Qualcomm policies at issue in this case to continue into the future", [REDACTED]

13 [REDACTED]. (Byars Decl. Ex. 2 (Rebuttal Report of Prof. Carl Shapiro ("Shapiro Rebuttal

14 Report")) ¶ 113.) The fact that Prof. Shapiro decided not to consider or address the [REDACTED]

15 [REDACTED] is therefore the result of the FTC's tactical decision to ignore real-

16 world evidence of [REDACTED], have Prof. Shapiro opine about future [REDACTED] as if that

17 evidence did not exist, and then seek to exclude Prof. Nevo's opinions that take actual [REDACTED]

18 [REDACTED] into account.

19       **B.**   **The [REDACTED] Are Highly Relevant to Opinions Proffered by the FTC's and Qualcomm's Economists.**

20

21 Because the FTC seeks prospective injunctive relief that would cover [REDACTED],

22 Prof. Nevo's opinions about [REDACTED] are highly relevant. In its

23 Complaint, the FTC requests that Qualcomm be "permanently enjoined from engaging in similar

24 and related conduct in the future". (Compl. Prayer for Relief ¶ 3.) To support this request,

25 Prof. Shapiro's opening report offers the opinion that although "recent erosion of Qualcomm's

26 monopoly power" in the relevant chipset markets "might eventually diminish" Qualcomm's

27 ability to engage in the alleged anticompetitive conduct, "the industry's imminent transition to 5G

28

4

Qualcomm's Opposition to FTC's Motion to
Exclude Testimony of Prof. Aviv Nevo
Case No. 5:17-cv-00220-LHK-NMC

1  standards may afford Qualcomm an opportunity to renew and fortify that ability". (Byars Decl.
2  Ex. 1 (Opening Report of Prof. Carl Shapiro ("Shapiro Opening Report")) ¶ 313.)  In support of
3  this opinion, Prof. Shapiro cited a document dating back to 2016 concerning then-current
4  assessments of the future of 5G and of Qualcomm's 5G chips.  (*Id.* ¶ 314 n.595.)  In Prof. Nevo's
5  rebuttal report, which Qualcomm timely served on June 28, 2018, Prof. Nevo responded to those
6  opinions by explaining that Qualcomm had publicly announced its 5G licensing rates in
7  November 2017, during a time when Qualcomm is not alleged to have any market power in 5G
8  chips (or in any other chips) that it could bring to bear.[2] (Ex. 1 to Milici Decl. (Nevo Report)
9  ¶ 296.)  Prof. Nevo further explained ███████████████████████████████████████
10 ███████████████████, ████████████████████████████████████████
11 ██████████████████████████████.[3] (*Id.*)  Prof. Nevo provided these
12 explanations in support of his opinion that "[n]either Professor Shapiro nor the other FTC experts
13 have made any attempt to evaluate whether Qualcomm's 5G rates are not FRAND or include any
14 'tax.'" (*Id.*)

## ARGUMENT

16  The Court should exclude relevant evidence under Federal Rule of Evidence 403 only "if
17 its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the
18 issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative
19 evidence". Fed. R. Evid. 403.  "'Unfair prejudice' within its context means an undue tendency to
20 suggest decision on an improper basis, commonly, though not necessarily, an emotional one."
21 Fed. R. Evid. 403 Notes of Advisory Committee on Proposed Rules.  Rule 403 is designed
22 primarily to prevent a jury from being inappropriately influenced by relevant but unfairly

---

[2] Prof. Shapiro is not offering an opinion that Qualcomm has monopoly power in *any* relevant chip market—3G, 4G or 5G—at any point after 2016.  (Byars Decl. Ex. 3 (Deposition of Carl Shapiro) at 135:18-21.)

[3] The FTC's Complaint alleges that Qualcomm had monopoly and market power only with respect to CDMA baseband processors and "premium LTE" baseband processors.  (Compl. ¶ 131.)  The FTC does not allege power in 5G baseband processors.  Nor could it, because such 5G baseband processors are not yet commercially available.

prejudicial evidence; in bench trials, where the fact-finder is less likely to be improperly influenced, Rule 403 does not perform as significant a function. *See EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 898 (9th Cir. 1994) ("[I]n a bench trial, the risk that a verdict will be affected unfairly and substantially by the admission of irrelevant evidence is far less than in a jury trial.").

