# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,**<br><br>Plaintiff,<br><br>v.<br><br>**QUALCOMM INCORPORATED, a** Delaware Corporation,<br><br>Defendant. | Case No. 17-CV-00220-LHK |

REBUTTAL REPORT OF CARL SHAPIRO

26 July 2018

Contains Protected Material Designated by Qualcomm and Non-Parties
Pursuant to Protective Order(s) entered in FTC v. Qualcomm Incorporated,
Case No. 17-cv-00220 (N.D. Cal.)

# Table of Contents

I. Qualifications and Assignment ................................................................................................................. 1

II. Summary of Opinions ................................................................................................................................ 1
    II.A. Market Definition and Market Power ........................................................................................ 2
    II.B. Qualcomm's No-License/No-Chips Policy ................................................................................ 6
    II.C. Qualcomm's Exclusive Agreements with Apple ..................................................................... 10

III. Technological Advance and the Growth of Handset Sales ................................................................. 12

IV. Market Definition .................................................................................................................................... 17
    IV.A. General Principles of Market Definition ................................................................................ 17
    IV.B. Premium LTE Modem Chips ..................................................................................................... 19

V. Qualcomm's Monopoly Power ............................................................................................................... 23
    V.A. General Principles and Their Application to Qualcomm ...................................................... 23
    V.B. Premium LTE Modem Chips ...................................................................................................... 26
        V.B.1. Market Shares in the Market for Premium LTE Modem Chips ..................................... 26
        V.B.2. My Measurement of Premium LTE Market Shares ......................................................... 27
    V.C. CDMA Modem Chips .................................................................................................................... 27
        V.C.1. Dr. Chipty's Claimed Substitutes for CDMA Modem Chips .......................................... 28
        V.C.2. CDMA-Enabled Handsets and Market Share ................................................................... 30
        V.C.3. Barriers to Entry in the Market for CDMA Modem Chips are Material ...................... 34
    V.D. Qualcomm's Large Customers .................................................................................................... 36
    V.E. Accounting for Recent Developments ....................................................................................... 38

VI. Qualcomm's No-License/No-Chips Policy ........................................................................................... 40
    VI.A. Real-World Negotiations Are Complex .................................................................................... 42
    VI.B. Qualcomm's Licensing Practices are Long-Running and Well Known ................................ 46
    VI.C. Royalties for Qualcomm's SEPs Related to the UMTS standard ........................................... 52
        VI.C.1. Qualcomm Applied CDMA Leverage to UMTS Licensing Negotiations ..................... 53
        VI.C.2. Professor Nevo's Analysis of Qualcomm's CDMA Leverage is Flawed ...................... 54
    VI.D. Professor Nevo's Proposed Empirical Tests ............................................................................. 59
        VI.D.1. Test One Applied to CDMA ................................................................................................ 65
        VI.D.2. Test One Applied to UMTS ................................................................................................. 66
        VI.D.3. Test Four Applied to CDMA .............................................................................................. 71
        VI.D.4. Test Four Applied to UMTS ................................................................................................ 73
    VI.E. Qualcomm's Strategic and Marketing Funds ........................................................................... 75
    VI.F. Professor Nevo Dismisses Key Documentary Evidence ......................................................... 77
        VI.F.1. Evidence from Qualcomm Documents ............................................................................. 79
        VI.F.2. Evidence Relating to Qualcomm's Negotiations with OEMs ......................................... 80
    VI.G. My Limited Reliance on the Lasinski Report .......................................................................... 90
    VI.H. Supra-FRAND Royalties Harm Competition ........................................................................... 91
        VI.H.1. One Cannot Infer a Lack of Anti-Competitive Effects from Evidence of Output Growth and Innovation ................................................................................................................................. 92
        VI.H.2. Professor Nevo Commits A Major Error in Attacking My Conclusion That a Higher Royalty Rate Results in Higher All-In Prices ........................................................................... 93
        VI.H.3. Professor Nevo's One-Monopoly-Profit Argument ........................................................ 98
        VI.H.4. Other Arguments Made by Professor Nevo ................................................................... 100

Contains Protected Material Designated by Qualcomm and Non-Parties                                           Page i
Pursuant to Protective Order(s) entered in FTC v. Qualcomm Incorporated,
Case No. 17-cv-00220 (N.D. Cal.)

