Jennifer Milici, D.C. Bar No. 987096
J. Alexander Ansaldo, Va. Bar No. 75870
Joseph R. Baker, D.C. Bar No. 490802
Geoffrey M. Green, D.C. Bar No. 428392
Nathaniel M. Hopkin, New York Bar No. 5191598
Daniel Matheson, D.C. Bar No. 502490
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
(202) 326-3695; (202) 326-3496 (fax)
*jmilici@ftc.gov*
*Attorneys for Plaintiff Federal Trade Commission*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br>                    Plaintiff<br><br>v.<br><br>QUALCOMM INCORPORATED, a Delaware Corporation,<br>                    Defendant. | Case No. 5:17-cv-00220-LHK-NMC<br><br>**FEDERAL TRADE COMMISSION'S REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY OF PROFESSOR AVIV NEVO**<br><br>Date:         October 18, 2018<br>Time:        1:30 p.m.<br>Courtroom: 8, 4th Floor<br>Judge:       Hon. Lucy H. Koh |

## I. INTRODUCTION

Qualcomm seeks to present testimony from its expert, Professor Aviv Nevo, concerning two documents handpicked from its own files that post-date the discovery cutoff in this case (the "Post-Discovery Licenses"). Qualcomm's selective introduction of post-discovery evidence through Prof. Nevo's testimony would unfairly prejudice the FTC because the FTC had no opportunity to conduct discovery about the Post-Discovery Licenses: *e.g.*, no discovery concerning the meaning of the provisions, and no discovery concerning the negotiations or the circumstances surrounding the negotiations. This Court ordered Qualcomm to complete its production of documents to the FTC by December 18, 2017, and ordered that fact discovery in this matter conclude on March 30, 2018. Order Amending Case Schedule, Dec. 13, 2017, ECF No. 389. For those deadlines to be real and meaningful, the FTC's motion, seeking to bar Qualcomm from using Prof. Nevo's testimony as a back door for the presentation of post-discovery documents, should be granted.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Discovery Cutoff

Qualcomm collected documents from its custodians in the late spring of 2017. Hr'g Tr. 27:5-10, Nov. 15, 2017, ECF No. 307. Qualcomm substantially completed its production of these documents to the FTC at the end of November 2017. Supp'l Joint Case Mgmt. Stmt. at 1, Dec. 8, 2017, ECF No. 378. Qualcomm and the FTC then negotiated the scope of a limited refresh production of documents from agreed-upon custodians through September 2017. *Id.* at 2. The Court ordered Qualcomm to complete its refresh production by December 18, 2017. Order Amending Case Schedule, Dec. 13, 2017, ECF No. 389. The parties did not agree to any further refresh of Qualcomm's document production.

At a hearing on November 15, 2017, Qualcomm advised the Court "that it will be appropriate to present evidence to the court at trial on things that happened after the middle of 2017." Hr'g Tr. 27:12-13, Nov. 15, 2017, ECF No. 307. The Court responded that any such evidence must derive from "full discovery," and not "cherry picked custodians." Hr'g Tr. 27:16-

1

FEDERAL TRADE COMMISSION'S REPLY IN SUPPORT OF
MOTION TO EXCLUDE EXPERT TESTIMONY OF PROFESSOR AVIV NEVO
Case No. 17-cv-00220-LHK-NMC

17. Qualcomm agreed that the parties "ought to negotiate the scope" of any refresh of discovery. Hr'g Tr. 27:16-17. At the same time that the parties agreed to a refresh production for specific custodians through September 2017, the FTC and Qualcomm "agreed to meet and confer regarding the need for a further refresh of discovery closer to trial." Supp'l Joint Case Mgmt. Stmt. at 6, Dec. 8, 2017, ECF No. 378. Discovery closed on March 30, 2018. To date, Qualcomm has not proposed a meet and confer regarding any plan to refresh document production after the discovery cutoff, has not negotiated the scope of any further discovery with the FTC, and has not sought leave from the Court to re-open discovery.

