KEKER, VAN NEST & PETERS LLP
Robert A. Van Nest (SBN 84065)
rvannest@keker.com
Eugene M. Paige (SBN 202849)
epaige@keker.com
Justina Sessions (SBN 270914)
jsessions@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
Facsimile:  (415) 397-7188

CRAVATH, SWAINE & MOORE LLP
Gary A. Bornstein *(pro hac vice)*
gbornstein@cravath.com
Yonatan Even *(pro hac vice)*
yeven@cravath.com
825 Eighth Avenue
New York, New York 10019-7475
Telephone: (212) 474-1000
Facsimile:  (212) 474-3700

Attorneys for Defendant
QUALCOMM INCORPORATED

MORGAN, LEWIS & BOCKIUS LLP
Richard S. Taffet *(pro hac vice)*
richard.taffet@morganlewis.com
101 Park Avenue
New York, NY 10178-0060
Telephone: (212) 309-6000
Facsimile:  (212) 309-6001

MORGAN, LEWIS & BOCKIUS LLP
Willard K. Tom *(pro hac vice)*
willard.tom@morganlewis.com
1111 Pennsylvania Avenue NW
Washington, DC 20004-2541
Telephone: (202) 739-3000
Facsimile:  (202) 739-3001

MORGAN, LEWIS & BOCKIUS LLP
Geoffrey T. Holtz (SBN 191370)
gholtz@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000
Facsimile:  (415) 442-1001

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>QUALCOMM INCORPORATED, a Delaware corporation,<br><br>Defendant. | Case No. 5:17-cv-00220-LHK-NMC<br><br>**DEFENDANT QUALCOMM INCORPORATED'S REPLY ON MOTION TO STRIKE PORTIONS OF REBUTTAL EXPERT REPORT OF DR. ROBERT AKL**<br><br>Date: October 18, 2018<br>Time: 1:30 p.m.<br>Dept.: Courtroom 8, 4th Floor<br>Judge: Hon. Lucy H. Koh |

## I. PRELIMINARY STATEMENT

In its Motion to Strike, Qualcomm established that Paragraphs 72-86 of the Rebuttal Expert Report of the FTC's expert Dr. Robert Akl improperly present new opinions that go beyond the proper scope of rebuttal expert testimony. These paragraphs contain, for the first time in this case, qualitative assessments of specific patents held by firms other than Qualcomm. Contrary to the FTC's assertions, these analyses do not rebut the opinions of Qualcomm's technical expert, Dr. Jeffrey Andrews. Indeed, Dr. Akl himself conceded that Paragraphs 72-86 concern "standardized technology areas *not addressed* by Dr. Andrews". (Holtz Ex. 1 ¶ 5 (Akl Rebuttal Report) (ECF No. 797-2) (emphasis added).) In Opposition, the FTC primarily argues that the "context of this case makes clear that both experts' opinions are relevant to cellular SEP technology generally". (Opp. at 1.) According to the FTC, Dr. Akl's new patent opinions therefore are proper because they are within the "same subject matter" of Dr. Andrews's opinions (*i.e.*, "cellular SEP technology generally"). The FTC's approach misstates the limited scope of allowed rebuttal testimony, which must be offered "solely to contradict or rebut evidence" of the opposing party, not to offer new opinions relevant to the "general" subject area. Dr. Akl's opinions go far beyond the allowed scope of rebuttal and should be stricken.

Critically, the FTC's arguments in opposition are based on a misstatement of the purposes for which Qualcomm is offering Dr. Andrews's opinions. The FTC speculates that Dr. Andrews's report is intended to show that the "relative value" of Qualcomm's patents "might justify" the royalties that Qualcomm charges. (Opp. at 5.) This is incorrect. Qualcomm offered the exemplar patents addressed by Dr. Andrews to illustrate the flaws in the FTC's experts' reliance on simple patent counting as a basis for valuing Qualcomm's portfolio. Specifically, in his initial report, Dr. Akl compiled a numerical "census" of the many thousands of patents that were declared by industry participants to be potentially essential to various cellular standards, and Qualcomm's relative "share" of that population of patents. (Opp. at 2.) Another FTC expert, Michael Lasinski, then performed mathematical calculations using that "census" "to adjust[] for portfolio size" and to determine a purportedly "reasonable" and "proportionate" royalty rate for Qualcomm's patent portfolio relative to other companies' portfolios. (Opp. at 3.) And yet

