1    *Counsel Listed on Signature Page*

2

3

4

5

6

7

8

9

10

11

12                          **UNITED STATES DISTRICT COURT**
                         **NORTHERN DISTRICT OF CALIFORNIA**
13                               **SAN JOSE DIVISION**

14

15

16   FEDERAL TRADE COMMISSION,              Case No. 5:17-cv-00220-LHK-NMC

17                   Plaintiff,             **JOINT CASE MANAGEMENT**
                                            **STATEMENT**
18          vs.

19   QUALCOMM INCORPORATED, a               DATE:     October 24, 2018
     Delaware corporation,
20                                          TIME:     2:00 p.m.
                    Defendant.
21                                          CTRM:     Courtroom 8

22                                          JUDGE:  Hon. Lucy H. Koh

23

24

25

26

27

28

1    Pursuant to the Court's September 7, 2018 Order Continuing Further Case Management

2  Conference (ECF No. 826), Plaintiff Federal Trade Commission (the "FTC") and Defendant

3  Qualcomm Incorporated ("Qualcomm") (collectively, the "Parties") have met and conferred and

4  submit this Joint Case Management Statement, which reports on developments since the Parties

5  filed the September 5, 2018 Joint Case Management Statement. ("CMS", ECF No. 820)

6  **I.    MOTIONS**

7        **A.    Previously Filed Motions**

8        Since the September 5, 2018 CMS, the Parties have completed briefing on the below-

9  listed motions.  The Court took the Motions under submission on October 12, 2018.  (ECF

10  No. 900.)

11        • Federal Trade Commission's Motion To Exclude Expert Testimony of Dr. Edward

12           A. Snyder;[1]

13        • Federal Trade Commission's Motion To Exclude Expert Testimony of

14           Professor Aviv Nevo;[2]

15        • Federal Trade Commission's Motion for Partial Summary Judgment;[3]

16        • Qualcomm Incorporated's Motion To Strike Portions of Rebuttal Expert Report of

17           Dr. Robert Akl;[4] and

18        • Qualcomm Incorporated's Motion To Exclude Expert Reports of Richard L.

19           Donaldson.[5]

20        On September 21, 2018, the Court denied Qualcomm's Motion for Leave to Take the

21  Trial Deposition of an Imminently Unavailable Expert Witness.  (ECF No. 865.)

22        On October 15, 2018, the Parties jointly filed an Administrative Motion To Defer the

23  Court's Ruling on the FTC's Motion for Partial Summary Judgment, which the Court denied later

24

25  [1] ECF No. 788 (Motion); ECF No. 874 (Opposition); ECF No. 891 (Reply).
26  [2] ECF No. 790 (Motion); ECF No. 873 (Opposition); ECF No. 889 (Reply).
   [3] ECF No. 792 (Motion); ECF No. 870 (Opposition); ECF No. 893 (Reply); ECF No. 898
27  (Objections to Reply Evidence).
   [4] ECF No. 797 (Motion); ECF No. 866 (Opposition); ECF No. 894 (Reply).
28  [5] ECF No. 799 (Motion); ECF No. 868 (Opposition); ECF No. 896 (Reply).

1    that day.  (ECF Nos. 902, 903.)

2            **B.**     **Motions in Limine**

3          The Court's September 7, 2018 Order Continuing Further Case Management Conference

4    (ECF No. 826) required the Parties to be prepared to discuss limits on the number of motions *in*

5    *limine* that may be filed in this case.  The Parties agree that three or fewer motions *in limine* per

6    Party are likely to be sufficient (without prejudice to raising additional issues at trial), consistent

7    with Paragraph D(2) of the Court's Guidelines for Pretrial Conferences in Bench Trials.

8            **C.**     **Deadlines for Joint Filings**

9    *FTC's Position*

10         In order to facilitate the orderly submission of joint filings to the Court, and in light of

11    several missed deadlines in connection with Qualcomm's recent *Daubert* and summary judgment

12    opposition filings, the FTC has proposed and the Parties have discussed setting a mutually

13    agreeable deadline by which joint filings, including Joint Sealing Motions and Joint Case

14    Management Statements, must be completed.  The FTC has proposed a deadline of 7:00 p.m.

15    Pacific Time for the substantive completion of such filings, after which the parties would agree to

16    make no further changes. Contrary to Qualcomm's contention below, the FTC has articulated

17    why it has a renewed interest in the Parties reaching an agreement as to timing. As Qualcomm

18    notes below, the process for joint sealing motions requires considerable coordination between the

19    FTC and Qualcomm (and often third parties as well), and would proceed more efficiently in

20    general if all parties involved were working toward a concrete, workable interim deadline.

21    Particularly where additional steps must be taken after the finalization of joint filings (*e.g.*, in the

22    case of joint sealing papers that are ancillary to a motion), it would benefit both the FTC and

23    Qualcomm to have an enforceable deadline for the substantive completion of filings.[6]

24

25    [6] Qualcomm filed its oppositions to the FTC's *Daubert* motions early on September 25, after the

26    midnight September 24 filing deadline. (ECF 873, 874.) The FTC wishes to avoid being at risk of
missing ECF filing deadlines where it must file jointly with Qualcomm. Recent errors in

27    connection with the filing of under seal and public versions of exhibits further reinforce the need
for earlier coordination. *See* ECF No. 907 (Ordering Qualcomm to file under seal correct,

28    unredacted versions of certain exhibits).

