1          UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3               SAN JOSE DIVISION

4

5

   FEDERAL TRADE COMMISSION,        )  C-17-00220 LHK
6                                    )
                   PLAINTIFF,        )  SAN JOSE, CALIFORNIA
7                                    )
              VS.                    )  OCTOBER 24, 2018
8                                    )
   QUALCOMM INCORPORATED, A          )  PAGES 1-61
9    DELAWARE CORPORATION,           )
                                     )
10                 DEFENDANT.        )
   _____ )
11

12

13            TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE LUCY H. KOH
14           UNITED STATES DISTRICT JUDGE

15

16   A P P E A R A N C E S:

17   FOR THE PLAINTIFF:    FEDERAL TRADE COMMISSION
                           BY:  JENNIFER MILICI
18                         600 PENNSYLVANIA AVENUE, NW
                           WASHINGTON, D.C.  20580
19

20

21           APPEARANCES CONTINUED ON NEXT PAGE

22

23   OFFICIAL COURT REPORTER:   LEE-ANNE SHORTRIDGE, CSR, CRR
                                CERTIFICATE NUMBER 9595
24

25        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
             TRANSCRIPT PRODUCED WITH COMPUTER

```
 1

 2      APPEARANCES (CONTINUED)

 3

 4      FOR THE DEFENDANT:      KEKER, VAN NEST & PETERS
                                BY:  ROBERT A. VAN NEST
 5                              633 BATTERY STREET
                                SAN FRANCISCO, CALIFORNIA  94111
 6

 7                              CRAVATH, SWAINE & MOORE
                                BY:  GARY A. BORNSTEIN
 8                                   MICHAEL BRENT BYARS
                                825 EIGHTH AVENUE
 9                              NEW YORK, NEW YORK  10019

10      ALSO PRESENT:          KURT KJELLAND

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1    SAN JOSE, CALIFORNIA                OCTOBER 24, 2018

 2                    P R O C E E D I N G S

 3         (COURT CONVENED AT 3:32 P.M.)

 4              THE COURT:  GOOD AFTERNOON AND WELCOME.

 5              MR. VAN NEST:  GOOD AFTERNOON, YOUR HONOR.

 6              THE CLERK:  PLEASE BE SEATED.

 7         YOUR HONOR, CALLING CASE 17-CV-00220, FEDERAL TRADE

 8    COMMISSION VERSUS QUALCOMM, INCORPORATED.

 9              COUNSEL, PLEASE STATE YOUR APPEARANCES.

10              MS. MILICI:  JENNIFER MILICI FOR THE FEDERAL TRADE

11    COMMISSION.

12              MR. VAN NEST:  GOOD AFTERNOON, YOUR HONOR.

13         BOB VAN NEST OF KEKER, VAN NEST & PETERS FOR QUALCOMM.

14    AND I'M HERE WITH GARY BORNSTEIN AND BRENT BYARS FROM THE

15    CRAVATH FIRM IN NEW YORK, ALSO FOR QUALCOMM.

16         AND OUR CLIENT, KURT KJELLAND IS HERE IN THE COURTROOM AS

17    WELL.

18         GOOD AFTERNOON.

19              THE COURT:  GOOD AFTERNOON, AND WELCOME TO EVERYONE.

20    AND THANK YOU FOR YOUR PATIENCE WITH MY CHANGING THE TIME OF

21    THE CMC.  SO THANK YOU.

22         SO LET'S GO THROUGH YOUR JOINT CASE MANAGEMENT STATEMENT.

23    SO I GUESS WE'LL START WITH MOTIONS IN LIMINE.

24         SO CURRENTLY WE HAVE QUALCOMM'S MOTION TO STRIKE FTC'S

25    EXPERT -- IS IT AKL?  HOW DO YOU PRONOUNCE THAT, A-K-L?
```

```
 1            MS. MILICI:  AKL.

 2            THE COURT:  AKL, OKAY.

 3        AND THE DAUBERT AGAINST YOUR EXPERT, DONALDSON; AND THEN

 4    FTC'S DAUBERT AS TO SNYDER; AND IT'S CALLED A DAUBERT, BUT IT'S

 5    KIND OF A 403 MOTION AS TO FTC'S EXPERT NEVO.

 6        SO IN ADDITION TO THOSE THAT ARE FULLY BRIEFED, WHAT ABOUT

 7    TWO ADDITIONAL MOTIONS IN LIMINE PER SIDE?  YOU SAID THREE OR

 8    FEWER.  I'D LIKE TO GO FEWER.  IS THAT ALL RIGHT?

 9            MR. VAN NEST:  I THINK -- I THINK IF THE COURT COULD

10    TOLERATE IT, SINCE THE BRIEFING IS SO SHORT ON THESE -- IT'S A

11    COMPLICATED CASE GOING BACK A LONG TIME.  THREE WOULD BE, I

12    THINK, HARD FOR US TO FIT IN, BUT TWO WOULD BE REALLY, REALLY

13    TOUGH.

14            THE COURT:  ALL RIGHT.  THREE IS FINE.  SO YOU'RE

15    SAYING THREE IN ADDITION TO THE TWO YOU'VE ALREADY FILED?

16            MR. VAN NEST:  RIGHT.

17            THE COURT:  OKAY, THAT'S FINE.

18            MR. VAN NEST:  THANK YOU, YOUR HONOR.

19            THE COURT:  THAT'S FINE.

20        NOW, DID I PREVIOUSLY SET PAGE LIMITS?  I COULDN'T FIND IT

21    IN ANY OF THE CASE MANAGEMENT ORDERS.

22            MR. BORNSTEIN:  YOUR HONOR, IT'S OUR UNDERSTANDING

23    THAT IT'S A THREE PAGE LIMIT UNDER THE BENCH TRIAL GUIDELINES

24    THAT IS YOUR HONOR'S STANDING ORDER.

25            THE COURT:  ALL RIGHT.  THREE AND THREE AND NO REPLY;
```

```
 1        CORRECT?
 2                  MR. BORNSTEIN:  THAT'S OUR UNDERSTANDING, YES.
 3                  THE COURT:  ALL RIGHT.  LET'S KEEP THAT.  THANK YOU.
 4        OKAY.  SO THAT TAKES CARE OF MOTIONS IN LIMINE.
 5            ALL RIGHT.  LET'S TALK ABOUT EXHIBITS.  FIRST THE NUMBER,
 6        AND I DO -- I SAW THAT YOU HAD, I THINK, A FOOTNOTE ABOUT A
 7        JOINT EXHIBIT LIST.  I WOULD REALLY ENCOURAGE YOU, IF YOU CAN,
 8        IF YOU BOTH THINK YOU'LL NEED TO USE SOMETHING, TO HAVE A JOINT
 9        ONE.
10            SO I'M HOPING THAT WE WON'T HAVE SO MUCH PAPER WITH A LOT
11        OF DUPLICATIVE EXHIBITS.
12                  MR. VAN NEST:  WE'RE WORKING ON THAT, YOUR HONOR.
13                  THE COURT:  GREAT.
14                  MR. VAN NEST:  OBVIOUSLY WITH THIS MUCH TIME AND THIS
15        MANY LICENSE AGREEMENTS --
16                  THE COURT:  UM-HUM.
17                  MR. VAN NEST:  -- IT COULD BE VOLUMINOUS.  SO WE'RE
18        WORKING ON A JOINT EXHIBIT LIST, AND THERE MAY BE SOME AREAS
19        WHERE WE COULD SUBMIT A SUMMARY, TOO, UNDER EVIDENCE CODE 1006,
20        A SUMMARY OF VOLUMINOUS DOCUMENTS.
21            BUT WE'RE WORKING ON BOTH OF THOSE, AND WE'RE HOPING TO
22        HAVE AT LEAST SOME EXHIBITS SUBMITTED JOINTLY AND A JOINT LIST
23        THAT ARE PRE-ADMITTED.
24                  THE COURT:  ALL RIGHT.  THANK YOU.  THANK YOU.  I
25        MUCH APPRECIATE THAT.  IT'LL MAKE THINGS SIMPLER TO NOT HAVE
```

1    DUPLICATIVE COPIES OF THE SAME DOCUMENTS.

2          MR. VAN NEST:  WE AGREE.

3          THE COURT:  LET'S TALK ABOUT THE NUMBER.  I AM

4    PLANNING TO LIMIT -- I HAVE TO SAY, 1,000 EXHIBITS IS REALLY

5    SOUNDING JUST UNMANAGEABLE FOR MY CHAMBERS AND ME.  SO I WAS

6    HOPING TO REDUCE THOSE NUMBERS, AND WHAT I WAS THINKING IS

7    SETTING A LIMIT ON YOUR PRELIMINARY DISCLOSURES ON

8    NOVEMBER 8TH; THEN SETTING A LIMIT ON YOUR ADDITIONAL

9    DISCLOSURES ON NOVEMBER 21; THEN ASKING YOU TO SORT OF NARROW

10   IT DOWN BY THE TIME OF THE PRETRIAL CONFERENCE AND NARROW IT

11   FURTHER AT TRIAL SO WE HAVE SORT OF A, A FILTER, BECAUSE AS WE

12   GET CLOSER TO THE TRIAL DATE, YOU MAY HAVE, YOU KNOW, A MORE

13   PRECISE VIEW OF EXACTLY WHAT YOU NEED THE CLOSER WE GET TO THE

14   TRIAL DATE.

15         MR. VAN NEST:  THAT -- I THINK YOUR CONCLUSION IS

16   ABSOLUTELY RIGHT, YOUR HONOR.

17         THE COURT:  UM-HUM.

18         MR. VAN NEST:  AND I WOULD ASK THAT THE COURT INDULGE

19   US.  YOU'VE GOT SOPHISTICATED COUNSEL ON BOTH SIDES.  IT'S

20   EARLY, I THINK, TO PREDICT NUMBERS FOR A COUPLE REASONS.

21         ONE, GIVEN THE LONG SCOPE OF TIME INVOLVED, THERE ARE

22   REALLY LITERALLY THOUSANDS OF LICENSE AGREEMENTS INVOLVED HERE.

23         WE ARE EXCHANGING LISTS ON NOVEMBER THE 8TH, AND THAT'LL

24   GIVE US BOTH A BETTER IDEA OF WHAT'S IN PLAY BOTH WITH

25   WITNESSES AND EXHIBITS, AND THEN WE HAVE A SUPPLEMENTAL

1      EXCHANGE, I THINK YOU SAW OUR SCHEDULE, FOR THE 26TH.

2              THE COURT:  SURE.

3              MR. VAN NEST:  I'D ASK THE COURT TO LET US CONTINUE

4      MEETING AND CONFERRING.  A LOT DEPENDS ON HOW MANY EXHIBITS WE

5      CAN GET ON A JOINT LIST, BECAUSE OBVIOUSLY IF WE HAVE SO MANY

6      LICENSES AND WE CAN AGREE ON A NARROWED SET, WHICH I'M HOPEFUL

7      WE CAN --

8              THE COURT:  UM-HUM.

9              MR. VAN NEST:  -- AND WE PUT THOSE ON A JOINT LIST

10     AND PRE-AGREE TO THOSE, IT MIGHT OBVIATE THE NEED FOR A LOT OF

11     OTHERS.

12         BUT GIVEN THE NUMBER OF LICENSE AGREEMENTS AND THE AMOUNT

13     OF TIME HERE, I'M REALLY AT A LOSS TO GIVE YOUR HONOR A GOOD

14     NUMBER THAT WON'T SCARE BOTH YOU AND ME.

15         WE KNOW, IN A TEN DAY TRIAL, THERE'S A LIMITED NUMBER WE

16     CAN ADMIT.  THAT'S A -- THAT'S CLEAR.

17             THE COURT:  UM-HUM.

18             MR. VAN NEST:  BUT I'D ASK YOUR HONOR TO INDULGE US

19     JUST A WHILE LONGER, LET US JOINTLY SUBMIT A PROPOSAL, AND

20     TAKING THE GUIDANCE YOU JUST GAVE US, I THINK WE COULD MAKE A

21     PROPOSAL ALONG THOSE LINES THAT WOULD WORK FOR US.  AND WE'LL

22     KNOW WHETHER WE CAN HAVE A JOINT LIST BY THEN AND HOW BIG IT IS

23     AND WHAT'S LEFT NOT ON THE JOINT LIST.

24         SO I'D ASK YOUR HONOR TO DEFER THE NUMBER GAME TODAY, BUT

25     WE GET THE IDEA THAT IT'S GOT TO BE A FUNNEL TOWARDS THE

1    PRETRIAL.

2            THE COURT:  WELL, MY CONCERN IS THAT 500 IS JUST, PER

3    SIDE -- 1,000 EXHIBITS FOR A TEN DAY TRIAL, THAT'S JUST --

4    THAT'S TOO MANY.  SO IF YOU START MORE FOCUSSED, I'M MORE

5    LIKELY TO END UP WHERE I'D LIKE TO BE, VERSUS STARTING WITH

6    1,000.

