Jennifer Milici, D.C. Bar No. 987096
J. Alexander Ansaldo, Va. Bar No. 75870
Joseph R. Baker, D.C. Bar No. 490802
Elizabeth A. Gillen, Cal. Bar No. 260667
Daniel Matheson, D.C. Bar No. 502490
Mark J. Woodward, D.C. Bar No. 479537
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
(202) 326-2912; (202) 326-3496 (fax)
*jmilici@ftc.gov*

Attorneys for Plaintiff Federal Trade Commission

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>QUALCOMM INCORPORATED, a Delaware corporation,<br><br>Defendant. | Case No. 5:17-cv-00220-LHK-NMC<br><br>**PLAINTIFF FEDERAL TRADE COMMISION'S BRIEF REGARDING POST-DISCOVERY EVIDENCE** |

1  The FTC is prepared to show at trial that Qualcomm's course of conduct, including its policies of refusing to sell modem chips to handset manufacturers without a license and refusing to license rival modem-chip manufacturers, stifles competition in markets for modem chips. Qualcomm admits that it has employed these policies for more than a decade and that it continues to employ them today. The FTC is also prepared to show at trial that there is a cognizable risk of recurrent violation of the FTC Act through Qualcomm's use of market power to weaken rivals, including by continuing its long-standing anticompetitive licensing practices. Under well-established case law, these showings of ongoing conduct and likely recurrent violation of the FTC Act would be sufficient to warrant injunctive relief. *See, e.g., United States v. W.T. Grant Co.,* 345 U.S. 629, 633 (1953) (injunctive relief should be granted if "there exists some cognizable danger of recurrent violation"); *FTC v. Evans Prods. Co.,* 775 F.2d 1084, 1087-88 (9th Cir. 1985) ("general rule" of equitable jurisdiction that "an injunction will issue only if the wrongs are ongoing or likely to recur" applies to the FTC Act); *FTC v. USA Fin., LLC*, 415 F. App'x 970, 975 (11th Cir. 2011) (affirming injunction where "defendant's past conduct indicates that there is a reasonable likelihood of further violations in the future"); *FTC v. Accusearch Inc.*, 570 F.3d 1187, 1201-02 (10th Cir. 2009) (following *W.T. Grant* and upholding injunction granted under the FTC Act); *see also FTC v. Medlab, Inc.*, 615 F. Supp. 2d 1068, 1082 (N.D. Cal. 2009); *FTC v. Lake,* 181 F. Supp. 3d 692, 703 (C.D. Cal. 2016).

*Qualcomm has not shown good cause to modify the trial schedule or to re-open discovery.*

It has long been clear that the Court intends to hold a single trial on both liability and remedy. The Court entered its first scheduling order on April 19, 2017, setting both a deadline for the close of fact discovery of March 30, 2018, and a trial date nine months later, beginning January 4, 2019. (ECF No. 75.) Before the Court issued the order, the parties submitted a joint case management report stating that "[t]he parties do not seek bifurcation of any issues." (ECF No. 71, at 17.) The scheduling order did not provide for separate remedy proceedings. (ECF No. 75.)

In the parties' November 8, 2017 joint statement, Qualcomm proposed, for the first time, that the January 2019 trial relate only to liability and that the Court hold a separate proceeding on

1  remedy. (ECF No. 286, at 10 n.3). On November 15, 2017, the Court rejected Qualcomm's
2  proposal. Nov. 15, 2017 Hr'g Tr. at 4:21-5:1 ("It sounds like you want 15 days for liability and
3  then you are going to want, I don't know how many days for [remedy], and I'm not going to
4  agree to that."). The Court did, however, add two days to the trial. (ECF No. 308, at 2.)[1]

5  On the same day, the Court also responded to Qualcomm's position that then-recent
6  competitive conditions would be relevant to the defenses it planned to assert. (ECF No. 286, at
7  11). The Court directed that any evidence presented at trial, including the refresh that Qualcomm
8  was proposing, must derive from "full discovery," and not "cherry picked data" or "cherry picked
9  custodians." Nov. 15, 2017 Hr'g Tr. at 27:16-17; *id.* at 26:18-19. The parties proceeded to
10 conduct substantial discovery, including from third parties, on both liability and remedy, through
11 the close of fact discovery.

12 Since fact discovery closed, the parties have submitted seven joint case management
13 statements to the Court. *See* ECF Nos. 672, 705, 710, 763, 766, 780, 914. It was not until October
14 8, 2018, nine days before the seventh statement was due to the Court, and less than three months
15 before trial, that Qualcomm informed the FTC that it intends to rely on certain post-discovery
16 evidence at trial.[2] Qualcomm has offered no justification for its failure to propose months ago a
17 discovery plan that would allow it to rely on such evidence.[3] Qualcomm's untimely
18 announcement prejudices the FTC, which will be unable to conduct adequate discovery on these
19 or other recent issues prior to trial, and precludes any finding of good cause to modify the
20 schedule to re-open discovery or to delay a trial on a remedy. *See* Fed. R. Civ. P. 16(b) (a court's
21 scheduling order can only be modified for "good cause"); *see also Johnson v. Mammoth*
22 *Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir. 1992) ("Rule 16(b)'s 'good cause' standard

---

[1] The FTC does not oppose briefing the scope of remedy either post-trial or following a decision on liability. Consistent with the Court's prior orders, any such briefing should be based on the evidence introduced during the January 2019 trial.

