| | |
|---|---|
| CRAVATH, SWAINE & MOORE LLP<br>Gary A. Bornstein (*pro hac vice*)<br>gbornstein@cravath.com<br>Yonatan Even (*pro hac vice*)<br>yeven@cravath.com<br>825 Eighth Avenue<br>New York, New York 10019-7475<br>Telephone: (212) 474-1000<br>Facsimile:  (212) 474-3700<br><br>KEKER, VAN NEST & PETERS LLP<br>Robert A. Van Nest (SBN 84065)<br>rvannest@keker.com<br>Eugene M. Paige (SBN 202849)<br>epaige@keker.com<br>Justina K. Sessions (SBN 270914)<br>jsessions@keker.com<br>633 Battery Street<br>San Francisco, CA 94111-1809<br>Telephone: (415) 391-5400<br>Facsimile:  (415) 397-7188<br><br>Attorneys for Defendant<br>QUALCOMM INCORPORATED | MORGAN LEWIS & BOCKIUS LLP<br>Richard S. Taffet (*pro hac vice*)<br>richard.taffet@morganlewis.com<br>101 Park Avenue<br>New York, New York 10178-0060<br>Tel: (212) 309-6000<br>Fax: (212) 309-6001<br><br>MORGAN LEWIS & BOCKIUS LLP<br>Willard K. Tom (*pro hac vice*)<br>willard.tom@morganlewis.com<br>1111 Pennsylvania Ave. NW<br>Washington, DC 20004-2541<br>Telephone: (202) 739-3000<br>Facsimile:  (202) 739-3001<br><br>MORGAN LEWIS & BOCKIUS LLP<br>Geoffrey T. Holtz (SBN 191370)<br>geoffrey.holtz@morganlewis.com<br>One Market, Spear Street Tower<br>San Francisco, CA 94105-1596<br>Telephone: (415) 442-1000<br>Facsimile:  (415) 442-1001 |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>QUALCOMM INCORPORATED,<br>a Delaware corporation,<br><br>Defendant. | Case No. 5:17-cv-00220-LHK<br><br>**DEFENDANT QUALCOMM INCORPORATED'S RESPONSE BRIEF IN OPPOSITION TO THE FTC'S REQUEST THAT THE COURT ISSUE AN INJUNCTION WITHOUT CONSIDERING EVIDENCE OF POST-DISCOVERY FACTS**<br><br>Courtroom:  8, 4th Floor<br>Judge:       Hon. Lucy H. Koh |

Qualcomm's Response Brief in Opposition
to the FTC's Request
Case No. 5:17-cv-00220-LHK

The FTC concedes, as it must, that for this Court to issue a forward-looking permanent injunction, the FTC must prove that any violation of the FTC Act is "ongoing or likely to recur". (ECF 928 at 1 (quoting *FTC v. Evans Prods. Co.*, 775 F.2d 1084, 1087-88 (9th Cir. 1985)).) The FTC nevertheless argues that the Court should ignore critical evidence of recent events that bears directly on that question. The FTC does not argue that this evidence is irrelevant, but instead says the Court should not consider it because the events occurred after the close of fact discovery. Such willful blindness to current events would be both unprecedented and unwarranted. The FTC does not cite, and Qualcomm is not aware of, a single case in which a court considering an injunction under Section 13(b) has refused to hear evidence of relevant events simply because they occurred after fact discovery. To be clear, Qualcomm does not seek to reopen discovery—much less the "perpetual discovery" the FTC claims. (*Id.* at 4.) Qualcomm asks only that the Court consider evidence of current market conditions before deciding whether to issue a forward-looking injunction that may regulate multiple aspects of Qualcomm's future business. While the FTC now asserts additional discovery would be necessary but infeasible, its solution—that the Court ignore the events entirely—would be error. Moreover, the FTC's claim that Qualcomm has been "untimely" in raising this issue (*id.* at 2) is wrong; Qualcomm made clear to the FTC months ago that it intends to rely on post-discovery events, but the FTC repeatedly rebuffed Qualcomm's efforts to discuss a process for refreshing the record.

