# Exhibit 28

```
 1                    FEDERAL TRADE COMMISSION
 2
 3
 4    FEDERAL TRADE COMMISSION,      )
 5           Plaintiff,              )
 6       vs.                         ) Case No.
 7    QUALCOMM INCORPORATED, a       ) 5:17-cv-00220-LHK-NMC
 8    Delaware corporation,          )
 9           Defendant.              )
10
11
12
13           The videotaped deposition of DR. BERTRAM
14    HUBER, called by the Federal Trade Commission, for
15    examination, taken before Stephanie A. Battaglia, CSR
16    and Notary Public in and for the County of DuPage and
17    State of Illinois, at 191 North Wacker Drive, Suite
18    2700, Chicago, Illinois, on August 8, 2018, 9:16 a.m.
19
20
21
22
23
24
25
```

146

Huber

FTC v. Qualcomm, Inc.                                              8/8/2018

```
 1   meaning of the respective words and terms used in that
 2   clause you come to the conclusion that it makes a
 3   difference at which level you license.
 4              Therefore, to give you a direct answer to
 5   my question of whether I believe this FRAND commitment
 6   would require to grant a license to anybody, my clear
 7   answer is, no, it does not, and it does not
 8   deliberately.
 9        Q.   I understand that -- again, I am
10   paraphrasing, but I understand that your opinion as
11   set forth in your report is that you said it depends
12   at the level at which you are licensing, and my
13   understanding of your opinion is that the FRAND
14   commitment does not require IPR holders to license at
15   the component level, is that accurate?
16        A.   This is accurate, yes.  It does not
17   require to grant a license at the component level.
18        Q.   And under your reading of the ETSI IPR
19   Policy would the policy permit an IPR -- an IPR holder
20   to assert its patents against a component maker, to
21   exclude that component maker?
22        A.   That is probably too general a question
23   would be necessary to have the specific circumstances,
24   but basically the fact that the ETSI IPR Policy
25   especially in its Clause 6.1 states as a requirement
```

1  higher royalties?
2       A.   No, it would not, because it would allow
3  the patentholder to obtain an appropriate royalty, a
4  fair and reasonable royalty, because the royalty is
5  being calculated at the level of the relevant device
6  where all the positive effects being contributed by
7  especially network connectivity, universal network
8  connectivity, comes to life, and that is where it --
9  why it makes most sense.
10            In addition, and I think I have
11 elaborated on this on various instances, it has been
12 industry practice all the time, it makes most sense,
13 it is most practical, and any deviation therefrom is
14 not impractical but it is really hard to practice at
15 all because a different regime of licensing at various
16 levels at mixing various levels of licensing would end
17 up in a total mess because you cannot all only look at
18 one single licensor, you have to look at all of them,
19 and you end up in a nightmare of checking and double
20 checking what can be licensed, what has been licensed
21 already, and that is simply why industry has chosen
22 and stick to that until today that the base for
23 licensing is the end-user device, and that makes
24 perfect sense.
25      Q.   So in the same paragraph you refer to

188

Huber

FTC v. Qualcomm, Inc.                                            8/8/2018

1  submissions of ETSI members with proposals relating to
2  a small and salable practicing unit?
3       A.   Yes.
4       Q.   I know we talked about this earlier.  Are
5  you familiar with any of the cases from U.S. courts
6  containing guidance on the small and salable patent
7  practicing unit?
8       A.   All I know is that there are I think very
9  rare cases which deal with that, but I am not familiar
10 with any of these in detail.  As I said, I am not an
11 expert in U.S. law.
12      Q.   Would you agree though that a
13 patentholder seeking damages in a U.S. court would be
14 bound by the U.S. patent laws and guidance from the
15 U.S. federal courts?
16      A.   If you go to court probably the court
17 will apply the laws of the jurisdiction it is placed
18 in that for sure.  But here we are talking about FRAND
19 licensing, we are not talking about patent damages
20 law, so that is basically two different aspects.
21 Patent license, negotiated and concluded patent
22 license is not necessarily guided only by the patent
23 damages law of this country.  Typically licenses are
24 portfolio licenses for the whole world so why should
25 they be guided alone by the court's practices in one

1      particular country and be it a very important country.
2          Q.    Turn to Page 32, the second to last
3      paragraph, it begins with "The fact that the ETSI IPR
4      Policy does not prescribe specific rules."
5          A.    Yes.
6          Q.    The end of that sentence you say, "the
7      FRAND commitment should be viewed as consistent with
8      common industry licensing practices."
9          A.    Yes.
10         Q.    Is there any basis in the text of the IPR
11     -- ETSI IPR Policy for the idea that the commitment
12     should be viewed as consistent with common industry
13     licensing practices?
14         A.    Well, coming from the other ends you can
15     certainly state that would ETSI have been concerned to
16     change industry practice it would have had to
17     positively state so.
18               ETSI decided not to do so, to the
19     contrary, to leave the definition of the specific
20     terms and conditions to be made basis of the license
21     agreement to the parties and the parties bilateral
22     negotiation.  And at the same time general industry
23     practice was there, was existing, and it was generally
24     known and there was no point where I could recall that
25     ever anybody advocated for changing existing industry

Huber
FTC v. Qualcomm, Inc.                                           8/8/2018

1    practice.
2             That is why I think it is fair to say
3    that the fact that there is no specific rules to
4    deviating from or only rules generally how licensing
5    complying with FRAND should be done is indicative in
6    any case that the industry practices as they were
7    present and they have remained present until the
8    present day would be understood as being in line with
9    the ETSI FRAND requirements.
10        Q.   And the reference to the common industry
11   licensing practices there, you are referring to the
12   industry practices when the ETSI IPR Policy was
13   adopted in 1994, correct?
14        A.   At that time, yes.
15        Q.   And do you have an understanding as to
16   whether -- let me rephrase that.
17             Would you agree that in 1994 when the
18   policy was adopted most handset makers were vertically
19   integrated?
20        A.   I am not sure I can answer this.  I would
21   have to look into this in more detail.  I probably
22   sitting here today I think I would require some time
23   to look deeper into this.  I am not sure I can confirm
24   this.
25        Q.   If it were the case that most handset

```
 1   STATE OF ILLINOIS)
 2                   ) SS.
 3   COUNTY OF DUPAGE )
 4           I, STEPHANIE A. BATTAGLIA, CSR and Notary
 5   Public in and for the County of DuPage and State of
 6   Illinois, do hereby certify that on August 8, 2018, at
 7   9:16 a.m., at 191 North Wacker Drive, Suite 2700,
 8   Chicago, Illinois, the deponent DR. BERTRAM HUBER
 9   personally appeared before me.
10           I further certify that the said DR. BERTRAM
11   HUBER was by me first duly sworn to testify and that
12   the foregoing is a true record of the testimony given
13   by the witness.
14           I further certify that the deposition was
15   terminated at 5:45 p.m.
16           I further certify that I am not counsel for
17   nor related to any of the parties herein, nor am I
18   interested in the outcome hereof.
19           In witness whereof, I have hereunto set my
20   hand and seal of office this 9th of August, 2018.
21                               s/Stephanie A. Battaglia
22                                         Notary Public
23   CSR No. 084-003337 - Expiration Date:  May 31, 2019.
24
25
```