# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

FEDERAL TRADE COMMISSION,

    Plaintiff,

    v.

QUALCOMM INCORPORATED, a Delaware corporation,

    Defendant.

Case No. 5:17-cv-00220-LHK

**PLAINTIFF FEDERAL TRADE COMMISSION'S WITNESS LIST**

## PLAINTIFF FEDERAL TRADE COMMISSION'S WITNESS LIST

Pursuant to the Court's Standing Order, the Federal Trade Commission respectfully submits the following list of witnesses that it may call to testify at trial other than solely for impeachment or rebuttal with a brief statement describing the general subject matter of the testimony to be given. The FTC has also indicated whether it intends to call each witness live or by deposition designation, based on the information currently known to it about each witness and whether the attendance of the witness may be compelled by the Court.

### FACT WITNESSES BY LIVE TESTIMONY

**Live Witnesses Represented by Qualcomm's Counsel at deposition**, each of whom may testify about: Qualcomm's supply and licensing agreements; negotiations with actual and prospective customers and licensees; Qualcomm's policies and practices related to product sales and licensing; the development and adoption of cellular standards; Qualcomm's commitments to license standard essential patents ("SEPs") on fair, reasonable, and non-discriminatory ("FRAND") terms; modem chip markets; Qualcomm's market power; barriers to entry and expansion in modem chip markets; the effects of Qualcomm's policies and practices on competition, innovation, and consumers; any other issues addressed in his deposition or his investigational hearing; or any documents or data introduced into evidence by Qualcomm or the FTC as to which the witness has knowledge:

1. **Derek Aberle** was President of Qualcomm from 2014 until December 31, 2017, when he left the company, and was a paid consultant for Qualcomm after his departure from the company. His prior roles at Qualcomm included Legal Counsel (2000-2005), General Manager of Licensing (2005-2011), and Group President of Qualcomm Technology Licensing ("QTL") (2011-2014).

2. **Steve Altman** was President of Qualcomm from approximately 2004-2011, and Vice Chairman from approximately 2011 until his retirement in January 2014.

3. **Cristiano Amon** is President of Qualcomm, responsible for oversight of Qualcomm's semiconductor business, and previously held various other roles relating to Qualcomm's semiconductor business since he started at Qualcomm in 1995.

4. **Fabian Gonell** is Senior Vice President, Licensing Strategy, and Legal Counsel at Qualcomm, and has been in this role since approximately 2017. Prior to 2017, he was Senior Vice President and Division Counsel, QTL. Prior to his position as SVP and Division Counsel, QTL, he was in the legal department at QTL, where he worked since 2007.

5. **Irwin Jacobs** was co-founder, Chief Executive Officer, and Chairman of Qualcomm beginning with its founding in 1985. He left his role as Chief Executive Officer in 2005.

6. **Paul Jacobs** served as Chairman of the Qualcomm Board of Directors from March 2009 to March 2018, as Executive Chairman from March 2014 to March 2018, and as a director from June 2005 to March 2018. He served as Chief Executive Officer from July 2005 to March 2014. He previously held various other roles since he joined Qualcomm in 1990. He is the son of Irwin Jacobs.

7. **Steven (Steve) Mollenkopf** is Chief Executive Officer of Qualcomm, a position he has held since March 2014, and has worked at Qualcomm CDMA Technologies ("QCT") since 2008.

8. **Eric Reifschneider** was Vice President and General Manager of QTL from 2012 through approximately March 2016. He left Qualcomm in July 2016.

9. **Alex Rogers** has been Executive Vice President of Qualcomm and President of QTL since October 2016 and has worked at Qualcomm since 2001.

10. **David Wise** is Senior Vice President of Finance and Treasurer at Qualcomm.

11. **William Wyatt** is Vice President of Finance at Qualcomm. He is currently the finance lead for QCT.

