UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>QUALCOMM INCORPORATED, et al.,<br><br>Defendants. | Case No. 17-CV-00220-LHK<br><br>**ORDER DENYING DEFENDANT'S MOTION TO EXCLUDE EXPERT REPORTS OF RICHARD L. DONALDSON**<br><br>Re: Dkt. No. 799 |

Before the Court is Defendant Qualcomm Incorporated's (Qualcomm") motion to exclude the expert reports of Richard L. Donaldson. ECF No. 799. Having considered the parties' briefs, the relevant law, and the record in this case, the Court DENIES Qualcomm's motion.

**I.  LEGAL STANDARD**

Federal Rule of Evidence 702 allows admission of "scientific, technical, or other specialized knowledge" by a qualified expert if it will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Expert testimony is admissible pursuant to Rule 702 if it is both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). An expert witness may provide opinion testimony if: (1) the testimony is

1

Case No. 17-CV-00220-LHK
ORDER DENYING DEFENDANT'S MOTION TO EXCLUDE EXPERT REPORTS OF RICHARD L. DONALDSON

1 based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

When considering expert testimony offered pursuant to Rule 702, the trial court acts as a "gatekeeper" by "making a preliminary determination that the expert's testimony is reliable." *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002). In *Daubert*, the United States Supreme Court identified "four factors that may bear on the analysis": (1) whether a theory or technique can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether the theory is generally accepted in the scientific community. *Murray v. S. Route Maritime SA*, 870 F.3d 915, 922 (9th Cir. 2017) (citing *Daubert*, 509 U.S. at 593-94). However, the Ninth Circuit has explained that "the reliability analysis remains a malleable one tied to the facts of each case" and that the "*Daubert* factors are exemplary, not constraining." *Id.* The Ninth Circuit has also stated that "[i]t is important to remember that the factors are not 'equally applicable (or applicable at all) in every case,'" and that "[a]pplicability 'depend[s] on the nature of the issue, the expert's particular expertise, and the subject of his testimony.'" *Id.* (first quoting *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995), then quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)) (third alteration in original).

"Because of the fluid and contextual nature of the inquiry, district courts are vested with 'broad latitude' to 'decid[e] *how* to test an expert's reliability' and '*whether or not* [an] expert's relevant testimony is reliable.'" *Id.* (quoting *Kumho Tire*, 526 U.S. at 152-53) (alterations and emphasis in original). Thus, the Court "may permissibly choose not to examine factors that are not 'reasonable measures of reliability in a particular case.'" *Id.* (quoting *Kumho Tire*, 526 U.S. at 153); *see also id.* at 924 ("District courts have broad range to structure the reliability inquiry and may choose not to comment on factors that would not inform the analysis.").

Moreover, the inquiry into admissibility of expert opinion is a "flexible one," where

2

Case No. 17-CV-00220-LHK
ORDER DENYING DEFENDANT'S MOTION TO EXCLUDE EXPERT REPORTS OF RICHARD L. DONALDSON

"[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (citing *Daubert*, 509 U.S. at 594, 596). "Under *Daubert*, the district judge is 'a gatekeeper, not a fact finder.' When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony." *Id.* (quoting *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006)).

## II. DISCUSSION

Qualcomm moves to exclude Donaldson's opinions on four grounds. First, Qualcomm argues Donald's opinions "are nothing more than his improper speculation regarding the subjective intent and motivations of the parties to specific licensing negotiations to which Mr. Donaldson was not privy." ECF No. 799 ("Mot.") at 1. Second, Qualcomm attacks Donaldson's methodology of interpreting six licensing negotiations among hundreds of others "without any independent methodology as to why his narrow sample is representative." *Id.* Third, Qualcomm argues that there are "a number of variables that factor into any licensing negotiation," but Donaldson fails to control for them. *Id.* at 8. Fourth, Qualcomm believes that Donaldson's experience with his former employer, Texas Instruments ("TI"), does not give him sufficient basis to opine on component-level licensing in the cellular industry. *Id.* at 1-2. The Court addresses each argument in turn.

### A. Donaldson's Opinions Regarding the Intent and Motivations of Parties to Licensing Negotiations are Not Improper Speculation

Qualcomm argues that Donaldson's opinions regarding licensing negotiation are "speculation concerning the subjective intent and motivation of certain third parties who negotiated license agreements with Qualcomm." Mot. at 4. The Federal Trade Commission ("FTC") argues that Donaldson is permissibly relying upon the statements of other fact witnesses to arrive at his conclusions. ECF No. 868 at 16 ("Opp."). The FTC has the better argument here.

