UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>QUALCOMM INCORPORATED,<br><br>Defendant. | Case No. 17-CV-00220-LHK<br><br>**ORDER DENYING THE FTC'S MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. EDWARD SNYDER**<br><br>Re: Dkt. No. 788 |

Before the Court is Plaintiff Federal Trade Commission's ("FTC") motion to exclude the expert testimony of Defendant Qualcomm Incorporated's ("Qualcomm") expert Dr. Edward Snyder. Having considered the parties' briefs, the relevant law, and the record in this case, the Court DENIES the FTC's motion.

## I. LEGAL STANDARD

Federal Rule of Evidence 702 allows admission of "scientific, technical, or other specialized knowledge" by a qualified expert if it will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Expert testimony is admissible pursuant to Rule 702 if it is both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). An expert witness may provide opinion testimony if: (1) the testimony is

based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

When considering expert testimony offered pursuant to Rule 702, the trial court acts as a "gatekeeper" by "making a preliminary determination that the expert's testimony is reliable." *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002). In *Daubert*, the United States Supreme Court identified "four factors that may bear on the analysis": (1) whether a theory or technique can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether the theory is generally accepted in the scientific community. *Murray v. S. Route Maritime SA*, 870 F.3d 915, 922 (9th Cir. 2017) (citing *Daubert*, 509 U.S. at 593-94). However, the Ninth Circuit has explained that "the reliability analysis remains a malleable one tied to the facts of each case" and that the "*Daubert* factors are exemplary, not constraining." *Id.* The Ninth Circuit has also stated that "[i]t is important to remember that the factors are not 'equally applicable (or applicable at all) in every case,'" and that "[a]pplicability 'depend[s] on the nature of the issue, the expert's particular expertise, and the subject of his testimony.'" *Id.* (first quoting *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995), then quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)) (third alteration in original).

"Because of the fluid and contextual nature of the inquiry, district courts are vested with 'broad latitude' to 'decid[e] *how* to test an expert's reliability' and '*whether or not* [an] expert's relevant testimony is reliable.'" *Id.* (quoting *Kumho Tire*, 526 U.S. at 152-53) (alterations and emphasis in original). Thus, the Court "may permissibly choose not to examine factors that are not 'reasonable measures of reliability in a particular case.'" *Id.* (quoting *Kumho Tire*, 526 U.S. at 153); *see also id.* at 924 ("District courts have broad range to structure the reliability inquiry and may choose not to comment on factors that would not inform the analysis.").

Moreover, the inquiry into admissibility of expert opinion is a "flexible one," where "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and

2

attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (citing *Daubert*, 509 U.S. at 594, 596). "Under *Daubert*, the district judge is 'a gatekeeper, not a fact finder.' When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony." *Id.* (quoting *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006)).

Furthermore, although the *Daubert* inquiry must still be performed, it is well established that the Court's gatekeeping duty is "less pressing" regarding a bench trial. *AngioScore, Inc. v. TriReme Med., Inc.*, 87 F. Supp. 3d 986, 1016 (N.D. Cal. 2015); *see also Fed. Trade Comm'n v. BurnLounge, Inc.*, 753 F.3d 878, 888 (9th Cir. 2014) (explaining that in a bench trial, "there is less danger [than in a jury trial] that a trial court will be unduly impressed by the expert's testimony or opinion") (internal quotation marks omitted). As the Ninth Circuit has held, in a bench trial, "the risk that a verdict will be affected unfairly and substantially by the admission of irrelevant evidence is far less than in a jury trial." *E.E.O.C. v. Farmer Bros. Co.*, 31 F. 3d 891, 898 (9th Cir. 1994); *see also United States v. Flores*, 901 F.3d 1150, 1165 (9th Cir. 2018) ("*Daubert* is meant to protect *juries* from being swayed by dubious scientific testimony." (citation omitted) (emphasis in original)).

## II. DISCUSSION

Dr. Snyder is a professor of economics and management and the Dean of the Yale School of Management. ECF No. 788-2, Expert Report of Dr. Edward Snyder ("Snyder Report"), ¶ 1. Qualcomm retained Dr. Snyder to address the FTC's allegation that Qualcomm's conduct harmed competition in the modem chip industry. *Id.* ¶ 7.

