# EXHIBIT 1




# Project Phoenix

## Red Team Assessment

ATTORNEY CLIENT PRIVILEGED – STRICTLY CONFIDENTIAL

DISCLAIMER: The materials on this page and in this presentation were created pursuant to the specific request of Qualcomm Technologies, Inc. and do not reflect the advice or views of The Boston Consulting Group, Inc. These materials are not to be used or relied on for any purpose whatsoever by the Client or any third party. Any such use or reliance by any party is at that party's sole risk.

23 November 2015

THE BOSTON CONSULTING GROUP

0



EXHIBIT
CX 3761

FOIA CONFIDENTIAL TREATMENT REQUESTED
BY BOSTON CONSULTING GROUP

BCG00014932

# EXHIBIT 2




*ATTORNEY CLIENT PRIVILEGED – STRICTLY CONFIDENTIAL*

**Project Phoenix**

Considerations for Alternative Corporate Structure(s)

09 November, 2015

THE BOSTON CONSULTING GROUP

0

**EXHIBIT**

tabbies®  CX 3755

REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED

REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED

REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED

REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED

REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED

REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED

REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED

REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED

REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED

REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED

REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED

REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED

REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED

REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED





REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED

REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED

REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED

REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED

REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



# EXHIBIT 3



Attached are notes from the management meetings over past two days on Phoenix.



# EXHIBIT 4



Note: we do not plan to have BCG present their slides at the meeting, in the interest of time.  We can hit the highlights.  Their analysis and conclusions are in line with management's assessment.

REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED





REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED





REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



[redacted]

REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED



# EXHIBIT 5

UNREDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED

# CADWALADER

Cadwalader, Wickersham & Taft LLP
200 Liberty Street, New York, NY 10281
Tel +1 212 504 6000  Fax +1 212 504 6666
www.cadwalader.com

CONFIDENTIAL

November 10, 2017

**VIA COURIER**

Mr. Wesley G. Carson
Federal Trade Commission
400 7th Street SW
Washington, DC  20024
wcarson@ftc.gov
(202) 326-3743

Re:   *FTC v. Qualcomm Incorporated*, No. 5:17-cv-00220-LHK (N.D. Cal.)

Dear Wes:

I write on behalf of The Boston Consulting Group, Inc. ("BCG") with respect to the Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (the "Subpoena") served on BCG in the Federal Trade Commission's ("Commission") pending litigation against Qualcomm Incorporated ("Qualcomm").

I.     **Subpoena Request Nos. 1–4**: **Any further document production would be duplicative of BCG's production in response to the Commission's Civil Investigative Demand**

BCG previously produced a substantial amount of material in response to the Civil Investigative Demand ("CID") issued to BCG during the Commission's investigation of Qualcomm. Subpoena Document Request Nos. 1-4 are identical to document requests in that CID. As discussed, and consistent with Subpoena Instruction J, BCG does not plan to produce "another copy of documents previously submitted in the course of the FTC's pre-complaint investigation *In the Matter of Qualcomm, Inc.*, FTC File No. 141-0199."

II.    **Subpoena Request No. 5**: **BCG has produced additional responsive documents from Project Diagnosis**

With respect to the final document request, Subpoena Request No. 5, and as previously discussed, any materials that BCG would produce in response would be largely duplicative of

C A D W A L A D E R

Wesley G. Carson
November 10, 2017

BCG's CID production. Moreover, documents responsive to Subpoena Request No. 5 would
be as readily available, if not more easily found in, Qualcomm's files and, in all likelihood,
already have been produced to the Commission by Qualcomm.

Nonetheless, BCG has collected and produced to the Commission on November 10, 2017 a
highly targeted set of final or near-final analyses from Project Diagnosis responsive to
Subpoena Request No. 5. Much of the content of these analyses is derived from publicly
available information or third-party content such that prior versions of these documents would
not reveal additional original analysis by BCG of competition or licensing responsive to
Subpoena Request No. 5.

