CRAVATH, SWAINE & MOORE LLP
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
825 Eighth Avenue
New York, New York 10019-7475
Telephone: (212) 474-1000
Facsimile:  (212) 474-3700

KEKER, VAN NEST & PETERS LLP
Robert A. Van Nest (SBN 84065)
rvannest@keker.com
Eugene M. Paige (SBN 202849)
epaige@keker.com
Justina K. Sessions (SBN 270914)
jsessions@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
Facsimile:  (415) 397-7188

Attorneys for Defendant
QUALCOMM INCORPORATED

MORGAN LEWIS & BOCKIUS LLP
Richard S. Taffet (*pro hac vice*)
richard.taffet@morganlewis.com
101 Park Avenue
New York, New York 10178-0060
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

MORGAN LEWIS & BOCKIUS LLP
Willard K. Tom (*pro hac vice*)
willard.tom@morganlewis.com
1111 Pennsylvania Ave. NW
Washington, DC 20004-2541
Telephone: (202) 739-3000
Facsimile:  (202) 739-3001

MORGAN LEWIS & BOCKIUS LLP
Geoffrey T. Holtz (SBN 191370)
geoffrey.holtz@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000
Facsimile:  (415) 442-1001

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>QUALCOMM INCORPORATED, a Delaware corporation,<br><br>Defendant. | NO. 5:17-CV-00220-LHK-NMC<br><br>**DECLARATION OF ZACHARY ARNER IN SUPPORT OF SEALING PORTIONS OF TRIAL EXHIBITS JX0006, JX0047, AND JX0122**<br><br>CTRM:  8, 4th Floor<br><br>JUDGE:  Hon. Lucy H. Koh |

I, Zachary Arner, declare as follows:

1. I am currently Senior Manager, Finance, at Qualcomm CDMA Technologies ("QCT") at Qualcomm Technologies, Incorporated. I received my Bachelor of Arts from University of California, San Diego in 2003 and Master of Accounting from University of Southern California in 2004. I started working at QCT in 2008. My current responsibilities include commercial pricing in the Mobile business unit. When I began working at QCT in 2008, my title was Financial Analyst. In 2010 I was promoted to Senior Financial Analyst, in 2013 I was promoted to Staff Financial Analyst, and in 2015 I was promoted to Manager, Finance. In 2017 I was promoted to my current position. Over the course of my employment in QCT, I have acquired personal knowledge of QCT's practices and procedures concerning the maintenance of the confidentiality of its contracting and business activities.

2. I submit this declaration in support of sealing portions of trial exhibits JX0006, JX0047, and JX0122 (the "Trial Exhibits").

3. The contents of this declaration are true and correct to the best of my knowledge, information and belief. I have personal knowledge of the facts set forth herein, or my knowledge is based upon my review of records kept in the ordinary course of business or conversations with other knowledgeable Qualcomm Incorporated ("Qualcomm") employees. If called upon as a witness in this action, I could and would testify competently thereto.

4. QCT follows a strict practice that requires confidential treatment of all negotiations for the sale of chips. All such discussions are undertaken pursuant to non-disclosure agreements, which provide that all information exchanged and terms discussed during negotiations are to be maintained in confidence by both parties to the negotiations.

5. Generally, agreements for the supply of chips (Component Supply Agreements, or "CSAs") are entered into by Qualcomm CDMA Technologies Asia-Pacific PTE Ltd. ("QCTAP") and a chip customer. It is QCTAP's practice to include in its CSAs confidentiality obligations that prohibit the disclosure of the agreements themselves or any of their terms, except in limited authorized circumstances. These confidentiality obligations survive termination of the CSAs.

6. Furthermore, strategic relationship agreements are generally between Qualcomm

Technologies Incorporated ("QTI") and a third party. It is QTI's practice to include in its strategic relationship agreements confidentiality obligations that prohibit the disclosure of the agreements themselves or any of their terms, except in limited authorized circumstances. These confidentiality obligations survive termination of the strategic relationship agreements.

7. It is likewise QCT's practice to require confidential treatment of QCT's internal business analyses, pricing and valuation analyses, revenues, strategy and decision-making. QCT's business analyses, pricing and valuation analyses, revenues, strategy and decision-making incorporate highly sensitive and proprietary information and processes that QCT relies upon to pursue its commercial interests.

