SIDLEY AUSTIN LLP
David C. Giardina (*pro hac vice*)
dgiardina@sidley.com
One South Dearborn
Chicago, IL 60603
312-853-7000 – Telephone
312-853-7036 – Facsimile

SIDLEY AUSTIN LLP
Nathan A. Greenblatt (SBN 262279)
ngreenblatt@sidley.com
1001 Page Mill Road, Bldg. 1
Palo Alto, CA  94304
650-565-7000 – Telephone
650-565-7100 – Facsimile

*Attorneys for Non-Party HUAWEI DEVICE USA, INC.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 5:17-cv-00220-LHK |
| Plaintiff, | |
| v. | **HUAWEI'S MOTION TO SEAL PORTIONS OF CERTAIN TRIAL EXHIBITS** |
| QUALCOMM INCORPORATED, | |
| Defendant. | |

Pursuant to Civil Local Rule 79-5 and the Court's Order Vacating Portions of Sealing Order, ECF No. 1100, Regarding Pegatron and Wistron and Huawei and Ordering Pegatron and Wistron and Huawei to Refile Sealing Motions (Dkt. 1149) (the "Order"), third party Huawei Device USA, Inc. ("Huawei") respectfully moves the Court to permit sealing of portions of certain trial exhibits that contain Huawei confidential information.

The Order vacates the Court's sealing order relating to four Huawei documents (collectively, the "Licensing Agreements") and permits Huawei "to file narrowly-tailored sealing motions" for those documents by January 8, 2019. Dkt. 1149 at 1-2. Huawei now moves to seal certain portions of those documents because they reflect the terms of confidential license agreements and/or information relating to on-going confidential license negotiations, the public disclosure of which would harm Huawei's competitive standing:

| Document | Party Claiming Confidentiality | Portions to be Sealed | Relevant Standard for Sealing | Basis for Sealing & Any Explanations |
|---|---|---|---|---|
| JX-022 (Exhibit 1 hereto)[1] | Huawei Device USA, Inc. ("Huawei") | Highlighted portions of FTC-Huawei-0000706; FTC-Huawei-0000711; FTC-Huawei-0000713-15; FTC-Huawei-0000719; Huawei-Qualcomm-0000536 | Compelling reasons | Declaration of Steven M. Geiszler In Support of Huawei's Motion to Seal ("Geiszler Declaration") ¶¶ 4-5 |
| JX-027 (Exhibit 2 hereto) | Huawei | Highlighted portions of FTC-Huawei-0000698; FTC-Huawei-0000701 | Compelling reasons | Geiszler Declaration ¶¶ 4 |
| JX-097 (Exhibit 3 hereto) | Huawei | Highlighted portions of FTC-Huawei-0000651-55; FTC-Huawei-0000657 | Compelling reasons | Geiszler Declaration ¶¶ 4, 6-7 |
| JX-098 (Exhibit 4 hereto) | Huawei | Highlighted portions of FTC-Huawei-0000573-77; FTC-Huawei-0000580-87; FTC-Huawei-0000590-97; FTC-Huawei-0000602-03; FTC-Huawei- | Compelling reasons | Geiszler Declaration ¶¶ 4, 6-7 |

---

[1] Huawei is submitting highlighted copies of each exhibit under seal. Huawei is not submitting public redacted versions at this time, because Qualcomm may seek to seal additional portions of these exhibits. Huawei is prepared to submit public redacted versions as the Court directs.

| | | 0000610-13; FTC-Huawei-0000617-19; FTC-Huawei-0000625-28; FTC-Huawei-0000642-49 | | |
|---|---|---|---|---|

Parties seeking to seal judicial records relating to motions that are "more than tangentially related to the underlying cause of action," *Ctr. for Auto Safety v. Chrysler Grp.*, 809 F.3d 1092, 1099 (9th Cir. 2016), bear the burden of overcoming the presumption with "compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure," *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006), 447 F.3d at 1178–79 (internal quotation marks and citation omitted).  Compelling reasons justifying the sealing of court records generally exist "when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* at 1179 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598).  The United States Supreme Court has recognized that sealing may be justified to prevent judicial documents from being used "as sources of business information that might harm a litigant's competitive standing." *Nixon*, 435 U.S. at 598.  The Ninth Circuit has held, and this Court has previously ruled, that "pricing terms, royalty rates, and guaranteed minimum payment terms" of patent licensing agreements plainly constitute trade secrets, and are thus sealable. *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008); *accord* Dkt. 1149 at 1.

### I.   Huawei's Requests to Seal Royalty and Other Financial Terms of its License Agreements with Qualcomm

This Court in *Apple Inc. v. Samsung Elecs. Co.* recognized that royalty information in patent license agreements sought to be introduced at trial should be kept under seal. No. 11-cv-01846, 2012 WL 3283478, at *6 (N.D. Cal. Aug. 9, 2012).  In *Apple*, this Court found that "disclosing the terms of these licensing agreements will put [Apple] at a disadvantage in negotiations for future licensing deals." *Id.* (granting-in-part motion to seal license agreements and redact royalty rates and payment terms), *rev'd on other grounds*, 727 F.3d 1214 (Fed. Cir. 2013).  Here, as explained in the accompanying Declaration of Steven M. Geiszler ("Geiszler Decl."), the bulk of the identified

portions of the License Agreements should be sealed for the same reasons.  The designated portions disclose royalty arrangements and related financial terms between Huawei and Qualcomm, disclosure of which would put Huawei at a competitive disadvantage. Geiszler Decl. ¶ 4.  The royalty rates and payment terms contained in the License Agreements are the type of sensitive, non-public trade secret information that courts regularly order sealed under the "compelling reasons" standard. *In re Elec. Arts*, 298 F. App'x at 569; *Apple*, 2012 WL 3283478, at *4; *see also TIBCO Software, Inc. v. KAAZING Corp.*, No. 16-cv-06949-BLF, 2016 U.S. Dist. LEXIS 175307, at *4-5 (N.D. Cal. Dec. 19, 2016) (sealing "the terms and financial data" included in a license agreement).

