# EXHIBIT 1 TO HUAWEI'S MOTION TO SEAL

# (JX-022)

# PUBLIC REDACTED VERSION

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL – 15 U.S.C. § 57b-2
FTC File No. 141-0199

000097



## CONTRACT BETWEEN QUALCOMM INCORPORATED AND HUAWEI TECHNOLOGIES CO. LTD. FOR THE LICENSE OF CERTAIN TECHNOLOGY FOR THE MANUFACTURING AND SALE OF CERTAIN CDMA SUBSCRIBER UNITS

This Contract for the License of Certain Technology for the Manufacturing and Sale of Certain CDMA Subscriber Units (the "Contract") is entered into on May 29 , 2003 by and between QUALCOMM Incorporated, a Delaware corporation ("QUALCOMM"), and Huawei Technologies Co. Ltd., a Chinese company, with respect to the following facts:

### RECITALS

WHEREAS, QUALCOMM has developed certain proprietary Code Division Multiple Access technology which may be useful in providing greater capacity and improved quality and reliability compared to other Wireless telephone technologies;

WHEREAS, QUALCOMM and China United Telecommunications Corporation ("Unicom") have entered into that certain Framework Agreement for CDMA Intellectual Property dated January 28, 2000 (the "Framework Agreement") which provides a framework for the licensing of certain domestic Chinese CDMA equipment manufacturers designated by the Ministry of Information Industries ("MII") in consideration for Unicom's agreement to deploy a commercial CDMA wireless network with a capacity of 10 million subscribers;

WHEREAS, the MII and QUALCOMM have entered into that certain Memorandum of Understanding By and Between The Ministry of Information Industry of the People's Republic of China and QUALCOMM Incorporated On Their Cooperation In CDMA dated November 29, 2000 whereby, among other things, the MII supported the Framework Agreement;

WHEREAS, QUALCOMM wishes to promote CDMA technology and the development of CDMA networks in China, while LICENSEE is a leading Chinese manufacturer in CDMA systems technology; and

WHEREAS, LICENSEE desires to obtain a commercial license of QUALCOMM's Intellectual Property to manufacture and sell Subscriber Units, and QUALCOMM, in reliance upon Unicom's agreement mentioned above, desires to grant such license in accordance with the terms and conditions set forth in this Contract.

QUALCOMM-HUAWEI CONFIDENTIAL.                           QUALCOMM PROPRIETARY

No. 00004674
CONFIDENTIAL

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL – 15 U.S.C. § 57b-2
FTC File No. 141-0199

000097



AGREEMENT

NOW THEREFORE, the parties hereby agree as follows:

1.    HEADINGS AND DEFINITIONS.

All headings used in this Contract are inserted for convenience only and are not intended to affect the meaning or interpretation of this Contract or any clause.  Reference to "third party or third parties" shall not mean either Party. For the purpose of this Contract, the following definitions apply:

"Affiliates" means, as to any company, partnership or business combination (including QUALCOMM and LICENSEE), any present or future Parent of such company, partnership or business combination and any present or future Subsidiary of such company, partnership or business combination and/or its Parent, but only for so long as the Parent remains the Parent of such company, partnership or business combination and the Subsidiary remains a Subsidiary of such company, partnership or business combination and/or its Parent.  The term "Parent" of a company, partnership or business combination means any corporation or other legal entity that owns or controls, directly or indirectly (i) more than 50% of the shares or other securities of such company, partnership or business combination entitled to vote for election of directors (or other managing authority) of such company, partnership or business combination or (ii) if such Party does not have outstanding shares or securities, more than 50% of the equity interest in such company, partnership or business combination, but only for so long as such ownership or control exists in (i) or (ii) above.  The term "Subsidiary" of a company, partnership or business combination means any corporation or other legal entity (i) the majority (more than 50%) of whose shares or other securities entitled to vote for election of directors (or other managing authority) is now or hereafter owned or controlled by such company, partnership or business combination either directly or indirectly or (ii) which does not have outstanding shares or securities but the majority (more than 50%) of the equity interest in which is now or hereafter owned or controlled by such company, partnership or business combination either directly or indirectly, but only for so long as such ownership or control exists in (i) or (ii) above.

"BREW" means QUALCOMM's software platform for mobile devices called Binary Run-time Environment for Wireless and any subsequent versions thereof that QUALCOMM makes available to LICENSEE.

"CDMA" means code division multiple access technology.

"CDMA ASICs" means QUALCOMM's mobile station modem (MSM) CDMA application specific integrated circuit, and any revision, generation, modification

QUALCOMM-HUAWEI CONFIDENTIAL                    2                    QUALCOMM PROPRIETARY

No. 00004875
CONFIDENTIAL

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL – 15 U.S.C. § 57b-2
FTC File No. 141-0199

000097



or integration to or of the MSM purchased by LICENSEE from QUALCOMM, or any application specific integrated circuits with similar functionality.

"CDMA Standard" includes only (i) the Telecommunications Industry Association's ("TIA's") IS-95 series of air interface standards; (ii) other CDMA standards which specify the same Physical Layer as IS-95; and (iii) the CDMA 2000 third generation air interface standard including 1x RTT, 1x RTT EV and 3x RTT.

"China License" means the license granted by QUALCOMM to LICENSEE to make, use, sell, and offer to sell in China Subscriber Units for use only in China.

"Chinese Manufacturer" means a company or other legal entity (i) organized and existing under the laws of China, (ii) that has received all necessary approvals, if any, from the Chinese government to manufacture and sell Subscriber Units or subassemblies of Subscriber Units but excluding (a) any corporation, joint venture, partnership or other business entity in which more than 49% of the equity is owned or controlled directly or indirectly by entities and/or persons that are not citizens or legal persons of China, (b) any corporation, joint venture, partnership or other business entity in which any minority partner or minority equity owner or any Affiliate of such partner or equity owner at any time during the term of this Contract holds a license under any portion of QUALCOMM's Intellectual Property (except for a license granted by QUALCOMM pursuant to the Framework Agreement by and between QUALCOMM and Unicom) and (c) any corporation, joint venture, partnership or other business entity in which any non-Chinese partner or non-Chinese equity owner or any non-Chinese Affiliate of any partner or equity owner has annual revenues of more than five hundred million United States dollars ($500,000,000 U.S.) from the manufacture and/or sale of wireless subscriber terminals, wireless telecommunications network equipment or integrated circuits, subassemblies or modules for incorporation in such terminals or equipment at any time during the term of this Contract, unless such non-Chinese partner or non-Chinese equity owner or non-Chinese Affiliate clearly gives up and receives none of the benefits resulting from this Contract or unless such license holder described in clause (b) above or such non-Chinese partner or non-Chinese equity owner or non-Chinese Affiliate described in clause (c) above has acquired not more than 20% of the voting stock of such company or entity through purchases made on a public stock exchange and does not exercise management control of such company or entity.

"Commercial Software Fee" means ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮

"Commercially Necessary IPR" means those Intellectual Property Rights which (i) the licensing Party or its Affiliates has the right to license to the other Party without payment of royalties or any other consideration to any third party, (ii)

QUALCOMM-HUAWEI CONFIDENTIAL          3          QUALCOMM PROPRIETARY

No. 00004876
CONFIDENTIAL

FTC-HUAWEI-0000706
CX1018-003

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL – 15 U.S.C. § 57b-2
FTC File No. 141-0199

000097



are not essential to the manufacture, use or sale of Subscriber Units and/or Components which comply with the specifications of the CDMA Standard and (iii) provide Subscriber Units and/or Components with a competitive advantage (e.g., cost, lead-time or quality advantages) or which add to Subscriber Units or Components a feature or other characteristic which may be reasonably required by the market place; but the term Commercially Necessary IPR does not include any trade name, trademark, service mark, or similar symbols, abbreviation, contractions or simulations identifying the licensing Party and its Affiliates (except as set forth in Section 8, if the licensing Party is QUALCOMM).

"Components" means application specific integrated circuits (ASICs), electronic devices, integrated circuits, multi-chip modules, including firmware thereon, and/or families of devices for use in products for wireless telecommunication applications and accompanying software.

"Effective Date" means the date this Contract is signed by the Parties as set forth in the first paragraph hereof.

"Included Commercially Necessary IPR" means (1) with respect to the Intellectual Property Rights being licensed by QUALCOMM, (a) all claims of any patents (foreign and domestic) which are now issued or which are applied for on or before April 19, 2004 and which constitute Commercially Necessary IPR and (b) all copyrights, trade secrets, know-how, technical assistance and other intellectual property rights which constitute Commercially Necessary IPR and which may be furnished by QUALCOMM to LICENSEE pursuant to this Contract and (2) with respect to the Intellectual Property Rights being licensed by LICENSEE, all claims of any patents (foreign and domestic) which are now issued or which are applied for on or before April 19, 2004 and which constitute Commercially Necessary IPR.

