# EXHIBIT 2 TO HUAWEI'S MOTION TO SEAL
# (JX-027)
# PUBLIC REDACTED VERSION

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL – 15 U.S.C. § 57b-2
FTC File No. 141-0199

000096

## MEMORANDUM OF UNDERSTANDING

This Memorandum of Understanding ("MOU") is entered into this 2/ day of July, 2004 (the "MOU Date"), by and between QUALCOMM Incorporated, a corporation organized under the law of the state of Delaware, United States of America ("QUALCOMM") and Huawei Technologies Co., Ltd., a company organized under the laws of the People's Republic of China ("Huawei").

### RECITALS

WHEREAS, QUALCOMM has developed, and is continuing to develop, Code Division Multiple Access digital wireless telecommunications technology, integrated circuits and software, including without limitation, technology, integrated circuits and software for mobile phone systems implementing the WCDMA Standards (as defined below);

WHEREAS, QUALCOMM owns many patents that are essential to the manufacture and sale of telecommunications equipment implementing CDMA air interface standards, including the WCDMA Standards, and many other patents that are commercially useful for such purposes;

WHEREAS, Huawei is a leading Chinese manufacturer of wireless telecommunications network systems and handsets;

WHEREAS, QUALCOMM and Huawei have previously entered into 1) that certain Contract Between QUALCOMM Incorporated And Huawei Technologies Co., Ltd. for the License of Certain Technology For the Manufacturing and Sale of Certain CDMA Infrastructure Equipment dated September 22, 2001, as subsequently amended (collectively, the "Infrastructure Agreement"), and 2) that certain Contract Between QUALCOMM Incorporated And Huawei Technologies Co., Ltd. for the License of Certain Technology For the Manufacturing and Sale of Certain CDMA Subscriber Units dated May 29, 2003, as subsequently amended (collectively, the "Subscriber Agreement"), and which two agreements are collectively referred to herein as the "License Agreements";

WHEREAS, QUALCOMM and Huawei are presently negotiating an agreement(s) to license certain intellectual property for use in WCDMA Subscriber Units, WCDMA Modem Cards, and WCDMA Infrastructure Products (each, as defined below) (the "Definitive Agreements") and to include modem cards as licensed products; and

WHEREAS, during the pendency of the negotiations of the Definitive Agreements, Huawei has requested QUALCOMM to provide assistance, support and products to Huawei, under a temporary arrangement, in connection with its efforts to begin commercializing products compliant with the WCDMA Standards for Sale, and QUALCOMM is willing to provide, under a temporary arrangement, certain levels of support and products to Huawei in such regard, subject to the conditions set forth below.

NOW, THEREFORE, in consideration of the mutual promises and agreements set forth herein, the Parties hereto hereby agree as follows:

QUALCOMM Proprietary                                                                                   1

No. 00004866

CONFIDENTIAL                                                                    FTC-HUAWEI-0000696
                                                                                CX1019-001

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL – 15 U.S.C. § 57b-2
FTC File No. 141-0199

000096

1

Headings And Definitions.

All headings used in this MOU are inserted for convenience only and are not intended to affect the meaning or interpretation of any portion of this MOU. Unless otherwise specified herein, capitalized terms shall have the meanings specified in the License Agreements. The following additional terms shall have the meanings specified below:

"Licensed Customer" means a person or entity that is licensed by QUALCOMM under any or all of QUALCOMM's intellectual property to make and sell WCDMA Subscriber Units and/or any Communications Device that comply with or implement one or more of the air interface standards included in the WCDMA Standards (each such license agreement between QUALCOMM and a Licensed Customer shall hereinafter be referred to as an "LC License Agreement").

"Supply Agreement" means that certain Components Supply Agreement dated November 13, 2001 between Huawei and QUALCOMM CDMA Technologies Asia-Pacific PTE LTD., as subsequently amended or superceded.

