# EXHIBIT 3 TO HUAWEI'S MOTION TO SEAL
# (JX-097)
# PUBLIC REDACTED VERSION

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL
FTC File No. 141-0199
000089

## Amendment to Subscriber Unit License Agreement
(the "**Amendment**")

This Amendment is entered into as of July 1, 2014 (the "**Amendment Effective Date**") between QUALCOMM Incorporated, a Delaware corporation ("**QUALCOMM**"), Huawei Device Co., Ltd., a company organized and existing under the laws of the People's Republic of China ("**HUAWEI DEVICE**"), and Huawei Device (Dongguan) Co., Ltd., a company organized and existing under the laws of the People's Republic of China ("**HUAWEI DONGGUAN**") with respect to the following facts:

WHEREAS, QUALCOMM and HUAWEI DEVICE are parties to that certain Contract for the License of Certain Technology for the Manufacturing and Sale of Certain CDMA Subscriber Units, dated May 29, 2003, entered into between QUALCOMM and Huawei Technologies Co., Ltd. and subsequently assigned by Huawei Technologies Co., Ltd. to HUAWEI DEVICE (as amended, the "**Subscriber Unit License Agreement**"); and

WHEREAS, the Parties desire to amend certain provisions of the Subscriber Unit License Agreement as expressly set forth in this Amendment;

NOW, THEREFORE, the Parties agree as follows:

1.     <u>Construction and Definitions</u>.  Section headings used in this Amendment are inserted for the purpose of convenience only and are not intended to affect the meaning or interpretation of any provision in this Amendment. All references to "days" in this Agreement mean calendar days. Unless otherwise specified herein, capitalized terms used in this Amendment have the meanings specified in the Subscriber Unit License Agreement. In addition, the following additional or modified terms have the meanings specified below:

"**2013 Amendment**" means the Amendment to Subscriber Unit License Agreement between QUALCOMM and LICENSEE entered into as of May 27, 2013.

"**Assert**," "**Asserted**," and "**Assertion**" mean to voluntarily commence or prosecute patent infringement Litigation or to threaten to do so in writing. For avoidance of doubt, the terms "**Assert**," "**Asserted**," and "**Assertion**" do not include service of a third party subpoena or continued prosecution of Patent

QUALCOMM Proprietary & Confidential

No. 00004820

FTC-HUAWEI-0000650
**Provisionally Highly Confidential**

infringement Litigation against a third party after such third party impleads a Party or a Party's Affiliate.

"**Enhanced Damages**" means monetary damages that are in addition to those adequate to compensate a person or entity for patent infringement, such as punitive damages or "increased" damages pursuant to 35 U.S.C. § 284.

"**Exhaust Remedies**" means, with respect to any alleged infringement of any patent included in LICENSEE's Technically Necessary IPR by a Component Sold by QUALCOMM or any of its Affiliates directly or indirectly to any QUALCOMM Customer, the following:

(a) LICENSEE or a LICENSEE Affiliate has pursued to completion all Litigation and remedies that are available against such QUALCOMM Customer for infringement by such Component of such applicable LICENSEE's Technically Necessary IPR;

(b) all such Litigation has been prosecuted to a Final Judgment that resulted in a finding of infringement by such QUALCOMM Customer of such LICENSEE's Technically Necessary IPR, and monetary damages have been awarded from such QUALCOMM Customer to LICENSEE or an Affiliate of LICENSEE based on such finding;

(c) LICENSEE or a LICENSEE Affiliate has diligently sought to collect such monetary damages, but has been unable to do so; and

(d) LICENSEE or a LICENSEE Affiliate has notified QUALCOMM in writing of the foregoing and has in good faith negotiated a settlement of such Final Judgment with QUALCOMM, or, at QUALCOMM's discretion, its Affiliate for a period of at least one hundred eighty (180) days after obtaining such Final Judgment, without reaching agreement on a settlement.

"**Final Judgment**" means a judgment that terminates the Litigation and that either (a) is not subject to further appeal (including both appeals as of right and procedures such as a writ of certiorari) or (b) is not appealed by the party who lost the argument in the Litigation and for which the time to appeal has expired.

QUALCOMM Proprietary & Confidential

No. 00004821

FTC-HUAWEI-0000651
Provisionally Highly Confidential

"**Injunctive Relief**" means an equitable form of remedy (such as an injunction or an exclusion order, as opposed to an award of money or other financial consideration) that is sought based on an Assertion and would require a person or entity to discontinue its sale of products that would infringe a patent that is the subject of such Assertion.

"**Litigation**" means any procedure for the resolution of a controversy in any jurisdiction in the world, whether created by a claim, a counterclaim, or otherwise, in the broadest sense, in whatever form, administrative, judicial, arbitral, or otherwise, and the filing of a complaint with any governmental authority (including any proceeding in the United States International Trade Commission).

