# EXHIBIT 4 TO HUAWEI'S MOTION TO SEAL

# (JX-098)

# PUBLIC REDACTED VERSION

## SUBSCRIBER UNIT LICENSE AGREEMENT

This Subscriber Unit License Agreement (the **"Agreement"**) is entered into as of July 1, 2014 (the **"Effective Date"**) between QUALCOMM Incorporated, a Delaware corporation (**"QUALCOMM"**), Huawei Device Co., Ltd., a company organized and existing under the laws of the People's Republic of China (**"HUAWEI DEVICE"**), and Huawei Device (Dongguan) Co., Ltd., a company organized and existing under the laws of the People's Republic of China and a wholly-owned subsidiary of HUAWEI DEVICE (**"HUAWEI DONGGUAN"**), with respect to the following facts:

### RECITALS

WHEREAS, QUALCOMM has developed certain proprietary Wideband Code Division Multiple Access (WCDMA) technology and certain proprietary technology relating to the Long Term Evolution (LTE) wireless telecommunications standard; and QUALCOMM manufactures and sells WCDMA and LTE components and equipment;

WHEREAS, QUALCOMM and HUAWEI DEVICE are parties to a Memorandum of Understanding dated September 28, 2008 (the **"MOU"**) pursuant to which HUAWEI DEVICE was granted certain rights under QUALCOMM's and its Affiliates' Patents to manufacture, use, and sell WCDMA Subscriber Units and WCDMA Modem Cards (as such terms are defined in the MOU); and QUALCOMM was granted certain rights under HUAWEI DEVICE's and its Affiliates' Patents to manufacture, use, and sell WCDMA Components (as such term is defined in the MOU);

WHEREAS, QUALCOMM and HUAWEI DEVICE desire to enter into this Agreement to supersede and replace the MOU in its entirety (except as otherwise expressly provided herein);

WHEREAS, LICENSEE desires to obtain (a) a license under QUALCOMM's Standard Essential Patent Claims to manufacture, use, and sell Complete Terminals, Access Points, PC Card Modems, and External Wireless Modems, and (b) certain rights under QUALCOMM's Standard Essential Patent Claims to manufacture, use, and sell certain Embedded Modules; and QUALCOMM desires to grant such license and other rights in exchange for the royalties and other provisions hereof in accordance with the terms and conditions in this Agreement; and

1

QUALCOMM Proprietary & Confidential

FTC-HUAWEI-0000572
**Provisionally Highly Confidential**

WHEREAS, QUALCOMM desires to obtain certain rights under LICENSEE's Standard Essential Patent Claims to manufacture, use, and sell QUALCOMM Components; and LICENSEE desires to grant such rights to QUALCOMM in accordance with the terms and conditions in this Agreement.

AGREEMENT

NOW THEREFORE, the Parties agree as follows:

1.    CONSTRUCTION AND DEFINITIONS.

Section headings used in this Agreement are inserted for the purpose of convenience only and are not intended to affect the meaning or interpretation of any provision in this Agreement.  Unless expressly stated otherwise, references in this Agreement to "**Sections**" mean sections of this Agreement and include all subsections thereof.  For the purpose of the construction and interpretation of this Agreement, the words "**including**," "**include**," "**includes**," and "**such as**" are not terms of limitation, but rather will be deemed to be followed by the words "without limitation," and the words "**herein**," "**hereof**," and "**hereunder**" refer to this Agreement as a whole.  All references to days (other than business days), months, quarters, and years in this Agreement mean, respectively, calendar days, calendar months, calendar quarters, and calendar years.  References to "**third party**" or "**third parties**" do not mean any Party or any Affiliate of any Party.  Whenever a Party's approval or consent is required under this Agreement, the Party may grant or withhold its consent, or impose conditions on granting its consent, in its absolute discretion without any requirement to act reasonably, unless expressly stated otherwise.  The definitions set forth in APPENDIX A apply to capitalized terms used in this Agreement.

2.    TERM OF AGREEMENT.

This Agreement will take effect on the Effective Date and will continue in full force and effect until December 31, 2019 (the "**Term**"), unless earlier terminated pursuant to the express terms of this Agreement or by express written agreement of the Parties.  Commencing no later than January 1, 2019, the Parties will engage in good faith negotiations regarding the terms and conditions of a new agreement which would take effect on January 1, 2020 and cover the manufacture, use, and Sale of Licensed Products, Embedded Modules, and QUALCOMM Components.  If the Parties are unable to agree upon the terms and conditions of such new agreement on or before December 31, 2019, each Party will have the right, exercisable by written notice to the other Parties any time on or before June

2

FTC-HUAWEI-0000573
Provisionally Highly Confidential

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL
FTC File No. 141-0199

000088

30, 2020, to initiate a binding arbitration proceeding in accordance with Section 18.2 of this Agreement and the sole issue to be decided in such arbitration proceeding will be the disputed terms and conditions of such new agreement (including, if necessary, the period during which such new agreement will be in effect).

3.      QUALCOMM'S LICENSES AND COVENANTS.

3.1     <u>Grant of Licenses from QUALCOMM</u>.  Subject to the terms and conditions of this Agreement, including timely and proper payment in full of all royalties due hereunder, QUALCOMM hereby grants to LICENSEE the licenses set forth in Sections 3.1.1 and 3.1.2, which licenses are subject to the additional terms, conditions and restrictions set forth in this Section 3.1 (including Sections 3.1.3, 3.1.4, 3.1.5, and 3.1.6).   No other, further, or different license from QUALCOMM to LICENSEE (or any other Person) is granted in or implied by this Agreement.  For avoidance of doubt, (a) no license, right, or other authorization is granted by QUALCOMM to make (or have made), import, use, or Sell (or offer to Sell) any PC Card Modems or External Wireless Modems to be used in an Embedded Application, and (b) the license rights granted in this Section 3.1 do not apply to Embedded Modules.  LICENSEE acknowledges that the licenses granted in Sections 3.1.1 and 3.1.2 are, in certain instances, expressly limited or restricted in scope to specific Patents, products and/or fields of use, and LICENSEE agrees that the exclusion of rights or licenses for other Patents, products or fields of use, as the case may be, is not a derogation of the rights expressly granted herein.

3.1.1   <u>License Grant for Branded Licensed Products</u>. QUALCOMM hereby grants to LICENSEE a personal, nontransferable, worldwide, and nonexclusive license, without the right to sublicense except as expressly set forth in Section 3.5, under QUALCOMM's Standard Essential Patent Claims to (a) make (and have made), import, use, and Sell (and offer to Sell) Branded Licensed Products, and (b) make (and have made) Components for such Branded Licensed Products (provided that such Components have been designed exclusively by LICENSEE and the design of such Components is owned and used exclusively by LICENSEE) and import, use, Sell, offer to Sell, and otherwise dispose of such Components but only if such Components are included as part of and incorporated within Branded Licensed Products Sold by LICENSEE or its sublicensed Affiliates or as replacement parts for such Branded Licensed Products previously Sold by LICENSEE.  Except as expressly set forth in clause (b) of this Section 3.1.1 (and clause (c) of Section 3.1.2), no license, right, or other

3

QUALCOMM Proprietary & Confidential

FTC-HUAWEI-0000574
Provisionally Highly Confidential

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL access 01779
FTC File No. 141-0199

000088

authorization is granted by QUALCOMM to make (or have made), import, use, Sell, offer to Sell, or otherwise dispose of any Components.

3.1.2 <u>License Grant for Non-Branded Licensed Products</u>. QUALCOMM hereby grants to LICENSEE a personal, nontransferable, worldwide, and nonexclusive license, without the right to sublicense except as expressly set forth in Section 3.5, under QUALCOMM's Standard Essential Patent Claims to (a) make (and have made), import, and use Non-Branded Licensed Products, (b) Sell (and offer to Sell) such Non-Branded Licensed Products, but only to Unlicensed Customers (i.e., this provision does not grant LICENSEE a license or any rights to Sell or offer to Sell Non-Branded Licensed Products directly or indirectly to Licensed Customers), and (c) make (and have made) Components for such Non-Branded Licensed Products (provided that such Components have been designed exclusively by LICENSEE and the design of such Components is owned and used exclusively by LICENSEE) and import, use, Sell, offer to Sell, and otherwise dispose of such Components but only if such Components are included as part of and incorporated within Non-Branded Licensed Products Sold by LICENSEE or its sublicensed Affiliates to Unlicensed Customers or as replacement parts for such Non-Branded Licensed Products previously Sold by LICENSEE to Unlicensed Customers). Except as expressly set forth in clause (c) of this Section 3.1.2 (and clause (b) of Section 3.1.1), no license, right, or other authorization is granted by QUALCOMM to make (or have made), import, use, Sell, offer to Sell, or otherwise dispose of any Components.

3.1.3 <u>Exhaustive Effect of Licenses</u>. The licenses to Sell set forth in Section 3.1.1 and Section 3.1.2, together with any sublicenses to Sell granted by LICENSEE pursuant to Section 3.5, are intended to be fully exhaustive with respect to the Sale of Licensed Products to the extent of patent exhaustion under U.S. law; provided, however, that (i) patent exhaustion will be deemed to occur regardless of the country or jurisdiction in which such Licensed Products are Sold by LICENSEE or its sublicensed Affiliates, and (ii) if the law of the country or jurisdiction in which such Licensed Products are Sold by LICENSEE or its sublicensed Affiliates provides broader Pass-Through Rights under QUALCOMM's Standard Essential Patent Claims than would otherwise be obtained through the doctrine of patent exhaustion under U.S. law, then such broader Pass-Through Rights under QUALCOMM's Standard Essential Patent Claims will apply to such Sale.

QUALCOMM Proprietary & Confidential

No. 00004745

FTC-HUAWEI-0000575
Provisionally Highly Confidential

000088

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL
FTC File No. 141-0199

3.1.4   Transfer of QUALCOMM's Standard Essential Patent Claims; Reorganized Affiliates.   In the event (a) QUALCOMM or any of its Affiliates assigns, sells, or transfers, or otherwise provides any exclusive right to Assert any of QUALCOMM's Standard Essential Patent Claims (each, a "**Transferred QUALCOMM Patent**") to any third party (including a joint venture or a patent pool) (the "**New QUALCOMM Patent Owner**"), or (b) any Affiliate of QUALCOMM that has any right to Assert any of QUALCOMM's Standard Essential Patents is divested, spun-off, split-up, or otherwise reorganized so that it is no longer at that time an Affiliate of QUALCOMM (each, a "**Reorganized QUALCOMM Entity**"), and the Reorganized QUALCOMM Entity has or retains any right to Assert any QUALCOMM Patent after such divestiture, spin-off, split-up, or other reorganization, then in either instance, QUALCOMM shall: (1) notify the New QUALCOMM Patent Owner or Reorganized QUALCOMM Entity, as the case may be, of the existence of this Agreement and the licenses granted under QUALCOMM's Standard Essential Patent Claims to LICENSEE under Section 3.1; and (2) obtain a written confirmation from the New QUALCOMM Patent Owner or Reorganized QUALCOMM Entity, as the case may be, that such assignment or transfer of QUALCOMM's Standard Essential Patent Claims is subject to the licenses granted to LICENSEE under this Section 3.1 and that subject to (i) LICENSEE's continued fulfillment of its obligations under this Agreement (including the payment of all royalties due to QUALCOMM) and (ii) Section 8 of this Agreement, LICENSEE will continue to have the licenses to QUALCOMM's Standard Essential Patent Claims set forth in this Section 3.1.   LICENSEE will be a third party beneficiary of any such written confirmation from a New QUALCOMM Patent Owner or a Reorganized QUALCOMM Entity.

3.1.5   Termination of LICENSEE's License to Sell Licensed Products to Certain LICENSEE Customers.   If any LICENSEE Customer (an "**Asserting LICENSEE Customer**") either (a) first Asserts (i.e., Asserts other than by way of counterclaim, affirmative defense, or other responsive action following any Assertion initiated by QUALCOMM or any of its Affiliates against such Asserting LICENSEE Customer) any of its Patents or (b) Asserts any of such Asserting LICENSEE Customer's Standard Essential Patent Claims (as such term would be applied if the Asserting LICENSEE Customer was a Party) against (i) QUALCOMM or any of its Affiliates for manufacturing, having manufactured, using, importing, offering to sell, selling, leasing, or otherwise disposing of QUALCOMM Components or (ii) QUALCOMM's or any of its Affiliates' foundries or suppliers for manufacturing QUALCOMM Components for, or selling QUALCOMM Components to, QUALCOMM or any of its Affiliates, then

5

No. 00004746

FTC-HUAWEI-0000576
Provisionally Highly Confidential

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL ~ PX 8579
FTC File No. 141-0199

000088

QUALCOMM may (at its sole discretion) provide written notice (the **"LICENSEE Customer Termination Notice"**) to such Asserting LICENSEE Customer and to LICENSEE of QUALCOMM's intent to terminate LICENSEE's licenses to Sell Licensed Products to such Asserting LICENSEE Customer unless such Asserting LICENSEE Customer withdraws such Assertion within sixty (60) days after the date of such LICENSEE Customer Termination Notice. If the Asserting LICENSEE Customer does not withdraw such Assertion within such sixty (60) day period, then the LICENSEE's licenses to Sell Licensed Products to such Asserting LICENSEE Customer will terminate as of the date of the LICENSEE Customer Termination Notice and such Asserting LICENSEE Customer will thereafter be a **"Terminated LICENSEE Customer"**. If and when QUALCOMM and such Terminated LICENSEE Customer enter into a voluntary settlement or other final resolution of all claims of Patent infringement Asserted by the Terminated LICENSEE Customer against QUALCOMM's and any of its Affiliates' QUALCOMM Components, LICENSEE's licenses to Sell Licensed Products to such Terminated LICENSEE Customer in Section 3.1.1 and Section 3.1.2 of this Agreement will be automatically reinstated effective as of the date of such settlement or other final resolution (subject to any amendments of such license entered into by QUALCOMM and LICENSEE).

      3.1.6   <u>Sales to Licensed Customers</u>.  Although LICENSEE is not licensed by QUALCOMM to Sell Non-Branded Licensed Products directly or indirectly (e.g., through Distributors) to Licensed Customers, nothing in this Agreement is intended to prohibit LICENSEE from making Non-Branded Licensed Products for, or Selling Non-Branded Licensed Products to, a Licensed Customer solely in accordance with the "have made" rights of such Licensed Customer as set forth in such Licensed Customer's LC License Agreement (as defined in the definition of "Licensed Customer" in <u>Appendix A</u>), and no royalty will be payable by LICENSEE hereunder for such Sales.  Notwithstanding the foregoing, nothing herein is intended to modify or amend the terms and conditions of any LC License Agreement, including the scope of any Licensed Customer's "have made" rights or the royalties payable thereunder.

      3.2   <u>QUALCOMM's Covenants not to Assert with Respect to Certain Embedded Modules; No Rights for Other Embedded Modules</u>.

      3.2.1   <u>Covenant not to Assert with Respect to Making (and Having Made) Certain Embedded Modules</u>.  QUALCOMM covenants that it and its Affiliates will not Assert any of QUALCOMM's Standard Essential Patent Claims against LICENSEE or any of LICENSEE's Affiliates for (a) making (or having

6

QUALCOMM Proprietary & Confidential

FTC-HUAWEI-0000577
**Provisionally Highly Confidential**

000088

made) Protected Modules, and (b) making (and having made) Components for such Protected Modules (provided that such Components have been designed exclusively by LICENSEE and the design of such Components is owned and used exclusively by LICENSEE), and importing and using such Components but only if such Components are included as part of and incorporated within Protected Modules made by or for LICENSEE under clause (a) of this Section 3.2.1.

3.2.2   Covenants not to Assert with Respect to the Sale of Certain Embedded Modules.

3.2.2.1   M2M Modules and Telematics Modules Sold to Unlicensed Customers.  With respect to each M2M Module and each Telematics Module Sold by LICENSEE or any of its Affiliates to an Unlicensed Customer, effective upon (and only upon) the latest to occur of (1) the incorporation of such M2M Module into an M2M Device or such Telematics Module into a TCU, (2) LICENSEE's receipt of the applicable Customer Acknowledgment, and (3) QUALCOMM's receipt of payment of the applicable royalty due for such M2M Module or Telematics Module under Section 3.4, QUALCOMM covenants that it and its Affiliates will not Assert any of QUALCOMM's Standard Essential Patent Claims against LICENSEE, any of LICENSEE's Affiliates, or any direct and indirect purchaser of such M2M Module or Telematics Module, as applicable (each a "**Covered Party**") for importing, using, or Selling (or offering to Sell) such M2M Module or Telematics Module.  For avoidance of doubt, if any of (1), (2), or (3) above does not occur with respect to a particular M2M Module or Telematics Module, the covenant in this Section 3.2.2 will not apply to such Embedded Module (even though such Embedded Module is a Protected Module).

3.2.2.2   M2M Modules and Telematics Modules Sold to Licensed Customers.  Although no license or exhaustive covenant is granted to LICENSEE by QUALCOMM to Sell M2M Modules and Telematics Modules directly to Licensed Customers, nothing in this Agreement is intended to prohibit LICENSEE from making M2M Modules and Telematics Modules for, or Selling M2M Modules and Telematics Modules to, a Licensed Customer solely in accordance with the "have made" rights of such Licensed Customer as set forth in such Licensed Customer's LC License Agreement (as defined in the definition of "Licensed Customer" in Appendix A), and no royalty will be payable by LICENSEE hereunder for such Sales.  Notwithstanding the foregoing, nothing herein is intended to modify or amend the terms and conditions of any LC License Agreement, including the scope of any Licensed Customer's "have made" rights or the royalties payable thereunder.

