CRAVATH, SWAINE & MOORE LLP
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
825 Eighth Avenue
New York, New York 10019-7475
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

KEKER, VAN NEST & PETERS LLP
Robert A. Van Nest (SBN 84065)
rvannest@keker.com
Eugene M. Paige (SBN 202849)
epaige@keker.com
Justina K. Sessions (SBN 270914)
jsessions@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Defendant
QUALCOMM INCORPORATED

MORGAN LEWIS & BOCKIUS LLP
Richard S. Taffet (*pro hac vice*)
richard.taffet@morganlewis.com
101 Park Avenue
New York, New York 10178-0060
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

MORGAN LEWIS & BOCKIUS LLP
Willard K. Tom (*pro hac vice*)
willard.tom@morganlewis.com
1111 Pennsylvania Ave. NW
Washington, DC 20004-2541
Telephone: (202) 739-3000
Facsimile: (202) 739-3001

MORGAN LEWIS & BOCKIUS LLP
Geoffrey T. Holtz (SBN 191370)
geoffrey.holtz@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000
Facsimile: (415) 442-1001

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>QUALCOMM INCORPORATED, a Delaware corporation,<br><br>Defendant. | NO. 5:17-CV-00220-LHK-NMC<br><br>**DECLARATION OF ALBERT ST. GEORGE IN SUPPORT OF SEALING PORTIONS OF TRIAL EXHIBITS CX8260, CX0102, CX0103, CX0105, AND JX0116 AND DOCUMENTS DISCLOSED BY THE FTC WITH THE BATES NUMBERS Q2017MDL1_01598957-61 AND Q2017MDL1_01173718-19**<br><br>CTRM: 8, 4th Floor<br><br>JUDGE: Hon. Lucy H. Koh |

I, Albert St. George, declare as follows:

1. I am currently Vice President, IPR Enforcement, Qualcomm Technology Licensing ("QTL"), the division of Qualcomm responsible for Qualcomm's licensing program. I received my Bachelor of Science from St. Cloud State University in 1994 and my MBA from Northwestern University, Kellogg School of Management in 1998. I have been employed by Qualcomm since 2008, and I have worked in QTL since 2011. My current responsibilities include direct negotiations of patent license agreements, as well as licensing operations for the division. I have held my current position since August 2016. Prior to my current position, I was in QTL's business development group from October 2011 to August 2016. I was Vice President, Business Development in Qualcomm MEMs Technology from October 2009 to October 2011, and Vice President, Carrier Relations in Qualcomm Enterprise Services prior to August 2009. Over the course of my employment in QTL, I have acquired personal knowledge of QTL's practices and procedures concerning the maintenance of the confidentiality of its strategic, business, and licensing information.

2. I submit this declaration in support of sealing portions of trial exhibits CX8260 CX0102, CX0103, CX0105, and JX0116, and documents disclosed by the FTC with the bates numbers Q2017MDL1_01598957-61 and Q2017MDL1_01173718-19[1] (the "Documents Sought To Be Sealed").

3. The contents of this declaration are true and correct to the best of my knowledge, information and belief, and are based on my personal knowledge of QTL's policies and practices as they relate to the treatment of confidential information, the materials that were provided to me and reviewed by me, or conversations with other knowledgeable employees of Qualcomm Incorporated ("Qualcomm") and its affiliates. If called upon as a witness in this action, I could and would testify competently thereto.

4. QTL follows a strict practice that requires confidential treatment of all contract negotiations. All such negotiations are undertaken pursuant to non-disclosure agreements, which

---

[1] I am informed by counsel that the documents disclosed by the FTC with the bates numbers Q2017MDL1_01598957-61 and Q2017MDL1_01173718-19 do not appear on the FTC's final exhibit list.

1  provide that all information exchanged and terms discussed during negotiations are to be
2  maintained in confidence by both parties to the negotiations.

3      5.      It is likewise QTL's practice to include in its licensing and other patent
4  agreements, confidentiality obligations that prohibit the disclosure of the agreements themselves
5  or any of their terms, except in limited authorized circumstances.  These confidentiality
6  obligations survive termination of QTL's agreements.

7      6.      It is likewise QTL's practice to require confidential treatment of QTL's internal
8  business analyses, pricing and valuation analyses, strategy and decision-making.  QTL's business
9  analyses, pricing and valuation analyses, strategy and decision-making incorporate highly
10 sensitive and proprietary information and processes that QTL relies upon to pursue its
11 commercial interests.

