# EXHIBIT A

**[PURSUANT TO THE COURT'S ORDER AT ECF 1224, FOLLOWING ARE ZTE'S PUBLIC UNREDACTED PORTIONS OF BLAYLOCK DEPOSITION TRANSCRIPT DESIGNATIONS PREVIOUSLY SUBMITTED UNDER SEAL AT ECF 1211]**

HIGHLY CONFIDENTIAL OUTSIDE ATTORNEYS' EYES ONLY
RICHARD BLAYLOCK - 02/27/2018

```
 1               UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF CALIFORNIA
 2                    SAN JOSE DIVISION

 3   _____
     FEDERAL TRADE COMMISSION,            )
 4                                        )
               Plaintiff,                 )  Case No.
 5                                        )  17-cv-00220-LHK-NMC
          v.                              )
 6                                        )
     QUALCOMM INCORPORATED, a             )
 7   Delaware Corporation,                )
                                          )
 8             Defendant.                 )
     _____)
 9                                        )  Case No.
     IN RE: QUALCOMM ANTITRUST            )  17-md-02773-LHK-NMC
10   LITIGATION                           )
     _____)
11

12

13

14
                    HIGHLY CONFIDENTIAL
15            OUTSIDE ATTORNEYS' EYES ONLY

16

17

18

19          VIDEOTAPED DEPOSITION OF:

20             RICHARD L. BLAYLOCK

21            TUESDAY, FEBRUARY 27, 2018

22                  8:58 A.M.

23
     REPORTED BY:  PAULA A. PYBURN
24                 CSR 7304, RPR, CLR

25
```

HIGHLY CONFIDENTIAL OUTSIDE ATTORNEYS' EYES ONLY
RICHARD BLAYLOCK - 02/27/2018            Pages 2..5

Page 2
```
 1      VIDEOTAPED DEPOSITION OF RICHARD L.
 2   BLAYLOCK, the witness, taken on behalf of DEFENDANT,
 3   on Tuesday, February 27, 2018, 8:58 a.m., at 11988
 4   El Camino Real, Suite 350, San Diego, California,
 5   before PAULA A. PYBURN, CSR 7304, RPR, CLR.
 6
 7
 8   APPEARANCES OF COUNSEL:
 9
10   FOR THE FEDERAL TRADE COMMISSION:
11      UNITED STATES FEDERAL TRADE COMMISSION
12      BUREAU OF COMPETITION
13      BY:   KENT E. COX III, ESQ.
14      600 Pennsylvania Avenue, NW
15      Washington, DC 20580
16      202.326.2058
17      kcox@ftc.gov
```

Page 3
```
 1   APPEARANCES: (CONTINUED)
 2
 3   FOR CLASS PLAINTIFFS IN CASE
 4   NO. 17-md-02773-LHK-NMC:
 5      COTCHETT, PITRE & MCCARTHY, LLP
 6      By:   MARK F. RAM, ESQ.
 7      San Francisco Airport Office Center
 8      840 Malcolm Road, Suite 200
 9      Burlingame, California 94010
10      650.697.6000
11      mram@cpmlegal.com
12
13   FOR DEFENDANT QUALCOMM:
14      KEKER, VAN NEST & PETERS LLP
15      By:   MATAN SHACHAM, ESQ.
16      By:   BRYN WILLIAMS, ESQ.
17      633 Battery Street
18      San Francisco, California 94111-1809
19      415.391.5400
20      mshacham@keker.com
21      bwilliams@keker.com
```

Page 4
```
 1   APPEARANCES: (CONTINUED)
 2
 3   FOR DEFENDANT QUALCOMM:
 4      JONES DAY
 5      By:   ANTHONY FARES, ESQ.
 6      4655 Executive Drive, Suite 1500
 7      San Diego, California 92121-3134
 8      858.314.1200
 9      afares@jonesday.com
10
11   FOR THIRD-PARTY WITNESS ZTE (USA) INC.:
12      UPSHAW PLLC
13      By:   EVERETT UPSHAW, Ph.D., ESQ.
14      1204 Gano Street
15      Dallas, Texas 75215
16      972.920.8000
17      everettupshaw@upshawpllc.com
```

