# QX9209

# REDACTED VERSION

| | |
|---|---|
| From: | Jeff Williams |
| To: | Mollenkopf, Steven |
| Sent: | 1/20/2011 5:17:34 AM |
| Subject: | Draft |
| Attachments: | ATT00001..txt; Eureka-Apple TA 2011-1-19 v2 DBT.docx |

Hi Steve,

Here it is.

I think we covered everything from the calls.

The transition fund is set up for a quarterly checkpoint for clawback. We set the bar at ███ quarter this year and ███ quarter in 2012, 2013 and Q1-2014. Apple will not be able to claim the entire transition fund in 2011 and 2012, but we can hopefully claim most of it.

We extended the MDF to 6 quarter per our discussion with your obligation to pay at any time of your choosing in the calendar quarter, which probably gives you flexibility to spread across various quarters in three financial years.

For the Variable Incentive Fund, we added the 2015 hurdles to our original volume table and made the rebate counter start on Oct 1st, after your fiscal year. We did not add any clawbacks to this fund.

We have added back the exclusivity piece by having payments stopped if we ship a new product with someone else's chip.

Let me know if you think this captures it.

Regards, Jeff

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM

Q2014FTC00786756

# Transition Agreement
## Between Apple and Eureka

This Transition Agreement (this "**Agreement**") is entered into by and between Apple Inc., a California corporation located at 1 Infinite Loop, Cupertino, California 95014 ("**Apple**"), and Qualcomm Incorporated, a Delaware corporation, located at 5775 Morehouse Drive, San Diego, California 92121 ("**Qualcomm**"), effective as of January __, 2011 (the "**Effective Date**").

### Purpose

Apple and Qualcomm entered into a Strategic Terms Agreement on December 16, 2009, as amended (the "**STA**"), which, among other things, sets forth certain terms and conditions relating to the sale of Qualcomm Chipsets to Authorized Purchasers (each as defined in the STA) for use in Apple products. Apple and Qualcomm now desire to enter into this Agreement to set forth terms and conditions regarding the payment by Qualcomm to Apple of certain funds related to Apple's transition to using Qualcomm Chipsets in Apple products (the "**Transition**").

### Agreement

Capitalized terms not defined herein are defined in the STA.

1.  **Funds & Chipset Rebate**

    1.1. <u>4-Year Transition Fund</u>

    (a) In consideration of Apple's substantial resource investment and business risk associated with the Transition and subject to Section 1.1(c), (d) and (e) and Section 1.4 below, Qualcomm shall pay Apple the sum of ▮▮▮ (the "**Transition Fund**") in two installments of ▮▮▮ each.

    (b) The first installment is due and payable before the end of the first calendar quarter of 2012, and the second installment is due and payable before the end of the first calendar quarter of 2013.

    (c) If during any calendar quarter of 2011, the Quarterly Volume (as defined below) of all Qualcomm Chipsets (including, for example, Qualcomm Chipsets that support CDMA, UMTS, and/or LTE) is less than ▮▮▮ Qualcomm may reduce the first installment by an amount equal to the product of ▮▮▮ minus the Quarterly Volume, and (ii) ▮▮▮ For example, if during the fourth calendar quarter of 2011, Authorized Purchasers purchased 1,000,000 Qualcomm Chipsets that support CDMA and ▮▮▮ Qualcomm Chipsets that support UMTS and neither Qualcomm Chipset was supply constrained, Qualcomm may reduce the first installment by ▮▮▮ (i.e. ▮▮▮ x ▮▮▮ The "**Quarterly Volume**" means the sum of all units of the relevant Qualcomm Chipsets (i) purchased by Authorized Purchasers during the applicable calendar quarter, and (ii) forecasted for such calendar quarter but not purchased because the supply of such Qualcomm Chipsets was constrained as described in Section 4.3 of the STA.

    (d) If, during any calendar quarter in 2012, 2013, or the first calendar quarter of 2014, the Quarterly Volume of Qualcomm Chipsets that support UMTS and/or LTE (alone or in addition to other wireless standards) is less than ▮▮▮ Qualcomm Chipsets, Apple shall reimburse Qualcomm the portion of the Transition Fund equal to the product of (i) ▮▮▮ minus the number of Qualcomm Chipsets that support UMTS and/or LTE (alone or in addition to other wireless standards) purchased during such quarter, and (ii) ▮▮▮ For example, if during the first calendar quarter of 2012,

Authorized Purchasers purchased ▓▓▓ Qualcomm Chipsets that support UMTS and 500,000 Qualcomm Chipsets that support CDMA alone and neither chipset was supply constrained, Apple shall reimburse Qualcomm ▓▓▓ (i.e. ▓▓▓ × ▓▓▓) Apple's reimbursement(s) shall be due and payable 45 days after the first calendar quarter of 2014.

