# CX5363

# REVISED REDACTED VERSION

| | |
|---|---|
| From: | Mollenkopf, Steven |
| To: | Altman, Steve |
| CC: | Mollenkopf, Steven |
| Sent: | 1/10/2011 8:28:37 PM |
| Subject: | maverick emails |
| Attachments: | Decemeber 2010 update rev2.pptx (Read-Only).pdf; Drafts; Re: revised proposal |

Steve,

Some emails attached with the proposal that we like, their counter and some evaluation on the "right side" of their deal from Jim L. Does not comprehend any of Don's concerns.

Also, attached is the overall deal value with zero incentive in PDF.

Let me know what you think. I need to get back to Jeff in some way this afternoon. Can be a simple channel check with no content.

steve

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC00564332
Q2017MDL1_00448717

CX5363-001

FILE PRODUCED NATIVELY

Decemeber 2010 update rev2.pptx (Read-Only).pdf

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC00564333
Q2017MDL1_00448718

CX5363-002

# Total Operating Margin Summary



| TOTAL | CY11 | CY12 | CY13 | CY14 | CY15 | Total |
|---|---|---|---|---|---|---|
| Units (QCT) | ■ | ■ | ■ | ■ | ■ | ■ |
| Gross Revenue | ■ | ■ | ■ | ■ | ■ | ■ |
| Incentive | - | - | | | | |
| Net Revenue | ■ | ■ | ■ | ■ | ■ | ■ |
| Gross Margin | ■ | ■ | ■ | ■ | ■ | ■ |
| Gross Margin % | ■ | ■ | ■ | ■ | ■ | ■ |
| Eng Costs | ■ | ■ | ■ | ■ | ■ | ■ |
| Substitution | ■ | ■ | ■ | ■ | ■ | ■ |
| Fixed costs | ■ | ■ | ■ | ■ | ■ | ■ |
| Op Margin | ■ | ■ | ■ | ■ | ■ | ■ |
| % of Revenue | ■ | ■ | ■ | ■ | ■ | ■ |
| *Per Unit* | | | | | | |
| *ASP* | ■ | ■ | ■ | ■ | ■ | ■ |
| *Incentive* | ■ | ■ | ■ | ■ | ■ | ■ |
| *Gross Margin* | ■ | ■ | ■ | ■ | ■ | ■ |
| *Op Margin* | ■ | ■ | ■ | ■ | ■ | ■ |

QUALCOMM CONFIDENTIAL AND PROPRIETARY   Internal Use ONLY - Restricted Distribution

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

CX5363-003

# WCDMA Operating Margin Summary



| WCDMA only | CY11 | CY12 | CY13 | CY14 | CY15 | Total |
|---|---|---|---|---|---|---|
| WCDMA Units (QCT) | ■ | ■ | ■ | ■ | ■ | ■ |
| Gross Revenue | ■ | ■ | ■ | ■ | ■ | ■ |
| Incentive | - | - | | | | |
| Net Revenue | ■ | ■ | ■ | ■ | ■ | ■ |
| Gross Margin | ■ | ■ | ■ | ■ | ■ | ■ |
| Gross Margin % | ■ | ■ | ■ | ■ | ■ | ■ |
| Eng Costs | ■ | ■ | ■ | ■ | ■ | ■ |
| Substitution | ■ | ■ | ■ | ■ | ■ | ■ |
| Fixed costs | ■ | ■ | ■ | ■ | ■ | ■ |
| Op Margin | ■ | ■ | ■ | ■ | ■ | ■ |
| % of Revenue | ■ | ■ | ■ | ■ | ■ | ■ |
| *Per Unit* | | | | | | |
| *ASP* | ■ | ■ | ■ | ■ | ■ | ■ |
| *Incentive* | ■ | ■ | ■ | ■ | ■ | ■ |
| *Gross Margin* | ■ | ■ | ■ | ■ | ■ | ■ |
| *Op Margin* | ■ | ■ | ■ | ■ | ■ | ■ |

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

QUALCOMM CONFIDENTIAL AND PROPRIETARY  Internal Use ONLY - Restricted Distribution