The FTC does not argue that Prof. Nevo's opinions are irrelevant. As the FTC's motion explains, "[c]ore to the FTC's theory is Qualcomm's ability to leverage its modem chip monopoly power in licensing negotiations to obtain elevated royalties." (Mot. at 3.) Therefore, Prof. Nevo's opinion that neither the FTC nor Prof. Shapiro had evaluated whether Qualcomm could engage in the alleged conduct (*i.e.*, "leverag[ing] its modem chip monopoly power in licensing negotiations to obtain elevated royalties") in the context of ▬▬▬▬ is highly relevant to the FTC's claim for prospective injunctive relief and to the assessment of Prof. Shapiro's opinions. Prof. Nevo observed that Qualcomm had publicly announced 5G licensing terms and ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ that the FTC acknowledges is core to its theory of the case. (Mot. at 3.)

Because a decision on whether to grant prospective relief must consider current conditions near the time of trial, such evidence is of critical importance. *See, e.g.*, *FTC v. Evans Prods. Co.*, 775 F.2d 1084, 1087 (9th Cir. 1985) (stating that preliminary injunctive relief was precluded where the conduct was neither ongoing nor likely to recur, even if the defendant had engaged in anticompetitive conduct in the past); *FTC v. AbbVie Inc.*, No. 14-5151, 2018 WL 3830533, at *35 (E.D. Pa. June 29, 2018) (denying the FTC's request for injunctive relief because there was no basis to conclude defendants' misconduct was likely to recur where, despite their liability for past violations, "the FTC has presented no evidence that defendants are currently violating antitrust laws or about to violate antitrust laws"); *FTC v. Merch. Servs. Direct, LLC*, No. 13-CV-0279-TOR, 2013 WL 4094394, at *3 (E.D. Wash. Aug. 13, 2013) (declining to enter temporary injunctive relief in a Section 5 case because the FTC's evidence about the defendant's conduct was two years old and the FTC did not present evidence of likely "*future* violations of the FTC

6

Qualcomm's Opposition to FTC's Motion to
Exclude Testimony of Prof. Aviv Nevo
Case No. 5:17-cv-00220-LHK-NMC

Act"). Indeed, to the extent that the FTC contends that neither party's expert can rely on *any* evidence that is created after the close of fact discovery, such a rule is flatly inconsistent with the law governing requests for injunctive relief in FTC cases. For example, if recent news reports that the Apple iPhones released this month do not contain any Qualcomm chips are accurate (*see, e.g.*, Byars Decl. Ex. 4), that is information the Court should have in deciding whether Qualcomm has market power that it could exercise in the future.

Further, the FTC has cited no law suggesting that the Court must disregard highly probative evidence because it did not exist until after the end of fact discovery, as the FTC's motion suggests—and it certainly has not cited any case law suggesting that highly probative evidence should be altogether excluded in an injunctive relief case, such that the parties' experts must ignore its existence. *Cf. Los Angeles News Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 933 (9th Cir. 2002) (reversing district court exclusion of evidence obtained after discovery cutoff). In this Court's *Apple v. Samsung* decision on which the FTC relies almost exclusively, the Court was confronted with a very different situation—belated production of old evidence, rather than consideration of new (and timely produced) evidence. There, the Court found that although an affiliate of Samsung had compiled data during the discovery period on which Samsung's expert later relied, Samsung improperly failed to disclose that data until "hours before the discovery cutoff", after Apple had completed fact depositions. *Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2018 WL 1586276, at *24 (N.D. Cal. Apr. 2, 2018). Further, the Court found that Samsung had not disclosed the existence of its affiliate or the custodian of the data in its interrogatory responses, and that Samsung further represented to Apple that the data's custodian "did not have any additional discoverable information"—even though Samsung's expert continued to speak to the custodian regarding the data. *Id*. This conduct, the Court found, prevented Apple from "conducting any inquiry into the reliability of the SDC data", which would unduly prejudice Apple's case in front of the jury hearing the parties' dispute concerning damages. *Id*.