VI.I. Professor Nevo's Asserted Business Justifications for Qualcomm's No-License/No-Chips policy ....... 103
    VI.I.1. Qualcomm's No-License/No-Chips Policy is Not Necessary For Earning a Reasonable Royalty .................................................................................................................... 104
    VI.I.2. Invalid Business Justifications Offered by Professor Nevo ......................................... 105
    VI.I.3. Qualcomm's Use of Marketing and Strategic Funds ................................................. 107

VII. Qualcomm's Refusal to License Modem-Chip Rivals ................................................................... 108
    VII.A. The Value to Qualcomm's Rivals of an Exhaustive License ............................................. 108
    VII.B. Transaction Costs ............................................................................................................. 111
    VII.C. Arguments Made in the Snyder Report .......................................................................... 112

VIII. Qualcomm's Exclusive Agreements with Apple ......................................................................... 114
    VIII.A. The Structure and Terms of the Qualcomm-Apple Agreements .................................... 114
        VIII.A.1. The Transition Agreements are De Facto Exclusive Dealing Agreements ............ 115
        VIII.A.2. Dr. Chipty Offers No Defense of the Exclusivity Incentives in the Transition Agreements ..... 116
        VIII.A.3. Qualcomm's Strategic Benefits of Locking Up Apple's Business ........................... 118
        VIII.A.4. Qualcomm's Development of Thin Modems .......................................................... 118
        VIII.A.5. Qualcomm's Substantial Benefits from Winning Apple's Business ....................... 125
    VIII.B. Dr. Chipty's Analysis of Profit Sacrifice is Badly Flawed ................................................. 125
        VIII.B.1. Qualcomm Believed it was Sacrificing Profits by Signing the FATA ...................... 125
        VIII.B.2. Dr. Chipty Misunderstands the Concept of "Contestable Units" .......................... 126
        VIII.B.3. Dr. Chipty's Analysis of the Contestability of the iPhone 6S/6S Plus .................. 129
        VIII.B.4. Dr. Chipty's "Equally Efficient Rival" Test ............................................................ 137
    VIII.C. Effects of Qualcomm's Exclusive Dealing with Apple ..................................................... 138
        VIII.C.1. Competition and Innovation in the Counterfactual ............................................. 138
        VIII.C.2. Dr. Chipty is Inconsistent Regarding Qualcomm's Modem-Chip Rivals ............... 140
        VIII.C.3. Apple's Views Regarding the Competitive Alternatives to Qualcomm ................ 142
        VIII.C.4. The Viability of Other Suppliers for Apple's Business ........................................... 148

Appendix A. Testimony of Carl Shapiro during the Past Four Years ..................................................... A-1

Appendix B. Materials Relied Upon ....................................................................................................... B-3

Appendix C. Premium LTE Modem Chips and Market Shares ............................................................... C-7

Appendix D. CDMA Was and Remains an Important Market ................................................................ D-13

Appendix E. Details of Qualcomm's Licensing Negotiations ................................................................. E-18

Appendix F. "No Deal" Scenarios Analyzed by Qualcomm ................................................................... F-36

Appendix G. Professor Nevo's Test Four Applied to CDMA ................................................................. G-39

Appendix H. Professor Nevo's Test Four Applied to UMTS .................................................................. H-40

Contains Protected Material Designated by Qualcomm and Non-Parties    Page ii
Pursuant to Protective Order(s) entered in FTC v. Qualcomm Incorporated,
Case No. 17-cv-00220 (N.D. Cal.)