### B. The Production of the Post-Discovery Licenses in the Southern District of California Actions

After discovery closed in this action, Qualcomm continued to produce documents in response to requests from Apple and its contract manufacturers in *In re Qualcomm Litigation*, No. 3:17-cv-00108 (S.D. Cal.) ("Southern District Actions"). In a Joint Case Management Statement filed with this Court on March 20, 2018, Qualcomm explained:

> [T]hese productions are being made in response to document requests served on Qualcomm by Apple and its contract manufacturers in the Southern District of California action, **not in response to requests made in the above-captioned actions by the FTC or MDL Plaintiffs**. Qualcomm has produced these documents to the FTC and MDL Plaintiffs pursuant to requirements of the Coordination Order signed by this Court and Judge Curiel in the Southern District. The Southern District action is proceeding along a different schedule, with fact discovery ending on May 11, 2018, and the productions about which the FTC and MDL Plaintiffs complain are timely in the action in which they are being made. **Qualcomm's document productions in the Southern District of California action should not affect the schedules in the above-captioned actions**.

Joint Case Mgmt. Stmt. at 7, Mar. 20, 2018, ECF No. 633 (emphasis added).

Qualcomm has produced over 1.8 million pages in the Southern District Actions since discovery in the FTC action closed on March 30. In the cover letters to the FTC accompanying

those productions, including the June 22 and June 28 productions that contained the Post-Discovery Licenses at issue here, Qualcomm stated that the documents were responsive to discovery requests in the Southern District Actions and were copied to the FTC pursuant to the Joint Stipulation and Discovery Coordination Order, Jan. 24, 2018, ECF No. 513. Reply Ex. 1 (Production Cover Letter dated June 22, 2018) (stating that Qualcomm produced these documents in response to seven Requests for Production served by the Southern District Actions plaintiffs);[1] Reply Ex. 2 (Production Cover Letter dated June 28, 2018) (same). The FTC had no opportunity to negotiate with Qualcomm the scope of these document productions.

## III.     ARGUMENT

It is undisputed that Qualcomm did not produce the Post-Discovery Licenses before the close of fact discovery. Because the licenses were not available during discovery, it would be prejudicial to the FTC to allow Qualcomm's expert to testify about these documents at trial. Qualcomm's chief argument in opposition, that because the FTC is seeking injunctive relief, Qualcomm is entitled to present evidence of "current conditions near the time of trial" has no bearing on the merits of this motion. Qualcomm's Opposition at 6, ECF No. 873 ("Opp."). If Qualcomm wished to re-open discovery, its obligation was to meet and confer with the FTC about the scope of the additional discovery that it was proposing, and then seek permission from the Court to conduct that additional discovery. Qualcomm failed to take those necessary steps. Instead, ignoring this Court's admonition that it would not accept "two cherry picked custodians" as the basis for a refresh of discovery, Hr'g Tr. 27:16-17, Nov. 15, 2017, ECF No. 307, Qualcomm decided to introduce two cherry-picked *documents* through Prof. Nevo's testimony. Qualcomm is not entitled to circumvent the Court's instructions by supplying its expert with selected post-discovery documents with the self-serving claim that it, in its sole discretion, has determined that those documents (and not others) are relevant to "current conditions."

---

[1] All exhibits are attached to the Declaration of Jennifer Milici in Support of the Federal Trade Commission's Motion to Exclude Expert Testimony of Professor Aviv Nevo, Aug. 30, 2018, ECF No. 790-1, or the supplement thereto filed with this reply ("Reply Ex.").

The prejudice to the FTC of Qualcomm's approach is readily apparent. Qualcomm has not produced any documents concerning the negotiation of the license agreements at issue and yet Prof. Nevo proposes to testify that the licenses are evidence of the reasonableness of Qualcomm's royalty rates. So little information is available about the circumstances surrounding the negotiation of the licenses that Qualcomm had to obtain a declaration from a fact witness to establish the date of execution for one of the licenses. Gonell Decl., ECF No. 877-16. That declaration also avers that the agreements were the product of negotiations, but without providing any details of the negotiations. Gonell Decl. ¶¶ 3, 5.