another FTC expert, Richard Donaldson, opined—on the basis of the same census—that Qualcomm's "share of declared SEP families", and by extension the value of Qualcomm's portfolio, declined with each new generation of cellular standards. (Donaldson Report at 14.)[1]

Qualcomm served the reports of two experts—an economist and an engineer—that illustrate the shortcomings of the simplistic patent counting relied on by the FTC, including its inability to account for the value of fundamental inventions. At issue here is the report of Dr. Andrews, who describes exemplar fundamental, essential technologies invented by Qualcomm, in each generation of cellular technology. (Holtz Ex. 4 ¶ 3 (ECF No. 797-5).) Dr. Andrews did not purport to provide an opinion on *every* fundamental innovation made by Qualcomm, of which there are many, or even on fundamental innovations within every technology area relevant to cellular devices. Rather, he addressed certain technology areas that "have been particular focuses of [Dr. Andrews's] research, teaching, and professional experience". (*Id.*) Dr. Andrews's Report concludes that without the innovations represented by the 34 exemplar Qualcomm SEPs he addressed, "3G, 4G, and 5G cellular would not be possible". (*Id.* ¶ 7.) Dr. Andrews's analyses illustrate Qualcomm's arguments that Dr. Akl's simple "census" cannot serve as a reliable basis for any opinion concerning the value of Qualcomm's portfolio, whether across SEP holders (as done by Mr. Lasinski) or over time (as done by Mr. Donaldson), because it wrongly treats fundamental patents the same as less important patents.

The new opinions from Dr. Akl addressed in this Motion do not disprove or contradict any conclusions Qualcomm will ask the Court to draw from Dr. Andrews's analyses, and therefore do not constitute proper rebuttal pursuant to Rule 26(a)(2)(D)(ii). Rather than explain how Dr. Akl's new opinions rebut Dr. Andrews's opinions that the patents he had identified are fundamental, or even Qualcomm's broader position—that not all standard-essential patents are equally fundamental or important—the FTC's Opposition misstates the purposes for which Qualcomm offers Dr. Andrews's Report. The FTC argues that the "implication" of Dr. Andrews's Report is that "Qualcomm's patents are more valuable than those held by other licensors", and that

---

[1] Qualcomm previously filed the Donaldson Report under seal as Exhibit 1 to the Declaration of Geoffrey Holtz, ECF No. 799-2.

Reply on Motion to Strike
Portions of Rebuttal Report
Case No. 5:17-cv-00220-LHK-NMC

1  Dr. Akl's opinions are intended to rebut this "implication". (Opp. at 5.) This "implication" is a
2  straw man. Dr. Andrews's Report is not intended to justify the value of Qualcomm's SEPs
3  "relative" to those of other cellular firms, which is why Dr. Andrews made no claim regarding
4  cellular SEPs held by any other firm. Indeed, the FTC's argument—that the value of
5  Qualcomm's SEPs must be determined not by the outcomes of numerous arms'-length licensing
6  negotiations but by comparing them to SEPs held by other firms—is the FTC's own position, not
7  Qualcomm's. The FTC should not be allowed to rely on its own misstated interpretation of
8  Qualcomm's position in order to justify Dr. Akl's improper new opinions.