1   *Qualcomm's Position*

2          While Qualcomm shares the FTC's interest in ensuring the orderly submission of joint

3   filings to the Court, it does not believe that a departure from the deadline established by Local

4   Civil Rule 5-1(e)(4) is appropriate, especially because the Court, Qualcomm and its relevant

5   employees, and many of Qualcomm's counsel are located in the Pacific time zone and not the

6   Eastern time zone.  *See also* Fed. R. of Civ. Pro. 6(a)(4)(A).  The FTC has not articulated any

7   meaningful reason why a departure from the applicable rules—a request the Court previously

8   denied—is uniquely necessary in this case.  (*See* Apr. 13, 2017 Order (ECF No. 72).)

9          If anything, the work necessary to prepare sealing papers makes it *more* difficult to

10  complete joint filings by the deadline proposed by the FTC.  As Qualcomm has explained to the

11  FTC, the Parties' ability to finalize joint filings depends on the FTC timely providing Qualcomm

12  with the information Qualcomm needs to prepare its contribution to the joint filing.  For example,

13  with respect to joint motions to seal papers filed by the FTC, the FTC must first identify to

14  Qualcomm what confidential Qualcomm material the FTC intends to file so that Qualcomm can

15  then assess whether to seek sealing of that information, provide the basis on which Qualcomm

16  seeks sealing and obtain declarations in support of sealing from knowledgeable Qualcomm

17  employees that must accompany the joint motion to seal.  If the FTC identifies the confidential

18  information it will file to Qualcomm late in the day that a filing is due (as has happened), then

19  Qualcomm likely would not be able to make a sealing determination and provide the necessary

20  information in time to meet the 7:00 p.m. Pacific deadline proposed by the FTC.[7]

21  **II.     PRETRIAL SCHEDULE**

22          In the Court's September 7 Order, the Court ordered that the parties may advance pretrial

23

24  [7] The FTC's reference to "missed deadlines" is unwarranted.  The opposition papers the FTC
25  references were finalized and timely served on the FTC prior to midnight on the day they were
    due.  Qualcomm also finalized and obtained the FTC's signatures on the accompanying joint
26  motions to seal and attorney declarations several hours prior to that.  As Qualcomm has explained
    to the FTC, the documents were filed on the ECF system after midnight solely because of
27  (a) technical issues that initially caused the ECF system to reject Qualcomm's filings, and (b) the
    need to assemble various documents accompanying the joint motion to seal, such as third-party
28  declarations.

filing and exchange deadlines by agreement.  (ECF No. 826.)  The Parties report that they have mutually agreed to establish the following deadlines for pretrial filings and exchanges:

| Date | Filing or Exchange |
| --- | --- |
| November 1, 2018 | • Parties to exchange initial lists of proposed stipulated facts |
| November 8, 2018 | • Parties to exchange preliminary lists of exhibits to be offered at trial (other than solely for impeachment or rebuttal) and the information required by Paragraph B(8) of the Court's Guidelines for Pretrial Conferences in Bench Trials (the "Guidelines")[8]<br>• Parties to exchange preliminary witness lists, identifying which witnesses each Party expects to call live or by deposition<br>• Parties to exchange initial deposition designations |
| November 21, 2018 | • Parties to exchange lists of additional witnesses (identifying which witnesses each party expects to call live or by deposition) prompted by the other Party's November 8 witness or exhibit lists<br>• Parties to exchange lists of additional exhibits to be offered at trial (other than solely for impeachment or rebuttal) prompted by the other Party's November 8 witness or exhibit lists and, for such additional exhibits, the information required by Paragraph B(8) of the Guidelines[9] |

---

[8] The Parties have met and conferred and have also agreed in principle to identify documents for inclusion on a joint exhibit list.

[9] By November 29, each party may add exhibits to be included in the Joint Pretrial Statement if it reasonably anticipates counter-designating deposition testimony concerning such exhibits.  The Parties agree that any exhibit included in the Joint Pretrial Statement that was not identified until after November 21 shall be treated as though it were not identified in the Joint Pretrial Statement if neither party counter-designates deposition testimony discussing that exhibit.