7            MR. VAN NEST:  BUT I -- REMEMBER -- REMEMBER, WE'VE

8    ALREADY AGREED THAT WE CAN DESIGNATE WHATEVER LISTS WE PROVIDE

9    EACH OTHER.

10           THE COURT:  UM-HUM.

11           MR. VAN NEST:  OUR THOUGHT WAS LET'S NOT LIMIT THE

12   LIST RIGHT OFF THE BAT, BUT LET'S TELL EACH OTHER, "HERE'S MY

13   TOP 500.  I NEED TO KNOW IF YOU OBJECT TO THESE.  AND IF YOU

14   DO, THEN, OKAY, THEN I'M ON NOTICE OF THAT."

15       I'M CONFIDENT THE LIST WILL GET WINNOWED DOWN.  BUT WE'RE

16   IN A SITUATION, ON THE DEFENSE SIDE, WHERE WE'RE NOT SURE WHICH

17   OF THE LICENSE AGREEMENTS ARE GOING TO BE ATTACKED OR FOCUSSED

18   ON IN THE TRIAL.

19           THE COURT:  UM-HUM.

20           MR. VAN NEST:  WE'LL KNOW THAT BETTER ON

21   NOVEMBER 8TH.

22       AND I KNOW, FROM OUR PERSPECTIVE, WE'D BE IN A MUCH BETTER

23   POSITION -- AND I HONESTLY THINK IT'S TRUE FOR MY COLLEAGUE,

24   TOO --

25           THE COURT:  YEAH.

1          MR. VAN NEST:  -- WE'LL BOTH BE IN A BETTER POSITION

2     TO GIVE YOU NUMBER ESTIMATES AFTER WE'VE AT LEAST EXCHANGED

3     PRELIMINARY LISTS, SUBMIT SOME VERY BRIEF WRITTEN JOINT

4     SUBMISSION TO YOUR HONOR WITH A PROPOSAL, AND THEN YOU CAN ACT

5     ON IT HERE WITHOUT A HEARING AND GIVE US GUIDANCE FOR THE

6     PRETRIAL.

7          BUT I THINK IT'S -- I THINK IT'S GOING TO BE -- TO MAKE

8     LIFE MORE DIFFICULT FOR US AND LESS PRACTICAL IF YOU SET A

9     NUMBER TODAY.

10          THE COURT:  UM-HUM.

11          MR. VAN NEST:  AND I'D JUST ASK YOU TO WAIT A LITTLE

12     WHILE LONGER UNTIL WE EXCHANGE THOSE INITIAL LISTS.

13          AND I DON'T THINK WE'LL BE INCONVENIENCING YOUR HONOR

14     BECAUSE, AGAIN, I'M COGNIZANT WHAT I CAN AND CAN'T DO IN A TEN

15     DAY TRIAL JUST WITH TIME LIMITS, WHICH IS ULTIMATELY GOING TO

16     NARROW THESE DOWN.

17          AND I DON'T REALLY THINK YOUR HONOR NEEDS TO GO THROUGH

18     THE EXERCISE OF DOING EXHIBIT OBJECTIONS AT THE PRETRIAL.  WE

19     OUGHT TO BE ABLE TO NARROW THE FOCUS OF WHAT WE HAVE TO DISCUSS

20     AND GET THIS CLEARLY TEED UP SO YOU'RE RULING ONLY ON THE KEY

21     DISPUTES ON EXHIBITS THAT WE'RE ACTUALLY GOING TO USE WITH LIVE

22     WITNESSES.

23          THE COURT:  WELL, I AGREE WITH THAT LAST PART.  I'M

24     GOING TO SET UP A HIGH PRIORITY OBJECTION PROCESS.

25          MR. VAN NEST:  GREAT.

1       THE COURT:  BUT THIS IS MY CONCERN:  I'M GOING TO GET

2   PRETRIAL STATEMENTS THAT ARE GOING TO BE -- YOU KNOW, YOUR

3   JOINT CASE MANAGEMENT STATEMENT IS, WHAT, 20 PAGES LONG.  AND

4   SO I'M CONCERNED I'M GOING TO GET A JOINT PRETRIAL STATEMENT

5   WITH, LIKE, TONS OF OBJECTIONS THAT THERE'S THIS ON YOUR LIST

6   OF 500 AND THAT ON YOUR LIST OF 500 AND --

7       MR. VAN NEST:  WHY DON'T YOU LIMIT THAT, THE HIGH

8   PRIORITY LIST?  IN OTHER WORDS, WHY DON'T YOU DECIDE HOW MANY

9   HIGH PRIORITY OBJECTIONS YOU WANT TO ENTERTAIN, AND THEN, THEN

10  THE LIST -- THE TOTAL SIZE OF THE LIST IS A LOT LESS RELEVANT

11  FOR YOU.

12      AND ONCE WE GET HIGH PRIORITY OBJECTIONS DEALT WITH, THEN

13  WHAT I'M HOPEFUL OF IS THAT THE PARTIES CAN RESOLVE THE REST OF

14  THEM, AND TO THE EXTENT WE HAVE FURTHER OBJECTIONS, TAKE THEM

15  AS THE TRIAL GOES ALONG.  IT'S A BENCH TRIAL, AFTER ALL, SO WE

16  DON'T HAVE A JURY WE'RE USHERING IN AND OUT.

17      THE COURT:  WELL, I KNOW WHAT'S GOING TO HAPPEN WITH

18  A BENCH TRIAL.  YOU'LL BE PUTTING IN HUNDREDS AND HUNDREDS AND

19  HUNDREDS OF OBJECTIONS, AND THEN ON APPEAL, YOU'LL SAW,

20  "AH-HAH, BUT EXHIBIT 499 HAD THIS ON PARAGRAPH 6 OF PAGE 32

21  WHICH X, Y, Z."

22      YOU KNOW, I THINK IT SHOULD BE A MANAGEABLE NUMBER THAT WE

23  CAN ACTUALLY DISCUSS AND REVIEW DURING TRIAL VERSUS JUST

24  LOBBING IN HUNDREDS AND HUNDREDS OF PAGES THAT NO ONE IS GOING

25  TO DISCUSS --

```
 1                 MR. VAN NEST:  I AGREE WITH THAT.

 2                 THE COURT:  -- AND THEN HAVE IT AS A BOMB ON APPEAL.

 3     THAT'S NOT FAIR TO ANYBODY.

 4            SO I THINK FOR YOUR PRELIMINARY, WHY DON'T WE LIMIT THAT,

 5     INSTEAD OF 500 A SIDE AND 1,000 EXHIBITS, WHICH JUST SOUNDS

 6     EXCESSIVE TO ME, WHY DON'T WE JUST LIMIT THAT TO -- I WAS GOING

 7     TO SAY 250, BUT IT SOUNDS LIKE THAT'S NOT GOING TO BE ENOUGH

 8     FOR YOU.

 9            OKAY.  WHAT ABOUT 400.

10                 MR. VAN NEST:  AGAIN --

11                 THE COURT:  SAVE US -- I THINK 400 IS REASONABLE.

12     I'M ABOUT TO GIVE YOU THE TIME LIMITS.  YOU'RE GOING TO HAVE 25

13     HOURS PER SIDE, SO, I MEAN, IF YOU WANT TO DO 1,000 EXHIBITS,

14     YOU'RE GOING TO DO A COUPLE MINUTES PER EXHIBIT.

15            I MEAN, IT'S JUST NOT --

16                 MR. VAN NEST:  BUT, AGAIN, THESE AREN'T EXHIBITS THAT

17     ARE ALL COMING IN, YOUR HONOR.  THESE ARE EXHIBITS THAT WE'RE

18     EXCHANGING THAT ARE POTENTIAL.

19                 THE COURT:  YEAH.

20                 MR. VAN NEST:  THAT'S WHY I'M ASKING YOUR HONOR TO

21     HOLD OFF ON THIS.

22            BUT WE'LL WORK WITH WHATEVER NUMBER YOU GIVE US.  BUT I --

23     IF WE'RE GOING TO SET A NUMBER TODAY, I'D REALLY LIKE A NUMBER

24     HIGHER THAN 400, BUT --

25                 THE COURT:  WELL, YOU SAID 500.  YOU SAID 500 IN YOUR
```

1    DOCUMENT.

2            MR. VAN NEST:  NO.  WE SAID THAT WE'VE AGREED WITH

3    EACH OTHER TO TELL THE OTHER -- TO REQUIRE THE OTHER SIDE TO

4    OBJECT, OR NOT, TO 500 OF THE EXHIBITS ON OUR LIST.

5        WE DON'T HAVE A LIMIT NOW.  THAT'S WHAT THE FOOTNOTE SAYS

6    THERE.  THAT'S ON --

7            THE COURT:  OH, YOU'RE SAYING YOU CAN FILE 500

8    OBJECTIONS?  THAT'S EVEN WORSE THAN I THOUGHT.

9            MR. VAN NEST:  NOT WITH YOU, YOUR HONOR.

10           THE COURT:  THAT'S EVEN WORSE THAN I THOUGHT.

11           MR. VAN NEST:  NOT WITH YOU, YOUR HONOR.  WITH EACH

12   OTHER.  THAT'S WITH EACH OTHER EARLY ON AND TRY TO RESOLVE

13   THOSE.  THAT'S WHAT THAT FOOTNOTE -- THAT'S FOOTNOTE 10.

14           THE COURT:  OH, I MISREAD IT.  I'M SORRY.

15           MS. MILICI:  YOUR HONOR, THE CONCERN FROM THE FTC'S

16   SIDE WAS THAT WE WERE CONCERNED ABOUT GETTING A VERY LONG LIST

17   FROM QUALCOMM AND HAVING TO SPEND A LOT OF HOURS WRITING UP

18   OBJECTIONS FOR DOCUMENTS THAT ARE NOT LIKELY TO BE USED AT

19   TRIAL.

20       SO WE ADDED THAT 500 LIMIT, THAT WE COULD EACH IDENTIFY

21   500 DOCUMENTS THAT THE OTHER SIDE WOULD PROVIDE OBJECTIONS TO,

22   NOT TO THE COURT, BUT FOR THE PURPOSE OF MEETING AND CONFERRING

23   TO COME UP WITH A JOINT LIST AND TO NARROW OUR OBJECTIONS FOR

24   THE COURT.

25           THE COURT:  SO IT'S EVEN WORSE THAN I THOUGHT.  YOU

1    MIGHT HAVE 2,000 EXHIBITS, BUT YOU'RE SAYING YOU'RE GOING TO

2    FIGHT ABOUT 500 WITH EACH OTHER?

3              MR. VAN NEST:  WITH EACH OTHER.

4              THE COURT:  PER SIDE.  SO IT SOUNDS LIKE 1,000

5    FIGHTS.  THIS SOUNDS REALLY EXCESSIVE TO ME AND NOT MANAGEABLE.

6              MR. VAN NEST:  BUT YOU --

7              THE COURT:  WHY CAN'T YOU --

8              MR. VAN NEST:  CAN I MAKE A SUGGESTION?

9              THE COURT:  -- IN YOUR PRELIMINARY EXCHANGE ON

10   NOVEMBER 8TH, EXCHANGE AND IDENTIFY 400 EXHIBITS?

11             MR. VAN NEST:  WHAT I'M SUGGESTING IS SOMETHING

12   DIFFERENT.

13             THE COURT:  UM-HUM.

14             MR. VAN NEST:  WHY DON'T YOU DECIDE -- YOUR PRETRIAL

15   ORDER DOESN'T ACTUALLY REQUIRE US TO SUBMIT OBJECTIONS, I DON'T

16   BELIEVE.  WHY DON'T YOU DECIDE HOW MANY HIGH PRIORITY

17   OBJECTIONS YOU WANT TO HEAR AT THE PRETRIAL AND LET US WORRY

18   ABOUT THE REST?

19             THE COURT:  OH, I DON'T WANT TO HEAR HIGH PRIORITY

20   OBJECTIONS AT THE PRETRIAL.  I'M HEARING THREE MOTIONS IN

21   LIMINE AND TWO DAUBERT MOTIONS THAT YOU'VE ALREADY FILED.

22   THAT'S ALL I'M HEARING AT THE PRETRIAL CONFERENCE.

23             MR. VAN NEST:  OKAY.  SO --

24             THE COURT:  I'M NOT -- YOU KNOW, I COMPLETELY AGREE

25   WITH WHAT PLAINTIFF'S COUNSEL SAID.  YOU MAY HAVE A MUCH

```
1     NARROWER SET OF EXHIBITS YOU ACTUALLY WANT TO USE AT TRIAL, SO
2     I DON'T WANT TO SPEND A LOT OF TIME RULING ON OBJECTIONS ON
3     DOCUMENTS YOU MAY NOT ULTIMATELY USE.
4              MR. VAN NEST:  I COMPLETELY AGREE.
5              THE COURT:  SO --
6              MR. VAN NEST:  AND I ACTUALLY THINK THAT GIVING US
7     THE FREEDOM WITH A LARGER LIST WILL ALLOW US TO GET MORE THINGS
8     ON AN AGREED LIST, A JOINT LIST THAT ARE PRE-ADMITTED.  MANY OF
9     THESE THINGS ARE JUST LICENSE AGREEMENTS AND THE LIKE THAT
10    OCCUR IN THE ORDINARY COURSE.  I DON'T REALLY THINK THERE'S
11    GOING TO BE A BIG DEBATE.
12         SO I'D ASK, IF YOUR HONOR IS GOING TO SET A LIMIT, WE'VE
13    AGREED TO EXCHANGE INFORMATION AS TO AT LEAST 500 EXHIBITS, AND
14    I HAVE A HARD TIME SEEING HOW I CAN ANTICIPATE EXACTLY WHAT
15    THEY'RE GOING TO DO THIS FAR AHEAD WHEN I HAVEN'T EVEN SEEN
16    THEIR LIST.  THAT'S MY PROBLEM.  I DON'T KNOW WHAT'S GOING TO
17    BE ON THE LIST OR WHAT THEY'LL FOCUS ON.
18              THE COURT:  OKAY.  ALL RIGHT.  THIS IS WHAT I'M GOING
19    TO DO:  YOU WILL EXCHANGE A PRELIMINARY LIST OF UP TO 500
20    EXHIBITS ON NOVEMBER 8TH.  I THINK THAT'S REASONABLE.  THAT'S
21    1,000 EXHIBITS.
22         NOW, I GUESS YOU'LL WANT TO, YOU SAID BY NOVEMBER 21,
23    SUPPLEMENT YOUR LIST WITH ADDITIONAL EXHIBITS IN LIGHT OF THE
24    OTHER SIDE'S 500, OR THEIR PRELIMINARY IDENTIFICATION ON
25    NOVEMBER 8TH.
```

```
 1              MR. VAN NEST:  THAT'S RIGHT.

 2              MS. MILICI:  AND, YOUR HONOR --

 3              MR. VAN NEST:  AND SO -- EXCUSE ME.

 4              MS. MILICI:  I THINK WE DIDN'T ENVISION THIS JUST AS

 5      AN ADDITIVE PROCESS, BUT THAT UPON RECEIVING EACH OTHER'S

 6      WITNESS LISTS AND EXHIBIT LISTS, WE WOULD ALSO BE DROPPING

 7      EXHIBITS.  SO THE EXHIBIT -- THE EXCHANGE -- THE LATER EXCHANGE

 8      IS NOT SIMPLY IDENTIFYING MORE.

 9              THE COURT:  PILING ON.

10              MS. MILICI:  RIGHT, IT'S NOT PILING ON.  IT'S ALSO

11      JUST REFINING.

12              MR. VAN NEST:  BUT I'M NOT SURE THAT'S HOW WE

13      UNDERSTOOD IT, YOUR HONOR.  BUT --

14              THE COURT:  UM-HUM.

15              MR. VAN NEST:  IT'S CERTAINLY THE CASE, I QUITE

16      AGREE, THAT ONCE WE SEE THEIR LIST, IT'S QUITE LIKELY THAT SOME

17      OF THE EXHIBITS ON OUR LIST WE WON'T DEEM NECESSARY.

18          BUT IF YOU'RE GOING TO SET A LIMIT FOR THAT SECOND

19      EXCHANGE --

20              THE COURT:  YES, I AM.

21              MR. VAN NEST:  -- I THINK IT OUGHT TO BE ABOUT 250,

22      HALF OF THE FIRST ONE, SO THAT WE HAVE THE FLEXIBILITY TO ADD

23      EXHIBITS THAT WE'RE GOING TO NEED IN LIGHT OF WHAT THEY DO, AND

24      THEY'D HAVE THAT SAME FLEXIBILITY.

25              THE COURT:  I'LL LET YOU ADD 150.  SO YOU'LL BE UP TO
```

1       650 EXHIBITS, WHICH WILL BE 1,300 EXHIBITS TOTAL.  THAT'S

2       REALLY EXCESSIVE, BUT OKAY.

3           BUT THEN I WANT THAT NUMBER BROUGHT DOWN BEFORE THE

4       PRETRIAL CONFERENCE, BECAUSE I KNOW WHAT'S GOING TO -- I MEAN,

5       I GET LONG -- THIS IS JUST SUPPOSED TO BE A CMC.  I'M GETTING

6       ALL THESE DISCOVERY DISPUTES IN YOUR CMC STATEMENT.  I KNOW

7       WHAT'S GOING TO HAPPEN AT THE PRETRIAL CONFERENCE.  YOU'RE

8       GOING TO TRY TO SNEAK IN A WHOLE BUNCH OF DISCOVERY DISPUTES IN

9       YOUR PRETRIAL STATEMENT, SO I'M TRYING TO NARROW THE UNIVERSE

10      OF THAT.

11          SO WHEN DID YOU DECIDE TO FILE -- WHAT'S THE BRIEFING?  IS

12      IT 14 AND 10 DAYS IN ADVANCE OF THE PTC?  I THINK THAT'S WHAT

13      MY STANDING ORDER IS.

14              MR. VAN NEST:  TO FILE WHAT, YOUR HONOR?  TO FILE THE

15      PRETRIAL --

16              THE COURT:  MOTIONS IN LIMINE, YOUR THREE MOTIONS IN

17      LIMINE.

18              MR. VAN NEST:  THAT'S ON THE 29TH OF NOVEMBER.  SO,

19      YEAH, THAT'S IN ADVANCE OF -- I BELIEVE, THE PRETRIAL IS ON THE

20      13TH.