[2] Before October 8, Qualcomm had not raised the possibility of refreshing discovery with the FTC since February 2018 and had not raised the issue with the Court since December 8, 2017.

[3] The majority of the post-discovery licenses that Qualcomm produced in the related Southern District actions were signed by the end of July, and many were signed in the months before that. Qualcomm presumably knew that the post-discovery licenses might be agreed to at least some months prior to their execution.

primarily considers the diligence of the party seeking" the modification and "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.").

### *It is too late to conduct meaningful discovery prior to trial.*

As the Court has directed, Qualcomm should not be permitted to supplement the record with evidence cherry-picked from its own files, and it is now too late to conduct meaningful additional discovery prior to trial. Qualcomm argues that license agreements that post-date the close of fact discovery should be considered at trial because they "were demonstrably unaffected by any alleged market power." (ECF No. 914, at 16.) But the discovery required to test that assertion would have to include documents and testimony from multiple Qualcomm custodians involved in licensing and chip sales, as well as document and deposition discovery from third parties.[4] Discovery from third-party licensees, which include foreign corporations, could take many months to complete. *See* ECF No. 914, at 10-11. And, while the parties conducted that discovery, Qualcomm could enter additional agreements that would require yet more discovery for the Court to have up-to-the-minute information.

To date, Qualcomm has not been clear about the second category of post-discovery evidence that it seeks to introduce, asserting only that Apple and other unnamed major OEMs have "reduced or eliminated" modem chip purchases from Qualcomm. (ECF No. 914, at 15.) Qualcomm specifically states that Apple sourced modems from Intel for its 2018 iPhone models, but Apple's decision to use Intel chips was made before the close of fact discovery and is the subject of existing discovery. *See, e.g.*, Nevo Report, at 149 n.508 (quoting deposition testimony) (ECF No. 791-7, Ex. 1). Qualcomm has not identified any OEM that reduced chip purchases from

---

[4] Qualcomm's assertions that the post-discovery agreements are "5G licenses" and that, because it has not yet supplied commercial quantities of 5G modem chips, it cannot have market power, are misleading in several respects. *First*, Qualcomm has entered a number of agreements to sell 5G chips. *See* Qualcomm, "Global OEMs Select Qualcomm Snapdragon X50 5G NR Modem Family for Mobile Device Launches in 2019," Feb. 8, 2018, available at https://www.qualcomm.com/news/releases/2018/02/08/global-oems-select-qualcomm-snapdragon-x50-5g-nr-modem-family-mobile-device. *Second*, the post-discovery licenses appear to include terms covering multiple standards, not just 5G. *See* FTC Nevo Mot. at 2 n.3 (ECF No. 790). *Third*, Qualcomm could have used threats to cut off the supply of chips that it *is* shipping to secure agreements to 5G terms. Whether it in fact used such threats can only be determined through discovery, including third-party discovery.

Qualcomm *after* the close of discovery nor any evidence that it intends to rely upon at trial. If Qualcomm seeks to introduce its own confidential information, the FTC must be given the opportunity to test that evidence through discovery, including discovery from the as-yet-unidentified OEM(s).

If Qualcomm were correct that the Court must provide for supplemental discovery regarding recent events, then discovery ought not to be limited to the two categories of information that Qualcomm has identified. Qualcomm is in a position to cherry-pick recent events – and the documents that it created about those events – that might lend some support to its arguments while omitting those inconsistent with it. In contrast, the FTC does not have access to Qualcomm confidential information, and cannot identify narrow additional discovery to support its positions without the opportunity to receive and review documents on multiple topics from Qualcomm. Any abbreviated pick-your-favorite process of supplemental discovery is likely to provide the Court with a distorted picture that favors Qualcomm.

*<u>The FTC's request for equitable relief does not require perpetual discovery</u>.*

There is no provision of the FTC Act or the Federal Rules that requires the Court, before granting an injunction, to choose between allowing discovery to continue up to the date of trial or admitting a defendant's cherry-picked evidence untested by discovery. As a practical matter, there will always be some lag time between the close of discovery and the Court's consideration of the evidence. Here, the Court has moved the case quickly and efficiently from discovery to trial; there has been no unreasonable delay justifying supplemental discovery.

The cases Qualcomm has cited to date do not support its position. None of these cases concern a defendant seeking to introduce evidence from its own files without the opportunity for the plaintiff to take discovery. *See* ECF No. 914, at 8 & n.13. And none of the cases in which the FTC was a plaintiff addressed whether a court that has expeditiously moved a case from discovery to trial must consider evidence of transactions occurring between the close of fact discovery and trial before ordering a remedy. *See id.* at 8.

The FTC respectfully requests that the Court clarify that the January 2019 trial will encompass both liability and remedy and the March 30 fact discovery deadline will be enforced.

Dated:  October 31, 2018

Respectfully submitted,

FEDERAL TRADE COMMISSION,

*/s/ Jennifer Milici*
Jennifer Milici
J. Alexander Ansaldo
Joseph R. Baker
Elizabeth A. Gillen
Daniel Matheson
Mark Woodward
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
(202) 326-2912; (202) 326-3496 (fax)
jmilici@ftc.gov

**Attorneys for Federal Trade Commission**