The parties agree that proof of market power is a necessary predicate to liability. Because the FTC must prove an ongoing violation or one that is about to occur, it must prove that Qualcomm currently has or is about to obtain and abuse market power. (*See* ECF 929 at 2.) But the FTC asks the Court to assess that issue based on evidence that is frozen in time. Its economic expert does not opine that Qualcomm held market power in any alleged market after 2016. (*Id.* at 1.) That leaves a two-year gap before trial. The FTC contends it may bridge that gap—and ask the Court to infer that Qualcomm has current market power—based solely on events that pre-date the fact discovery cut-off and speculation as to what might have happened afterwards. (*Id.* at 3-4.) But the cellular industry did not stop just because fact discovery ended. If the FTC intends to

1

Qualcomm's Response Brief in Opposition
to the FTC's Request
Case No. 5:17-cv-00220-LHK

try to prove that Qualcomm "stifles competition in markets for modem chips" today (ECF 928 at 1), Qualcomm ought to be allowed to defend itself by presenting real-world evidence of today's market conditions. And for the Court to give proper consideration to the FTC's request for a forward-looking Section 13(b) injunction, the Court needs actual evidence of current market conditions—rather than outdated speculation about how the market might now, or will, look.

Instead of addressing this key substantive issue, the FTC focuses almost entirely on process. The FTC leads off with the red herring of what it refers to as "bifurcation", but that is not what the Court asked the parties to brief. As reflected in the Court's October 24, 2018 Case Management Order (ECF No. 922), the issue is whether the Court will consider evidence of events occurring after the close of fact discovery. How the Court chooses to do that—whether at trial or afterwards—is a separate question subject to the Court's discretion. The FTC says it will not oppose "briefing the scope of remedy either post-trial or following a decision on liability" (ECF 928 at 2 n.1), but that would not solve the problem if, as the FTC urges, such briefing excludes relevant evidence just because it came into existence after the close of fact discovery. Under the FTC's approach, the Court would still be deciding whether to grant an injunction, and what its scope should be, on a stale record—contrary to the requirements of Section 13(b).

Even as to process, the FTC's argument is without merit. The FTC concedes that Qualcomm made known last year that it intended to rely on evidence of market developments occurring closer to trial. In response to the FTC's argument about "cherry-picking", Qualcomm has made it plain for nearly a year that it would be willing to engage in appropriately tailored discovery to address this issue, but the FTC refused to negotiate a process to update the record. During the fact discovery period, the FTC objected that it was too *early* for such discussions, stating that it would be unproductive to discuss updating the record "based on events that have not yet occurred". (ECF 378 at 5-6.) The FTC instead posited that the window between summary judgment briefing and the final pretrial conference could be an appropriate opportunity. (ECF 914 at 15.) But when Qualcomm raised updating the record during this window, the FTC complained that it was too *late* for such discussions and that the parties could not complete any

2

Qualcomm's Response Brief in Opposition
to the FTC's Request
Case No. 5:17-cv-00220-LHK

additional discovery before trial. The FTC's varying ripeness and timeliness complaints are a cover for its desire to exclude relevant evidence it deems unhelpful to its case.

Notwithstanding the FTC's shifting positions, Qualcomm has diligently updated the record by producing additional license agreements to the FTC (including ten agreements produced by the end of June 2018, before the end of expert discovery).[1] Further, on June 28, 2018, Qualcomm served the expert report of its economist Dr. Aviv Nevo, which referred to two of the recent 5G agreements. Rather than take Qualcomm up on its earlier offers to provide discovery, the FTC made the tactical decision to remain silent until moving to strike that portion of Dr. Nevo's report on August 30, 2018. Then, when Qualcomm again reiterated its willingness to provide discovery to address alleged "cherry-picking", the FTC refused. Having rejected Qualcomm's requests to meet and confer on evidence of events after fact discovery closed, while fully aware that Qualcomm intended to rely on such events, the FTC's now-professed inability to take discovery on those events (even if true) is a problem of the FTC's own making.

In any event, the FTC exaggerates its claimed need for additional discovery. (ECF 928 at 3-4.) While the FTC claims it may need "documents and testimony from multiple Qualcomm custodians involved in licensing and chip sales, as well as document and deposition discovery from third parties" (*id.* at 3), that is inconsistent with its approach to supplemental discovery in the past. When Qualcomm and Samsung signed an amendment to their license agreement in January 2018, the parties negotiated a targeted discovery protocol, under which Qualcomm produced communications between Qualcomm and Samsung from the files of three custodians. The FTC did not serve Samsung with additional discovery requests.