**Live Witnesses Not Represented by Qualcomm**:

12. **Tony Blevins** is Vice President of Procurement at Apple. Mr. Blevins may testify about: the design, engineering, assembly, procurement, and sale of Apple's cellular products; Apple's procurement of modem chips and other components from

Qualcomm and other suppliers; Apple's licensing of cellular patents from Qualcomm and other patent owners; Apple's negotiations and agreements with Qualcomm relating to the supply of modem chips and/or patent licensing or royalties; the impact of Qualcomm's agreements with Apple on Apple's procurement decisions; Apple's concerns regarding chip supply as a result of Qualcomm's policies; the meaning and importance of FRAND commitments for SEPs; whether the effective royalties historically paid by Apple through its contract manufacturers for rights to Qualcomm's SEPs are FRAND compliant; royalties paid by Apple to cellular SEP owners other than Qualcomm; conditions extracted by Qualcomm in exchange for royalty relief; competitive conditions in markets for modem chips; Qualcomm's market power; the effects of Qualcomm's policies and practices on competition, innovation, and consumers; any other issues addressed in his deposition or his investigational hearing; or any documents or data introduced into evidence by Qualcomm or the FTC as to which he has knowledge.

13. **Aichatou (Aicha) Evans** is Chief Strategy Officer at Intel and previously was in charge of Intel's chipset division until 2016. Ms. Evans may testify about: modem chip markets; Qualcomm's market power; attempts to obtain patent licenses from Qualcomm; competition in modem chip markets; barriers to entry and expansion in modem chip markets; the effects of Qualcomm's policies and practices on competition, innovation, and consumers; the development and adoption of cellular standards; the meaning and importance of FRAND commitments for SEPs; patent agreements and negotiations with licensees; any other issues addressed in her deposition or investigational hearing; or any documents or data introduced into evidence by Qualcomm or the FTC as to which she has knowledge.

14. **Dana Hayter** was in-house counsel for Intel responsible for negotiating a patent cross license with Qualcomm. Mr. Hayter may testify about: modem chip markets; Qualcomm's market power; attempts to obtain patent licenses from Qualcomm; competition in modem chip markets; barriers to entry and expansion in modem chip

1
2
3
4
5
6

markets; the effects of Qualcomm's policies and practices on competition, innovation, and consumers; the development and adoption of cellular standards; the meaning and importance of FRAND commitments for SEPs; patent agreements and negotiations with actual and prospective agreement counterparties; any other issues addressed in his deposition or his investigational hearing; or any documents or data introduced into evidence by Qualcomm or the FTC as to which he has knowledge.

15. **John Kalkman** was Vice President of Marketing at Samsung System LSI from 2011 to 2015 and is currently Vice President of IoT Business at Samsung Electronics.  Mr. Kalkman may testify about: industry supply and licensing agreements; modem chip markets and competition in these markets; Qualcomm's market power; barriers to entry and expansion in modem chip markets; the effects of Qualcomm's policies and practices on competition, innovation, and consumers; attempts to obtain patent licenses from Qualcomm; the development and adoption of cellular standards; any other issues addressed in his deposition; or any documents or data introduced into evidence by Qualcomm or the FTC as to which he has knowledge.

16. **Finbarr Moynihan** is the General Manager, Corporate Sales (International) for MediaTek and has worked at MediaTek since 2008.  Mr. Moynihan may testify about: modem chip markets and competition in these markets; Qualcomm's market power; attempts to obtain patent licenses from Qualcomm; barriers to entry and expansion in modem chip markets; the effects of Qualcomm's policies and practices on competition, innovation, and consumers; the development and adoption of cellular standards; the meaning and importance of FRAND commitments for SEPs; patent agreements and negotiations with actual and prospective licensees; any other issues addressed in his deposition or his investigational hearing; or any documents or data introduced into evidence by Qualcomm or the FTC as to which he has knowledge.

17. **Aaron Schafer** is a Senior Director for Procurement at Apple.  Mr. Schafer may testify about: the design, engineering, assembly, procurement, and sale of Apple's cellular products; Apple's procurement of modem chips and other components from

Qualcomm and other suppliers; Apple's licensing of cellular patents from Qualcomm and other patent owners; Apple's negotiations and agreements with Qualcomm relating to the supply of modem chips and/or patent licensing or royalties; the impact of Qualcomm's agreements with Apple on Apple's procurement decisions; Apple's concerns regarding chip supply as a result of Qualcomm's policies; the meaning and importance of FRAND commitments for SEPs; whether the effective royalties historically paid by Apple through its contract manufacturers for rights to Qualcomm's SEPs are FRAND compliant; royalties paid by Apple to cellular SEP owners other than Qualcomm; conditions extracted by Qualcomm in exchange for royalty relief; competitive conditions in markets for modem chips; Qualcomm's market power; the effects of Qualcomm's policies and practices on competition, innovation, and consumers; any other issues addressed in his deposition; or any documents or data introduced into evidence by Qualcomm or the FTC as to which he has knowledge.