"The U.S. Supreme Court recognized in *Daubert* that '[u]nlike an ordinary witness, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand

3

Case No. 17-CV-00220-LHK
ORDER DENYING DEFENDANT'S MOTION TO EXCLUDE EXPERT REPORTS OF RICHARD L. DONALDSON

knowledge or observation.'" *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 363 (N.D. Cal. 2018) (quoting *Daubert*, 509 U.S. at 592). In fact, "[a]n expert is of course permitted to testify to an opinion formed on the basis of information that is handed to rather than developed by him—information of which he lacks first-hand knowledge and which might not be admissible in evidence no matter by whom presented." *Id.* (quoting *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1071 (C.D. Cal. 2015)). Moreover, Fed. R. Evid. 703 states that "[a]n expert may base an opinion on facts or data in the case that the expert *has been made aware of . . . .*" (emphasis added).

Here, Donaldson permissibly relied upon the testimony of third parties negotiating licenses with Qualcomm to arrive at his opinions regarding licensing negotiations. In his deposition, Donaldson noted that he "accept[ed] that what . . . [the third parties] testified to was true." ECF No. 868-2 at 117:22-23. In fact, Qualcomm does not dispute that Donaldson was relying on third party testimony—Qualcomm's reply brief contends that Qualcomm's licensees "can speak for themselves at trial." ECF No. 896 at 4 ("Reply"). Under *Arris*, Donaldson is permitted to form an opinion about Qualcomm's licensing practices based on third party testimony regarding those practices. Similarly, in *Sementilli v. Trinidad Corp.*, the Ninth Circuit found admissible a doctor's opinion in a slip and fall case even though the doctor did not personally conduct an examination of the slip and fall plaintiff. 155 F.3d 1130, 1134 (9th Cir. 1998). The Ninth Circuit held that the doctor's "opinions and inferences were based on his review of medical records, as well as his knowledge, experience, training and education." *Id.* Like the doctor in *Sementilli*, Donaldson may rely upon his own knowledge, experience, training and education to form opinions as to Qualcomm's licensing practices based on third party evidence presented to him. To the extent that Qualcomm believes Donaldson's conclusions and interpretations of this third party testimony are incorrect, Qualcomm may cross-examine Donaldson at trial.

### B. Donaldson Did Not Improperly Base His Opinions on a Handful of License Negotiations

Qualcomm argues that Donaldson impermissibly "reviewed a limited number of

4

documents, handpicked by the FTC and which concern negotiations with only six . . . [original equipment manufacturers ("OEMs")]," then opined on all of Qualcomm's negotiations with hundreds of other OEMs. Mot. at 7. The FTC responds by pointing out that Donaldson based his opinions on Qualcomm's licensing practices on a review of hundreds of contemporaneous documents and the sworn testimony from nearly 40 witnesses, including those from key OEMs, in this action. Opp. at 1. Thus, Donaldson's methodology is not unreliable. Here, the FTC is correct.

There is "no authority for the proposition that an expert must independently sort through all of the discovery in a case in order to determine the relevant evidence. Such a rule would be incredibly costly and time consuming for the expert, who necessarily would be duplicating the work that the attorneys in the case had already performed." *Arris*, 372 F.R.D. at 364.

Here, as the FTC mentioned, Donaldson conducted a broad review of many different documents produced in the action, including a look at Qualcomm's standard "Subscriber Unit License Agreement." ECF No. 965 at ¶ 37 ("Donaldson Rep."). Donaldson notes that "Qualcomm has signed ▇▇▇▇▇ licenses with this basic structure." *Id.* Donaldson also "reviewed evidence in the record from other OEMs, at least one other modem chip maker, and Qualcomm itself, that supports the conclusion that Qualcomm's no license no chips policy has a material impact on Qualcomm's licensing arrangements with OEMs." *Id.* at ¶ 162; *see also* Donaldson Rep. Ex. B (listing all the documents, discovery responses, testimony, among others, that Donaldson relied upon). Moreover, emphasizing the breadth of the testimony he reviewed, Donaldson testified at his deposition that examples of other licensing negotiations beyond what he cited would not "offset the direct sworn testimony of the people who actually were affected by the [no license no chips] policy." ECF No. 868-2 at 119:9-11. Thus, Qualcomm's claim that Donaldson founded his opinions only upon a review of the negotiations with 6 OEMs that the FTC selected for him is disingenuous. If Qualcomm believes that Donaldson "failed to consider relevant evidence of record or formed opinions based on unreliable data," then Qualcomm has an opportunity to cross-examine Donaldson on his methodology. *Arris*, 327 F.R.D. at 364.