The FTC moves to exclude Dr. Snyder's opinions on three distinct grounds. First, the FTC contends that Dr. Snyder's opinion on the three factors affecting the performance of modem chip suppliers is "not grounded in a generally accepted or reliable theory or methodology, and is instead nothing more than a factual narrative." ECF No. 788 ("Mot.") at 6. Second, the FTC contends that Dr. Snyder's opinion on modem chip supplier performance is not helpful to the Court because Dr. Snyder "never considered (or tested) the possibility that Qualcomm's conduct

3

affected its rivals' performance" on the three factors Dr. Snyder discusses. *Id.* at 12. Third, the FTC contends that Dr. Snyder's opinion that "industry performance directly contradicts Plaintiff's Hypothesis" is not reliable or relevant. *Id.* at 15. The Court addresses each argument in turn.

### A. Dr. Snyder's Opinions on the Performance of Other Modem Chip Suppliers are Supported by a Reliable Methodology

The FTC first attacks Dr. Snyder's opinion that "the success and failure of firms depend on their foresight, the efficiency of their investments, and ability to execute," and that those three factors—rather than Qualcomm's conduct—explain the performance of other modem chip suppliers. Snyder Report ¶ 20. The FTC contends that Dr. Snyder's three-factor test is not reliable because Dr. Snyder's theory has not been peer reviewed, nor is there evidence that economists apply the same three factors to analogous industries. Mot. at 6. In opposition, Qualcomm argues that Dr. Snyder's methodology is reliable because Dr. Snyder, in accordance with industrial organization theory, "conduct[ed] an in-depth analysis of an industry to identify the factors that affect the success or failure of firms within it," and then applied those factors to specific modem chip suppliers. ECF No. 874 ("Opp") at 10. Qualcomm has the better argument.

In his expert report, Dr. Snyder "first review[s] fundamental industrial organization principles and then frame[s] their relevance to the modem chip industry." Snyder Report ¶ 38. Dr. Snyder's overview of industrial organization principles discusses how models of competition vary across industry, and Dr. Snyder cites numerous academic articles in support. *See id.* ¶¶ 40–45 & nn. 29–46. Then, Dr. Snyder explains how characteristics unique to the modem chip industry—such as "successive shifts from one generation of wireless standards to the next"—affect the factors that influence a modem chip supplier's success in the industry. *Id.* ¶ 48. Based on Dr. Snyder's analysis of the modem chip industry, *id.* ¶¶ 57–178, Dr. Snyder identifies three factors "generally" relevant to a modem chip supplier firm's ability to compete in the industry: foresight, investment, and execution. *Id.* ¶ 186. In the bulk of his report, Dr. Snyder tests whether those three factors explain the performance of Qualcomm and other modem chip suppliers. *Id.* ¶¶ 213–474.

4

To attempt to paint Dr. Snyder's opinions as unreliable, the FTC focuses only on the final step of Dr. Snyder's analysis, his three-factor analysis of modem chip supplier performance, and contends that no other economist has applied those three factors to an analogous industry. However, that no other expert has applied Dr. Snyder's precise three factors to another industry does not render his testimony unreliable. *See UFCW Local 1776 & Participating Emp'rs Health & Welfare Fund v. Teikoku Pharma USA*, 296 F. Supp. 3d 1142, 1187 (N.D. Cal. 2017) (admitting expert testimony where, although there was "no other case where an expert has employed the exact model," the expert's testimony was "consistent with accepted economic theory and well-established principles"). Indeed, the point of industrial organization theory is to analyze "how competition plays out in *different markets* and how it relates to industry structure." ECF No. 875-20 at 146 (academic article on "empirical industrial organization") (emphasis added). Therefore, it is no surprise that Dr. Snyder's analysis of the modem chip supplier industry focuses on factors that Dr. Snyder believes are unique to the industry. *See, e.g.*, Snyder Report ¶ 53 (opining that although "the development and transfer of knowledge" is a "challenge[] for any industry," the challenge is "especially acute in the modem chip industry given the investments required"); *see also* ECF No. 875-8 at 6 (book explaining that industrial organization is concerned with how "variations and imperfections" in particular markets affect success).