**III.      Subpoena Request No. 5: BCG objects to producing documents beyond the
            Project Diagnosis analyses already produced**

BCG objects to producing any materials responsive to Subpoena Request No. 5 beyond the set
of Project Diagnosis analyses already produced. A comprehensive search for Project Diagnosis
documents would be unnecessarily burdensome for BCG given that BCG is a third party not
under investigation by the Commission, the submitted Project Diagnosis analyses produced to
the Commission directly address the market share and other competition and licensing issues
sought in Subpoena Request No. 5, prior drafts of those analyses are unlikely to reveal
additional original analysis, and there is no centralized repository for Project Diagnosis
documents. In addition, to BCG's understanding, none of the other engagements BCG has
undertaken for Qualcomm had as a goal or primary focus the analysis of competition factors,
*e.g.*, market shares, or the licensing of cellular patents, even if aspects of those projects may
have, in part, intersected with the information sought in Subpoena Request No. 5. If necessary,
BCG remains available to discuss this objection.

**IV.     BCG's CID Production: Privilege log for withheld documents**

BCG submitted to the Commission on October 31, 2017 a privilege log for documents
withheld from BCG's CID production. BCG has not provided the Commission with a log for
the redacted documents in that production, and you have agreed to discuss that item further
with us if necessary given BCG's objection to producing a privilege log for the redacted
documents. Requiring a log for the hundreds of redacted documents would "impos[e] undue
burden or expense" on BCG as a third party under Fed. Rules of Civ. Proc. 45(d)(1). The
entries on the redacted log likely would be substantially similar to the entries of the withheld
log, and the Commission has additional context both from the unredacted content and from the
metadata produced along with the redacted documents to understand the nature of BCG's

UNREDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED

# C A D W A L A D E R

Wesley G. Carson
November 10, 2017

privilege claims. As a consultant receiving legal advice and working on analyses that
implicated legal decisions, BCG as a third party appropriately received and kept confidential
Qualcomm's privileged information and communications under applicable law. *See
Segerstrom v. U.S.*, No. C 00-0833, 2001 WL 283805, at *3 (N.D. Cal. Feb. 6, 2001) ("The
attorney-client privilege covers communications between the attorney, the client, or their
agents, so long as the communications were intended to be confidential and made in rendering
legal advice."); *see also U.S. v. Judson*, 322 F.2d 460, 462 (9th Cir. 1963) (finding attorney-
client privilege not waived where "accountants' role was to facilitate an accurate and complete
consultation between the client and the attorney about the former's financial picture").

Lastly, to confirm, BCG does not plan to assert a privilege claim over any other documents
from its CID or Subpoena productions to date.

$$*\qquad\qquad*\qquad\qquad*$$

Please do not hesitate to contact me or my partner Amy Ray with questions regarding BCG's
Subpoena response.

Very truly yours,

Jason M. Halper

cc: Gary A. Bornstein, Cravath Swaine & Moore LLP, gbornstein@cravath.com
    Amy Ray, Cadwalader, Wickersham & Taft LLP, amy.ray@cwt.com

# EXHIBIT 6

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.: |
| | ) 5:17-cv-00220- |
| | ) LHK-NMC |
| | ) |
| | ) 5:17-md-02773-LHK |
| QUALCOMM INCORPORATED, a Delaware | ) |
| corporation, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |
| | ) |
| IN RE:  QUALCOMM ANTITRUST | ) |
| LITIGATION | ) |
| _____ | ) |

***HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY***

VIDEOTAPED DEPOSITION OF DAVID WISE, VOLUME I

February 8, 2018, 9:10 a.m.

4655 Executive Drive, Suite 1500, San Diego, California

REPORTED BY:  JULIE A. McKAY, CSR NO. 9059

1    A.    No.

2    Q.    What is the highest degree that you earned?

3    A.    MBA, master's in business.

4    Q.    And when was that?

5    A.    1994.

6    Q.    From which school?

7    A.    University of Virginia.

8    Q.    Prior to that, what was the subject matter of

9    your next highest degree?

10   A.    I had a BA undergrad in economics.

11   Q.    And when did you start working at Qualcomm?

12   A.    1997.

13   Q.    What's your current position at Qualcomm?

14   A.    Senior vice president finance and treasurer.

15   Q.    And what are your responsibilities as

16   treasurer?

17   A.    I'm responsible for cash management in the

18   company, foreign exchange, manage our investment

19   portfolio, as well as all of our capital markets

20   activities.

21   Q.    Do you have any responsibility for corporate

22   strategy in your current position?

23   A.    I'm involved in a number of our what I would

24   call corporate strategic initiatives, but not an

25   official strategy role, no.