8. These confidentiality practices are important to QCT and (with respect to agreements and communications with third parties) to third parties with which QCT contracts for several reasons. Both QCT and prospective contractual counterparties seek to maintain their negotiations in confidence to afford each the ability to engage in arm's-length commercial bargaining, each bringing to bear their own unique circumstances and business goals without such circumstances and goals being disclosed to their competitors, customers and other actual and potential customers.

9. The disclosure of QCT's confidential information, such as information contained in chip sale negotiations, the terms of CSAs, and QCT's internal business analyses, pricing and valuation analyses, revenues, strategies and decision-making could significantly harm QCT's relationships and ability to conduct business with counterparties and prospective counterparties and to compete effectively with other chip manufacturers.

10. In my experience and to the best of my knowledge, the confidentiality obligations specified above have always been strictly followed at QCT. I was informed of QCT's practices and policies described herein when I first joined QCT, and I have informed others at QCT of our confidentiality obligations and practices.

11. QCT also goes to great lengths to ensure that confidential information relating to the manufacture of its chips, the terms of CSAs and other agreements, and QCT's internal business analyses, pricing and valuation analyses, strategies and decision-making is well

protected. Personnel with access to data storage locations where confidential information is stored and maintained are advised of QCT's practices and policies and are required to acknowledge in writing their awareness of and compliance with applicable Qualcomm confidentiality policies. The same is true for any QCT personnel who request access to such information and all new QCT employees.

12. In addition, every QCT database and system that contains confidential information is access-restricted and requires login by QCT employees.

13. I have reviewed the information described herein, which is contained in the Trial Exhibits to determine whether it includes information that QCT would consider confidential under the practices and policies described above. Based on this review, I have determined that Exhibit JX0122 of the Trial Exhibits includes confidential QCT information.

14. The information in JX0122 reflects the type of information concerning the terms of CSAs and strategic relationship agreements that QCT maintains as confidential.

15. Specifically, the following portions of JX0122, which contain an Amended and Restated Strategic Relationship Agreement between QTI and Samsung dated January 1, 2018 (the "2018 Strategic Agreement"), reflect confidential pricing information:

- JX0122-036: Third paragraph, Line 2, between "(a) no less than" and "of Core Chipset" at JX0122-036;
- JX0122-036: Third paragraph, Line 3, between "less than" and "of Core Chipset";
- JX0122-037: §2(a), Line 2, between "equal to" and "for such";
- JX0122-037: First paragraph after §2(b), Lines 1-2, between "greater of" and "(the 'First Quarter Rebate')";
- JX0122-037: Second paragraph after §2(b), Line 1, between "(a)" and "for the second";
- JX0122-037: Second paragraph after §2(b), Line 3, between "equals less than" and "then";
- JX0122-037: Second paragraph after §2(b), Line 4, between "Rebate and" and "(the 'Second";

- JX0122-037: Third paragraph after §2(b), Line 1, between "year, (a)" and "for the third";
- JX0122-037: Third paragraph after §2(b), Line 4, between "equals less than" and "then QCTAP";
- JX0122-037: Third paragraph after §2(b), Line 5, between "Rebate and" and "U.S. Dollars";
- JX0122-037: Fourth paragraph after §2(b), Line 1, between "year, (a)" and "for the fourth";
- JX0122-037: Fourth paragraph after §2(b), Line 4 after "equals less than";
- JX0122-037: Fourth paragraph after §2(b), Line 7 after "Rebate and";
- JX0122-037: First paragraph after §2(c), Line 1, between "greater of" and "for such";
- JX0122-037: First paragraph after §2(c), Line 2, between "Devices or and "(the 'First";
- JX0122-037: Second paragraph after §2(c), Line 1, between "(a)" and "of the Net";
- JX0122-037: Second paragraph after §2(c), Line 3 after "equals less than";
- JX0122-037: Second paragraph after §2(c), Line 5, between "Rebate and" and "(the 'Second";
- JX0122-037: Third paragraph after §2(c), Line 1, between "(a)" and "for the third";
- JX0122-037: Third paragraph after §2(c), Line 4, between "less than" and "then QCTAP";
- JX0122-037: Third paragraph after §2(c), Line 6, between "Rebate and" and "(the 'Third";
- JX0122-038: First paragraph, Line 1, between "(a)" and "for the fourth";
- JX0122-038: First paragraph, Line 5, between "less than" and "then QCTAP";
- JX0122-038: First paragraph, Line 8;