## II.  Huawei's Requests to Seal Non-Financial Terms of its License Agreements with Qualcomm

In addition to royalty rates and financial terms, the Ninth Circuit has recognized that sealing is proper for non-monetary terms as long as the terms consist of trade secrets. *See In re Elec. Arts*, 298 F. App'x at 569 (sealing information that falls under the definition of "trade secrets," which consist of "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it").  This Court and other Ninth Circuit courts have permitted sealing portions of agreements where disclosure of certain terms would harm the party's standing in future negotiations. *See Thomas v. Magnachip Semiconductor Corp.*, No. 14-cv-01160-JST, 2016 WL 3879193, at *7 (N. D. Cal. Jul. 18, 2016) (sealing a termination provision in a class action settlement agreement "to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts"); *PCT Int'l Inc. v. Holland Elecs. LLC*, No. 12-cv-01797, 2014 WL 6471419, at *2, *6 (D. Ariz. Nov. 18, 2014) (sealing descriptions of license agreements that contain trade secrets because the agreement terms were important to the party's standing during patent licensing negotiations); *Ovonic Battery Co. v. Sanyo Elec. Co.*, No. 14-cv-01637-JD, 2014 U.S. Dist. LEXIS 82687, at *11 (N.D. Cal. Jun. 16, 2014) (party could narrowly tailor its sealing motion by redacting "all sensitive information in the agreement, including . . . any other detailed product-specific financial information" that could harm the party's competitive standing).  In *Powertech Tech., Inc. v. Tessera, Inc.*, this Court went so far as to seal an

1  entire license agreement and appendices because they "contain information regarding the licensing
2  relationship between the parties." No. C 11-6121 CW, 2012 WL 3283420, at *9 (N.D. Cal. Aug.
3  10, 2012).

4        Here, while the bulk of the provisions for which Huawei requests sealing pertain to the
5  financial terms of the License Agreements, Huawei also respectfully requests that a small number
6  of other provisions be sealed.  These competitively-sensitive provisions pertain to:  (i) the scope and
7  content of the license and other rights (including the nature and limitations on pass-through rights)
8  that Huawei extended to Qualcomm (and vice versa) and the conditions under which such rights
9  may be terminated or suspended; (ii) certain dispute resolution provisions; (iii) the potential effect
10 of certain regulatory actions on the rights of the parties under the agreements; and (iv) the
11 identification of certain Huawei customers and other identified firms. *See, e.g.,* JX-097 at FTC-
12 Huawei-0000651-55 (Sections 2 and 3); JX-098 at FTC-Huawei-0000575 (Section 3.1.3), FTC-
13 Huawei-0000576-77 (Section 3.1.5), FTC-Huawei-0000580-81 (Section 3.2.4), FTC-Huawei-
14 0000594-97 (Section 4.3 and 4.4), FTC-Huawei-0000610 (Section 18.2), FTC-Huawei-0000612-13
15 (Section 25); FTC-Huawei-0000617 (definitions); FTC-Huawei-0000648-49 (lists of Group A and
16 Group B customers).  The scope and content of each of these provisions were a material
17 consideration in Huawei's decision to enter the agreement, and the content of those provisions is
18 competitively sensitive and confidential. Geiszler Decl. ¶ 6.  As explained in the Geiszler
19 Declaration, Huawei expects that the licensing terms in the agreement are likely to be contested in
20 future negotiations with other companies to the extent that other companies from which Huawei
21 seeks a license have granted similar rights, such as pass-through rights. Geiszler Decl. ¶ 7.
22 Disclosing this information would disadvantage Huawei when negotiating with other licensors and
23 licensees. *Id.*

24       Huawei has a strong business interest in maintaining the confidentiality of all of the
25 highlighted portions of its License Agreements with Qualcomm, including royalty rates, payment
26 terms, the scope of the rights exchanged under the agreement (including pass-through rights), and
27 the other information identified above. Geiszler Decl. ¶ 7.  Within Huawei, access to such
28 confidential information is restricted.  Consistent with Huawei's continuous efforts to ensure that its

confidential licenses and negotiations are not disseminated more widely than necessary, the documents containing this information were produced as "HUAWEI CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY" pursuant to the Supplemental Protective Order. (Dkt. 218). *Id.* Public disclosure of this information would create an asymmetry between Huawei and its competitors and would hurt Huawei's competitive standing. *Id.* The highlighted portions contain provisions that were material consideration for the Licensing Agreements. *Id.*

Accordingly, Huawei respectfully moves to seal the above-listed information at trial.

| | |
|---|---|
| Dated: January 8, 2019 | Respectfully submitted, |
| | SIDLEY AUSTIN LLP |
| | |
| | */s/ David C. Giardina* |
| | David C. Giardina (*pro hac vice*) |
| | dgiardina@sidley.com |
| | SIDLEY AUSTIN LLP |
| | One South Dearborn |
| | Chicago, IL 60603 |
| | 312-853-7000 – Telephone |
| | 312-853-7036 – Facsimile |
| | |
| | *Attorneys for Huawei Device USA, Inc.* |