"Intellectual Property Rights" means patents, copyrights, trade secrets, know-how and other intellectual property rights.

"LICENSEE" means Huawei Technologies Co. Ltd.., a Chinese company.

"LICENSEE's Intellectual Property" means LICENSEE's Technically Necessary IPR and LICENSEE's Included Commercially Necessary IPR.

"Net Selling Price", with respect to each Subscriber Unit Sold by LICENSEE, means one of the following, whichever is applicable:

(a) When Sold by LICENSEE in an arm's length transaction to a Purchaser (a "Purchaser" being a person or entity that does not control LICENSEE, is not controlled by LICENSEE or is not under common control with LICENSEE; and the term "control" for the above purposes shall mean the direct or indirect ownership or control of more than a twenty-five percent (25%) interest), the Net

QUALCOMM-HUAWEI CONFIDENTIAL                4                QUALCOMM PROPRIETARY

No. 00004877
CONFIDENTIAL

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL – 15 U.S.C. § 57b-2
FTC File No. 141-0199

000097



Selling Price shall be the Selling Price charged by LICENSEE for Subscriber Units Sold to such Purchaser;

(b) When Sold by LICENSEE to a person or entity that is not a Purchaser (a "Related Buyer") or in a transaction that is not an arm's length transaction, the Net Selling Price shall be the Selling Price charged by the final vendee Related Buyer upon resale by the final vendee Related Buyer of Subscriber Units in an arm's length transaction to a Purchaser (if such arm's length transaction occurs) but in no event less than the Selling Price that would be realized in a sale to a Purchaser transacting at arm's length; or

(c) When retained by LICENSEE for its own use or lease, or when Sold by LICENSEE to a Related Buyer for the Related Buyer's own use or lease, the Net Selling Price shall be the Selling Price that would be realized in a sale to a Purchaser transacting at arms length.

"Party" individually means QUALCOMM or LICENSEE and the term "Parties" collectively means QUALCOMM and LICENSEE.

"Physical Layer" shall have the same meaning as given in the TIA's IS-95 digital cellular standard.

"QUALCOMM's Intellectual Property" means QUALCOMM's Technically Necessary IPR and QUALCOMM's Included Commercially Necessary IPR and, only when used with respect to Subscriber Units incorporating a CDMA ASIC purchased from QUALCOMM, certain third party patents of Telefonaktiebolaget L M Ericsson and Ericsson, Inc., Philips Electronics N.V. and InterDigital Technology Corporation to the extent and so long as QUALCOMM has the right to sublicense such third party patents to purchasers of CDMA ASICs from QUALCOMM when such CDMA ASICs are incorporated into Subscriber Units.

"Selling Price" means the gross selling price and/or value of other consideration charged by the LICENSEE or its final vendee Related Buyer for each Subscriber Unit in the form in which it is Sold (whether or not assembled and without excluding therefrom any Components (except as explicitly set forth below) or subassemblies thereof which are included with such Subscriber Unit) deducting therefrom only the following items incurred upon the Sale and delivery of such Subscriber Unit to the extent actually included and paid in the Sale price of each such Subscriber Unit and properly documented by the LICENSEE (as shown, for example, in a sales contract or invoice reflecting arm's length pricing): (i) packing costs (including solely the cost of packaging materials, direct labor engaged in packing activities and package design), (ii) costs of insurance and transportation, (iii) government fees, import, export, excise, sales and value added taxes and custom duties levied or imposed directly upon the Sale of such Subscriber Unit and other taxes or charges based on Sales price when included in the gross

QUALCOMM-HUAWEI CONFIDENTIAL        5        QUALCOMM PROPRIETARY

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL – 15 U.S.C. § 57b-2
FTC File No. 141-0199

000097



selling price for each such Subscriber Unit, and (iv) customary trade discounts and returns actually credited and refunded. In addition, solely for Subscriber Units made by LICENSEE in China and Sold by LICENSEE in China solely for use in China, LICENSEE may deduct, upon the Sale and delivery of such Subscriber Units, the FOB price of CDMA ASICs purchased from QUALCOMM and incorporated into such Subscriber Units to the extent actually included and paid in the Sale price of each such Subscriber Unit and properly documented by LICENSEE (as shown, for example, in a sales contract or invoice reflecting arm's length pricing). If Subscriber Units are Sold in combination with other separate and distinct products or services (for example, a second battery or a charger, a headset, a separate optional attachment such as an MP3 player or PDA connectable by the end-user to the Subscriber Unit via a cable; hereafter the "Other Products"), and provided that the Other Products do not alone or in combination with the Subscriber Unit implement QUALCOMM's Intellectual Property, the Selling Price for such Subscriber Units (the "Combined Subscriber Units") shall be the average Selling Price which LICENSEE charged to Purchasers for Subscriber Units (of the same or substantially the same quality and quantity) that were Sold without being combined with other products or services in the same quarter or in the most recent previous calendar quarter in which Sales were made. If no such Subscriber Units have been Sold to a Purchaser in the same or any previous calendar quarter to permit the fair determination of an arm's length price of the Combined Subscriber Unit, then the Selling Price for such Combined Subscriber Unit shall be the Selling Price charged by LICENSEE for such Combined Subscriber Units less only those actual costs of the Other Products that LICENSEE can clearly and convincingly prove were not part of the consideration allocated to the Sale of the Subscriber Unit being combined with other products or services, but in no case less than the fair market value of the Subscriber Unit. For the purpose of this definition, "Sold in combination with" shall mean that two or more separate and distinct products are sold together for a single price provided that such separate and distinct products are not physically integrated into a single product. When Subscriber Units are Sold under a comprehensive supply agreement and are delivered in periodic installments which are not separately invoiced, then the total Selling Price of all Subscriber Units Sold under such comprehensive supply agreement shall be fairly apportioned to each such installment based on the relative amounts and values of the Subscriber Units comprising such installments.

"Software" means the object code and source code for DMSS, as more fully described in Exhibit A.

"Sold," "Sale," "Sell" means put into use, sold, leased or otherwise transferred and a sale shall be deemed to have occurred upon putting into use, shipment or invoicing, whichever shall first occur.

QUALCOMM-HUAWEI CONFIDENTIAL                6                QUALCOMM PROPRIETARY

FTC-HUAWEI-0000709
CX1018-006

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL – 15 U.S.C. § 57b-2
FTC File No. 141-0199

000097

"Subscriber Unit" means a complete CDMA and/or multi-mode CDMA telephone, including but not limited to mobile, transportable and portable telephones, which incorporates all or any part of QUALCOMM's Intellectual Property and can be used, without any additional equipment or components being attached thereto, to initiate and/or receive Wireless telecommunications transmissions in accordance with a CDMA Standard.

"Technically Necessary IPR" means all claims of any patents (foreign and domestic) issued on, before or after the Effective Date which (i) the licensing Party or its Affiliates has the right to license to the other Party without payment of royalties or any other consideration to any third party, and (ii) is essential to the manufacture, use or sale of a usable Subscriber Unit and/or Components which complies with the specifications of the CDMA Standard (i.e., must be infringed upon in order to comply with the CDMA Standard).

"Wireless" and "Wireless Applications" means terrestrial-based, land mobile, wireless telecommunications applications, including but not limited to cellular, personal communications services (PCS), wireless local loop and wireless PABX applications which are compliant with or substantially based upon a CDMA Standard. Notwithstanding the foregoing, the terms "Wireless" and/or "Wireless Applications" shall not include satellite applications (defined as any application which utilizes a direct connection between the Subscriber Unit and any satellite).

2.    TERM OF CONTRACT.

      This Contract shall commence upon the Effective Date and, unless otherwise terminated or canceled as provided herein, shall continue in full force and effect for ten (10) years after the Effective Date. By notice given to QUALCOMM on or before the tenth anniversary of the Effective Date, LICENSEE may renew this Contract for an additional ten (10) year term on the same terms and conditions or on any modified terms and conditions to which the Parties mutually agree. Upon LICENSEE's written request made within six (6) months before the tenth anniversary of the Effective Date, the Parties shall promptly meet and discuss in good faith whether any terms or conditions of this Contract should be modified in connection with the renewal hereof.

      LICENSEE shall obtain all Chinese government approvals required to enter into and perform this Contract in writing and in a form satisfactory to QUALCOMM, including but not limited to approvals from the Ministry of Commerce (MOC) and the State Administration of Foreign Exchange (SAFE). LICENSEE shall promptly notify QUALCOMM when it has received all such approvals and shall provide copies to QUALCOMM. If all such approvals are not obtained within nine (9) months after the Effective Date, either Party may terminate this Contract upon notice to the other Party. In addition, LICENSEE

QUALCOMM-HUAWEI CONFIDENTIAL.          7          QUALCOMM PROPRIETARY

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL – 15 U.S.C. § 57b-2
FTC File No. 141-0199

000097



shall maintain in good standing all such approvals once obtained and shall promptly obtain any renewals and any new or additional approvals that may be required in the future in order for LICENSEE to fully perform its obligations under this Contract. Attached hereto as Exhibit B is a true and correct copy of LICENSEE's import and export license. If, as a result of the refusal of any of the Chinese government authorities referenced above to approve any provision hereunder the necessary approvals for this Contract cannot be obtained, the Parties shall negotiate in good faith to amend the provision in question so as to procure such approvals. .