"WCDMA Standards" means any third generation direct sequence, single carrier, FDD or TDD CDMA air interface standard (e.g., WCDMA, UMTS) which (a) is adopted as an industry standard by the Telecommunications Industry Association ("TIA"), the European Telecommunication Standards Institute ("ETSI"), Japan's Association of Radio Industries and Businesses ("ARIB") or other recognized international standards bodies, (b) has been approved by QUALCOMM (i.e., QUALCOMM voted in favor of adopting such standard), and (c) has a spreading bandwidth between four and one half (4.5) and five and one half (5.5) MHz. Without limitation, the term "WCDMA Standards" does not include cdmaOne (IS-95), cdma2000 (IS-2000), 1x RTT MC, 3x RTT MC, 1xEV-DO (IS-856) or 1xEV-DV, any revisions or updates thereto, or any direct sequence TDD air interface standards. Notwithstanding the foregoing, the term "WCDMA Standards" does not include TD-SCDMA.

"WCDMA Infrastructure Product" means an infrastructure equipment product that 1) complies with the WCDMA Standards or is for use in a wireless network that implements the WCDMA Standards, and 2) would meet the definition of Licensed Product in the Infrastructure Agreement if the definition of "CDMA Standard" in the Infrastructure Agreement were expanded to include the WCDMA Standards.

"WCDMA Modem Card" means a complete CDMA modem card which (i) complies with the WCDMA Standards, and (ii) is for use with a "Communications Device," meaning either a telephone, personal computer, personal digital assistant, facsimile machine, monitoring device, multi-media terminal, data entry terminal, or point of sale terminal. The WCDMA Modem Card must contain at a minimum a printed circuit board, multiple individually packaged integrated circuit devices, and all of the circuitry necessary for the Communications Device to perform all of the CDMA reverse link modulation and CDMA forward link demodulation, baseband processing, RF and IF filtering, upconversion, downconversion, RF and IF shielding, and protocol stack

QUALCOMM Proprietary

2

No. 00004867

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL – 15 U.S.C. § 57b-2
FTC File No. 141-0199

000096

messaging; provided that a WCDMA Modem Card shall not be capable of initiating and receiving Wireless communications without being attached to the Communications Device. For purposes of clarification, a Communications Device Sold with a WCDMA Modem Card embedded within such Communications Device is a WCDMA Subscriber Unit, not a WCDMA Modem Card.

"WCDMA Subscriber Unit" means a wireless subscriber product that 1) complies with the WCDMA Standards in at least one mode of operation, and 2) would meet the definition of Subscriber Unit in the Subscriber Agreement if the definition of "CDMA Standard" in the Subscriber Agreement were expanded to include the WCDMA Standards.

"Unlicensed Customer" means a person or entity that is not a Licensed Customer.

1. **Continued Discussions for Definitive Agreements.** QUALCOMM and Huawei will continue their ongoing discussions for their anticipated entry into the Definitive Agreements expanding the License Agreements to cover WCDMA Infrastructure Products, WCDMA Subscriber Units and WCDMA Modem Cards.

2. 

3. **CDMA ASICs and Software.** During the term of this MOU, QUALCOMM agrees to offer Huawei timely access to its WCDMA MSM ASICs and corresponding software releases at such times as such ASICs and software become generally available. Such offers shall be on QUALCOMM's then-standard terms and conditions for such ASICs and software, with the sales of such ASICs being subject to the terms, limitations and conditions of the Supply Agreement as though Huawei's WCDMA Subscriber Units and WCDMA Modem Cards were licensed under the License Agreement and the provision of such software to be provided subject to the terms, limitations and

QUALCOMM Proprietary                                                                 3

No. 00004868

CONFIDENTIAL

FTC-HUAWEI-0000698
CX1019-003

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL – 15 U.S.C. § 57b-2
FTC File No. 141-0199