"**Pass-Through Rights**" means, with respect to the patents licensed under the Subscriber Unit License Agreement, the right or ability for a licensee to pass on to a customer in each jurisdiction those explicit license, implied license, and patent exhaustion rights that the customer would receive as a matter of law in such jurisdiction under a licensor's licensed patents as to a licensed product purchased from the licensee.

"**QUALCOMM Customer**" means any direct or indirect customer of QUALCOMM or any of its Affiliates, and such customer's Affiliates, in each case, that purchases Components from QUALCOMM or any of its Affiliates or uses Components purchased directly or indirectly from QUALCOMM or any of its Affiliates (on a standalone basis or as incorporated into or combined with other products or services).

2. <u>Termination of LICENSEE's License to Sell Subscriber Units to Certain LICENSEE Customers</u>. Notwithstanding anything to the contrary in Section 5.1 of the Subscriber Unit License Agreement, if any direct or indirect customer of LICENSEE or any of its Affiliates or any of such customer's Affiliates (an "**Asserting LICENSEE Customer**") either (a) <u>first</u> Asserts (i.e., Asserts other than by way of counterclaim, affirmative defense, or other responsive action following any Assertion initiated by QUALCOMM or any of its Affiliates against such Asserting LICENSEE Customer) any of its patents or (b) Asserts any of such Asserting LICENSEE Customer's Technically Necessary IPR (as such term would be applied if the Asserting LICENSEE Customer was a Party) against (i) QUALCOMM or any of its Affiliates for making (or having made), using, importing, selling (or offering to sell),, leasing, or otherwise disposing of Components or (ii) QUALCOMM's or any of its Affiliates' foundries or suppliers

3

QUALCOMM Proprietary & Confidential

for manufacturing Components for, or selling Components to, QUALCOMM or any of its Affiliates, then QUALCOMM may (at its sole discretion) provide written notice (the "**LICENSEE Customer Termination Notice**") to such Asserting LICENSEE Customer and to LICENSEE of QUALCOMM's intent to terminate LICENSEE's license to Sell Subscriber Units to such Asserting LICENSEE Customer under the license granted to LICENSEE in Section 5.1 of the Subscriber Unit License Agreement unless such Asserting LICENSEE Customer withdraws such Assertion within sixty (60) days after the date of such LICENSEE Customer Termination Notice. If the Asserting LICENSEE Customer does not withdraw such Assertion within such sixty (60) day period, then LICENSEE's license to Sell Subscriber Units to such Asserting LICENSEE Customer will terminate as of the date of the LICENSEE Customer Termination Notice and such Asserting LICENSEE Customer will thereafter be a "**Terminated LICENSEE Customer.**" If and when QUALCOMM and such Terminated LICENSEE Customer enter into a voluntary settlement or other final resolution of all claims of patent infringement Asserted by the Terminated LICENSEE Customer against QUALCOMM's and any of its Affiliates' Components, LICENSEE's license to Sell Subscriber Units to such Terminated LICENSEE Customer under Section 5.1 of the Subscriber Unit License Agreement will be automatically reinstated effective as of the date of such settlement or other final resolution (subject to any amendments of such license entered into by QUALCOMM and LICENSEE).

3.  Termination of QUALCOMM's License to Sell Components to Certain QUALCOMM Customers; LICENSEE's Covenant to Exhaust Remedies.

    3.1 Termination of QUALCOMM's License to Sell Components to Certain QUALCOMM Customers. Notwithstanding anything to the contrary in Section 6 of the Subscriber Unit License Agreement, if any QUALCOMM Customer (an "**Asserting QUALCOMM Customer**") either (a) first Asserts (i.e., Asserts other than by way of counterclaim, affirmative defense, or other responsive action following any Assertion initiated by LICENSEE or any of its Affiliates against such Asserting QUALCOMM Customer) any of such Asserting QUALCOMM Customer's patents, or (b) Asserts any of such Asserting QUALCOMM Customer's Technically Necessary IPR (as such term would be applied if the Asserting QUALCOMM Customer was a Party) against (i) LICENSEE or any of its Affiliates for making (or having made), using, importing, selling (or offering to sell), leasing, or otherwise disposing of Subscriber Units, or (ii) LICENSEE's or any of its Affiliates' suppliers for manufacturing Subscriber