7

No. 00004748

FTC-HUAWEI-0000578
Provisionally Highly Confidential

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL
FTC File No. 141-0199

000088

3.2.2.3   <u>M2M Modules Sold to Distributors</u>.  With respect to each M2M Module Sold by LICENSEE or any of its Affiliates to a Distributor, effective upon (and only upon) the incorporation of such M2M Module into an M2M Device, QUALCOMM covenants that it and its Affiliates will not Assert any of QUALCOMM's Standard Essential Patent Claims against any Covered Party for importing, using, or Selling (or offering to Sell) such M2M Module.   For avoidance of doubt, this covenant does not apply to any Embedded Module that is Sold by LICENSEE or any of its Affiliates to a Distributor and that is not an M2M Module or is not incorporated into an M2M Device (even though such Embedded Module is a Protected Module).

3.2.2.4   <u>Protected Tablet Modules and Protected Laptop Computer Modules Sold to Designated Customers</u>.  With respect to each Protected Tablet Module and each Protected Laptop Computer Module Sold by LICENSEE or any of its Affiliates to a Group A Customer or a Group B Customer, effective upon (and only upon) the latest to occur of (1) the incorporation of such Protected Tablet Module into a Tablet or such Protected Laptop Computer Module into a Laptop Computer (in each case by the Group A Customer or the Group B Customer that purchased such Protected Tablet Module or such Protected Laptop Computer Module directly from LICENSEE or any of its Affiliates), (2) LICENSEE's receipt of the applicable Customer Acknowledgment from such Group A Customer or Group B Customer, <u>and</u> (3) QUALCOMM's receipt of payment of the applicable royalty due for such Protected Tablet Module or such Protected Laptop Computer Module under Section 3.4, QUALCOMM covenants that it and its Affiliates will not Assert any of QUALCOMM's Standard Essential Patent Claims against LICENSEE, any of LICENSEE's Affiliates, or any direct and indirect purchaser of such Protected Tablet Module or such Protected Laptop Computer Module (each a "**Covered Party**") for importing, using, or Selling (or offering to Sell) such Protected Tablet Module or such Protected Laptop Computer Module.  For avoidance of doubt, if any of (1), (2), or (3) above does not occur with respect to a particular Protected Tablet Module or Protected Laptop Computer Module, the covenant in this Section 3.2.2.4 will not apply to such Embedded Module (even though such Embedded Module is a Protected Module).

3.2.2.5   <u>Patent Exhaustion</u>.  With respect to each Covered Party (as defined in either Section 3.2.2.1 or Section 3.2.2.4), the covenants not to Assert in this Section 3.2.2 will apply with respect to, and only with respect to, Assertions that would have been barred by the patent exhaustion doctrine (based on principles of patent exhaustion under U.S. law, except that exhaustion would be deemed to occur regardless of the country or jurisdiction in which such Sale

8

No. 00004749

FTC-HUAWEI-0000579
**Provisionally Highly Confidential**

HUAWEI TECHNOLOGIES CO., LTD.
FTC File No. 141-0199

000088

was made) if QUALCOMM had granted LICENSEE a worldwide exhaustive license under QUALCOMM's Standard Essential Patent Claims to Sell the Embedded Module in question. Notwithstanding the foregoing, the covenants not to Assert in this Section 3.2.2 will not abrogate, restrict, or otherwise affect in any manner any separate license agreement between QUALCOMM and a Covered Party or any rights, obligations, or remedies of any party with respect to any such separate license agreement.

3.2.3   No Covenants for Embedded Modules for Use in Telephones, Tablets, or Laptops (Other than Protected Tablet Modules and Protected Laptop Computer Modules). For avoidance of doubt, and without in any way expanding the scope of the covenant granted in Section 3.2.2.4 or abrogating the conditions set forth therein, the covenants granted by QUALCOMM in Section 3.2.2 do not apply to any Embedded Module (other than Protected Tablet Modules that are incorporated into Tablets and Protected Laptop Computer Modules that are incorporated into Laptop Computers) Sold by LICENSEE or any of its Affiliates (whether to Distributors, to Licensed Customers, or to Unlicensed Customers) that is incorporated into a Telephone, Tablet, or Laptop Computer (each such Embedded Module is referred to herein as an "**Unauthorized Embedded Module**"). (For avoidance of doubt, the term "**Unauthorized Embedded Module**" does not include Protected Tablet Modules that are incorporated into Tablets or Protected Laptop Computer Modules that are incorporated into Laptop Computers.)

3.2.4   No Pass-Through Rights. Notwithstanding anything to the contrary in this Agreement, LICENSEE hereby acknowledges and agrees, on behalf of itself and each of its Affiliates, that (i) no licenses, consents, or authorizations to Sell or use, or Pass-Through Rights under any of QUALCOMM's Standard Essential Patent Claims, have been granted or will arise (whether expressly or by implication, operation of law, or estoppel or otherwise) as a result of the covenant undertaken by QUALCOMM in Section 3.2.1, and (ii) the covenants undertaken by QUALCOMM in this Section 3.2 are not intended to have any exhaustive effect with respect to the importation, sale, lease, or other disposition of any Embedded Modules other than the Embedded Modules to which the covenants in Section 3.2.2 apply. If any purchaser of an Embedded Module made by (or on behalf of) LICENSEE or any of its Affiliates makes any argument, assertion, or claim (in Litigation or otherwise) that is inconsistent with this Section 3.2.4, then at QUALCOMM's written request, LICENSEE shall notify such purchaser in writing that LICENSEE does not and will not agree with or

QUALCOMM Proprietary & Confidential

No. 00004750

FTC-HUAWEI-0000580
**Provisionally Highly Confidential**

support such argument, assertion, or claim and LICENSEE shall provide a copy of such written notice to QUALCOMM.

3.2.5 <u>Sales of Embedded Modules for Other Embedded Applications</u>. If after the Execution Date, LICENSEE intends to offer for Sale or Sell any Embedded Modules (other than M2M Modules, Telematics Modules, Protected Tablet Modules, Protected Laptop Computer Modules, or Unauthorized Embedded Modules) to one or more Unlicensed Customers, then (a) LICENSEE shall promptly notify QUALCOMM in writing of such plans, including a description of the device into which such Embedded Module (each such Embedded Module, a **"New Application Embedded Module"** and each such device, a **"New Application Device"**) will be incorporated by such Unlicensed Customers, (b) QUALCOMM and LICENSEE shall discuss in good faith whether such New Application Embedded Module should be a Protected Module and if so, the minimum royalty (if any) that will apply to Sales of such New Application Embedded Module (it being understood that neither Party will have any obligation to agree that such New Application Embedded Module will be a Protected Module), and (c) unless QUALCOMM and LICENSEE expressly agree otherwise in writing, such New Application Embedded Module will not be a Protected Module and will be treated as an Unauthorized Embedded Module in accordance with Section 3.2.3. For avoidance of doubt, nothing in this Section 3.2.4 either (A) requires any notice to QUALCOMM or any election by QUALCOMM when LICENSEE intends to offer for Sale or Sell any Embedded Module to a Distributor, or (B) changes the fact that every Embedded Module Sold by LICENSEE or any of its Affiliates to a Distributor is a Protected Module.

3.3 <u>Identifying Marks on LICENSEE's M2M Modules and Telematics Modules</u>. LICENSEE shall ensure that each M2M Module and Telematics Module Sold by LICENSEE or any of its Affiliates visibly bears LICENSEE's or its Affiliate's name, trademark, or other unique product identifier selected by LICENSEE or such Affiliate, which indicates that such M2M Module or Telematics Module was either manufactured by, or made by a third party for, LICENSEE or such Affiliate.

3.4 <u>Royalties.</u>



10

No. 00004751

FTC-HUAWEI-0000581
Provisionally Highly Confidential

000088

HUAWEI TECHNOLOGIES CO., LTD.
FTC File No. 141-0199



11

QUALCOMM Proprietary & Confidential

No. 00004752

FTC-HUAWEI-0000582
Provisionally Highly Confidential

000088



12

QUALCOMM Proprietary & Confidential

No. 00004753

FTC-HUAWEI-0000583
Provisionally Highly Confidential

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL
FTC File No. 141-0199

000088



13

QUALCOMM Proprietary & Confidential

No. 00004754

FTC-HUAWEI-0000584
Provisionally Highly Confidential



14

QUALCOMM Proprietary & Confidential

No. 00004755



15

QUALCOMM Proprietary & Confidential

No. 00004756

FTC-HUAWEI-0000586
Provisionally Highly Confidential

000088



3.5    <u>Right to Sublicense Affiliates; Deemed Sublicense of Affiliates Selling Licensed Products.</u>

3.5.1    <u>HUAWEI DEVICE's Right to Sublicense Affiliates.</u> HUAWEI DEVICE has the right to grant sublicenses to its Affiliates with respect to any rights

16

QUALCOMM Proprietary & Confidential

No. 00004757

FTC-HUAWEI-0000587
**Provisionally Highly Confidential**

HUAWEI TECHNOLOGIES CO., LTD.
FTC File No. 141-0199

000088

granted to HUAWEI DEVICE under this Agreement; provided, however, that (a) HUAWEI DEVICE does not have the right to grant a sublicense to any Affiliate that is not a direct or indirect wholly-owned Subsidiary of HUAWEI DEVICE without first notifying QUALCOMM in writing of such proposed sublicense and obtaining QUALCOMM's written consent, and (b) HUAWEI DEVICE shall provide written notice to QUALCOMM of any sublicense granted by HUAWEI DEVICE to a wholly-owned Subsidiary within thirty (30) days following the grant of such sublicense.   Whenever HUAWEI DEVICE requests QUALCOMM's consent for a sublicense to an Affiliate of HUAWEI DEVICE that is not a wholly-owned Subsidiary of HUAWEI DEVICE, QUALCOMM may condition its consent on receipt of such HUAWEI DEVICE Affiliate's written confirmation to QUALCOMM that such Affiliate's Standard Essential Patent Claims are subject to the licenses, covenants, and other provisions in Section 4 of this Agreement.

     3.5.2   <u>Deemed Sublicense of Affiliates Selling Licensed Products</u>. Notwithstanding Section 3.5.1, each direct or indirect wholly-owned Subsidiary of LICENSEE that Sells any Licensed Products will be deemed to be automatically sublicensed under this Agreement effective as of the date that such Affiliate first begins Selling such Licensed Products, regardless of whether such Affiliate has been affirmatively sublicensed by HUAWEI DEVICE in accordance with Section 3.5.1.

     3.5.3   <u>General Terms and Conditions</u>.  Any sublicense granted in accordance with this Section 3.5 will be subject in all respects to the restrictions, exceptions, royalty and other payment obligations, reporting obligations, recordkeeping and audit provisions, termination provisions, and other provisions in this Agreement (collectively, the "**License Terms**").  LICENSEE shall (a) report, directly or through its Affiliates, to QUALCOMM all of the information required in, and in the format of, the quarterly certificate required by Section 9.1 (including the Net Selling Price or Modified Net Selling Price, as applicable) for all Licensed Products and Protected Modules Sold by HUAWEI DEVICE's Affiliates, and (b) pay, or cause to be paid, to QUALCOMM the same royalties on all Licensed Products and Protected Modules Sold by HUAWEI DEVICE's Affiliates as if LICENSEE had Sold such Licensed Products or Protected Modules.  LICENSEE will be responsible and liable to QUALCOMM if any of HUAWEI DEVICE's Affiliates fails to comply with any of the License Terms.  Any sublicense granted by HUAWEI DEVICE to an Affiliate of HUAWEI DEVICE in accordance with Section 3.5.1, and any sublicense deemed to have been granted in accordance with Section 3.5.2, will terminate immediately if such Affiliate ceases to be an Affiliate of HUAWEI DEVICE.  Except as expressly set forth above, LICENSEE does not

17

No. 00004758

FTC-HUAWEI-0000588
**Provisionally Highly Confidential**

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL
FTC File No. 141-0199

000088

have any right to sublicense any of QUALCOMM's Standard Essential Patent Claims or any of the rights conferred upon LICENSEE under this Agreement.

    3.6    <u>Taxes</u>.

        (a)    LICENSEE shall pay all amounts due to QUALCOMM without deduction for any levies or charges of any nature that may be imposed. LICENSEE will be solely responsible for any and all applicable taxes, including LICENSEE's income tax (but not QUALCOMM's income tax), sales and use taxes, value-added tax, service tax, excise tax, consumption tax, customs duties or similar charges or fees ("**Taxes**").

        (b)    Notwithstanding the foregoing, if LICENSEE is required by applicable law to withhold income taxes imposed on QUALCOMM from any payment due to QUALCOMM, then such payment to QUALCOMM will be reduced by the amount of such income tax withholding, and LICENSEE shall, promptly after paying such income taxes to the applicable taxing authority, deliver to QUALCOMM a tax withholding certificate or similar documentation reasonably satisfactory to QUALCOMM evidencing payment of any such income tax. If there is an applicable tax treaty, QUALCOMM will provide LICENSEE with the necessary documentation to submit to the relevant Governmental Authority, and LICENSEE will use its best efforts to obtain beneficial treaty rate. LICENSEE agrees that upon receipt of the necessary documentation, LICENSEE will only withhold at the beneficial treaty rate. LICENSEE will be solely responsible for any penalty, additional tax, interest, or other charge if LICENSEE fails to meet its income tax withholding obligations. The Parties agree that if the applicable tax laws in any jurisdiction change subsequent to the Execution Date and as a result of such change, LICENSEE is required to withhold any taxes other than income taxes from any payments to QUALCOMM under this Agreement, the Parties will work together in good faith to determine the appropriate tax treatment of such additional taxes in a way that is mutually agreeable to the Parties.

    3.7    <u>Conversion to U.S. Dollars</u>.  Royalties must be paid in U.S. dollars. To the extent that the Net Selling Price or Modified Net Selling Price, as applicable, for Licensed Products or Protected Modules Sold by LICENSEE or any of its Affiliates outside of the United States is paid to LICENSEE or any of its Affiliates other than in U.S. dollars, LICENSEE or such Affiliate shall convert the portion of the royalty payable to QUALCOMM from such Net Selling Price or Modified Net Selling Price into U.S. dollars at the official rate of exchange of the currency of the country from which the Net Selling Price or Modified Net Selling Price was paid,

18

QUALCOMM Proprietary & Confidential

FTC-HUAWEI-0000589
**Provisionally Highly Confidential**

as quoted by the U.S. Wall Street Journal (or another agreed-upon source, if not quoted in the U.S. Wall Street Journal) for the last business day of the calendar quarter in which such Licensed Products or Protected Modules were Sold. If the transfer of or the conversion into U.S. dollars is not lawful or possible, the payment of such part of the royalties as is necessary will be made by the deposit thereof, in the currency of the country where the Sale was made on which the royalty was based to the credit and account of QUALCOMM or its nominee in any commercial bank or trust company of QUALCOMM's choice located in that country, prompt notice of which will be given by LICENSEE to QUALCOMM.



19

QUALCOMM Proprietary & Confidential

No. 00004760

FTC-HUAWEI-0000590
Provisionally Highly Confidential

000088



20

QUALCOMM Proprietary & Confidential

No. 00004761

FTC-HUAWEI-0000591
Provisionally Highly Confidential

000088



21

QUALCOMM Proprietary & Confidential

No. 00004762

FTC-HUAWEI-0000592
Provisionally Highly Confidential

000088



## 4.    LICENSEE'S LICENSES AND COVENANTS.

4.1    Grant of License from LICENSEE.    Subject to the terms and conditions of this Agreement, LICENSEE hereby grants a personal, nontransferable, worldwide, nonexclusive, fully-paid license, without the right to sublicense except as set forth in Section 4.2, under LICENSEE's WCDMA Standard Essential Patent Claims, to QUALCOMM to make (and have made), import, use, offer to sell, sell, lease, and otherwise dispose of QUALCOMM Components. The license in this Section 4.1, together with any sublicenses granted by QUALCOMM pursuant to Section 4.2, is intended to be fully exhaustive with respect to the importation, sale, lease, or other disposition of QUALCOMM Components to the extent of patent exhaustion under U.S. law; provided, however, that (i) patent exhaustion will be deemed to occur regardless of the country or jurisdiction in which such QUALCOMM Components are imported, sold, leased, or otherwise disposed of by QUALCOMM, or its sublicensed Affiliates, and (ii) if the law of the country or jurisdiction in which such QUALCOMM Components are imported, sold, leased, or otherwise disposed of provides broader Pass-Through Rights under LICENSEE's WCDMA Standard Essential Patent Claims than would be obtained through the doctrine of patent exhaustion under U.S. law, then such broader Pass-Through Rights will apply to such importation, sale, lease, or other disposition.    No other, further, or different license from LICENSEE to QUALCOMM or any other Person is granted in or implied by this Agreement. QUALCOMM acknowledges that the license granted in this Section 4.1 is, in certain instances, expressly limited or restricted in scope to specific Patents, products and/or fields of use, and QUALCOMM agrees that the exclusion of rights or licenses for other Patents, products or fields of use, as the case may be, is not a derogation of the rights expressly granted herein.

22

No. 00004763

FTC-HUAWEI-0000593
Provisionally Highly Confidential

000088

4.2    Right to Sublicense Affiliates.  QUALCOMM will have the right to grant sublicenses to its Affiliates, with respect to any rights licensed to QUALCOMM under Section 4.1; provided, however, that (a) QUALCOMM does not have the right to grant a sublicense to any Affiliate that is not a direct or indirect wholly-owned Subsidiary of QUALCOMM without first notifying LICENSEE in writing of such proposed sublicense and obtaining LICENSEE's written consent, and (b) QUALCOMM shall provide written notice to LICENSEE of any sublicense granted by QUALCOMM to a wholly-owned Subsidiary within thirty (30) days following the grant of such sublicense.  Whenever QUALCOMM requests LICENSEE's consent for a sublicense to an Affiliate of QUALCOMM that is not a wholly-owned Subsidiary of QUALCOMM, LICENSEE may condition its consent on receipt of such QUALCOMM Affiliate's written confirmation to LICENSEE that such QUALCOMM Affiliate's Standard Essential Patent Claims are subject to the licenses, covenants, and other provisions in Section 3 of this Agreement. Any such sublicense will be subject in all respects to the restrictions, exceptions, termination provisions, and other provisions in this Agreement. QUALCOMM will be responsible and liable to LICENSEE if any of QUALCOMM's Affiliates fails under any such sublicense to honor and comply with any obligations of QUALCOMM as though such obligations were made expressly applicable to the Affiliate.  Any sublicense by QUALCOMM to an Affiliate of QUALCOMM will terminate immediately if such Affiliate ceases to be an Affiliate of QUALCOMM.