12     7.      These confidentiality practices are important to QTL and (with respect to
13 agreements and communications with third parties) to counterparties with which QTL contracts
14 for several reasons.  Both QTL and prospective contractual counterparties seek to maintain their
15 negotiations in confidence to afford each the ability to engage in arm's-length commercial
16 bargaining, each bringing to bear their own unique circumstances and business goals without such
17 circumstances and goals being disclosed to their competitors, customers and other actual and
18 potential licensees.

19     8.      The disclosure of QTL's confidential information, such as information contained
20 in licensing negotiations, the terms of its licensing and strategic fund agreements, and QTL's
21 internal business analyses, pricing and valuation analyses, strategies and decision-making could
22 significantly harm QTL's relationships and ability to conduct business with counterparties and
23 prospective counterparties.

24     9.      QTL's confidentiality practices concerning the negotiations and terms of patent,
25 licensing, and other agreements are also consistent with QTL's longstanding confidentiality
26 policy concerning the treatment of information that third parties report to QTL under their patent
27 agreements.  This policy, among other things, obligates QTL employees to maintain in strict
28 confidence all information received from counterparties with which we have contracted, and to

1  refrain from any disclosure of such information, either internally at Qualcomm or externally,
2  except as required to meet Qualcomm's legal reporting and similar obligations.

3      10.    In my experience and to the best of my knowledge, the confidentiality obligations
4  specified above have always been strictly followed at QTL.  I was informed of QTL's practices
5  and policies described herein when I first joined QTL, and I have informed others at QTL of our
6  confidentiality obligations and practices.

7      11.    QTL also goes to great lengths to ensure that confidential information relating to
8  its licensing negotiations, the terms of its licensing and other agreements, and QTL's internal
9  business analyses, pricing and valuation analyses, strategies and decision-making is well
10 protected.  Personnel with access to data storage locations where confidential information is
11 stored and maintained are advised of QTL's practices and policies and are required to
12 acknowledge in writing their awareness of and compliance with QTL's confidentiality policy.
13 The same is true for any QTL personnel who request access to such information and all new QTL
14 employees.

15     12.    In addition, every QTL database and system that contains confidential information
16 is access-restricted and requires login by QTL employees.

17     13.    I have reviewed the information described herein, which is contained in the
18 Documents Sought To Be Sealed to determine whether it includes information that QTL would
19 consider confidential under the practices and policies described above.  Based on this review, I
20 have determined that the Documents Sought To Be Sealed include confidential QTL information.

21     14.    The information in the Documents Sought To Be Sealed reflects the type of
22 information concerning the terms of its licensing agreements that QTL maintains as confidential.
23 The Documents Sought To Be Sealed reveals details about QTL and its contractual and
24 negotiating counterparties that include highly sensitive and proprietary information, including
25 QTL's confidential contractual terms.

26     15.    I have reviewed the following document and have identified the following
27 information in yellow highlighting or red boxes as containing confidential Qualcomm information
28 that Qualcomm has compelling reasons to seal:

**CX8260**

16. Specifically, the following portions of CX8260, which is a string of internal Qualcomm e-mails from December 2006 regarding price negotiations with Apple, reflect confidential pricing terms and pricing negotiations information:

- CX8260-001 to 002: highlighted portions

Qualcomm requests to seal only the portions of this exhibit that reveal information about confidential pricing information and pricing negotiations. This information constitutes Qualcomm trade secrets. Public disclosure of this information would harm Qualcomm and its affiliates by disclosing internal licensing considerations and may unfairly benefit actual and potential third parties with respect to contracting activities of Qualcomm and its affiliates.

**CX0102**

17. Specifically, the following portions of CX0102, which is a summary exhibit titled "Summary of Contract and Contract Licensing Agreements," contain confidential cross-licensing information from actual license agreements:

- CX0102-01 to 035: fifth and sixth columns

Qualcomm requests to seal only the portions of this exhibit that reveal information about confidential cross-licensing information. This information constitutes Qualcomm trade secrets. Public disclosure of this information would harm Qualcomm and its affiliates by disclosing internal licensing considerations and may unfairly benefit actual and potential third parties with respect to contracting activities of Qualcomm and its affiliates.

**CX0103**

18. Specifically, the following portions of CX0103, which is a summary exhibit titled "Revenues and WCDMA units sold under WCDMA and CDMA license agreements signed between OEMs and Qualcomm," contain confidential Qualcomm financial data:

- CX0103-001 to 009: eighth through eleventh columns

Qualcomm requests to seal only the portions of this exhibit that reveal information about confidential Qualcomm financial data. This information constitutes Qualcomm trade secrets.

Public disclosure of this information would harm Qualcomm and its affiliates by disclosing this information to competitors and may unfairly benefit actual and potential competitors with respect to Qualcomm's financial performance.