Page 5
```
 1   APPEARANCES: (CONTINUED)
 2
 3   FOR PILLSBURY WINTHROP:
 4      PILLSBURY WINTHROP SHAW PITTMAN LLP
 5      By:   CONOR M. CIVINS, ESQ.
 6      401 Congress Avenue, Suite 1700
 7      Austin, Texas 78701-3797
 8      512.580.9600
 9      conor.civins@pillsburylaw.com
10
11   FOR APPLE, INC.:
12      FISH & RICHARDSON P.C.
13      By:   SETH M. SPROUL, ESQ.
14      12390 El Camino Real
15      San Diego, California 92130
16      858.678.4343
17      sproul@fr.com
18
19   ALSO PRESENT:
20      Ted Bendrick, Videographer
```

HIGHLY CONFIDENTIAL OUTSIDE ATTORNEYS' EYES ONLY
RICHARD BLAYLOCK - 02/27/2018          Pages 82..85

Page 82

Page 83

Page 84

12   Q    Tell me that recollection.

14        THE WITNESS:  There was a suggestion that,
15   absent -- absent an agreement reached by a certain
16   deadline, that Qualcomm's interest in negotiating
17   with -- with ZTE would be diminished and that the
18   terms of the relationship would be worse for ZTE.

Page 85

HIGHLY CONFIDENTIAL OUTSIDE ATTORNEYS' EYES ONLY
RICHARD BLAYLOCK - 02/27/2018        Pages 126..129

Page 126

Page 127

Page 128

Page 129

20  Q   What, if anything, do you recall ZTE saying
21  to Qualcomm during this third instance?
22  A   I believe it was around this time that -- I
23  believe -- I believe that what we're calling the
24  third or fourth instance, probably, most likely, you
25  know, in and around the third instance, that ZTE

Page 130

1  certainly expressed, you know, its apprehension
2  about, you know, access to Qualcomm chips and
3  supply.
4       And -- so yes.
5  Q    What more specifically, if anything, do you
6  recall about that comment?
7  A    The -- I believe ZTE conveyed, likely
8  through the woman who was the -- there representing
9  the handset business, concern about continued access
10 to Qualcomm chips.  And I think they may have
11 conveyed, you know, that concern based upon
12 communications between Qualcomm business personnel
13 and ZTE personnel.

Page 131

Page 132

Page 133

HIGHLY CONFIDENTIAL OUTSIDE ATTORNEYS' EYES ONLY
RICHARD BLAYLOCK - 02/27/2018     Pages 226..229

Page 226

Page 227

Page 228

19    Q    Did ZTE internally believe that Qualcomm
20  was actually going to cut off chip supplies?

24         THE WITNESS:  I believe that on at least
25  one instance that that apprehension was expressed by

Page 229

1  Jessica Wang to Qualcomm in one of the live meetings
2  in Shanghai.

HIGHLY CONFIDENTIAL OUTSIDE ATTORNEYS' EYES ONLY
RICHARD BLAYLOCK - 02/27/2018      Pages 262..265

Page 262

16    Do you -- do you recall a controversy
17 between Qualcomm and ZTE over how long the license
18 agreement should -- should last?
19    A   It was a point of negotiation.  You know,
20 in general, Qualcomm was looking for a longer term;
21 ZTE was looking for a shorter term.  We -- you know,
22 I can't recall where we wound up, but it's -- it is
23 what it is in the license agreement.
24    Q   And what -- and what was the arguments that
25 ZTE made to Qualcomm about the -- supporting its

Page 263

1 desire for a shorter term?
2    A   ZTE expressed the belief that the -- the
3 market was changing in terms of the relative value
4 of CDMA versus 4G or 5G, and felt that in -- that
5 there ought to be a event when the rates would be
6 renegotiated, ought come sooner rather than later,
7 as a consequence of the belief that that was sort of
8 a -- a sunsetting of value of CDMA.