    (e)    Qualcomm shall not be obligated to make any payments of the Transition Fund to Apple if Apple does not commercially sell at least one Apple product that incorporates a Qualcomm Chipset that supports UMTS and/or LTE by December 31, 2012.

1.2.    <u>Marketing and Development Fund</u>

    (a)    To contribute to the costs of Apple's marketing efforts to drive demand for global sales of Apple's products that incorporate Qualcomm Chipsets that support UMTS and subject to Sections 1.4 and 1.5 below, Qualcomm shall pay Apple one ▓▓▓ (the "**MDF**") in six quarterly installments of ▓▓▓ each.

    (b)    Each installment is due and payable before the end of each calendar quarter beginning with the third calendar quarter of 2011.

1.3.    <u>Variable Incentive Fund</u>.  In consideration of Apple's use of Qualcomm Chipsets in Apple products and subject to Sections 1.4 and 1.5 below, Qualcomm shall pay Apple up to ▓▓▓ (the "**Variable Incentive Fund**") beginning after October 1, 2011 (the "**VIF Start Date**"), payable as follows:

    (a)    <u>First Anniversary</u>.  The payment amount set forth below for the applicable Volume (as defined below) is due and payable 45 days after the first anniversary of the VIF Start Date:

[REDACTED]

    (b)    <u>Second Anniversary</u>.  The payment amount set forth below for the applicable Volume is due and payable 45 days after the second anniversary of the VIF Start Date:

[REDACTED]

    (c)    <u>Third Anniversary</u>. The payment amount set forth below for the applicable Volume is due and payable 45 days after the third anniversary of the VIF Start Date:

[REDACTED]

   (d) <u>Fourth Anniversary</u>.  The lesser of (i) the unpaid balance of the Variable Incentive Fund, or (ii) the payment amount set forth below for the applicable Annual Volume is due and payable 45 days after the fourth anniversary of the VIF Start Date.



"**Annual Volume**" means the sum of all units of Qualcomm Chipsets (regardless of whether such chipsets support UMTS) (i) purchased by Authorized Purchasers during the 12 months preceding the most recent anniversary of the VIF Start Date, and (ii) forecasted during such 12-month period in a Forecast, but not purchased because the supply of such Qualcomm Chipsets was constrained as described in Section 4.3 of the STA.

1.4. If Apple or any of its Affiliates initiates any litigation against Qualcomm or its Affiliates which includes any claim for intellectual property infringement, Qualcomm shall not be obligated to make any of the above payments that are due and payable after the date of the initiation of such litigation.

1.5. If after the date of the first commercial shipment of an Apple product that incorporates a Qualcomm Chipset that supports UMTS (the "**UMTS FCS Date**"), Apple begins selling an Apple product commercially to end-users that incorporates a cellular baseband modem from a supplier other than Qualcomm that had not previously been incorporated in an Apple product sold commercially to end-users on or before the UMTS FCS Date, Qualcomm shall not be obligated to make any of the MDF or Variable Incentive Fund payments that are due and payable after the date of such sale.

1.6. The Variable Incentive Fund payments will not be taken into account when calculating any of the amounts in Section 5 of the STA, including, for example, the Apple Price or the Rebate (as defined in the STA).

2. Confidentiality

This Agreement and any information exchanged by the parties in connection herewith are deemed to be "Information" subject to the terms of the mutual non-disclosure agreement between Apple and Qualcomm dated September 8, 1999 and amended August 31, 2004, April 26, 2005, August 11, 2006, and August 31, 2009.

3. Term

The term of this Agreement begins on the Effective Date and continues until the earlier of (i) each party has fulfilled its obligations under Section 1 above; or (ii) the date that the STA is terminated.  Section 2 above shall survive any termination of this Agreement.

4. General Terms & Conditions

Nothing in the Agreement will impair either party's right to use, market, purchase, develop, or manufacture, directly or indirectly, alone or with others, products or services competitive with those offered by the other.  This Agreement shall be subject to the general terms and conditions set forth in Attachment 2 of the STA.  If there is a conflict between the terms and conditions of this Agreement and the STA, the terms and conditions of this Agreement shall govern with respect to the subject matter of this Agreement.

Apple-Intel Need to Know Confidential
FILENAME

Page 4 of 5

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM

Q2014FTC00786760

Acknowledged and agreed by their duly authorized representatives.

| Apple Inc. | Qualcomm Incorporated |
|---|---|
| By: _____ | By: _____ |
| Name: _____ | Name: _____ |
| Title: _____ | Title: _____ |
| Date: _____ | Date: _____ |

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM

Q2014FTC00786761