CX5363-004

# CDMA/LTE Margin Summary



| CDMA/LTE | CY11 | CY12 | CY13 | CY14 | CY15 | Total |
|---|---|---|---|---|---|---|
| **C2K/LTE (QCT)** | ■ | ■ | ■ | ■ | ■ | ■ |
| **Gross Revenue** | ■ | ■ | ■ | ■ | ■ | ■ |
| Incentive | | | | | | - |
| Net Revenue | ■ | ■ | ■ | ■ | ■ | ■ |
| **Gross Margin** | ■ | ■ | ■ | ■ | ■ | ■ |
| Gross Margin % | ■ | ■ | ■ | ■ | ■ | ■ |
| **Eng Costs** | ■ | ■ | ■ | ■ | ■ | ■ |
| Substitution | - | - | - | - | - | - |
| Fixed costs | ■ | ■ | ■ | ■ | ■ | ■ |
| **Op Margin** | ■ | ■ | ■ | ■ | ■ | ■ |
| % of Revenue | ■ | ■ | ■ | ■ | ■ | ■ |
| _Per Unit_ | | | | | | |
| _ASP_ | ■ | ■ | ■ | ■ | ■ | ■ |
| _Incentive_ | ■ | ■ | ■ | ■ | ■ | ■ |
| _Gross Margin_ | ■ | ■ | ■ | ■ | ■ | ■ |

■ ■■■■■■■■■■■■■■■■■■■■■■■■■■

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

QUALCOMM CONFIDENTIAL AND PROPRIETARY  Internal Use ONLY - Restricted Distribution

CX5363-005

| | |
|---|---|
| From: | Jeff Williams |
| To: | Mollenkopf, Steven |
| Sent: | 12/23/2010 4:04:33 AM |
| Subject: | Drafts |
| Attachments: | ATT00001..txt; ATT00002..txt; Eureka-Apple RA 2010-12-22 v2 DBT.docx; Eureka-Apple TA (combined) 2010-12-22 DBT.docx; Eureka-Apple TA 2010-12-22 v2 DBT.docx |

HI Steve, I hope these will work.

David wrote this two ways. The first separates the $250M and the $750M (both associated with chips)

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC00564334
Q2017MDL1_00448719

CX5363-006

The second combines them in one document

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC00564335
Q2017MDL1_00448720

CX5363-007

Not sure which you prefer.

Hope to chat tomorrow.   I have an opening at 10:30 if that works.

Thanks, and sorry to be adding to your vacation work list!

Jeff

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC00564336
Q2017MDL1_00448721

CX5363-008

# Rebate Agreement
## Between Apple and Eureka

This Rebate Agreement (this "**Agreement**") is entered into by and between Apple Inc., a California corporation located at 1 Infinite Loop, Cupertino, California 95014 ("**Apple**"), and Qualcomm Incorporated, a Delaware corporation, located at 5775 Morehouse Drive, San Diego, California 92121 ("**Qualcomm**"), effective as of December __, 2010 (the "**Effective Date**").

## Purpose

Apple and Qualcomm entered into a Strategic Terms Agreement on December 16, 2009, as amended (the "**STA**"), which, among other things, sets forth certain terms and conditions relating to the sale of Qualcomm Chipsets to Authorized Purchasers (each as defined in the STA) for use in Apple products. Apple and Qualcomm now desire to enter into this Agreement to set forth terms and conditions regarding the payment by Qualcomm to Apple of certain rebates related to Apple's use of Qualcomm Chipsets in Apple products.

## Agreement

Capitalized terms not defined herein are defined in the STA.