Unlike in *Apple v. Samsung*, there was no sandbagging here. Qualcomm did not

7

Qualcomm's Opposition to FTC's Motion to
Exclude Testimony of Prof. Aviv Nevo
Case No. 5:17-cv-00220-LHK-NMC

1  improperly delay producing agreements that existed during fact discovery; ▮
2  ▮.
3  Qualcomm timely disclosed and produced the agreements and its expert's reliance on them ▮
4  ▮, weeks prior to the deadline for service of the FTC's rebuttal expert
5  reports. (Byars Decl. ¶¶ 2,3.) Prof. Shapiro was aware of the ▮
6  ▮ and of Prof. Nevo's opinions based on them; yet, he chose not to address them.
7  Contrary to the FTC's suggestion that Qualcomm has "cherry-picked" these two agreements
8  (Mot. at 6), denying the FTC the opportunity to determine ▮
9  ▮
10 ▮
11 ▮
12 ▮. (Byars Decl. ¶ 4.)
13        And, unlike in a dispute over damages between private parties, such as *Apple v. Samsung*,
14 the FTC's request for prospective injunctive relief makes evidence concerning Qualcomm's
15 contemporaneous conduct and contemporaneous market conditions critical to the Court's
16 decision, which cannot be made on a stale record.
17        Further, the FTC argues that it "had no opportunity to conduct discovery regarding the
18 two licenses cited by Prof. Nevo" (Mot. at 4), but the FTC never requested such discovery. As
19 discussed above, in *Apple v. Samsung*, unlike here, through representations that Samsung lacked
20 additional discoverable information, Samsung affirmatively denied Apple the opportunity to
21 obtain information about the excluded data. *See Apple*, 2018 WL 1586276, at *24. Qualcomm
22 made no such representations. In fact, Qualcomm alerted the FTC as early as November 2017
23 that it believed "the Parties should have the mutual opportunity to conduct a limited update of
24 document and deposition discovery closer to the time of trial to ensure that the record contains
25 contemporaneous evidence bearing on the elements of the FTC's claims . . . and whether the FTC
26 is entitled to forward-looking injunctive relief." (*See* Dec. 8, 2017 Suppl. Joint Case
27 Management Statement, ECF No. 378 at 5.) Although the FTC "disagree[d] that, based on the
28

8

Qualcomm's Opposition to FTC's Motion to
Exclude Testimony of Prof. Aviv Nevo
Case No. 5:17-cv-00220-LHK-NMC

1  allegations in its Complaint, it will inevitably be necessary to reopen discovery", it acknowledged
2  that whether discovery would be reopened closer to the time of trial "will depend on the relevance
3  of the additional discovery, the time to trial, and whether a party will be prejudiced, among other
4  factors."  (*Id.* at 5-6.)
5        Given the need for the Court to consider current conditions before it may issue
6  prospective injunctive relief, a rigid rule excluding all expert opinions based on events occurring
7  after the close of fact discovery—a rule that would require experts to ignore available evidence
8  about current market conditions—would improperly deprive the Court of critical evidence.  If the
9  FTC believed it needed discovery to assess the reliability of Prof. Nevo's opinions ▮▮▮▮
10 ▮▮▮▮▮, it should have raised its need for such discovery with Qualcomm (as expected
11 when discovery disputes arise (*see* Civ. L.R. 37-1)), rather than simply moving, without prior
12 discussion, to exclude the opinions under Rule 403.

### CONCLUSION

14       For the foregoing reasons, Qualcomm respectfully requests that the Court deny the FTC's
15 motion to exclude the expert testimony and opinions of Prof. Aviv Nevo based upon or
16 concerning the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

17 Dated:  September 24, 2018

Respectfully submitted,

CRAVATH, SWAINE & MOORE LLP,

/s/ *Gary A. Bornstein*
Gary A. Bornstein
Yonatan Even

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Tel: (212) 474-1000
Fax: (212) 474-3700
gbornstein@cravath.com
yeven@cravath.com

9

Qualcomm's Opposition to FTC's Motion to
Exclude Testimony of Prof. Aviv Nevo
Case No. 5:17-cv-00220-LHK-NMC

Robert A. Van Nest
Eugene M. Paige
Justina K. Sessions
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Tel: (415) 391-5400
Fax: (415) 397-7188
rvannest@keker.com
epaige@keker.com
jsessions@keker.com

Richard S. Taffet
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178-0060
Tel: (212) 309-6000
Fax: (212) 309-6001
richard.taffet@morganlewis.com

Willard K. Tom
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave. NW
Washington, DC 20004-2541
Tel: (202) 739-3000
Fax: (202) 739 3001
willard.tom@morganlewis.com

Geoffrey T. Holtz
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: (415) 442-1000
Fax: (415) 442-1001
geoffrey.holtz@morganlewis.com

*Attorneys for Qualcomm Incorporated*

10

Qualcomm's Opposition to FTC's Motion to
Exclude Testimony of Prof. Aviv Nevo
Case No. 5:17-cv-00220-LHK-NMC