# List of Figures

Figure 1. Apple's Revenue from Handsets, CDMA-Enabled vs. Not CDMA-Enabled..........................................30

Figure 2. Modem Chips Used in CDMA-Enabled Handsets, By Supplier: 2006–2016.........................................32

Figure 3. BCG Presentation Showing Qualcomm's Declining Share of Cellular Communication Standard SEPs....................................................................................................................................................................49

Figure 4. Professor Nevo's Exhibit 6 after Correcting for VIA and Dropping Very Old Licenses ...........................73

Figure 5. Fraction of Apple's Business Required to Produce a Payback Ratio of Three.....................................121

Figure 6. CDMA-Enabled Handsets as a Share of Total Handsets Sold Worldwide, 2004–2017 .....................D-14

Figure 7. CDMA-Enabled Handsets as a Share of Total Handset Revenue Worldwide, 2007–2017................D-15

Figure 8. CDMA-Enabled Handsets as a Share of Total "High-End" and "Ultra High-End" Smartphones Sold Worldwide, 2004–2017 ....................................................................................................................................D-16

Figure 9. Unlicensed OEMs and CMS with Estimated Annual Production Volumes ........................................ E-33

Figure 10. Professor Nevo's Updated UMTS-Only LTE Reliance Regressions ................................................H-41

Contains Protected Material Designated by Qualcomm and Non-Parties                                                      Page iii
Pursuant to Protective Order(s) entered in FTC v. Qualcomm Incorporated,
Case No. 17-cv-00220 (N.D. Cal.)

## VIII.C. Effects of Qualcomm's Exclusive Dealing with Apple

(398)    The Chipty Report claims that Qualcomm's 2011 and 2013 agreements with Apple had no anti-competitive effects. Central to this claim is Dr. Chipty's assertion that none of Qualcomm's rivals could have won Apple's 2011–2015 awards due to "engineering or scheduling deficiencies" in their product offerings.[436] I now address this assertion.

### VIII.C.1. Competition and Innovation in the Counterfactual

(399)    Any retrospective evaluation of the economic effects of a challenged business practice necessarily requires some comparison of how the market actually evolved with how the market would have evolved if not for the challenged conduct. I believe that Dr. Chipty agrees with me about this general conceptual point.[437] The "counterfactual" refers to the market outcome that would have arisen in the absence of the challenged conduct. For present purposes, the counterfactual refers to the situation that would have arisen had Qualcomm not entered into de facto exclusive dealing agreements with Apple in 2011 and 2013. Of course, it is never possible to know with certainty just what the counterfactual market outcome would have been, but one can make reasonable projections by applying economic principles and economic reasoning to the available evidence.

(400)    In the current context, all of the evidence that Dr. Chipty cites from 2011 onwards necessarily arose in a market in which competition and innovation were influenced by Qualcomm's exclusive dealing agreements with Apple. As a general principle, it is reasonable to expect that, in the absence of Qualcomm's exclusive dealing agreements with Apple, some of Qualcomm's rivals would have invested more, or accelerated their development efforts, at least if they perceived having a better chance of securing some of Apple's business. Certainly Qualcomm perceived strategic benefits of securing all of Apple's business, as discussed above, which supports this conclusion. Therefore, in assessing whether Qualcomm's agreements with Apple had anti-competitive effects, it would be a mistake to assume that "engineering and scheduling deficiencies" of Qualcomm's rivals cited by Dr. Chipty would necessarily have occurred in the absence of Qualcomm's challenged conduct.

(401)    The Shapiro Report makes certain statements about the counterfactual. For example, I state: "Apple subsequently launched iPad models in 2014, 2015, and 2016 using Premium LTE Modem Chips only from Qualcomm. Some of these models most likely would have used

---

[436] Chipty Report, Section VII.C.1.
[437] *See, e.g.*, Chipty Report, ¶ 280.

Contains Protected Material Designated by Qualcomm and Non-Parties                                    Page 138
Pursuant to Protective Order(s) entered in FTC v. Qualcomm Incorporated,
Case No. 17-cv-00220 (N.D. Cal.)