The FTC had no access to negotiation documents, and also never had the opportunity to depose fact witnesses about the origin of the Post-Discovery Licenses. Indeed, the FTC could not even ask Prof. Nevo about the licenses that he relied upon, because he could not remember at his deposition whether he had been provided with information concerning their negotiation. *See* Mot. at 4-5, ECF No. 790. Prof. Nevo did not know whether Qualcomm offered the licensees financial incentives to accept its terms or whether any supply threats impacted the negotiations. *See* Mot. Ex. 2. Still, Prof. Nevo cited the Post-Discovery Licenses as evidence that Qualcomm's royalty rates are reasonable.

Courts, exercising their "broad discretion in controlling the conduct of a trial," may properly exclude potentially probative evidence for any number of reasons, including to enforce case management orders. *Penk v. Or. State Bd. of Higher Educ.*, 816 F.2d 458, 465 (9th Cir. 1987); *see also Navellier v. Sletten*, 262 F.3d 923, 941 (9th Cir. 2001) ("Trial courts have broad authority to impose … limits" on the parties' presentation of evidence); *Apple Inc. v. Samsung Elecs. Co.*, No. 11-cv-01846-LHK, 2018 WL 1586276, at *20 (N.D. Cal. Apr. 2, 2018) ("The Court has broad discretion to manage the conduct of a trial and the evidence presented by the parties"); *Medora v. City & Cnty. of S.F.*, No. C 06-0558, 2007 WL 2221069, at *2 (N.D. Cal. Aug. 2, 2007) (granting motion to exclude documents produced "after the discovery cutoff date").

4

FEDERAL TRADE COMMISSION'S REPLY IN SUPPORT OF
MOTION TO EXCLUDE EXPERT TESTIMONY OF PROFESSOR AVIV NEVO
Case No. 17-cv-00220-LHK-NMC

Qualcomm's only cited authority is readily distinguishable. In *Los Angeles News Service v. CBS Broadcasting, Inc.*, 305 F.3d 924, 930 (9th Cir. 2002), the district court had excluded a videotape that a party had obtained by calling a third party television station and requesting it. In reversing the district court, the Ninth Circuit noted that allowing the introduction of evidence obtained outside of the discovery process and after the discovery cutoff could, in the particular circumstances of that case, potentially benefit either party. *Id.* at 934 (the ability "to search for evidence by nondiscovery means" outside the discovery period "could benefit or hinder either side.") Here, in contrast, the evidence at issue is in the custody and control of Qualcomm; it is not equally available to the FTC through non-discovery means. Allowing Qualcomm to pick and choose among documents that it created after relevant discovery deadlines, and to add selected documents to the record through expert testimony, is prejudicial to the FTC, especially where the FTC had no ability to pursue additional discovery after these deadlines.

Qualcomm's blithe assurance that it "has continued producing other concluded 5G agreements,"[2] and that the FTC may use those agreements to address Prof. Nevo's arguments neatly illustrates the harm here. Qualcomm may believe that comparing license agreements that it chose to provide to Prof. Nevo to other agreements Qualcomm happened to produce in the Southern District Actions is sufficient to evaluate Prof. Nevo's analyses, but that is not Qualcomm's decision to make. If Qualcomm wants to show evidence about Qualcomm's recent license agreements (or other developments), and the Court agrees that this is appropriate, then the FTC must have a fair opportunity to conduct "full discovery" about these developments. Hr'g Tr. 27:16-17, Nov. 15, 2017, ECF No. 307. Qualcomm cannot fairly avoid the obligation of discovery while also offering up favorable anecdotes from its own files and leaving the FTC with nothing but Qualcomm's handpicked evidence (and post hoc declarations) to develop rebuttal.

---

[2] Qualcomm has not identified any such license agreements from among the 1.8 million pages of documents produced in the Southern District Actions since the end of fact discovery in this case.

Qualcomm attempts to justify its failure to follow the Court's orders by asserting that the FTC should have sought to re-open discovery upon receipt of the license agreements. Opp. at 9. But it is Qualcomm, and not the FTC, that is seeking unilaterally to supplement the record with post-discovery material. Moreover, Qualcomm produced over 1.8 million pages of documents in the Southern District Actions after the close of discovery, and represented to this Court that those productions would have no impact on the schedule in this case. The FTC was under no obligation to review Qualcomm's voluminous post-discovery productions, much less to scour those productions for information that would be prejudicial if it were introduced into this case without further discovery of the underlying facts.