Although the FTC has not explained how Dr. Akl's assessments of *any* patents held by other firms rebut or contradict Qualcomm's arguments, Qualcomm has conservatively moved to strike only a subset of Dr. Akl's opinions, *i.e.*, his assessments of patents in technology areas that Dr. Andrews did not address, because the resulting prejudice to Qualcomm from those opinions is doubly clear. If the FTC wanted to offer a qualitative assessment of other companies' portfolios in support of its assertion that other cellular firms have important patents, then it should have done so in its experts' opening reports, so Qualcomm would have the opportunity (1) to analyze the alternative patents offered by the FTC *and* (2) to consider whether to offer fundamental Qualcomm patents in the same technology areas or in additional technology areas from within Qualcomm's thousands of SEPs. The FTC's tactical choice not to do so, but rather to provide such assessments only as purported rebuttal, has unfairly deprived Qualcomm of those opportunities. Dr. Akl's new opinions should be stricken.

## II.   ARGUMENT

### A.   Dr. Akl Concedes that Paragraphs 72-86 of His Rebuttal Report Offer Opinions Beyond the Scope of Dr. Andrews's Opinions.

In Dr. Akl's Opening Report, Dr. Akl presented a so-called "census" of the "cellular SEPs declared as essential to various cellular standards by different entities". (Holtz Ex. 3 ¶ 1 (ECF No. 797-4).) Dr. Akl's Opening Report performed no qualitative assessment of any specific patents, whether held by Qualcomm or any other cellular firm; instead, he engaged in a pure counting exercise. Mr. Lasinski's Opening Report uses Dr. Akl's census to compare "Qualcomm

SEP royalties to those of other major licensors" using mathematical calculations that purportedly "account for variations in portfolio size and strength". (Opp. at 10.) And Mr. Donaldson opines, on the basis of the same SEP census, that Qualcomm's "share of declared SEP families" declined in succeeding generations of cellular standards. (Donaldson Report at 14.)

In his report, Dr. Andrews described and analyzed specific examples of SEPs in Qualcomm's patent portfolio in four areas of cellular technology: cellular waveform, carrier aggregation, heterogenous cellular networks and unlicensed spectrum. As Dr. Andrews stated in his report, "[t]he patents discussed in this report demonstrate that Qualcomm possesses a wide-ranging portfolio in a broad range of subject areas. These patents address fundamental innovations. Without these concepts, 3G, 4G, and 5G cellular would not be possible." (Holtz Ex. 4 ¶ 7.) Dr. Andrews further explained, contrary to the FTC's contentions, that Qualcomm's portfolio of cellular patents has "continued to grow and expand over time" on the basis of "newer fundamental patents" relevant to later cellular standards. (*Id.* ¶ 8.) Because of the breadth and quantity of Qualcomm's contributions to cellular technologies, Dr. Andrews made clear that he was not addressing all important Qualcomm inventions within these technology areas, nor was he addressing important Qualcomm inventions in all potentially relevant technology areas. Rather, he focused on areas that "have been particular focuses of [his] research, teaching, and professional experience." (*Id.* ¶ 3.)

Dr. Akl's Rebuttal Report spends only about three pages (out of a 46-page report) describing Dr. Akl's "Disagreements with Dr. Andrews's Analysis of Qualcomm Patents". (Holtz Ex. 1 at 2-5.) Much of the remainder of Dr. Akl's Rebuttal Report presents Dr. Akl's assessments of patents held by "major licensors other than Qualcomm" (Ericsson, Nokia and InterDigital) that Dr. Akl asserts to be "of similar importance to those identified by Dr. Andrews". (*Id.* at 15-44.) Qualcomm moved to strike a subset of these new patent assessments: those that touch on technology areas that Dr. Andrews had not even addressed in his Report, as conceded by Dr. Akl.

Although the FTC's Opposition now asserts that Dr. Andrews's Report "addressed . . . cellular standards as a whole", including "two of the four technology areas

Qualcomm now argues Dr. Akl raised for the first time" (Opp. at 4, 7), Dr. Akl's Rebuttal Report itself confirms that the FTC's assertion is unfounded. Dr. Akl's Rebuttal Report explained that Paragraphs 72-86—which comprise the opinions Qualcomm is moving to strike—address patents "in standardized technology areas *not addressed by Dr. Andrews*". (Holtz Ex. 1 ¶ 5 (emphasis added); *see also id.* ¶ 72 (identifying the subsequent paragraphs as describing patents relevant to "other portions" of cellular standards that Dr. Andrews did not address).) Dr. Akl's concession confirms that his new patent opinions are not offered "solely to contradict or rebut evidence on the same subject matter" addressed by Dr. Andrews's Report, and they therefore are not proper rebuttal under Rule 26(a)(2)(D)(ii).[2]