| | | |
|---|---|---|
| | | • Parties to exchange deposition designations for witnesses that each Party adds to their witness list on this date |
| November 29, 2018 | | • Parties to file Joint Pretrial Statement pursuant to Section B of the Guidelines |
| | | • Parties to exchange stamped copies of exhibits identified in Joint Pretrial Statement pursuant to Paragraph D(1) of the Guidelines |
| | | • Each Party to file motions *in limine* pursuant to Paragraph D(2) of the Guidelines |
| December 3, 2018 | | • Each Party to file oppositions to motions *in limine* pursuant to Paragraph D(2) of the Guidelines |
| December 6, 2018 | | • Each Party to file proposed findings of fact and conclusions of law pursuant to Paragraph D(4) of the Guidelines |
| December 10, 2018 | | • Parties to exchange counter-designations of deposition testimony and objections to initial deposition designations |
| December 13, 2018 | | • Pretrial conference (ECF No. 678) |
| December 17, 2018 | | • Parties to exchange objections to deposition counter-designations |
| December 21, 2018 | | • Parties to file deposition designations and objections pursuant to Paragraph D(3) of the Guidelines |
| December 28, 2018 | | • Parties to deliver pre-marked exhibits listed in Joint Pretrial Statement to the Court pursuant to Paragraph D(1)(c) of the Guidelines |
| January 4, 2019 | | • Trial begins (ECF No. 678) |

To facilitate the Parties' pre-trial preparations and planning of their trial presentations, and without prejudice to either Party's right to attempt to persuade the Court that good cause exists to

adopt a particular approach in this case, the Parties respectfully request the Court's guidance concerning the following trial-related matters:

- Trial exhibits.  The Parties request guidance as to whether the Court anticipates limiting the number of exhibits that may be identified in the Joint Pretrial Statement, and, if so, request the opportunity to present proposals as to appropriate limits in this case.  The Parties intend to continue conferring on how to efficiently accomplish the presentation of documentary evidence, including after they make an initial exchange of exhibit lists pursuant to the schedule shown above.

- Objections to trial exhibits.  The Parties request the Court's guidance concerning whether the Court has a preference concerning the manner and timing of the submission of objections to exhibits listed in the Joint Pretrial Statement:  for example, whether the Court would prefer (1) the submission of objections to all listed exhibits at some specified time in advance of the beginning of trial or (2) the submission of objections to specific exhibits that a party states it anticipates using in connection with particular testimony, at some specified time in advance of that testimony.[10]

- Trial schedule.  The Parties request the Court's guidance concerning whether the Court anticipates using the normal trial schedule stated in Section E of the Guidelines (*i.e.*, Mondays, Tuesdays and Fridays from 9 a.m. to 4:30 p.m.).

- Post-trial briefing.  The Parties request the Court's guidance concerning whether the Court would permit the submission of post-trial briefing, either in addition to or in lieu of the optional pre-trial briefs provided for by Paragraph D(5) of the Guidelines.

## III.   PARTY DISCOVERY

The Parties have met and conferred regarding the treatment of evidence of events occurring after the fact discovery cutoff in this case, including whether, how, and to what extent such evidence may be used at trial.

---

[10] In order to facilitate any later exchange of objections, the Parties have agreed that each Party's preliminary list of exhibits may designate up to 500 exhibits to which the opposing party would be required to provide objections, if any, by November 21, 2018.

1   *FTC's Position*

2          Qualcomm has informed the FTC that it intends to introduce at trial evidence from

3   Qualcomm's confidential files that post-dates the March 30, 2018 close of fact discovery, beyond

4   the two license agreements that are the subject of the FTC's pending motion to exclude portions

5   of Prof. Nevo's proposed testimony.  ECF No. 790.  As stated in the FTC's pending motion,

6   Qualcomm should not be permitted to introduce at trial cherry-picked evidence from its

7   confidential files that has not been the subject of full discovery.  FTC Nevo Reply, ECF No. 889,

8   at 3-4.  Qualcomm argues that this problem can be cured by requiring the FTC to identify

9   supplemental discovery that would be needed on the topics on which Qualcomm plans to

10  introduce post-discovery evidence.  But it is now too late to conduct the discovery that would be

11  required to probe the post-discovery evidence that Qualcomm seeks to introduce.  In any event,

12  further discovery is not needed to resolve the FTC's claims that the conduct challenged in this

13  case violates the FTC Act and to order any appropriate equitable relief.

14         a.      The FTC's Request for Equitable Relief Does Not Require Further Discovery

15         In this case, the FTC alleges that Qualcomm has violated the FTC Act over a period of

16  years through a series of inter-related and long-standing policies and actions, and seeks equitable

17  relief that would prevent Qualcomm from engaging in the challenged conduct in the future.  FTC

18  Compl., ECF No. 1, at 32.  Qualcomm suggests that the Court may not issue a forward-looking

19  injunction without allowing the defendant to present evidence that post-dates the close of fact

20  discovery.  That is not so.  If the FTC establishes at trial that Qualcomm violated the FTC Act in

21  the past, the Court may issue an injunction if the illegal conduct is "ongoing or likely to recur."

22  *FTC v. Evans Prods. Co.*, 775 F.2d 1084, 1087 (9th Cir. 1985).[11]  The Court can make that

23  determination based upon the existing discovery record, and is not obliged to either permit

24

25  [11] As set forth in the FTC's pending motion to exclude Prof. Nevo's testimony, past unlawful
26  conduct is "highly suggestive of the likelihood of future violations," *CFTC v. Yu*, No. 12-cv-
    3921-YGR, 2012 WL 3283430, at *4 (N.D. Cal. Aug. 10, 2012) (quoting *CFTC v. Hunt*, 591
27  F.2d 1211, 1220 (7th Cir. 1979)), and in a government antitrust case, "all doubts as to the remedy
    are to be resolved in [the government's] favor." *United States v. E.I. du Pont de Nemours & Co.*,
28  366 U.S. 316, 334 (1961).  ECF 889, at 7.