21              THE COURT:  OKAY.

22              MR. VAN NEST:  SO THE 29TH OF NOVEMBER IS THE MOTION

23      IN LIMINE DATE.

24              THE COURT:  OKAY.

25              MS. MILICI:  IT'S THE SAME DATE AS THE JOINT PRETRIAL

1   STATEMENT.

2           MR. VAN NEST:  RIGHT.

3           THE COURT:  OKAY.  SO I AM WONDERING IF WE CAN HAVE A

4   NARROWING BEFORE YOU HAVE TO FILE YOUR MOTIONS.

5       NOW, I KNOW YOU'RE DOING YOUR EXCHANGE OF, YOU KNOW, 300

6   ADDITIONAL EXHIBITS ON NOVEMBER 21, THE DAY BEFORE

7   THANKSGIVING, SO IT'S PRETTY TIGHT.

8           MR. VAN NEST:  VERY TIGHT, YOUR HONOR.

9           THE COURT:  COULD YOU -- ON THE 27TH, ON TUESDAY,

10  COULD YOU NARROW YOUR LIST, PLEASE?

11          MR. VAN NEST:  THAT'S THE TUESDAY AFTER THANKSGIVING,

12  I THINK.

13          THE COURT:  UNFORTUNATELY, YES.  IT'S JUST THAT YOUR

14  DEADLINE IS THURSDAY, THE 29TH, THE WEEK AFTER THANKSGIVING.

15  SO --

16          MR. VAN NEST:  IN OTHER WORDS, I'M NOT -- I'M NOT

17  UNDERSTANDING WHAT, WHAT YOU'RE ASKING.  YOU WANT SOMETHING

18  FILED IN ADVANCE OF THE PRETRIAL?

19          THE COURT:  NO, IT DOESN'T HAVE TO BE FILED IN

20  ADVANCE.  IT COULD BE JUST EXCHANGED --

21          MR. VAN NEST:  WHAT DO YOU WANT -- YOU WANT --

22          THE COURT:  -- BETWEEN THE PARTIES, A NARROWED LIST.

23      I DON'T WANT US TO BE AT 650 EXHIBITS PER SIDE.  I DON'T

24  WANT TO BE AT 1,300 EXHIBITS AT THE TIME YOU FILE YOUR MOTIONS

25  IN LIMINE AND YOUR PRETRIAL STATEMENT.  THAT NUMBER NEEDS TO

1    COME DOWN.

2            MR. VAN NEST:  OKAY.  CAN WE MEET AND CONFER ON THAT

3    AND PROVIDE YOUR HONOR WITH A NUMBER?  AND --

4            THE COURT:  WELL, THEN YOU WANT TO COME BACK AND HAVE

5    ANOTHER CMC?  BECAUSE I DOUBT IT'LL BE A NUMBER --

6            MR. VAN NEST:  I'M NOT INVITING THAT.  NOT FOR YOUR

7    HONOR, EITHER.

8        BUT I THINK WE OUGHT TO BE ABLE TO WORK SOMETHING OUT AT

9    LEAST IN THE PRETRIAL STATEMENT ITSELF, OR WE CAN CERTAINLY

10   AGREE AMONG OURSELVES WHEN TO EXCHANGE THAT STUFF.

11       THE STATEMENT'S NOT DUE TO YOUR HONOR UNTIL THURSDAY.  IF

12   YOU'RE NOT GOING TO SEE IT UNTIL THEN, I'M NOT SURE WHY IT

13   MATTERS WHEN WE EXCHANGE.

14           MS. MILICI:  YOUR HONOR --

15           MR. VAN NEST:  I HATE TO PUT BURDEN ON THE STAFF THAT

16   CLOSE TO, YOU KNOW, THEIR LAST HOLIDAY OF THE YEAR.

17           MS. MILICI:  YOUR HONOR, I -- THE FTC WOULD PREFER TO

18   EXCHANGE THEM ON THE -- ON THE 27TH AND NOT LATER.  I THINK

19   EXCHANGING ON THE 28TH FOR A 29TH FILING IS TOO LATE.

20           THE COURT:  COULD WE ADVANCE YOUR EXCHANGE OF

21   ADDITIONAL EXHIBITS?  RIGHT NOW YOU'RE EXCHANGING YOUR

22   PRELIMINARY LIST ON THURSDAY, NOVEMBER 8TH.

23           MR. VAN NEST:  I'D RATHER SUBMIT THE NARROWED LIST ON

24   THE 27TH, YOUR HONOR, BECAUSE THERE'S SO MUCH -- THE FIRST CUT

25   IS GOING TO BE VERY DIFFICULT AND I DON'T WANT TO MOVE THAT

1    DATE AT ALL.

2              THE COURT:  OKAY.

3              MR. VAN NEST:  WE'VE AGREED TO THAT DATE.  SO IF YOUR

4    HONOR WANTS US TO EXCHANGE A NARROWED LIST ON THE 27TH, THAT'S

5    WHAT WE'LL DO.

6              THE COURT:  ALL RIGHT.  THANK YOU.  AND I APOLOGIZE

7    TO YOUR TEAMS.

8         I THINK AT THAT POINT IT SHOULD COME DOWN TO 400.

9              MR. VAN NEST:  THAT'LL BE VERY CHALLENGING TO DO,

10   YOUR HONOR.  COULD I ASK THAT WE LEAVE IT AT 500?  YOUR HONOR

11   KNOWS, I THINK, THAT WITH A TEN DAY TRIAL, THERE'S GOING TO BE

12   A LIMIT TO WHAT WE CAN DO.

13        BUT, AGAIN, UNTIL WE SEE THEIR DOCUMENTS, SEE THEIR

14   EXHIBITS, SEE THEIR WITNESSES, HEAR THEIR OPENING STATEMENT,

15   IT'S REALLY DIFFICULT.  IT PUTS US IN A TOUGH POSITION.

16             THE COURT:  LET ME HEAR, WHAT'S YOUR VIEW?

17             MS. MILICI:  I THINK THAT WE COULD LIVE WITH 400, BUT

18   WE'D PREFER 500.

19             THE COURT:  WHAT ABOUT 450?

20             MR. VAN NEST:  WELL, I'M TOO PROUD TO GO 475, YOUR

21   HONOR, BUT --

22        (LAUGHTER.)

23             MR. VAN NEST:  SOMEWHERE IN THERE.

24             THE COURT:  I'M SORRY WE'RE PLAYING "THE PRICE IS

25   RIGHT," BUT 450.  THANK YOU.

1        OKAY.  THEN I WOULD LIKE THAT NUMBER TO BE LESS BY THE

2   TIME BEFORE TRIAL.

3              MS. MILICI:  YOUR HONOR, AND TO CONFIRM, THESE ARE

4   OUR -- THIS IS THE NUMBER THAT --

5              THE COURT:  THIS IS PER SIDE.  SO WE'RE STILL AT 900

6   TOTAL.  YOU'RE AT 450 PER SIDE.

7              MS. MILICI:  AND THAT LIST WOULD NOT INCLUDE OUR

8   JOINT EXHIBITS?  IS THAT CORRECT?

9              MR. VAN NEST:  THAT'S WHAT I UNDERSTOOD, YOUR HONOR.

10      I THINK WE'RE GOING TO GET A LOT OF RELIEF FOR EVERYBODY

11  WITH OUR JOINT EXHIBIT LIST, WHICH THEN THERE'S NO FIGHTING,

12  THERE'S NO OBJECTIONS.  THEY'RE IN AND YOUR HONOR WILL HAVE

13  THEM.  THERE'S NO OBJECTIONS TO THEM, EITHER.

14              THE COURT:  ALL RIGHT.  WELL, THIS IS WHAT I'M GOING

15  TO DO:  I WILL NOT LIMIT JOINT EXHIBITS.  I WANT TO CREATE AN

16  INCENTIVE THAT YOU REACH AGREEMENT AND NOT FIGHT.  OKAY?  SO

17  JOINT EXHIBITS I WON'T LIMIT.

18              MR. VAN NEST:  THANK YOU.

19              THE COURT:  WELL, ACTUALLY, I'M ALSO JUST THINKING OF

20  JUST WHAT'S MANAGEABLE.  THIS IS A BENCH TRIAL.  WE JUST --

21  WE'RE NOT EVEN GOING TO BE ABLE TO REVIEW HUNDREDS AND HUNDREDS

22  AND HUNDREDS AND HUNDREDS OF EXHIBITS.  SO I JUST -- THIS NEEDS

23  TO BE MANAGEABLE.  WHY DON'T WE SAY THERE WILL BE 200 JOINT

24  EXHIBITS?

25              MR. VAN NEST:  DO YOU THINK THAT'S SUFFICIENT?

1          MS. MILICI:  WE'VE ONLY HAD VERY PRELIMINARY

2     DISCUSSIONS ABOUT A JOINT EXHIBIT LIST.

3          THE COURT:  SURE.

4          MS. MILICI:  SO I'M NOT SURE WHETHER 200 IS

5     REASONABLE.  IT DEPENDS ON HOW MANY LICENSES THAT THE PARTIES

6     ARE GOING TO HAVE IN MIND WITH THE SAME LICENSES AND THE SAME

7     AGREEMENTS AND THOSE KINDS OF THINGS.

8          THE COURT:  YEAH.

9          MS. MILICI:  THERE CERTAINLY ARE A LOT OF SALES

10    AGREEMENTS.

11         THE COURT:  ALL RIGHT.  250.  250 ON JOINT TRIAL

12    EXHIBITS.

13       AND --

14         MR. VAN NEST:  YOUR HONOR?

15         THE COURT:  YEAH.

16         MR. VAN NEST:  COULD I MAKE ONE REQUEST ON THAT?

17         THE COURT:  WHAT'S THAT?

18         MR. VAN NEST:  I MEAN, INCENTIVIZING US TO AGREE,

19    PUTTING IN MORE JOINT EXHIBITS IS A LOT BETTER --

20         THE COURT:  UM-HUM.

21         MR. VAN NEST:  -- THAN PUTTING IN OBJECTED TO

22    EXHIBITS.  COULD YOU GIVE US JUST A DAY TO CONSULT ON NUMBERS,

23    A DAY OR TWO, AND JUST SUBMIT A JOINT NUMBER TO YOU THAT WE

24    AGREE ON ON THE JOINT EXHIBIT LIST?

25         BECAUSE OBVIOUSLY YOU WANT THE INCENTIVE TO BE PUSHED IN

```
 1        THE DIRECTION OF THE JOINT LIST, AND WE DO, TOO, NO OBJECTIONS

 2        AND NO WASTE OF TIME.

 3               THE COURT:  UM-HUM.

 4               MR. VAN NEST:  AND AS COUNSEL POINTS OUT, THERE ARE

 5        THOUSANDS OF LICENSES AND YOU'RE NOT GOING TO BE ABLE TO READ

 6        THEM ALL, OF COURSE.

 7               THE COURT:  NO.

 8               MR. VAN NEST:  BUT THERE ARE GOING TO BE A BUNCH IN

 9        GROUPS THAT ARE SIGNIFICANT FOR VARIOUS REASONS, AND I THINK

10        THE PARTIES OUGHT TO BE ENCOURAGED TO PUT MORE THINGS ON THE

11        JOINT LIST AND LESS THINGS ON A, YOU KNOW, DISPUTED LIST.

12           THAT'S -- SO IF YOUR HONOR WOULD GIVE US UNTIL EARLY NEXT

13        WEEK TO GIVE YOU A NUMBER FOR THE JOINT LIST, THAT WOULD BE

14        GREAT.

15               THE COURT:  ALL RIGHT.  WELL, THIS IS WHAT I'M GOING

16        TO DO.  250 JOINT EXHIBITS, AND THEN 125 PER SIDE AT TRIAL.

17        THAT'S A TOTAL OF 500 EXHIBITS, WHICH IS A LOT FOR A TEN DAY

18        TRIAL.

19               MR. VAN NEST:  SAY THAT AGAIN, YOUR HONOR.  250 --

20               THE COURT:  250 JOINT, AND THEN 125 PER SIDE OF JUST

21        YOUR OWN PARTY EXHIBITS, SO FOR A TOTAL OF 500 EXHIBITS.

22               MR. VAN NEST:  BOY, THAT'S GOING TO BE VERY, VERY

23        CHALLENGING.  I THINK THE 250, I THINK WE COULD --

24               THE COURT:  THAT'S 50 EXHIBITS A DAY.

25               MR. VAN NEST:  BUT SOME -- SOME OF THE EXHIBITS THERE
```