Although the FTC would like to put the focus on discovery, the key question here is ultimately substantive—whether the Court may consider granting an injunction on a stale record, without considering material recent events. The FTC seeks essentially a bright-line rule

---

[1] The FTC states that Qualcomm "presumably knew" that these license agreements were under negotiation prior to the fact discovery cut-off (ECF 928 at 2 n.3), but it is unclear what the FTC believes Qualcomm could or should have done during fact discovery with respect to agreements that were still under negotiation and not yet concluded.

3

Qualcomm's Response Brief in Opposition
to the FTC's Request
Case No. 5:17-cv-00220-LHK

excluding any facts that happened after fact discovery ended no matter how material.[2] But to do so would be error. (*See* ECF 914 at 13 n.16.) Indeed, the FTC itself previously acknowledged that the question whether to update the record depended on a variety of factors, including "the relevance of the additional discovery". (ECF 378 at 6.)

Here, Qualcomm has shown that there have been fundamental factual developments since fact discovery closed. The most successful OEM in the world, Apple, no longer buys Qualcomm's CDMA or LTE modem chips, meaning that Qualcomm CDMA and LTE chips simply cannot be "must have" products that give Qualcomm anticompetitive leverage during licensing negotiations. Qualcomm intends to prove that it does not, and is not about to, have power in any market alleged by the FTC. Further, key OEMs have agreed to 5G license agreements with Qualcomm at a time when 5G networks have not even come on line, so no OEM has any current "need" for a 5G chip from Qualcomm. The FTC speculates—on the basis of no evidence whatsoever—that "Qualcomm could have used threats to cut off the supply of chips that it is shipping to secure agreements to 5G terms". (ECF 928 at 3 n.4.) This rank speculation is indistinguishable from the FTC's expert's assertion that the transition to 5G "*may* afford Qualcomm an opportunity to renew and fortify" its ability to engage in anticompetitive conduct. (ECF 877-11 (Report of Prof. Shapiro ¶ 313) (emphasis added).) These guesses and predictions from the FTC cannot provide a foundation for the Court to consider a Section 13(b) injunction; instead, they demonstrate the need for evidence of what is actually happening in the real world.[3] The Court cannot assess granting an injunction without considering these material facts that bear directly on whether Qualcomm has market power and whether it can impair competition.

---

[2] It is unclear whether the FTC seeks to preclude only "confidential information" from Qualcomm's "files" (ECF 928 at 3-4) or whether it also objects to witness testimony about recent events. To the extent the FTC envisions allowing third parties to testify regarding recent events but precluding Qualcomm from doing so, that would be even more unfair.

[3] The FTC also cites a Qualcomm press release relating to 5G chips, which is dated before the close of fact discovery. (ECF 928 at 3 n.4.) The FTC could have taken discovery on this and other evidence relating to 5G chips during fact discovery and chose not to. Indeed, the FTC has not claimed, let alone attempted to prove, that Qualcomm has market power in any market for 5G chips, or even alleged that such a market exists. (*See* ECF 929 at 4.)

4

Qualcomm's Response Brief in Opposition
to the FTC's Request
Case No. 5:17-cv-00220-LHK

Dated:  November 7, 2018

Respectfully submitted,

CRAVATH, SWAINE & MOORE LLP,


    /s/ *Gary A. Bornstein*
Gary A. Bornstein
Yonatan Even

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Tel: (212) 474-1000
Fax: (212) 474-3700
gbornstein@cravath.com
yeven@cravath.com

Robert A. Van Nest
Eugene M. Paige
Justina K. Sessions
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Tel: (415) 391-5400
Fax: (415) 397-7188
rvannest@keker.com
epaige@keker.com
jsessions@keker.com

5

Qualcomm's Response Brief in Opposition
to the FTC's Request
Case No. 5:17-cv-00220-LHK

Richard S. Taffet
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178-0060
Tel: (212) 309-6000
Fax: (212) 309-6001
richard.taffet@morganlewis.com

Willard K. Tom
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave. NW
Washington, DC 20004-2541
Tel: (202) 739-3000
Fax: (202) 739 3001
willard.tom@morganlewis.com

Geoffrey T. Holtz
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: (415) 442-1000
Fax: (415) 442-1001
geoffrey.holtz@morganlewis.com

*Attorneys for Qualcomm Incorporated*

6

Qualcomm's Response Brief in Opposition
to the FTC's Request
Case No. 5:17-cv-00220-LHK