18. **Bruce (BJ) Watrous** is Vice President and Chief Intellectual Property Counsel at Apple. Mr. Watrous may testify about: the design, engineering, assembly, procurement, and sale of Apple's cellular products; Apple's procurement of modem chips and other components from Qualcomm and other suppliers; Apple's licensing of cellular patents from Qualcomm and other patent owners; Apple's negotiations and agreements with Qualcomm relating to the supply of modem chips and/or patent licensing or royalties; the impact of Qualcomm's agreements with Apple on Apple's procurement decisions; Apple's concerns regarding chip supply as a result of Qualcomm's policies; the meaning and importance of FRAND commitments for SEPs; whether the effective royalties historically paid by Apple through its contract manufacturers for rights to Qualcomm's SEPs are FRAND compliant; negotiations with and royalties paid by Apple to cellular SEP owners other than Qualcomm; conditions extracted by Qualcomm in exchange for royalty relief; competitive conditions in markets for modem chips; Qualcomm's market power; the effects of Qualcomm's policies and practices on competition, innovation, and consumers; any

other issues addressed in his deposition; or any documents or data introduced into evidence by Qualcomm or the FTC as to which he has knowledge.

19. **Jeff Williams** is the Chief Operating Officer of Apple. Mr. Williams may testify about: the design, engineering, assembly, procurement, and sale of Apple's cellular products; Apple's procurement of modem chips and other components from Qualcomm and other suppliers; Apple's licensing of cellular patents from Qualcomm and other patent owners; Apple's negotiations and agreements with Qualcomm relating to the supply of modem chips and/or patent licensing or royalties; the impact of Qualcomm's agreements with Apple on Apple's procurement decisions; Apple's concerns regarding chip supply as a result of Qualcomm's policies; the meaning and importance of FRAND commitments for SEPs; whether the effective royalties historically paid by Apple through its contract manufacturers for rights to Qualcomm's SEPs are FRAND compliant; royalties paid by Apple to cellular SEP owners other than Qualcomm; conditions extracted by Qualcomm in exchange for royalty relief; competitive conditions in markets for modem chips; Qualcomm's market power; the effects of Qualcomm's policies and practices on competition, innovation, and consumers; any other issues addressed in his deposition or his investigational hearing; or any documents or data introduced into evidence by Qualcomm or the FTC as to which he has knowledge.

**FACT WITNESSES BY DEPOSITION**

Each of the below-listed witnesses may testify about any issue addressed in the portions of his or her deposition designated pursuant to the FTC's initial designations, supplemental designations, and subject to the cross-designation and counter-designation process as instructed by the Court or/and agreed to by the parties.

20. **Seungho Ahn** is Head of Samsung's IP Center and is responsible for all matters relating to intellectual property at Samsung. The FTC may present testimony from Mr. Ahn regarding the subjects of his deposition, including without limitation Samsung's

agreements, communications, and negotiations with Qualcomm and with other intellectual property licensors and licensees; Qualcomm's commitments to license standard essential patents ("SEPs") on fair, reasonable, and non-discriminatory ("FRAND") terms; and the effects of Qualcomm's policies and practices on competition, innovation, and consumers.

21. **Jeffrey (Jeff) Altman** worked in Business Development within the QTL division from 1998 until his retirement on January 3, 2018.  He had previously been in various other roles since he started at Qualcomm in 1992.  The FTC may present testimony from Mr. Altman regarding the subjects of his deposition, including without limitation Qualcomm's supply and licensing agreements; negotiations with actual and prospective customers and licensees; Qualcomm's policies and practices related to product sales and licensing; Qualcomm's commitments to license standard essential patents ("SEPs") on fair, reasonable, and non-discriminatory ("FRAND") terms; modem chip markets; Qualcomm's market power; and the effects of Qualcomm's policies and practices on competition, innovation, and consumers.