5
Case No. 17-CV-00220-LHK
ORDER DENYING DEFENDANT'S MOTION TO EXCLUDE EXPERT REPORTS OF RICHARD L. DONALDSON

## C. Donaldson's Testimony is Sufficiently Founded in His Experience

Qualcomm argues that Donaldson identifies numerous variables relevant to a licensing negotiation, but "he makes no effort to assess or control for any of them." Mot. at 8. Thus, according to Qualcomm, Donaldson's opinions are not based on sufficient facts or data and do not result from the application of a reliable methodology to these facts or data. *Id.* The FTC responds by identifying Donaldson's extensive experience as a licensing professional and arguing that such experience-based testimony does not necessitate the rigors of scientific testing or peer review. Opp. at 7-8. Again, the FTC's argument prevails.

Regarding whether Donaldson's testimony is a result of a reliable methodology or based on sufficient facts or data, the Court notes that the *Daubert* factors implicated in assessing this part of the rule are not directly applicable here. Donaldson's testimony does not involve testing a theory, peer review, an error rate, or whether a theory is generally accepted in the scientific community. *Kumho Tire* held that "*Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." 526 U.S. at 141. Rather, Donaldson is relying on his experience as a licensing professional to opine about Qualcomm's no license no chips policy and Qualcomm's licensing negotiation practices.

"The advisory committee's note to Rule 702 states that experience-based expert testimony is reliable if the expert 'explain[s] how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *United States v. Vesey*, 338 F.3d 913, 917 (8th Cir. 2003) (quoting Fed. R. Evid. 702, 2000 Advisory Committee Notes); *see also Lucido v. Nestle Purina Petcare Co.*, 217 F. Supp. 3d 1098, 1102 (N.D. Cal. 2016) (stating the same); *Perez v. Seafood Peddler of San Rafael, Inc.*, 2014 WL 2810144, at *1 (N.D. Cal. June 20, 2014) (same); *Kurihara v. Best Buy Co., Inc.*, 2009 WL 10692779, at *8 (N.D. Cal. Oct. 14, 2009) (same).

Here, Donaldson has sufficiently demonstrated how his experience leads to his conclusions, why his experience is a sufficient basis for his opinions, and how that experience is reliably applied to the facts. Donaldson worked at TI for 31 years as a "licensing executive and

6

Case No. 17-CV-00220-LHK
ORDER DENYING DEFENDANT'S MOTION TO EXCLUDE EXPERT REPORTS OF RICHARD L. DONALDSON

patent attorney, retiring in 2000 as Senior Vice President and General Patent Counsel." Donaldson Rep. at ¶ 2. He explains that the semiconductor business, including the sale of chips, comprised the vast majority of TI's revenues, and that TI's semiconductor products were used in a variety of consumer products, including cellphones. *Id.* at ¶ 3. He further notes that "TI's patent licensing strategy in the 1980s and 1990s, which I led, has been credited with having a profound effect on the way technology companies, and in particular semiconductor companies, utilized their patent portfolios to obtain fair value for the use of their patented technology by other companies. I defined those strategies, which the TI Board approved, and then I led the implementation of the strategies." *Id.* at ¶ 8. Based on this experience, Donaldson then reviewed the voluminous amount of materials provided to him, as aforementioned. For instance, Donaldson reviewed case law, discovery responses, testimony, depositions, and Qualcomm documents. *Id.* Ex. B. He then formed his opinions "based on the foregoing personal experience and . . . [his] understanding of the views and conduct of industry participants as it relates to licensing in the semiconductor and computer industries." *Id.* at ¶ 13.

In *Primiano v. Cook*, the Ninth Circuit rejected the notion that simply because there was no objective source of information relied upon by an expert to come to the expert's conclusions, that meant the expert's conclusions were excludable. 598 F.3d 558, 563, 568 (9th Cir. 2010). The *Primiano* court held that a physician's testimony about his expectations regarding the performance of a prosthetic elbow was allowable in spite of the physician's lack of reliance on data or published methodologies. *Id.* at 567-68. This evidence was allowed because the physician permissibly relied upon his background and experience. *Id.* at 567.

Here, Donaldson has used his experience as a patent license negotiator to opine on topics relating to that very subject area. He arrives at his conclusions with this experience in hand and after reviewing the available facts. Therefore, the Court deems Donaldson's opinions in his expert reports sufficiently reliable to be admissible even though they may not be founded in scientific data or fact.

7

Case No. 17-CV-00220-LHK
ORDER DENYING DEFENDANT'S MOTION TO EXCLUDE EXPERT REPORTS OF RICHARD L. DONALDSON

### D. Donaldson's Opinions on the Viability of Component-Level Licensing Are Based Upon Sufficient and Reliable Evidence

Qualcomm asserts that Donaldson's opinions on the viability of component-level licensing should be excluded on two grounds. First, Qualcomm contends that Donaldson's expert report contradicts his deposition testimony regarding licensing at the device level. In his deposition, Donaldson states that industry practice is to "take licenses at the device level." ECF No. 905-3 at 283:21. However, Donaldson's expert report discloses that he "disagree[s] with Qualcomm's argument that there is an established industry practice of licensing cellular SEPs [("standard essential patents")] only at the handset level." Second, Qualcomm claims that Donaldson "offers no valid basis for his opinion that licensing at the chip level *by Qualcomm* would be 'viable' or 'feasible'" because his experience at TI is not comparable to Qualcomm's situation because Qualcomm's patent portfolio is larger in size and scope.