The FTC's other primary argument for why Dr. Snyder's methodology is unreliable is that Dr. Snyder's opinions are not quantifiable. However, the point of the *Daubert* inquiry is to ensure that the "knowledge underlying [expert testimony] has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (citation and internal quotation marks omitted). As the United States Supreme Court explained in *Kumho Tire*, "*Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." 526 U.S. at 141. In *Primiano*, for example, the Ninth Circuit held that the district court abused its discretion by excluding expert testimony simply because "there was no publication supporting [the expert's] opinion." *Id.* at 567. Similarly, the FTC identifies no *Daubert* requirement that all expert testimony requires use of quantifiable "metrics." *Cf.* Mot. at

5

Case No. 17-CV-00220-LHK
ORDER DENYING THE FTC'S MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. EDWARD SNYDER

7. To the contrary, as the district court explained in *Mullins*, a "qualitative analysis" may bear on the answer to a qualitative question, such as "how many excessive force complaints are too many." *Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 900 (N.D. Cal. 2016) (citing *Thomas v. City of Chattanooga*, 398 F. 3d 426, 431–32 (6th Cir. 2005). Thus, district courts have rejected attempts to exclude expert economic testimony because the testimony relied on "qualitative factors." *TV Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006, 1027 (N.D. Cal. 2013); *see also Aloe Vera of Am. Inc. v. United States*, 2014 WL 3072981, at *4 (D. Ariz. July 7, 2014) (admitting economist's qualitative expert testimony because it reliably applied principles of an economics field that could "involve qualitative assessments such as examining business models, market characteristics, and the like").

Here, the Court concludes that Dr. Snyder's testimony is based on a reliable methodology and is not the "junk science" *Daubert* aims to preclude from jury consideration. *Wendell v. GlaxoSmithKline*, 858 F.3d 1227, 1236 (9th Cir. 2017). Tellingly, the FTC does not contend that Dr. Snyder misapplied industrial organization theory, attack Dr. Snyder's qualifications as an economist, or contend that industrial organization theory is not a valid discipline. *See id.* at 1233–36 (concluding that district court erred by excluding opinions of "highly qualified doctors" who applied "sound methodology" based on their experience, the record before them, and the relevant literature). Moreover, Dr. Snyder's theory is testable. *See Murray*, 870 F.3d at 922 (explaining that "whether the theory can be and has been tested" is often relevant to the *Daubert* analysis). Another economist can test whether Dr. Snyder's three factors explain the successes or failures of all modem chip suppliers. Ultimately, if the FTC believes that Dr. Snyder's three-factor analysis is incorrect or incomplete, "the appropriate way to discredit [Dr. Snyder's] theory [is] through competing evidence and incisive cross-examination." *Id.* at 925.

Finally, the FTC contends that Dr. Snyder is not a qualified expert because he has no special expertise in modem chips. However, Dr. Snyder need not be an expert in modem chips to opine on the performance of modem chip suppliers, so long as he applies a reliable economic methodology. As this Court has explained, "*Daubert* and its progeny explicitly contemplate the

6

admission of expert opinions in new fields." *Apple, Inc. v. Samsung Elecs. Co.*, 2014 WL 794328, at *15 (N.D. Cal. Feb. 25, 2014). Given that Dr. Snyder applies his expertise in industrial organization to the modem chip industry, Dr. Snyder provides an opinion that is more than "a narrative of the case which a juror is equally capable of constructing." *In re Rezulin Prods. Liability Litig.*, 309 F. Supp. 2d 531, 539 (S.D.N.Y. 2004). Moreover, the appropriate way to challenge Dr. Snyder's theory based on his lack of modem chip expertise is through cross-examination. Therefore, the Court rejects the FTC's arguments that Dr. Snyder's opinion is unreliable.

### B. Dr. Snyder's Opinions on the Performance of Other Modem Chip Suppliers are Helpful to the Court

The FTC argues that Dr. Snyder's opinions on the performance of other modem chip suppliers are not helpful to the Court because Dr. Snyder fails to consider "whether Qualcomm's conduct caused anticompetitive harm." Mot. at 12. However, under *Daubert*, "[e]xpert testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry." *Primiano*, 598 F.3d at 565. The FTC's burden in this case is to demonstrate that Qualcomm's conduct had anticompetitive effects. *See Rambus Inc. v. Fed. Trade Comm'n*, 522 F.3d 456, 463 (D.C. Cir. 2008) (holding that under the Sherman Act, "to be condemned as exclusionary, a monopolist's act must have 'anticompetitive effect'") (quoting *United States v. Microsoft Corp.*, 253 F.3d 34, 58 (D.C. Cir. 2001) (en banc)); *see also* ECF No. 1 ("Compl"), ¶ 136 (alleging that "Qualcomm's anticompetitive practices have excluded competitors, increased consumer prices, and suppressed innovation.").