 1    focus of your business between chips and licenses,

 2    besides what you just described for us?

 3        A.   No, I don't believe so.

 4        Q.   And was there an event that precipitated

 5    Project Phoenix?

 6             MS. SESSIONS:  Objection.  Foundation.

 7             THE WITNESS:  So in -- I think it was in 2015,

 8    we had -- activist JANA Partners took a position in

 9    Qualcomm, and one of their thesis -- theses was to let

10    there be more value by splitting the business.  And so

11    that was one of the -- one of the reasons for us to look

12    at the -- the separation.

13    BY MR. GRAY:

14        Q.   What were the other reasons for undertaking

15    Project Phoenix in 2015?

16        A.   Issues of whether or not it would result in a

17    better unlock of value.  We've looked at separation

18    several times over the history of the company as to

19    whether or not that would be a better way to drive value

20    for shareholders.

21        Q.   What was your role during Phoenix?

22        A.   I was very involved in leading the analysis.

23        Q.   Did you have outside advisors?

24        A.   Yes.

25        Q.   And who were they?

Case 3:17-cv-00220-MK Document 1021 Filed 12/18/18 Page 179 of 181

 1      A.    Goldman Sachs, Evercore.   There was an advisor,

 2   Centerview Partners, that was hired by our board.   There

 3   were various legal advisors.   BCG was involved for some

 4   business elements.

 5      Q.    And what was BCG's role in Project Phoenix?

 6      A.    They did -- they did some work -- I'm trying to

 7   recall, but they did some work related to, I think some

 8   of the elements of how to think about, you know, the

 9   value of the licensing business.

10      Q.    As part of that work, did they value Qualcomm's

11   patents?

12            MS. SESSIONS:   Objection.   Vague.

13            THE WITNESS:   I don't recall if they did.

14   BY MR. GRAY:

15      Q.    Do you recall the valuation work that BCG did

16   as part of Project Phoenix?

17            MS. SESSIONS:   Excuse me.   I'm sorry.   I didn't

18   hear the question.

19            MR. GRAY:   I'm happy to repeat it.

20            MS. SESSIONS:   Yeah.

21   BY MR. GRAY:

22      Q.    Do you recall what kinds of valuation work BCG

23   did as part of Project Phoenix?

24      A.    I don't honestly recall the specifics right now

25   of what they did.   I know -- I know they did some

 1    analysis and it was presented to the board.  I believe

 2    it was related to QTL, yeah.

 3         Q.   Did you participate in this analysis?

 4         A.   I think participated some in -- I think saw it

 5    and had some review of it, yeah, before it went through.

 6         Q.   Did you help prepare the board recommendation?

 7              MS. SESSIONS:  Objection.  Vague.

 8              THE WITNESS:  Yeah.  I'm not sure what -- what

 9    recommendation.

10    BY MR. GRAY:

11         Q.   What -- but you said that they made a

12    recommendation to the board; am I correct?

13         A.   No.

14         Q.   Did BCG make a recommendation to the board?

15         A.   I'm not aware that they made a recommendation.

16    I think they did some analysis.

17         Q.   Did they make a recommendation to senior

18    management?

19         A.   Not that I'm aware of.  I think they were -- I

20    think they were mostly doing analysis.

21         Q.   Did they do some analysis that was presented to

22    senior management?

23         A.   Yeah, they did -- and it was also presented to

24    the board.

25         Q.   Did you participate in the analysis that was

```
 1   presented to senior management or the board?
 2       A.   BCG's analysis?
 3       Q.   Yes.  Did you participate in helping BCG with
 4   the analysis that was presented to senior managers and
 5   the board?
 6       A.   Yeah, I'm sure I looked at it.  I'm sure --
 7   might have been some -- may have provided some data or
 8   things like that to them, yeah.
 9       Q.   And did you review it?
10       A.   I'm sure --
11            MS. SESSIONS:  Objection.  Vague.
12            THE WITNESS:  I'm sure I did review it.
13   BY MR. GRAY:
14       Q.   Were you present when they presented it to
15   senior managers?
16       A.   Yeah.
17       Q.   Were you present when they presented it to the
18   board?
19       A.   Yes.
20       Q.   And when did BCG present its analysis to the
21   board?
22       A.   Sometime during the Phoenix process.  I don't
23   remember exactly when.
24       Q.   But this would have been during 2015?
25       A.   Yeah.
```