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- JX0122-038: Second paragraph after §2(d), Line 1, between "greater of" and "for such";
- JX0122-038: Second paragraph after §2(d), Line 2, between "technology or" and "(the 'First";
- JX0122-038: Third paragraph after §2(d), Line 1, between "(a)" and "for the second";
- JX0122-038: Third paragraph after §2(d), Line 3 after "equals less than";
- JX0122-038: Third paragraph after §2(d), Line 5, between "Rebate and" and "(the 'Second";
- JX0122-038: Fourth paragraph after §2(d), Line 1, between "(a)" and "for the third";
- JX0122-038: Fourth paragraph after §2(d), Line 4, between "equals less than" and "then QCTAP";
- JX0122-038: Fourth paragraph after §2(d), Line 6-7, between "Rebate and" and "(the 'Third";
- JX0122-038:  §2(e), Line 2, between "amount equal to" and "for Connectivity";
- JX0122-038: First paragraph after §2(g), Line 1, between "greater of" and "for High/Mid/Low";
- JX0122-038: First paragraph after §2(g), Line 2, between "quarter or" and "(the 'First";
- JX0122-039: First paragraph, Line 1, between "(a)" and "for High/Mid/Low";
- JX0122-039: First paragraph, Line 3, between "less than" and "then QCTAP";
- JX0122-039: First paragraph, Line 4, between "Rebate and" and "(the 'Second";
- JX0122-039: Second paragraph, Line 1, between "(a)" and "for High/Mid/Low";
- JX0122-039: Second paragraph, Lines 3-4, between "less than" and "then QCTAP";
- JX0122-039: Second paragraph, Line 6 before "(the 'Third";
- JX0122-039: Third paragraph, Line 1, between "(a)" and "for High/Mid/Low";

- JX0122-039: Third paragraph, Line 4, between "less than" and "then QCTAP";
- JX0122-039: Third paragraph, Line 7 after "Rebate and";
- JX0122-039: First paragraph after §2(h), Line 1, between "greater of" and "for such";
- JX0122-039: First paragraph after §2(h), Line 2, between "Devices or" and "(the 'First";
- JX0122-039: Second paragraph after §2(h), Line 1, between "(a)" and "for the second;
- JX0122-039: Second paragraph after §2(h), Line 3, between "less than" and "then QCTAP";
- JX0122-039: Second paragraph after §2(h), Line 5, between "and" and "(the 'Second";
- JX0122-039: Third paragraph after §2(h), Line 1, between "(a)" and "for the third";
- JX0122-039: Third paragraph after §2(h), Line 4, between "less than" and "then QCTAP";
- JX0122-039: Third paragraph after §2(h), Line 6, between "Rebate and" and "(the 'Third";
- JX0122-039: Fourth paragraph after §2(h), Line 1, between "(a)" and "for the fourth";
- JX0122-039: Fourth paragraph after §2(h), Lines 4-5, between "less than" and "then QCTAP";
- JX0122-039: Fourth paragraph after §2(h), Line 7 after "Rebate and";
- JX0122-039: §2(i), Lines 1-2, between "SAMSUNG (i)" and "by June 30, 2018";
- JX0122-039: §2(i), Line 5, between "(ii)" and "(the 'Galaxy".

The terms and conditions of the 2018 Strategic Agreement, including pricing terms, are subject to confidentiality obligations that prohibit disclosure. Public disclosure of this information would harm Qualcomm and its affiliates by disclosing internal licensing considerations and may unfairly

benefit actual and potential third parties with respect to contracting activities of Qualcomm and its affiliates. This is particularly true here because this is a 2018 document.

16. The information specified above and contained in the Trial Exhibits reflects terms in the agreements contained within the exhibits. The terms and conditions of these agreements are subject to confidentiality obligations that prohibit disclosure, and the confidentiality provisions survive expiration of the agreements. Furthermore, public disclosure of the information described above would harm QCT and unfairly benefit actual and potential third parties with respect to contracting activities by disclosing confidential information that may disadvantage Qualcomm and its affiliates in ongoing and future contract negotiations. This is because counterparties in such situations could use this confidential information to gain an advantage that would not otherwise be possible absent disclosure of this information, and would thereby compromise QCT's commercial interests. Information about Qualcomm's and its affiliates' confidential agreements could also assist Qualcomm's competitors in seeking to win business opportunities away from Qualcomm and its affiliates.

17. This confidential information is not publicly known, and QCT recognizes and protects the enormous value of this information through its various policies and procedures designed to protect confidential information from disclosure.

1 | I declare under penalty of perjury that the foregoing is true and correct and that I executed
2 | this declaration on January 6, 2019, in San Diego, California.

*/s/ Zachary Arner*
Zachary Arner