3. ▓▓▓▓▓▓▓▓▓▓▓▓ FOR LICENSE IN CHINA.

QUALCOMM agrees that LICENSEE ▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓; provided, however, that QUALCOMM shall be permitted to charge service fees for providing to LICENSEE any services, technology or other items requested by LICENSEE other than those included in QUALCOMM's Intellectual Property.

4. DOCUMENTATION AND OTHER DELIVERABLES; TECHNICAL ASSISTANCE.

4.1 Representations and Limitations on Furnished Information QUALCOMM shall use reasonable commercial efforts to verify the accuracy of any documentation, Software or information that may be furnished by QUALCOMM hereunder. QUALCOMM shall defend and indemnify LICENSEE against any claim that the documentation, Software or information provided by QUALCOMM hereunder infringes the trade secrets or copyrights of any third party provided that LICENSEE gives QUALCOMM prompt notice of any such claim and complete control of the defense thereof. Except as expressly set forth above, QUALCOMM shall not be liable for damages arising out of or resulting from anything made available hereunder or the use thereof nor be liable to LICENSEE for consequential, special or incidental damages under any circumstances. QUALCOMM shall have no responsibility for the ability of LICENSEE to use such information, documentation or software, the quality or performance of the products produced therefrom by LICENSEE, or the claims of third parties arising from the use of such products or information.

4.2 Technical Meetings and Assistance. For a period of two (2) years following the Effective Date of this Contract, upon written request from LICENSEE with reasonable advance written notice, QUALCOMM shall provide LICENSEE with up to one hundred (100) hours of technical assistance and one hundred (100) hours of training in QUALCOMM's standard CDMA training courses to be held at a maximum of three locations at no charge to LICENSEE. Upon LICENSEE's request and at QUALCOMM's discretion, QUALCOMM may provide LICENSEE with additional hours of technical assistance and/or training

QUALCOMM-HUAWEI CONFIDENTIAL                    8                    QUALCOMM PROPRIETARY

No. 00004881
**CONFIDENTIAL**

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL – 15 U.S.C. § 57b-2
FTC File No. 141-0199

000097



at QUALCOMM's then standard rates, including but not limited to reimbursement for travel and related expenses, provided that LICENSEE agrees to the rates to be charged. In such event, QUALCOMM shall be permitted to invoice LICENSEE for such charges on a bi-weekly basis. Payment by LICENSEE with respect to such invoices shall be made within thirty (30) business days after LICENSEE's receipt of the invoice. This Contract shall not require QUALCOMM to provide any technical assistance relating to the design of Components or any technical assistance not related to Subscriber Units.

5.     QUALCOMM LICENSE.

5.1     Grant of License From QUALCOMM. Subject to the terms and conditions of this Contract, including but not limited to timely payment of the royalties set forth herein, QUALCOMM hereby grants to LICENSEE a worldwide, nontransferable and non-exclusive license (without the right to sublicense except as otherwise provided in Section 5.1.1.) to use QUALCOMM's Intellectual Property solely for Wireless Applications (a) to make (and have Subscriber Units or subassemblies for Subscriber Units made by one or more Chinese Manufacturers) and import, use, sell, lease or otherwise dispose of Subscriber Units, (b) to make (and have made) Components that have been exclusively designed by LICENSEE (which design is owned and used exclusively by LICENSEE) and (c) to import, use, sell, lease or otherwise dispose of such Components; provided, however, that such Components may only be used, sold, leased or otherwise disposed of by LICENSEE if they are included and used, sold, leased or otherwise disposed of by LICENSEE as part of and within complete Subscriber Units of LICENSEE (or as replacement parts for Subscriber Units previously sold by LICENSEE). No other, further or different license is hereby granted or implied. A representative list of QUALCOMM's issued Chinese patents and published Chinese patent applications that are licensed under this Contract is attached hereto as Exhibit C.

5.1.1     Right To Sublicense Affiliates. Upon notice to QUALCOMM and QUALCOMM's written approval, which approval shall not be unreasonably withheld, LICENSEE shall have the right to grant sublicenses only to Affiliates of LICENSEE that are Chinese Manufacturers with respect to any rights conferred upon LICENSEE under this Contract; provided, however, that any such sublicense shall be subject in all respects to the restrictions, exceptions, royalty and other payment obligations, reports, termination provisions, and other provisions contained in this Contract. LICENSEE shall also pay or cause its sublicensed Affiliates to pay the same royalties on all Subscriber Units Sold by its sublicensed Affiliates as if LICENSEE had Sold such Subscriber Units. LICENSEE shall report to QUALCOMM the Net Selling Price for all Subscriber Units Sold by each such Affiliate. LICENSEE shall be responsible and liable to QUALCOMM in the event that any of its sublicensed Affiliates fails under any such sublicense to honor and comply with all obligations of LICENSEE as

No. 00004882
**CONFIDENTIAL**

though said obligations were made expressly applicable to the sublicensed Affiliate. Except as set forth above, LICENSEE shall have no right to sublicense any of QUALCOMM's Intellectual Property. Any sublicense by LICENSEE to an Affiliate of LICENSEE shall terminate immediately if such Affiliate ceases to be an Affiliate of LICENSEE or ceases to be a Chinese Manufacturer. A sublicensed Affiliate shall not be required to pay a separate fee under Section 5.2.1 but its Sales of Subscriber Units outside China and/or for use outside China shall be considered Sales of LICENSEE under that Section.

5.2 Royalties. [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted]





HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL – 15 U.S.C. § 57b-2
FTC File No. 141-0199

000097

Royalties shall be payable on Subscriber Units Sold by LICENSEE regardless of whether the use or incorporation of QUALCOMM's Intellectual Property arises from the use of one or more Components from whomsoever purchased by LICENSEE.

5.2.1

5.2.2   Expiration of Intellectual Property.  In the event that all of QUALCOMM's patents applicable to a Subscriber Unit expire, are invalid or are no longer used by LICENSEE, LICENSEE shall no longer be required to pay royalties for the Sale of such Subscriber Unit.

5.3   Most Favored Royalty Rate.  Subject to the limited exceptions set forth below, if QUALCOMM grants a license to a third party to manufacture and sell Subscriber Units at a royalty rate less than the royalty payable by LICENSEE to QUALCOMM, and, which license will permit such third party to manufacture and sell Subscriber Units for use within Wireless Applications, QUALCOMM shall (i) within thirty (30) days after such grant notify LICENSEE of the terms and conditions in such third party license, and (ii) extend to LICENSEE the lower royalty rates granted in the noticed license and, at QUALCOMM's election, any

QUALCOMM-HUAWEI CONFIDENTIAL          11          QUALCOMM PROPRIETARY

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL – 15 U.S.C. § 57b-2
FTC File No. 141-0199

000097



or all other terms and conditions granted (whether more or less favorable than the other terms and conditions granted under this Contract) in the third party license effective as of the date on which they became effective in the third party license. If LICENSEE intends to accept such lower royalty rates, LICENSEE shall have up to thirty (30) days after the date of such notice to notify QUALCOMM that it accepts a license from QUALCOMM on such lesser royalty rate as was made available to any such other licensee, provided that LICENSEE must also, at QUALCOMM's request, accept and be bound by all other material terms and conditions agreed to by QUALCOMM with such other licensee which are notified together with such lesser royalty rate.

The above paragraph shall not apply with respect to (i) any license or legal commitments made by QUALCOMM prior to the Effective Date, (ii) any license granted by QUALCOMM to its Affiliates or (iii) any license granted by QUALCOMM, the consideration for which consists in whole or in part of patent rights or other rights of such substantial value as, in the reasonable judgment of QUALCOMM, to warrant (a) a reduction in royalty rates below the rates provided in this Contract, or (b) the acceptance of such rights in lieu of royalties. This Section 5.3 shall not apply retroactively, nor shall it be construed as entitling LICENSEE to the return of, or credit for, any money paid by it prior to the grant of such third party license to such other licensee.