000006

conditions of a mutually agreed upon software agreement. Notwithstanding the foregoing, QUALCOMM shall have no obligation to sell WCDMA ASICs to Huawei if a) QUALCOMM reasonably determines that the Royalty Fund has insufficient funds to cover the royalties (1) that QUALCOMM estimates would become due upon the Sale of WCDMA Subscriber Units and/or WCDMA Modem Cards incorporating any such WCDMA ASICs or (2) which are due and owing on Huawei's Sales of WCDMA Subscriber Units, WCDMA Modem Cards and WCDMA Infrastructure Equipment, and, b) (i) Huawei has failed to supplement the Royalty Fund in a timely manner to avoid the insufficient funds issue despite QUALCOMM and Huawei having reached an agreement in accordance with Section 2 above whereby Huawei agreed to supplement the Royalty Fund to alleviate such insufficient funds issue, or (ii) no agreement has been reached in accordance with Section 2 above wherein Huawei has agreed to supplement the Royalty Fund.

4.  **WCDMA Subscriber Unit Sales.** For each WCDMA Subscriber Unit that Huawei Sells, Huawei agrees that the royalty schedule set forth in Section 5.2(b)(ii) of the Subscriber Agreement shall apply to such Sale, wherein the appropriate royalty owed for such Sale shall be determined by multiplying the applicable royalty rate from such schedule by the deemed selling price of such WCDMA Subscriber Unit. The deemed selling price for a WCDMA Subscriber Unit Sold in accordance with this MOU shall be determined by applying the definitions of Net Selling Price and Selling Price in the Subscriber Agreement to the Sale of such WCDMA Subscriber Unit as though such product were licensed under the Subscriber Agreement, provided, however, that the deduction allowed therein for CDMA ASICs purchased from QUALCOMM for certain Sales in China shall not be a deduction allowed in connection with the Sale of any WCDMA Subscriber Units. Huawei agrees to report the Sales of all such WCDMA Subscriber Units in accordance with Section 14.1 of the Subscriber Agreement and submit to periodic audits of such Sales in accordance with Section 14.2 of the Subscriber Agreement, in each case as though such Sales were licensed under the Subscriber Agreement. Upon receipt of the foregoing royalty reports, QUALCOMM will debit the Royalty Fund and reduce the Balance by the amount reported due thereunder for Sales of WCDMA Subscriber Units.

    4.1. **Sales On or Prior to May 29, 2006.** Notwithstanding the foregoing, for each WCDMA Subscriber Unit Sold by Huawei outside of China, or manufactured outside of China, or Sold for use outside of China, in each case prior to May 29, 2006, that also complies with any one or more of the CDMA Standards, the royalties payable for such WCDMA Subscriber Unit shall be determined in accordance with the terms and royalty rates set forth in Section 5.2(b)(i) of the Subscriber Agreement.

5.  **WCDMA Infrastructure Equipment Sales.** For each Item of WCDMA Infrastructure Equipment that Huawei Sells, Huawei agrees that the royalty schedule set forth in Section 5.2(b)(ii) of the Infrastructure Agreement shall apply to such Sale, wherein the appropriate royalty owed for such Sale shall be determined by multiplying the applicable royalty rate from such schedule by the deemed selling price of such WCDMA Infrastructure Equipment. The deemed selling price for an item of WCDMA Infrastructure Equipment Sold in accordance with this MOU shall be determined by

QUALCOMM Proprietary                                                          4

No. 00004869

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL – 15 U.S.C. § 57b-2
FTC File No. 141-0199

000096

applying the definitions of Net Selling Price and Selling Price in the Infrastructure Agreement to the Sale of such WCDMA Infrastructure Equipment as though such product were licensed under the Infrastructure Agreement, provided, however, that the deductions allowed therein for 1) CDMA ASICs purchased from QUALCOMM, 2) interest and related costs for financing Huawei's customers' purchases, and 3) installation and commissioning costs, antenna kits, feeder cables, power supplies and cabling, shall in each instance not be deductions allowed in connection with the Sale of any WCDMA Infrastructure Equipment hereunder. Huawei agrees to report the Sales of all such WCDMA Infrastructure Equipment in accordance with Section 14.1 of the Infrastructure Agreement and submit to periodic audits for such Sales in accordance with Section 14.2 of the Infrastructure Agreement, in each case as though such Sales were licensed under the Infrastructure Agreement. Upon receipt of the foregoing royalty reports, QUALCOMM will debit the Royalty Fund and reduce the Balance by the amount reported due thereunder for Sales of WCDMA Infrastructure Equipment.