4

QUALCOMM Proprietary & Confidential

No. 00004823

FTC-HUAWEI-0000653
Provisionally Highly Confidential

Units for, or selling Subscriber Units to, LICENSEE or any of its Affiliates, then LICENSEE may (at its sole discretion) provide written notice (the "**QUALCOMM Customer Termination Notice**") to QUALCOMM and such Asserting QUALCOMM Customer of LICENSEE's intent to terminate QUALCOMM's right to sell Components to such Asserting QUALCOMM Customer under the license granted to QUALCOMM in Section 6 of the Subscriber Unit License Agreement unless such Asserting QUALCOMM Customer withdraws such first Assertion or other Assertion, as applicable, within sixty (60) days after the date of such QUALCOMM Customer Termination Notice. If the Asserting QUALCOMM Customer does not withdraw such first Assertion or other Assertion, as applicable, within such sixty (60) day period, then, notwithstanding anything to the contrary in Section 6 of the Subscriber Unit License Agreement, QUALCOMM's license to sell Components to such Asserting QUALCOMM Customer will terminate as of the date of the QUALCOMM Customer Termination Notice, and such Asserting QUALCOMM Customer will thereafter be a "**Terminated QUALCOMM Customer**." If and when LICENSEE and the Terminated QUALCOMM Customer enter into a voluntary settlement or other final resolution of all claims of patent infringement Asserted by the Terminated QUALCOMM Customer against LICENSEE's and any of its Affiliates' Subscriber Units, QUALCOMM's license to sell Components to such Terminated QUALCOMM Customer under Section 6 of the Subscriber Unit License Agreement will be automatically reinstated effective as of the date of such settlement or other final resolution (subject to any amendments of such license entered into by QUALCOMM and LICENSEE).

3.2     **LICENSEE's Covenant to Exhaust Remedies Before Asserting Technically Necessary IPR Against QUALCOMM, any of its Affiliates, or any QUALCOMM Supplier for Selling Components to Terminated QUALCOMM Customers.**

3.2.1   **Covenant to Exhaust Remedies.** LICENSEE shall, before LICENSEE or any of its Affiliates Asserts any of LICENSEE's Technically Necessary IPR against (a) QUALCOMM or any of its Affiliates for Selling (or offering to Sell) Components to a Terminated QUALCOMM Customer after the date of the Termination Notice or (b) any QUALCOMM Supplier for making such Components for, or Selling such Components to, QUALCOMM or any of its Affiliates, first Exhaust Remedies against such Terminated QUALCOMM Customer with respect to such Components.

5

QUALCOMM Proprietary & Confidential

No. 00004824

FTC-HUAWEI-0000654
**Provisionally Highly Confidential**

3.2.2 <u>Covenant Not to Seek Injunctive Relief or Enhanced Damages</u>. If LICENSEE has Exhausted Remedies pursuant to Section 3.2.1 and then LICENSEE or any of its Affiliates makes an Assertion against QUALCOMM, any of its Affiliates, or any QUALCOMM Supplier that would otherwise (had LICENSEE not Exhausted Remedies) have been barred by Section 3.2.1, LICENSEE shall not seek (and shall ensure that its Affiliates do not seek) Injunctive Relief or Enhanced Damages with respect to the manufacture, importation, use, or Sale of any Components.

3.2.3 <u>Nature and Effect of Covenants to Exhaust Remedies</u>. Only after all steps identified in the definition of "**Exhaust Remedies**" have been fully satisfied and completed will LICENSEE and its Affiliates then be permitted to make an Assertion against QUALCOMM, any of its Affiliates, or a QUALCOMM Supplier, and then such Assertion will be permitted (a) only with respect to the applicable patents and Components for which LICENSEE or its Affiliate obtained a Final Judgment of patent infringement, and (b) only with respect to the units of Components actually Sold to such QUALCOMM Customer for which LICENSEE or its Affiliate obtained such Final Judgment of patent infringement. Notwithstanding anything to the contrary above and to the maximum extent permitted by applicable law, any rulings or judgments rendered in any Litigation against such QUALCOMM Customer will not be binding on QUALCOMM, any of its Affiliates, or any QUALCOMM Supplier that was not a party to such Litigation.

3.2.4 <u>No Pass-Through Rights</u>. QUALCOMM hereby acknowledges and agrees, on behalf of itself and each of its Affiliates, that (i) no licenses, consents, or authorizations to Sell or use, or Pass-Through Rights under any of LICENSEE's Technically Necessary IPR, have been granted or will arise (whether expressly or by implication, operation of law, or estoppel or otherwise) as a result of the covenants to Exhaust Remedies or not to seek Injunctive Relief or Enhanced Damages undertaken by LICENSEE and its Affiliates in this Section 3.2, and (ii) such covenants are not intended to have any exhaustive effect with respect to the importation, sale, lease, or other disposition of Components.