4.3    Termination of QUALCOMM's License to Sell QUALCOMM Components to Certain QUALCOMM Customers.  If a QUALCOMM Customer (an "**Asserting QUALCOMM Customer**") either (a) first Asserts (i.e., Asserts other than by way of counterclaim, affirmative defense, or other responsive action following any Assertion initiated by LICENSEE or any of its Affiliates against such Asserting QUALCOMM Customer) any of its Patents or (b) Asserts any of such Asserting QUALCOMM Customer's Standard Essential Patent Claims (as such term would be applied if the Asserting QUALCOMM Customer was a Party) against (i) LICENSEE or any of its Affiliates for making (or having made), using, importing, selling (or offering to sell), leasing, or otherwise disposing of Licensed Products or Embedded Modules, or (ii) LICENSEE's or any of its Affiliates' foundries or suppliers for manufacturing Licensed Products or Embedded Modules for, or Selling Licensed Products or Embedded Modules to, LICENSEE or any of its Affiliates, then LICENSEE may (at its sole discretion) provide written notice (the " **QUALCOMM Customer Termination Notice**") to QUALCOMM and such Asserting QUALCOMM Customer of LICENSEE's intent to terminate QUALCOMM's right to sell QUALCOMM Components to such Asserting

QUALCOMM Proprietary & Confidential

No. 00004764

FTC-HUAWEI-0000594
Provisionally Highly Confidential

000088

QUALCOMM Customer under the license granted in Section 4.1 unless such Asserting QUALCOMM Customer withdraws such first Assertion or other Assertion, as applicable, within sixty (60) days after the date of such QUALCOMM Customer Termination Notice. If the Asserting QUALCOMM Customer does not withdraw such first Assertion or other Assertion, as applicable, within such sixty (60) day period, then, notwithstanding anything to the contrary in this Agreement, QUALCOMM's license to sell QUALCOMM Components to such Asserting QUALCOMM Customer will terminate as of the date of QUALCOMM Customer Termination Notice, and such Asserting QUALCOMM Customer will thereafter be a "**Terminated QUALCOMM Customer.**" If and when LICENSEE and the Terminated QUALCOMM Customer enter into a voluntary settlement or other final resolution of all claims of Patent infringement Asserted by the Terminated QUALCOMM Customer against LICENSEE's and any of its Affiliates' Licensed Products or Embedded Modules, QUALCOMM's license to sell QUALCOMM Components to such Terminated QUALCOMM Customer under Section 4.1 of this Agreement will be automatically reinstated effective as of the date of such settlement or other final resolution (subject to any amendments of such license entered into by QUALCOMM and LICENSEE).

4.4    LICENSEE's Covenants to Exhaust Remedies.

4.4.1    LICENSEE's Covenant to Exhaust Remedies Before Asserting WCDMA Standard Essential Patent Claims Against any QUALCOMM Party or QUALCOMM Supplier for Selling QUALCOMM Components to Terminated QUALCOMM Customers. LICENSEE shall, before LICENSEE or any of its Affiliates Asserts any of LICENSEE's WCDMA Standard Essential Patent Claims against (a) any QUALCOMM Party for Selling (or offering to Sell) QUALCOMM Components to a Terminated QUALCOMM Customer after the date of the Section 4.3 Notice or (b) any QUALCOMM Supplier for making such QUALCOMM Components for, or Selling such QUALCOMM Components to, a QUALCOMM Party, first Exhaust Remedies against such Terminated QUALCOMM Customer with respect to such QUALCOMM Components.

4.4.2    LICENSEE's Covenant to Exhaust Remedies before Asserting LTE Standard Essential Patent Claims or Excluded WCDMA Standard Essential Patent Claims Against any QUALCOMM Party or any QUALCOMM Supplier. LICENSEE shall, before LICENSEE or any of its Affiliates Asserts any of LICENSEE's LTE Standard Essential Patent Claims or Excluded WCDMA Standard Essential Patent Claims (as such term is defined in the definition of "**Standard Essential Patent Claims**" in <u>Appendix A</u>) against (a) any

24

QUALCOMM Proprietary & Confidential

FTC-HUAWEI-0000595
**Provisionally Highly Confidential**

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL
FTC File No. 141-0199

000088

QUALCOMM Party for Selling (or offering to Sell) QUALCOMM Components to any QUALCOMM Customer, or (b) any QUALCOMM Supplier for making such QUALCOMM Components for or Selling such QUALCOMM Components to a QUALCOMM Party, first Exhaust Remedies against such QUALCOMM Customer with respect to such QUALCOMM Components.

4.4.3   Covenant Not to Seek Injunctive Relief or Enhanced Damages.  If LICENSEE has Exhausted Remedies pursuant to Section 4.4.1 or Section 4.4.2 and then LICENSEE or any of its Affiliates makes an Assertion against any QUALCOMM Party or any QUALCOMM Supplier that would otherwise (had LICENSEE not Exhausted Remedies) have been barred by Section 4.4.1 or Section 4.4.2, as applicable, LICENSEE shall not seek (and shall ensure that its Affiliates do not seek) Injunctive Relief or Enhanced Damages with respect to the manufacture, importation, use or Sale of any QUALCOMM Components.

4.4.4   Nature and Effect of Covenants to Exhaust Remedies.  Only after all steps identified in the definition of "**Exhaust Remedies**" have been fully satisfied and completed will LICENSEE and its Affiliates then be permitted to make an Assertion against a QUALCOMM Party or a QUALCOMM Supplier, and then such Assertion will be permitted (a) only with respect to the applicable Patents and QUALCOMM Components for which LICENSEE or its Affiliate obtained a Final Judgment of patent infringement, and (b) only with respect to the units of QUALCOMM Components actually Sold to such QUALCOMM Customer for which LICENSEE or its Affiliate obtained such Final Judgment of patent infringement.   Notwithstanding anything to the contrary above and to the maximum extent permitted by applicable law, any rulings or judgments rendered in any Litigation against such QUALCOMM Customer will not be binding on any QUALCOMM Party or QUALCOMM Supplier that was not a party to such Litigation.

4.4.5   No Pass-Through Rights.  Notwithstanding anything to the contrary in this Agreement, QUALCOMM hereby acknowledges and agrees, on behalf of itself and each of its Affiliates, that (i) no licenses, consents, or authorizations to Sell or use, or Pass-Through Rights under any of LICENSEE's Standard Essential Patent Claims or Excluded WCDMA Standard Essential Patent Claims, have been granted or will arise (whether expressly or by implication, operation of law, or estoppel or otherwise) as a result of any of the covenants to Exhaust Remedies or not to seek Injunctive Relief or Enhanced Damages undertaken by LICENSEE and its Affiliates in Section 4.4, and (ii) such covenants

25

QUALCOMM Proprietary & Confidential

No. 00004766

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL
FTC File No. 141-0199

000088

are not intended to have any exhaustive effect with respect to the importation, sale, lease, or other disposition of QUALCOMM Components.

4.4.6   Transfer of LICENSEE's Standard Essential Patent Claims; Reorganized Affiliates.  If (a) LICENSEE or any of its Affiliates, sells, assigns, transfers, or otherwise provides any right to Assert (by virtue of the grant of any exclusive rights or otherwise) any of LICENSEE's Standard Essential Patent Claims or Excluded WCDMA Standard Essential Patent Claims (each, a "**Transferred LICENSEE Patent**") to any third party (including a joint venture or a patent pool) (the "New LICENSEE Patent Owner"), or (b) any Affiliate of LICENSEE that has any right to Assert any of LICENSEE's Standard Essential Patent Claims or Excluded WCDMA Standard Essential Patent Claims is divested, spun-off, split-up, or otherwise reorganized so that it is no longer at that time an Affiliate of LICENSEE (each, a "**Reorganized LICENSEE Entity**"), and the Reorganized LICENSEE Entity has or retains any right to Assert any LICENSEE Patent after such divestiture, spin-off, split-up, or other reorganization, then in either instance, LICENSEE shall: (1) notify the New LICENSEE Patent Owner or the Reorganized LICENSEE Entity, as the case may be, of the existence of this Agreement and the covenants granted under LICENSEE's Standard Essential Patent Claims and Excluded WCDMA Standard Essential Patent Claims in Section 4.4; and (2) obtain a written confirmation from the New LICENSEE Patent Owner or the Reorganized LICENSEE Entity, as the case may be, that such assignment or transfer of LICENSEE's Standard Essential Patent Claims and/or Excluded WCDMA Standard Essential Patent Claims is subject to the licenses and covenants granted under this Agreement and that, subject to Section 8 of this Agreement, QUALCOMM will continue to have the licenses and rights to LICENSEE's Standard Essential Patent Claims and Excluded WCDMA Standard Essential Patent Claims set forth herein.  QUALCOMM will be a third party beneficiary of any such written confirmation from a New LICENSEE Patent Owner or Reorganized LICENSEE Entity.

5.   STANDSTILL.

5.1   Standstill.  In addition to, and without in any way limiting the licenses and covenants not to Assert set forth in this Agreement, each of QUALCOMM and LICENSEE agrees that it will not (and it will ensure that its Affiliates do not), for a period of five (5) years after the Execution Date (the "**Standstill Period**"), commence any Patent infringement Litigation against the other Party based upon the Assertion of any Other Patent against a Licensed Product or LICENSEE Embedded Module or a QUALCOMM Component;

26

QUALCOMM Proprietary & Confidential

FTC-HUAWEI-0000597
**Provisionally Highly Confidential**

000088

provided that such standstill will not prevent either Party, in Patent infringement Litigation commenced after the expiration of the Standstill Period, from seeking past damages based on alleged Patent infringement occurring during the Standstill Period. This standstill covenant does not constitute or grant any license, consent, or authorization to make, Sell, or use any Licensed Product or LICENSEE Embedded Module or QUALCOMM Component, and no Pass-Through Rights under any Other Patent have been granted or will arise (whether expressly or by implication, operation of law, or estoppel or otherwise) as a result of this standstill covenant.

5.2     Non-Circumvention.  Each Party covenants and agrees that it will not, and will ensure that its Affiliates do not, sell, assign, transfer or otherwise provide any right to Assert (by virtue of the grant of any exclusive rights or otherwise) any of such Party's or its Affiliate's Other Patents to any third party (including a joint venture or a patent pool) for purposes of avoiding or circumventing such Party's obligations under this Section 5. However, nothing in this Section 5.2 will be construed as prohibiting or restricting either Party from entering into any legitimate business transaction (such as a joint venture or spin-out) the primary purpose of which is unrelated to the Assertion of such Party's Other Patents specifically against the products of the other Party that are protected by the standstill covenant in Section 5.1.

6.     INFORMATION.

6.1     Restrictions on Disclosure and Use.  All documentation and technical and business information and intellectual property in whatever form recorded that a Party does not wish to disclose without restriction ("**Information**") will remain the property of the furnishing Party and may be used by the receiving Party only as follows. Such Information (a) will not be reproduced or copied by the receiving Party, in whole or part, except for use as expressly authorized in this Agreement; and (b) will be disclosed by the receiving Party only to employees or agents of the receiving Party with a need to know. Moreover, such Information will be used by the receiving Party only for the purpose of performing under this Agreement or in the exercise of its rights under this Agreement. Unless the furnishing Party consents in this Agreement or otherwise in writing, such Information will be held in strict confidence by the receiving Party. The receiving Party may disclose such Information to other Persons, with the furnishing Party's prior written authorization, but solely to perform acts that this clause expressly authorizes the receiving Party to perform itself, and further provided that such other Person agrees in writing to the same conditions respecting use of

27

QUALCOMM Proprietary & Confidential

FTC-HUAWEI-0000598
Provisionally Highly Confidential

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL
FTC File No. 141-0199

000088

Information in this Section 6.  These restrictions on the use or disclosure of Information will not apply to any Information: (i) that can be proven to have been independently developed by the receiving Party or lawfully received by the receiving Party free of confidentiality obligations to the furnishing Party from another source having the right to so furnish such Information; or (ii) after it has become generally known to the public without breach of this Agreement by the receiving Party; or (iii) that at the time of disclosure to the receiving Party was known to such Party free of confidentiality obligations to the furnishing Party and clearly evidenced by documentation in such Party's possession; or (iv) that the furnishing Party expressly agrees in writing is free of such restrictions; or (v) that is the subject of a subpoena or other legal or administrative demand for disclosure or is disclosed in response to a valid order, or request of a court or other governmental body, but only to the extent of and for the purposes of such demand, order, or request; provided, however, in the case of clause (v), that such receiving Party shall first notify the furnishing Party in writing of the demand, order or request and permit and cooperate with the furnishing Party in seeking an appropriate protective order (or an equivalent mechanism for protecting such Information in the relevant jurisdictions).

6.2     Scope of Information.  Information is subject to this Section 6 only if (a) it is in writing or other tangible form and is clearly marked as proprietary or confidential when disclosed or, (b) if it is not disclosed in tangible form, (i) such Information is clearly identified as confidential or proprietary at the time of disclosure, and (ii) the disclosing Party subsequently provides the receiving Party with a written summary of the content of such oral or other non-tangible disclosure and the summary is clearly marked as proprietary or confidential.

6.3     Furnishing Information to Third Parties.  Nothing herein will be deemed to bar disclosure of Information by a receiving Party to third parties, with written consent of the furnishing Party, if such disclosure is reasonably necessary for enjoyment of the disclosing Party's rights to use intellectual property rights licensed under this Agreement, and provided that each such third party agrees in writing to protect the Information under terms and conditions comparable, in all material respects, to the terms in this Section 6 and the survival terms in Section 13.

7.     DISCLAIMER OF WARRANTIES.

7.1     DISCLAIMER.  NEITHER PARTY MAKES ANY WARRANTIES IN THIS  AGREEMENT,  EXPRESS  OR  IMPLIED,  AS  TO  PRODUCTS,

QUALCOMM Proprietary & Confidential

No. 00004769

FTC-HUAWEI-0000599
Provisionally Highly Confidential

000088

TECHNOLOGY, MATERIALS, SERVICES, INFORMATION, OR OTHER ITEMS IT FURNISHES TO THE OTHER PARTY, INCLUDING ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, OR THAT SUCH ITEMS ARE FREE FROM THE RIGHTFUL CLAIM OF ANY THIRD PARTY, BY WAY OF INFRINGEMENT OR THE LIKE.

7.2 <u>Negation of Representation and Warranties</u>. Nothing in this Agreement will be construed as (a) requiring the filing of any Patent application, the securing of any Patent, or the maintaining of any Patent in force; (b) a warranty or representation by either Party as to the validity or scope of any Patent, copyright, or other intellectual property right; (c) a warranty or representation that any manufacture, sale, lease, use, or importation will be free from infringement of Patents, copyrights, or other intellectual property rights of others; (d) an agreement to bring or prosecute actions or suits against third parties for infringement; (e) an obligation to furnish any technical documentation or manufacturing assistance; or (f) conferring any right to use (in advertising, publicity, or otherwise) any name, trade name, or trademark, or any contraction, abbreviation, or simulation thereof. It will be the sole responsibility of LICENSEE to determine whether it needs licenses or other rights under Patents or other intellectual property of third parties.

8. TERMINATION.

8.1 <u>Termination for Cause by QUALCOMM</u>. QUALCOMM may terminate this Agreement by written notice to LICENSEE if LICENSEE (i) fails to pay when due any royalties or other amounts payable to QUALCOMM under this Agreement, (ii) fails to submit in a timely manner any report required to be submitted to QUALCOMM hereunder or intentionally submits any incomplete or materially inaccurate report to QUALCOMM, (iii) refuses to allow an audit of LICENSEE's Sales of Licensed Products and Embedded Modules as provided in Section 9.3 or fails to comply in any material respect with any other material term or condition of Section 9, or (iv) commits any other material breach of any covenant, representation, warranty, or obligation in or under this Agreement; provided, however, that in the case of any such material breach or failure that is capable of being cured, QUALCOMM will not have a right to terminate this Agreement unless and until LICENSEE has failed to cure such breach or failure within sixty (60) days after QUALCOMM has given LICENSEE written notice thereof.

29

No. 00004770

FTC-HUAWEI-0000600
Provisionally Highly Confidential

8.2     Termination for Cause by LICENSEE.  LICENSEE may terminate this Agreement by written notice to QUALCOMM if QUALCOMM commits any material breach of any material covenant, representation, warranty, or agreement in or under this Agreement; provided, however, that in the case of any such breach that is capable of being cured, LICENSEE will not have a right to terminate this Agreement unless and until QUALCOMM has failed to cure such material breach within sixty (60) days after receipt by QUALCOMM of written notice thereof by LICENSEE.

8.3     Termination in the Event of Bankruptcy, Dissolution, or Liquidation. A Party shall provide written notice to the other Party immediately upon the occurrence of any of the following events (the "**Events**") concerning the first Party or any of its Affiliates:  (a) insolvency, bankruptcy, or liquidation or filing of any application therefor, or other commitment of an affirmative act of insolvency; (b) attachment, execution, or seizure of substantially all of the assets or filing of any application therefor; (c) assignment or transfer of that portion of the business to which this Agreement pertains to a trustee for the benefit of creditors; or (d) termination of its business or dissolution.  If either Party becomes the subject of an Event, the other Party will have the right to terminate this Agreement with immediate effect by giving written notice of termination to the first Party no earlier than sixty (60) days after the Event occurs (unless such Event ceases within such 60-day period).  If an Affiliate of either Party becomes the subject of an Event, all rights granted to such Affiliate under or pursuant to this Agreement (directly or by sublicense or otherwise) will automatically terminate upon the expiration of sixty (60) days after such Event occurs (unless such Event ceases within such 60-day period).