**CX0105**

19.     Specifically, the following portions of CX0105, which is a summary exhibit titled "Qualcomm and VIA CDMA units sold under CDMA license agreements between OEMs and Qualcomm," contain a confidential competitive analysis of CDMA units sold by Qualcomm versus its competitor:

- CX0105-001 to 002: fourth through tenth columns

Qualcomm requests to seal only the portions of this exhibit that reveal the confidential competitive analysis and confidential financial information. This information constitutes Qualcomm trade secrets. Public disclosure of this information would harm Qualcomm and its affiliates by disclosing this information to competitors and may unfairly benefit actual and potential competitors with respect to Qualcomm's financial performance.

**JX0116**

20.     Specifically, the following portions of JX0116, which is an e-mail dated July 27, 2016 attaching the Internet of Things Master License Management Agreement between Avanci and Qualcomm dated as of July 12, 2016, contain confidential pricing and royalty terms and nonstandard contractual provisions:

- JX0116-002: highlighted portions
- JX0116-012: highlighted portions
- JX0116-014: highlighted portions
- JX0116-035: highlighted portions
- JX0116-046: highlighted portions
- JX0116-048 to 050: in full
- JX0116-059 to 060: highlighted portions
- JX0116-071: highlighted portions
- JX0116-073 to 075: in full

1
- JX0116-084: highlighted portions

2
- JX0116-095: highlighted portions

3
- JX0116-097 to 099: in full

4
- JX0116-108: highlighted portions

5
- JX0116-119: highlighted portions

6
- JX0116-121 to 123: in full

7
- JX0116-133 to 135: highlighted portions

Qualcomm requests to seal only the portions of this exhibit that reveal confidential pricing and royalty terms and nonstandard contractual provisions. This information constitutes Qualcomm trade secrets. Public disclosure of this information would harm Qualcomm and its affiliates by disclosing internal licensing considerations and may unfairly benefit actual and potential third parties with respect to contracting activities of Qualcomm and its affiliates.

### Q2017MDL1_01598957

21. Specifically, the following portions of Q2017MDL1_01598957, which is a string of internal Qualcomm e-mails from September 2007 regarding a royalty cap for smartphone devices, contains confidential pricing and financial information:

- Q2017MLD1_01598957 - Q2017MLD1_01598959: highlighted portions

Qualcomm requests to seal only the portion of this exhibit that reveal information about confidential pricing and financial information. This information constitutes Qualcomm trade secrets. Public disclosure of this information would harm Qualcomm and its affiliates by disclosing internal licensing considerations and may unfairly benefit actual and potential third parties with respect to contracting activities of Qualcomm and its affiliates.

### Q2017MDL1_01173718

22. Specifically, the following portions of Q2017MDL1_01173718, which is a string of internal Qualcomm emails from December 2006 regarding pricing negotiations with Apple, reflect confidential pricing terms and pricing negotiations information:

- Q2017MDL1_01173718 - Q2017MDL1_01173719: highlighted portions

Qualcomm requests to seal only the portions of this exhibit that reveal information about

confidential pricing information and pricing negotiations. This information constitutes Qualcomm trade secrets. Public disclosure of this information would harm Qualcomm and its affiliates by disclosing internal licensing considerations and may unfairly benefit actual and potential third parties with respect to contracting activities of Qualcomm and its affiliates.

23. As mentioned above, the information in the Documents Sought To Be Sealed reflects multiple categories of information. First, it contains terms contained within the specified agreements. These terms are subject to confidentiality provisions prohibiting disclosure, and the confidentiality provisions survive expiration of the agreements. Second, the Documents Sought To Be Sealed contain nonpublic financial information. Public disclosure of the information described above would harm QTL and unfairly benefit actual and potential third parties and competitors with respect to QTL's contracting activities by disclosing confidential information that may disadvantage QTL in ongoing and future contract negotiations. This is because counterparties in such negotiations could use this confidential information to gain an advantage that would not otherwise be possible absent disclosure of this information about other agreements or negotiations, or information about licensing or business strategy, and thereby compromise QTL's commercial interests. Disclosure of that information described above could also assist Qualcomm's competitors in seeking to win business opportunities away from Qualcomm.

24. This confidential information is not publicly known, and QTL recognizes and protects the enormous value of this information through its various policies and procedures designed to protect confidential information from disclosure.

1  I declare under penalty of perjury that the foregoing is true and correct and that I executed
2  this declaration on January 10, 2019, in San Diego, California.


                                    */s/ Albert St. George*
                                    Albert St. George