Page 264

Page 265

Page 282

Page 283

12  Q   What, if anything, did Qualcomm say about
13  the relationship between the strategic funds and the
14  royalty rates?
15
16      THE WITNESS:  At various points in the
17  negotiations, whether it was in Shanghai or at the
18  term sheet stage or both --
19      THE REPORTER:  At the what?
20      THE WITNESS:  Whether it was in Shanghai or
21  at the term sheet stage or both, Qualcomm had stated
22  that it had -- it was more willing to negotiate on
23  the strategic fund and increase in contributions to
24  the strategic fund in lieu of making, you know,
25  direct reductions to the -- you know, to the royalty

Page 284

1   rates in order to give ZTE, you know, a commensurate
2   economic benefit in lieu of reducing royalty rates.

17  Q   And was that a concern about the impact
18  such a change to the royalty rate would have to
19  other licensees?
20
21
22      THE WITNESS:  So if I understand your
23  correction -- question correctly, yes.  Qualcomm was
24  expressing a concern about the implications of a --
25  granting a reduced royalty to ZTE for the

Page 285

1   contractual obligations it would have to other
2   licensees, specifically those to whom it had
3   promised to give MFN treatment for.

12  Q   So the -- the -- the strategic funds would
13  only be applied when ZTE purchased Qualcomm chips?
14
15      THE WITNESS:  The strategic fund was funded
16  with contributions that were calculated based upon a
17  percentage of ZTE, you know, chipset purchases.
18  BY MR. COX:
19  Q   From Qualcomm?
20  A   From Qualcomm, yes.

HIGHLY CONFIDENTIAL OUTSIDE ATTORNEYS' EYES ONLY
RICHARD BLAYLOCK - 02/27/2018      Pages 310..313

Page 310

Page 311

Page 312

19  Q  But, for example, if ZTE bought chips from
20  a different manufacturer, Qualcomm wouldn't make a
21  contribution?
22  A  Not --
23
24       THE WITNESS:  -- in respect of -- not in
25  respect of that purchase.

Page 313

HIGHLY CONFIDENTIAL OUTSIDE ATTORNEYS' EYES ONLY
RICHARD BLAYLOCK - 02/27/2018     Pages 314..317

Page 314

Page 315

Page 316

22  Q   When you were negotiating with Qualcomm in
23  September 2015, was it your understanding that in
24  order for ZTE to continue to purchase modem chips
25  from Qualcomm that it also had to have a license

Page 317

1   from Qualcomm?
6           THE WITNESS:  I think it was clear enough
7   from Qualcomm communications that it was necessary
8   to have a license from Qualcomm to use Qualcomm's
9   technology.
10          And to the extent that -- and that it was
11  my -- it was our understanding at the time that
12  Qualcomm's sales of the chips did not come with a
13  license to use the chips, and, therefore, it was
14  necessary to have a license in order to be able to
15  purchase the chips, you know, and make any
16  commercial use of them.

HIGHLY CONFIDENTIAL OUTSIDE ATTORNEYS' EYES ONLY
RICHARD BLAYLOCK - 02/27/2018     Pages 322..325

Page 322

Page 323

11  Q   You testified about certain instances when
12  Qualcomm said it was more willing to negotiate on
13  the strategic fund instead of on reducing royalty
14  rates or something to that effect.
15      Do you recall that?
16  A   I do.
17  Q   Do you recall any specific instances in
18  which someone from Qualcomm made a statement to you
19  to that effect, or is that a composite recollection?
20  A   No.  I recall that Fabian Gonell made it
21  clear that their latitude for negotiating royalty
22  rates, you know, was constrained, and that they had
23  a whole lot more opportunity to find a way to bridge
24  the gap between the parties on that.
25      My recollection is -- it was specific that

Page 324

1  it was Fabian Gonell saying that; it is specific to
2  being -- it's a point returned to on more than one
3  occasion.  So it is not a recollection tied to a
4  single event but it is multiple events.

Page 325