1. **Chipset Rebate**

1.1.    In consideration of Apple's use of Qualcomm Chipsets in Apple products and subject to Section 1.2 below, Qualcomm shall pay Apple seven hundred fifty million dollars (US$750,000,000) (the "**Chipset Rebate**") payable as follows:

(a)    <u>UMTS FCS</u>. One hundred fifty million dollars (US$150,000,000) of the Chipset Rebate is due and payable 45 days after the date of the first commercial shipment of an Apple product that incorporates a Qualcomm Chipset that supports UMTS;

(b)    <u>First Anniversary</u>. The amount of the Chipset Rebate set forth below for the applicable Volume (as defined below) is due and payable 45 days after the first anniversary of the UMTS FCS Date:

| Payment Amount | Volume |
|---|---|
| US$200,000,000 | [REDACTED] |
| US$100,000,000 | [REDACTED] |
| no payment | [REDACTED] |

(c)    <u>Second Anniversary</u>. The amount of the Chipset Rebate set forth below for the applicable Volume is due and payable 45 days after the second anniversary of the UMTS FCS Date:

| Payment Amount | Volume |
|---|---|
| US$200,000,000 | [REDACTED] |
| US$150,000,000 | [REDACTED] |
| US$100,000,000 | [REDACTED] |
| no payment | [REDACTED] |

Apple-Intel Need to Know Confidential
FILENAME

Page 1 of 3

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC00564337
Q2017MDL1_00448722

CX5363-009

(d) <u>Third Anniversary</u>. The amount of the Chipset Rebate set forth below for the applicable Volume is due and payable 45 days after the third anniversary of the UMTS FCS Date:

| Payment Amount | Volume |
|---|---|
| US$200,000,000 | █████████ |
| US$150,000,000 | █████████ |
| US$100,000,000 | █████████ |
| no payment | █████████ |

(e) <u>Fourth Anniversary</u>. The unpaid balance of the Chipset Rebate, if any, is due and payable 45 days after the fourth anniversary of the UMTS FCS Date.

"**Volume**" means the sum of all units of Qualcomm Chipsets (regardless of whether such chipsets support UMTS) (i) purchased by Authorized Purchasers during the 12-months preceding the most recent anniversary of the UMTS FCS Date; plus (ii) forecasted during such 12-month period in a Forecast, but not purchased because the Sales Subsidiary was unable to fulfill orders for such demand as a result of a supply constraint as described in Section 4.3 of the STA.

1.2. If after the UMTS FCS Date (i) Apple begins selling an Apple product commercially to end-users that incorporates a cellular baseband modem from a supplier other than Qualcomm that had not previously been incorporated in an Apple product sold commercially to end-users on or before the UMTS FCS Date, or (ii) Apple or any of its Affiliates initiates any litigation against Qualcomm or its Affiliates which includes any claim for intellectual property infringement, Qualcomm shall not be obligated to make any of the above payments that are due and payable after the date of such sale or the initiation of such litigation.

1.3. The Chipset Rebate will not be taken into account when calculating any of the amounts in Section 5 of the STA, including, for example, the Apple Price or the Rebate (as defined in the STA).

2. Confidentiality

This Agreement and any information exchanged by the parties in connection herewith are deemed to be "Information" subject to the terms of the mutual non-disclosure agreement between Apple and Qualcomm dated September 8, 1999 and amended August 31, 2004, April 26, 2005, August 11, 2006, and August 31, 2009.

3. Term

The term of this Agreement begins on the Effective Date and continues until the earlier of (i) Qualcomm has fulfilled its obligations under Section 1 above; or (ii) the date that the STA is terminated. Section 2 above shall survive any termination of this Agreement.

4. General Terms & Conditions

This Agreement shall be subject to the general terms and conditions set forth in Attachment 2 of the STA. If there is a conflict between the terms and conditions of this Agreement and the STA, the terms and conditions of this Agreement shall govern with respect to the subject matter of this Agreement.

Apple-Intel Need to Know Confidential
FILENAME

Page 2 of 3

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC00564338
Q2017MDL1_00448723

CX5363-010

Acknowledged and agreed by their duly authorized representatives.

| Apple Inc. | Qualcomm Incorporated |
|---|---|
| By: _____ | By: _____ |
| Name: _____ | Name: _____ |
| Title: _____ | Title: _____ |
| Date: _____ | Date: _____ |

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC00564339
Q2017MDL1_00448724

CX5363-011

# Transition Agreement
## Between Apple and Eureka

This Transition Agreement (this "**Agreement**") is entered into by and between Apple Inc., a California corporation located at 1 Infinite Loop, Cupertino, California 95014 ("**Apple**"), and Qualcomm Incorporated, a Delaware corporation, located at 5775 Morehouse Drive, San Diego, California 92121 ("**Qualcomm**"), effective as of December __, 2010 (the "**Effective Date**").