Qualcomm also faults the FTC's expert, Professor Carl Shapiro, for not responding to the Post-Discovery Licenses in his rebuttal report. But it is unclear how Qualcomm thinks Prof. Shapiro should have responded. It is impossible to tell from the face of a license agreement what leverage was brought to bear by Qualcomm in its negotiation. There is no evidentiary basis for Prof. Nevo's assumption that the licenses were fairly negotiated and, likewise, no evidentiary basis upon which an FTC expert could form an opinion about the negotiations. By themselves, devoid of context, the license agreements cannot reliably support or refute any claim or defense asserted in this case or any opinion disclosed by an expert.

Finally, Qualcomm argues that "a decision on whether to grant prospective relief must consider current conditions near the time of trial" and that "such evidence is of critical importance." Opp. at 6. But to obtain an injunction, the government must only show that the challenged conduct is "ongoing *or* likely to recur." *FTC v. Evans Prods. Co.*, 775 F.2d 1084, 1087 (9th Cir. 1985) (emphasis added). In the cases cited by Qualcomm, courts denied injunctions because the defendants had ceased engaging in the challenged conduct before the government's complaint and the government had not shown that there was a likelihood that defendants would engage in the conduct again in the future. *See Evans Prods.*, 775 F.2d at 1087 (affirming denial of preliminary injunctive relief where defendant's alleged misrepresentations had completely ceased years before the government filed its complaint and the district court

made no finding of likelihood of recurrence); *FTC v. Merchant Servs. Direct, LLC*, No. 13-CV-0279-TOR, 2013 WL 4094394, at *3 (E.D. Wash. Aug. 13, 2013) (denying the FTC's request for temporary injunctive relief where there was little to suggest that the violations alleged in the complaint were likely to recur and defendants had "taken meaningful steps" to prevent violations over the two years preceding the complaint); *FTC v. AbbVie, Inc.*, No. 14-5151, 2018 WL 3830533 (E.D. Pa. June 29, 2018) (finding that the filing of two concluded sham lawsuits did not establish that defendants had a pattern or practice of filing such suits and were likely to file sham lawsuits in the future). Here, there is no serious dispute that the core conduct at issue in this case is "ongoing," *i.e.*, that Qualcomm continues to implement a no license-no chips policy and to refuse to license chip manufacturers. Because Qualcomm's conduct is ongoing, the government need not show a likelihood of recurrence and evidence about current conditions is not of "critical importance" in this case.

Even if a showing of likelihood of recurrence were required, past unlawful conduct is "highly suggestive of the likelihood of future violations," *CFTC v. Yu*, No. 12-cv-3921-YGR, 2012 WL 3283430, at *4 (N.D. Cal. Aug. 10, 2012) (quoting *CFTC v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979)), and in a government antitrust case, "all doubts as to the remedy are to be resolved in [the government's] favor." *United States v. E.I. du Pont de Nemours & Co.*, 366 U.S. 316, 334 (1961). In any event, Qualcomm cites no authority for the proposition that the government's request for injunctive relief relieves a defendant from its obligation to abide by the Court's discovery and scheduling orders. It is one thing for a party to seek to introduce evidence from public sources regarding the risk of recurrence of Qualcomm's conduct (an issue not currently before the Court). It is quite another for Qualcomm to usurp the power of the Court and unilaterally to supplement the discovery record with self-selected documents from its own confidential files.

7

FEDERAL TRADE COMMISSION'S REPLY IN SUPPORT OF
MOTION TO EXCLUDE EXPERT TESTIMONY OF PROFESSOR AVIV NEVO
Case No. 17-cv-00220-LHK-NMC

## IV.  CONCLUSION

For the reasons explained above, the Court should prohibit Qualcomm from offering expert testimony or opinion of Professor Aviv Nevo based upon or concerning Qualcomm license agreements that were not produced to the FTC during the discovery period.

Respectfully submitted,

Dated: October 4, 2018

*/s/ Jennifer Milici*
JENNIFER MILICI
J. ALEXANDER ANSALDO
JOSEPH R. BAKER
NATHANIEL M. HOPKIN
GEOFFREY M. GREEN
DANIEL MATHESON

Bureau of Competition

*Attorneys for Plaintiff Federal Trade Commission*