The FTC cannot justify its failure to disclose Dr. Akl's new patent analyses on the basis that it could not have anticipated that Qualcomm would offer qualitative evidence concerning its fundamental innovations, which have long been a key issue in the case. (Mot. at 2.) In *Amos v. Makita U.S.A.*, for example, a defendant who was accused of causing a fire chose not to present an initial expert report concerning the fire's cause, even though the defendant was obviously on notice that causation was a critical issue in the case. 2011 WL 43092, at *2 (D. Nev. Jan. 6, 2011). On rebuttal, however, the defendant's expert offered two opinions: (1) that the plaintiff's expert's opinion on the causation of the fire was incorrect, and (2) that there was actually another cause of the fire. *Id.* The Court allowed the first opinion as proper rebuttal but excluded the

---

[2] With respect to the two technology areas the FTC asserts Dr. Andrews opined that Qualcomm had developed—semi-persistent scheduling ("SPS") and discontinuous reception ("DRX")—the FTC simply has misread the portion of Dr. Andrews's Report on which it relies. The FTC's Opposition states that Dr. Andrews opines that "these technologies were 'introduced in Qualcomm's HDR system'", and therefore infers that "he clearly offers an opinion that Qualcomm developed these technologies". (Opp. at 9.) In fact, Dr. Andrews's Report stated in relevant part that "these features focus on improving scheduling of a *common data channel, which, as discussed above, was introduced in Qualcomm's HDR system*, for different types of data". (Holtz Ex. 4 ¶ 29 (emphasis added).) Dr. Andrews was opining that the "common data channel" was introduced in Qualcomm's HDR system, a precursor of the CDMA technology later standardized as EV-DO. (*Id.* ¶ 52.) However, SPS and DRX (which "improv[ed]" the common data channel) were *not* part of the HDR system, but were developed and standardized as part of a separate WCDMA standard called HSPA+. (*Id.* ¶ 62.) Qualcomm may present at trial percipient witness testimony concerning its invention of fundamental elements of SPS and DRX. The FTC's assertion that other cellular firms may have patents relevant to SPS and DRX would not contradict that factual evidence.

1  second, because the new theory of fire causation was "outside the scope of the opinions" of the
2  plaintiff's expert and because it was "an expected and anticipated portion" of the defendant's
3  case-in-chief that should have been disclosed earlier. *Id.*; *see also IBM Corp. v. Fasco Indus.*,
4  1995 WL 115421 (N.D. Cal. Mar. 15, 1995) ("The supplemental or 'rebuttal' experts cannot put
5  forth their own theories; they must restrict their testimony to attacking the theories offered by the
6  adversary's experts."). Qualcomm does not move to strike the portion of Dr. Akl's opinions that
7  express "disagreements" with Dr. Andrews's analyses of Qualcomm patents, or even Dr. Akl's
8  assessments of third-parties' patents in technology areas addressed by Dr. Andrews (even though
9  they do not directly contradict Dr. Andrews's patent analyses). However, Qualcomm moves to
10 strike Dr. Akl's patent assessments in *other* technology areas not addressed by Dr. Andrews
11 because they, like the stricken opinions in *Amos* and *IBM*, are "outside the scope of"
12 Dr. Andrews's opinions and should have been disclosed in the FTC's initial expert reports.