1    discovery to drag on up to the eve of trial or to consider evidence proffered by Qualcomm that

2    has not been fairly explored through discovery.

3           The cases that Qualcomm cites below do not support the proposition that further discovery

4    is needed in this case and did not address discovery at all.  Qualcomm's cited precedent involves

5    conduct that, unlike the conduct here, had ceased when the complaint was filed.  *See, e.g., FTC v.*

6    *Evans Prods.*, 775 F.2d at 1087 ("Evans' alleged misrepresentations ceased in 1982 long before

7    the FTC's complaint was filed on January 11, 1985"); *FTC v. AbbVie Inc.*, No. 14-5151, 2018

8    WL 3830533, at *35 (E.D. Pa. June 29, 2018) (finding that defendant's two sham lawsuits,

9    concluded before the FTC's complaint was filed, did not establish a pattern or practice of filing

10   sham litigation).[12]  The courts in these cases therefore did not address whether post-discovery

11   evidence was required to issue an injunction.  Here, in contrast, evidence at trial will establish that

12   the core challenged conduct—including Qualcomm's "no license-no chips" policy and its refusal

13   to license competitors—is ongoing.  *See FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 347

14   (9th Cir.1989) (affirming injunction where defendant continued to engage in challenged

15   practices).  Moreover, the FTC is prepared to show at trial a cognizable danger of recurrence of

16   Qualcomm's use of market power in modem chips to leverage non-FRAND license terms.  This

17   is enough for the Court to enjoin future violations of the FTC Act.  *See F.T.C. v. Medlab, Inc.*,

18   615 F. Supp. 2d 1068, 1082 (N.D. Cal. 2009).[13]

19          Indeed, Qualcomm provides no authority—and none appears in the Federal Rules—

20

---

21   [12] In *FTC v. Merch. Servs. Direct, LLC*, No. 13-CV-0279-TOR, 2013 WL 4094394, at *3 (E.D.

22   Wash. Aug. 13, 2013), the Court denied a temporary restraining order sought at the outset of
     litigation and directed the parties to propose a schedule for a preliminary injunction hearing.  The

23   court subsequently entered a Stipulated Order resolving the case, which included injunctive relief.
     *See FTC v. Merch. Servs. Direct, LLC*, No. 13-CV-0279-TOR, 2014 WL 12796213 (E.D. Wash.

24   Nov. 25, 2014); *see also* Stipulation and Order,

25   https://www.ftc.gov/system/files/documents/cases/141125merchantstip.pdf.
     [13] Qualcomm's reliance on *Los Angeles News Service v. CBS Broadcasting, Inc.*, 305 F.3d 924,

26   930 (9th Cir. 2002), is misplaced.  *See* FTC Nevo Reply, ECF No. 889, at 5.  And in *Whittaker*
     *Corp. v. Execuair Corp.*, 736 F.2d 1341, 1347-48 (9th Cir. 1984), the Court reversed an order

27   denying plaintiff's request to admit into evidence documents obtained from the defendant through
     discovery in a separate action between the parties.  In contrast, here Qualcomm is seeking to

28   admit its *own* documents created after the close of fact discovery.

1   requiring discovery to be refreshed up to the eve of trial in actions in which equitable relief is

2   sought.  And if, as Qualcomm contends, the mere fact that the FTC seeks equitable relief provides

3   an automatic justification for supplementing the evidentiary record closer to trial, it could have

4   built additional time to conduct discovery on current conditions into the case schedule at the

5   outset of this litigation.  *See* April 12, 2018 Joint Case Management Statement at Exhibit A

6   (Qualcomm scheduling proposal, with fact discovery closing in November 2018 and trial

7   approximately eight months later).

8          b.     It Is Now Too Late to Conduct Meaningful Discovery

9          The FTC has consistently stated that it has been willing to consider proposals to reopen

10  discovery, but it is now too late to conduct even targeted further discovery, particularly given the

11  breadth of the subject matters that Qualcomm seeks to address through post-discovery evidence.

12         By way of background, nearly a year ago, the Parties informed the Court that "Qualcomm

13  believes that recent competitive conditions will be relevant to the defenses it plans to assert" and

14  that they were "negotiating the scope of any potential production relating to recent competitive

15  conditions." Joint Case Management Statement, Nov. 8, 2017, ECF No. 286.  At that time, the

16  FTC had expressed "concern[s] that such documents will not be produced in a timely manner that

17  is consistent with the discovery schedule, and that the breadth of any additional production may

18  prejudice the FTC's ability to conduct discovery regarding Qualcomm's defenses." *Id*.  The

19  Parties then proceeded to negotiate the scope of a limited refresh production of documents from

20  agreed-upon custodians through September 2017, though they disagreed about the necessary

21  timing of the refresh production and presented their competing scheduling proposals to the Court

22  on December 8, 2017.  ECF No. 378.