1      WILL BE TESTIMONY ABOUT, LET'S SAY, A FEW EXAMPLES OF THEM.

2          BUT IN ORDER TO MAKE OUR RECORD, ONE OF OUR POINTS IS

3      GOING TO BE MANY PEOPLE SIGNED UP TO THESE PROVISIONS, AND MANY

4      PEOPLE FOUND THEM ACCEPTABLE WITHOUT ANY PRESSURE WHATSOEVER.

5          AND SO LIMITING US IN THAT WAY ON THE PARTY EXHIBITS I

6      THINK IS, IS GOING TO BE EXTREMELY CHALLENGING TO BE ABLE TO

7      PRESENT OUR CASE.

8          IF WE HAD -- IF WE HAD 250 WITH THE 250 ON THE JOINT LIST,

9      I'D FEEL A LOT MORE COMFORTABLE.  BUT I THINK IT'S GOING TO BE

10     VERY CHALLENGING AND POTENTIALLY UNFAIR TO LIMIT US TO 125.

11         I PROMISE NOT TO PUT IN EXHIBITS THAT I DON'T NEED AND

12     THAT I DON'T THINK ARE SIGNIFICANT.  BUT I DON'T THINK THAT WE

13     CAN MAKE OUR PROPER SHOWING AND DEFENSE WITH A NUMBER THAT LOW.

14              THE COURT:  DO YOU HAVE A VIEW?

15              MS. MILICI:  I -- MY VIEW IS MORE OF A PRACTICAL ONE

16     THAT I AGREE WITH YOU THAT IT'S HARD TO IMAGINE HOW WE

17     INTRODUCE MORE THAN 50 EXHIBITS A DAY DURING A TRIAL DAY.

18         IDENTIFYING THE PRECISE 125 IN ADVANCE OF THE TRIAL WILL

19     BE DIFFICULT, BUT IT'S HARD FOR ME TO IMAGINE HOW, AS A

20     PRACTICAL MATTER, WE WOULD BE INTRODUCING MORE THAN 500

21     EXHIBITS IN THE COURSE OF TRIAL.

22              MR. VAN NEST:  YOUR HONOR, WHY NOT LEAVE THAT LAST

23     DECISION TO THE PRETRIAL?

24              THE COURT:  WHAT ABOUT 150 AND 150?  250 JOINT, 150

25     EACH SIDE.  THAT'LL BE A TOTAL OF 550 EXHIBITS.  THAT'S 55

```
1     EXHIBITS A DAY.  I THINK THAT'S SUFFICIENT.
2           MR. VAN NEST:  THE --
3           THE COURT:  AND THAT'S MORE THAN WHAT I WAS PLANNING
4     TO DO.  BUT I'M OKAY WITH EACH SIDE THEN, NOT COUNTING JOINTS,
5     WOULD BE IDENTIFYING 500 EXHIBITS PRELIMINARILY ON
6     NOVEMBER 8TH; AND THEN IN RESPONSE, YOU CAN IDENTIFY ADDITIONAL
7     150 BY NOVEMBER 21; BUT THEN BY NOVEMBER 27TH, THAT NUMBER OF
8     PER SIDE EXHIBITS SHOULD BE DOWN TO 450.  THESE ARE JUST PER
9     SIDE NUMBERS.
10          MR. VAN NEST:  COULD WE MAKE THAT FINAL CUT NUMBER
11    200, YOUR HONOR?  BECAUSE, AGAIN, NOT KNOWING PRECISELY WHAT
12    LICENSES AND OTHER AGREEMENTS THEY'RE GOING TO FOCUS ON --
13          THE COURT:  UM-HUM.
14          MR. VAN NEST:  -- I HATE TO LIMIT MYSELF.
15       I'M PERFECTLY WILLING TO LET THAT RIDE AND DISCUSS IT WITH
16    YOU AT THE PRETRIAL, TOO.  WE COULD ALSO DO THAT.
17       BUT I'M JUST VERY WORRIED ABOUT PREJUDICE TO QUALCOMM BY A
18    NUMBER TOO LOW BEFORE WE'VE EVEN BEGUN EXCHANGING ANYTHING,
19    WHICH DOESN'T START HERE FOR A COUPLE OF WEEKS.
20          THE COURT:  UM-HUM.  NO.  I WANT YOU ALL TO PUT ON
21    YOUR BEST CASE, AND THE BEST CASE IS WITH LIMITS.  AND SO JUST
22    PICK YOUR ABSOLUTE BEST 550 EXHIBITS.  THAT'S NOT A SMALL
23    NUMBER.  550?  THAT'S GOING THROUGH 55 EXHIBITS A DAY.  I THINK
24    THAT'S SUFFICIENT.
25          OKAY.  LET'S TALK ABOUT THE TRIAL SCHEDULE.  IT WILL BE
```

```
 1    9:00 A.M. TO 4:30, AND THERE WILL BE A ONE HOUR LUNCH BREAK

 2    FROM NOON TO 1:00.  THERE WILL BE A 15 MINUTE BREAK AT 10:30,

 3    AND 10 MINUTE BREAKS AT 2:15 AND 3:30.  OKAY?  THAT'S EVERY

 4    DAY.

 5             MR. VAN NEST:  I'M SORRY.  WAS THAT 9:00 TO 4:30,

 6    YOUR HONOR?

 7             THE COURT:  YES, PLEASE.

 8             MR. VAN NEST:  THANK YOU.

 9             THE COURT:  NOON TO 1:00 LUNCH, A 15 MINUTE BREAK AT

10    10:30, AND 10 MINUTE BREAKS AT 2:15 AND 3:30.

11        OKAY.  I DO THINK PRETRIAL BRIEFS AND POST-TRIAL BRIEFS

12    WOULD BE HELPFUL, BUT I WANT PAGE LIMITS.  SO SOMETHING

13    MANAGEABLE, PLEASE.  WHAT'S THE NUMBER?

14             MR. VAN NEST:  YOUR HONOR, COULD I ASK, ON THE -- I

15    DON'T HAVE A STRONG VIEW ON THE PRETRIAL BRIEF.

16        BUT ON THE POST-TRIAL BRIEFS, WOULDN'T IT BE BETTER TO

17    MAKE THAT DECISION DURING THE TRIAL OR AT SOME POINT CLOSER TO

18    TRIAL?

19             THE COURT:  THAT'S FINE.  THAT'S FINE.

20             MR. VAN NEST:  I THINK THAT THAT WOULD BE BETTER.

21             THE COURT:  THAT'S FINE.

22             MR. VAN NEST:  ON THE PRETRIAL BRIEF, 25 PAGES I

23    THINK.

24             THE COURT:  THANK YOU.  THAT'S GOOD.  THAT'S GOOD.

25             MS. MILICI:  ON THE POST-TRIAL, IS THE COURT GOING TO
```

```
1       WANT US TO UPDATE OUR FINDINGS OF FACT POST-TRIAL AS WELL?

2               THE COURT:  I THINK THAT WOULD BE HELPFUL, AND IT

3       WOULD BE HELPFUL IF YOU COULD ACTUALLY CITE FROM THE

4       TRANSCRIPTS OF THE TRIAL.

5               MR. VAN NEST:  YES.

6               THE COURT:  BECAUSE IT WOULD BE REALLY HELPFUL.  AND

7       THEN I WOULD ASK THAT YOUR POST-TRIAL BRIEFS BE SUBMITTED

8       ELECTRONICALLY AS WELL.

9               MR. VAN NEST:  WE CAN DO THAT.

10              THE COURT:  SO THAT WE CAN CUT AND PASTE IN ADDITION

11      TO -- SO IF YOU COULD SEND THAT IN MICROSOFT WORD VERSION,

12      ALTHOUGH WE CAN TALK ABOUT THAT LATER.

13              MR. VAN NEST:  WE CAN.  WE CAN ALSO LINK THEM SO YOU

14      CAN CLICK ON THE TRANSCRIPT, TOO.

15              THE COURT:  THAT ACTUALLY WOULD BE --

16              MR. VAN NEST:  LEE-ANNE IS NODDING.

17              THE COURT:  THAT WOULD BE FANTASTIC.

18          CAN FTC DO THAT?

19              MS. MILICI:  I PERSONALLY HAVE NO IDEA, BUT --

20              MR. VAN NEST:  THEY CAN.  IT'S A VENDOR PROVIDED

21      SERVICE THAT WE CAN ALL DO.

22              THE COURT:  OKAY.

23              MR. VAN NEST:  LET'S TALK --

24              THE COURT:  THAT WOULD BE VERY HELPFUL.

25              MR. VAN NEST:  SURE.
```

```
 1                    THE COURT:  OKAY.  THAT WOULD BE HELPFUL.
 2                    MR. VAN NEST:  YOUR HONOR, CAN I GO BACK TO TRIAL
 3        DAYS?
 4                    THE COURT:  YES.
 5                    MR. VAN NEST:  ARE WE WORKING MONDAY, TUESDAY, AND
 6        FRIDAY AS YOUR GENERAL CASE ORDER INDICATES?
 7                    THE COURT:  YES, YES.  AND I APOLOGIZE.  I WANT TO
 8        KEEP MY OTHER CRIMINAL AND CIVIL CASES GOING DURING THAT TIME,
 9        SO WE WON'T BE IN TRIAL WEDNESDAYS AND THURSDAYS.  SO SORRY
10        ABOUT THAT.
11                    MR. VAN NEST:  OKAY.  AND WILL WE ACTUALLY START WITH
12        OPENINGS ON THE 4TH?  OR WHAT DO YOU ANTICIPATE?  THE 4TH IS A
13        FRIDAY.  AND THE PRETRIAL IS MID-DECEMBER.
14                    THE COURT:  UM-HUM.
15                    MR. VAN NEST:  WERE YOU -- WHAT WERE YOU EXPECTING TO
16        HAPPEN ON THE 4TH, OR HAD --
17                    THE COURT:  SO LET ME ASK YOU A QUESTION.  IF YOU'RE
18        GOING TO FILE PRETRIAL BRIEFS, DO YOU NEED OPENING STATEMENTS?
19                    MR. VAN NEST:  I THINK WE'D LIKE TO MAKE A SHORT
20        OPENING.  I THINK YOUR HONOR LIMITED US TO 45 MINUTES EARLY ON
21        IN THE CASE, OR SOMETHING LIKE THAT.  I'D HAVE TO LOOK BACK AT
22        THE TRANSCRIPT.
23             BUT I THINK WE'D LIKE TO MAKE AN OPENING OF ABOUT THAT
24        LENGTH, YES.
25                    THE COURT:  WOULD YOU LIKE TO DO THAT?  IT'LL COUNT
```

```
1    TOWARDS YOUR TEN HOURS, JUST SO YOU KNOW.

2              MS. MILICI:  YEAH.  I DON'T RECALL ANY RULING ON THE

3    45 MINUTES, BUT THAT'S POSSIBLE.

4              THE COURT:  THAT'S LONGER THAN I WOULD NORMALLY DO,

5    BUT IT'S COUNTING TOWARDS YOUR TEN HOURS.  SO YOU CAN DECIDE IF

6    YOU WANT TO DO A TEN HOUR OPENING AND NO EVIDENCE, THAT'S OKAY,

7    TOO.  I MEAN, IT'S YOUR TEN HOURS.

8              MR. VAN NEST:  THANK YOU.

9              MS. MILICI:  SURE.  THEN WE WILL LIKELY DO ONE AS

10   WELL.  WE DON'T ANTICIPATE USING 45 MINUTES OF OUR TIME.

11             THE COURT:  OKAY.  ALL RIGHT.

12        SO THE TRIAL TIME LIMITS IS GOING TO BE TEN HOURS PER

13   SIDE.  IT'S GOING TO BE 50 HOURS TOTAL.

14             MR. VAN NEST:  TEN DAYS YOU MEANT?

15             THE COURT:  I KNOW -- I'M SORRY.  10 DAYS, 50 HOURS

16   TOTAL, 25 HOURS PER SIDE.  SO IF YOU WANT TO MAKE AN OPENING

17   STATEMENT OR A CLOSING ARGUMENT, IT WILL BE COMING OUT OF YOUR

18   25 HOURS.

19             MR. VAN NEST:  DOES YOUR HONOR HAVE ANY FLEXIBILITY

20   IN THAT TO ADD A DAY OR TWO?  I DON'T KNOW WHAT YOUR SCHEDULE

21   IS.  I'M JUST CONTEMPLATING THE ISSUES THAT WE NEED TO DEAL

22   WITH AND NOT WANTING TO RUSH YOUR HONOR THROUGH ANYTHING.

23             THE COURT:  UM-HUM.

24             MR. VAN NEST:  I'M WONDERING IF YOU HAVE DAYS ON YOUR

25   CALENDAR -- I BELIEVE IF WE -- IF WE RAN THE TEN WITH THE 4TH
```

```
1    IN THERE, THERE WOULD BE POSSIBLY ROOM THAT THIRD WEEK OR INTO

2    THE FOURTH WEEK FOR A DAY OR TWO.  IF EACH SIDE GOT A DAY MORE,

3    THAT WOULD, I THINK, ALLOW US TO PRESENT THIS THING IN A LITTLE

4    MORE --

5            THE COURT:  YOU KNOW WHAT?

6            MR. VAN NEST:  -- UNDERSTANDABLE WAY.

7            THE COURT:  I'M SORRY TO INTERRUPT YOU.

8        THIS IS WHAT I'LL DO:  I'LL SAY THE 25 HOURS PER SIDE IS

9    JUST EVIDENCE, OKAY?  I'LL GIVE YOU 30 MINUTES PER SIDE FOR

10   OPENING, AND I'LL GIVE YOU 45 MINUTES PER SIDE FOR CLOSING.

11       I JUST AM NOT SURE, IF YOU'RE GOING TO BE BRIEFING ALL

12   THIS, WHY WE NEED ORAL ARGUMENT AS WELL, ALTHOUGH I APPRECIATE

13   IT AND YOU ALL ARE GREAT LAWYERS, SO IT'S --

14           MR. VAN NEST:  WHAT I WAS GOING TO SUGGEST IS LET US

15   DO AN OPENING.

16       ON THE CLOSING, IF WE'RE GOING TO DO POST-TRIAL BRIEFING,

17   THE CLOSING IS NOT NEARLY AS IMPORTANT.  IT COULD BE DONE AFTER

18   YOU'VE REVIEWED THE POST-TRIAL BRIEFS, OR NOT AT ALL.

19       I MEAN, COMMONLY IN, SAY, ARBITRATIONS WHERE WE'RE GOING

20   TO BE DOING POST-ARBITRATION BRIEFING, WHAT WE'VE DONE IS HAVE

21   THE ARBITRATION, SEND A LINKED POST-TRIAL BRIEF TO THE

22   ARBITRATORS --

23           THE COURT:  UM-HUM.

24           MR. VAN NEST:  -- AND THEN THE ARBITRATORS DECIDE, DO

25   WE WANT ORAL ARGUMENT OR NOT AFTER THEY'VE REVIEWED THE BRIEF,
```

1    AND WE'D BE VERY COMFORTABLE WITH THAT APPROACH FROM YOUR

2    HONOR.

3         I DO THINK, WITH A TEN DAY LIMIT, WE'RE GOING TO NEED ALL

4    OF IT AND THEN SOME FOR OUR EVIDENCE.  SO I -- I WOULD SAY I'M

5    NOT SURE WE NEED CLOSINGS.  WE DO -- WE WOULD LIKE TO HAVE AN

6    OPENING AND TAKE THE TIME TO DO THAT.

7         BUT WHY WOULDN'T YOUR HONOR DECIDE ON CLOSINGS AFTER THE

8    TRIAL?

9              THE COURT:  YOU KNOW WHAT?  I DIDN'T EVEN THINK WE

10   NEEDED ANY ARGUMENT BECAUSE I'M GOING TO ASSUME THAT YOU'RE

11   GOING TO PUT IT IN YOUR PRETRIAL BRIEFS AND YOUR POST-TRIAL

12   BRIEFS.

13        THAT'S FINE.  LET'S NOT HAVE CLOSING ARGUMENT.  I DON'T

14   THINK IT'S NECESSARY.  I THINK YOUR POST-TRIAL BRIEFS THAT'LL

15   HAVE CITES TO TESTIMONY MIGHT ACTUALLY BE MORE HELPFUL.

16             MR. VAN NEST:  I THINK IT WILL BE.

17             THE COURT:  OKAY.  SO LET'S NOT HAVE POST-TRIAL

18   BRIEFS, BUT I WILL HAVE --

19             MR. VAN NEST:  YOU MEAN --

20             THE COURT:  -- 30 MINUTE -- LET'S NOT HAVE POST-TRIAL

21   ARGUMENT.  SORRY.

22             MR. VAN NEST:  YEAH.

23             THE COURT:  LET'S NOT HAVE CLOSING ARGUMENTS.

24        BUT I WILL ALLOW THE OPENING STATEMENTS AND NOT HAVE IT

25   COUNT TOWARDS YOUR 25 HOURS, BUT IT'LL BE LIMITED TO 30 MINUTES

```
1      INSTEAD OF 45.
2              MR. VAN NEST:  OKAY.
3              THE COURT:  OKAY?  SO 30 MINUTES PER SIDE FOR OPENING
4      STATEMENTS, 25 HOURS PER SIDE FOR YOUR DIRECTS AND CROSSES.
5      OKAY?  SO FOR THE EVIDENCE PORTION OF THE CASE, 25 HOURS PER
6      SIDE.
7              MR. VAN NEST:  AND I WAS GOING TO ASK, ON THAT LAST
8      POINT --
9              THE COURT:  UM-HUM.
10             MR. VAN NEST:  -- I GUESS WE -- WE COULD DO ONE MORE
11     DAY THAN WHAT WE HAVE AND STAY IN THAT SAME WEEK, RIGHT?  IF
12     WE'RE STARTING ON THE 4TH, THAT'S WHY I WAS ASKING, ARE YOU
13     CONTEMPLATING STARTING THE CLOCK ON THE 4TH?
14             THE COURT:  I'M STARTING THE CLOCK ON THE 4TH, YEAH.
15     I'M NOT STARTING IT WHILE YOU'RE GIVING YOUR OPENING
16     STATEMENTS, BUT --
17             MR. VAN NEST:  NO.
18             THE COURT:  BUT AS SOON AS YOU STAND UP.
19             MR. VAN NEST:  WHAT I WAS GOING TO SAY IS IF WE START
20     THE CLOCK ON THE 4TH, THEN IN OUR THIRD WEEK, WE HAVE ONE MORE
21     DAY THAT'S IN THAT SAME WEEK WHEN WE COULD FINISH UP OUR
22     EVIDENCE.  THAT WOULD GIVE US 11 DAYS, THREE TIMES -- THAT
23     WOULD GIVE US, I GUESS -- NO, I GUESS IT WOULDN'T.  WE'RE GOING
24     TO STILL BE AT TEN DAYS, AREN'T WE?
25             THE COURT:  YEAH.  SO I WAS CONTEMPLATING FRIDAY, THE
```

```
1      4TH; MONDAY, THE 7TH; TUESDAY, THE 8TH; FRIDAY, THE 11TH;

2      MONDAY, THE 14TH; TUESDAY, THE 15TH; FRIDAY, THE 18TH; THE 21ST

3      IS MARTIN LUTHER KING DAY, SO THE COURTHOUSE WILL BE CLOSED;

4      TUESDAY, THE 22ND; FRIDAY, THE 25TH; AND MONDAY, THE 28TH.

5                  MR. VAN NEST:  SO IF THAT'S THE CASE, IF WE'RE ALL

6      GOING TO BE HERE THAT WEEK ANYWAY, INCLUDING OUR COLLEAGUES

7      FROM OUT OF TOWN, COULD YOUR HONOR SEE YOUR WAY TO GIVING US

8      THAT TUESDAY AS WELL AND JUST SPLITTING IT BETWEEN THE PARTIES?

9                  THE COURT:  NO.  I'M SORRY.  I'M SORRY.  THIS IS THE

10     TRIAL LIMITS.

11        OKAY.  OKAY.  SO THEN -- YOU KNOW WHAT I'D LIKE TO DO?

12     I'D LIKE TO -- WHAT ABOUT LIMITING THE POST-TRIAL BRIEFS?  I'LL

13     GIVE YOU 35 PAGES.  THAT'S 70 PAGES TOTAL.

14                 MR. VAN NEST:  COULD WE --

15                 THE COURT:  I DON'T KNOW IF WE'LL BE ABLE TO ABSORB

16     MUCH MORE.

17                 MR. VAN NEST:  THAT MAY BE TRUE, BUT COULD WE MAKE

18     THAT DECISION DURING THE TRIAL?  I MEAN, YOUR HONOR MIGHT

19     DECIDE THAT THINGS ARE MORE COMPLICATED THAN YOU THINK.  MAYBE

20     YOU'LL DECIDE THEY'RE MORE SIMPLE THAN YOU THINK.  BUT --

21                 THE COURT:  CAN WE DO THIS?  I'LL SET 35, BUT YOU CAN

22     RAISE THE ISSUE AT THE END OF TRIAL IF IT TURNS OUT THAT IT'S

23     REALLY, REALLY COMPLICATED AND MORE BRIEFING WOULD BE HELPFUL.

24                 MR. VAN NEST:  OKAY.

25                 THE COURT:  WE CAN TALK ABOUT IT.  OKAY?  SO THAT'S
```

1    35.