22. **Richard Blaylock** is a partner at Pillsbury Winthrop Shaw Pittman LLP and has represented ZTE in several negotiations with Qualcomm, including 2015 license negotiations.  The FTC may present testimony from Mr. Blaylock regarding the subjects of his deposition, including without limitation ZTE's negotiations regarding intellectual property license agreements with Qualcomm and others; ZTE's agreements with Qualcomm, Qualcomm's policies and practices related to product sales and licensing; Qualcomm's commitments to license standard essential patents ("SEPs") on fair, reasonable, and non-discriminatory ("FRAND") terms; Qualcomm's market power; and the effects of Qualcomm's policies and practices on competition, innovation, and consumers.

23. **Marvin Blecker** joined Qualcomm in 1992 and was President of QTL from the early 2000s through 2008, and Senior Vice President in Qualcomm's licensing business from 1996 through his promotion to President, and again from 2008 until his retirement in

March 2014.  Mr. Blecker served as a consultant to Qualcomm after his retirement. The FTC may present testimony from Mr. Blecker regarding the subjects of his deposition, including without limitation Qualcomm's supply and licensing agreements; negotiations with actual and prospective customers and licensees; Qualcomm's policies and practices related to product sales and licensing; Qualcomm's commitments to license standard essential patents ("SEPs") on fair, reasonable, and non-discriminatory ("FRAND") terms; modem chip markets; Qualcomm's market power; barriers to entry and expansion in modem chip markets; and the effects of Qualcomm's policies and practices on competition, innovation, and consumers.

24. **Ira Blumberg** has been Vice President of Intellectual Property at Lenovo since 2012. The FTC may present testimony from Mr. Blumberg regarding the subjects of his deposition, including without limitation Lenovo's agreements with Qualcomm; the negotiation of patent licenses and supply agreements with Qualcomm and others; Qualcomm's policies and practices related to product sales and licensing; Qualcomm's commitments to license standard essential patents ("SEPs") on fair, reasonable, and non-discriminatory ("FRAND") terms; modem chip markets; Qualcomm's market power; barriers to entry and expansion in modem chip markets; and the effects of Qualcomm's policies and practices on competition, innovation, and consumers.

25. **Hwi-Jae Cho** is Director of the Intellectual Property Center at LGE in charge of all patent licensing matters at LGE, and has worked at LGE since 2000.  Mr. Cho may testify about any issue addressed in the designated portions of his sworn testimony provided in response to written questions propounded by the FTC and Qualcomm pursuant to the Hague Convention on Evidence. The FTC may present testimony from Mr. Cho regarding the subjects of his sworn testimony, including without limitation LGE's agreements with Qualcomm; the negotiation of patent licenses and supply agreements with Qualcomm and others; Qualcomm's policies and practices related to product sales and licensing; Qualcomm's commitments to license standard essential patents ("SEPs") on fair, reasonable, and non-discriminatory ("FRAND") terms;

modem chip markets; Qualcomm's market power; barriers to entry and expansion in modem chip markets; and the effects of Qualcomm's policies and practices on competition, innovation, and consumers.

26. **Brian Chong** is chief of the medical business development center and chief of new technology development and product planning at Wistron. The FTC may present testimony from Mr. Chong regarding the subjects of his deposition, including without limitation Wistron's agreements with Qualcomm; the negotiation of patent licenses and supply agreements with Qualcomm and others; Qualcomm's policies and practices related to product sales and licensing; Qualcomm's commitments to license standard essential patents ("SEPs") on fair, reasonable, and non-discriminatory ("FRAND") terms; modem chip markets; the effects of Qualcomm's licensing practices on Qualcomm's licensees and chip competitors; Qualcomm's market power; barriers to entry and expansion in modem chip markets; and the effects of Qualcomm's policies and practices on competition, innovation, and consumers.

27. **Mark Davis** was the director of the wireless design center of LSI Logic and later served as the chief technology officer of VIA Telecom until 2015. The FTC may present testimony from Mr. Davis regarding the subjects of his deposition, including without limitation, Via's agreements with Qualcomm; Qualcomm's policies and practices related to product sales and licensing; Qualcomm's commitments to license standard essential patents ("SEPs") on fair, reasonable, and non-discriminatory ("FRAND") terms; modem chip markets; Qualcomm's market power; barriers to entry and expansion in modem chip markets; and the effects of Qualcomm's policies and practices on competition, innovation, and consumers.