The FTC responds by noting that first, the FTC mischaracterized Donaldson's testimony regarding the feasibility of multi-level (i.e. chip and device-level) licensing. Donaldson's opinions "are presented for the purpose of responding to Qualcomm's argument that a multi-level licensing program would be impracticable or infeasible . . . ." Opp. at 11. Second, the FTC argues that Qualcomm's semiconductor business and licensing program is very similar to the semiconductor industry in which TI participated, so Donaldson's experience would translate well to opining on the subject.

First, as to the discrepancy between Donaldson's testimony at his deposition and his expert report, Qualcomm tellingly fails to cite to any case law standing for the proposition that the discrepancy is sufficient ground to exclude part of an expert report. "[T]he possibility that an expert may be impeached is not a reason to exclude an opinion under *Daubert*." *BladeRoom Grp. v. Facebook, Inc.*, 2018 WL 1611835, at *3 (N.D. Cal. Apr. 3, 2018). If there are discrepancies between Donaldson's trial testimony and his expert report or deposition testimony, then Qualcomm has the opportunity to impeach him at trial. Exclusion of Donaldson's expert report under *Daubert* is not the correct route to take as it would sweep too broadly.

8

Case No. 17-CV-00220-LHK
ORDER DENYING DEFENDANT'S MOTION TO EXCLUDE EXPERT REPORTS OF RICHARD L. DONALDSON

Second, as to Qualcomm's claim that Donaldson is not qualified to opine about the feasibility of multi-level licensing by Qualcomm because Qualcomm's patent portfolio is larger in size and scope, the Court finds that this argument lacks merit. In his rebuttal expert report, Donaldson analogizes between the cellphone industry and the semiconductor industry:

> Both industries involve a highly complex end-user device, made up of numerous technical components, the features of which drive consumer demand. During the time that I was at TI, for example, features such as processor speed and DRAM capacity were driving the market for end-user computer devices. This is analogous to how Qualcomm claims the technology contributed by its cellular SEPs drive the value of end-user handsets. . . . It is my opinion that semiconductor licensing programs, such as the one I implemented at TI, address almost all of the characteristics found in cellular technology – patented features of critical components contribute to the performance and success of an end-product.

ECF No. 905-2 at ¶¶ 33-34. Moreover, Donaldson explains that based on his personal experience at TI, he was easily able to categorize TI's patent portfolio into two groups: chip patents and system patents.[1] Donaldson Rep. at ¶ 166. Thus, Donaldson has established how his experience leads to his conclusions regarding multi-level licensing, why his experience at TI is a sufficient basis for his opinions, and how that experience is reliably applied to Qualcomm. *See Vesey*, 338 F.3d at 917 ("[E]xperience-based expert testimony is reliable if the expert explain[s] how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts" (internal quotation marks omitted)).

---

[1] Qualcomm contends in a footnote in its motion that "Donaldson's testimony of practices at TI should also be excluded because they comprise undisclosed fact testimony," and that Qualcomm is prejudiced by not being able to review TI licensing agreements Donaldson relies upon. Mot. at 11 n.3. This is not a reason to exclude Donaldson's testimony of practices at TI because first, Qualcomm had the opportunity to depose Donaldson regarding his experiences at TI. Second, Donaldson must necessarily explain his experiences at TI to form the foundation for his expert opinions in his reports. Otherwise, Donaldson would not be able to explain why he is qualified as an expert in the areas he opines about in his reports. *See, e.g.*, *General Elec. Co. v. Wilkins*, 2012 WL 5398407, at *2 (E.D. Cal. Nov. 2, 2012) ("[W]ith respect to Dr. Chambers' opinions that are purportedly based only on his personal experiences, the Court declines to disqualify Dr. Chambers as an expert on these matters. Mitsubishi and Mr. Wilkins may contest the weight that should be given to such opinions by attacking the factual basis for Dr. Chambers' opinions during cross-examination.").

Case No. 17-CV-00220-LHK
ORDER DENYING DEFENDANT'S MOTION TO EXCLUDE EXPERT REPORTS OF RICHARD L. DONALDSON

## III. CONCLUSION

For the foregoing reasons, Qualcomm's motion to exclude the expert reports of Richard L. Donaldson is DENIED.

**IT IS SO ORDERED.**

Dated: December 10, 2018

_Lucy H. Koh_
LUCY H. KOH
United States District Judge