The thrust of Dr. Snyder's analysis is whether three industry factors, rather than Qualcomm's conduct, explain the relative performance of other modem chip suppliers. *See* Snyder Report ¶ 31 (concluding that "industry factors . . . exert a strong influence on industry structure, competition among modem chip suppliers, [and] the successes and failures of suppliers"). Certainly, Dr. Snyder's opinion is relevant to whether Qualcomm's conduct had anticompetitive effects under the Sherman Act. Moreover, to the extent that the FTC argues that

7

Dr. Snyder ignores how Qualcomm's conduct interacts with the three industry factors, Dr. Snyder testified that he "identified the industry factors that [he] believed would not influenced by the conduct." Snyder Dep., 43:9–11. At trial, the FTC can press its point that Dr. Snyder's opinions are irrelevant because they fail to consider the impact of Qualcomm's conduct through "[v]igorous cross-examination [and] presentation of contrary evidence." *Daubert*, 509 U.S. at 596.

At the *Daubert* gatekeeping stage, "[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful" to the trier of fact. *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969–70 (9th Cir. 2013). Because Dr. Snyder's testimony is relevant to whether Qualcomm's conduct caused any anticompetitive effects on the modem chip supplier industry, the Court rejects the FTC's argument that it is unhelpful.

### C. Dr. Snyder's Opinions on the Health of the Modem Chip Industry are Helpful to the Court and Supported by a Reliable Methodology

Lastly, the FTC argues that Dr. Snyder's opinions on the health of the modem chip industry overall are unreliable and unhelpful because "Dr. Snyder fails to provide any logical or verifiable reasoning" to suggest that overall industry performance is relevant to the FTC's allegations. Mot. at 15. The FTC's argument on this point is spare. In essence, the FTC argues that Dr. Snyder offers no basis to believe that an industry's performance proves the absence of anticompetitive effect. In Section VI of his report, Dr. Snyder analyzes "whether there is evidence of any such impaired performance" in the modem chip industry. Snyder Report ¶ 475.

As explained above, Dr. Snyder's opinion is at least probative of whether the FTC has proven its allegation that Qualcomm's conduct "suppressed innovation" and otherwise had anticompetitive effect. Compl. ¶ 136. In fact, the FTC's own expert, Dr. Carl Shapiro, offers analogous expert testimony that "[i]ndustries that are growing and where technology is advancing are certainly not immune from antitrust problems." ECF No. 789-6, Ex. 6, Rebuttal Expert Report of Dr. Carl Shapiro ("Shapiro Report"), ¶ 258. Dr. Snyder's failure to address the precise legal question as the FTC sees it—whether Qualcomm's conduct *reduced* competition—is a subject for

cross-examination. *See* Mot. at 15; *see also Microsoft*, 253 F.3d at 58 (stating that conduct has an anticompetitive effect where it "harm[s] the competitive process and thereby harm[s] consumers").

In addition, Dr. Snyder's testimony is reliable, in that Dr. Snyder measured industry performance by reference to metrics measuring "the pace of innovation, quality-adjusted prices, and overall benefits to consumers." Snyder Report ¶ 476. For example, Dr. Snyder analyzes innovation by reference to modem chip suppliers' spending on research and development, and compares modem chip suppliers' investments in that area to other analogous industries. *Id.* ¶ 478. Other metrics that Dr. Snyder examines include modem chip prices, data speed, and consumer surplus, none of which the FTC contends are incorrect means to measure industry performance. *Id.* ¶ 479–96. Instead, the FTC contends, essentially, that Dr. Snyder's opinion is not relevant. *See* Mot. at 16 (arguing that Dr. Snyder should have opined "whether the industry could have experienced greater innovation or larger price decreases in the absence of Qualcomm's exclusionary conduct") (emphases omitted). As explained, the FTC is free to press that point on cross-examination of Dr. Snyder. *Primiano*, 598 F.3d at 564 ("Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion.").

## III. CONCLUSION

For the foregoing reasons, the Court DENIES the FTC's motion to exclude Dr. Snyder's expert opinions.

**IT IS SO ORDERED.**

Dated: December 17, 2018

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

9
Case No. 17-CV-00220-LHK
ORDER DENYING THE FTC'S MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. EDWARD SNYDER