5.4     LICENSEE's Purchase Commitment. As material consideration for the royalty rates and other rights granted to LICENSEE under this Contract, LICENSEE and its sublicensed Affiliates shall purchase from QUALCOMM or, at QUALCOMM's option, a QUALCOMM Affiliate (or a supplier designated by QUALCOMM if QUALCOMM exits the CDMA ASIC business) LICENSEE's and its sublicensed Affiliates requirements of CDMA ASICs. Such purchases shall be on QUALCOMM's or QUALCOMM's Affiliate (or such designated supplier's) standard terms and conditions for such CDMA ASICs. If LICENSEE and its sublicensed Affiliates do not purchase from QUALCOMM or a QUALCOMM Affiliate (or a supplier designated by QUALCOMM) all of LICENSEE's and its sublicensed Affiliates' requirements of CDMA ASICs, then, notwithstanding the provisions set forth in Section 5.2 (a), commencing on the date that LICENSEE or a sublicensed Affiliate of LICENSEE first Sells Subscriber Units incorporating CDMA ASICs not purchased from QUALCOMM or a QUALCOMM Affiliate (or such designated supplier), the royalties for all Subscriber Units sold by LICENSEE and its sublicensed Affiliates shall be at the rates set forth in Section 5.2 (b).

5.5     QUALCOMM's Supply Commitment.



Within twenty (20) business days after receipt of a request from LICENSEE to purchase

No. 00004885
CONFIDENTIAL

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL – 15 U.S.C. § 57b-2
FTC File No. 141-0199

000097



CDMA ASICs, QUALCOMM shall respond by providing the price, delivery timetable and other substantive information concerning such supply and shall ensure that it obtains all requisite export approvals or licenses.

5.6    Taxes. Except for any income taxes payable by QUALCOMM under the tax laws of the United States, any taxes which must be withheld pursuant to any treaty between the United States and any country, and any taxes which must be withheld for QUALCOMM's account under the applicable laws of China and may not by law be paid by LICENSEE, no taxes, imposts or duties shall be deducted from the amounts payable by LICENSEE to QUALCOMM under any clause of this Contract, said amounts to be net to QUALCOMM, free of any and all other deductions. Notwithstanding the foregoing, in the event sums payable under this Contract become subject to income or profits taxes under the tax laws of any country and applicable treaties between the United States and such country, LICENSEE may, if and to the extent required by law, withhold from each payment the amount of said income or profits taxes due and required to be withheld of each payment. LICENSEE will furnish and make available to QUALCOMM relevant receipts regarding the payment of any country taxes paid over to any country's government on behalf of QUALCOMM. Such tax receipts will clearly indicate the amounts that have been withheld from the gross amounts due to QUALCOMM. Any and all other taxes, levies, charges or fees will be paid by LICENSEE for its own account. LICENSEE shall use its best efforts to apply for and/or assist QUALCOMM in applying for and obtaining from the Chinese government any exemptions from, or waivers or reductions of, any taxes on royalties, license fees, software fees or technical assistance fees payable by LICENSEE to QUALCOMM under this Contract (including but not limited to the business operations tax, presently 5%) to the full extent such exemptions, waivers or reductions are available under Chinese domestic law, the U.S.-China Treaty for the Avoidance of Double Taxation or any other treaty.

5.7    Conversion to U.S. Dollars. All payments, including but not limited to royalties, the Commercial Software Fee, and the fees described in Section 5.2.1 hereof shall be paid in U.S. dollars by wire-transfer and at a bank to be designated by the payee. To the extent that the Net Selling Price for Subscriber Units Sold by LICENSEE outside of the United States is paid to LICENSEE other than in U.S. dollars, LICENSEE shall convert the portion of the royalty payable to QUALCOMM from such Net Selling Price into U.S. dollars at the official rate of exchange of the currency of the country from which the Net Selling Price was paid, as quoted by the People's Bank of China when such country is China, and in all other cases as quoted by the U.S. Wall Street Journal, for the last business day of the calendar quarter in which such Subscriber Units were Sold. If in a country other than China the transfer of or the conversion into U.S. dollars is not lawful, the payment of such part of the royalties attributable to

No. 00004886
CONFIDENTIAL

FTC-HUAWEI-0000716
CX1018-013

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL – 15 U.S.C. § 57b-2
FTC File No. 141-0199

000097

the Sales in such country shall be made by the deposit thereof, in the currency of the country where the sale was made on which the royalty was based to the credit and account of QUALCOMM or its nominee in any commercial bank or trust company designated by QUALCOMM in writing and located in that country, prompt notice of which shall be given by LICENSEE to QUALCOMM.

5.8     Delivery of Software.  LICENSEE, at its option, may elect to have QUALCOMM deliver the Software to LICENSEE for use solely in accordance with Section 5.9 below.  To exercise such option, LICENSEE must, no later than twelve (12) months after the Effective Date, (i) deliver written notice to QUALCOMM of its election to exercise such option and (ii) pay to QUALCOMM, by wire transfer to QUALCOMM's account, the Commercial Software Fee.  The above option shall expire if not exercised pursuant to the above procedure on or before the twelve (12) month anniversary of the Effective Date.  Within ten (10) days after LICENSEE exercises such option as set forth above, QUALCOMM shall deliver a copy of the Software to LICENSEE.

5.9     Right to Use Software.  Upon exercise of the option as set forth in Section 5.8 above, LICENSEE may use the Software solely to develop, manufacture, Sell and use Subscriber Units in accordance with and subject to the terms and conditions of this Contract, including but not limited to the payment of royalties specified in Section 5.2.  As reasonably necessary to develop, manufacture, Sell and use Subscriber Units in accordance with and subject to the terms and conditions of this Contract, LICENSEE shall have the right to (i) alter, modify, translate or adapt the Software (and any derivative works it creates therefrom) or create derivative works based thereon; (ii) use or copy the Software (and any derivative works it creates therefrom) for archival purposes, (iii) make and distribute copies of the Software (and any derivative works it creates therefrom), solely in machine readable form, and only in conjunction and for use solely with Subscriber Units Sold by LICENSEE; and (iv) sublicense the use of the Software (and any derivative works it creates therefrom) solely in machine-readable form and solely for use in connection with such Subscriber Units.  LICENSEE shall have no right to sublicense, transfer or otherwise disclose the Software in source code form to any third party.  Except as expressly permitted above, LICENSEE shall not use or distribute the Software for any other purpose.  QUALCOMM retains all ownership rights in and to the Software and derivative works but LICENSEE shall retain ownership of all original code which it adds or inserts (the "New Code") in the Software to produce such derivative works regardless of whether such New Code can be used separately from the Software and/or derivative works.  LICENSEE shall have unlimited usage rights to the New Code when such New Code is used separately from the Software and/or derivative works.  Notwithstanding the above, nothing herein shall give QUALCOMM any right to or interest in the New Code, and LICENSEE shall have no obligation to disclose or provide any derivative works

QUALCOMM-HUAWEI CONFIDENTIAL                    14                    QUALCOMM PROPRIETARY

CONFIDENTIAL

FTC-HUAWEI-0000717
CX1018-014

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL – 15 U.S.C. § 57b-2
FTC File No. 141-0199

000097

to QUALCOMM. Nothing in this Section shall be deemed to grant any right to
LICENSEE under any of QUALCOMM's patents (such rights, if any, being
granted only under the terms of Section 5.1 above).

In addition, LICENSEE shall have the right to obtain any of the software
versions listed on Exhibit D hereto and rights to use such software similar to
those set forth above upon payment of a fee that shall not be more than the fee
listed on Exhibit D corresponding to such version, which fee is no greater than
the fee that QUALCOMM generally charges its Subscriber Unit licensees for such
software.

5.9.1 Representation Regarding Use. LICENSEE hereby
represents and warrants to QUALCOMM that the Software will be used by
LICENSEE solely to develop, manufacture, use and Sell Subscriber Units subject
to and in accordance with the terms and conditions of this Contract.

5.10 BREW Strategic Alliance. LICENSEE and QUALCOMM will
cooperate to advance the deployment of BREW enabled end-user terminals as
follows:

5.10.1 As long as QUALCOMM makes the BREW software
available to LICENSEE at no charge and warrants the technical stability of the
BREW software and one or more wireless service providers in China publicly
expresses support for the BREW platform or requests to purchase BREW enabled
Subscriber Units, LICENSEE shall install the BREW platform (1) in the majority
of the Subscriber Units produced by LICENSEE and (2) in all of the Subscriber
Units for use in the network(s) of the service provider(s) expressing such support
or making such request unless such service provider(s) expressly requests that
BREW not be installed in the Subscriber Units intended for use in its networks.
For purposes of this Section 5.10.1, the phrase "install the BREW platform" shall
mean to incorporate QUALCOMM's BREW API, including but not limited to
QUALCOMM's down-loader, configured and delivered by LICENSEE in such a
way that, if and when a carrier uses QUALCOMM's BREW distribution system,
BREW applications can be (i) downloaded to LICENSEE's Subscriber Units using
such BREW distribution system, (ii) launched by the consumer, and (iii)
displayed to the consumer. LICENSEE shall use its best efforts to market,
promote and sell such BREW enabled Subscriber Units. QUALCOMM shall
provide LICENSEE with reasonable technical assistance and training at no
charge in connection with the installation of BREW in Subscriber Units. The
hours of such assistance and training shall not be counted against the technical
assistance and training hours described in Section 4.2.