5.1. Sales On or Prior to September 22, 2004. Notwithstanding the foregoing, for each item of WCDMA Infrastructure Equipment Sold by Huawei outside of China, or manufactured outside of China, or Sold for use outside of China, in each case prior to September 22, 2004, that also complies with any one or more of the CDMA Standards, the royalties payable for such WCDMA Infrastructure Equipment shall be determined in accordance with the terms and royalty rates set forth in Section 5.2(b)(i) of the Infrastructure Agreement.

6. WCDMA Modem Card Sales. For each WCDMA Modem Card that Huawei Sells to an Unlicensed Customer, Huawei agrees that the royalty schedule set forth in Section 5.2(b)(ii) of the Subscriber Agreement shall apply to such Sale, wherein the appropriate royalty owed for such Sale shall be determined by multiplying such royalty rate (the "Card Rate") by the deemed selling price of such WCDMA Modem Card. The deemed selling price for a WCDMA Modem Card Sold in accordance with this MOU shall be determined by applying the definitions of Net Selling Price and Selling Price in the Subscriber Agreement to the Sale of such WCDMA Modem Card as though such product were a Subscriber Unit licensed under the Subscriber Agreement, provided, however, that the deduction allowed therein for CDMA ASICs purchased from QUALCOMM for certain Sales in China shall not be a deduction allowed in connection with the Sale of any WCDMA Modem Cards. Huawei agrees to report the Sales of all such WCDMA Modem Cards in accordance with Section 14.1 of the Subscriber Agreement and submit to periodic audits of such Sales in accordance with Section 14.2 of the Subscriber Agreement, in each case as though such sales were licensed under the Subscriber Agreement. Upon receipt of the foregoing royalty reports, QUALCOMM will debit the Royalty Fund and reduce the Balance by the amount reported due thereunder for Sales of WCDMA Modem Cards.

Notwithstanding anything in the foregoing, Huawei's Sale of WCDMA Modem Cards shall not convey to Huawei's customers any right or license (express or implied) to any of QUALCOMM's intellectual property, including with respect to any claim in any QUALCOMM patent covering the use of Huawei's WCDMA Modem Cards in combination with any other product or apparatus.

QUALCOMM Proprietary                                                                                           5

No. 00004870

CONFIDENTIAL                                                                           FTC-HUAWEI-0000700
                                                                                                           CX1019-005

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL – 15 U.S.C. § 57b-2
FTC File No. 141-0199

000096

6.1 <u>Minimum Royalty on WCDMA Modem Cards.</u> 

6.2 <u>Sales to Licensed Customers.</u> Nothing in this MOU shall be construed to prohibit Huawei from making WCDMA Modem Cards for a Licensed Customer solely in accordance with the "have made" rights of such Licensed Customer as set forth in such Licensed Customer's LC License Agreement and no royalty shall be due from Huawei hereunder for such Sales. Notwithstanding anything in the foregoing, nothing herein is intended to (a) modify or amend the terms and conditions of any LC License Agreement, including but not limited to the scope of such Licensed Customer's "have made" rights or the royalties payable thereunder or (b) imply that such Licensed Customer may deduct the price or cost of any WCDMA Modem Cards acquired by such Licensed Customer from the price upon which such Licensed Customer is obligated to compute and pay royalties to QUALCOMM under its LC License Agreement.