3.2.5 <u>Transfer of LICENSEE's Technically Necessary IPR; Reorganized Affiliates</u>. If (a) LICENSEE or any of its Affiliates, sells, assigns, transfers, or otherwise provides any right to Assert (by virtue of the grant of any exclusive rights or otherwise) any of LICENSEE's Technically Necessary IPR that is subject to the covenants in Sections 3.2.1 and 3.2.2 (each, a "**Transferred**

QUALCOMM Proprietary & Confidential

No. 00004825

FTC-HUAWEI-0000655
Provisionally Highly Confidential

LICENSEE Patent") to any third party (including a joint venture or a patent pool) (the "**New Patent Owner**"), or (b) any Affiliate of LICENSEE that has any right to Assert any of LICENSEE's Technically Necessary IPR is divested, spun-off, split-up, or otherwise reorganized so that it is no longer at that time an Affiliate of LICENSEE (each, a "**Reorganized Entity**"), and the Reorganized Entity has or retains any right to Assert any Transferred LICENSEE Patent after such divestiture, spin-off, split-up, or other reorganization (the "**Retained LICENSEE Patents**"), then in either instance, LICENSEE shall: (1) notify the New Patent Owner or the Reorganized Entity, as the case may be, of the existence of the covenants granted under LICENSEE's Technically Necessary IPR in Sections 3.2.1 and 3.2.2 and (2) obtain a written acknowledgment from the New Patent Owner or the Reorganized Entity, as the case may be, that such assignment or transfer of LICENSEE's Technically Necessary IPR is subject to the covenants granted in Sections 3.2.1 and 3.2.2, and that, subject to Section 13 of the Subscriber Unit License Agreement, QUALCOMM will continue to have the rights to LICENSEE's Technically Necessary IPR set forth therein. QUALCOMM will be a third party beneficiary of any such written acknowledgment by a New Patent Owner or Reorganized Entity.

4. <u>Termination of Licenses under Included Commercially Necessary IPR</u>. As of the Amendment Effective Date, (a) each reference to "**QUALCOMM's Intellectual Property**" in Section 5.1 of the Subscriber Unit License Agreement is replaced with a reference to "**QUALCOMM's Technically Necessary IPR**," and (b) each reference to "**LICENSEE's Intellectual Property**" in Section 6 of the Subscriber Unit License Agreement is replaced with a reference to "**LICENSEE's Technically Necessary IPR**."

5. <u>Termination of the Subscriber Unit License Agreement for Convenience</u>. Notwithstanding anything to the contrary in Section 5 of the 2013 Amendment, QUALCOMM and LICENSEE hereby agree that (a) each Party's right to terminate the Subscriber Unit License Agreement for convenience pursuant to Section 5 of the 2013 Amendment will be suspended (i.e., may not be exercised by either Party) until July 1, 2019 (the "**Suspension Date**"); and (b) on and after the Suspension Date, if either Party desires to terminate the Subscriber Unit License Agreement pursuant to Section 5 of the 2013 Amendment, then such Party will be required to provide at least six (6) months prior written notice of termination to the other Party, which notice must specify the desired Termination Date (as such term is defined in the 2013 Amendment). For greater clarity, notwithstanding anything to the contrary in Section 5 of the 2013

Amendment, the earliest date on which such a termination notice can be given by either Party is July 1 2019, and the earliest possible Termination Date (if a termination notice is given on July 1, 2019) is January 1, 2020.

6. <u>Clarification of CDMA ASIC Deduction Permitted in Selling Price Definition.</u>



7. <u>No Other Amendment or Modification.</u>  Except as expressly set forth in this Amendment, the Subscriber Unit License Agreement remains in full force and effect without modification. The terms and conditions of this Amendment in conjunction with the Subscriber Unit License Agreement supersede all prior or contemporaneous oral or written understandings between the Parties with respect to the subject matter hereof and constitute the entire agreement of the Parties with respect to such subject matter. The terms and conditions of this Amendment and the Subscriber Unit License Agreement can be modified or amended only by a writing signed by (i) an authorized representative of each of HUAWEI DEVICE and HUAWEI DONGGUAN, and (ii) the CEO of QUALCOMM or an authorized representative of the QUALCOMM Technology Licensing Division. Upon execution hereof, this Amendment will constitute a part of the Subscriber Unit License Agreement.

8

QUALCOMM Proprietary & Confidential

*[Signature page to Amendment to Subscriber Unit License Agreement effective as of July 1, 2014 between the Parties indicated below.]*

IN WITNESS WHEREOF, the Parties have caused this Amendment to be effective as of the Amendment Effective Date.

**QUALCOMM Incorporated**

By: /s/ Eric Reifschneider
Printed Name: Eric Reifschneider
Title: SVP, GM of QTL
Execution Date: December 15, 2014

**Huawei Device Co., Ltd.**

By: /s/ J. Song
Printed Name: Song Liuping
Title: SVP + CLO
Execution Date: December 15, 2014

**Huawei Device (Dongguan) Co., Ltd.**

By: /s/ J. Song
Printed Name: Song Liuping
Title: SVP + CLO
Execution Date: December 15, 2014