8.4     Rights and Obligations upon Termination or Expiration.

8.4.1   In General.   Upon any termination or expiration of this Agreement, except as otherwise expressly provided in this Section 8.4, (a) all licenses granted by QUALCOMM and LICENSEE hereunder (and all sublicenses granted or deemed to have been granted under such licenses) will terminate, (b) the covenants granted by QUALCOMM in Section 3.2 and by LICENSEE in Section 4.4 will terminate with respect to all activities after the date of expiration or termination (but will remain in effect with respect to activities on or before the date of expiration or termination), (c) the covenants granted by QUALCOMM and HUAWEI in Section 5 will terminate, and (d) all other obligations of each Party hereunder will terminate, except as otherwise expressly provided in this Section 8.4 and except for obligations under provisions that survive the termination or

30

QUALCOMM Proprietary & Confidential

No. 00004771

FTC-HUAWEI-0000601
Provisionally Highly Confidential

expiration of this Agreement pursuant to Section 13. Any termination or expiration of this Agreement will not (i) relieve LICENSEE from its obligation under Section 9 to make a report or from its liability for payment of royalties on Licensed Products and Protected Modules Sold on or prior to the date of such termination or expiration, (ii) prejudice QUALCOMM's right to recover the full amount of any royalties or other sums due or accrued at the time of such termination or expiration, or (iii) prejudice any cause of action or claim accrued or to accrue on account of any breach or default by either Party before the date of such termination or expiration or of any provision or obligation surviving such termination or expiration. Furthermore, any termination or expiration of this Agreement will not prejudice QUALCOMM's right to conduct a final audit of the records of LICENSEE and its Affiliates in accordance with Section 9, provided that any such audit will be commenced within one (1) year after termination or expiration of this Agreement.

8.4.2  <u>Sell-Off Rights</u>.  Notwithstanding anything to the contrary in Section 8.4.1, for a period of ninety (90) days following the termination or expiration of this Agreement (a) LICENSEE will have the right to Sell any Licensed Products, and Protected Modules in inventory at the time of termination or expiration, subject to payment of the royalty applicable to the Sale of such Licensed Products and Protected Modules in accordance with the royalty provisions of this Agreement, and LICENSEE's continued compliance with the other provisions of this Agreement, and (b) the rights granted to QUALCOMM in Section 4.1 and Section 4.4 will apply to any QUALCOMM Components in inventory at the time of termination or expiration, subject to QUALCOMM's compliance with the other applicable provisions of this Agreement.



31

QUALCOMM Proprietary & Confidential

FTC-HUAWEI-0000602
**Provisionally Highly Confidential**

000088



9.     RECORDS, CERTIFICATES, AND AUDITS.

9.1     <u>Records</u>. LICENSEE shall keep (and shall ensure that each of its Affiliates keeps) accurate and complete books and records concerning all Licensed Products and Embedded Modules Sold by LICENSEE and its Affiliates under this Agreement and any Prior Sales. Such books and records will include sales contracts and other documents evidencing LICENSEE's and its Affiliates' Sales of Licensed Products and Embedded Modules (including the number of such products Sold) and the consideration charged by LICENSEE and its Affiliates for such Sales, sales invoices, inventory records, and manufacturing records. Each Affiliate's applicable books and records (together with all supporting information) will be included in the records described above and subject to audit by QUALCOMM as provided in this Section.

9.2     <u>Certificates</u>. LICENSEE shall furnish to QUALCOMM, within thirty (30) days after the end of each quarter, a certificate, in the form attached as <u>Exhibit B</u>, signed by a responsible official of LICENSEE and containing the following information:

> (a)     for each (i) Branded Licensed Product Sold by LICENSEE or any of its Affiliates during such quarter (including any Prepaid Units), (ii) Non-Branded Licensed Product Sold by LICENSEE or any of its Affiliates to an Unlicensed Customer during such quarter (including any Prepaid Units), and (iii) Protected Module Sold by LICENSEE or any of its Affiliates (whether to an Unlicensed Customer, a Distributor, a Group A Customer, or a Group B Customer) during such quarter, the information specified for such products in <u>Exhibit B</u>;

> (b)     for each (i) Non-Branded Licensed Product that is a Complete Terminal ("**Non-Branded Complete Terminal**") Sold by LICENSEE or any of its Affiliates to a Licensed Customer

32

QUALCOMM Proprietary & Confidential

FTC-HUAWEI-0000603
**Provisionally Highly Confidential**

HUAWEI TECHNOLOGIES CO., LTD.
FTC File No. 141-0199

000088

during such quarter, and (ii) Embedded Module (other than Protected Modules) Sold by LICENSEE or any of its Affiliates during such quarter, (A) the name of the purchaser of such product (indicating whether the purchaser is a Licensed Customer, a Distributor, or neither a Licensed Customer nor a Distributor), (B) the product type and model number, and the aggregate quantity of such products Sold to each such purchaser; and

(c)   the aggregate quantity of all Prepaid Units Sold by LICENSEE and its Affiliates during such quarter, the aggregate quantity of all Prepaid Units that are Access Points Sold by LICENSEE and its Affiliates during such quarter, and the aggregate quantity of all Embedded Modules Sold by LICENSEE and its Affiliates to Distributors during such quarter.

9.3    Audits. QUALCOMM may, no more than once each calendar year, conduct an audit of the applicable books and records, including the books and records described in Section 9.1, of LICENSEE and those of its Affiliates that have made, or Sold any Licensed Products or Protected Modules to confirm that LICENSEE has not underpaid the royalties due to QUALCOMM under this Agreement. Such audit will be conducted by an independent third party auditing firm designated by QUALCOMM. QUALCOMM's written notice to LICENSEE of QUALCOMM's intention to audit LICENSEE's and its Affiliates' books and records will include a proposed commencement date for such audit, such proposed commencement date to be no earlier than sixty (60) days after the date of such notice. LICENSEE shall respond in writing to QUALCOMM's notice within thirty (30) days after receipt thereof and either (a) accept the audit commencement date proposed by QUALCOMM or (b) propose an alternate audit commencement date that is no more than ninety (90) days after the audit commencement date proposed by QUALCOMM. Prior to the commencement date of the audit, LICENSEE shall assemble in a single location LICENSEE's and its Affiliates' necessary books and records for such audit to be carried out. LICENSEE shall make available such personnel as are reasonably necessary to answer the reasonable questions of the auditor. The cost of such audit, other than LICENSEE's and its Affiliates' cost of providing their books, records, and personnel, will be borne by QUALCOMM, unless such audit determines that the royalties due hereunder have been underpaid during the period being audited by at least five percent (5%) of the total royalties payable for Sales of Licensed Products and Protected Modules during the period being audited, in which case

33

QUALCOMM Proprietary & Confidential

No. 00004774

FTC-HUAWEI-0000604
**Provisionally Highly Confidential**

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL
FTC File No. 141-0199

000088

LICENSEE shall, in addition to paying the amount of the royalty underpayment plus late payment charges, pay the cost of such audit. LICENSEE shall preserve and maintain (and ensure that its Affiliates preserve and maintain) all books and records required for audit for a period of five (5) years after the calendar quarter for which the books and records apply (but not more than two (2) years following the expiration or termination of this Agreement). QUALCOMM shall treat LICENSEE's and its Affiliates' books and records and other information provided to QUALCOMM or its auditors for purposes of conducting an audit under this Section 9 as LICENSEE's Information in accordance with Section 6.

10.     ASSIGNMENT.

Except as expressly permitted under this Section 10, neither QUALCOMM nor LICENSEE has the right or power to assign this Agreement (or any of its rights or interests under this Agreement), or delegate any of its obligations under this Agreement, without the prior written consent of the other Party. For purposes of this Section 10, any Change in Control of a Party will be deemed to be an assignment of this Agreement by such Party which is subject to this Section 10. Any attempted assignment of this Agreement or any of a Party's rights or interests under this Agreement (other than a deemed assignment resulting from a Change in Control), or any attempted delegation of any of a Party's obligations under this Agreement, without the prior written consent of the other Party will be, at the other Party's option (in its discretion), null, void, and ineffective from inception. In addition, any assignment or attempted assignment of this Agreement or any of a Party's rights or interests under this Agreement (including a deemed assignment resulting from a Change in Control), or any delegation or attempted delegation of any of a Party's obligations under this Agreement, without the prior written consent of the other Party, will give the other Party the right to terminate this Agreement in addition to any other remedies that may be available to it at law or in equity. Notwithstanding the foregoing, (i) QUALCOMM, at its option, may assign its rights under the licenses and covenants granted by LICENSEE in Section 4 of this Agreement and/or the covenants granted by LICENSEE in Section 5, without LICENSEE's consent, to a successor to all or substantially all of QUALCOMM's Components business or assets as a result of a spin-out of such Components business or assets by means of a distribution of shares to QUALCOMM's existing shareholders, and (ii) in the event of a spin-out of all or substantially all of LICENSEE's Licensed Product business or assets by means of a distribution of shares in a new entity (the "**New Entity**") to LICENSEE , then LICENSEE may assign its rights and obligations under this Agreement, without QUALCOMM's consent, to the New Entity. In the event of a spin-out of only

34

QUALCOMM Proprietary & Confidential

FTC-HUAWEI-0000605
Provisionally Highly Confidential

000088

HUAWEI DONGGUAN's Licensed Product business or assets, HUAWEI DONGGUAN will enter into a new agreement with QUALCOMM on substantially the same terms and conditions as this Agreement (including the Term) except that (A) the covenants for Embedded Modules in Section 3.2 of this Agreement will not apply to any such new agreement, and (B) any quantity of Prepaid Units referenced in Section 3.4.3 that have not been Sold as of the date of such new agreement will be allocated between HUAWEI DEVICE and HUAWEI DONGGUAN as they may agree, and such allocation will be reflected in both the new agreement and in an amendment to Section 3.4.3 of this Agreement, provided that notwithstanding such allocation of the Prepaid Units, HUAWEI DEVICE will remain obligated to pay QUALCOMM the full amount of any unpaid portion of the Royalty Prepayment.

11.   EXPORT COMPLIANCE.

Each Party acknowledges and agrees that it will comply with (and will ensure that each of its Affiliates complies with) all applicable United States ("**U.S.**") and foreign export control and economic sanctions laws and regulations in exercising any rights or performing any obligations under this Agreement. LICENSEE further agrees that unless exempt from U.S. regulations as published (i.e., publicly available) information, any technology transferred to LICENSEE pursuant to this Agreement will not be exported or re-exported by LICENSEE or any of its Affiliates to (i) any country that is, at that time, subject to U.S. government embargoes or sanctions as listed in the U.S. Export Administration Regulations ("**EAR**"), 15 C.F.R. §§ 740, Supplement 1, Country Group E 1/2 (as of the Effective Date, the countries subject to such embargoes or sanctions include Cuba, Iran, North Korea, Sudan, and Syria), or (ii) any nationals of any such country described in clause (i) above.

12.   PUBLICITY.

Except as expressly set forth in Section 17, each Party shall submit to the other Party a proposed copy of all advertising wherein the name, trademark, code, specification, or service mark of the other Party is mentioned, and neither Party shall publish or use such advertising without the other Party's prior written approval. Such approval will be granted or withheld as promptly as possible (usually within ten (10) days), and may be withheld only for good cause. No license is granted by LICENSEE to QUALCOMM hereunder with respect to LICENSEE's or its Affiliates' trade name, trademark, code, specification or service mark and no license is granted by QUALCOMM to LICENSEE hereunder with

QUALCOMM Proprietary & Confidential

No. 00004776

FTC-HUAWEI-0000606
Provisionally Highly Confidential

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL
FTC File No. 141-0199

000088

respect to QUALCOMM's or its Affiliates' trade name, trademark, code, specification or service mark. Notwithstanding the foregoing or Section 17, LICENSEE may identify itself as a QUALCOMM 3G and/or 4G licensee or authorized supplier in its marketing materials, website and other public communications, and QUALCOMM may identify LICENSEE as a QUALCOMM 3G and/or 4G licensee or authorized supplier in its marketing materials, website and other public communications. Further, each Party may identify the scope of the licenses granted to LICENSEE hereunder.

13.     SURVIVAL OF OBLIGATIONS.

The provisions in this Agreement that are expressly stated to survive or that, by their nature, would reasonably be expected to continue beyond the expiration or termination of this Agreement (including Section 1 (Construction and Definitions), the last sentence of Section 2 (Term of Agreement), Section 7 (Disclaimer of Warranties), Section 8.4 (Rights and Obligations upon Termination), Section 10 (Assignment) (solely with respect to any surviving rights and obligations), Section 11 (Export Compliance), and Sections 14 (Severability) through Section 27 (Time is of the Essence)) will survive such expiration or termination.

14.     SEVERABILITY.

If any provision in this Agreement is held to be invalid or unenforceable in whole or in part (the "**Invalid Provision**"), the remaining portions of such provision (if any) and the other provisions in this Agreement will remain in effect and the Invalid Provision will remain in effect to the maximum extent allowed by law. If requested by either Party within ninety (90) days after a decision holding the Invalid Provision invalid or unenforceable, the Parties shall promptly negotiate a replacement for the Invalid Provision that provides, to the maximum extent possible, substantially the same rights, benefits and obligations to each Party as did the Invalid Provision. If the Parties are unable to agree on a replacement provision within one hundred eighty (180) days after such decision and if the Invalid Provision is an essential element of this Agreement, then either Party may, at any time after such 180-day period and before the one-year anniversary of such decision, terminate this Agreement effective immediately upon written notice to the other Party.

QUALCOMM Proprietary & Confidential

No. 00004777

FTC-HUAWEI-0000607
**Provisionally Highly Confidential**

HUAWEI TECHNOLOGIES CO., LTD.
QUALCOMM CONFIDENTIAL
FTC File No. 141-0199

000088

15.    NON-WAIVER.

No waiver of the terms and conditions of this Agreement, or the failure of either Party strictly to enforce any such term or condition on one or more occasions, will be construed as a waiver of the same or of any other term or condition of this Agreement on any other occasion.  A waiver of any right or remedy under this Agreement will be binding on a Party only if it is expressly stated in a written document that (a) specifically refers to this Agreement and expressly states such Party's intent to waive one or more rights or remedies under this Agreement, and (b) is signed by (i) an authorized representative of each of HUAWEI DEVICE and HUAWEI DONGGUAN and (ii) the CEO of QUALCOMM or an authorized representative of the QUALCOMM Technology Licensing Division.

16.    NOTICES AND OTHER COMMUNICATIONS.

All notices, requests, demands, consents, agreements, reports, certificates, and other communications required or permitted to be given, or otherwise intended to have legal effect, under this Agreement (a "**Notice**") must be provided in writing and in English and must be sent to the Party to whom it is to be given as provided in this Section 16.  Each Party may change its address for receipt of Notices by providing notice of the new address to the other Party in accordance with this Section.

(a)    Notices to QUALCOMM:  All Notices to be provided by LICENSEE pursuant to Section 9.1 must be sent to QUALCOMM by electronic mail to the following email address:  qtl.royalty@qualcomm.com.   All other Notices to QUALCOMM must be sent by facsimile or by courier service (e.g., DHL, Federal Express), and if sent by facsimile, a copy must be sent by first class mail, postage prepaid, or by courier service.  Each such Notice must be properly addressed as follows (in which case such Notice will be deemed to have been duly given on the date of receipt of such Notice by QUALCOMM):

QUALCOMM Incorporated
5775 Morehouse Drive
San Diego, CA  92121-1714
Facsimile No.:  (858) 658-2500
Telephone No.: (858) 587-1121
Attn:  President

37

QUALCOMM Proprietary & Confidential

FTC-HUAWEI-0000608
Provisionally Highly Confidential

<u>with copies to:</u>

Division Counsel, QUALCOMM Technology Licensing Division (QTL)
President or General Manager, QTL

(b)     <u>Notices to LICENSEE</u>:   All Notices to LICENSEE must be sent by
facsimile or electronic mail or by courier service (e.g., DHL, Federal Express), and
if sent by facsimile or electronic mail, a copy must be sent by first class mail,
postage prepaid, or by courier service.   Each such Notice must be properly
addressed as follows (in which case such Notice will be deemed to have been duly
given on the date of receipt of such Notice by LICENSEE):

| | |
|---|---|
| Huawei Device Co., Ltd. | Huawei Device (Dongguan) Co., Ltd. |
| No.1 Building, Area B | No.1 Building, Area B |
| Huawei Base, Bantian Longgang District | Huawei Base, Bantian Longgang District |
| Shenzhen, 518129, P.R. China | Shenzhen, 518129, P.R. China |
| | |
| Facsimile No.:+86-755-2878-7222 | Facsimile No.: :+86-755-2878-7222 |
| Telephone No.: +86-755-2878-0808 | Telephone No.: +86-755-2878-0808 |
| Email:  Licensing@huawei.com | Email:  Licensing@huawei.com |
| Attn:   Director of IPR Licensing | Attn:_Director of IPR Licensing |

17.     PUBLICATION OF AGREEMENT.

Each Party shall keep this Agreement and its provisions confidential, and
shall not disclose this Agreement or any of its provisions to any third party
without first obtaining the written consent of the other Party.   Notwithstanding
the foregoing, each Party may disclose this Agreement or any of its provisions (a)
as may be required by law, subpoena, or other legal or administrative demand for
disclosure, a valid order or request of a court or other governmental body (but
only to the extent of and for the purposes of such demand, order, or request;
provided, however, that the disclosing Party shall first notify the other Party in
writing of the demand, order, or request and, if so requested by the other Party,
permit and cooperate with the other Party in seeking an appropriate protective
order or an equivalent mechanism for protecting the Agreement), or (b) as
reasonably necessary for performance hereunder. The confidentiality obligations
in this Section 17 do not apply to the existence of this Agreement or the fact that
QUALCOMM and LICENSEE have executed this Agreement, but do apply to the
terms and conditions of this Agreement.  Any press release or other announcement
by either Party concerning the entering into of this Agreement will be subject to
the prior written approval of the other Party, which approval will not be
unreasonably withheld.