## Purpose

Apple and Qualcomm entered into a Strategic Terms Agreement on December 16, 2009, as amended (the "**STA**"), which, among other things, sets forth certain terms and conditions relating to the sale of Qualcomm Chipsets to Authorized Purchasers (each as defined in the STA) for use in Apple products. Apple and Qualcomm now desire to enter into this Agreement to set forth terms and conditions regarding the payment by Qualcomm to Apple of certain funds and rebates related to Apple's transition to using Qualcomm Chipsets in Apple products (the "**Transition**").

## Agreement

Capitalized terms not defined herein are defined in the STA.

1. **Transition Fund & Chipset Rebate**

   1.1. _Transition Fund_. In consideration of Apple's substantial resource investment and business risk associated with the Transition and subject to Sections 1.3 and 1.4 below, Qualcomm shall pay Apple the sum of two hundred fifty million dollars (US$250,000,000) in eight quarterly installments of thirty-one million two hundred fifty thousand dollars (US$31,250,000) each. Each installment is due and payable 45 days after the end of each calendar quarter beginning with the first calendar quarter of 2011.

   1.2. _Chipset Rebate_. In consideration of Apple's use of Qualcomm Chipsets in Apple products and subject to Sections 1.3, Qualcomm shall pay Apple seven hundred fifty million dollars (US$750,000,000) (the "**Chipset Rebate**") payable as follows:

   (a) _UMTS FCS_. One hundred fifty million dollars (US$150,000,000) of the Chipset Rebate is due and payable 45 days after the date of the first commercial shipment of an Apple product that incorporates a Qualcomm Chipset that supports UMTS (the "**UMTS FCS Date**");

   (b) _First Anniversary_. The amount of the Chipset Rebate set forth below for the applicable Volume (as defined below) is due and payable 45 days after the first anniversary of the UMTS FCS Date:

   | Payment Amount | Volume |
   |---|---|
   | US$200,000,000 | ████████████ |
   | US$100,000,000 | ████████████ |
   | no payment | ████████████ |

   (c) _Second Anniversary_. The amount of the Chipset Rebate set forth below for the applicable Volume is due and payable 45 days after the second anniversary of the UMTS FCS Date:

   | Payment Amount | Volume |
   |---|---|

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC00564340
Q2017MDL1_00448725

CX5363-012

| Payment Amount | Volume |
|---|---|
| US$200,000,000 | ███████████ |
| US$150,000,000 | ███████████ |
| US$100,000,000 | ███████████ |
| no payment | ███████████ |

(d) <u>Third Anniversary</u>. The amount of the Chipset Rebate set forth below for the applicable Volume is due and payable 45 days after the third anniversary of the UMTS FCS Date:

| Payment Amount | Volume |
|---|---|
| US$200,000,000 | ███████████ |
| US$150,000,000 | ███████████ |
| US$100,000,000 | ███████████ |
| no payment | ███████████ |

(e) <u>Fourth Anniversary</u>. The unpaid balance of the Chipset Rebate, if any, is due and payable 45 days after the fourth anniversary of the UMTS FCS Date.

"**Volume**" means the sum of all units of Qualcomm Chipsets (regardless of whether such chipsets support UMTS) (i) purchased by Authorized Purchasers during the 12-months preceding the most recent anniversary of the UMTS FCS Date; plus (ii) forecasted during such 12-month period in a Forecast, but not purchased because the Sales Subsidiary was unable to fulfill orders for such demand as a result of a supply constraint as described in Section 4.3 of the STA.

1.3. If (i) after the UMTS FCS Date Apple begins selling an Apple product commercially to end-users that incorporates a cellular baseband modem from a supplier other than Qualcomm that had not previously been incorporated in an Apple product sold commercially to end-users on or before the UMTS FCS Date, or (ii) Apple or any of its Affiliates initiates any litigation against Qualcomm or its Affiliates which includes any claim for intellectual property infringement, Qualcomm shall not be obligated to make any of the above payments that are due and payable after the date of such sale or the initiation of such litigation.