13 Because the FTC did not disclose Dr. Akl's qualitative patent assessments until his
14 Rebuttal Report, Qualcomm and its experts were denied the opportunity to perform two critical
15 tasks that would rebut Dr. Akl's new opinions, unfairly prejudicing Qualcomm and requiring that
16 the new patent opinions be stricken. *First*, Qualcomm was deprived of the opportunity to present
17 fundamental patents in technology areas that Dr. Andrews expressly did not address in his report.
18 Based on the scheduled length of trial and the scope of Qualcomm's patent portfolio, Qualcomm
19 could not address fundamental innovations in all relevant technology areas in the allotted time.
20 Given the lack of any qualitative assessment of patents in the FTC's opening reports, Qualcomm
21 focused on a limited set of exemplar fundamental SEPs in its portfolio. Qualcomm is thus
22 prejudiced by its inability to address the new opinions offered by Dr. Akl on rebuttal. *Second*,
23 Qualcomm was deprived of the opportunity to present expert testimony challenging Dr. Akl's
24 assessments of other firms' patents, for example by offering opinions that those patents are not
25 valid, are not actually essential to cellular standards, are not as "fundamental" as Dr. Akl
26 contends, or are otherwise not "of comparable importance" to Qualcomm patents identified by
27 Dr. Andrews. (*Cf.* Holtz Ex. 1 ¶ 87.) As noted above, Qualcomm does not seek to exclude
28 patents described by Dr. Akl that are within the technology areas addressed by Dr. Andrews, even

though the FTC's failure to disclose the patents in its opening reports prejudiced Qualcomm with respect to all newly disclosed patents. However, this prejudice compounds the problem with respect to patents in new technology areas that Dr. Andrews explicitly chose not to address.

The FTC asserts that there is no prejudice to Qualcomm because Qualcomm purportedly had notice "that the FTC's experts would compare Qualcomm's SEP portfolio to the SEP portfolios of other licensors", and it cites to initial expert reports submitted by Dr. Akl and Mr. Lasinski. (Opp. at 10.) But Qualcomm's opportunity to rebut the numerical census and other patent counting in the FTC's opening expert reports is not at issue here. Qualcomm could and did rebut that comparison, by offering the exemplar patents described in Dr. Andrews's Report and opinions in a Report submitted by Dr. Mark Schankerman, an economist who explained that "simple patent counts cannot indicate the quality of individual patents". (Opp. at 3.) Rather, the problem is that Dr. Akl's rebuttal report offers brand new qualitative assessments of a sort that the FTC's opening reports did not disclose. Because none of the FTC's experts disclosed in their initial reports any qualitative comparison of any Qualcomm patents to patents held by any other firm, Qualcomm had no opportunity to present qualitative rebuttals. Indeed, the FTC concedes that the opinions in its experts' initial reports "did not depend" on what it refers to as Dr. Akl's later "patent-level analysis". (Opp. at 10.) The initial expert reports could not have provided any notice that Dr. Akl intended to present any qualitative opinions concerning any firms' specific patents, much less give Qualcomm any opportunity to rebut Dr. Akl's opinions on those specific patents. *See Clear-View Techs. v. Rasnick*, 2015 WL 3509384, at *4 (N.D. Cal. June 3, 2015) (despite knowing that its opponent would make an argument at trial, a party "attempted to sandbag" its opponent by delaying its disclosure of relevant expert testimony until rebuttal, which "cannot be countenanced").

**B.     The FTC's Attempt to Reframe Dr. Andrews's Opinions Should Be Rejected.**

To avoid its own expert's concession that Dr. Akl's rebuttal report addresses different subjects than those addressed in Dr. Andrews's Report, the FTC seeks to expand the scope of Dr. Andrews's opinion to broadly encompass "cellular technology generally". (Opp. at 9.) As a threshold matter, this argument is both incorrect and beside the point. As the FTC's cited case