23         In addressing the need for future refresh productions, the FTC explained its position that

24  "whether the Court should, in its discretion, reopen discovery at some later date based on events

25  that have not yet occurred will depend on the relevance of the additional discovery, the time to

26  trial, and whether a party will be prejudiced, among other factors."  ECF No. 378.[14]  The Parties

27  ────────────────────

28  [14] Qualcomm references below a proposal that it claims the FTC made during a December 1 meet

1   then "agreed to meet and confer regarding the need for a further refresh of discovery closer to

2   trial and the scope of any such refresh." *Id*.  At that time, the Court ordered Qualcomm to

3   complete its production of refresh documents to the FTC by December 18, 2017, ordering that all

4   fact discovery in this matter conclude on March 30, 2018.  Order Amending Case Schedule, Dec.

5   13, 2017, ECF No. 389.

6          Until last week, the FTC had not heard from Qualcomm about post-discovery evidence in

7   nearly eight months.  While the Parties have met and conferred regarding various discovery

8   subjects up to and until the close of discovery, there has been no discussion of any potential

9   further discovery refresh since February 2018.  During the week of October 8, 2018, following

10  the submission of the FTC's pending motion to exclude portions of Prof. Nevo's testimony that

11  rely on license agreements produced after the close of discovery, Qualcomm identified a series of

12  post-discovery facts that it believes should be presented to the Court, including recent Qualcomm

13  license agreements and information relating to Qualcomm's market power.  Qualcomm advised

14  the FTC that the FTC should propose further discovery if it believes it needs more information

15  about the post-discovery evidence that Qualcomm plans to introduce.

16         The Court has clarified that any evidence presented at trial must derive from "full

17  discovery," and not "cherry picked custodians."  Hr'g Tr. 27:16 17.  It is now too late to conduct

18  even targeted further discovery that meets the Court's standard.  Under the Parties' agreed-to

19  schedule, *supra*, the initial exchange of exhibit lists is scheduled for November 8, and under the

20  Guidelines, the Parties must exchange stamped exhibits on November 29.  The Parties'

21  experience with discovery in this case demonstrates that it is not possible to conduct in mere

22  weeks the party and likely third-party discovery necessary to provide a sufficient post-discovery

23  evidentiary record.

24         This is particularly true given the broad topics on which Qualcomm states that the record

25  should be supplemented: (1) OEMs' alleged reduced reliance on Qualcomm, which bears on

26  _____

27  and confer, but the FTC's position was explicitly set forth in the December 8 filing.  The FTC has
    never proposed—nor agreed to—a refresh of discovery on broad and complex topics, the scope of
28  which would not be negotiated until October 2018.

1    Qualcomm's market power, and (2) recent Qualcomm license agreements.  Documents and data

2    relating to OEM purchasing decisions over time and related market power changes, if any, are the

3    subject of many hundreds of pages of disclosed expert opinion in this case.  Conducting

4    additional discovery on such fact-intensive topics would require not only extensive data analysis,

5    but also substantial third-party discovery (including document collections and depositions) from

6    OEMs regarding their purchasing decisions.

7         Similarly, discovery regarding Qualcomm's recent license agreements would require

8    discovery into the context in which each license was negotiated, including the leverage brought to

9    bear by Qualcomm in negotiations.  This endeavor would also be highly fact-specific, requiring

10   discovery into the chip-supply relationships and needs of the licensees, and other information

11   about licensees' motivation to enter into agreements with Qualcomm.  Such discovery would

12   require the assessment of documents and testimony from a range of Qualcomm employees, as

13   well as third-party discovery from licensees.  And while Qualcomm presupposes that recent

14   agreements were "demonstrably unaffected by any chip leverage," establishing whether license

15   agreements were in fact influenced by chip supply or other business considerations would require

16   substantial detailed discovery.[15]

17        This does not mean, however, that the FTC seeks to conduct the trial with blinders on.

18   Either party may, if it wishes, present evidence to the Court that is equally accessible to both

19   parties—including, for example, evidence from public sources regarding recent events.  But the

20   issue here is whether Qualcomm may introduce cherry-picked evidence from Qualcomm's own

21   confidential files where there is no longer sufficient time to conduct discovery regarding that

22   evidence.  *See* FTC Nevo Reply, ECF No. 889, at 4, 7.

23        c.   It is not the FTC's Burden to Propose Supplemental Discovery

24        Finally, the FTC disagrees with Qualcomm's suggestion that it is incumbent upon the

25   FTC to identify the evidence it believes is necessary to probe the post-discovery facts from

26

27   [15] *See also* FTC Nevo Mot., ECF 790, at 2 n.3 (post-discovery licenses appear to include terms covering multiple standards—where licensees' reliance on Qualcomm for the contemporaneous

28   supply of modem chips is outside of the discovery record).

1   Qualcomm's confidential files that Qualcomm seeks to introduce at trial.  Rather, if Qualcomm

2   had intended to rely on post-discovery evidence, it was Qualcomm's obligation to identify that

3   evidence, propose supplemental discovery, and seek the Court's leave to conduct that additional

4   discovery.  Qualcomm has not done so.  And while it now seeks a process for establishing a

5   supplemental discovery protocol, it is simply too late to conduct further discovery, as set forth

6   above.  The FTC thus respectfully requests that the Court clarify that Qualcomm will not be

7   permitted to introduce at trial cherry-picked evidence from its confidential files that has not been

8   the subject of full discovery.