2           OKAY.  NOW, LET'S TALK ABOUT TRIAL EXHIBIT OBJECTIONS.

3           SO THE PROCESS THAT I WAS THINKING IS THAT AT 8:00 A.M.

4    TWO DAYS BEFORE A WITNESS OR AN EXHIBIT OR A DEMONSTRATIVE IS

5    GOING TO BE USED, YOU EXCHANGE IT WITH EACH OTHER; BY 7:00 P.M.

6    THAT NIGHT, YOU MEET AND CONFER IN PERSON, FIGURE OUT WHAT YOUR

7    OBJECTIONS ARE, HOPEFULLY YOU CAN WORK OUT SOME; AND THEN BY

8    8:00 A.M. THE NEXT DAY, WHICH IS ONE DAY BEFORE YOU'RE GOING TO

9    USE AN EXHIBIT, A DEMONSTRATIVE, A DEPOSITION DESIGNATION OR

10   CALL A WITNESS, YOU'RE GOING TO FILE YOUR HIGH PRIORITY

11   OBJECTIONS AND YOU'RE GOING TO RESPOND TO THE OTHER PARTY'S

12   OBJECTIONS TO YOUR EXHIBITS.  OKAY?

13          AND THEN I'LL GIVE YOU A RULING THAT NIGHT.  SO THE NIGHT

14   BEFORE YOU CALL A WITNESS, USE A DEPOSITION TRANSCRIPT OR

15   VIDEO, USE A DEMONSTRATIVE, YOU'LL HAVE A RULING SO YOU'LL KNOW

16   THE DAY BEFORE WHAT'S IN OR OUT.

17          MR. VAN NEST:  SO --

18          THE COURT:  NOW, I WANT TO LIMIT THAT BECAUSE I KNOW

19   THAT CAN GO CRAZY.  YOU ALL HAVE BIG TEAMS THAT ARE WORKING ALL

20   NIGHT AND I HAVE A SKELETON CREW THAT'S GOING TO BE DOING

21   EVERYTHING AND MANAGING ALL MY OTHER CRIMINAL AND CIVIL CASES.

22   SO I WOULD LIKE TO LIMIT THAT TO 15 OBJECTIONS PER DAY PER

23   SIDE.

24          MR. VAN NEST:  I THINK WE CAN LIVE WITH THAT, YOUR

25   HONOR.

1      AS I UNDERSTAND IT, AT 8:00 A.M. THE MORNING BEFORE THE

2   WITNESS GOES ON, WE FILE AND THEY FILE A BRIEF WITH THOSE

3   OBJECTIONS --

4      THE COURT:  YES.

5      MR. VAN NEST:  -- AND OUR ARGUMENT SO YOU GET THAT

6   ALL IN THE MORNING AT 8:00, AND THEN YOU'RE GOING TO GIVE US A

7   RULING THAT DAY, THAT EVENING.

8      THE COURT:  THAT EVENING.

9      MR. VAN NEST:  THAT EVENING.

10     THE COURT:  AT THE END OF TRIAL, WE'LL GET IT OUT.

11     MR. VAN NEST:  RIGHT.  AND THEN WE'RE CLEAR UNTIL --

12   WE'RE GOOD TO GO THE NEXT DAY.

13     THE COURT:  THEN YOU'RE GOING TO GO THE NEXT DAY.

14   YOU KNOW WHAT'S IN OR OUT.  YOU KNOW WHAT TO CALL AND PREP THAT

15   PERSON.

16     MS. MILICI:  IS THERE A PAGE LIMIT ON THE HIGH

17   PRIORITY OBJECTIONS?

18     THE COURT:  I'M GOING TO SAY EIGHT PAGES.

19     MS. MILICI:  AND JUST TO BE CLEAR, DID YOU REFER TO

20   AN IN PERSON MEET AND CONFER ON -- AT 7:00 P.M.?

21     THE COURT:  THAT'S WHAT I'D LIKE YOU TO DO, YEAH.  I

22   MEAN, IT DOESN'T HAVE TO BE LEAD TRIAL COUNSEL, ALTHOUGH IF IT

23   GETS REALLY UNREASONABLE, I MIGHT REQUIRE LEAD TRIAL COUNSEL TO

24   MEET IN PERSON, HAVE DINNER OR SOMETHING.  NO.

25     BUT JUST SOME PEOPLE NEED TO GET TOGETHER, BECAUSE THIS IS

```
1    WHAT I DON'T WANT:  I DON'T WANT WHAT'S FILED IN THE MORNING TO
2    BE TALKING PAST EACH OTHER.  I WANT THERE TO ACTUALLY BE A REAL
3    MEET AND CONFER SO BOTH SIDES UNDERSTAND WHAT IS THE OTHER
4    SIDE'S OBJECTION, IS THERE SOME SCOPE OF THAT DISPUTE THAT CAN
5    BE AGREED TO AND LIMITED?
6         AND THEN I WOULD LIKE, WHEN YOU FILE YOUR RESPONSES AND
7    YOUR OBJECTIONS, THAT THERE'S ACTUALLY SORT OF A, YOU KNOW, A
8    DIRECT DISPUTE VERSUS TWO SHIPS PASSING IN THE NIGHT BECAUSE
9    PEOPLE DON'T REALLY UNDERSTAND WHAT THE OTHER SIDE IS OBJECTING
10   TO.
11        MR. VAN NEST:  I'M UNDERSTANDING, AND I THINK
12   CORRECTLY, THAT WHAT YOU'RE CONTEMPLATING IS THAT ON THE DAY
13   THAT THE OBJECTIONS ARE FILED AT 8:00 IN THE MORNING, THE OTHER
14   SIDE FILES THEIR RESPONSE SIMULTANEOUSLY.  THAT'S WHY YOU'RE
15   WANTING A MEET AND CONFER.
16        THE COURT:  YES.
17        MR. VAN NEST:  SO AT 8:00 A.M., IF THEY HAVE, SAY,
18   FIVE OBJECTIONS, THEY FILE THOSE; AND WE'RE ALSO FILING AT 8:00
19   OUR RESPONSE TO THOSE BASED ON WHAT WE UNDERSTOOD FROM THE
20   NIGHT BEFORE.
21        THE COURT:  EXACTLY.  IS THAT OKAY?
22        MR. VAN NEST:  THAT'S FINE.  IT'S SUBJECT TO THE
23   PROBLEM YOU'VE IDENTIFIED, BUT I DON'T THINK, YOU KNOW, THERE'S
24   MUCH WE CAN DO ABOUT IT GIVEN THE TIMING.
25        THE COURT:  I MEAN, DO YOU WANT TO HAVE -- YOU KNOW,
```

1    I'VE DONE THIS PROCESS IN OTHER CASES AND IT'S WORKED.  I GUESS

2    IF IT DOESN'T WORK, WE CAN RE-EVALUATE AND FIGURE OUT ANOTHER

3    SYSTEM.

4              MR. VAN NEST:  SURE.

5              THE COURT:  WOULD YOU RATHER DO STAGGERED BRIEFING?

6    BUT THE PROBLEM IS YOU'LL BE HERE.

7              MR. VAN NEST:  WELL, WE'LL HAVE OUR TEAMS WORKING.

8          MY QUESTION TO YOU IS, WHEN WILL YOU LOOK AT THESE?  AT

9    THE END OF THE TRIAL DAY?

10             THE COURT:  AT LUNCH.

11             MR. VAN NEST:  YOUR CLERKS WILL BE LOOKING AT THEM.

12             THE COURT:  YEAH, EXACTLY.  OVER -- I MEAN, THE

13   RULINGS WE CAN DO AT LUNCH, WE'LL DO AT LUNCH.

14         BUT OTHERWISE, YES, IT'S USUALLY AT NIGHT.

15             MR. VAN NEST:  OKAY.  THE ONLY WAY -- MAYBE A LOGICAL

16   THING TO DO -- I'M HAPPY TO TRY IT THE WAY YOUR HONOR

17   SUGGESTS -- BUT MAYBE THE PARTIES' RESPONSE COULD COME IN AT

18   11:00 A.M.  IF THE OBJECTIONS COME IN AT 8:00, THEN THE

19   RESPONDING PARTY GETS THEM IN AT 11:00 OR 11:30, THEN YOU'VE

20   GOT THEM AT LUNCH AND YOU CAN LOOK AT THEM.  I THINK THAT WOULD

21   PROBABLY WORK, TOO.

22             MS. MILICI:  YOUR HONOR, I THINK WE WOULD BE FINE

23   WITH A SIMULTANEOUS EXCHANGE.  WE DO NOT HAVE AN EXCESSIVELY

24   LARGE TRIAL TEAM, SO HAVING TIME, MAKING SURE THAT I HAVE

25   SOMEBODY AVAILABLE TO RESPOND TO SOMETHING THAT'S FILED AT 8:00

```
1     BY 11:00 I THINK WOULD BE DIFFICULT.  SO WE WOULD RATHER JUST

2     HAVE THE SIMULTANEOUS EXCHANGE.

3              THE COURT:  UM-HUM.  IT'S WORKED IN THE PAST.  I

4     MEAN, YOU KNOW, IF IT REALLY DOESN'T WORK, WE CAN RE-EVALUATE

5     IT AND RE-ASSESS IT.

6              MR. VAN NEST:  OF COURSE.  LET'S TRY IT.

7              THE COURT:  IT'S WORKED IN THE PAST IN OTHER CASES.

8              MR. VAN NEST:  YOU'LL TELL US IF IT'S NOT USEFUL, IF

9     THE OBJECTIONS AREN'T -- IF THE RESPONSES AREN'T MEANINGFULLY

10    ADDRESSED TO THE OBJECTIONS, YOU'LL FIGURE THAT OUT AND TELL US

11    WE'VE GOT TO CHANGE THE PLAN.

12             THE COURT:  UM-HUM.  CAN WE DO -- I'M JUST THINKING

13    WHETHER WE WOULD -- THAT WOULD MEAN I HAVE TO DO 30 OBJECTIONS

14    EVERY NIGHT.

15             MR. VAN NEST:  WE'LL -- REMEMBER, YOU'RE ONLY GOING

16    TO HAVE ONE PARTY ON AT A TIME, SO -- GENERALLY SPEAKING,

17    RIGHT?  WHEN THEY'RE PRESENTING THEIR CASE, WE'LL BE OBJECTING;

18    AND WHEN WE'RE PRESENTING OUR CASE, THEY'LL BE OBJECTING.

19         I DON'T THINK YOU'RE GOING TO HAVE OBJECTIONS FLYING BACK

20    AND FORTH ON THE SAME DAY.  THERE WILL BE ONE TRANSITION DAY

21    WHEN WE TRANSITION TO OUR CASE.  BUT TYPICALLY THEY'LL BE

22    PUTTING THEIR CASE ON THE FIRST SEVERAL DAYS AND WE'LL BE

23    OBJECTING, AND THEN VICE-VERSA THE NEXT SEVERAL DAYS.

24             THE COURT:  WELL, BUT THE PROBLEM IS YOU'LL BE --

25    WHEN IT'S PLAINTIFF'S CASE, YOU'LL BE OBJECTING TO PLAINTIFF'S
```

```
1        DIRECT EXHIBITS AND SHE'LL BE OBJECTING TO YOUR CROSS EXHIBITS,

2    SO I WILL GET 30 OBJECTIONS.

3            YOU KNOW WHAT?  LET'S TAKE THIS TO -- WHAT ABOUT TEN PER

4    SIDE?

5                    MR. VAN NEST:  I THINK WE CAN LIVE WITH THAT.

6                    THE COURT:  THAT'S A TOTAL OF 20.

7                    MR. VAN NEST:  I THINK WE CAN LIVE WITH THAT.

8                    THE COURT:  OKAY.  THEN I'D LIKE THAT TO BE SIX

9    PAGES.  CAN YOU LIVE WITH FIVE PAGES?

10                   MR. VAN NEST:  THAT WOULD REALLY BE TOUGH, YOUR

11   HONOR.

12                   THE COURT:  ALL RIGHT.  SIX PAGES.  LET'S DO SIX

13   PAGES, TEN OBJECTIONS PER SIDE, SO YOU'LL GET RULINGS ON 20

14   OBJECTIONS PER NIGHT.  OKAY?

15           I MEAN, I WOULD LIKE TO HAVE MORE TIME AND NOT HAVE TO DO

16   THIS LATE AT NIGHT AFTER TRIAL, BUT I KNOW IT'S DIFFICULT FOR

17   YOU ALL TO KNOW WHICH -- YOU KNOW, WHICH WITNESSES, WHICH

18   DOCUMENTS YOU'LL BE RELYING ON.  SO THAT'S WHY I'M TRYING TO DO

19   IT AS CLOSE AS POSSIBLE TO THE DAY BEFORE.

20                   MR. VAN NEST:  THAT'S BETTER FOR US, TOO.

21                   THE COURT:  OKAY.  ALL RIGHT.  LET'S KEEP THIS.  YOU

22   KNOW, WE'RE COMMITTING TO DOING THIS AT NIGHT.

23           OKAY.  SO I'M GOING TO ENFORCE THE MARCH 30TH, 2018 FACT

24   DISCOVERY CUTOFF.

25                   ON THE ISSUE OF WHETHER THERE'S GOING TO BE AN INJUNCTION
```

```
1      OR NOT, I THINK THAT ONLY IS AN ISSUE IF I FIND A VIOLATION.

2      IF I DON'T FIND THE VIOLATION, THEN THERE'S NO INJUNCTION ON

3      THE TABLE.  IS THAT RIGHT?

4               MR. VAN NEST:  THAT'S THE TRUTH.

5               THE COURT:  SO WHAT I WAS GOING TO RECOMMEND IS WHY

6      DON'T WE KIND OF TREAT THIS LIKE A PATENT CASE?  LET'S HAVE THE

7      TRIAL, FIGURE OUT WHAT THE MERITS ARE; AND THEN AT A LATER

8      POINT, IF THE PLAINTIFF WANTS AN INJUNCTION, THEN THEY CAN MAKE

9      A MOTION AND THEN AT THAT POINT WE CAN DECIDE WHAT'S THE SCOPE

10     OF DISCOVERY FOR THAT DECISION.

11          IT COULD BE THAT WE NEVER REACH THAT IF I FIND THERE'S NO

12     VIOLATION.

13               MR. VAN NEST:  THAT WOULD BE FINE WITH US, YOUR

14     HONOR.

15               THE COURT:  IS THAT OKAY?

16               MR. VAN NEST:  THAT SEEMS REASONABLE.

17               THE COURT:  IS THAT OKAY FROM THE PLAINTIFF'S SIDE?

18     I DON'T WANT TO HAVE THIS FIGHT NOW IN THE MIDDLE OF TRIAL AND

19     HAVING ALL THESE OBJECTIONS TO EXHIBITS THAT THAT PARTICULAR

20     DOCUMENT WAS OR WAS NOT DISCLOSED BEFORE MARCH 30TH.  I MEAN, I

21     MAY NOT HAVE TO REACH THAT ISSUE.

22               MS. MILICI:  UNDERSTOOD.

23               THE COURT:  YEAH.

24               MS. MILICI:  OUR POSITION, AS WE SET FORTH HERE, IS

25     THAT THERE -- THE COURT DOESN'T NEED TO HEAR ANY ADDITIONAL
```