28. **Jianxin (Jason) Ding** is Vice President and Head of Intellectual Property Rights for Huawei Technology. The FTC may present testimony from Mr. Ding regarding the subjects of his deposition, including without limitation the volume of Huawei's handset sales; Huawei's agreements with Qualcomm; the negotiation of patent licenses and supply agreements with Qualcomm and others; Qualcomm's policies and practices

related to product sales and licensing; Qualcomm's commitments to license standard essential patents ("SEPs") on fair, reasonable, and non-discriminatory ("FRAND") terms; modem chip markets; Qualcomm's market power; barriers to entry and expansion in modem chip markets; and the effects of Qualcomm's policies and practices on competition, innovation, and consumers.

29. **John Grubbs** is Senior Director of IP Transactions at BlackBerry. The FTC may present testimony from Mr. Grubbs regarding the subjects of his deposition, including without limitation Blackberry's agreements with Qualcomm; the negotiation of patent licenses and supply agreements with Qualcomm and others; Qualcomm's policies and practices related to product sales and licensing; Qualcomm's commitments to license standard essential patents ("SEPs") on fair, reasonable, and non-discriminatory ("FRAND") terms; modem chip markets; Qualcomm's market power; barriers to entry and expansion in modem chip markets; and the effects of Qualcomm's policies and practices on competition, innovation, and consumers.

30. **Andrew Hong** has worked at Samsung since 2003. He is an attorney in the Global Legal Affairs group at Samsung, and previously was an attorney within Samsung's IP Center, and before that within Samsung's Semiconductor IP team. The FTC may present testimony from Mr. Hong regarding the subjects of his deposition, including without limitation Samsung's agreements with Qualcomm; the negotiation of patent licenses and supply agreements with Qualcomm and others; Qualcomm's policies and practices related to product sales and licensing; Qualcomm's commitments to license standard essential patents ("SEPs") on fair, reasonable, and non-discriminatory ("FRAND") terms; modem chip markets; Qualcomm's market power; barriers to entry and expansion in modem chip markets; and the effects of Qualcomm's policies and practices on actual and potential modem chip rivals, competition, innovation, and consumers.

31. **Hojin Kang** is the former Director of Purchasing at Samsung Mobile, and was employed by Samsung from 1987 to 2016. The FTC may present testimony from Mr.

Kang regarding the subjects of his deposition, including without limitation Samsung's agreements with Qualcomm; Qualcomm's policies and practices related to product sales and licensing; modem chip markets; Qualcomm's market power; barriers to entry and expansion in modem chip markets; and the effects of Qualcomm's policies and practices on competition, innovation, and consumers.

32. **Asha Keddy** is the manager of Intel's Next Generation and Standards team and has worked at Intel since 1999. The FTC may present testimony from Ms. Keddy regarding the subjects of her deposition, including without limitation Intel's agreements with Qualcomm; Qualcomm's policies and practices related to product sales and licensing; modem chip markets; Qualcomm's market power; barriers to entry and expansion in modem chip markets; and the effects of Qualcomm's policies and practices on competition, innovation, and consumers.

33. **Yooseok Kim** is Vice President of the IP Center at Samsung and has worked at Samsung since 1995. The FTC may present testimony from Mr. Kim regarding the subjects of his deposition, including without limitation Samsung's agreements with Qualcomm; the negotiation of patent licenses and supply agreements with Qualcomm and others; Qualcomm's policies and practices related to product sales and licensing; Qualcomm's commitments to license standard essential patents ("SEPs") on fair, reasonable, and non-discriminatory ("FRAND") terms; modem chip markets; Qualcomm's market power; barriers to entry and expansion in modem chip markets; and the effects of Qualcomm's policies and practices on competition, innovation, and consumers.

34. **Injung Lee** is the Head of the License Team at the IP Center at Samsung. The FTC may present testimony from Mr. Lee regarding the subjects of his deposition, including without limitation Samsung's agreements with Qualcomm; the negotiation of patent licenses and supply agreements with Qualcomm and others; Qualcomm's policies and practices related to product sales and licensing; Qualcomm's commitments to license standard essential patents ("SEPs") on fair, reasonable, and non-discriminatory

("FRAND") terms; modem chip markets; Qualcomm's market power; barriers to entry and expansion in modem chip markets; and the effects of Qualcomm's policies and practices on competition, innovation, and consumers.