5.10.2 Upon request from QUALCOMM, LICENSEE will assist
QUALCOMM in promoting the BREW platform to wireless service providers in



No. 00004888
CONFIDENTIAL                                          FTC-HUAWEI-0000718
                                                     CX1018-015

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL – 15 U.S.C. § 57b-2
FTC File No. 141-0199

000097

LICENSEE's markets and will issue and allow QUALCOMM to issue a press release with LICENSEE's consent (such consent not to be unreasonably withheld) stating LICENSEE's support for the BREW platform .

5.10.3 QUALCOMM and LICENSEE will cooperate to encourage application developers to develop applications for operation under the BREW environment. In addition, to the extent that LICENSEE develops, or funds the development of, applications intended to operate on wireless handsets or devices, LICENSEE will use best efforts to cause such applications to operate over BREW.

6.   LICENSE BY LICENSEE.

In consideration of ████████████████████████████
████████████████████████████████████████ LICENSEE hereby grants to QUALCOMM a worldwide, nontransferable, non-exclusive, fully-paid, irrevocable and royalty free license (without the right to sublicense, except as set forth below) to use LICENSEE's Intellectual Property to (a) make (and have made) and import, use, sell, lease or otherwise dispose of Subscriber Units and (b) to make (and have made), import, use, sell, lease or otherwise dispose of Components. No other, further or different license is hereby granted or implied. QUALCOMM may grant sublicenses under LICENSEE's Intellectual Property solely to Affiliates of QUALCOMM. Without the prior written consent of LICENSEE, QUALCOMM shall not sublicense to any other third party LICENSEE's Intellectual Property. Notwithstanding anything to the contrary in this Contract, QUALCOMM may sublicense the licenses from LICENSEE under this Section 6 as to Components to any successor (by purchase, divestiture, merger or otherwise) to all or substantially all of QUALCOMM's Components business. QUALCOMM shall give prompt written notice to LICENSEE of any such sublicense.

The Parties hereby acknowledge that, except as otherwise expressly set forth in this Contract, LICENSEE shall have sole ownership to the intellectual property obtained by LICENSEE through independent research and development, regardless of whether it is incorporated in the Subscriber Units, or whether it is derived based on the intellectual property granted hereunder. Except as otherwise provided under this Contract. without the prior written authorization of LICENSEE, QUALCOMM shall have no right to use such intellectual property.

7.   Intentionally omitted.

QUALCOMM-HUAWEI CONFIDENTIAL                16                QUALCOMM PROPRIETARY

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL – 15 U.S.C. § 57b-2
FTC File No. 141-0199

000097

## 8. MARKING; LOGO

8.1    Patent Markings.  LICENSEE agrees to affix to the exterior or the interior of all Subscriber Units incorporating any of QUALCOMM's Intellectual Property and Sold in the United States a legible notice in English reading: "Licensed by QUALCOMM Incorporated under one or more of the following Patents," followed by a list of applicable patent numbers taken from the list of QUALCOMM's patents or as may otherwise be instructed by QUALCOMM.

8.2    Logo.  Attached hereto as Exhibit E is the CDMA designated logo (the "Logo").  The Parties agree that QUALCOMM is the owner of the Logo. QUALCOMM claims all common law trademarks in the Logo and has filed, or will file, applications to obtain trademark registration for the Logo.  If, for whatever reason, registrations are not granted or use of the Logo is deemed by QUALCOMM to be inadvisable, QUALCOMM shall have the right to either designate a new logo, subject to LICENSEE's approval, which approval shall not be unreasonably withheld, or terminate LICENSEE's right to use the Logo, or continue LICENSEE's right to use the Logo under QUALCOMM's common law rights.  Upon LICENSEE's request after the Effective Date, QUALCOMM shall file with the Chinese trademark office any documents required by Chinese law to establish LICENSEE's right to use the Logo in China.

8.3    Logo Display.  Unless otherwise notified by QUALCOMM as set forth in Section 8.2 above, LICENSEE shall prominently display the Logo on the exterior of each Subscriber Unit Sold by it.  The exact exterior location and size shall be subject to LICENSEE's reasonable discretion, provided that the Logo shall be readable and shall be permanently affixed.  The Logo shall be designed to remain visibly displayed on the exterior of the Subscriber Unit.

8.4    Trademark Limitation.  LICENSEE does not hereby acquire, and shall not attempt to acquire, by registration, use or otherwise, the Logo, or any confusingly similar mark, or any other trademark, service mark or trade name of or used by QUALCOMM, or any confusingly similar mark.

8.5    General Quality of Subscriber Units.  Throughout the term of this Agreement, LICENSEE shall ensure that, on average, the Subscriber Units Sold by it meet the generally accepted standards of quality and merchantability for Subscriber Units in the markets in which they are Sold and will not be of such substandard quality as to diminish the good will associated with the Logo.

8.6    Standards Compliance Testing.    LICENSEE represents and warrants that the Subscriber Units and Components that it makes or has made will adhere with and conform to, in all respects, the specifications contained in the applicable CDMA Standard and that LICENSEE shall comply with the rules, regulations or other requirements set by such authorized standards body.  Solely

QUALCOMM-HUAWEI CONFIDENTIAL              17              QUALCOMM PROPRIETARY

CONFIDENTIAL

FTC-HUAWEI-0000720
CX1018-017

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL – 15 U.S.C. § 57b-2
FTC File No. 141-0199

000097

for Subscriber Unit models that are not subject to type-approval testing by government agencies or have not received network entrance permits or comparable approvals from the wireless service providers to whom they are Sold, LICENSEE shall, at QUALCOMM's reasonable written request, permit QUALCOMM or entities designated by QUALCOMM and accepted by LICENSEE, which acceptance shall not be unreasonably withheld or delayed, to perform tests of LICENSEE's Subscriber Units to ensure compliance and conformity with the CDMA Standard. If such tests indicate material noncompliance or nonconformity therewith, such tests shall be at LICENSEE's cost and LICENSEE shall reimburse QUALCOMM for any such reasonable tests performed by QUALCOMM at QUALCOMM's then standard rates for such services; provided that the total fees for each such test performed shall not exceed $10,000. Nonconforming Subscriber Units, if any, shall not be sold or marketed by LICENSEE until the non-conformity is corrected.

9.    REPRESENTATIONS.

9.1    LICENSEE's Representations.  LICENSEE hereby represents and warrants that (a) it has received all necessary corporate approvals and that the signatory below is duly authorized to execute this Contract on behalf of LICENSEE; (b) as of the Effective Date, LICENSEE is a Chinese Manufacturer, and (c) LICENSEE and/or its Affiliates owns and has the right to license the Intellectual Property Rights licensed to QUALCOMM hereunder.

9.2    QUALCOMM's Representations.  QUALCOMM hereby represents and warrants that (a) it has received all necessary corporate approvals and that the signatory below is duly authorized to execute this Contract on behalf of QUALCOMM; (b) this Contract is in compliance with the Export Administration Regulations of the United States; and (c) QUALCOMM and/or its Affiliates owns and has the right to license the Intellectual Property Rights licensed to LICENSEE hereunder.

10.    INFORMATION

10.1    Restrictions on Disclosure and Use.  All documentation and technical and business information and intellectual property in whatever form recorded that a Party does not wish to disclose without restriction ("Information") shall remain the property of the furnishing Party and may be used by the receiving Party only as follows.  Such Information (a) shall not be reproduced or copied, in whole or part, except for use as expressly authorized in this Contract; and (b) shall, together with any full or partial copies thereof, be returned or destroyed when no longer needed or upon any termination of this Contract, and (c) shall be disclosed only to employees or agents of a Party with a need to know.  Moreover, such Information shall be used by the receiving Party only for the purpose of performing under this Contract or in the exercise of its

QUALCOMM-HUAWEI CONFIDENTIAL          18          QUALCOMM PROPRIETARY

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL – 15 U.S.C. § 57b-2
FTC File No. 141-0199

000097

rights it may receive under the provisions of this Contract. Unless the furnishing Party consents in this Contract or otherwise in writing, such Information shall be held in strict confidence by the receiving Party. The receiving Party may disclose such Information to other persons, upon the furnishing Party's prior written authorization, but solely to perform acts which this clause expressly authorizes the receiving Party to perform itself and further provided such other person agrees in writing (a copy of which writing will be provided to the furnishing Party at its request) to the same conditions respecting use of Information contained in this clause and to any other reasonable conditions requested by the furnishing Party. These restrictions on the use or disclosure of Information shall not apply to any Information: (i) which can be proven to be or have been independently developed by the receiving Party or lawfully received free of restriction from another source having the right to so furnish such Information; or (ii) after it has become generally available to the public without breach of this Contract by the receiving Party; or (iii) which at the time of disclosure to the receiving Party was known to such Party free of restriction and clearly evidenced by documentation in such Party's possession; or (iv) which the disclosing Party agrees in writing is free of such restrictions.