7. <u>Immunity From Infringement Actions.</u> During the term of this MOU and so long as the Royalty Fund Balance is sufficient to cover the royalties that are computed in

QUALCOMM Proprietary                                                                 6

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL – 15 U.S.C. § 57b-2
FTC File No. 141-0199

000096

accordance with Sections 4, 5 and 6 of this MOU, QUALCOMM agrees that it will not initiate or maintain any action for the infringement of QUALCOMM's patents against 1) Huawei for its Sale of, or Huawei's customers for their use of WCDMA Infrastructure Equipment and/or WCDMA Subscriber Units, or 2) Huawei for its Sale of, or Unlicensed Customers that are Huawei's customers for their use of, WCDMA Modem Cards.

8.  Term. QUALCOMM will have the right to immediately terminate this MOU upon the earliest to occur of the following: 1) expiration or termination of any of the Infrastructure Agreement, Subscriber Agreement, or Supply Agreement, 2) the initiation of any intellectual infringement action, anywhere worldwide, by Huawei or its Affiliates against QUALCOMM, its foundries, any QUALCOMM product, or any QUALCOMM Customer's use of any QUALCOMM Product, 3) the failure by Huawei to report the Sales of any WCDMA Infrastructure Equipment, WCDMA Subscriber Units or WCDMA Modem Cards as required under Sections 4, 5 and 6 of this MOU, unless such failure is cured within thirty (30) days of discovery and notice of such failure by QUALCOMM or discovery of such failure by Huawei, 4) any material breach of the Supply Agreement which is not cured in accordance with the terms of the Supply Agreement, 5) QUALCOMM notifies Huawei that the Balance of the Royalty Fund is depleted (or substantially depleted) and Huawei does not supplement the Royalty Fund with additional amounts sufficient to cover the royalties that are computed in accordance with Sections 4, 5 and 6 of this MOU within thirty (30) days of such notice, 6) any breach of this MOU by Huawei not cured within thirty (30) days after notification by QUALCOMM, 7) upon entering into Definitive Agreement(s) for WCDMA Subscriber Units, WCDMA Modem Cards, or WCDMA Infrastructure Products, or 8) upon written agreement of QUALCOMM and Huawei.

9.  Confidentiality. Each Party hereto agrees to keep this MOU and information or materials related hereto confidential in accordance with the terms of Section 10 of the Subscriber Agreement. No Party hereto shall issue any press release or otherwise publicize or disclose to any third party the existence or nature of this MOU without the prior written consent of the other Party. Notwithstanding the foregoing, either Party may disclose to any third party, upon the inquiry of such third party or as reasonably determined as necessary in the business judgment of a Party, that Huawei has entered into this temporary arrangement with QUALCOMM regarding the Sales of WCDMA Subscriber Units, WCDMA Modem Cards, and WCDMA Infrastructure Products.

10.  Entire Agreement. This MOU sets forth the entire agreement of the Parties hereto with regard to WCDMA Infrastructure Equipment, WCDMA Subscriber Units and WCDMA Modem Cards pending the entry by the Parties into the Definitive Agreement(s). This MOU shall not be amended, modified or supplemented except by a writing signed by authorized representatives of both Parties.

11.  Applicable Law. This MOU shall be construed and enforced in accordance with the laws of the State of California, United States of America, without regard to conflicts

QUALCOMM Proprietary                                                                                              7

No. 00004872

CONFIDENTIAL                                                                                FTC-HUAWEI-0000702
                                                                                                         CX1019-007

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL – 15 U.S.C. § 57b-2
FTC File No. 141-0199

000096

of law principles, and only in a court of competent jurisdiction in San Diego, California.

IN WITNESS WHEREOF, the Parties hereto have caused this MOU to be effective as of MOU Date as set forth above.

| QUALCOMM Incorporated | Huawei Technologies Co., Ltd. |
|---|---|
| By: *[signature]* GREG R. COBB | By: *[signature]* Song Xinping |
| Title: VP / ASST GM | Title: VP |

QUALCOMM Proprietary                                                         8

No. 00004873

CONFIDENTIAL                                                         FTC-HUAWEI-0000703
                                                                             CX1019-008