38

QUALCOMM Proprietary & Confidential

FTC-HUAWEI-0000609
Provisionally Highly Confidential

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL
FTC File No. 141-0199

000088

18.    APPLICABLE LAW; DISPUTE RESOLUTION.

18.1    <u>Applicable Law</u>. This Agreement will be governed by and construed and enforced in accordance with the laws of England without regard to conflict of laws principles.

18.2    <u>Dispute Resolution</u>. Any dispute, claim, or controversy arising from or relating to this Agreement or the breach or validity hereof (collectively, "**Disputes**") will be finally settled by a confidential arbitration proceeding conducted in accordance with the Rules of Arbitration of the International Chamber of Commerce ("**ICC Rules**"). The number of arbitrators will be three (3), except in the case of a Dispute arising under Section 3.4.3 of this Agreement, in which case the number of arbitrators will be one. Such arbitrators will be appointed in accordance with the ICC Rules. The place of arbitration will be London, England. The language of the arbitration will be English. Except as may be required by law, neither Party may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of both Parties. The arbitrator's award will be final and binding on the Parties. The Parties agree that judgment may be entered upon such an award in any court of competent jurisdiction.

19.    LIMITATION OF LIABILITY.

QUALCOMM WILL NOT BE LIABLE TO LICENSEE FOR ANY INCIDENTAL, CONSEQUENTIAL, OR ANY OTHER INDIRECT LOSS OR DAMAGE ARISING FROM OR RELATING TO THIS AGREEMENT OR ANY ACTIVITIES UNDER THIS AGREEMENT, WHETHER IN AN ACTION FOR BREACH OF CONTRACT, TORT, OR ANY OTHER CAUSE OF ACTION, PROVIDED THAT THE FOREGOING LIMITATION OF LIABILITY WILL NOT APPLY TO ANY CLAIM OF INTELLECTUAL PROPERTY INFRINGEMENT.

HUAWEI DEVICE AND HUAWEI DONGGUAN WILL NOT BE LIABLE TO QUALCOMM FOR ANY INCIDENTAL, CONSEQUENTIAL, OR ANY OTHER INDIRECT LOSS OR DAMAGE ARISING FROM OR RELATING TO THIS AGREEMENT OR ANY ACTIVITIES UNDER THIS AGREEMENT, WHETHER IN AN ACTION FOR BREACH OF CONTRACT, TORT, OR ANY OTHER CAUSE OF ACTION, PROVIDED THAT THE FOREGOING LIMITATION OF LIABILITY WILL NOT APPLY TO ANY CLAIM OF INTELLECTUAL PROPERTY INFRINGEMENT.

QUALCOMM Proprietary & Confidential

No. 00004780

FTC-HUAWEI-0000610
Provisionally Highly Confidential

20.    LATE CHARGE.

QUALCOMM may charge LICENSEE a late charge with respect to any amounts (including license fees, royalties, late charges, and audit fees) that LICENSEE owes hereunder and fails to pay on or before the due date, in an amount equal to the lesser of (a █████████████████████████████████████

████████████████████████████████ Such late charge will be due and payable by LICENSEE at the end of each month following the due date of such past due amount until such past due amount has been paid in full. The Parties agree that such late charges are administrative in nature and are intended to defray QUALCOMM's costs in processing and handling late payments.

21.    ENTIRE AGREEMENT.

The terms and conditions in this Agreement supersede and replace all prior and contemporaneous communications or understandings (whether oral or written, direct or indirect (such as by being a beneficiary of an understanding in accordance with a prior agreement between any third party and one of the Parties to this Agreement)) between the Parties with respect to the subject matter hereof and constitute the entire agreement of the Parties with respect to such subject matter. In particular, except as otherwise provided in Section 25, this Agreement supersedes and replaces the MOU in its entirety. This Agreement can be modified or amended only by a written document that (a) specifically refers to this Agreement and expressly states the Parties' intention to amend or modify it and (b) is signed by (i) an authorized representative of each of HUAWEI DEVICE and HUAWEI DONGGUAN and (ii) the CEO of QUALCOMM or an authorized representative of the QUALCOMM Technology Licensing Division. For the avoidance of doubt, the Parties acknowledge and agree that a communication, whether made electronically or otherwise, containing only the typed name and/or signature block of a Party, and made without the handwritten signature of an authorized representative of a Party within a signature block in such a communication, will not be deemed to be a written document "signed" by a Party for purposes of the immediately preceding sentence.

22.    INDEPENDENT CONTRACTORS.

The relationship between QUALCOMM and LICENSEE is that of independent contractors. QUALCOMM and LICENSEE are not joint venturers, partners, principal and agent, master and servant, or employer and employee, and QUALCOMM and LICENSEE have no relationship other than as independent contracting parties.

40

QUALCOMM Proprietary & Confidential

No. 00004781

FTC-HUAWEI-0000611
Provisionally Highly Confidential

000088

23.   U.S. DOLLARS.

Subject to Section 3.7, all payments to be made hereunder must be made in dollars of the United States of America by wire-transfer of immediately available funds to an account designated by the payee.

24.   OBLIGATIONS OF HUAWEI DEVICE AND HUAWEI DONGGUAN.

Except as otherwise expressly provided in this Agreement, HUAWEI DEVICE and HUAWEI DONGGUAN will be jointly and severally liable to QUALCOMM for (i) the reporting and payment of all amounts due and payable by LICENSEE to QUALCOMM under this Agreement and (ii) the performance of all other obligations and duties of LICENSEE under this Agreement (or any breach of, or failure to perform or comply with, such obligations).

25.   EFFECT OF CERTAIN DETERMINATIONS IN NDRC INVESTIGATION AND SIMILAR INVESTIGATIONS IN OTHER JURISIDCTIONS.

Nothing in this Agreement will be construed as a waiver of any applicable remedies (including any refund of patent royalties previously paid by LICENSEE to QUALCOMM)that may be imposed upon QUALCOMM and made available to LICENSEE by (a) the NDRC as a result of the NDRC's current (and any future) investigation of QUALCOMM, or (b) any Governmental Authority in any jurisdiction as a result of any current or future investigation of QUALCOMM's patent licensing practices by such Governmental Authority.  If the NDRC or such other Governmental Authority issues a decision (or QUALCOMM reaches a resolution with the NDRC or such other Governmental Authority) that (i) requires QUALCOMM to reduce in any way the royalties payable by LICENSEE under this Agreement or to eliminate or modify any of the provisions in Section 4, or (ii) declares null and void any of the provisions of this Agreement, or if the performance by either Party of any provision of this Agreement would violate such decision (or resolution), and such decision (or resolution ) becomes effective (a "**Decision**"), then if LICENSEE so requests promptly following the effective date of such Decision (the "**Decision Effective Date**"), the Parties shall meet and discuss in good faith whether and how to modify the terms of this Agreement or to enter into a new agreement that replaces and supersedes this Agreement, in each case in a manner that complies with such Decision.  If, the Parties have not agreed in writing to retain or modify the terms of this Agreement (or to enter into a new agreement that replaces and supersedes this Agreement within sixty (60) days following the date of the initial meeting between the Parties referenced in the preceding sentence, then each Party will have the right to elect by written notice

41

QUALCOMM Proprietary & Confidential

FTC-HUAWEI-0000612
Provisionally Highly Confidential

HUAWEI TECHNOLOGIES CO., LTD.
FTC File No. 141-0199

000088

to the other Party to terminate this Agreement, effective immediately. If (and only if) this Agreement is terminated pursuant to this Section 25, the MOU will once again take effect and the terms thereof will be binding on QUALCOMM and HUAWEI DEVICE, subject to any modifications thereto required by the Decision that resulted in the termination of this Agreement. Notwithstanding the foregoing, LICENSEE agrees that QUALCOMM did not coerce LICENSEE to grant QUALCOMM rights under LICENSEE's Patents and LICENSEE has received consideration for the grant of such rights.

26.     NO RULE OF STRICT CONSTRUCTION.

Regardless of which Party may have drafted this Agreement, or any provision hereof, no rule of strict construction will be applied against any Party. Each Party represents and warrants that it has been represented by competent legal counsel in negotiating and executing this Agreement.

27.     TIME IS OF THE ESSENCE.

Time is of the essence with respect to the making of any payment, and the submission of any report or certificate, required under this Agreement.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed as of the Execution Date with retroactive effect as of the Effective Date. This Agreement may be signed in counterparts.

**QUALCOMM Incorporated**

By: _Eric Reifschneider_
Printed Name: Eric Reifschneider
Title: SVP, GM of QTL
Execution Date: December 15, 2014

**Huawei Device Co., Ltd**

By: _Song Liuping_
Printed Name: Song Liuping
Title: SVP + CLO
Execution Date: December 15, 2014

**Huawei Device (Dongguan) Co., Ltd.**

By: _Song Liuping_
Printed Name: Song Liuping
Title: SVP + CLO
Execution Date: December 15, 2014

42

QUALCOMM Proprietary & Confidential

No. 00004783

Provisionally Highly Confidential

000088

### APPENDIX A

### DEFINITIONS

"**Access Point**" means a WCDMA Access Point or a LTE Access Point.

"**Affiliate**" means (1) as to QUALCOMM, any present or future Subsidiary of QUALCOMM, but only for so long as the Subsidiary remains a Subsidiary of QUALCOMM, and (2) as to any other Entity (including HUAWEI DEVICE and HUAWEI DONGGUAN), any present or future Parent of such Entity and any present or future Subsidiary of such Entity or its Parent, but only for so long as the Parent remains the Parent of such Entity and the Subsidiary remains a Subsidiary of such Entity or its Parent.

"**ASIC**" means an application-specific integrated circuit.

"**Assert**," "**Asserted**," and "**Assertion**" mean to voluntarily commence or prosecute Patent infringement Litigation or to threaten to do so in writing. For avoidance of doubt, the terms "**Assert**," "**Asserted**," and "**Assertion**" do not include service of a third party subpoena or continued prosecution of Patent infringement Litigation against a third party after such third party impleads a Party or a Party's Affiliate.

"**Branded Licensed Product**" means a Licensed Product Sold by LICENSEE or any of its Affiliates that meets both of the following criteria: (i) the overall design of such Licensed Product was created by or for, and is owned by, LICENSEE or any of its Affiliates; **and** (ii) such Licensed Product is, at the time of Sale to an end user, conspicuously branded with at least one trademark, logo, or brand name owned either by (A) LICENSEE or any of its Affiliates such that an end-user would recognize such Licensed Product as LICENSEE's (or its Affiliate's) product; **or** (B) a Chinese wireless network operator (i.e., China Mobile, China Unicom, or China Telecom) (a "**Chinese Carrier**") or a Mobile Virtual Network Operator (MVNO) that is allocated spectrum by a Chinese Carrier; and, in either case, does not display any trademark, logo, or brand name owned by any other Entity.

"**Branded LTE Device**" means a Branded Licensed Product Sold by LICENSEE or any of its Affiliates that is a LTE Telephone, a LTE Tablet, or a LTE Laptop Computer.

"**Branded Device**" means a Branded LTE Device or a Branded WCDMA Device.

43

QUALCOMM Proprietary & Confidential

FTC-HUAWEI-0000614
**Provisionally Highly Confidential**

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL
FTC File No. 141-0199

000088

**"Branded WCDMA Device"** means a Branded Licensed Product Sold by LICENSEE or any of its Affiliates that is a WCDMA Telephone, a WCDMA Tablet, or a WCDMA Laptop Computer.

**"CDMA2000 Standard"** means (i) the IS-95 digital cellular standard adopted by the Telecommunications Industry Association (TIA), (ii) the cdma2000 digital cellular standards (including MC-CDMA 1xRTT and MC-CDMA 3xRTT) adopted by the International Telecommunication Union (ITU), (iii) the TIA's IS-856 standard (also known as 1xEV-DO), and (iv) any other CDMA standard or any update to any of the foregoing standards that specifies the same physical layer as IS-95, 1xRTT, 3xRTT, or IS-856 if such other standard is adopted by a recognized international standards body anywhere in the world.

**"Change in Control"** of an Entity means the occurrence of any of the following:

(a)    a merger, consolidation, share exchange, tender offer, exchange offer, or similar transaction involving such Entity or any Subsidiary of such Entity after the completion of which the shareholders of such Entity immediately prior to the completion of such merger, consolidation, share exchange, tender offer, exchange offer, or similar transaction beneficially own (within the meaning of Rule 13d-3 promulgated under the Securities Exchange Act of 1934, as amended (the **"United States Exchange Act"**), or comparable successor rules), directly or indirectly, outstanding voting securities representing less than fifty percent (50%) of the combined voting power of either the surviving Entity in such merger, consolidation, share exchange, tender offer, exchange offer, or similar transaction or the Parent of the surviving Entity;

(b)    an acquisition by any Person or "group" (within the meaning of section 13(d) or 14(d) of the United States Exchange Act or any comparable successor provisions), other than any employee benefit plan or related trust sponsored or maintained by such Entity or an Affiliate of such Entity, and other than in a merger, consolidation, share exchange, tender offer, exchange offer, or similar transaction of the type referred to in clause "(a)" of this definition, of beneficial ownership (within the meaning of Rule 13d-3 promulgated under the United States Exchange Act, or comparable successor rules) of outstanding voting securities of such Entity representing at least fifty

QUALCOMM Proprietary & Confidential

No. 00004785

FTC-HUAWEI-0000615
**Provisionally Highly Confidential**

000088

percent (50%) of the combined voting power of such Entity (in a single transaction or series of related transactions); or

(c)    if the individuals who, as of the Effective Date, are members of such Entity's Board of Directors (the "**Incumbent Board**"), cease for any reason to constitute at least fifty percent (50%) of such party's Board of Directors (provided that if the election, or nomination for election by such Entity's shareholders, of any new member of the Board of Directors is approved by a vote of at least fifty percent (50%) of the Incumbent Board, such new member of the Board of Directors will be considered as a member of the Incumbent Board).

"**Communications Device**" means a complete end-user terminal, including a Telephone, personal computer (such as a Laptop Computer), personal digital assistant, facsimile machine, monitoring device, e-reader, multi-media terminal (such as a Tablet), data entry terminal, personal navigation device, or point of sale terminal.  For avoidance of doubt, and by way of example and not by limitation, an Access Point or a Smallcell is not a Communications Device.

"**Complete LTE Terminal**" means a Communications Device that (i) uses inventions or technology covered by any of QUALCOMM's LTE Standard Essential Patent Claims and (ii) is capable of implementing, without any additional equipment or components being attached or connected thereto, wireless communications transmissions in accordance with any wireless air interface standard included in the definition of LTE Standard (but is not capable of implementing wireless communications transmissions in accordance with any WCDMA Standard or any CDMA2000 Standard).  For purposes of this definition, a Communications Device is "capable" of implementing wireless communications transmissions in accordance with any of the foregoing wireless air interface standards if, at the time when such Communications Device is first Sold, such Communications Device contains all physical hardware components necessary to implement such wireless air interface standard, even if the actual use of such standard is disabled through software or by other means, unless LICENSEE can otherwise demonstrate to QUALCOMM's satisfaction that the Communications Device is not capable of implementing such wireless air interface standard.

"**Complete Terminal**" means a Complete WCDMA Terminal or a Complete LTE Terminal.

"**Complete WCDMA Terminal**" means a Communications Device that (i) uses inventions or technology covered by any of  QUALCOMM's WCDMA Standard

45

QUALCOMM Proprietary & Confidential

FTC-HUAWEI-0000616
**Provisionally Highly Confidential**

Essential Patent Claims and (ii) is capable of implementing, without any additional equipment or components being attached or connected thereto, wireless communications transmissions in accordance with any wireless air interface standard included in the definition of WCDMA Standard.

"**Component**" means (i) an ASIC, (ii) a multi-chip module, (iii) any other type of integrated circuit such as system in package (SiP) and system on chip (SoC), and (iv) any other electronic device (such as a fixed gate array, field programmable gate array (FGPA), erasable programmable read only memory (ePROM), microprocessor, diode, transistor, thyristor, or display), including, in each case, any firmware thereon and accompanying or associated software.   For the avoidance of doubt, and by way of example and not by limitation, neither a Licensed Product nor an Embedded Module is a Component.

"**Costs**" means the aggregate of all actual labor, material and other direct costs, expenses and associated burdens, including overheads and general and administrative expenses, marketing and sales expenses, a reasonable amortization of associated research and development expenses, and warranty costs, all as consistently applied in accordance with U.S. generally accepted accounting principles (GAAP); provided, however, that "**Costs**" for purposes of the Net Selling Price definition will not in any event be less than the bill of materials ("**BOM**") cost of a Licensed Product or Embedded Module, in the form in which it is Sold, plus twenty percent (20%) of such BOM cost.

"**Customer Acknowledgment**" means the form of acknowledgment attached as Exhibit A-1, Exhibit A-2, and Exhibit A-3, respectively, to this Agreement, which is to be provided (in a manner that creates a binding and enforceable contractual obligation on the part of the purchaser) by each Unlicensed Customer that purchases M2M Modules or Telematics Modules, and each Group A Customer and each Group B Customer that purchases Protected Tablet Modules and/or Protected Laptop Computer Modules, from LICENSEE or any of its Affiliates.



46

QUALCOMM Proprietary & Confidential

No. 00004787

FTC-HUAWEI-0000617
**Provisionally Highly Confidential**

000088

"**Distributor**" means a Person that purchases or otherwise obtains a Licensed Product or an Embedded Module from LICENSEE or any of its Affiliates for the sole purpose of reselling such Licensed Product or Embedded Module as a standalone product (in the form in which it was Sold or otherwise provided by LICENSEE or its Affiliate to such Person, without having been modified in any way by such Person or anyone else) to an unaffiliated third party buyer solely for incorporation by such unaffiliated third party buyer into a complete device.

"**Effective Date**" has the meaning given to such term in the first paragraph of this Agreement.

"**Embedded Application**" means the use of any Module, including a WCDMA Modem or a LTE Modem, embedded within another product in such a way that such Module is not attachable to or detachable from such other product by an end-user consumer without the use of a tool.