1.4. Apple shall reimburse Qualcomm all amounts paid in accordance with Section 1.2, without interest, if by December 31, 2012 Apple has not commercially sold an Apple product that incorporates a Qualcomm Chipset that supports UMTS and an Apple product that incorporates a Qualcomm Chipset that supports LTE.

1.5. The Chipset Rebate will not be taken into account when calculating any of the amounts in Section 5 of the STA, including, for example, the Apple Price or the Rebate (as defined in the STA).

2. Confidentiality

This Agreement and any information exchanged by the parties in connection herewith are deemed to be "Information" subject to the terms of the mutual non-disclosure agreement between Apple and Qualcomm dated September 8, 1999 and amended August 31, 2004, April 26, 2005, August 11, 2006, and August 31, 2009.

3. Term

The term of this Agreement begins on the Effective Date and continues until the earlier of (i) each party has fulfilled its obligations under Section 1 above; or (ii) the date that the STA is terminated. Section 2 above shall survive any termination of this Agreement.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC00564341
Q2017MDL1_00448726

CX5363-013

4. General Terms & Conditions

This Agreement shall be subject to the general terms and conditions set forth in Attachment 2 of the STA. If there is a conflict between the terms and conditions of this Agreement and the STA, the terms and conditions of this Agreement shall govern with respect to the subject matter of this Agreement.

Acknowledged and agreed by their duly authorized representatives.

| Apple Inc. | Qualcomm Incorporated |
|---|---|
| By: _____ | By: _____ |
| Name: _____ | Name: _____ |
| Title: _____ | Title: _____ |
| Date: _____ | Date: _____ |

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC00564342
Q2017MDL1_00448727

CX5363-014

# Transition Agreement
Between Apple and Eureka

This Transition Agreement (this "**Agreement**") is entered into by and between Apple Inc., a California corporation located at 1 Infinite Loop, Cupertino, California 95014 ("**Apple**"), and Qualcomm Incorporated, a Delaware corporation, located at 5775 Morehouse Drive, San Diego, California 92121 ("**Qualcomm**"), effective as of December __, 2010 (the "**Effective Date**").

## Purpose

Apple and Qualcomm entered into a Strategic Terms Agreement on December 16, 2009, as amended (the "**STA**"), which, among other things, sets forth certain terms and conditions relating to the sale of Qualcomm Chipsets to Authorized Purchasers (each as defined in the STA) for use in Apple products. Apple and Qualcomm now desire to enter into this Agreement to set forth terms and conditions regarding the payment by Qualcomm to Apple of certain funds related to Apple's transition to using Qualcomm Chipsets in Apple products (the "**Transition**").

## Agreement

Capitalized terms not defined herein are defined in the STA.

1. **Transition Fund**

1.1. In consideration of Apple's substantial resource investment and business risk associated with the Transition and subject to Sections 1.2 and 1.3 below, Qualcomm shall pay Apple the sum of two hundred fifty million dollars (US$250,000,000) in eight quarterly installments of thirty-one million two hundred fifty thousand dollars (US$31,250,000) each. Each installment is due and payable 45 days after the end of each calendar quarter beginning with the first calendar quarter of 2011.

1.2. If (i) after the date of the first commercial shipment of an Apple product that incorporates a Qualcomm Chipset that supports UMTS (the "**UMTS FCS Date**"), Apple begins selling an Apple product commercially to end-users that incorporates a cellular baseband modem from a supplier other than Qualcomm that had not previously been incorporated in an Apple product sold commercially to end-users on or before the UMTS FCS Date, or (ii) Apple or any of its Affiliates initiates any litigation against Qualcomm or its Affiliates which includes any claim for intellectual property infringement, Qualcomm shall not be obligated to make any of the above payments that are due and payable after the date of such sale or the initiation of such litigation.