recognized, Rule 26(a)(2)(D)(ii) requires both that the rebuttal opinions be "in the same subject matter" *and* that they are intended "solely to contradict or rebut evidence" within that subject matter.  *See, e.g.*, *FTC v. Innovative Designs, Inc.*, 2018 WL 3611510, at *3 (W.D. Pa. July 27, 2018) ("[E]xpert reports that simply address the same general subject matter as a previously-submitted report, *but do not directly contradict or rebut the actual contents of that prior report*, do not qualify as proper rebuttal or reply reports." (emphasis added)); (*see also* Opp. at 6).  For example, in *TCL v. Ericsson*, the court excluded certain expert rebuttal opinions that were "not based on any affirmative argument made by" the opposing party's experts, even though the experts had addressed the same general topic "in the abstract".  2016 WL 7042085, at *6 (C.D. Cal. Aug. 17, 2016).  Even if both Dr. Andrews's and Dr. Akl's opinions concern "cellular technology generally", the FTC does not explain how Dr. Akl's opinions specifically rebut Dr. Andrews's.  Indeed, taken to its ultimate conclusion, the FTC's approach would allow it to offer for the first time, in its rebuttal reports, any new opinion touching tangentially on "cellular technology".  That position is untenable.  *See Vu v. McNeil–PPC, Inc.*, 2010 WL 2179882, at *2 (C.D. Cal. 2010) ("If the phrase 'same subject matter' is read broadly to encompass *any* possible topic that *relates* to the subject matter at issue, it will blur the distinction between 'affirmative expert' and 'rebuttal expert.'  More importantly, such a broad reading of Rule 26(a)(2)(D)(ii) will render the scope of the subject matter limitless and will lead to unjust results.")

    This Court's decision in *High-Tech Employees* (cited by the FTC at 6, 10) also confirms that Dr. Akl's new analyses are not proper rebuttal.  There, as the FTC's Opposition acknowledges, the Court permitted a rebuttal expert to "justif[y] with greater detail on rebuttal" his "use of a variable [in his opening report]" "in response to criticism by opposing experts".  *See In re High-Tech Emp. Antitrust Litig.*, 2014 WL 1351040, at *13 (N.D. Cal. Apr. 4, 2014).  But Dr. Akl's new "patent-level" opinions do not seek to "justify with greater detail" his or Messrs. Lasinski or Donaldson's use of patent counting in their opening reports; they instead introduce an entirely new methodology—not used by Dr. Andrews or in the FTC's opening reports—that compares Qualcomm's patents to those of other firms on a qualitative (rather than purely numerical) basis.

The FTC further seeks to justify Dr. Akl's new opinions by asserting that Dr. Andrews's opinions are intended to demonstrate that Qualcomm is "alone in possessing important cellular SEPs" and that only Qualcomm "own[s] SEPs that are technically valuable to important subcategories within cellular standards". (Opp. at 7-8.)  These are straw men:  the FTC's Opposition provides no deposition testimony or report citations to show that these were the purposes of Dr. Andrews's report, but instead infers these purposes from "the context of this case" and based on an "implication" of Dr. Andrews's report. (Opp. at 1, 5.)  But Dr. Andrews does not opine that the value of Qualcomm's cellular SEPs could or should be determined by comparing its portfolio to those of other SEP licensors.  To the contrary, Dr. Andrews testified that he is not offering an opinion on other firms' SEPs. (Holtz Ex. 6 at 34:8-35:8 (ECF No. 797-7).)  It is *the FTC*, not Qualcomm, that has asserted that the value of Qualcomm's SEPs should be determined not by market outcomes but rather by mathematically comparing them to SEP portfolios held by other licensors. (Opp. at 5 (arguing that the FTC's theory is that Qualcomm's royalties are "disproportionate" compared to other SEP holders').)[3]  Where a party bears the burden of proof on an element of its case—like the FTC's claim that Qualcomm's royalties are "disproportionate"—any expert opinions that do not directly rebut an opposing party's expert must be included in the proffering party's initial expert reports. *See Clear-View Techs*, 2015 WL 3509384, at *2.[4]  If the FTC intended to rely on qualitative patent-level opinions in support of its "disproportionality" argument, then it was obligated to disclose them in its initial expert reports.

---

[3] Qualcomm will disprove the FTC's contentions at trial.  Among other things, Qualcomm will present expert testimony that, contrary to the FTC's central theory that Qualcomm leveraged its alleged chip power to obtain "supra-FRAND" royalties, hundreds of licensees accepted Qualcomm's typical royalty terms, including many that indisputably were not subject to any alleged chip-related leverage.  Accordingly, the FTC's assertion that none of Qualcomm's experts "performed any calculations showing that Qualcomm's cellular SEP portfolio royalties are justified or reasonable" (Opp. at 3) is simply incorrect.