9   ***Qualcomm's Position***

10   The FTC has asked the Court to enter a prospective injunction, which is something the

11   Court cannot do on a stale record.  The FTC concedes above, as it must, that it has to "show at

12   trial a cognizable danger of recurrence" of Qualcomm's alleged "use of market power in modem

13   chips to leverage non-FRAND license terms" in the future.  The FTC asserts that it is prepared to

14   make this showing on the basis of the current discovery record, but it improperly seeks to deny

15   Qualcomm any opportunity to rebut the FTC's purported showing with evidence of more recent

16   events that bear directly on this issue.  For example, the FTC apparently intends to object to

17   testimony and other evidence from Qualcomm showing that the Apple iPhone models launched in

18   September and October 2018 ***do not use*** any Qualcomm baseband processors.  But it would be

19   plain error for the Court to find after trial that Qualcomm could in the future "leverage" market

20   power in the baseband processor markets alleged by the FTC, without even considering that

21   Apple and others have determined that they have alternatives to purchasing from Qualcomm.

22   Contrary to the FTC's assertions above, however, Qualcomm does not seek to unilaterally

23   introduce "cherry-picked evidence from its confidential files".  Rather, Qualcomm repeatedly has

24   offered to discuss with the FTC the scope of any supplemental discovery that the FTC believes

25   would be necessary to ensure the fair presentation of such evidence while maintaining the trial

26   schedule established by the Court.

27   Although the scope of the FTC's request that the Court "clarify that Qualcomm will not be

28   permitted to introduce at trial cherry-picked evidence from its confidential files" is not entirely

1   clear, the FTC apparently seeks to preclude Qualcomm from offering relevant documents that

2   were not in existence until after the close of fact discovery, including documents that already

3   have been produced to the FTC, and the FTC may also be seeking to bar Qualcomm from

4   offering *any* evidence (such as testimony from Qualcomm or third-party employees) concerning

5   post-discovery events unless Qualcomm can show that such evidence is "equally accessible to

6   both parties".[16]  But because the FTC has requested forward-looking injunctive relief, the Court

7   cannot assess Qualcomm's conduct based on an outdated record that no longer reflects current

8   conditions in the cellular industry.  *See FTC v. Evans Prods. Co*., 775 F.2d 1084, 1087 (9th Cir.

9   1985) (holding that preliminary injunctive relief was precluded where the anticompetitive conduct

10  was neither ongoing nor likely to recur, even if the defendant had engaged in anticompetitive

11  conduct in the past); *FTC v. AbbVie Inc.*, No. 14-5151, 2018 WL 3830533, at *35 (E.D. Pa. June

12  29, 2018) (denying the FTC's request for injunctive relief because "the FTC has presented no

13  evidence that defendants are currently violating antitrust laws or about to violate antitrust laws");

14  *FTC v. Merch. Servs. Direct, LLC*, No. 13-CV-0279-TOR, 2013 WL 4094394, at *3 (E.D. Wash.

15  Aug. 13, 2013) (declining to enter injunctive relief because the FTC's evidence about the

16  defendant's conduct was two years old and the FTC did not present evidence of likely "future

17  violations of the FTC Act").[17]

18          The FTC seeks to distinguish this precedent on the basis that "core challenged conduct—

19  including Qualcomm's 'no license-no chips' policy and its refusal to license competitors—is

---

[16] It would be error for the Court to conclude that any evidence created after the close of fact discovery is necessarily inadmissible at trial for that reason alone.  *See Los Angeles News Service v. CBS Broad., Inc.*, 305 F.3d 924, 933-34 (9th Cir. 2002); *Whittaker Corp. v. Execuair Corp.*, 736 F.2d 1341, 1347 (9th Cir. 1984).

[17] *FTC v. Medlab*, cited by the FTC above, does not support its argument because there the defendant had offered "no evidence to rebut the FTC's claim that he is likely to continue" making misrepresentations about a product, in violation of the FTC Act.  615 F. Supp. 2d 1068, 1082 (N.D. Cal. Apr. 21, 2009).  Accordingly, the court concluded that there was no factual dispute that "there is a cognizable danger that he will persist in these violations" and therefore granted summary judgment to the FTC.  *Id.*  The court did not suggest that the defendant should be precluded from offering contemporaneous evidence bearing on that issue, as the FTC suggests here.  Neither *CFTC v. Yu* nor *United States v. E.I. du Pont de Nemours*, also cited by the FTC, addressed the FTC's burden of proof in cases governed by the FTC Act.

1  ongoing", but the FTC ducks the critical question of whether Qualcomm's alleged *market power*

2  is "ongoing".  This case involves a purported monopoly in certain types of baseband processors.