1    EVIDENCE OUTSIDE OF THE MARCH 30TH CUTOFF TO GRANT AN

2    INJUNCTION.

3         BUT WE CAN PUT THAT INTO A BRIEF IF YOU'D LIKE TO RECEIVE

4    A BRIEF ON THE INJUNCTIONS.

5              THE COURT:  YOU KNOW, I'M -- MY SENSE IS THAT IT'S

6    GOING TO BE HARD ENOUGH JUST DECIDING WHAT I HAVE TO DECIDE AT

7    TRIAL.  SO, YOU KNOW, HAVING FIGHTS OVER REMEDIES RIGHT NOW

8    SEEMS PREMATURE.

9              MR. VAN NEST:  THAT'S A --

10             THE COURT:  BECAUSE WE MAY NOT HAVE A REMEDY.

11             MR. VAN NEST:  THAT'S PERFECTLY ACCEPTABLE.

12   PERFECTLY ACCEPTABLE.

13             THE COURT:  BECAUSE I DON'T KNOW WHAT'S GOING TO

14   HAPPEN.  SO THEN LET'S JUST PUNT AND KICK THAT CAN DOWN THE

15   ROAD.

16        OKAY.  SO THEN THE ONLY THING I HAD ON MY LIST IS

17   WHETHER -- YOUR JOINT SEALING MOTION ISSUE.  NOW, WHAT'S THE

18   ISSUE?  I GUESS THINGS ARE BEING FILED AT MIDNIGHT OR WEE

19   HORSES OF THE MORNING THE NEXT DAY, AND SO YOU'RE CONCERNED

20   THAT THE SEALING MOTIONS AREN'T GETTING FILED ON TIME?  IS THAT

21   THE CONCERN?

22             MS. MILICI:  RIGHT.  THE ISSUE IS JUST THAT

23   THROUGHOUT THIS CASE, WE'VE HAD A NUMBER OF JOINT FILINGS AND

24   THEY TEND TO BE PUSHED UP TO VERY LATE AT NIGHT.

25             THE COURT:  YEAH.

```
 1            MS. MILICI:  AND PARTICULARLY WITH SOME OF THESE

 2   CURRENT MOTIONS TO SEAL, THERE'S WORK THAT HAS TO BE DONE

 3   AFTERWARDS AND WE'RE NOT GETTING INITIAL DRAFTS UNTIL VERY LATE

 4   AT NIGHT.

 5         SO WE WANTED TO JUST DISCIPLINE THE PROCESS BY HAVING A

 6   DEADLINE TO SUBSTANTIALLY COMPLETE THE DOCUMENT SO THAT THE

 7   OTHER PARTY CAN FILE IT WITHIN THE DEADLINE.

 8            THE COURT:  OKAY.  SO LET ME ASK YOU THIS:  I HAVEN'T

 9   WORKED OUT A PERFECT SYSTEM ON THE SEALING.  IS -- THERE MIGHT

10   BE SOME MIDDLE GROUND WHERE -- I MEAN, TECHNICALLY EVERYONE IS

11   ENTITLED TO MIDNIGHT.  I MEAN, OBVIOUSLY IF THEY'RE FILING

12   AFTER MIDNIGHT, IT'S LATE.  BUT TECHNICALLY, UNDER OUR CIVIL

13   LOCAL RULES, YOU'RE ENTITLED TO FILE UNTIL MIDNIGHT.  SO I

14   DON'T WANT TO CHANGE THE LOCAL RULES.

15            MS. MILICI:  TO --

16            THE COURT:  BUT I UNDERSTAND THE CONCERN ABOUT THE

17   SEALING.

18         SO IS THERE ANOTHER PROPOSAL WHERE MAYBE YOU CAN FILE THE

19   JOINT SEALING MOTION THE DAY AFTER?  OR -- I MEAN, I UNDERSTAND

20   ALSO WITH EAST COAST, WEST COAST, I DON'T WANT, YOU KNOW, YOUR

21   TEAMS TO BE STAYING UP AT NIGHT AT 1:00 A.M. WAITING FOR THE

22   MOTION TO FIGURE OUT WHAT NEEDS SEALING.

23            MR. BORNSTEIN:  FROM OUR PERSPECTIVE, YOUR HONOR, IT

24   WOULD GREATLY RELIEVE THE PRESSURE IF WE HAD THE EXTRA DAY,

25   BECAUSE THE PROBLEM WE'RE RUNNING INTO IS WE GET INFORMATION
```

1    AND THEN WE HAVE TO FIND SOMEBODY KNOWLEDGEABLE AT THE CLIENT

2    WHO COULD PUT TOGETHER A DECLARATION.  THOSE FOLKS ARE ALL IN

3    CALIFORNIA.

4            THE COURT:  OKAY.  SO WHAT IF WE DID THIS:  WHAT IF

5    YOU -- OKAY.  YOU CAN HAVE YOUR MIDNIGHT DEADLINE FOR FILING

6    YOUR BRIEFS, BUT THEN HAVE YOUR JOINT SEALING MOTION FILED THE

7    NEXT DAY, AND I GUESS YOU HAVE UNTIL MIDNIGHT TO FILE THAT ONE.

8            BUT I GUESS THEN -- I GUESS THEN WHATEVER YOU FILE SHOULD

9    JUST GO AHEAD AND HAVE YOUR REDACTIONS -- OKAY.  SO, WHAT, YOU

10   WOULD BE FILING YOUR REDACTED VERSION PUBLICLY, AND THEN FILING

11   YOUR --

12           MR. BORNSTEIN:  WE COULD --

13           THE COURT:  I MEAN, WE MAY WANT TO LOOK AT YOUR

14   ENTIRE DOCUMENT WITHOUT ANY REDACTIONS, SO CAN YOU GO AHEAD AND

15   FILE THAT UNDER SEAL AND THEN FILE YOUR MOTION THE NEXT DAY?

16           MR. BORNSTEIN:  WHAT WE HAVE BEEN DOING, YOUR HONOR,

17   IS WE'VE BEEN, I BELIEVE, GIVING COPIES TO CHAMBERS OF THE

18   UNREDACTED MATERIALS SO THAT YOUR HONOR AND YOUR HONOR'S STAFF

19   HAVE THEM RIGHT AWAY, AND THEN IT'S JUST A QUESTION OF WHEN THE

20   UNREDACTED VERSIONS ARE PROVIDED TO THE CLERK'S OFFICE UNDER

21   SEAL.

22           THE COURT:  I SEE.  SO YOU'RE HAND DELIVERING, THEN,

23   THE COPIES?

24           MR. BORNSTEIN:  YES, YOUR HONOR.

25           THE COURT:  OKAY.  WHY DON'T -- WE COULD DO THAT.  SO

```
1     YOU'RE HARD COPY DELIVERING THEM THE NEXT DAY ANYWAY.  IS THAT

2     RIGHT?

3               MR. BORNSTEIN:  THAT'S CORRECT, YES.

4               THE COURT:  OKAY.  ALL RIGHT.  SO THAT WORKS.  WHY

5     DON'T WE DO THAT THEN?  SO YOU FILE IT ELECTRONICALLY, A PUBLIC

6     REDACTED VERSION; YOU GIVE US CHAMBERS COPIES -- DOUBLE-SIDED,

7     PLEASE -- OF THE UN -- THE, YOU KNOW, EFFECTIVELY UNREDACTED.

8               MR. BORNSTEIN:  THE COMPLETE DOCUMENT.

9               THE COURT:  THE CONFIDENTIAL VERSION, CONFIDENTIAL

10    VERSION.

11         THEN THE DAY AFTER YOU FILE THAT BRIEF, YOU'LL FILE A

12    JOINT SEALING MOTION, AND THAT'S GOING TO COMPLY WITH

13    EVERYTHING THAT IS IN THAT MEET AND CONFER AND THE LOCAL RULES,

14    LIKE YOU'RE GOING TO PROVIDE A VERSION THAT HAS THE REDACTED

15    VERSION -- THE REDACTIONS HIGHLIGHTED IN YELLOW SO WE CAN SEE

16    THE ACTUAL INFORMATION YOU'RE TRYING TO SEAL, YOU'RE GOING TO

17    HAVE THE DECLARATION, YOU'RE GOING TO -- I GUESS YOU'RE -- YOU

18    MAY HAVE TO FILE ANOTHER PUBLIC REDACTED VERSION BECAUSE IT

19    COULD BE THAT YOU DON'T NEED OR WANT THE SAME INFORMATION

20    SEALED.  RIGHT?

21              MR. BORNSTEIN:  I GUESS THAT COULD HAPPEN.  I'M

22    TRYING TO THINK OF HOW THAT WOULD PAN OUT.

23              THE COURT:  LET'S SAY ONE PARTY IS JUST SEALING

24    EVERYTHING THAT'S BEEN DESIGNATED CONFIDENTIAL UNDER THE

25    PROTECTIVE ORDER, SO THAT'S GOING TO BE AN EXPANSIVE REDACTION.
```

1    BUT THEN THE NEXT DAY WHEN YOU MEET AND CONFER, IT TURNS OUT

2    THAT PARTY OR THAT THIRD PARTY DOESN'T REALLY CARE, SO THEN

3    YOU'RE GOING TO UNREDACT THAT INFORMATION.

4         SO I'M JUST THINKING YOUR REDACTIONS MAY BE --

5              MS. MILICI:  I --

6              MR. BORNSTEIN:  WE SHOULD BE --

7              MS. MILICI:  I THINK THAT WE CAN MEET AND CONFER ON

8    THE DAY OF THE INITIAL FILING, AND I THINK THAT WE'VE BOTH BEEN

9    GOOD ABOUT DOING THAT AT A REASONABLE TIME AND WE CAN DO THAT

10   ON THE DAY OF THE FILING AND THEN JUST LEAVE THE ACTUAL MOTION

11   AND DECLARATION DRAFTING AND FILING UNTIL THE NEXT DAY, THE

12   MOTION TO SEAL.

13             THE COURT:  OH, SO YOU'RE SAYING ON THE DAY OF FILING

14   THE DOCUMENT, YOU'RE ACTUALLY ALREADY AGREEING TO THE PORTIONS

15   THAT NEED TO BE SEALED?

16             MR. BORNSTEIN:  THAT'S CORRECT.  THE ONLY

17   COMPLICATION TO THAT IS SOMETIMES WE HAVE THIRD PARTIES WHO ARE

18   LESS COOPERATIVE THAN QUALCOMM WITH THE FTC.

19             THE COURT:  SURE.

20             MR. BORNSTEIN:  BUT WE'VE BEEN WORKING WELL TOGETHER

21   ON THAT ISSUE.

22             THE COURT:  OH, OKAY.  SO THEN YOU WON'T REALLY HAVE

23   ANY CHANGES, THEN, BETWEEN THE INFORMATION YOU'RE SEEKING TO

24   SEAL BETWEEN THE DAY OF FILING OF THE MERITS BRIEF AND THEN THE

25   SEALING MOTION.

```
 1              MS. MILICI:  I DON'T EXPECT ANY.

 2              MR. BORNSTEIN:  YEAH, AS LONG AS WE CAN SHARE

 3    INFORMATION WITH EACH OTHER FAR ENOUGH IN ADVANCE.  IT'S A

 4    PROCESS THAT BEARS A LITTLE BIT MORE ON US THAN IT DOES ON THEM

 5    BECAUSE WE'RE THE ONES WHO HAVE THE INFORMATION THAT'S AT

 6    ISSUE.

 7              THE COURT:  OKAY.

 8              MR. BORNSTEIN:  BUT THE ONLY PLACE I FORESEE A

 9    POTENTIAL HICCOUGH IS ON THIRD PARTIES.  BUT WE'VE BEEN

10    COMMUNICATING WITH THEM AS WELL AND MOSTLY GETTING COOPERATION.

11              THE COURT:  OKAY.  THAT -- DOES THAT SOLVE THE

12    PROBLEM THEN, IF YOU CAN FILE YOUR SEALING MOTION THE NEXT DAY?

13              MR. BORNSTEIN:  I THINK IT GOES A LONG WAY, YOUR

14    HONOR, YES.

15              THE COURT:  DOES THAT TAKE CARE OF IT?

16              MS. MILICI:  I THINK IT GOES A LONG WAY.

17         WE DO HAVE OTHER JOINT FILINGS, SO THIS IS AN ISSUE THAT'S

18    COME UP BEFORE, AND THE ISSUE FOR US IS REALLY THAT, THAT WE

19    THINK -- I AGREE THAT THE FILING DEADLINE IS MIDNIGHT.

20         BUT FOR SOMETHING THAT WE HAVE TO PARTICIPATE IN, I THINK

21    THAT IT'S -- YOU KNOW, OUR PREFERENCE IS NOT TO BE WORKING AT

22    QUARTER TO 12:00 ON REVIEWING THE FINAL DRAFT OF SOMETHING THAT

23    WE JUST GOT.

24         SO I AGREE THAT WE ALL HAVE MIDNIGHT TO FILE, BUT I DO

25    THINK THAT AN ISSUE OF, YOU KNOW, WHAT TIME ARE WE GETTING THE
```