35. **Thomas Lindner** is Head of the Cellular Modem & Mobile Connectivity business line at Intel and has worked at Intel since 2011, after Intel acquired his former employer, Infineon. The FTC may present testimony from Mr. Lindner regarding the subjects of his deposition, including without limitation modem chip markets; Intel's relationship with Apple; Qualcomm's market power; barriers to entry and expansion in modem chip markets; and the effects of Qualcomm's policies and practices on competition, innovation, and consumers.

36. **Todd Madderom** has been Director of Procurement at Motorola since 2012. The FTC may present testimony from Mr. Madderom regarding the subjects of his deposition, including without limitation Motorola's agreements with Qualcomm; Qualcomm's policies and practices related to product sales and licensing; modem chip markets; Qualcomm's market power; barriers to entry and expansion in modem chip markets; and the effects of Qualcomm's policies and practices on competition, innovation, and consumers.

37. **Isabel Mahe** is Managing Director for Greater China at Apple, and was Vice President of Wireless Technology at Apple from 2008 to 2017. The FTC may present testimony from Ms. Mahe regarding the subjects of her deposition, including without limitation Apple's purchasing processes and decisions; Apple's design processes; modem chip markets; Apple's products and product requirements; handset competition and market conditions; Apple's negotiations and relationship with Intel, Qualcomm, and other suppliers; Apple's agreements with Qualcomm; Qualcomm's policies and practices related to product sales and licensing; Qualcomm's market power; barriers to entry and expansion in modem chip markets; and the effects of Qualcomm's policies and practices on competition, innovation, and consumers.

38. **Scott McGregor** was President and CEO of Broadcom until January 2016. The FTC may present testimony from Mr. McGregor regarding the subjects of his deposition, including without limitation competitive conditions and barriers to entry and expansion in modem chip markets; Broadcom's efforts to compete with Qualcomm and relationship with Apple; modem chip and handset characteristics and markets; Broadcom's agreements with Qualcomm; Qualcomm's market power; and the effects of Qualcomm's policies and practices on its rivals and potential rivals, competition, innovation, and consumers.

39. **Shen Nan** has been the Chief Intellectual Property Officer for ZTE since 2016 and previously served as ZTE's Chief Licensing Officer. The FTC may present testimony from Mr. Nan regarding the subjects of his deposition, including without limitation ZTE's agreements with Qualcomm; Qualcomm's policies and practices related to product sales and licensing; modem chip markets; Qualcomm's market power; barriers to entry and expansion in modem chip markets; and the effects of Qualcomm's policies and practices on competition, innovation, and consumers.

40. **Christina Petersson** is a senior licensing attorney at Ericsson. The FTC may present testimony from Ms. Petersson regarding the subjects of her deposition, including without limitation Ericsson's patent license negotiations and agreements with Qualcomm and others; Qualcomm's policies and practices related to product sales and licensing; Qualcomm's commitments to license standard essential patents ("SEPs") on fair, reasonable, and non-discriminatory ("FRAND") terms; modem chip markets; Qualcomm's market power; barriers to entry and expansion in modem chip markets; and the effects of Qualcomm's policies and practices on competition, innovation, and consumers.

41. **Robert Rango** was Executive Vice President of Broadcom's Wireless Connectivity Group until he retired in 2014. The FTC may present testimony from Mr. Rango regarding the subjects of his deposition, including without limitation competitive conditions and barriers to entry and expansion in modem chip markets; Broadcom's

efforts to compete with Qualcomm and relationship with Apple; modem chip and handset characteristics and markets; Broadcom's agreements with Qualcomm; Qualcomm's market power; and the effects of Qualcomm's policies and practices on its rivals and potential rivals, competition, innovation, and consumers.