10.2    Scope of Information.  Information is subject to this Section 10 whether delivered orally or in tangible form and without regard to whether it has been identified or marked as confidential or otherwise subject to this Section 10. Each Party agrees to use its best efforts to mark or otherwise identify as proprietary all Information they desire to be subject to the terms of this clause before furnishing it to the other Party. And, upon request, a Party shall promptly identify whether specified information must be held by the requesting Party subject to this clause. Information which is delivered orally shall be summarized in writing by the disclosing Party and delivered to the receiving Party within forty-five (45) days after disclosure thereof.

10.3    Furnishing Information to Third Parties.  Nothing herein shall be deemed to bar disclosure of Information by a receiving Party to third party subcontractors or prospective customers of the receiving Party with a need to know, without the written consent of the furnishing Party, if such disclosure is reasonably necessary for enjoyment of the receiving Party's rights to use Intellectual Property Rights licensed under this Contract, and provided that each such third party agrees in writing to protect the Information under terms and conditions comparable, in all material respects, to the terms contained in this Section 10 and Section 18 with respect to survivability.

11.    DISCLAIMER / LIMITATION OF LIABILITY.

11.1    EXCEPT AS EXPRESSLY SET FORTH IN THIS CONTRACT, QUALCOMM MAKES NO WARRANTIES IN THIS CONTRACT, EITHER EXPRESS OR IMPLIED, AS TO PRODUCTS, TECHNOLOGY, MATERIALS,

QUALCOMM HUAWEI CONFIDENTIAL          19          QUALCOMM PROPRIETARY

No. 00004892
CONFIDENTIAL

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL – 15 U.S.C. § 57b-2
FTC File No. 141-0199

000097

SERVICES, INFORMATION OR OTHER ITEMS IT FURNISHES TO LICENSEE, INCLUDING BUT NOT LIMITED TO WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, OR THAT SUCH ITEMS ARE FREE FROM THE RIGHTFUL CLAIM OF ANY THIRD PARTY, BY WAY OF INFRINGEMENT OR THE LIKE.

QUALCOMM SHALL NOT BE LIABLE TO LICENSEE FOR ANY INCIDENTAL, CONSEQUENTIAL OR ANY OTHER INDIRECT LOSS OR DAMAGE ARISING OUT OF THIS CONTRACT OR ANY RESULTING OBLIGATION OR THE USE OF ANY INTELLECTUAL PROPERTY RECEIVED HEREUNDER, WHETHER IN AN ACTION FOR OR ARISING OUT OF BREACH OF CONTRACT, TORT, OR ANY OTHER CAUSE OF ACTION. QUALCOMM SHALL BE PERMITTED TO ENJOIN THE UNAUTHORIZED USE BY LICENSEE OF ANY OF QUALCOMM'S INFORMATION.

11.2   Negation of Representation and Warranties.  Nothing contained in this Contract shall be construed as (a) requiring the filing of any patent application, the securing of any patent or the maintaining of any patent in force; (b) a warranty or representation by either Party as to the validity or scope of any patent, copyright or other intellectual property right; (c) a warranty or representation that any manufacture, sale, lease, use or importation will be free from infringement of patents, copyrights or other intellectual property rights of others, and it shall be the sole responsibility of LICENSEE to make such determination as is necessary with respect to the acquisition of licenses under patents and other intellectual property of third parties; (d) an agreement to bring or prosecute actions or suits against third parties for infringement; (e) an obligation to furnish any manufacturing assistance; or (f) conferring any right to use, in advertising, publicity or otherwise, any name, trade name or trademark, or any contraction, abbreviation or simulation thereof (other than as set forth in Section 8).

12.   INDEMNITY FOR DAMAGE TO PERSONS, PROPERTY OR BUSINESS

12.1   Indemnification by LICENSEE.  LICENSEE shall indemnify, defend and hold QUALCOMM harmless from, any and all claims, judgments, liabilities, costs and expenses (including attorneys' fees) arising out of or related, directly or indirectly, to any injury, loss or damage to persons, property or business arising from, relating to, or in any way connected with, any Subscriber Units or Components which LICENSEE manufactures or has manufactured and Sells to a third party.  LICENSEE agrees to indemnify and hold harmless QUALCOMM against all liability or responsibility of LICENSEE or of others for any failure attributable to LICENSEE in production, design, operation or otherwise of products manufactured by or on behalf of LICENSEE and Sold to third parties.

QUALCOMM-HUAWEI CONFIDENTIAL          20          QUALCOMM PROPRIETARY

No. 00004893
CONFIDENTIAL

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL – 15 U.S.C. § 57b-2
FTC File No. 141-0199

000097

12.2   Indemnification by QUALCOMM.  QUALCOMM shall indemnify, defend and hold LICENSEE harmless from, any and all claims, judgments, liabilities, costs and expenses (including attorneys' fees) arising out of or related, directly or indirectly, to any injury, loss or damage to persons, property or business arising from, relating to, or in any way connected with, any Subscriber Units or Components which QUALCOMM manufactures or has manufactured and Sells to a third party.  QUALCOMM agrees to indemnify and hold harmless LICENSEE against all liability or responsibility of QUALCOMM or of others for any failure attributable to QUALCOMM in production, design, operation or otherwise of products manufactured by or on behalf of QUALCOMM and Sold to third parties.

12.3   Notice, Defense and Cooperation.   The party seeking indemnification under Section 12.1 or 12.2 above shall provide the indemnifying party with prompt notice of any claim within such provisions, shall give the indemnifying party the full right to defend any such claim and shall cooperate fully in such defense.

13.   TERMINATION

13.1   Termination in the Event LICENSEE Ceases to be a Chinese Manufacturer.  This Contract shall terminate immediately and automatically without notice, an opportunity to cure, or any further action on the part of QUALCOMM, in the event that LICENSEE ceases to be a Chinese Manufacturer unless LICENSEE has ceased to be a Chinese Manufacturer because a license holder described in clause (b) of the definition of "Chinese Manufacturer" in Section 1 hereof or a non-Chinese partner or non-Chinese equity owner or non-Chinese Affiliate described in clause (c) of such definition acquires direct or indirect ownership or control of more than 20% of the voting stock of LICENSEE through purchases made on a public stock exchange (a "Partial Acquisition"). LICENSEE shall have sixty (60) days after a Partial Acquisition to (i) cause the ownership of such license holder or such non-Chinese partner or non-Chinese equity owner or non-Chinese Affiliate to be reduced to less than 20% for the remaining term of this Contract or (ii) exercise the Option described in Section 13.1.1 below.  If within such sixty (60) days, LICENSEE does not do either (i) or (ii) above, then this Contract shall automatically terminate.  LICENSEE shall give notice to QUALCOMM within five (5) business days of the date on which LICENSEE ceases to be a Chinese Manufacturer.

No. 00004894
CONFIDENTIAL

FTC-HUAWEI-0000724
CX1018-021

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL – 15 U.S.C. § 57b-2
FTC File No. 141-0199

000097

13.1.1 <u>Option</u>.  In the event of a Partial Acquisition, LICENSEE may exercise an option (the "Option") to retain its rights and obligations under this Contract; provided, however, that the royalties payable for all Subscriber Units Sold by LICENSEE after the date of such Partial Acquisition, regardless of where manufactured or Sold, shall be at the applicable rates specified in Section 5.2 (b) (ii) of this Contract, and the Selling Price for all such Subscriber Units shall be calculated as though such Subscriber Units were made outside China.  To exercise this Option, LICENSEE must give QUALCOMM notice of such exercise within sixty (60) days after such Partial Acquisition.

13.2   <u>Termination For Cause by QUALCOMM</u>.  QUALCOMM may terminate this Contract, by written notice to LICENSEE, if LICENSEE shall at any time default in the payment of royalties or any other amounts due hereunder or the making of any report hereunder, or shall commit any material breach of any covenant, representation, warranty or agreement herein contained, or shall make any false report to QUALCOMM; provided, however, that in the case of any such breach which is capable of being cured, QUALCOMM shall not have a right to terminate this Contract for cause unless and until LICENSEE shall have failed to remedy any such default, breach or report within forty-five (45) days after receipt by LICENSEE of written notice thereof by QUALCOMM.  LICENSEE shall be able to effectuate such cure with respect to a default in the payment of any royalty hereunder no more than three (3) times during the term of this Contract.  Upon termination of this Contract for cause, LICENSEE shall duly account to QUALCOMM for all royalties and other payments within ten (10) days of such termination.