"**Embedded Module**" means a WCDMA Modem or a LTE Modem that is capable of being used to implement wireless communications transmissions in accordance with any WCDMA Standard or LTE Standard, as applicable, when used in an Embedded Application. For clarity, M2M Modules, Modules for incorporation into Tablets or Laptop Computers, and Telematics Modules are examples of Embedded Modules.

"**Enhanced Damages**" means monetary damages that are in addition to those adequate to compensate a Person for patent infringement, such as punitive damages or "increased" damages pursuant to 35 U.S.C. § 284.

"**Entity**" means any corporation (including any non-profit corporation), general partnership, limited partnership, limited liability partnership, joint venture, estate, trust, cooperative, foundation, society, political party, union, company (including any limited liability company or joint stock company), firm, or other enterprise, association, organization, or entity.

"**Execution Date**" means the date on which all of the Parties have executed this Agreement, provided that if the Parties execute this Agreement on different dates, the Execution Date will be the date that the last Party executes this Agreement.

"**Exhaust Remedies**" means, with respect to any alleged infringement of any Patent included in LICENSEE's WCDMA Standard Essential Patent Claims, LICENSEE's Excluded WCDMA Standard Essential Patent Claims, or LICENSEE's LTE Standard Essential Patent Claims, as applicable, by a

QUALCOMM Proprietary & Confidential

No. 00004788

FTC-HUAWEI-0000618
Provisionally Highly Confidential

000088

QUALCOMM Component Sold by QUALCOMM or any of its Affiliates directly or indirectly to any QUALCOMM Customer, the following:

    (a)    LICENSEE or a LICENSEE Affiliate has pursued to completion all Litigation and remedies that are available against such QUALCOMM Customer for infringement by such QUALCOMM Component of such applicable LICENSEE's WCDMA Standard Essential Patent Claims, LICENSEE's Excluded WCDMA Standard Essential Patent Claims, or LICENSEE's LTE Standard Essential Patent Claims;

    (b)    all such Litigation has been prosecuted to a Final Judgment that resulted in a finding of infringement by such QUALCOMM Customer of such applicable LICENSEE's WCDMA Standard Essential Patent Claims, LICENSEE's Excluded WCDMA Standard Essential Patent Claims, or LICENSEE's LTE Standard Essential Patent Claims, and monetary damages have been awarded from such QUALCOMM Customer to LICENSEE or an Affiliate of LICENSEE based on such finding;

    (c)    LICENSEE or a LICENSEE Affiliate has diligently sought to collect such monetary damages, but has been unable to do so; and

    (d)    LICENSEE or a LICENSEE Affiliate has notified QUALCOMM in writing of the foregoing and has in good faith negotiated a settlement of such Final Judgment with QUALCOMM, or, at QUALCOMM's discretion, its Affiliate for a period of at least one hundred eighty (180) days after obtaining such Final Judgment, without reaching agreement on a settlement.

"**ExpressCard Standard**" means the ExpressCard Standard (Release 1.0) adopted by the Personal Computer Memory Card International Association and maintained by the USB Implementers Forum, Inc., and updates thereto issued by the USB Implementers Forum, Inc. or its successor.

QUALCOMM Proprietary & Confidential

No. 00004789

FTC-HUAWEI-0000619
**Provisionally Highly Confidential**

000088

"**External Wireless Modem**" means a Restricted Modem that (i) is not designed for use in an Embedded Application; (ii) is neither used nor Sold for use in an Embedded Application; (iii) is designed, packaged, and Sold as an end-user consumer product solely for external use and coupling to a Communications Device by an end-user consumer, wherein such coupling is accomplished via either (a) a cable or other external physical connector attachable to and detachable from such Communications Device by an end-user consumer without the use of a tool, or (b) a wireless personal network interface (e.g., Bluetooth); (iv) when connected to a Communications Device, remains separated from such Communications Device by a visible distance and space at all times so that the Communications Device and such Restricted Modem remain separate and distinct products (i.e., the two products would not be handled, viewed as, or deemed to be a single or complete integrated product by an end-user consumer); and (v) is not capable of initiating or receiving wireless communications transmissions in accordance with any wireless air interface standard included in the definition of WCDMA Standard or LTE Standard, as applicable, without being attached to a Communications Device

"**Final Judgment**" means a judgment that terminates the Litigation and that either (a) is not subject to further appeal (including both appeals as of right and procedures such as a writ of certiorari) or (b) is not appealed by the party who lost the argument in the Litigation and for which the time to appeal has expired.

"**Governmental Authority**" means any: (a) nation, principality, state, commonwealth, province, territory, county, municipality, district, or other governmental jurisdiction of any nature; (b) federal, state, local, municipal, foreign, or other government; (c) governmental or quasi-governmental authority of any nature (including any governmental division, subdivision, department, agency, bureau, branch, office, commission, council, board, instrumentality, officer, official, representative, organization, unit, body, or Entity and any court or other tribunal); (d) multi-national governmental organization or body; or (e) Entity or body exercising, or entitled to exercise, any executive, legislative, judicial, administrative, regulatory, police, military, or taxing authority.

"**Group A Customer**" means each of the Entities identified on Exhibit C-1, but in each case only for the period of time beginning on the Effective Date and ending on the earlier of (a) December 31, 2017 or (b) the date on which such Entity (or any Affiliate of or successor to such Entity) both (1) is or has become a Licensed Customer with respect to Tablets and/or Laptop Computers and (2) waives or has waived any contractual right to indemnification that such Entity may have had

49

No. 00004790

FTC-HUAWEI-0000620
Provisionally Highly Confidential

against LICENSEE with respect to royalties payable to QUALCOMM for licensed Tablets and/or licensed Laptop Computers (or such indemnification rights have expired or been terminated).  For avoidance of doubt, after December 31, 2017, there will be no Group A Customers.

**"Group B Customer"** means each of the Entities identified on Exhibit C-2, but in each case only for the period of time beginning on the Effective Date and ending on December 31, 2015.  For avoidance of doubt, after December 31, 2015, there will be no Group B Customers.

**"GSM Standard"** means the wireless air interface and/or communications protocol described in the GSM specifications developed by the Conference of European Posts and Telecommunication Administration (CEPT), European Telecommunications Standards Institute (ETSI) and/or Third Generation Partnership Project (3GPP), which specifications include the General Packet Radio Service (GPRS) and Enhanced Data GSM Environment (EDGE) specifications, all of which have been adopted by ETSI, Telecommunications Industry Association (TIA), and/or the International Telecommunications Union (ITU).   For the avoidance of doubt, the term **"GSM Standard"** does not include any WCDMA Standard or any LTE Standard.

**"Infotainment System"** means an electronic device (or a combination of electronic devices) that, individually or collectively, (i) incorporates or is integrated with a complete WWAN module, (ii) is capable of being used to implement wireless communications transmissions in accordance with any 3G or 4G wireless air interface standard, and (iii) is designed to provide one or more of the following functions to the end-user using such wireless communications transmissions when installed in a car, truck, or other vehicle: navigation assistance, traffic information, audio entertainment, video entertainment, and/or digital media playback.

**"Injunctive Relief"** means an equitable form of remedy (such as an injunction or an exclusion order, as opposed to an award of money or other financial consideration) that is sought based on an Assertion and would require a Person to discontinue its sale of products that would infringe a Patent that is the subject of such Assertion.

**"Laptop Computer"** means a LTE Laptop Computer or a WCDMA Laptop Computer.

50

QUALCOMM Proprietary & Confidential

FTC-HUAWEI-0000621
**Provisionally Highly Confidential**

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL
FTC File No. 141-0199

000088

"**Laptop Computer Module**" means a Restricted Modem that is Sold by LICENSEE or any of its Affiliates for use solely when permanently incorporated into a Laptop Computer.

"**Licensed Customer**" means, as determined separately for each Non-Branded Licensed Product or Embedded Module Sold by LICENSEE or any of its Affiliates, (i) (A) in the case of a Non-Branded Licensed Product, an Entity that has entered into (or uses a third party contract manufacturer (other than LICENSEE) that has entered into) a license agreement with QUALCOMM that grants such Entity (or its third party contract manufacturer) a royalty-bearing license under any of QUALCOMM's Standard Essential Patent Claims to sell such Non-Branded Licensed Product, or (B) in the case of an Embedded Module, an Entity that has entered into (or uses a third party contract manufacturer (other than LICENSEE) that has entered into) a license agreement with QUALCOMM that grants such Entity (or its third party contract manufacturer) a royalty-bearing license under any of QUALCOMM's Standard Essential Patent Claims to sell the M2M Device, TCU, or other type of complete product into which such Embedded Module is incorporated (each such license agreement between QUALCOMM and a Licensed Customer referred to in this clause (i) is hereinafter referred to as a "**LC License Agreement**"); (ii) any Affiliate of any such Entity referred to in clause (i) above; and (iii) any Person (such as a Distributor) that resells such Non-Branded Licensed Product or Embedded Module (without having incorporated it into a larger product) to any Entity referred to in clause (i) or (ii) above, but only with respect to that Non-Branded Licensed Product or Embedded Module.

"**Licensed Product**" means a WCDMA Licensed Product or an LTE Licensed Product.

"**LICENSEE**" means, collectively, (a) HUAWEI DEVICE and (b) solely for as long as HUAWEI DONGGUAN remains an Affiliate of HUAWEI DEVICE, HUAWEI DONGGUAN.

"**LICENSEE Customer**" means any direct or indirect customer of LICENSEE or any of its Affiliates, and such customer's Affiliates, in each case, that purchases or uses Licensed Products.

"**Litigation**" means any procedure for the resolution of a controversy in any jurisdiction in the world, whether created by a claim, a counterclaim, or otherwise, in the broadest sense, in whatever form, administrative, judicial, arbitral, or otherwise, and the filing of a complaint with any Governmental Authority (including any proceeding in the United States International Trade Commission).

51

QUALCOMM Proprietary & Confidential

No. 00004792

FTC-HUAWEI-0000622
**Provisionally Highly Confidential**

HUAWEI TECHNOLOGIES CO., LTD.
2010 PEIA
FTC File No. 141-0199

000088

"**LTE**" means Long Term Evolution.

"**LTE Access Point**" means a complete device that (i) uses inventions or technology covered by any of QUALCOMM's LTE Standard Essential Patent Claims; (ii) connects to LTE network infrastructure equipment over a LTE wireless network utilizing a wireless air interface included in the definition of LTE Standard (but not any wireless air interface standard included in the definition of WCDMA Standard or CDMA2000 Standard), whether through a LTE Modem embedded into such complete device or otherwise; (iii) does not incorporate a speaker or keypad; (iv) does not enable end user initiation or reception of a LTE voice call or data transmission (other than certain operator and/or device requested status information) without connection to a Communications Device, wherein such connection may be made by a physical connection (such as wire or optical fiber), or by a wireless connection (such as an IEEE 802.11 wireless local area network) that does not use a Wireless Wide Area Network Air Interface; (v) when electronically connected to a Communications Device, is not physically attached to such Communications Device, such that a visible gap is maintained between such Communication Device and the LTE Access Point at all times and the Communications Device and the LTE Access Point would not be handled, viewed as, or deemed to be a single or complete integrated product by an end-user; and (vi) is capable of supporting multiple simultaneous users.

"**LTE Laptop Computer**" means a Complete LTE Terminal that (i) is designed primarily for use as a personal computer; (ii) includes a physical keyboard with a minimum of twenty-six (26) keys that is not removable by the end-user from the device; (iii) has a non-foldable screen with a screen size of at least seven (7) inches diagonal (or across its largest dimension); (iv) weighs at least twelve (12) ounces; and (v) includes a tracking/pointing stick, touch screen, rollerball or touchpad to move the cursor.  For clarity, neither a Telephone nor a Tablet is a LTE Laptop Computer.

"**LTE Licensed Product**" means each of the following:  (i) a LTE Access Point, (ii) a LTE Modem (excluding any LTE Modem that is an Embedded Module), (iii) a LTE Laptop Computer, (iv) a LTE Tablet, (v) a LTE Telephone, and (vi) a New Terminal Product that is a Complete LTE Terminal.

"**LTE Modem**" means a Module that (i) uses inventions or technology covered by any of QUALCOMM's LTE Standard Essential Patent Claims, and (ii) solely when embedded in, coupled with, or connected to a Communications Device, an Access Point, a Smallcell, an M2M Device, or a TCU installed in a Permitted Vehicle, is

QUALCOMM Proprietary & Confidential

No. 00004793

FTC-HUAWEI-0000623
**Provisionally Highly Confidential**

000088

capable of being used to implement wireless communications transmissions in accordance with any wireless air interface standard included in the definition of LTE Standard (but is not capable of implementing wireless communications transmissions in accordance with any WCDMA Standard or CDMA2000 Standard). A LTE Modem must contain, at a minimum, a PCBA with multiple individually packaged Components mounted on such PCBA, along with circuitry capable of permitting a Communications Device, an Access Point, a Smallcell, an M2M Device, or a TCU installed in a Permitted Vehicle to perform **any** of the following functions: LTE and/or LTE reverse link modulation and LTE and/or LTE forward link demodulation, LTE and/or LTE baseband processing, or protocol stack messaging; provided that a LTE Modem cannot be capable of initiating or receiving wireless communications transmissions in accordance with any wireless air interface standard included in the definition of LTE Standard without being embedded in, coupled with, or connected to a Communications Device, an Access Point, a Smallcell, an M2M Device, or a TCU installed in a Permitted Vehicle. For purposes of Section 3.4 (Calculation and Payment of Royalties), a LTE Modem for use with a Communications Device, an Access Point, a Smallcell, an M2M Device, or a TCU installed in a Permitted Vehicle includes a complete Module and all attachments required to enable the Communications Device, Access Point, Smallcell, M2M Device, or TCU installed in a Permitted Vehicle to transmit and/or receive wireless communications transmissions when such LTE Modem is embedded in, coupled with, or connected to such Communications Device, Access Point, Smallcell, M2M Device, or TCU installed in a Permitted Vehicle.

"**LTE Standard**" means the 3GPP Standard (Release 8) adopted and maintained by the 3rd Generation Partnership Project, and updates and subsequent releases thereto (including LTE-FDD, LTE-TDD, LTE-Advanced, LTE-U, and any updates and/or revisions to any of the foregoing) or any other standard adopted by an internationally recognized standards body that is derived from or based on such 3GPP Standard. For avoidance of doubt, the term "**LTE Standard**" excludes any fifth generation (5G) wireless telecommunications network air interface standard.

"**LTE Standard Essential Patent Claims**" means the Standard Essential Patent Claims of a Party and its Affiliates that are essential (as such term is defined in the definition of "**Standard Essential Patent Claim**s") to any LTE Standard.

"**LTE Tablet**" means a Complete LTE Terminal that meets all of the following criteria: (i) has one or more touchscreen displays at least one of which has a display size of at least seven (7) inches diagonal (or across the display's largest dimension); (ii) includes a virtual keyboard with a minimum of twenty-six (26) keys; (iii)

QUALCOMM Proprietary & Confidential

No. 00004794

FTC-HUAWEI-0000624
Provisionally Highly Confidential

HUAWEI TECHNOLOGIES CO., LTD.
FTC File No. 141-0199

000088

weighs at least twelve (12) ounces; and (iv) the voice capabilities of such device (if any) are marketed as ancillary to its computing capabilities.   Notwithstanding anything to the contrary above, any product marketed as a telephone or a laptop or notebook computer is not a LTE Tablet.

"**LTE Telephone**" means a Complete LTE Terminal that is capable of providing telephone service and that is marketed as a "feature phone," "smartphone," "cellular phone," "fixed wireless phone," or any other type of mobile or wireless telephone.

"**M2M Device**" means a complete device or item of equipment that is designed for use, and sold for use, as (i) a utility meter or automatic utility meter reader; (ii) a vending machine; (iii) a cargo container; (iv) an ATM machine or a fixed or portable device the primary purpose of which is to facilitate the initiation, transmission, and processing of electronic payments (i.e., point of sale) transactions; (v) a remote monitoring automation and control system; (vi) a digital billboard or other digital signage; (vii) a portable health care monitoring device or medical apparatus used to treat a medical condition (e.g., defibrillator); (viii) an alarm system or security system; or (ix) a portable tracking device that is primarily utilized to track people, pets, livestock, wildlife, or goods; provided that, in each case, (A) such device is not capable of providing a wireless hotspot for other subscriber devices by means of WCDMA or LTE-based technology or other wireless technology, and (B) such device either (1) is data only (i.e., does not support two-way voice communications and does not provide or incorporate any direct connectors and/or pins which are dedicated for audio input/output or a microphone or a means of interfacing a microphone (whether by wire or wireless connection) to such device), or (2) is capable of transmitting and receiving two-way voice communications only to and from a maximum of five (5) pre-programmed telephone numbers that can be altered only in a set-up mode), and further provided that such device is not (and is not marketed as) a Telephone or a Tablet.

"**M2M Module**" means a Restricted Modem that is Sold by LICENSEE or any of its Affiliates for use solely when permanently incorporated into a M2M Device.

"**Module**" means a complete module, modem card, or other electronic assembly (including a PCBA).

54

QUALCOMM Proprietary & Confidential

No. 00004795

FTC-HUAWEI-0000625
**Provisionally Highly Confidential**

000088

"**NDRC**" means China's National Development and Reform Commission.