1.3. Apple shall reimburse Qualcomm all amounts paid in accordance with Section 1.1, without interest, if by December 31, 2012 Apple has not commercially sold an Apple product that incorporates a Qualcomm Chipset that supports UMTS and an Apple product that incorporates a Qualcomm Chipset that supports LTE.

2. **Confidentiality**

This Agreement and any information exchanged by the parties in connection herewith are deemed to be "Information" subject to the terms of the mutual non-disclosure agreement between Apple and Qualcomm dated September 8, 1999 and amended August 31, 2004, April 26, 2005, August 11, 2006, and August 31, 2009.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC00564343
Q2017MDL1_00448728

CX5363-015

3.  Term

The term of this Agreement begins on the Effective Date and continues until the earlier of (i) each party has fulfilled its obligations under Section 1 above; or (ii) the date that the STA is terminated. Section 2 above shall survive any termination of this Agreement.

4.  General Terms & Conditions

This Agreement shall be subject to the general terms and conditions set forth in Attachment 2 of the STA. If there is a conflict between the terms and conditions of this Agreement and the STA, the terms and conditions of this Agreement shall govern with respect to the subject matter of this Agreement.

Acknowledged and agreed by their duly authorized representatives.

| Apple Inc. | Qualcomm Incorporated |
|---|---|
| By: _____ | By: _____ |
| Name: _____ | Name: _____ |
| Title: _____ | Title: _____ |
| Date: _____ | Date: _____ |

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC00564344
Q2017MDL1_00448729

CX5363-016

| | |
|---|---|
| From: | Mollenkopf, Steven |
| To: | Jeff Williams |
| CC: | Mollenkopf, Steven |
| Sent: | 12/21/2010 1:55:06 AM |
| Subject: | Re: revised proposal |

Jeff,

As we explained during our last meeting, we are unwilling to have the marketing agreement apply to CDMA iPhones as part of this deal but we are willing to provide a separate, significant sum of money as part of the chip deal. The structure and $1B (a huge number from our perspective) below is the entirety of our proposal.

Please give me a call anytime tomorrow if you would like to discuss.

steve

**From:** Jeff Williams <jwilliams@apple.com>
**Date:** Mon, 20 Dec 2010 13:04:13 -0800
**To:** Steve Mollenkopf <stevenm@qualcomm.com>
**Subject:** Re: revised proposal

Hi Steve,

Thanks. What about the CDMA rebate to $7.50? Is that proposal coming in a separate form? I know you guys didn't like our latest proposal.

On Dec 20, 2010, at 11:54 AM, Mollenkopf, Steven wrote:

Jeff,

I appreciate your patience this morning. Below is our proposal. We simplified the deal and adjusted the timing of the payments to better reflect the spirit of the collaboration. The earlier structure had almost the entire incentive paid before the end of 2012 which puts both of us at risk in 2013-2015.

Given that we are not aligned yet at the conceptual level, I thought it too early to exchange drafts and involve the legal teams.

Proposal:

- Transition fund of $125M/year for 2011 and 2012 payable quarterly with a liquidated damages clause if Maverick does not launch Trek, Mav3 and an LTE device using our chip before the end of 2012 (trying to reflect current state of business in these years)
- Rebate of [redacted] starting in 2013 with the following quarterly volume hurdles (both phones and tablets qualify, including LTE multi-mode):

    
    - [redacted] / quarter in 2013
    - [redacted] / quarter in 2014
    - [redacted] / quarter in 2015

- This rebate is capped at $750M for these 3 years, but would not have an annual cap.
- Termination clause in case of IP litigation (clause (ii) in section 1.4 of the document you sent over)

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC00564345
Q2017MDL1_00448730

CX5363-017

We think that the incentive should be directly tied to unit shipments so the payments do not get ahead of the business. This also helps address your concern that the pricing in the out-years is not known relative to the market (outside of the MFC protection which you already have).

This represents a total value of $1B over the 2011-2015 time period and is far beyond the comfort zone that we assumed going into the original discussions.

If you want to discuss it, please give me a call. I am out of touch until after 4 pm today (wife having minor surgery) and available all week otherwise. I would like to get this done.

steve

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC00564346
Q2017MDL1_00448731

CX5363-018