[4] The FTC cites *TCL v. Ericsson* for the proposition that "there should not be a rule prohibiting providing only rebuttal expert opinion on an anticipated portion of the opponent's case-in-chief". (Opp. at 7 n. 25.)  But Qualcomm does not assert that *if* Dr. Akl's opinions properly rebutted Dr. Andrews, then they must have been disclosed in the FTC's initial reports.  The problem here is that Dr. Akl's opinions do not rebut Dr. Andrews's.  Elsewhere, the *TCL* court recognized that where a party has the burden of proof, it had an affirmative obligation to offer expert opinions meeting that burden in its initial reports, and it struck opinions that "stray[ed] from the subject matter" of the opposing party's reports.  2016 WL 7042085, at *6.

The cases relied upon by the FTC do not establish that Dr. Akl's new patent opinions are proper rebuttal because they "contextualize" Dr. Andrews's opinions or relate to the same subject matter in "the context of the case", as the FTC asserts. (Opp. at 1, 8.) In *Van Alfen v. Toyota Motor Sales*, an expert designated by Toyota opined that Toyota's safety practices were "state of the art". 2012 WL 12930456, at *6 (C.D. Cal. Nov. 9, 2012). The Court determined that the plaintiff's rebuttal reports contradicted that opinion by concluding that Toyota had failed to meet the requirements of a separate safety standard that Toyota's expert had not addressed. *Id*. But Dr. Akl's challenged opinions do not contradict Dr. Andrews's opinions concerning Qualcomm's SEPs by demonstrating, for example, that Qualcomm *lacks* important SEPs or that Dr. Andrews incorrectly concluded that the Qualcomm SEPs he identified were fundamental and important; Dr. Akl also offers opinions of this nature, and Qualcomm has not moved to strike them. But Dr. Akl's opinion that *other SEP holders* have patents in *other* technology areas, which Dr. Andrews expressly refrained from addressing, does not contradict any of Dr. Andrews's opinions or the conclusions Qualcomm will ask the Court to draw from them. And *General Electric Co. v. Wilkins* (cited at Opp. 8) *rejected* a party's argument that its rebuttal expert had addressed the "same subject matter" as its opponent's expert because the party, like the FTC, had defined the proper subject matter of rebuttal "too broad[ly]". 2012 WL 5398407, at *3 (E.D. Cal. Nov. 2, 2012). It does not support the FTC's contention that other firms' cellular SEPs are necessarily within the same "subject matter" as Dr. Andrews's opinions.

### III.   CONCLUSION

For these reasons and those in Qualcomm's Motion to Strike, the identified portions of the Akl Rebuttal Report (¶¶ 72-86) should be stricken as improper rebuttal.

| | | |
|---|---|---|
| Dated: October 4, 2018 | | CRAVATH, SWAINE & MOORE LLP |
| | By: | *s/ Gary A. Bornstein* |

Gary A. Bornstein *(pro hac vice)*
Yonatan Even *(pro hac vice)*
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
Tel.: (212) 474-1000
Fax: (212) 474-3700
gbornstein@cravath.com
yeven@cravath.com

Robert A. Van Nest (SBN 84065)
Eugene M. Paige (SBN 202849)
Justina Sessions (SBN 270914)
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
Facsimile:  (415) 397-7188

Richard S. Taffet *(pro hac vice)*
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178-0060
Tel.: (212) 309-6000
Fax: (212) 309-6001
richard.taffet@morganlewis.com

Willard K. Tom *(pro hac vice)*
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue NW
Washington, DC 20004-2541
Tel.: (202) 739-3000
Fax: (202) 739 3001
willard.tom@morganlewis.com

Geoffrey T. Holtz (SBN 191370)
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Tel.: (415) 442-1000
Fax: (415) 442-1001
gholtz@morganlewis.com

Attorneys for Defendant
QUALCOMM INCORPORATED