3  To be sure, the "core conduct" cited by the FTC includes Qualcomm's practice of not selling

4  modem chips to handset manufacturers that are not licensed to, and therefore infringe,

5  Qualcomm's cellular SEPs.  But, by the FTC's own admission, this practice standing alone is ***not***

6  sufficient to establish that Qualcomm "is violating, or is about to violate" the Federal Trade

7  Commission Act, as the FTC must show to obtain an injunction.  15 U.S.C. § 53(b)(1).[18]  As the

8  FTC has argued, "[c]ore to the FTC's theory is Qualcomm's ability *to leverage its modem chip*

9  *monopoly* in licensing negotiations".  (Nevo Mot. at 3 (ECF No. 790) (emphasis added); *see also*

10  Compl. ¶¶ 37, 47, 86, 87; Opening Report of FTC proposed expert Prof. Carl Shapiro ¶ 260

11  ("Fundamentally, Qualcomm's no-license/no-chip policy *involves the use of Qualcomm's market*

12  *power in modem chips* to raise the royalty on its cellular SEPs above a reasonable level")

13  (emphasis added).)  Without proof that Qualcomm currently has a "modem chip monopoly", the

14  FTC cannot establish that Qualcomm has any "leverage" in licensing negotiations to obtain

15  higher royalties.  Deposition of FTC proposed expert Richard Donaldson at 187:11-13 ("If

16  Qualcomm wasn't providing anything needed by the OEM, then they couldn't use the threat of

17  nonsupply as leverage.").

18        To provide the Court with updated information necessary to consider the FTC's request

19  for a prospective injunction—without upsetting the Court's trial schedule—Qualcomm has sought

20  to meet and confer with the FTC about appropriate means for supplementing the record with

21  evidence of events that occurred after the close of fact discovery.  Until recently, the FTC has

22  taken the position that it would be unproductive to discuss supplemental discovery "based on

23  events that have not yet occurred" but it had agreed "to meet and confer regarding the need for a

24

---

25  [18] For this reason, *FTC v. World Wide Factors* does not support the FTC's argument.  In that case,
the FTC proved that the defendants were "attempting to continue their fraudulent activities" that
26  would constitute violations of the FTC Act, and the court held that these "attempts to engage in
further fraudulent activity" were a sufficient basis to grant an injunction.  882 F.2d 344, 347 (9th
27  Cir. 1989).  But, unlike the "fraudulent activity" at issue in *World Wide Factors*, Qualcomm's
chip supply practice does not even arguably violate the FTC Act in the absence of the market
28  power the FTC has conceded is core to its case.

1    further refresh of discovery closer to trial".  (Dec. 8, 2017 Joint Case Management Statement

2    at 5-6 (ECF No. 378).)  During a meet and confer on December 1, 2017, the FTC itself suggested

3    that the window between summary judgment and the final pretrial conference could be an

4    appropriate time to engage in supplemental discovery.  As described below, Qualcomm has

5    identified to the FTC specific, recent events that it believes should be part of the record, and it has

6    offered to provide reasonable discovery the FTC believes it needs regarding those events.

7    Qualcomm has also asked the FTC to identify whether there are other recent events that the FTC

8    believes should be part of the record.  Rather than attempt to negotiate a reasonable scope of

9    discovery to permit the presentation of an up-to-date record (without "cherry-picking"), the FTC

10   now takes the position that it is "not possible" to conduct any supplemental discovery before trial

11   and that the Court must therefore ignore critical facts occurring since the close of fact discovery.

12        In particular, Qualcomm has proposed the following subjects for supplementation of the

13   record.  *First*, the record should include recent evidence demonstrating that major OEMs,

14   including Apple, have reduced or eliminated their purchases of baseband processors from

15   Qualcomm for their so-called "flagship" phones and for phones that implement CDMA and LTE

16   standards.  For example, it has been widely reported that Apple has sourced cellular modems

17   exclusively from Intel, and not from Qualcomm, for all of its 2018 iPhone models.  This

18   information bears directly on essential elements of the FTC's claims, including whether

19   Qualcomm has market power in alleged markets for CDMA and "premium LTE" modem chips

20   (Compl. ¶ 131) and whether Qualcomm's challenged conduct has excluded its competitors from

21   supplying cellular phone manufacturers, especially Apple, which the FTC has deemed a

22   "particularly important" cellular phone manufacturer (Compl. ¶¶ 3(d), 136).  Contrary to its

23   assertion that it does not expect the Court to "conduct the trial with blinders on", the FTC

24   apparently intends to object to the presentation of evidence by Qualcomm on these critical facts.