1    FINAL VERSION DONE WITH EACH OTHER IS STILL FAIRLY BURDENSOME

2    TO US, AND WE'RE GOING TO HAVE JOINT FILINGS ON THE FINAL -- ON

3    THE PRETRIAL AND OTHER MATTERS.

4          THE COURT:  UM-HUM.  I'M WONDERING, COULD YOU WORK

5    OUT A HAPPY MIDDLE GROUND?  I MEAN, THE DEFENDANTS WANT

6    MIDNIGHT, PLAINTIFFS WANT 7:00.  COULD WE WORK OUT 9:00 P.M. OR

7    SOMETHING IN THE MIDDLE?  I MEAN, WHAT -- 10:00 P.M. OR JUST --

8    CAN YOU WORK OUT SOME MIDDLE GROUND, OR IS THAT NOT POSSIBLE?

9    YOU'RE TALKING ABOUT, WHAT, LIKE THE JOINT CASE MANAGEMENT

10   STATEMENT AND --

11         MS. MILICI:  YES.

12         MR. BORNSTEIN:  YOUR HONOR, OUR CONCERN IS WE HAVE --

13   YOU KNOW, THE BULK OF OUR TEAM IS IN CALIFORNIA.  I UNDERSTAND

14   THE FTC IS -- THE BULK OF THEIR TEAM IS IN WASHINGTON.

15        WE HAVE A CLIENT THAT WE NEED TO COORDINATE WHO'S HERE ON

16   PACIFIC TIME, AND THERE'S A LOT OF PEOPLE WHO, WHO NEED TO

17   WEIGH IN.  ESPECIALLY AS WE GET CLOSER TO TRIAL, THE FILINGS

18   ARE PRETTY IMPORTANT.  AND WE HAVE A DEADLINE, WE'RE ALL

19   WORKING TOWARDS IT, AND WE'D LIKE TO GET THINGS DONE EARLIER.

20         THE COURT:  UM-HUM.

21         MR. BORNSTEIN:  BUT DEPRIVING US OF THAT TIME,

22   ESPECIALLY GIVEN THE TIME DIFFERENCE, IS A CHALLENGE.

23         THE COURT:  OKAY.  I'M NOT GOING TO GET INVOLVED IN

24   THAT.  PLEASE JUST TRY TO WORK THINGS OUT AS EARLY AS POSSIBLE

25   SO PEOPLE ARE NOT HAVING TO WORK UNTIL MIDNIGHT OR 1:00 A.M.

```
 1          OKAY.  BUT AT LEAST AS FAR AS SEALING MOTIONS, YOU'RE
 2   GOING TO FILE THEN YOUR SEALING MOTIONS THE DAY AFTER YOU FILE
 3   WHATEVER THE UNDERLYING DOCUMENT IS.  OKAY?
 4          BECAUSE WHAT I WANTED TO AVOID IS WHAT'S BEEN HAPPENING IN
 5   TOO MANY SEALING MOTIONS IS THAT THE FILING PARTY JUST TRIES TO
 6   SEAL EVERYTHING THAT A PARTY HAS DESIGNATED CONFIDENTIAL, AND
 7   THEN IT TURNS OUT THAT THE PARTY WHO OWNS THAT CONFIDENTIAL
 8   INFORMATION DOESN'T CARE ABOUT CERTAIN PORTIONS OF IT, AND THEN
 9   IT'S REALLY HARD FOR US THEN TO HAVE TO TRACK EVERY SINGLE
10   REQUEST AND WHAT PORTION WAS THEN WITHDRAWN AND THEN WHAT'S
11   STILL A LIVE DISPUTE.
12          SO TO THE EXTENT YOU CAN JUST SAY, "OKAY, WE HAVE MET AND
13   CONFERRED, THIS IS THE ONLY PART THAT NEEDS A RULING," IT JUST
14   SAVES US AN INCREDIBLE AMOUNT OF FRUSTRATION AND TIME.
15              MR. BORNSTEIN:  CERTAINLY.
16              MS. MILICI:  CERTAINLY.  AND I THINK WE CAN STILL DO
17   THAT, AND DO THAT EFFECTIVELY, EVEN IF WE FILE THE
18   ADMINISTRATIVE MOTION TO SEAL THE NEXT DAY.
19              MR. BORNSTEIN:  MS. MILICI AND I HAVE SOMETHING OF A
20   STANDING 6:00 P.M. CALL THESE DAYS ON JOINT FILINGS.
21              THE COURT:  OKAY.  ALL RIGHT.  SO THEN YOUR JOINT
22   SEALING MOTIONS ARE DUE THE DAY AFTER THE UNDERLYING DOCUMENT
23   WAS FILED.  OKAY?  SO I HOPE THAT TAKES CARE OF SOME OF YOUR
24   HEADACHES.
25              MR. BORNSTEIN:  IT DOES, YOUR HONOR.  THANK YOU.
```

1            THE COURT:  OKAY.  SO THAT WAS ALL ON MY LIST.

2        IS THERE ANYTHING ELSE ON YOUR LIST?

3            MR. BORNSTEIN:  NOT FOR QUALCOMM, YOUR HONOR.  THANK

4    YOU.

5            THE COURT:  OKAY.  AND THEN JUST, YOU KNOW, ONE LAST

6    ITEM.  I MEAN, I CERTAINLY WANT TO ENCOURAGE YOU, DO YOU WANT

7    ANY ALTERNATIVE DISPUTE RESOLUTION?  OR NOT?

8            MS. MILICI:  I THINK THAT THE FTC'S POSITION ON THAT

9    HASN'T CHANGED.  WE ARE FULLY CAPABLE OF ENGAGING PRODUCTIVELY

10   IN SETTLEMENT DISCUSSIONS AND TO REACH SETTLEMENTS WHEN THEY'RE

11   IN THE PUBLIC INTEREST, AND I'M NOT SURE THAT AN ADR PROCESS

12   WOULD BE -- WOULD ADD MUCH VALUE TO THAT.

13           THE COURT:  OKAY.  SO YOU WOULD JUST PREFER HAVING

14   DIRECT DISCUSSIONS RATHER THAN BRINGING IN A THIRD PARTY?

15           MS. MILICI:  YES.

16           MR. BORNSTEIN:  AT THIS POINT, YOUR HONOR, WE AGREE

17   WITH THAT.

18           THE COURT:  OKAY.  ALL RIGHT.  WELL, I'M HAPPY TO

19   REVISIT THAT AT THE PTC IF YOU THINK AT THAT POINT THE

20   INVOLVEMENT OF A NEUTRAL IS HELPFUL.

21           MR. BORNSTEIN:  THANK YOU.

22           THE COURT:  OKAY.  AND THEN THE OTHER THING IS I DO

23   NOT VACATE DATES UNLESS I HAVE A STIPULATION OF DISMISSAL.

24       NOW, IF YOU REACH AN AGREEMENT AND YOU NEED SOME TIME TO

25   ACTUALLY EXECUTE THE CONDITIONS OF THAT AGREEMENT, YOU'RE

1    ALWAYS WELCOME TO STIPULATE TO A DISMISSAL WITHOUT PREJUDICE,

2    WITH THE PROVISION THAT THE COURT RETAIN JURISDICTION TO

3    ENFORCE THE SETTLEMENT.  AND THEN ONCE ALL THE TERMS ARE

4    EXECUTED, AT THAT POINT THEN FILE A STIPULATION OF DISMISSAL

5    WITH PREJUDICE.  SO THAT'S ONE OPTION TO TAKE CARE OF IT IF YOU

6    NEED TIME TO EXECUTE TERMS.

7         BUT I -- YOU KNOW, WE'RE SO CLOSE -- YOU KNOW, WE HAVE A

8    PRETRIAL CONFERENCE MID-DECEMBER, WE HAVE A TRIAL JANUARY 4TH.

9    WE'RE SO CLOSE, I'M NOT GOING TO MOVE THE DATES.  OKAY?  OR

10   VACATE THE DATES OR DELAY THE DATES.

11        I MEAN, WE'RE, WHAT, WE'RE LESS THAN -- WE'RE, LIKE, TWO

12   AND A HALF MONTHS TO TRIAL.

13             MR. BORNSTEIN:  CORRECT.

14             THE COURT:  SO THESE DATES ARE SET.  THEY WILL NOT BE

15   MOVED.  OKAY?

16             MR. BORNSTEIN:  WE UNDERSTOOD THAT FROM YOUR HONOR'S

17   STANDING GUIDELINES ALREADY.

18             THE COURT:  THANK YOU.

19             MR. BORNSTEIN:  SO THANK YOU FOR CONFIRMING FOR US.

20             THE COURT:  OKAY.  ANYTHING ELSE?

21        I DON'T THINK WE NEED ANOTHER CASE MANAGEMENT CONFERENCE.

22   I THINK JUST THE PRETRIAL IN DECEMBER, WHICH IS ALREADY, WHAT,

23   ONLY SEVEN WEEKS AWAY.

24             MS. MILICI:  I JUST HAVE A QUESTION ABOUT THE

25   SEPARATE REMEDY PROCESS --

```
 1              THE COURT:  WHAT'S THAT?

 2              MS. MILICI:  -- THAT WE JUST DISCUSSED.  I JUST WANT

 3     TO MAKE SURE I UNDERSTAND WHAT THE COURT IS THINKING ABOUT

 4     THAT, IS THAT IF THERE IS A FINDING OF LIABILITY FOLLOWING THE

 5     TRIAL, YOU WOULD WANT US TO SUBMIT A MOTION ASKING FOR

 6     INJUNCTIVE RELIEF AND --

 7              THE COURT:  WELL --

 8              MS. MILICI:  -- WITH ADDITIONAL EVIDENCE OR BASED ON

 9     THE EVIDENCE IN THE RECORD?  I JUST WANT TO MAKE SURE THAT

10     WE'RE BUILDING TOWARDS WHAT WE WOULD NEED TO HAVE AT THAT

11     POINT.

12              THE COURT:  WELL, I MEAN, I GUESS THE OTHER OPTION IS

13     I DON'T KNOW IF YOUR JOINT CASE MANAGEMENT STATEMENT WAS THE

14     BRIEFING YOU WANTED ON THIS ISSUE, ON WHETHER THERE SHOULD BE A

15     REOPENING OF DISCOVERY OR NOT.

16              MR. BORNSTEIN:  WELL, YOUR HONOR, I --

17              THE COURT:  IS THIS THE BRIEFING -- I MEAN, THERE ARE

18     CERTAIN CASES CITED.  I --

19              MR. BORNSTEIN:  SO, YOUR HONOR, WE'RE -- I DON'T MEAN

20     TO INTERRUPT THE COURT, BUT WE'RE NOT LOOKING TO REOPEN

21     DISCOVERY.  THAT REALLY ISN'T THE ISSUE THAT WAS WHAT WE

22     THOUGHT WAS BEFORE YOUR HONOR.

23          OUR ISSUE IS IF THE COURT WERE PROCEEDING IN A WAY THAT WE

24     HAD -- THAT WE WERE CONCERNED MIGHT BE THE WAY THE COURT WAS

25     INTENDING TO PROCEED WHERE THERE WOULD BE AN INJUNCTION
```

```
 1        POTENTIALLY ISSUED AT THE CONCLUSION OF THE TRIAL AND THE
 2     POST-TRIAL BRIEFING AND SO FORTH, WE WERE CONCERNED THAT WE
 3     WOULD NOT BE ABLE TO PUT IN FRONT OF YOUR HONOR EVIDENCE THAT
 4     WE BELIEVE THE COURT NEEDS TO BE AWARE OF.
 5        AND WE GAVE SOME EXAMPLES IN THE CASE MANAGEMENT
 6     STATEMENT, THINGS LIKE THE FACT THAT QUALCOMM IS NO LONGER
 7     SELLING CHIPS TO APPLE FOR THE FLAGSHIP DEVICES, WHICH WE THINK
 8     GOES TO THINGS LIKE MARKET POWER.
 9        AND IF YOUR HONOR IS CONTEMPLATING, AFTER A FINDING OF
10     LIABILITY, IF THERE IS ONE, ENTERING A PROSPECTIVE FUTURE
11     LOOKING INJUNCTION, WE THINK THE COURT NEEDS TO TAKE INTO
12     ACCOUNT THINGS LIKE, FOR EXAMPLE, WHETHER OEM'S CURRENTLY DO
13     HAVE ALTERNATIVES TO QUALCOMM AS A SUPPLIER.
14        AND THAT'S EVIDENCE WE WANTED TO BE SURE WE COULD SUBMIT
15     TO THE COURT.
16        IF THE COURT IS INCLINED TO DEFER THAT QUESTION AS TO WHAT
17     THE REMEDY WILL BE, I DO THINK THIS PROBLEM LARGELY GOES AWAY.
18            MS. MILICI:  YOUR HONOR, IF I COULD RESPOND?
19        I THINK THAT WE'RE RAISING AN ISSUE THAT'S A LITTLE BIT
20     DISINGENUOUS.  THERE IS EVIDENCE IN THE RECORD ABOUT THE CHIPS
21     THAT APPLE IS USING.  THAT IS A PUBLIC FACT.  THERE IS NO
22     DANGER THAT YOUR HONOR IS NOT GOING TO HAVE THE INFORMATION
23     ABOUT WHICH CHIPS APPLE IS USING.
24        SO I THINK THAT THAT'S KIND OF A FEINT AT SOMETHING THAT'S
25     NOT A REAL ISSUE.
```