42. **Tony (Taekwon) Son** is Deputy Senior Manager at LG Electronics, Inc. ("LGE") in charge of mobile chipsets in the Mobile Communications semiconductor procurement team, and has worked at LGE since July 2004. Mr. Son may testify about any issue addressed in the designated portions of his sworn testimony provided in response to written questions propounded by the FTC and Qualcomm pursuant to the Hague Convention on Evidence, including without limitation LGE's agreements with Qualcomm; the negotiation of patent licenses and supply agreements with Qualcomm and others; Qualcomm's policies and practices related to product sales and licensing; Qualcomm's commitments to license standard essential patents ("SEPs") on fair, reasonable, and non-discriminatory ("FRAND") terms; modem chip markets; Qualcomm's market power; barriers to entry and expansion in modem chip markets; and the effects of Qualcomm's policies and practices on competition, innovation, and consumers.

43. **Richard Wang** has been Huawei's Director of Terminal Chipset Platform Planning since 2011. From 2004 through 2007, he was responsible for marketing wireless terminal products for HiSilicon. The FTC may present testimony from Mr. Wang regarding the subjects of his deposition, including without limitation HiSilicon's negotiations and agreements with Qualcomm; Qualcomm's policies and practices related to product sales and licensing; Qualcomm's commitments to license standard essential patents ("SEPs") on fair, reasonable, and non-discriminatory ("FRAND") terms; modem chip markets; Qualcomm's market power; barriers to entry and expansion in modem chip markets; and the effects of Qualcomm's policies and practices on competition, innovation, and consumers.

44. **Stefan Wolff** held several marketing and managerial positions at Infineon from 1996 to 2011, including Vice President and General Manager for RF and Modem, and held similar roles at Intel from 2011 to approximately 2017. The FTC may present testimony from Mr. Wolff regarding the subjects of his deposition, including without limitation, Infineon's agreements with Qualcomm; limitation modem chip markets; Infineon's efforts to compete with Qualcomm; Qualcomm's market power; barriers to entry and expansion in modem chip markets; and the effects of Qualcomm's policies and practices on competition, innovation, and consumers.

45. **Monica Yang** is a manager in Pegatron's legal department. The FTC may present testimony from Ms. Yang regarding the subjects of her deposition, including without limitation Pegatron's agreements with Qualcomm; the negotiation of patent licenses and supply agreements with Qualcomm and others; Qualcomm's policies and practices related to product sales and licensing; Qualcomm's commitments to license standard essential patents ("SEPs") on fair, reasonable, and non-discriminatory ("FRAND") terms; modem chip markets; Qualcomm's market power; barriers to entry and expansion in modem chip markets; and the effects of Qualcomm's policies and practices on competition, innovation, and consumers.

46. **Nanfen (Nancy) Yu** is Senior Legal Counsel at Huawei. The FTC may present testimony from Ms. Yu regarding the subjects of her deposition, including without limitation Huawei's negotiations with and agreements with Qualcomm; Qualcomm's policies and practices related to product sales and licensing; Qualcomm's market power; and Qualcomm's commitments to license standard essential patents ("SEPs") on fair, reasonable, and non-discriminatory ("FRAND") terms.

**EXPERT WITNESSES BY LIVE TESTIMONY**

47. **Dr. Robert Akl** is an Associate Professor at the University of North Texas and a Senior Member of IEEE, with over 20 years of experience with patents and technology

1    in the wireless and networking industry.  Dr. Akl may testify about the opinions
2    disclosed in his expert reports and deposition, including cellular patent portfolios.
3  48.   **Richard Donaldson** is a patent and licensing consultant and testifying expert.  Mr. Donaldson spent 31 years as a licensing executive and patent attorney at Texas Instruments, Inc., where he developed global patent licensing strategies and negotiated patent licenses, including licenses to SEPs.  Mr. Donaldson may testify about the opinions disclosed in his expert reports and deposition, including patent licensing.
4  49.   **Michael J. Lasinski** is a Managing Director and the Chief Executive Officer of 284 Partners, LLC, a firm focused on intellectual property valuation, litigation consulting, IP strategy, and IP transactional services.  Mr. Lasinski may testify about the opinions disclosed in his expert reports and deposition, including reasonable royalty rates.
5  50.   **Carl Shapiro** is a Professor of the Graduate School at the University of California at Berkeley and is an economist who has studied antitrust, innovation, and competitive strategy for over thirty years.  Prof. Shapiro may testify about the opinions disclosed in his expert reports and deposition, including market definition, market power, and harm to competition.