13.3   <u>Termination For Cause by LICENSEE</u>.  LICENSEE may terminate this Contract, by written notice to QUALCOMM, if QUALCOMM shall at any time commit any material breach of any material covenant, representation, warranty or agreement herein contained; provided, however, that in the case of any such breach which is capable of being cured, LICENSEE shall not have a right to terminate this Contract for cause unless and until QUALCOMM shall have failed to remedy any such material breach within forty-five (45) days after receipt by QUALCOMM of written notice thereof by LICENSEE.

13.4   <u>Bankruptcy, Dissolution or Liquidation</u>.  A Party shall provide written notice (the "Notice") to the other Party immediately upon the occurrence of any of the following events (the "Events"): (a) insolvency, bankruptcy or liquidation or filing of any application therefor, or other commitment of an affirmative act of insolvency; (b) attachment, execution or seizure of substantially all of the assets of the notifying party or filing of any application therefor; (c) assignment or transfer of that portion of the business to which this Contract pertains to a trustee for the benefit of creditors; (d) disposition, by sale or assignment of all of its rights, of that portion of the business or the material

QUALCOMM-HUAWEI CONFIDENTIAL          22          QUALCOMM PROPRIETARY

No. 00004895
CONFIDENTIAL

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL – 15 U.S.C. § 57b-2
FTC File No. 141-0199

000097

assets to which this Contract pertains or of the majority of the equity or voting stock of LICENSEE; or (e) termination of its business or dissolution. Either Party shall also have the right to terminate this Contract with immediate effect by giving written notice of termination to the other Party at any time upon or before the later of (i) sixty (60) days after the occurrence of any of the Events with respect to such other Party (unless such event ceases within such period), or (ii) sixty (60) days after receipt of the Notice (unless such event ceases within such period).

13.5    Rights Upon Termination.  Upon any expiration or termination of this Contract all licenses granted to LICENSEE hereunder shall also terminate and LICENSEE shall immediately (i) cease using any of QUALCOMM's Intellectual Property and (ii) return to QUALCOMM or destroy all information and documentation furnished by QUALCOMM.  The licenses granted by LICENSEE hereunder shall survive the termination of this Contract and remain in full force and effect thereafter until all of LICENSEE's Intellectual Property has expired; except that, upon termination of this Contract by LICENSEE for cause or expiration of this Contract under Section 2, all licenses granted by LICENSEE hereunder shall also terminate and LICENSEE and QUALCOMM shall immediately cease using any of LICENSEE's Intellectual Property. Any termination or expiration of this Contract under this Section 13 shall not relieve LICENSEE from its obligation under Section 14 hereof to make a report or from its liability for payment of royalties on Subscriber Units Sold on or prior to the date of such termination or expiration and shall not prejudice the right to recover any royalties or other sums due or accrued at the time of such termination or expiration and shall not prejudice any cause of action or claim accrued or to accrue on account of any breach or default. Furthermore, any termination or expiration of this Contract under this Section 13 shall not prejudice the right of QUALCOMM to conduct a final audit of the records of LICENSEE in accordance with the provisions of Section 14 hereof. No termination hereunder shall limit the rights of a Party to sell those Subscriber Units in inventory or in process at the time of termination, subject to payment of the royalty applicable to the sale of such Subscriber Units and continued compliance with the other provisions of this Contract.

14.    RECORDS AND AUDITS.

14.1    Records.  LICENSEE shall keep accurate and complete books and records concerning any Subscriber Units it may sell under this Contract.  As applicable, such books and records shall include the date of transaction involving sales of Subscriber Units, including the number of items Sold.  LICENSEE shall furnish QUALCOMM within thirty (30) days after the end of each calendar quarter a certificate, in the form attached hereto as Exhibit E, signed by a responsible official of LICENSEE showing the transactions and corresponding amounts during said calendar quarter and any other information as may be reasonably requested by QUALCOMM.

QUALCOMM-HUAWEI CONFIDENTIAL            23            QUALCOMM PROPRIETARY

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL – 15 U.S.C. § 57b-2
FTC File No. 141-0199

000097

**14.2  Audits.** QUALCOMM may, no more than once each calendar year, cause an auditor licensed in China and selected by QUALCOMM to conduct an audit on reasonable notice of LICENSEE's applicable books and records and all supporting information to confirm the royalty paid or to be paid to QUALCOMM in accordance with the terms and conditions set forth in Section 5.2 above. LICENSEE shall make available applicable personnel to answer the reasonable questions of the auditor and shall permit the auditor to make and retain copies of relevant records solely for the auditor's analysis and records. The cost of such audit shall be borne by QUALCOMM, unless such audit determines that the LICENSEE has underpaid the royalties due hereunder by the lesser of (a) more than five percent (5%) or (b) one hundred thousand United States dollars ($100,000); in which case, LICENSEE shall, in addition to paying the deficiency plus late payment charges, pay the cost of such audit. LICENSEE shall preserve and maintain all such books and records required for audit for a period of five (5) years after the calendar quarter for which the books and records apply (but not more than two (2) years after any termination of this Contract). All information acquired by the auditor and/or QUALCOMM from such audit shall be considered Information subject to the terms and conditions of Section 10.

15.   ASSIGNMENT.

Except as provided in Section 15.1 below and in this clause, LICENSEE shall not assign this Contract or any right or interest under this Contract, nor delegate any work or obligation to be performed under this Contract (an "assignment"), without QUALCOMM's prior written consent, which consent shall be at QUALCOMM's sole discretion. Any attempted assignment in contravention of this Section 15 shall be void and ineffective. In the event QUALCOMM assigns this Contract, QUALCOMM shall give prompt notice thereof to LICENSEE, and such assignment shall not diminish LICENSEE's rights under this Contract.

**15.1  Assignment in the Event of Divestiture.** Upon thirty (30) days' written notice to QUALCOMM and QUALCOMM's approval (which approval shall not be unreasonably withheld), LICENSEE shall have the right to assign this contract to any successor to the entirety of LICENSEE's business for the manufacture and Sale of Subscriber Units so long as such successor is a Chinese Manufacturer. Upon such assignment, such successor shall be bound by all the terms, conditions and obligations applicable to LICENSEE hereunder.

16.   COMPLIANCE WITH APPLICABLE REGULATIONS.

Nothing contained in this Contract shall require or permit LICENSEE or QUALCOMM to do any act inconsistent with the requirements of (a) the regulations of the United States Department of Commerce, or (b) the foreign

QUALCOMM-HUAWEI CONFIDENTIAL          24          QUALCOMM PROPRIETARY

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL – 15 U.S.C. § 57b-2
FTC File No. 141-0199

000097

assets controls or foreign transactions controls regulations of the United States Treasury Department, or (c) any similar United States law, regulation or executive order as the same may be in effect from time to time.  To enable QUALCOMM to export QUALCOMM's Intellectual Property or technical data to LICENSEE in compliance with the requirements of the Export Administration Regulations (EAR), LICENSEE hereby gives its assurance to QUALCOMM that LICENSEE will not re-export or otherwise disclose, directly or indirectly, any of QUALCOMM's Intellectual Property or "technical data" received from QUALCOMM, nor allow the direct product thereof to be shipped directly or indirectly to any country, unless permitted by U.S. law in effect at the time of such export.  QUALCOMM shall respond to LICENSEE's reasonable inquiries regarding permitted activities under the EAR.

17.    PUBLICITY.

LICENSEE shall submit to QUALCOMM a copy of all proposed advertising wherein the name, trademark, code, specification or service mark of QUALCOMM is mentioned; and LICENSEE shall not publish or use such advertising without QUALCOMM's prior written approval. Such approval shall be granted or withheld as promptly as possible (usually within ten (10) days), and may be withheld only for good cause. No license is granted by LICENSEE to QUALCOMM hereunder with respect to LICENSEE's or its Affiliates' trade name, trademark, code, specification or service mark. No license is granted by QUALCOMM to LICENSEE hereunder with respect to QUALCOMM's or its Affiliates' trade name, trademark, code, specification or service mark.

18.    SURVIVAL OF OBLIGATIONS.

The Parties' rights and obligations which, by their nature, would continue beyond the termination, cancellation, or expiration of this Contract, including but not limited to those rights and obligations of the Parties set forth in Section 10 entitled "INFORMATION," shall survive such termination, cancellation, or expiration.

19.    SEVERABILITY.

If any provision in this Contract shall be held to be invalid or unenforceable, the remaining portions shall remain in effect.  In the event such invalid or unenforceable provision is considered an essential element of this Contract, the Parties shall promptly negotiate a replacement provision.

20.    NON-WAIVER.

No waiver of the terms and conditions of this Contract, or the failure of either Party strictly to enforce any such term or condition on one or more

QUALCOMM-HUAWEI CONFIDENTIAL              25              QUALCOMM PROPRIETARY

No. 00004898
CONFIDENTIAL

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL – 15 U.S.C. § 57b-2
FTC File No. 141-0199

000097

occasions shall be construed as a waiver of the same or of any other term or condition of this Contract on any other occasion.