"**Net Selling Price**," with respect to each Licensed Product and Protected Module Sold by LICENSEE or any of its Affiliates, means one of the following, whichever is applicable:

(a)     When Sold by LICENSEE or any of its Affiliates to an Unaffiliated Purchaser, the Net Selling Price will be the Selling Price charged by LICENSEE or its Affiliate for such Licensed Product or Protected Module Sold to such Unaffiliated Purchaser; provided that notwithstanding the foregoing, with respect to Licensed Products or Protected Modules Sold to an Unaffiliated Purchaser for use on a WCDMA, or LTE network operated by LICENSEE, an Affiliate of LICENSEE, or a Related Carrier (such Unaffiliated Purchaser, an "**Applicable Unaffiliated Purchaser**"), the Net Selling Price for each such Licensed Product or Protected Module will be no less than the greater of (1) the Selling Price charged by LICENSEE or its Affiliate for such Licensed Product or Protected Module Sold to such Applicable Unaffiliated Purchaser, or (2) the average Net Selling Price charged during the same or most recent calendar quarter by LICENSEE and its Affiliates for substantial quantities of equivalent Licensed Products or Protected Modules (or if substantial quantities of equivalent Licensed Products or Protected Modules, have not been Sold during such calendar quarters, substantial quantities of substantially equivalent Licensed Products or Protected Modules) Sold by LICENSEE and its Affiliates to Unaffiliated Purchasers (other than those Sold to Applicable Unaffiliated Purchasers), or (3) if substantial quantities of equivalent or substantially equivalent Licensed Products or Protected Modules have not been Sold in accordance with clause (2) above during such calendar quarters, the Costs to LICENSEE or its Affiliate to produce (or otherwise acquire) such Licensed Product or Protected Module ▉ or

(b)     When Sold by LICENSEE or any of its Affiliates to a Related Carrier or to a Person that is not an Unaffiliated Purchaser (in either case, a "**Related Buyer**"), the Net Selling Price will be the Selling Price (as such term would be applied if the Related Buyer was LICENSEE) charged by the final vendee Related Buyer upon resale by the final vendee Related Buyer of such Licensed Product or Protected Module to an Unaffiliated Purchaser but in no event will the Net Selling Price be less than the greater of (1) the Selling Price charged by LICENSEE or its Affiliate for such Licensed Product or Protected Module Sold to such Related Buyer, or (2) the average Net Selling Price charged during the same or most recent calendar quarter by LICENSEE and its Affiliates for substantial quantities of equivalent Licensed Products or Protected Modules (or if substantial quantities of

55

QUALCOMM Proprietary & Confidential

FTC-HUAWEI-0000626
**Provisionally Highly Confidential**

HUAWEI TECHNOLOGIES CO., LTD.
FTC File No. 141-0199

000088

equivalent Licensed Products or Protected Modules have not been Sold during such calendar quarters, substantial quantities of substantially equivalent Licensed Products or Protected Modules) Sold by LICENSEE and its Affiliates to Unaffiliated Purchasers (other than those Sold to Applicable Unaffiliated Purchasers), or (3) if substantial quantities of equivalent or substantially equivalent Licensed Products or Protected Modules have not been Sold to an Unaffiliated Purchaser by LICENSEE and its Affiliates in accordance with clause (2) above during such calendar quarters, the Costs to LICENSEE or its Affiliate to produce (or otherwise acquire) such Licensed Product or Protected Module ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ of such Costs; or

(c)     When retained by LICENSEE or any of its Affiliates for its own use or lease, or when Sold by LICENSEE or any of its Affiliates to a Related Buyer for its own use or lease (excluding in each instance, Licensed Products or Protected Modules used by LICENSEE, its Affiliate, or such Related Buyer, as applicable, solely for internal research and development or testing purposes), the Net Selling Price will be the greater of (1) the average Net Selling Price charged during the same or most recent calendar quarter by LICENSEE and its Affiliates for substantial quantities of equivalent Licensed Products or Protected Modules (or if substantial quantities of equivalent Licensed Products or Protected Modules have not been Sold during such calendar quarters, substantial quantities of substantially equivalent Licensed Products or Protected Modules) Sold by LICENSEE and its Affiliates to Unaffiliated Purchasers (other than those Sold to Applicable Unaffiliated Purchasers), or (2) if substantial quantities of equivalent or substantially equivalent Licensed Products or Protected Modules have not been Sold to Unaffiliated Purchasers by LICENSEE and its Affiliates in accordance with clause (1) above during such calendar quarters, the Costs to LICENSEE or its Affiliate to produce (or otherwise acquire) such Licensed Product or Protected Module ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

For greater clarity, a WCDMA Licensed Product or Protected Module that is a WCDMA Modem cannot be equivalent or substantially equivalent to a LTE Licensed Product or Protected Module that is a LTE Modem, and vice versa.

"**New Terminal Product**" means (a) any Complete WCDMA Terminal that is not a Telephone, a Tablet, or a Laptop Computer and (b) any Complete LTE Terminal that is not a Telephone, a Tablet, or a Laptop Computer.

"**Non-Branded Licensed Product**" means any Licensed Product that is not a Branded Licensed Product.

56

QUALCOMM Proprietary & Confidential

No. 00004797

FTC-HUAWEI-0000627
**Provisionally Highly Confidential**

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL
FTC File No. 141-0199

000088

"**Other Patent**" means each Patent claim that a Party or any of its Affiliates has a right to Assert and that does not constitute a Standard Essential Patent Claim.

"**Parent**" of an Entity means any Person that owns or controls, directly or indirectly, (i) more than fifty percent (50%) of the voting power held by the shares or other securities of such Entity entitled to vote for election of directors (or other managing authority) of such Entity, or (ii) if such Entity does not have outstanding shares or securities, more than fifty percent (50%) of the equity interests in such Entity, but only for so long as such ownership or control referenced in clause (i) or (ii) above exists.

"**Party**" individually means QUALCOMM, HUAWEI DEVICE, or HUAWEI DONGGUAN; and "**Parties**" collectively means QUALCOMM, HUAWEI DEVICE, and HUAWEI DONGGUAN. For purposes of Sections 12 (Publicity), 14 (Severability), 15 (Non-Waiver), 18 (Applicable Law; Dispute Resolution), and 25 (Effect of Certain Determinations in NDRC Investigation and Similar Investigations in Other Jurisdictions), HUAWEI DEVICE and HUAWEI DONGGUAN will be considered one and the same Party.

"**Pass-Through Rights**" means, with respect to the Patents licensed under this Agreement, the right or ability for a licensee to pass on to a customer in each jurisdiction those explicit license, implied license, and patent exhaustion rights that the customer would receive as a matter of law in such jurisdiction under a licensor's licensed patents as to a licensed product purchased from the licensee.

"**Patent**" means any patent or patent application issued or applied for anywhere in the world, including utility models, but excluding any design patent.

"**PCBA**" means a printed circuit board assembly.

"**PC Card Modem**" means a Restricted Modem that:

    (1)   is not designed for use in an Embedded Application;

    (2)   is not used, or Sold for use, in an Embedded Application;

    (3)   is designed, packaged, and Sold as an end-user consumer product that (a) is for use solely with a Communications Device and (b) is attachable to and detachable from such Communications Device by the end-user consumer without the use of a tool; and

57

No. 00004798

FTC-HUAWEI-0000628
Provisionally Highly Confidential

(4)   connects to a Communications Device by:

    (a)   complying with the physical specifications for (i) Type I, Type II and/or Type III cards as defined in the PC Card Standard or (ii) ExpressCard/54 or ExpressCard/34 cards as defined in the ExpressCard Standard provided that each such Type I, Type II and/or Type III card or ExpressCard/54 or ExpressCard/34 also includes an integrated antenna; <u>or</u>

    (b)   integrating either a Series A connector or a Series B connector that complies, in either case, with the physical specifications set forth in Figure 6-9 and Figure 6-10, respectively, of the USB Standard and that is used to attach such Restricted Modem to a Communications Device via a USB port, provided that such Restricted Modem has at least one physical dimension (length, width, or height) of greater than 25 millimeters and includes an integrated antenna.

**"PC Card Standard"** means the PC Card Standard (including Releases 1.0, 2.0, 2.1, 5.0, and 8.0) adopted by the Personal Computer Memory Card International Association and maintained by the USB Implementers Forum, Inc., and updates thereto issued by the USB Implementers Forum, Inc. or its successor.

**"Permitted Vehicle"** means an automobile (commercial or personal), a truck, or a bus.

**"Person"** means any individual, Entity, or Governmental Authority.

**"Protected Laptop Computer Module"** means a Laptop Computer Module that is a Protected Module.

**"Protected Module"** means (a) any Embedded Module that is Sold by LICENSEE or any Affiliate of LICENSEE to a Distributor, (b) any M2M Module or Telematics Module that is Sold by LICENSEE or any Affiliate of LICENSEE to an Unlicensed Customer, and (c) any Tablet Module or Laptop Computer Module that is Sold by LICENSEE or any of its Affiliates to a Group A Customer (during the period of time that it is a Group A Customer) or a Group B Customer (during the period of time that it is a Group B Customer).

**"Protected Tablet Module"** means a Tablet Module that is a Protected Module.

QUALCOMM Proprietary & Confidential

No. 00004799

FTC-HUAWEI-0000629
**Provisionally Highly Confidential**

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL
FTC File No. 141-0199

000088

"**QUALCOMM Component**" means a Component that (a) is designed or developed exclusively by or for QUALCOMM or any of its Affiliates based on a design that is owned solely by QUALCOMM or its Affiliate (it being understood that QUALCOMM or its Affiliate may incorporate into any such Component portions that are (i) Semiconductor IP designed or owned by its foundries and (ii) Semiconductor IP licensed or acquired from a third party, in each case, as long as the overall design of the Component is owned exclusively by QUALCOMM or its Affiliate); (b) is marketed or sold under the trademark, brand name, logo, or other indicia of QUALCOMM or its Affiliate (it being understood that such trademark, brand name, logo, or other indicia need not be affixed on a Component in order for the requirement in this clause (b) to be met); and (c) is Sold for use in a Licensed Product or an Embedded Module.

"**QUALCOMM Customer**" means any direct or indirect customer of QUALCOMM or any of its Affiliates and each of such customer's Affiliates, in each case, that purchases QUALCOMM Components directly or indirectly from QUALCOMM or any of its Affiliates or uses such purchased QUALCOMM Components (on a standalone basis or as incorporated into or combined with other products or services).

"**QUALCOMM Party**" means QUALCOMM and each of its Affiliates.

"**QUALCOMM Supplier**" means any Entity that makes (or has made) any QUALCOMM Component for any QUALCOMM Party.

"**Related Carrier**" means a wireless communications system operator (i) that owns or controls, either directly or indirectly, a Significant Interest in LICENSEE, (ii) a Significant Interest of which is owned or controlled, either directly or indirectly, by LICENSEE, or (iii) a Significant Interest of which is owned or controlled, either directly or indirectly, by another Person that also owns or controls, either directly or indirectly, a Significant Interest in LICENSEE.

"**Restricted LTE Modem**" means a LTE Modem that contains circuitry capable of permitting a Communications Device, an Access Point, a Smallcell, an M2M Device, or a TCU installed in a Permitted Vehicle to perform **all** of the following functions: LTE reverse link modulation and LTE forward link demodulation, LTE baseband processing, and protocol stack messaging.

"**Restricted Modem**" means a Restricted WCDMA Modem or a Restricted LTE Modem.

QUALCOMM Proprietary & Confidential

No. 00004800

FTC-HUAWEI-0000630
**Provisionally Highly Confidential**

"**Restricted WCDMA Modem**" means a WCDMA Modem that contains circuitry capable of permitting a Communications Device, an Access Point, a Smallcell, an M2M Device, or a TCU installed in a Permitted Vehicle to perform **all** of the following functions: WCDMA reverse link modulation and WCDMA forward link demodulation, WCDMA baseband processing, RF filtering, upconversion, downconversion, RF shielding, and protocol stack messaging.

"**Selling Price**" means, with respect to each Licensed Product and Protected Module Sold by LICENSEE or any of its Affiliates, (a) the gross selling price charged by LICENSEE or its Affiliate for such Licensed Product or Protected Module and (b) the value of other consideration paid or otherwise provided to LICENSEE or its Affiliate in connection with the Sale of such Licensed Product or Protected Module (including (i) any charges, fees, or reimbursement of expenses for recurring or non-recurring design, engineering, or tooling services or acquisition expenses, and (ii) the value of consignment parts, firmware, software, or licenses provided by LICENSEE's or its Affiliate's customer or any other third party to use software or firmware for incorporation in the Licensed Product or Protected Module), in each case, in the form in which such Licensed Product or Protected Module is Sold (whether or not assembled and without excluding therefrom the price or cost of any Components, subassemblies, firmware, or software included with such Licensed Product or Protected Module), deducting therefrom only the following items actually incurred upon the Sale and delivery of such Licensed Product or Protected Module to the extent actually included and paid by LICENSEE's or its Affiliate's customer in the Sale price of each such Licensed Product or Protected Module and properly documented (to QUALCOMM's reasonable satisfaction) by LICENSEE or its Affiliate: (i) costs of packing materials used by LICENSEE or its Affiliate in packing the complete Licensed Product or Protected Module for shipment to LICENSEE's or its Affiliate's customer; (ii) costs of insurance and transportation to ship the complete Licensed Product or Protected Module to LICENSEE's or its Affiliate's customer; (iii) import, export, excise, sales, and value added taxes and custom duties levied or imposed directly upon the Sale of such Licensed Product or Protected Module that LICENSEE or its Affiliate remits to the government body levying or imposing such taxes or duties; and (iv) customary trade discounts and returns actually credited and refunded; provided, in no case will the cumulative total amount of the deductions in clauses (i) and (ii) result in more than a five percent (5%) reduction from the gross selling price. For the avoidance of doubt, if the Licensed Product is battery powered, then the Selling Price must include the cost of a battery. If a Licensed Product or Protected Module is Sold bundled with Other Products (as defined below), then the Selling Price for such bundled Licensed

60

QUALCOMM Proprietary & Confidential

FTC-HUAWEI-0000631
**Provisionally Highly Confidential**

Product or Protected Module will be the average Selling Price charged by LICENSEE and its Affiliates to Unaffiliated Purchasers (other than Applicable Unaffiliated Purchasers) for other Licensed Products or Protected Modules of the same or substantially the same quality and quantity that were Sold without being bundled with Other Products in the same calendar quarter in which such Sales were made (or if no such Sales were made in the same calendar quarter, in the most recent calendar quarter in which such Sales were made).  If no such unbundled Licensed Products or Protected Modules have been Sold to an Unaffiliated Purchaser in the same or any previous calendar quarter, then (1) LICENSEE or its Affiliate shall include the price and other consideration charged for the bundled Sale of the Other Products together with the bundled Licensed Product or Protected Module in calculating the gross selling price of such bundled Licensed Product or Protected Module as determined in accordance with the preceding portions of this definition, and (2) in addition to the deductions permitted by clauses (i) through (iii) above, LICENSEE or its Affiliate may deduct from the gross selling price of such bundled Licensed Product or Protected Module only the actual direct manufacturing costs (or, if acquired from a third party, the actual price paid by LICENSEE or its Affiliate to such third party) of the Other Products (or, if the Other Product is a service, LICENSEE's or its Affiliate's actual direct expenses for providing such service), provided that in no event will the Selling Price be less than the fair market value of the bundled Licensed Product or Protected Module.  For the purpose of this definition, with respect to Licensed Products or Protected Modules Sold by LICENSEE or any of its Affiliates, "**Other Products**" means products or services that are separate and distinct from such Licensed Products or Protected Modules and "**Sold bundled with**" means either that such Licensed Products or Protected Module and one or more Other Products are sold together (whether or not for a single price) or that substantially the same quantity of Licensed Products or Protected Module and Other Products are sold to the same customer (whether or not such products and/or services are sold together or with separate pricing).  For avoidance of doubt and without limitation, the term "**Other Products**" (1) includes a second battery, a charger, a headset, or a separate optional attachment such as an MP3 player or PDA that is capable of being connected to a Licensed Product by the end-user; and (2) does not include any hardware, software, or other item that is incorporated into, installed on, or otherwise physically integrated with the Licensed Product or Protected Module at the time of Sale.

"**Semiconductor IP**" means any reusable (whether or not it is actually reused) unit of logic, cell, or chip design, including IP blocks, IP cores (such as both hard cores and soft cores), standard cell libraries, embedded memories and logic cores (as

61

QUALCOMM Proprietary & Confidential

FTC-HUAWEI-0000632
**Provisionally Highly Confidential**

000088

such terms are commonly understood in the semiconductor industry), and any portion of the packaging of a Component.

"**Significant Interest**" means the direct or indirect ownership or control of (i) more than twenty-five percent (25%) of the voting power held by the shares or other securities of an Entity entitled to vote for election of directors (or other managing authority) of such Entity or (ii) if such Entity does not have outstanding shares or securities, more than twenty-five percent (25%) of the equity interests in such Entity.

"**Smallcell**" means a complete device that (i) uses inventions or technology covered by any of QUALCOMM's Standard Essential Patent Claims; (ii) transmits wireless communications to and from Licensed Products using a wireless air interface standard included in the definition of WCDMA Standard or LTE Standard; (iii) connects to WCDMA or LTE infrastructure equipment (typically via a broadband connection such as cable or DSL) for the purpose of providing backhaul transport to and from a WCDMA or LTE wireless network of such wireless communications transmissions referred to in clause (ii) above; (iv) is designed primarily for, and Sold for use in, residential, enterprise, and/or commercial premises (such as offices, schools, shopping malls, airports, and stadiums) or is limited in its radiofrequency power output to up to 500mW; and (v) obtains power from a hard wired power source (e.g., an AC outlet, a USB interface). For clarity, a femtocell is a type of Smallcell.

"**Sold**," "**Sale**," and "**Sell**" means put into use, sold, leased, or otherwise transferred, and a Sale will be deemed to have occurred upon first use, shipment, or invoicing, whichever occurs first.

"**Standard Essential Patent Claims**" includes only each claim of any Patent where (i) a Party or any of its Affiliates has the right to license such Patent to the other Party without payment of royalties or any other monetary consideration to any third party unless the other Party agrees to pay, and pays, such royalties or other monetary consideration, and (ii) such Patent claim is essential to the manufacture, use, or sale of Licensed Products or QUALCOMM Components that comply with the specifications of any mandatory or optional portion of at least one of the wireless air interface standards included in the definition of WCDMA Standard or LTE Standard. For the purpose of this definition, a Patent claim is "essential" to a standard if it must be infringed upon in order to comply with any mandatory or optional portion of such standard. Furthermore, if a Patent claim is essential to a WCDMA Standard and is not essential to any LTE Standard and either (i) such

QUALCOMM Proprietary & Confidential

No. 00004803

FTC-HUAWEI-0000633
**Provisionally Highly Confidential**

000088

Patent claim has a priority date after December 31, 2013, or (ii) such Patent claim is acquired or purchased by either Party or any of its Affiliates from a third party, or exclusively licensed by a third party to either Party or any of its Affiliates, after December 31, 2014, then such Patent claim (an "**Excluded WCDMA Standard Essential Patent Claim**") is excluded from the definition of "**Standard Essential Patent Claims**".