25        *Second*, the record should include evidence demonstrating that major handset

26   manufacturers have recently reached license agreements with Qualcomm, during a time when

27   Qualcomm demonstrably lacks market power in any relevant alleged market.  For example,

28

JOINT CASE MANAGEMENT STATEMENT
Case No. 5:17-cv-00220-LHK-NMC

1   Qualcomm has recently executed license agreements concerning 5G technologies when

2   Qualcomm does not supply 5G modem chips in commercial quantities and no handset

3   manufacturer sells 5G devices.  Accordingly, such license agreements were demonstrably

4   unaffected by any alleged market power; there is no market for 5G modem chips at this point.[19]

5   Evidence of these recent license agreements—which have all been produced and identified to the

6   FTC—is directly responsive to the FTC's contentions that the "anticompetitive effects from the

7   Qualcomm policies at issue in this case" will "continue into the future".  *See, e.g.*, Rebuttal

8   Report of Prof. Carl Shapiro ¶ 113; *see also* Opening Report of Prof. Carl Shapiro ¶ 313 (opining

9   that "though recent erosion of Qualcomm's monopoly power in those markets might eventually

10  diminish Qualcomm's ability to implement" the challenged practices, "the industry's imminent

11  transition to 5G standards may afford Qualcomm an opportunity to renew and fortify that

12  ability").  The FTC asserts that it would require "substantial detailed discovery" to determine

13  whether the agreements "were in fact influenced by chip supply".  However, as noted, there is

14  currently no commercial market for 5G chips or 5G cellular devices, and Qualcomm has in any

15  event offered to discuss how to conduct reasonable discovery concerning whether the agreements

16  were "influenced by chip supply" (such as by limiting the scope to license agreements with key

17  OEMs selected by both Parties).  In any event, the Court could not enter injunctive relief

18  regarding 5G license agreements without this actual evidence of 5G license agreements.

19        Qualcomm believes that the Court should not accept the FTC's invitation to exclude all

20  evidence of events post-dating the close of fact discovery (unless "equally accessible to both

21  parties").  Qualcomm has been and is prepared to engage in discovery of relevant recent events to

22  avoid the FTC's "cherry-picking" concerns.  The Parties should be ordered to promptly submit an

23  agreed discovery protocol for the Court's approval (with any specific disputes noted for the

24  Court's resolution) addressing (i) any supplemental discovery that the FTC believes is necessary

25  to ensure the fair presentation of this evidence and other information the FTC may wish to present

26  regarding recent competitive conditions in the cellular industry, and (ii) how to conduct a

27

28

[19] Two of these 5G agreements are addressed in the FTC's Motion to Exclude Expert Testimony of Professor Aviv Nevo.  (ECF No. 790.)

1   reasonable scope of supplemental discovery without interfering with the trial schedule established

2   by the Court.  Given the importance of this issue, if the Court is inclined to consider the FTC's

3   request to exclude this critical evidence, Qualcomm respectfully requests the opportunity to fully

4   brief the issue in connection with an expedited motion.

5

6   Dated:  October 24, 2018

7                                                              Respectfully submitted,

8                                                              FEDERAL TRADE COMMISSION,

9

10                                                             *s/ Jennifer Milici*_____
                                                              Jennifer Milici

11                                                            J. Alexander Ansaldo
                                                              Joseph R. Baker

12                                                            Elizabeth A. Gillen
                                                              Daniel Matheson

13                                                            Mark Woodward
                                                              Federal Trade Commission

14                                                            600 Pennsylvania Avenue, N.W.

15                                                            Washington, D.C. 20580
                                                              (202) 326-2912; (202) 326-3496 (fax)

16                                                            jmilici@ftc.gov

17                                                            ***Attorneys for Federal Trade Commission***

18

19

20                                                            CRAVATH, SWAINE & MOORE LLP

21

22                                                  By:  *s/ Gary A. Bornstein*_____

23

24                                                            Gary A. Bornstein
                                                              Yonatan Even

25                                                            CRAVATH, SWAINE & MOORE LLP
                                                              Worldwide Plaza

26                                                            825 Eighth Avenue
                                                              New York, NY 10019

27                                                            Tel: (212) 474-1000
                                                              Fax: (212) 474-3700

28                                                            gbornstein@cravath.com
                                                              yeven@cravath.com

1

Robert A. Van Nest
Eugene M. Paige
2
Justina Sessions
KEKER, VAN NEST & PETERS LLP
3
633 Battery Street
San Francisco, CA 94111-1809
4
Telephone: (415) 391-5400
Facsimile: (415) 397-7188
5
rvannest@keker.com
epaige@keker.com
6
jsessions@keker.com

7
Richard S. Taffet
MORGAN, LEWIS & BOCKIUS LLP
8
101 Park Avenue
New York, NY 10178-0060
9
Tel: (212) 309-6000
Fax: (212) 309-6001
10
richard.taffet@morganlewis.com

11
Willard K. Tom
MORGAN, LEWIS & BOCKIUS LLP
12
1111 Pennsylvania Ave. NW
Washington, DC 20004-2541
13
Tel: (202) 739-3000
Fax: (202) 739 3001
14
willard.tom@morganlewis.com

15
Donn P. Pickett
Geoffrey T. Holtz
16
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
17
San Francisco, CA 94105-1126
Tel: (415) 442-1000
18
Fax: (415) 442-1001
donn.pickett@morganlewis.com
19
geoffrey.holtz@morganlewis.com

20
***Attorneys for Defendant Qualcomm
Incorporated***

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## FILER'S ATTESTATION

I, Gary A. Bornstein, am the ECF user whose identification and password are being used to file this Joint Case Management Statement.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that the signatories on this document have concurred in this filing.

*s/ Gary A. Bornstein*
Gary A. Bornstein