1              THE COURT:  UM-HUM.

2              MS. MILICI:  AND I THINK THAT, YOU KNOW, OUR CONCERN

3     IS THAT QUALCOMM IS NOT ABLE TO, YOU KNOW, GET TO THE REMEDY

4     PHASE AND SAY, "HERE'S A BUNCH OF DOCUMENTS FROM MY FILES THAT

5     YOU SHOULD LOOK AT," AND WITHOUT US HAVING TIME TO CONDUCT

6     DISCOVERY ON THOSE, AND TO CONDUCT ADEQUATE DISCOVERY WOULD

7     REQUIRE GOING BACK TO THIRD PARTIES.

8              THE COURT:  UM-HUM.

9              MS. MILICI:  I THINK THAT WE CAN'T REALLY LOOK AT

10    QUALCOMM'S VIEW OF THE NEGOTIATION WITHOUT LOOKING AT THE

11    LICENSEE'S VIEW OF THAT NEGOTIATION AND THE OPTIONS THAT WERE

12    AVAILABLE TO THE LICENSEE FOR CHIPS OR OTHERWISE AT THE TIME.

13             THE COURT:  UM-HUM.

14             MS. MILICI:  SO WE'RE -- I'M JUST TRYING TO

15    ANTICIPATE NOW WHETHER YOU WOULD SEE AT THIS REMEDY PHASE, IF

16    WE WERE TO CONSIDER REOPENING DISCOVERY AT THAT POINT, IT WOULD

17    POTENTIALLY BE A VERY LARGE UNDERTAKING.

18             THE COURT:  UM-HUM.

19             MS. MILICI:  AND WE THINK -- AND WE THINK THAT THE

20    CASE LAW IS PRETTY -- SUPPORTS US AND THAT THE COURT DOESN'T

21    NEED TO LOOK AT A LOT OF POST-DISCOVERY EVIDENCE AND THAT

22    THERE'S NO -- THERE'S NO AUTHORITY FOR THE PROPOSITION THAT A

23    TRIAL THAT'S HELD NINE MONTHS AFTER THE CLOSE OF DISCOVERY IS,

24    IS INVOLVING STALE EVIDENCE.

25             MR. VAN NEST:  YOUR HONOR?

1          MR. BORNSTEIN:  SO YOU -- OH.

2          THE COURT:  SO YOU'RE SAYING YOU WANT -- SO THEN DO

3    YOU WANT TO JUST BRIEF THAT FOR THE PTC?

4          MS. MILICI:  SURE.

5          MR. BORNSTEIN:  AND THAT WOULD BE BRIEFING WHAT, YOUR

6    HONOR?

7          THE COURT:  THE QUESTION OF IF DISCOVERY CLOSED ON

8    MARCH 30TH OF 2018, DOES THAT REQUIRE A REOPENING OF DISCOVERY

9    ON WHAT IS THE CURRENT STATUS SINCE THE CLOSE OF DISCOVERY AT

10   THE END OF MARCH OF THIS YEAR TO DETERMINE THE LIKELIHOOD OF

11   RECURRENCE OF THE VIOLATION, WHICH IS A DETERMINATION THAT I

12   BELIEVE IS NECESSARY FOR DETERMINING WHETHER A PERMANENT

13   INJUNCTION SHOULD BE IMPOSED.  IS THAT CORRECT?

14         MR. BORNSTEIN:  I THINK THAT IS RIGHT, YOUR HONOR.

15         THE COURT:  YEAH.

16         MR. BORNSTEIN:  THE ONE REFINEMENT IS THE ISSUE, FROM

17   OUR PERSPECTIVE, ISN'T STRICTLY WHETHER DISCOVERY CAN BE

18   REOPENED.  IT'S A QUESTION -- OR SHOULD BE REOPENED.

19       IT'S A QUESTION OF THE EVIDENCE THAT WE WOULD LIKE TO

20   PRESENT TO THE COURT AT TRIAL.

21       SO IF THE COURT IS INTENDING TO CONSIDER THE PROSPECT OF

22   AN INJUNCTION, WE THINK THE COURT NEEDS TO BE AWARE OF CERTAIN

23   FACTS.  SOME OF THEM MAY BE PUBLIC, SOME OF THEM ARE NOT.

24       WE'VE GIVEN AN EXAMPLE IN THE PRETRIAL -- IN THE

25   SUBMISSION OF LICENSE AGREEMENTS THAT HAVE BEEN EXECUTED SINCE

```
 1         THE CLOSE OF DISCOVERY.
 2              THE COURT:  RIGHT.  IF THAT'S GOING TO BE INTRODUCED,
 3         THEN I WOULD ALLOW THE FTC TO TAKE DISCOVERY INTO THAT.
 4              MR. BORNSTEIN:  SURE, AND WE WOULDN'T OBJECT TO THAT,
 5         YOUR HONOR.
 6         THE ISSUE IS WHAT WE WOULD LIKE TO BE SURE THE COURT IS
 7         AWARE OF, GIVEN THE REQUIREMENT UNDER THE STATUTE THAT THE
 8         COURT FIND THAT QUALCOMM EITHER IS VIOLATING OR IS ABOUT TO
 9         VIOLATE THE FTC ACT.
10         AND WE'RE HAPPY TO BRIEF THE ISSUE, YOUR HONOR.  I THINK
11         THAT'S A FINE IDEA.  I JUST WANTED TO MAKE SURE THAT WE HAD A
12         COMMON UNDERSTANDING ON WHAT THE SCOPE OF THE BRIEFING WAS.
13         THAT'S ALL.
14              MS. MILICI:  AND I JUST WANT TO SAY, PART OF THE
15         ISSUE HERE IS JUST A PRACTICAL ONE.
16              THE COURT:  OKAY.
17              MS. MILICI:  QUALCOMM DIDN'T RAISE THIS ISSUE WITH US
18         UNTIL OCTOBER 8TH OF SAYING, "HERE ARE ALL THESE LICENSES THAT
19         WE WANT TO ADD TO THE RECORD AND WE THINK THE COURT SHOULD
20         CONSIDER," AND JUST AS A PRACTICAL MATTER, THERE IS ABSOLUTELY
21         NO WAY THAT WE CAN CONDUCT MEANINGFUL DISCOVERY ON THOSE
22         LICENSES, OR EVEN GET A SUBSTANTIAL DOCUMENT PRODUCTION, BY THE
23         TIME OF TRIAL.  SO, YOU KNOW, THAT'S PART OF THE ISSUE.
24              AND I JUST WANT TO CORRECT MR. BORNSTEIN --
25              THE COURT:  SO I GUESS WHAT'S YOUR CONCERN THEN?
```

```
1        LET'S SAY THERE'S A LIABILITY VERDICT, OR DECISION, FINDING OF
2        FACT AND CONCLUSIONS OF LAW.  THEN YOU'RE GOING TO SAY THEY
3        WANT TO UNDERMINE THAT BECAUSE THEN THEY WANT TO REOPEN
4        DISCOVERY AND GET INTO ALL THESE THINGS POST-DISCOVERY CUTOFF?
5                 MS. MILICI:  MY CONCERN IS WE END UP SETTING UP
6        HAVING TO HAVE AN ENTIRE OTHER DISCOVERY PERIOD AND AN ENTIRE
7        OTHER HEARING ON THE EVIDENCE THAT'S UNCOVERED IN THAT
8        DISCOVERY PERIOD.
9                 THE COURT:  UM-HUM.
10                MS. MILICI:  IF THAT'S HOW THE COURT WANTS TO
11       PROCEED, THEN WE WOULD BE INTERESTED TO KNOW THAT.  BUT THAT
12       IS -- THAT IS, YOU KNOW, POTENTIALLY A VERY LARGE UNDERTAKING.
13                THE COURT:  OKAY.  THEN YOU KNOW WHAT?  WHY DON'T WE
14       JUST HAVE THIS BRIEFED THEN FOR THE PRETRIAL CONFERENCE?  DO
15       YOU WANT TO JUST BRIEF IT FOR THE PRETRIAL CONFERENCE?
16                MS. MILICI:  SURE.
17                THE COURT:  WE CAN DO THAT AS WELL.
18       I MEAN, I'M JUST -- I'M ANTICIPATING, BASED ON HOW THIS
19       CASE HAS BEEN LITIGATED, THAT THERE WILL BE A LOT OF ISSUES
20       THAT HAVE BEEN TO BE RULED ON AT TRIAL, AND SO, YOU KNOW, TO
21       THE EXTENT WE CAN TRY TO NARROW WHAT NEEDS TO BE DECIDED
22       IMMEDIATELY, I THINK IT COULD BE HELPFUL.
23       BUT I GUESS YOU'RE SAYING THAT'S JUST GOING TO CREATE MORE
24       UNCERTAINTY AND CREATE MORE PROBLEMS.
25                MS. MILICI:  IT'S AN ISSUE FOR US OF WHETHER WE NEED
```

1    TO -- IF YOU WANTED TO REOPEN DISCOVERY ABOUT THESE AGREEMENTS

2    POST-TRIAL -- YOU KNOW, THE OTHER PARTIES ARE MOSTLY FOREIGN

3    CORPORATIONS.  WE WOULD HAVE TO BE GETTING STARTED ON THOSE

4    HAGUE CONVENTION REQUESTS PROBABLY NOW.

5            THE COURT:  UM-HUM.

6            MS. MILICI:  SO IT WOULD BE -- AND, AGAIN, WE DON'T

7    THINK THAT THE STANDARD REQUIRES THAT.  TO GRANT AN INJUNCTION,

8    WE HAVE TO SHOW LIABILITY, AND THEN THAT THERE IS SOME

9    COGNIZABLE RISK OF RECURRENCE.  WE THINK WE CAN EASILY SHOW

10   THAT ON THE CURRENT RECORD.

11       THE STANDARD DOESN'T REQUIRE THAT WE SHOW AN IMMINENT

12   THREAT OF RECURRENCE OR A CERTAINTY OF RECURRENCE.  IT'S A

13   REASONABLE RISK OF RECURRENCE.

14           MR. BORNSTEIN:  TO BE FAIR, YOUR HONOR, THE STATUTE

15   REQUIRES -- AND THE FTC HAS CHOSEN TO COME TO COURT RATHER THAN

16   TO USE ITS ADMINISTRATIVE PROCESSES, AND HAVING CHOSEN TO COME

17   TO FEDERAL COURT UNDER SECTION 13(B), IT'S REQUIRED TO SHOW A

18   CURRENT VIOLATION OR THAT QUALCOMM IS ABOUT TO VIOLATE.

19           THE COURT:  UM-HUM.

20           MR. BORNSTEIN:  IF IT WENT TO ITS ADMINISTRATIVE

21   PROCESSES IN WASHINGTON, IT COULD SHOW THAT THERE HAS BEEN A

22   VIOLATION.

23       IT'S A DIFFERENT STANDARD, HAVING COME HERE TO SEEK RELIEF

24   FROM YOUR HONOR, RATHER THAN DOING IT THE OLD-FASHIONED WAY, SO

25   TO SPEAK.

```
 1              THE COURT:  OKAY.  WHY DON'T WE DO THIS:  WHY DON'T

 2     YOU BRIEF IT FOR THE MOTIONS IN -- THAT ARE DECIDED FOR THE

 3     PRETRIAL CONFERENCE.  BUT I'M NOT GUARANTEEING THAT I WILL

 4     DECIDE IT THEN.  I MAY STILL DECIDE TO JUST PUSH IT OFF AND

 5     DECIDE IT LATER.

 6              BUT I DON'T FEEL COMFORTABLE -- THIS IS A PRETTY IMPORTANT

 7     DECISION.  I DON'T FEEL COMFORTABLE MAKING IT ON THE JOINT CASE

 8     MANAGEMENT STATEMENT.  OKAY?

 9              SO WHY DON'T WE THEN SET A BRIEFING SCHEDULE WITH PAGE

10     LIMITS?  DO YOU WANT TO JUST DO -- WHAT ABOUT JUST DOING

11     SIMULTANEOUS THREE-PAGE BRIEFS, AND THEN I'LL ALLOW YOU TO DO

12     SIMULTANEOUS THREE-PAGE RESPONSES.  DOES THAT SOUND OKAY?

13              YOU'VE KIND OF ALREADY BRIEFED IT.  I MEAN, I'VE ALREADY

14     LOOKED AT SOME OF THESE CASES, FTC VERSUS EVANS PRODUCT

15     COMPANY, WHITTAKER VERSUS EXECUAIR, AND FTC VERSUS MEDLAB.

16     YOU'VE ALREADY KIND OF BRIEFED IT SOMEWHAT, BUT I DON'T KNOW IF

17     THERE'S ANYTHING MORE YOU WANT TO SAY, OR DO YOU WANT TO STAND

18     ON YOUR JOINT CASE MANAGEMENT STATEMENT.  I DON'T KNOW.

19              MR. BORNSTEIN:  I THINK WE'D APPRECIATE THE

20     OPPORTUNITY TO BE HEARD ON IT AGAIN IN WRITING, YOUR HONOR.

21     WHETHER IT'S THREE PAGES OR FIVE PAGES, I THINK THAT CONCEPT IS

22     JUST FINE.

23              MS. MILICI:  WE'D BE HAPPY TO SUBMIT ADDITIONAL

24     BRIEFING, AND I WOULD AGREE THAT FIVE PAGES WOULD BE MORE

25     HELPFUL.
```

1          THE COURT:  REALLY?  BUT YOU'VE ALREADY KIND OF

2     BRIEFED IT IN YOUR --

3          MR. BORNSTEIN:  WE CAN DO THREE, YOUR HONOR.

4          THE COURT:  -- 20 PAGE JCMS.

5       ALL RIGHT.  WHY DON'T WE --

6          MR. VAN NEST:  HOW ABOUT FOUR, YOUR HONOR?

7       (LAUGHTER.)

8          MR. BORNSTEIN:  SO I --

9          MR. VAN NEST:  SPEAKING OF PRIDE.

10         MR. BORNSTEIN:  I BROUGHT MR. VAN NEST SO HE COULD DO

11    THE HAGGLING, YOUR HONOR.

12      (LAUGHTER.)

13         MR. VAN NEST:  I'M SORRY.

14         THE COURT:  ALL RIGHT.  I FEEL LIKE I'M SELLING AT A

15    FLEA MARKET.  BUT, OKAY, FOR THAT PERSISTENCE, FOUR PAGES,

16    MR. VAN NEST.  FOUR PAGES, FOUR PAGES.  OKAY?  YOU'LL DO

17    SIMULTANEOUS BRIEFING, AND THEN I'LL LET YOU DO SIMULTANEOUS

18    RESPONSES.  OKAY?

19         MR. BORNSTEIN:  WHEN WOULD YOU LIKE THOSE, YOUR

20    HONOR?

21         THE COURT:  DO YOU WANT TO JUST DO THOSE -- WELL,

22    COULD YOU DO IT SOONER TO GIVE US A LITTLE MORE TIME TO PREPARE

23    THAT?

24         MS. MILICI:  YES, YOUR HONOR.

25         THE COURT:  IT SOUNDS LIKE THAT ONE IS NOT DEPENDENT

1    ON DISCLOSURE OF EXHIBIT LIST OR ANYTHING.

2           MR. BORNSTEIN:  IT SHOULDN'T BE.

3           THE COURT:  OKAY.  WHEN CAN YOU DO IT, SO WE CAN AT

4    LEAST GET STARTED ON CERTAIN THINGS?

5           MR. BORNSTEIN:  WELL, THIS IS SOMETHING THAT YOU

6    WOULD LIKE TO HAVE TEED UP FOR AT LEAST POTENTIAL DECISION AT

7    THE PRETRIAL?  IS THAT CORRECT?

8           THE COURT:  THAT'S RIGHT.  AND I THINK OUR PRETRIAL

9    IS DECEMBER 13TH.  IS THAT RIGHT?

10          MR. BORNSTEIN:  THAT'S RIGHT, YOUR HONOR.

11          THE COURT:  OKAY.  SO WHEN CAN YOU DO THAT?

12          MR. BORNSTEIN:  MAYBE --

13          MS. MILICI:  THE FTC COULD DO IT VERY QUICKLY IF THE

14   COURT WANTED TO LOOK AT IT SOONER THAN THAT.  I THINK THAT THAT

15   COULD BE HELPFUL TO THE PARTIES AS WE'RE IDENTIFYING THE

16   EXHIBITS AND SO FORTH TO KNOW, YOU KNOW, WHAT THE COURT'S

17   POSITION IS --

18          THE COURT:  UM-HUM.

19          MS. MILICI:  -- ON THIS KIND OF EVIDENCE.

20          THE COURT:  OKAY.

21          MS. MILICI:  SO -- BUT WE COULD TURN AROUND A

22   FOUR-PAGE BRIEF VERY, VERY QUICKLY.

23          THE COURT:  SO DO YOU WANT TO SAY, LIKE, NEXT MONDAY?

24   NEXT TUESDAY?

25          MS. MILICI:  NEXT TUESDAY WILL BE --

1         MR. BORNSTEIN:  CAN WE LET THAT SLIP TO SOMEWHERE

2   ABOUT THE END OF THE WEEK, THURSDAY OR FRIDAY OR SO, AND THEN

3   HAVE THE RESPONSES SHORTLY THEREAFTER?  SO IT'LL ALL BE TEED UP

4   WELL BEFORE THANKSGIVING.

5         MS. MILICI:  WE HAVE THE PRETRIAL EXCHANGE SCHEDULED

6   FOR NOVEMBER 8TH, SO I THINK THAT WE'RE ALREADY DOING QUITE A

7   LOT THAT FOLLOWING WEEK.  BUT, YES, WE COULD PUSH IT TO THE

8   1ST, I SUPPOSE.

9         MR. BORNSTEIN:  NOVEMBER 1ST.

10        THE COURT:  WHAT ABOUT HALLOWEEN, OCTOBER 31?  AND

11  THEN DO YOU WANT A WEEK FOR THE RESPONSES?  NOVEMBER 7TH?

12        MR. BORNSTEIN:  THAT'S FINE, YOUR HONOR.

13        THE COURT:  SO YOU CAN JUST TAKE CARE OF IT BEFORE

14  YOUR -- OKAY.  ALL RIGHT.

15      SO LET ME ASK, ARE YOU ALL STILL DISCUSSING POSSIBLE

16  RESOLUTION, OR NOT?  AND IF YOU DON'T WANT TO COMMENT, THAT'S

17  OKAY, TOO.

18        MS. MILICI:  MY UNDERSTANDING IS THAT THE PARTIES ARE

19  STILL ENGAGED IN SETTLEMENT DISCUSSIONS.

20        THE COURT:  OKAY.  ALL RIGHT.  WELL, OBVIOUSLY IF

21  YOU'RE GOING TO RESOLVE, DO IT BEFORE WE HAVE TO DO ALL THE

22  WORK IN YOUR CASE, SO -- OKAY.  WHAT ELSE?

23      I DON'T THINK WE NEED ANOTHER CMC BEFORE THE DECEMBER 13TH

24  PRETRIAL CONFERENCE.  IS THAT CORRECT?

25        MR. BORNSTEIN:  I DON'T FORESEE A NEED FOR ONE

1      CURRENTLY.

2              MS. MILICI:  NO.

3              THE COURT:  NO?  OKAY.  WELL, THEN, I THINK THE NEXT

4      COURT DATE WILL JUST BE YOUR PRETRIAL CONFERENCE.

5          I DON'T HAVE ANYTHING ELSE.

6          ANYTHING ELSE?

7              MR. BORNSTEIN:  NO.  THANK YOU, YOUR HONOR.

8              THE COURT:  NO?  OKAY.  THANK YOU.

9              MS. MILICI:  THANK YOU.

10             THE COURT:  OKAY.  THANK YOU.

11             MR. VAN NEST:  THANK YOU, YOUR HONOR.

12             THE COURT:  THANK YOU.

13         (THE PROCEEDINGS WERE CONCLUDED AT 4:40 P.M.)

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                       CERTIFICATE OF REPORTER

4

5

6

7         I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8    STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9    280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11        THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16   _____
     LEE-ANNE SHORTRIDGE, CSR, CRR
17   CERTIFICATE NUMBER 9595

18        DATED:  OCTOBER 24, 2018

19

20

21

22

23

24

25