21.   NOTICES.

All notices, requests, demands, consents, agreements and other communications required or permitted to be given under this Contract shall be in writing and shall be mailed to the Party to whom notice is to be given, by facsimile, and confirmed by first class mail, postage prepaid, and properly addressed as follows (in which case such notice shall be deemed to have been duly given on the day the notice is first received by the Party):

QUALCOMM Incorporated
5775 Morehouse Drive
San Diego, CA  92121-1714
United States of America

Huawei Technologies Co. Ltd.
Huadian R&D Building, Huawei Base
Bantian Longgang, Shenzen 518129
China

Facsimile No.:  (858) 658-2503
Telephone No.: (858) 587-1121
Attn: President

Facsimile No.: (86) 755-28787822
Telephone No.: (86) 755-28788899
Attn: Mr. Song Liuping

with a copy to:  General Counsel

The above addresses can be changed by providing notice to the other Party in accordance with this Section.

22.   PUBLICATION OF CONTRACT.

Except as may otherwise be required by law or as reasonably necessary for performance hereunder, each Party shall keep this Contract and its provisions confidential and shall not disclose this Contract or its provisions without first obtaining the written consent of the other Party, which consent shall not be unreasonably withheld. The confidentiality obligations hereunder do not apply to the existence of this Contract or the fact that QUALCOMM and LICENSEE have executed this Contract, but do apply to the terms and conditions of this Contract. Any press release or other announcement by either Party concerning the entering into of this Contract shall be subject to the prior written approval of other Party, which approval shall not be unreasonably withheld.

QUALCOMM-HUAWEI CONFIDENTIAL          26          QUALCOMM PROPRIETARY

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL – 15 U.S.C. § 57b-2
FTC File No. 141-0199

000097

## 23. APPLICABLE LAW; DISPUTE RESOLUTION; VENUE.

This Contract shall be construed and enforced in accordance with the laws of the State of California without regard to conflict of laws principles. However, wherever reconcilable nothing contained herein shall be construed to be in conflict with or in violation of applicable law of the People's Republic of China. When performing their obligations under this Contract in China, the Parties shall abide by the applicable laws and regulations of the People's Republic of China.

The Parties will attempt in good faith to resolve promptly any dispute, claim or controversy arising out of or relating to this Contract, or the breach or validity hereof (a "Dispute") by negotiations between executives of the Parties who have the authority to settle the Dispute. If the Dispute is not resolved within thirty (30) days of a Party's written request for negotiation, either Party may initiate arbitration as hereinafter provided.

A Party desiring to commence arbitration shall provide written notice to the other Party setting forth the Dispute(s) to be arbitrated. Within ten (10) days of receipt of such written notice, the Parties will attempt in good faith to reach agreement on an impartial arbitrator. In the event the Parties are unable to agree upon an arbitrator within thirty (30) days of the above written notice, the arbitrator shall be selected by the International Chamber of Commerce (or another similar organization if the International Chamber of Commerce is not available). The selected arbitrator shall be impartial. No person shall act as an arbitrator if such person possesses any past, present, or promised future economic, business, or financial interest, direct or indirect, in any Party hereto (including, without limitation, all partners, officers, directors, employees, or shareholders thereof). The Parties will share equally the fees and expenses of the arbitrator.

The arbitration hearing shall commence in Singapore within 60 days of the appointment of the arbitrator. The arbitration proceedings shall be conducted in the English language.

The arbitration hearing shall be conducted in accordance with the Arbitration Rules of the International Chamber of Commerce. The arbitrator shall award attorneys' fees and costs to the prevailing Party. The arbitrator shall have no authority to make any finding or award as to the validity or enforceability of any patent.

The final award of the arbitrator shall be rendered in writing and signed by the arbitrator. The final award shall be entered within thirty (30) days of the commencement of the arbitration hearing. Each Party agrees to abide by the arbitration award, and to the enforcement of the arbitration award in Singapore

QUALCOMM-HUAWEI CONFIDENTIAL     27     QUALCOMM PROPRIETARY

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL – 15 U.S.C. § 57b-2
FTC File No. 141-0199

000097

and consents to personal jurisdiction over itself by the courts of Singapore solely for such purposes. Each Party further agrees that judgment may be entered upon the award in any court of competent jurisdiction.

24.   WAIVER OF SOVEREIGN IMMUNITY.

Each Party acknowledges and agrees that the formation and performance of this Contract is a transaction which is commercial in nature rather than governmental or public and therefore unconditionally acknowledges and agrees that it is not entitled to any right of immunity on the grounds of sovereignty or otherwise with respect to transactions contemplated by this Contract or in any legal action or proceeding arising out of or relating to this Contract.

25.   BREACH OF CONTRACT.

Except as otherwise limited or set forth herein, in the event of a breach by either Party of its obligations under this Contract, the nonbreaching Party shall be entitled to seek all applicable remedies. In addition, QUALCOMM may charge LICENSEE a late charge, with respect to any amounts that LICENSEE owes hereunder and fails to pay on or before the due date, in an amount equal to the lesser of one and one-half percent (1 1/2%) per month, pro-rated, or the maximum amount permitted by law.

26.   ATTORNEYS' FEES.

In the event of any proceeding to enforce the provisions of this Contract, the prevailing Party (as determined by the arbitrator or the court) shall be entitled to reasonable attorneys' fees as fixed by the arbitrator or the court.

27.   ENTIRE AGREEMENT.

The terms and conditions contained in this Contract supersede all prior and contemporaneous oral or written understandings between the Parties with respect to the subject matter thereof and constitute the entire agreement of the Parties with respect to such subject matter. Such terms and conditions shall not be modified or amended except by a writing signed by authorized representatives of both Parties.

28.   INDEPENDENT CONTRACTORS.

The relationship between QUALCOMM and LICENSEE is that of independent contractors. QUALCOMM and LICENSEE are not joint venturers, partners, principal and agent, master and servant, employer or employee, and have no other relationship other than independent contracting parties. LICENSEE is executing this Contract solely on behalf of itself and its Affiliates

QUALCOMM-HUAWEI CONFIDENTIAL          28          QUALCOMM PROPRIETARY

 000097

and is not acting on behalf of, and does not represent, any other company or entity or any government agency.

29. FORCE MAJEURE

Neither Party shall be in default or liable for any loss or damage resulting from delays in performance or from failure to perform or comply with terms of this Contract (other than the obligation to make payments, which shall not be affected by this provision) due to any unforeseeable, unavoidable and unpreventable causes, which causes include but are not limited to Acts of God or the public enemy; riots and insurrections; war; fire; strikes and other labor difficulties (whether or not the Party is in a position to concede to such demands); embargoes; judicial action; lack of or inability to obtain export permits or approvals; and acts of civil or military authorities.

IN WITNESS WHEREOF, the Parties hereto have caused this Contract to be executed as of the Effective Date. This Contract shall be executed in English and Chinese and may be signed in counterparts. In the event of any conflict between the Chinese and English versions, the English version of this Contract shall be controlling.

| QUALCOMM Incorporated | Huawei Technologies Co. Ltd. |
| --- | --- |
| BY: ______ | BY: ______ |
| TITLE: VP/ASST GC | TITLE: Vice President |
| Print Name: GREGORY K. COBB | Print Name: Song Liuping |
| Witness: ______ | Witness: ______ |
| Print Name: Abhimitra Seeriraini | Print Name: Yue ya |

HUAWEI HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONL

# Huawei's Proposed Term Sheet to Qualcomm

| Items | Terms and Conditions |
|---|---|
| Parties | • Huawei Technologies Co., Ltd ("Huawei")and Qualcomm Incorporated ("Qualcomm")<br>• Including Affiliates respectively |
| Licensed Patent | • SEPs essential to wireless standards set by 3GPP but excludes any 5G wireless telecommunications network standard ("Standard") |
| Licensed Product | • Integrated circuit that is: (i) complied with the Standard, (ii) for use in handsets, and (iii)sold by Qualcomm or its Affiliates under Qualcomm or its Affiliate's brand |
| Grant of License | • Huawei and its Affiliates grant Qualcomm and its Affiliates a world-wide, irrevocable, non-exclusive, non-transferrable and non-sublicensable license to make, have made, use, sell, import, offer for sale or otherwise dispose of Licensed Products |
| Past Release | • Subject to Qualcomm's one-time payment for past sales of Licensed Products, Huawei and its Affiliates shall release and discharge forever Qualcomm and its Affiliates from any and all claims of infringement under Licensed Patents by making, using, selling, importing or otherwise disposing Licensed Products arising prior to the Effective Date |
| Royalty Fee | ████ ██████ ███ |
| Term | • 5 years (2017-2021) |
| Other Products | • Huawei is open to discuss licenses for other types of products that comply with the Standard upon Qualcomm's request  and relevant royalties are subject to further discussion between the parties |

HUAWEI TECHNOLOGIES CO., LTD.                                 Page 1                     HUAWEI