"**Subsidiary**" of a Person means any Entity (i) in which the majority (more than fifty percent (50%)) of the voting power held by the shares or other securities entitled to vote for election of directors (or other managing authority) is now or hereafter owned or controlled by such Person, either directly or indirectly, or (ii) that does not have outstanding shares or securities but the majority (more than fifty percent (50%)) of the equity interests in which is now or hereafter owned or controlled by such Person, either directly or indirectly, but only for so long as such ownership or control referenced in clause (i) or (ii) above exists.

"**Tablet**" means a WCDMA Tablet or a LTE Tablet.

"**Tablet Module**" means a Restricted Modem that is Sold by LICENSEE or any of its Affiliates for use solely when permanently incorporated into a Tablet.

"**TD-SCDMA Standard**" means the third generation direct sequence, single carrier TD-CDMA air interface standard which (i) is adopted as an industry standard by the China Communications Standards Association (CCSA), and (ii) has a spreading bandwidth of approximately 1.6 MHz. For clarity, the term "**TD-SCDMA Standard**" does not include TD-CDMA or LTE-TDD.

"**Telematics Control Unit**" or "**TCU**" means an in-vehicle control unit that (i) is designed solely to be installed in a Permitted Vehicle and is so installed; (ii) cannot be removed from the Permitted Vehicle by an end-user of the Permitted Vehicle; and (iii) solely when installed in a Permitted Vehicle, communicates with the Permitted Vehicle's engine control units and GPS satellite and uses a wireless air interface to provide telematics services such as automatic crash notification, roadside assistance services, vehicle tracking, remote door services, navigation assistance, traffic assistance, fleet management, and on-board diagnostics. An Infotainment System is not a TCU.

"**Telematics Module**" means a Restricted Modem that is Sold by LICENSEE or any of its Affiliates for use solely when permanently incorporated into a TCU. For avoidance of doubt, a TCU is not a Telematics Module.

QUALCOMM Proprietary & Confidential

No. 00004804

FTC-HUAWEI-0000634
**Provisionally Highly Confidential**

HUAWEI TECHNOLOGIES CO., LTD.
FTC File No. 141-0199

000088

"**Telephone**" means a WCDMA Telephone or a LTE Telephone.

"**Term**" has the meaning given to such term in Section 2.

"**Unaffiliated Purchaser**" means a Person (i) that does not own or control, either directly or indirectly, a Significant Interest in LICENSEE, (ii) a Significant Interest in which is not owned or controlled, either directly or indirectly, by LICENSEE, and (iii) a Significant Interest in which is not owned or controlled, either directly or indirectly, by a third party that also owns or controls, either directly or indirectly, a Significant Interest in LICENSEE.

"**Unlicensed Customer**" means, (a) as determined separately for each Non-Branded Licensed Product Sold by LICENSEE or any of its Affiliates, any Person (including a Distributor) that is not a Licensed Customer, and (b) as determined separately for each Embedded Module Sold by LICENSEE or any of its Affiliates, any Person (other than a Distributor) that is not a Licensed Customer.   For avoidance of doubt, a Distributor of an Embedded Module is not an Unlicensed Customer for purposes of this Agreement.

"**USB Standard**" means the Universal Serial Bus Specification Revision 2.0, and any updates thereto containing the same requirements regarding minimum physical dimensions, adopted by the USB Implementers Forum, Inc.

"**WCDMA**" means wide band code division multiple access.

"**WCDMA Access Point**" means a complete device that (i) uses inventions or technology covered by any of QUALCOMM's WCDMA Standard Essential Patent Claims; (ii) connects to WCDMA network infrastructure equipment over a WCDMA wireless network utilizing a wireless air interface included in the definition of WCDMA Standard, whether through a WCDMA Modem embedded into such complete device or otherwise; (iii) does not incorporate a speaker or keypad; (iv) does not enable end user initiation or reception of a WCDMA voice call or data transmission (other than certain operator and/or device requested status information) without connection to a Communications Device, wherein such connection may be made by a physical connection (such as wire or optical fiber), or by a wireless connection (such as an IEEE 802.11 wireless local area network) that does not use a Wireless Wide Area Network Air Interface; (v) when electronically connected to a Communications Device, is not physically attached to such Communications Device, such that a visible gap is maintained between such Communication Device and the WCDMA Access Point would not be

QUALCOMM Proprietary & Confidential

No. 00004805

FTC-HUAWEI-0000635
Provisionally Highly Confidential

handled, viewed as, or deemed to be a single or complete integrated product by an end-user; and (vi) is capable of supporting multiple simultaneous users.

"**WCDMA Laptop Computer**" means a Complete WCDMA Terminal that (i) is designed primarily for use as a personal computer; (ii) includes a physical keyboard with a minimum of twenty-six (26) keys that is not removable by the end-user from the device; (iii) has a non-foldable screen with a screen size of at least seven (7) inches diagonal (or across its largest dimension); (iv) weighs at least twelve (12) ounces; and (v) includes a tracking/pointing stick, touch screen, rollerball or touchpad to move the cursor. For clarity, neither a Telephone nor a Tablet is a WCDMA Laptop Computer.

"**WCDMA Licensed Product**" means each of the following: (i) a WCDMA Access Point, (ii) a WCDMA Modem (excluding any WCDMA Modem that is an Embedded Module), (iii) a WCDMA Laptop Computer, (iv) a WCDMA Tablet, (v) a WCDMA Telephone, and (vi) a New Terminal Product that is a Complete WCDMA Terminal.

"**WCDMA Modem**" means a Module that (i) uses inventions or technology covered by any of QUALCOMM's WCDMA Standard Essential Patent Claims, and (ii) solely when embedded in, coupled with, or connected to a Communications Device, an Access Point, a Smallcell, an M2M Device, or a TCU installed in a Permitted Vehicle, is capable of being used to implement wireless communications transmissions in accordance with any wireless air interface standard included in the definition of WCDMA Standard. A WCDMA Modem must contain, at a minimum, a PCBA with multiple individually packaged Components mounted on such PCBA, along with circuitry capable of permitting a Communications Device, an Access Point, a Smallcell, an M2M Device, or a TCU installed in a Permitted Vehicle to perform **any** of the following functions: WCDMA reverse link modulation and forward link demodulation, WCDMA baseband processing, RF filtering, upconversion, downconversion, RF shielding, or protocol stack messaging; provided that a WCDMA Modem cannot be capable of initiating or receiving wireless communications transmissions in accordance with any wireless air interface standard included in the definition of WCDMA Standard without being embedded in, coupled with, or connected to a Communications Device, an Access Point, a Smallcell, an M2M Device, or a TCU installed in a Permitted Vehicle.

"**WCDMA Standard**" means, subject to the exceptions in the next sentence, any wireless air interface standard that implements WCDMA and is adopted as an

65

QUALCOMM Proprietary & Confidential

FTC-HUAWEI-0000636
**Provisionally Highly Confidential**

000088

industry standard by the Telecommunications Industry Association (TIA), the European Telecommunication Standards Institute (ETSI), Japan's Association of Radio Industries and Businesses (ARIB), or any other recognized international standards body. For avoidance of doubt, the term "**WCDMA Standard**" does not include any CDMA2000 Standard, the TD-SCDMA Standard, or any revisions or updates to any such standard.

"**WCDMA Standard Essential Patent Claims**" means the Standard Essential Patent Claims of a Party and its Affiliates that must be necessarily infringed upon for technical reasons in order to be compliant with any mandatory or optional portion of the specifications of any WCDMA Standard.

"**WCDMA Tablet**" means a Complete WCDMA Terminal that meets all of the following criteria: (i) has one or more touchscreen displays at least one of which has a display size of at least seven (7) inches diagonal (or across the display's largest dimension); (ii) includes a virtual keyboard with a minimum of twenty-six (26) keys; (iii) weighs at least twelve (12) ounces; and (iv) the voice capabilities of such device (if any) are marketed as ancillary to its computing capabilities. Notwithstanding anything to the contrary above, any product marketed as a telephone or a laptop or notebook computer is not a WCDMA Tablet.

"**WCDMA Telephone**" means a Complete WCDMA Terminal that is capable of providing telephone service and that is marketed as a "feature phone," "smartphone," "cellular phone," "fixed wireless phone," or any other type of mobile or wireless telephone.

"**Wireless Wide Area Network Air Interface**" means any wide area wireless air interface standard, including GSM, CDMA, TD-SCDMA, Universal Mobile Telecommunications System (UMTS), Wideband Code Division Multiple Access (WCDMA), HSPA, HSDPA, HSUPA, HSPA+, WiMAX, WiBro, IEEE 802.16 (including 802.16e and 802.16m), IEEE 802.20, UMB (formerly known as 1xEV-DO Rev C), LTE (including any FDD mode and any TDD mode of LTE), LTE Advanced, and LTE-U, in each case whether adopted as an industry standard by TIA, ETSI, IEEE, ARIB, or another recognized international standards body or industry consortium such as 3GPP, 3GPP2 or Next Generation Mobile Network (NGMN) consortium, or deployed as a de facto standard by a wireless operator.

66

QUALCOMM Proprietary & Confidential

FTC-HUAWEI-0000637
**Provisionally Highly Confidential**

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL
FTC File No. 141-0199

000088

Exhibit A-1

Customer Acknowledgment for M2M Modules

1. **Customer Acknowledgment of Use Restrictions**: Buyer expressly acknowledges and agrees that the WCDMA and/or LTE modems or modules purchased by Buyer from Seller (collectively, the "**Restricted Products**") (a) may be used by Buyer only for incorporation into M2M Devices as defined in Section 2 below (the "**Use Restrictions**") and not for any other purpose, and (b) may not be resold by Buyer to any third party as a standalone product. Buyer agrees to use the Restricted Products strictly in compliance with the Use Restrictions applicable to such Restricted Products. At Seller's request, Buyer agrees to provide Seller and Seller's licensors (or their representatives) with access to Buyer's books, records, and customer contracts to enable Seller to confirm that Buyer has complied with the terms of this paragraph.

2. **Certain Definitions**. For purpose of Section 1, the following definition will apply:

"**M2M Device**" means a complete device or item of equipment that is designed for use, and sold for use, as (i) a utility meter or automatic utility meter reader, (ii) a vending machine, (iii) a cargo container, (iv) an ATM machine or a fixed or portable device the primary purpose of which is to facilitate the initiation, transmission, and processing of electronic payments (i.e., point of sale) transactions, (v) a remote monitoring automation and control system, (vi) a digital billboard or other digital signage, (vii) a portable health care monitoring device or medical apparatus used to treat a medical condition (e.g., defibrillator), (viii) an alarm system or security system, or (ix) a portable tracking device that is primarily utilized to track people, pets, livestock, wildlife, or goods; provided that, in each case, (A) such device is not capable of providing a wireless hotspot for other subscriber devices by means of WCDMA or LTE-based technology or other wireless technology, and (B) such device either (1) is data only (i.e., does not support two-way voice communications and does not provide or incorporate any direct connectors and/or pins which are dedicated for audio input/output or a microphone or a means of interfacing a microphone (whether by wire or wireless connection) to such device), or (2) is capable of transmitting and receiving two-way voice communications only to and from a maximum of five (5) pre-programmed telephone numbers that can be altered only in a set-up mode, and further provided that such device is not (and is not marketed as) a smartphone or other wireless telephone or a tablet.

1

QUALCOMM Proprietary & Confidential

FTC-HUAWEI-0000638
**Provisionally Highly Confidential**

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL
FTC File No. 141-0199

000088

Exhibit A-2

Customer Acknowledgment for Telematics Modules

1.   **Customer Acknowledgment of Use Restrictions**: Buyer expressly acknowledges and agrees that the WCDMA and/or LTE modems or modules purchased by Buyer from Seller (collectively, the "**Restricted Products**") (a) may be used by Buyer only for incorporation into Telematics Control Units (TCUs) as defined in Section 2 below (the "**Use Restrictions**") and not for any other purpose, and (b) may not be resold by Buyer to any third party as a standalone product.  Buyer agrees to use the Restricted Products strictly in compliance with the Use Restrictions applicable to such Restricted Products.  At Seller's request, Buyer agrees to provide Seller and Seller's licensors (or their representatives) with access to Buyer's books, records, and customer contracts to enable Seller to confirm that Buyer has complied with the terms of this paragraph.

2.   **Certain Definitions.**  For purpose of Section 1, the following definitions will apply:

"**Infotainment System**" means an electronic device (or a combination of electronic devices) that, individually or collectively, (i) incorporates or is integrated with a complete WWAN module, (ii) is capable of being used to implement wireless communications transmissions in accordance with any 3G or 4G wireless air interface standard, and (iii) is designed to provide one or more of the following functions to the end-user using such wireless communications transmissions when installed in a car, truck, or other vehicle: navigation assistance, traffic information, audio entertainment, video entertainment, and/or digital media playback.

"**Permitted Vehicle**" means an automobile (commercial or personal), a truck, or a bus.

"**Telematics Control Unit**" or "**TCU**" means an in-vehicle control unit that (i) is designed solely to be installed in a Permitted Vehicle and is so installed; (ii) cannot be removed from the Permitted Vehicle by an end-user of the Permitted Vehicle; and (iii) solely when installed in a Permitted Vehicle, communicates with the Permitted Vehicle's engine control units and GPS satellite and uses a wireless air interface to provide telematics services such as automatic crash notification, roadside assistance services, vehicle tracking, remote door services, navigation assistance, traffic assistance, fleet management, and on-board diagnostics.  An Infotainment System is not a TCU.

2

QUALCOMM Proprietary & Confidential

No. 00004809

FTC-HUAWEI-0000639
Provisionally Highly Confidential

HUAWEI TECHNOLOGIES CO., LTD.
FTC File No. 141-0199

000088

Exhibit A-3

Customer Acknowledgment for Laptop Computer Modules and Tablet Modules

1.      **Customer Acknowledgment of Use Restrictions:**  Buyer expressly acknowledges and agrees that the WCDMA and/or LTE modems or modules purchased by Buyer from Seller (collectively, the "**Restricted Products**") (a) may be used by Buyer only for incorporation into Laptop Computers or Tablets as defined in Section 2 below (the "**Use Restrictions**") and not for any other purpose, and (b) may not be resold by Buyer to any third party as a standalone product.  Buyer agrees to use the Restricted Products strictly in compliance with the Use Restrictions applicable to such Restricted Products.  At Seller's request, Buyer agrees to provide Seller and Seller's licensors (or their representatives) with access to Buyer's books, records, and customer contracts to enable Seller to confirm that Buyer has complied with the terms of this paragraph.

2.  **Certain Definitions**.  For purpose of Section 1, the following definitions will apply:

"**Laptop Computer**" means a complete WCDMA or LTE terminal that (i) is designed primarily for use as a personal computer; (ii) includes a physical keyboard with a minimum of twenty-six (26) keys that is not removable by the end-user from the device; (iii) has a non-foldable screen with a screen size of at least seven (7) inches diagonal (or across its largest dimension); (iv) weighs at least twelve (12) ounces; and (v) includes a tracking/pointing stick, touch screen, rollerball or touchpad to move the cursor.

"**Tablet**" means a complete WCDMA or LTE terminal that meets all of the following criteria: (i) has one or more touchscreen displays at least one of which has a display size of at least seven (7) inches diagonal (or across the display's largest dimension); (ii) includes a virtual keyboard with a minimum of twenty-six (26) keys; (iii) weighs at least twelve (12) ounces; and (iv) the voice capabilities of such device (if any) are marketed as ancillary to its computing capabilities.

3

QUALCOMM Proprietary & Confidential

No. 00004810

FTC-HUAWEI-0000640
**Provisionally Highly Confidential**

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL
FTC File No. 141-0199

000088

Exhibit B

Form of Royalty Certificate

1

QUALCOMM Proprietary & Confidential

No. 00004811

FTC-HUAWEI-0000641
Provisionally Highly Confidential

No. 00034812

**EXHIBIT B**
**CERTIFICATE**



QUALCOMM Proprietary

000088

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL – 15 U.S.C. § 57b-2
FTC File No. 141-0199

FTC-HUAWEI-0000642
Provisionally Highly Confidential

No. 0005I4813

000088



QUALCOMM Proprietary

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL – 15 U.S.C. § 57b-2
FTC File No. 141-0199

FTC-HUAWEI-0000643
Provisionally Highly Confidential



QUALCOMM Proprietary

No. 0004814

000088

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL – 15 U.S.C. § 57b-2
FTC File No. 141-0199

FTC-HUAWEI-0000644
Provisionally Highly Confidential

No. 0003485

000088



QUALCOMM Proprietary

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL – 15 U.S.C. § 57b-2
FTC File No. 141-0199

FTC-HUAWEI-0000645
Provisionally Highly Confidential

No. 0003A816

000088



QUALCOMM Proprietary

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL – 15 U.S.C. § 57b-2
FTC File No. 141-0199

FTC-HUAWEI-0000646
Provisionally Highly Confidential

No. 00034817

000088



QUALCOMM Proprietary

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL – 15 U.S.C. § 57b-2
FTC File No. 141-0199

FTC-HUAWEI-0000647
Provisionally Highly Confidential

HUAWEI TECHNOLOGIES CO., LTD.
CONFIDENTIAL
FTC File No. 141-0199

000088

Exhibit C-1

Group A Customers



QUALCOMM Proprietary & Confidential

No. 00004818

FTC-HUAWEI-0000648
Provisionally Highly Confidential

HUAWEI TECHNOLOGIES CO., LTD.
FTC File No. 141-0199

000088

Exhibit C-2

Group B Customers



1

QUALCOMM Proprietary & Confidential

No. 00004819

FTC-HUAWEI-0000649
Provisionally Highly Confidential