*Counsel Listed on Signature Page*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 5:17-cv-00220-LHK-NMC |
| Plaintiff, | **JOINT PRETRIAL STATEMENT** |
| vs. | DATE:     December 13, 2018 |
| QUALCOMM INCORPORED, a Delaware corporation, | TIME:     1:30 p.m. |
| Defendant. | CTRM:    Courtroom 8 |
| | JUDGE:  Hon. Lucy H. Koh |

1     Pursuant to the Court's Guidelines for Final Pretrial Conferences in Bench Trials and the

2   Court's October 24, 2018 Case Management Order (ECF No. 922), the Parties submit this Joint

3   Pretrial Statement.

4   **I.     Substance of the Action**

5         The Parties to this antitrust action are plaintiff Federal Trade Commission ("FTC"), a

6   United States government agency, and defendant Qualcomm Incorporated, a Delaware

7   corporation with its principal place of business in San Diego, California.  The operative pleadings

8   in this case are the FTC's Complaint (ECF No. 1) and Qualcomm's Answer (ECF No. 145).

9         ***FTC's position.***  The FTC asserts that Qualcomm has violated Section 5(a) of the FTC

10   Act, 15 U.S.C. § 45(a), which prohibits "[u]nfair methods of competition." The FTC asserts that

11   Qualcomm has held market and monopoly power in certain markets for modem chips, integrated

12   circuits that enable cellular communications in smartphones and other cellular products.[1] The

13   FTC further asserts that Qualcomm has maintained its market and monopoly power and harmed

14   competition through a course of anticompetitive conduct. Qualcomm has (1) conditioned the sale

15   of modem chips on customers' entry into and maintenance of patent licenses that include terms to

16   which customers would not agree absent Qualcomm's chip leverage, including unreasonably high

17   royalties that customers must pay on cellular products that include non-Qualcomm modem chips;

18   (2) in some instances, offered customers incentive funds to accept unreasonably high royalties

19   and other unfavorable license terms; (3) refused to make licenses to patents essential to

20   implementing cellular standards (cellular "SEPs") available to other modem chip suppliers, in

21   breach of commitments to do so; and (4) entered exclusive-dealing arrangements with Apple.

22         ***Qualcomm's position.***  Qualcomm denies the FTC's assertions.  Among other things,

23

---

24   [1] Throughout this statement, the FTC uses the term "modem chips" to be consistent with the
Court's prior decisions in this case. *See, e.g.,* Order Denying Motion to Dismiss, ECF No. 134, at
25   2 n.1; Order Granting FTC's Motion for Partial Summary Judgment, ECF No. 931, at 1-2.
Qualcomm does not object to the use of the term "modem chips" (for the purposes of this Joint
26   Pretrial Statement) as long as it is not understood to mean something different from "baseband
processors", which is the term the FTC used to define the alleged antitrust markets in its
27   Complaint.

28

Qualcomm asserts that the FTC's alleged worldwide markets for CDMA and "premium LTE" baseband processors are not proper antitrust markets;[2] that it does not have market power in either of these ill-defined markets; that the terms of Qualcomm's license agreements reflect the well-established market value of its patent portfolio, comply with Qualcomm's FRAND commitments, and do not include unreasonably high royalties; that Qualcomm has abided by and continues to abide by its commitments to cellular standard-development organizations; that Qualcomm's conduct is lawful and supported by legitimate business and economic justifications; that none of the four conducts identified by the FTC has had or currently has any anticompetitive effects; that the FTC cannot prove a violation of the FTC Act that is ongoing or likely to recur; and that the injunctive relief sought by the FTC would be unsupported by the facts or any balancing of the equities, would be contrary to the public interest, and not properly tailored to address the harms alleged by the FTC, even if the FTC could prove any or all of them.

* * *

**FTC's position.**  On November 6, 2018, the Court granted the FTC's motion for partial summary judgment. The Court held that the intellectual property rights policies of two U.S.-based standard setting organizations "require Qualcomm to license its SEPs to modem chip suppliers." (ECF No. 931 at 25.)  The issues decided by the Court on partial summary judgment should not be addressed at trial.

**Qualcomm's position**.  In its Motion for Partial Summary Judgment, the FTC represented that it was not seeking summary judgment on "the competitive effects of Qualcomm's [alleged] refusal to license its competitors" because those "effects must be evaluated at trial"; nor did the FTC seek "to establish that Qualcomm has an antitrust duty to deal with its competitors".  (ECF

---

[2] The FTC states that this action involves allegations of market or monopoly power in "certain markets for modem chips".  The FTC's Complaint alleged two antitrust markets in which Qualcomm is alleged to have had market or monopoly power:  (1) "baseband processors that comply with CDMA standards", and (2) "premium baseband processors, which comply with advanced LTE standards".  (Compl. ¶ 31.)  The FTC has refused to confirm in this Joint Pretrial Statement that this action concerns only the two baseband processor markets alleged in the Complaint.  Qualcomm will object to any attempt by the FTC to expand the scope of its claims to allege abuse of market or monopoly power in any market that it has not alleged.

No. 792 at 1.)  The FTC conceded that both these subjects would have to be "addressed at trial". (ECF No. 792 at 1.)  Qualcomm would oppose any effort by the FTC to bar Qualcomm from presenting evidence at trial bearing on these or other issues that were not resolved by the Court's Order on partial summary judgment.

II.  **Relief Sought**

A.  **Relief Sought by the FTC**

The FTC seeks a declaration and adjudication that Qualcomm's conduct violates Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). In addition, the FTC seeks permanent injunctive and other equitable relief that would redress and prevent recurrence of Qualcomm's conduct, including an order that would at least:

- Prohibit Qualcomm from conditioning the supply of modem chips on a customer's patent-license status;

- Require Qualcomm to negotiate or renegotiate, as applicable, license terms with customers in good faith under conditions free from the threat of lack of access to or discriminatory provision of modem chip supply or associated technical, software, or other support;

- Require Qualcomm to submit, as necessary, to arbitral or judicial dispute resolution to determine reasonable royalties and other license terms should a customer choose to pursue such resolution;

- Require Qualcomm to make exhaustive SEP licenses available to modem-chip suppliers on fair, reasonable, and non-discriminatory terms and to submit, as necessary, to arbitral or judicial dispute resolution to determine such terms;

- Prohibit Qualcomm from discriminating or retaliating in any way against any modem-chip customer or modem-chip supplier because of a dispute with Qualcomm over license terms or because of a customer's license status;

- Prohibit Qualcomm from making payments or providing other value contingent on a customer's agreement to license terms;

- Prohibit Qualcomm from entering express or *de facto* exclusive-dealing agreements for the supply of modem chips;

- Prohibit Qualcomm from interfering with the ability of any customer to communicate with a government agency about a potential law enforcement or regulatory matter;

- Require Qualcomm to adhere to compliance and monitoring procedures and appropriate "fencing in" provisions, including but not limited to a potential firewall between patent licensing and chip personnel; and

- Impose any other relief that the Court finds necessary and appropriate to redress and prevent recurrence of Qualcomm's conduct.

The FTC believes that that the above list is sufficiently detailed and that the Court is not restrained in its ability to fashion appropriate and effective relief.

### B.   Qualcomm's Position

This Court's Guidelines for Final Pretrial Conferences in Bench Trials require that the Joint Pretrial Statement contain a "detailed statement of all relief claimed".  (Paragraph B(2).) Qualcomm reserves the right to object to any attempt by the FTC to seek any relief not expressly detailed in this Joint Pretrial Statement.

In any event, Qualcomm denies that the FTC is entitled to any relief and seeks judgment in its favor on all of the FTC's claims and requests for relief.  Even if the Court were to find a violation of the FTC Act, the injunctive relief the FTC seeks (to the extent articulated above) would be unsupported by any balancing of the equities, would be contrary to the public interest and would not be properly tailored to address the harms alleged by the FTC.

### III.   Undisputed Facts

The Parties have stipulated to the facts appearing in Exhibit A hereto.

### IV.   Disputed Factual Issues

The following factual issues (or mixed issues of fact and law) are disputed:

- Whether the alleged worldwide market for CDMA modem chips and alleged worldwide market for "premium LTE" modem chips constitute properly defined antitrust markets;

- Whether Qualcomm had or has monopoly power in the alleged worldwide markets for CDMA modem chips and "premium LTE" modem chips.

**FTC's Separate Statement of Disputed Factual Issues**

- Whether Qualcomm has held market power with respect to CDMA and premium LTE modem chips;

- Whether Qualcomm has maintained a policy of requiring modem-chip customers to enter and maintain a separate patent license agreement with Qualcomm, including a license to Qualcomm's cellular SEPs ("no license-no chips");

- Whether Qualcomm has offered incentive funds tied to customers' acceptance of patent license terms;

- Whether Qualcomm has refused to make cellular SEP licenses available to competing modem-chip suppliers;

- Whether Qualcomm's "no license-no chips" policy, its use of incentive funds, and its refusal to make licenses available to modem-chip suppliers have contributed to unreasonable royalties and other license terms, including royalties paid on the sale of cellular products that include non-Qualcomm modem chips;

- Whether agreements that Qualcomm entered with Apple in 2011 and 2013 conditioned payments from Qualcomm to Apple on Apple's exclusive use of Qualcomm modem chips in new Apple products; and

- Whether Qualcomm's licensing policies and practices and its agreements with Apple, taken as a whole, have tended to hamper competition or maintain a monopoly in modem-chip markets.

**Qualcomm's Separate Statement of Disputed Factual Issues**

- Whether any monopoly power in the alleged worldwide CDMA or "premium LTE" baseband processor markets resulted from a superior product, business acumen or historic accident rather than from exclusionary conduct;

- Whether Qualcomm's license agreements reflect the well-established market value of Qualcomm's portfolio of cellular SEPs, non-cellular SEPs and non-standard essential

1    patents relevant to cellular devices;

2    • Whether Qualcomm's challenged licensing practices caused Qualcomm's licensees to

3    agree to pay royalties to Qualcomm that were supra-FRAND;

4    • Whether Qualcomm's conduct with respect to licensing baseband processor suppliers

5    resulted from a decision to alter a voluntary and profitable course of conduct with

6    anticompetitive malice and the intent to maintain a monopoly;

7    • Whether Qualcomm's practice of licensing its SEPs only for the manufacture and sale

8    of complete devices, and neither licensing nor asserting its SEPs with respect to the

9    manufacture and sale of components, harms competition in any properly defined

10   antitrust market for baseband processors;

11   • Whether Qualcomm's challenged licensing practices caused, are causing, and are

12   likely to continue to cause, a substantial diminution in the demand for the baseband

13   processors of any Qualcomm competitor;

14   • Whether Qualcomm's challenged licensing practices caused any competitor of

15   Qualcomm to exit any well-defined antitrust market for baseband processors, not to

16   enter any well-defined antitrust market for baseband processors or to lose (or fail to

17   gain) substantial market share in any well-defined antitrust market for baseband

18   processors;

19   • Whether certain agreements that Qualcomm entered with Apple in 2011 and 2013 (the

20   "Apple Agreements") have prevented or currently prevent any Qualcomm competitor

21   from supplying baseband processors to Apple;

22   • Whether the Apple Agreements could have prevented any as-efficient baseband

23   processor competitor of Qualcomm from supplying Apple;

24   • Whether the Apple Agreements have prevented or currently prevent any Qualcomm

25   competitor from supplying baseband processors to any other manufacturer of cellular

26   devices;

27   • Whether the Apple Agreements have foreclosed or currently foreclose a substantial

28   share of the alleged CDMA or "premium LTE" markets for baseband processors;

- Whether Qualcomm's conduct has willfully monopolized the alleged worldwide CDMA or "premium LTE" baseband processor markets, to the extent these markets are properly defined;

- Whether Qualcomm's conduct, and any alleged effect thereof, is likely to recur;

- Whether Qualcomm's conduct is pro-competitive or supported by legitimate business or economic justifications; and

- Whether the FTC has proven that the injunctive relief it seeks is necessary and properly tailored to address proven harm, is supported by the balancing of the equities and is consistent with the public interest.

## V.    Agreed Statement

The Parties concur that no part of the action may be presented upon an agreed statement of facts.

## VI.    Stipulations

The Parties have reached agreement, or are discussing proposed agreements, regarding the following issues:

### A.    Objections to Proposed Evidence

The Parties have agreed to exchange objections to proposed trial exhibits on December 7, 2018, to exchange deposition counter-designations and objections to deposition designations on December 10, 2018 and to exchange objections to deposition counter-designations on December 17, 2018.

With respect to objections at trial, the Parties will proceed according to the schedule set forth in the Court's October 24, 2018 Case Management Order (ECF No. 922 at 2):

- By 8:00 a.m. two days before any given demonstrative, exhibit, deposition testimony, or live testimony ("HPO evidence") will be introduced or used at trial, the Parties shall exchange such HPO evidence (which in the case of live testimony means identifying the live witnesses who will testify). As described below in Part B, the Parties have agreed to exchange final designations of deposition testimony earlier than contemplated by the October 24 Case Management Order and otherwise will follow

the HPO evidence procedure with respect to deposition testimony.

- By 7:00 p.m. that same day, the Parties shall meet and confer in person to discuss objections to the HPO evidence and to try to narrow or eliminate their disputes.

- By 8:00 a.m. one day before the HPO evidence will be introduced or used at trial, the Parties shall concurrently file high priority objections and responses to the opposing party's high priority objections.

**B.**    **Disclosure of Final Deposition Designations**

The Parties have agreed that the party proposing to play videotaped deposition testimony must disclose its final designations no later than 8:00 a.m. four days before the testimony is scheduled to be presented, and that the opposing party must respond with final counter-designations 8:00 a.m. two days before the testimony is scheduled to be presented.

**C.**    **Sealing Motions**

The Parties will follow the procedures for filing administrative motions to file under seal set forth in Court's September 5, 2018, and October 24, 2018 Orders.  (*See* ECF Nos. 821, 922.) The Parties are discussing procedures to notify third parties regarding the potential use of third-party Protected Material at trial, and to facilitate the receipt of sealing requests from third parties. The Parties have agreed to provide notice to relevant third parties of any currently designated testimony or exhibits containing third-party Protected Material that either Party anticipates using at trial by 8:00 a.m. two days before the third-party Protected Material will be introduced or used at trial, so that they may seek an order protecting the Protected Material from public disclosure at trial if they opt to do so.  Giving notice to any affected third parties, the Parties will file a joint motion for an order amending any Supplemental Protective Orders imposing different requirements than provided herein.

The Parties request guidance from the Court on its preferred approach for addressing sealing requests at trial.

**D.**    **Authenticity**

The Parties have agreed that, absent any specific good-faith written objection to the authenticity of a document, (1) documents produced by non-parties from the non-parties' files

1   and (2) documents produced by Qualcomm in this action or in the course of the FTC's pre-

2   complaint investigation, FTC File No. 141-0199, shall be presumed to be authentic within the

3   meaning of Federal Rule of Evidence 901. (*See* Stipulated Order re: Discovery of ESI, ECF

4   No. 142 at 10-11.)

5       **E.    Order of Live Testimony**

6   *FTC's Position*

7       While the FTC's preference is that a Party's cross or redirect examination be limited to

8   matters within the scope of a witness's direct examination, the FTC is willing to agree—for the

9   convenience of Qualcomm's live witnesses—that each live fact witness may only be called once,

10  on the condition that the agreement is reciprocal. That is, each Party would agree to waive

11  objections that the opposing Party's cross or redirect examination of any witness called in its case

12  concerns matters outside the scope of direct examination. While, as Qualcomm notes below, the

13  FTC will call witnesses it intends to elicit direct testimony from as part of its case in chief, it may

14  seek to elicit rebuttal testimony from Qualcomm live witnesses who appear for the first time

15  during Qualcomm's case, and accordingly seeks a reciprocal agreement on any waiver of

16  objections.

17  *Qualcomm's Position*

18      For the convenience of the fact witnesses who will testify live at trial—whether from

19  Qualcomm or a third party—Qualcomm and the FTC discussed agreeing, as is typical, that all

20  fact witnesses may only be called once, except for rebuttal testimony or for good cause shown.

21  To facilitate this agreement, Qualcomm has asked the FTC to agree that Qualcomm's cross-

22  examination of a witness called in the FTC's case may concern matters outside the scope of the

23  FTC's direct examination.  The FTC, however, has taken the position that, in exchange,

24  Qualcomm must waive all objections to the scope of any cross-examinations the FTC conducts

25  during Qualcomm's case (*i.e.*, that during Qualcomm's case, the FTC be permitted to elicit direct

26  testimony on any topic from witnesses Qualcomm calls, even though the FTC already will have

27  rested its case).  Such a waiver is not necessary to implement the Parties' agreement that each live

28  fact witness be called only once, and the FTC's proposed course of action would not be

warranted, fair or efficient.  If the FTC intends to elicit direct testimony from any live fact witness, then it should call that witness during its case-in-chief, rather than waiting to elicit such direct testimony during Qualcomm's case.   Moreover, to the extent the FTC suggests its position is warranted so as to allow the FTC "to elicit rebuttal testimony from Qualcomm live witnesses who appear for the first time during Qualcomm's case", such rebuttal testimony itself should be limited to the scope of Qualcomm's direct examination of its witnesses.  In any event, the FTC's desire to seek rebuttal testimony during Qualcomm's case does not warrant requiring Qualcomm to waive *all* objections that the FTC's cross-examination has exceeded the scope of direct testimony.

### F.    Foreign Language Deposition Testimony

Subject to the Court's approval, foreign-language videotaped deposition testimony will be played with (1) questions in English; and (2) answers in the witness's language, along with subtitled English translations, provided that the Parties are capable of timely preparing reasonably comprehensible videotapes with such subtitles.[3]

### G.    Other

The Parties will continue to discuss potential stipulations that may promote efficiency and streamline the trial.

## VII.   Witnesses to be Called

The Parties exchanged preliminary witness lists on November 9, 2018, and exchanged lists of additional witnesses on November 21, 2018.  The FTC's witness list is attached as Exhibit B.  Qualcomm's witness list is attached as Exhibit C.[4] The Parties hope to reach agreement regarding which current and former Qualcomm employees on the Parties' witness lists will be available at trial, along with when these witnesses will be available. Should any witness not agree to appear, each party reserves the right to seek to compel the witness's attendance to the extent permitted by Rule 45.

---

[3] Some third-party witnesses testified in Korean and Chinese.
[4] The FTC objects to Qualcomm's purported reservation of rights regarding its witness list to the extent those "rights" contravene this Court's standing order.

*FTC Position*

In September, the FTC requested information regarding the availability at trial of Qualcomm witnesses, including eight former Qualcomm employees represented by Qualcomm's counsel at deposition (Messrs. Steve Altman, Derek Aberle, Paul Jacobs, Jeff Altman, Eric Reifschneider, Marv Blecker, Irwin Jacobs, and Michael Hartogs). In response to the FTC's repeated inquiries over the following weeks, Qualcomm's counsel consistently represented that they were investigating each individual's availability, and gradually provided information regarding five of the eight witnesses (three of whom Qualcomm has agreed to make available). In response to each of the FTC's multiple inquiries Qualcomm's counsel represented that they were investigating the availability of the witnesses whose availability had not yet been confirmed. The FTC's November 8 initial witness list identified each of the former employees at issue as "Live Witnesses Represented by Qualcomm's Counsel," and Qualcomm's counsel provided no indication that their representation of any of these individuals had ceased. On November 19, the FTC yet again asked Qualcomm's counsel to "[p]lease confirm that Qualcomm will make available Derek Aberle, Paul Jacobs, Steve Altman, and [other witnesses represented by Qualcomm's counsel] for trial testimony on [specified dates]…" Nov. 19, 2018 email from D. Matheson.

The FTC repeated its request on November 23, and again Qualcomm's counsel represented that they were investigating the witness' availability. Finally, on Sunday November 25, Qualcomm's counsel reported for the first time that they were "not authorized to accept trial subpoenas" for Mr. Aberle and Mr. Steve Altman. Nov. 25 email from G. Bornstein ("on the [November 23] call we confirmed that we would be making Eric Reifschneider, Michael Hartogs and Irwin Jacobs available for trial . . . [o]n the call we stated that we were not then authorized to accept trial subpoenas for Derek Aberle, Steve Altman and Paul Jacobs"). In response to the FTC's further inquiry on November 25, Qualcomm's counsel announced for the first time on November 26 that it does not represent Mr. Aberle and Mr. Steve Altman. The FTC is now in the process of seeking to serve Messrs. Aberle and Altman, both residing in San Diego, with trial subpoenas and will take the position that they should be commanded to attend trial. *See* Fed. R.

1  Civ. P. 45(c).

2  ***Qualcomm Position[5]***

3         Qualcomm has stated that it will make current employees appearing on the FTC's witness

4  list available for trial, subject to reasonable arrangements regarding notice and scheduling.

5  Further, Qualcomm has repeatedly informed the FTC that it will seek the cooperation of former

6  employees but does not have the power to compel their attendance.  Accordingly, Qualcomm

7  provided definitive responses with respect to former employees once it had them, making clear

8  that it continues to endeavor to obtain the agreement of other former employees.

9         In the FTC's position above, the FTC incorrectly suggests that Qualcomm somehow has

10  hampered the FTC's efforts to seek the trial attendance of former Qualcomm employees

11  Derek Aberle and Steve Altman.  Between September and November, Qualcomm repeatedly

12  informed the FTC that, despite its ongoing efforts, Qualcomm had not been able to obtain the

13  agreement of Messrs. Aberle and Altman to appear at trial.  Nothing prevented the FTC from

14  attempting to subpoena Messrs. Aberle and Altman during that period; Qualcomm merely

15  conveyed that it continued its efforts to obtain their agreement to appear voluntarily.  The FTC

16  misleadingly states that "Qualcomm's counsel announced for the first time on November 26 that

17  it does not represent Mr. Aberle and Mr. Steve Altman".  However, the FTC did not ask

18  Qualcomm's counsel whether it represented Messrs. Aberle and Altman in connection with any

19  potential trial testimony ***until the day before, November 25, 2018***.  (Nov. 25, 2018 email from D.

20  Matheson ("Thanks for the information.  Please confirm whether Cravath represents Mr. Aberle

21  and Mr. Steve Altman in connection with this matter.").)[6]  Further, whether Qualcomm's counsel

22  represented those individuals had no bearing on the FTC's ability to seek their attendance by

23

24  ─────────────

[5] The FTC provided a completely re-written version of its position on this issue at 11:46 p.m. on the due date of this Joint Pretrial Statement, so Qualcomm was unable to fully respond to the FTC's position in a timely fashion.

25

26  [6] The FTC refers to its own witness list in which the FTC stated that Messrs. Aberle and Altman were "represented by Qualcomm's counsel".  But that was not a representation by Qualcomm's counsel, and before November 25, the FTC never inquired about representation of Messrs. Aberle or Altman, even though Qualcomm's counsel informed the FTC that it had not yet been able to secure either former employee's attendance at trial.

27

28

1    subpoena.

2    **VIII.   <u>Exhibits, Schedules, Summaries</u>**

3    The Parties exchanged preliminary lists of exhibits other than solely for impeachment or

4    rebuttal on November 9, 2018, and exchanged lists of additional exhibits other than solely for

5    impeachment or rebuttal on November 21, 2018.  On November 27, 2018, the Parties exchanged

6    lists of 450 trial exhibits other than solely for impeachment or rebuttal pursuant to the Court's

7    October 24, 2018 Case Management Order.  (*See* ECF No. 922 at 1.)  The FTC's Exhibit List is

8    attached as Exhibit D. Qualcomm's Exhibit List is attached as Exhibit E.  The Parties' Joint

9    Exhibit List is attached as Exhibit F. Pursuant to Paragraphs D(1)(a) and D(1)(b) of the Court's

10   Guidelines, which require the exchange and stamping of the Parties' trial exhibits, the Parties

11   have agreed to deem stamped and exchanged any trial exhibits that were previously produced in

12   this action, and have stamped and exchanged all trial exhibits that were not previously produced

13   in this action.  The Parties will deliver pre-marked exhibits listed in this Joint Pretrial Statement

14   to the Court on December 28, 2018, pursuant to Paragraph D(1)(c) of the Court's Guidelines.

15   **IX.   <u>Disputed Legal Issues</u>**

16   The following legal issues (or mixed issues of fact and law) are disputed:

17   - Whether the alleged worldwide market for CDMA modem chips and alleged

18       worldwide market for "premium LTE" modem chips constitute properly defined

19       antitrust markets;

20   - Whether Qualcomm had or has monopoly power in the alleged antitrust worldwide

21       markets for CDMA and "premium LTE" modem chips; and

22   - Whether the FTC is entitled to injunctive and other equitable relief.

23   **<u>FTC's Separate Statement of Disputed Legal Issues</u>**

24   - Whether Qualcomm has held market power with respect to CDMA and premium LTE

25       modem chips;

26   - Whether Qualcomm's conduct is anticompetitive;

27   - Whether Qualcomm's conduct constitutes monopolization in violation of Section 5(a)

28       of the FTC Act (corresponding to a violation of Section 2 of the Sherman Act, 15

1  U.S.C. § 2);

2  • Whether through license and other agreements with its customers Qualcomm has

3  entered unreasonable restraints of trade in violation of Section 5(a) of the FTC Act

4  (corresponding to a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1); and

5  • Separate and apart from whether Qualcomm's conduct constitutes unlawful

6  monopolization or unreasonable restraint of trade, whether the conduct violates

7  Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

8  **Qualcomm's Separate Statement of Disputed Legal Issues**

9  • Whether conduct that does not violate either Sections 1 or 2 of the Sherman Act, 15

10  U.S.C. §§ 1-2, may violate Section 5(a) of the FTC Act, 15 U.S.C § 45(a);

11  • Whether Qualcomm had or has any obligation to make available exhaustive cellular

12  SEP licenses to manufacture or sell baseband processors pursuant to its commitments

13  to ETSI or to other cellular standards-development organizations;

14  • Whether Qualcomm has any antitrust duty to deal with its baseband processor

15  competitors and, if so, whether Qualcomm has violated such a duty to deal;

16  • Whether Qualcomm's conduct is pro-competitive or supported by legitimate business

17  or economic justifications;

18  • Whether the FTC has proven a violation of the FTC Act that is ongoing or likely to

19  recur; and

20  • Whether, after balancing the equities and considering the public interest and other

21  equitable principles, the FTC is entitled to the injunctive and other equitable relief it

22  seeks pursuant to Section 13(b) of the FTC Act.

23  **X.   Further Discovery or Motions**

24  The Parties currently do not contemplate further discovery or motions that must be

25  resolved prior to trial apart from motions *in limine* filed today, November 29, 2018, and potential

26  sealing motions relating to evidence and testimony to be presented at trial.

27  The Parties have completed briefing on the following motions. The Court took the

28  motions under submission on October 12, 2018 (ECF No. 900):

- FTC's Motion To Exclude Expert Testimony of Dr. Edward A. Snyder;[7]

- FTC's Motion To Exclude Expert Testimony of Professor Aviv Nevo;[8]

- Qualcomm's Motion To Strike Portions of Rebuttal Expert Report of Dr. Robert Akl;[9] and

- Qualcomm's Motion To Exclude Expert Reports of Richard L. Donaldson.[10]

Pursuant to the Court's October 24, 2018 Case Management Order (ECF No. 922 at 2), the Parties filed simultaneous briefs regarding post-discovery evidence on October 31, 2018, [11] and simultaneous responsive briefs regarding post-discovery evidence on November 7, 2018.[12]

## XI.   Disputed Evidentiary Issues

Including but not limited to evidentiary issues raised in the Parties' respective motions *in limine*, the Parties identify the following evidentiary disputes:

### A.   FTC's Statement of Disputed Evidentiary Issues

The FTC identifies the following evidentiary issues that it intends to raise at trial:

- Joint Exhibit List

*FTC's Position*

The Court has limited the parties to a maximum of 550 exhibits at trial:  150 per side, plus 250 exhibits to be introduced from an agreed-upon joint exhibit list.  The parties have been unable to agree on the purpose of the joint exhibit list and thus have been able to agree on only 126 joint exhibits.

The FTC understands that the purpose of the joint exhibit list is to identify documents to which neither party has a substantive objection, so that both parties have available at trial up to 250 documents from a joint list that are (i) admissible, and (ii) anticipated to be used with trial witnesses.  For example, some of Qualcomm's contracts with OEMs were the subject of

---

[7] ECF No. 788 (Motion); ECF No. 874 (Opposition); ECF No. 891 (Reply).
[8] ECF No. 790 (Motion); ECF No. 873 (Opposition); ECF No. 889 (Reply).
[9] ECF No. 797 (Motion); ECF No. 866 (Opposition); ECF No. 894 (Reply).
[10] ECF No. 799 (Motion); ECF No. 868 (Opposition); ECF No. 896 (Reply).
[11] ECF No. 928 (FTC's Brief); ECF No. 929 (Qualcomm's Brief).
[12] ECF No. 932 (FTC's Response Brief); ECF No. 933 (Qualcomm's Response Brief).

deposition testimony during discovery.  These documents are indisputably authentic, admissible, and at trial will be the subject of either live testimony or designated video deposition testimony. Qualcomm has refused to include such documents on the joint exhibit list, despite the fact that Qualcomm has no substantive objection.  Likewise, certain of Qualcomm's 10-Ks may be used with live witnesses at trial, yet Qualcomm has refused to include its own 10-Ks on a joint exhibit list.  Qualcomm asserts that it can oppose inclusion on a joint exhibit list any document that it deems unfavorable to its positions, even if the document is plainly relevant and it has no cognizable objection to the admission of the document. The FTC disagrees.

On November 8, the FTC proposed to Qualcomm candidates for a joint exhibit list comprising a good-faith list of Qualcomm license and supply agreements with third parties that had been identified by the parties in initial disclosures, and other indisputably admissible documents (*e.g.*, Qualcomm's 10-Ks and commitment letters to SSOs).  Qualcomm, on the other hand, made no proposal regarding any joint exhibits, and did not even seek to meet and confer regarding any joint exhibits, contrary to Qualcomm's October 24 assertion to the Court that the parties were "working on a joint exhibit list."  Tr. 5:17-18.  ("we're working on that, Your Honor . . . we're working on a joint exhibit list . . .").

Qualcomm made no counter-proposals regarding joint exhibits until November 20, when Qualcomm rejected essentially every document proposed by the FTC that was *not* a commercial contract, and proposed filling the joint list entirely with (i) SSO-related documents proposed by Qualcomm and (ii) commercial agreements (many of which are of little to no relevance to any issue in the case).[13]  In a good-faith effort at compromise, the FTC accepted dozens of Qualcomm's proposed additions, including many of Qualcomm's proposed documents related to standard-setting.  But the FTC refused to accede to *all* of Qualcomm's repetitive license agreements, as that would have resulted in a "joint list" consisting of essentially zero documents proposed by the FTC except for commercial contracts acceptable to Qualcomm.

---

[13] Qualcomm proposed adding dozens of licenses to the joint exhibit list with small companies that were not identified in its initial disclosures, including companies that either never made royalty payments or made *de minimis* payments.

The FTC proposed to Qualcomm a number of alternative approaches (including but not limited to offers to stipulate to the content of repetitive documents) that would limit the total number of exhibits introduced at trial to a maximum of 550, while ensuring that both parties are able to introduce unobjectionable evidence through trial witnesses.  But Qualcomm has rejected all of the FTC's proposals, and flatly refused to add to the "joint" list clearly admissible documents proposed by the FTC that are non-prejudicial and helpful to both sides.  Thus, the "joint" exhibit list the parties are submitting to the Court contemporaneously with this filing consists of little more than:  (i) a subset of the license agreements proposed by the FTC on November 8; (ii) license agreements proposed by Qualcomm on November 21; (iii) other Qualcomm-proposed documents such as standard-setting-related documents; and (iv) documents common to both parties' individual lists.  The "joint" list excludes numerous important commercial contracts, it excludes numerous license agreements the FTC proposed that will be the subject of trial testimony, and it excludes uncontroversial documents such as Qualcomm's 10-Ks that could assist both parties' trial presentations.

The FTC requests that the Court adopt one of the FTC's two proposals, both of which Qualcomm has rejected:

(1)     The FTC's preferred approach:  The current joint exhibit list identifies 126 joint exhibits.  The FTC proposes that the parties each propose 62 additional joint exhibits that it believes in good faith are not subject to a serious dispute regarding admissibility (half of the remaining slots for each party).  The FTC intends to propose adding to the joint exhibit list admissible documents such as:  Qualcomm's supply agreements; Qualcomm's 10-K filings; Qualcomm's license agreements; and final materials submitted to or approved by Qualcomm's Board of Directors.  The FTC is prepared to immediately present a list of such documents to the Court.

Qualcomm has suggested that the FTC's approach would evade the Court's exhibit limits, but this is untrue:  many of the documents the FTC proposes to add to the joint exhibit list currently appear on the FTC's pretrial list of 450 potential exhibits, and the FTC will not replace documents on its pretrial list of 450.  The FTC will simply have less than 450 documents on its

1    pretrial list (from which it can introduce a maximum of 150).

2            (2)    In the alternative:  each party identifies 125 proposed joint exhibits that it believes

3    are not subject to a serious dispute regarding admissibility.  The parties will eliminate duplicates

4    from the list (without replacing an eliminated duplicate), and the parties promptly provide to the

5    Court the resulting list of 250 or fewer joint exhibits.

6            If the above proposals are not acceptable to the Court, the FTC requests that the Court

7    order an alternative approach to exhibits, in recognition of the fact that the FTC bears the burden

8    of proof and thus may have a greater need than Qualcomm to introduce non-repetitive

9    documentary evidence.  For example, the Court could order that each side may introduce no more

10   than 275 exhibits.  This would limit the total number of exhibits introduced at trial to 550,

11   without allowing Qualcomm to restrict the FTC to only 150 documents, including documents of

12   undisputed admissibility.[14]

13   *Qualcomm's Position*

14           The FTC has failed to provide good-faith cooperation with Qualcomm in creating a

15   mutually agreeable joint exhibit list, instead treating the joint exhibit list as an extension of its

16   own list.  Contrary to the purpose of a joint exhibit list, which should include documents that are

17   both admissible *and potentially useful to both parties*—in other words, documents that are *joint*

18   exhibits—the FTC has sought to construct a joint exhibit list that includes only documents that it

19   believes support the FTC's position while denying Qualcomm the ability to add documents that

20   support its defense.  For example, the FTC proposed to include on the joint exhibit list over 100

21   Qualcomm agreements selected by the FTC, but then refused to include on the joint exhibit list

22   the vast majority of a similar number of license agreements that had been proposed by

23   Qualcomm, claiming that they are "repetitive" or unimportant.  But the FTC cannot reasonably

24   
_____

25   [14] Qualcomm asserts that the FTC included on its November 8 list "Complaints filed against
     Qualcomm," which Qualcomm claims are inadmissible.  This is misleading.  The FTC proposed
26   joint exhibits comprising discovery responses including Qualcomm's *Answers* to Complaints,
     with Complaints themselves included only to the extent required to understand Qualcomm's
27   Answers.  In any event, Qualcomm rejected the proposal and the FTC has abandoned it, thus it
     provides no excuse for Qualcomm's refusal to agree to exhibits that indisputably are admissible,
28   such as Qualcomm's component supply agreements with OEMs.

1   take the position that its preferred agreements are proper joint exhibits, whereas Qualcomm's

2   preferred agreements are not.  The FTC's assertion that Qualcomm seeks "to restrict the FTC to

3   only 150 documents" is accordingly baseless; Qualcomm agreed to a large number of the joint

4   exhibits proposed by the FTC, on the understanding that the FTC would agree to a similar number

5   of documents proposed by Qualcomm.  The FTC refused to reciprocate and insisted that its

6   proposed exhibits should be included on the joint list while most of Qualcomm's proposed

7   exhibits would be excluded.

8         Contrary to the FTC's professed understanding that the joint exhibits are meant to include

9   "documents as to which neither party has a substantive objection", the FTC's basis for rejecting

10   Qualcomm's proposed license agreements was not an evidentiary objection—indeed, it could not

11   object consistent with its current assertion (with which Qualcomm agrees) that license agreements

12   "are not subject to a serious dispute about admissibility".  Rather, the FTC stated that it believed

13   that the license agreements proposed by Qualcomm "would be of no benefit to the Court"—in

14   other words, it hoarded spots on the joint exhibit list for documents that it believed supported its

15   theory of the case, rather than Qualcomm's.  (Nov. 24, 2018 email from D. Matheson.)  The

16   FTC's suggestion in this Joint Pretrial Statement that the FTC rejected Qualcomm's proposal

17   because they were with "small companies" or "repetitive" of other license agreements only

18   confirms the FTC's goal of excluding from the joint exhibit list documents that would benefit

19   Qualcomm.  Qualcomm offered license agreements precisely because they demonstrate that

20   multiple companies have recognized the value of Qualcomm's portfolio, including at times when

21   they clearly had limited or no demand for Qualcomm's baseband processors.  And, in return for

22   the FTC's acceptance of those license agreements, Qualcomm proposed agreeing to the vast

23   majority of the agreements that had been proposed by the FTC.  The FTC unreasonably refused to

24   compromise in the fashion proposed by Qualcomm.

25         Further illustrating how the FTC has sought to use the joint exhibit as merely an extension

26   of its own exhibit list, the FTC has proposed including as "joint" exhibits documents that would

27   be useless to Qualcomm, such as Complaints and Answers filed in this action,  in the MDL action

28   and in the coordinated Southern District of California case between Qualcomm and Apple and its

contract manufacturers. And the FTC now proposes to force the addition of other "joint" exhibits that could *solely* benefit the FTC. For example, the FTC proposes that the Court allow it to include as "joint" exhibits Qualcomm's Form 10-Ks. The FTC has said it believes that statements in those documents are admissible against Qualcomm, but has not agreed that their contents would be admissible against the FTC and has not explained why it believes the 10-Ks and other documents like them could be "helpful to both sides".[15]

As demonstrated by the FTC's fundamentally unfair (and incorrect) assertion of "greater need than Qualcomm to introduce non-repetitive documentary evidence", the FTC merely seeks to evade the numerical limits the Court has placed (without objection by the FTC) on the introduction of exhibits from each party's individual exhibit list. The FTC's conduct is inconsistent with the purpose of the joint exhibit list; as the Court explained at the October 24, 2018 Case Management Conference, the Court allowed the joint exhibit list to "create an incentive that you reach agreement [on exhibits that may be admitted] and not fight". (Tr. 20:14-17.) Contrary to this goal, both of the FTC's proposed approaches would result in the joint exhibit list not being jointly agreed at all. Under the FTC's proposed option (1), the Parties would add up to 134 new exhibits that the Parties have not agreed on, many of which have never appeared on either Party's individual exhibit lists. Option (2) would apparently undo the Parties' agreement on existing joint exhibits *entirely* and would simply add 250 exhibits to the Parties' individual exhibit lists. The FTC has provided no good cause for the Court to alter its October 24, 2018 Order or for undoing the Parties' agreed joint exhibit list incorporated in the Joint Pretrial Statement after many weeks of work, and the FTC should not be rewarded for its lack of cooperation in identifying joint exhibits. The joint exhibits the Parties have agreed on

---

[15] The FTC's description of the Parties' negotiations regarding a joint exhibit list is incorrect. The FTC does not mention that, prior to November 8, the Parties had discussed principles that would inform creation of the joint exhibit list, such as agreeing to specific categories of documents such as license agreements. (*See* Oct. 17 Joint Case Management Statement at 4 (ECF No. 914) (reporting that the Parties "have met and conferred and have also agreed in principle to identify documents for inclusion on a joint exhibit list").) The FTC did not pursue further discussions on this topic, but instead unilaterally served a purported "joint" exhibit list that (as discussed above) contained a very large number of exhibits that Qualcomm is unable to rely upon and that appropriately belonged on the FTC's individual list.

1  should be maintained, and the FTC should not be permitted to identify any new "joint" exhibits to

2  which Qualcomm has not agreed.

3  • Evidence of Post-Discovery Facts

4  **FTC's Position**

5  For the reasons set forth in briefs the FTC filed on October 31 and November 7, 2018, the

6  FTC intends to object at trial to the use of cherry-picked documents from Qualcomm's own

7  confidential files that were created after the March 30, 2018 fact discovery deadline, and to the

8  use of any documents not timely produced.  (*See* ECF Nos. 928, 932 (FTC briefing on post-

9  discovery evidence).)

10  **Qualcomm's Position**

11  For the reasons set forth in briefs Qualcomm filed on October 31 and November 7, 2018,

12  Qualcomm opposes the FTC's request that the Court ignore evidence of events that occurred after

13  the close of fact discovery.  (ECF Nos. 929, 933.)  Such evidence is directly relevant to whether

14  any violation of the FTC Act is "ongoing or likely to recur", which the FTC must prove to obtain

15  an injunction under Section 13(b) of the FTC Act.  The FTC's accusation that Qualcomm seeks to

16  use "cherry-picked documents" is untrue:  Qualcomm made clear to the FTC months ago that it

17  believed evidence of current market conditions, including events occurring after the close of fact

18  discovery, would be necessary in a case seeking prospective injunctive relief, but the FTC

19  repeatedly rebuffed Qualcomm's efforts to discuss a process for refreshing the discovery record.

20  It would be error for the Court to consider issuing a Section 13(b) injunction while disregarding

21  events that have occurred after the close of fact discovery that establish current market conditions.

22  • Certain Witnesses

23  **FTC's Position**

24  Qualcomm has identified Mr. Robert Mansfield (of Apple) and Mr. Raj Varadarajan (of

25  Boston Consulting Group) on its witness list. Qualcomm did not identify Mr. Mansfield or Mr.

26  Varadarajan in its initial disclosures or in a January 31, 2018 letter updating these disclosures, and

27  thus Qualcomm is precluded from presenting testimony at trial from these witnesses. The Court

28  has denied requests for their out-of-time depositions. *See* July 20, 2018 Order, ECF No. 783 at 2.

1  The FTC is submitting a motion *in limine* addressing this issue.[16]

2  ***Qualcomm's Position***[17]

3      Contrary to the FTC's suggestion, the Court's July 20, 2018 Order did not address

4  Rule 37(c) or determine whether Messrs. Varadarajan or Mansfield could testify at trial, but

5  merely precluded the possibility of out-of-time depositions.  (ECF No. 783.)  Qualcomm

6  identified Messrs. Varadarajan and Mansfield as likely trial witnesses on June 18, 2018, to rebut

7  aspects of the FTC's case that the FTC did not disclose until after the close of fact discovery.

8  Both the FTC and Qualcomm served Rule 26 disclosures identifying witnesses from the Boston

9  Consulting Group (Mr. Varadarajan's employer) and Apple (Mr. Mansfield's employer), and both

10  sides' disclosures identified third-party witnesses by affiliation rather than by name.  No

11  applicable deadline required Qualcomm to provide a final list of witnesses it may call at trial prior

12  to the witness lists Qualcomm served on November 9 and November 21, 2018 pursuant to the

13  Court's Guidelines and the Parties' agreements, and no rule requires Qualcomm to place rebuttal

14  witnesses on its witness list *at all*.  (*See, e.g.*, Guidelines for Final Pretrial Conferences in Bench

15  Trials, Paragraph B(7) (requiring identification of witnesses to be called at trial "other than solely

16  for impeachment or rebuttal").)  Regardless, Qualcomm's disclosure of Mr. Varadarajan and Mr.

17  Mansfield on June 18, 2018 should be treated pursuant to Rule 37(c) as substantially justified or

18  harmless—because Qualcomm identified them to respond to and rebut belated disclosures by the

19  FTC.   Qualcomm will oppose the FTC's motion to exclude testimony by Messrs. Varadarajan

20  and Mansfield.

21      *Substantial justification*.  Each witness is being called to address matters that **the FTC** did

22  not disclose until after fact discovery.  In fact, Mr. Varadarajan's testimony is necessary to

23  address a declaration by Mr. Varadarjan **that the FTC produced to Qualcomm after the close of**

24

25  [16] The FTC objects to Qualcomm's inclusion in this joint pretrial statement of lengthy arguments
26  about disputes that will be the subject of *motions in limine,* which are page limited.
   [17] The FTC states that it objects to the inclusion of argument about matters that are the subject of
27  motions *in limine*, but the FTC did not identify its motions *in limine* (or cut back its own
   argument) until after 7:00 p.m. on the day this Statement was due and did not make that objection
28  until 11:46 p.m.—literally minutes before this Statement was due.

*fact discovery*.  The FTC seeks to use this belated declaration to permit the admission at trial of documents created by Mr. Varadarajan or others at the Boston Consulting Group ("BCG").  But the FTC improperly seeks to deny Qualcomm the opportunity to introduce testimony by Mr. Varadarajan concerning the very BCG documents the FTC will seek to have admitted.

Likewise, Mr. Mansfield's testimony is necessary to address information in interrogatory responses that the FTC *served after the close of fact discovery*, and only after an Order by Judge Cousins compelling it to do so.  In those post-discovery interrogatory responses, the FTC for the first time identified specific Apple products for which it contended that Apple could have used baseband processors supplied by Qualcomm's competitors.  Mr. Mansfield has unique, important knowledge regarding Apple's selection of baseband processors for those products, and Qualcomm expects his trial testimony to rebut the FTC's contentions.  The FTC seeks to deny the Court crucial testimony concerning whether Apple actually viewed these products as contestable by Qualcomm competitors, which is directly relevant to whether Qualcomm's alleged conduct foreclosed competition.

*Harmlessness.*  Any omission also is harmless because the FTC received productions of documents from these two individuals' files during fact discovery, it took testimony from Mr. Varadarajan during its pre-Complaint investigation, and it has access to information about Mr. Mansfield through its common interest agreement with Apple (including access to testimony Mr. Mansfield gave in the coordinated Southern District action).  The FTC will not be unfairly prejudiced by the Court's admission of testimony of which the FTC has had notice and that concerns the FTC's own contentions.

- Summary Exhibits

**FTC's Position**

Qualcomm has disclosed several proposed summary exhibits. The FTC intends to object to summary exhibits presented by Qualcomm at trial to the extent they summarize underlying materials that are not admissible (such as late-produced documents) are incomplete or otherwise do not fairly represent underlying materials, or are otherwise inconsistent with Fed. Rule Evid. 1006 or applicable case law. *See United States v. Rizk*, 660 F.3d 1125, 1130 (9th Cir. 2011)

1   (citing *Amarel v. Connell*, 102 F.3d 1494, 1516 (9th Cir. 1996)); *Davis & Cox v. Summa Corp.*,

2   751 F.2d 1507, 1516 (9th Cir. 1985).  Among other things, the "summaries" contain information

3   that does not appear in the source material.

4        The FTC will also object if Qualcomm seeks to introduce any summary exhibit through a

5   witness who cannot be cross-examined about its preparation. *See Frank Music Corp. v. Metro–*

6   *Goldwyn–Mayer, Inc.*, 772 F.2d 505, 515 n. 9 (9th Cir.1985) (stating that cross-examination gives

7   the opponent an opportunity to reveal any inaccuracies or omissions in the summary).

8   ***Qualcomm's Position***

9        Qualcomm disclosed summary trial exhibits pursuant to Federal Rule of Evidence 1006,

10  which permits the use of "a summary, chart or calculation to prove the content of voluminous

11  writings . . . that cannot be conveniently examined in court", and has identified the materials

12  underlying the exhibits.  The FTC has not identified any specific objections to Qualcomm's

13  summary exhibits (such as what information it believes "does not appear in the source material"),

14  and its general objections set forth above are contrary to Rule 1006 and the caselaw it cites.  *See,*

15  *e.g.*, *United States v. Rizk*, 660 F.3d 1125, 1130 (9th Cir. 2011) (requiring that (1) the materials

16  underlying a Rule 1006 summary be "admissible in evidence", and (2) the materials be "made

17  available to the opposing party for inspection"); *id*. at 1131 n.2 (overruling objection based on

18  contention that summaries did not include certain information the objector believed relevant,

19  which "goes to their weight rather than their admissibility").  Contrary to the FTC's suggestion,

20  *Frank Music* does not require that a summary exhibit be introduced through a witness who may

21  be cross-examined about its preparation, and even overruled an objection that a summary was

22  created by the party and not independently "verified", on the ground that Rule 1006 imposes no

23  such requirements.  *See Frank Music*, 772 F.2d at 515 n.9.  Qualcomm has produced the

24  underlying materials to the FTC, so the FTC has ample opportunity to challenge the accuracy of

25  the summaries.  *Id*. ("The requirements for Rule 1006 are met when the trial judge ascertains that

26  the underlying documents are made available for inspection.").

27       The FTC also disclosed summary exhibits pursuant to Rule 1006, and Qualcomm reserves

28  the right to lodge objections to the FTC's summaries on grounds permitted by Rule 1006 and

1    applicable caselaw by the deadline for exchanging objections set forth above.

2    •    Use of Videotaped Deposition Testimony at Trial

3    *FTC's Position*

4    Qualcomm has designated deposition testimony from witnesses that are within 100 miles

5    from the place of trial, or are otherwise not "unavailable" within the meaning of Fed. R. Civ. P.

6    32(4).  Based on the information currently available to the FTC, at least two witnesses on

7    Qualcomm's witness list, Chris Johnson and Taraneh Maghame, are located within 100 miles of

8    the place of trial. To the extent Qualcomm seeks to play such deposition testimony in lieu of live

9    testimony from available witnesses, the FTC will object pursuant to Fed. R. Civ. P. 32.

10    Qualcomm has also designated deposition testimony from witnesses who testified as

11    corporate representatives under Federal Rule of Civil Procedure 30(b)(6), including Chris

12    Johnson, Taraneh Maghame, Ranae McElvaine, Ilkka Rahnasto, Dirk Weiler, and Martin Zander.

13    The FTC intends to object to any Rule 30(b)(6) testimony offered at trial that is not based on

14    personal knowledge. *See* Fed. Rule Evid. 602. The fact that the FTC took discovery depositions

15    pursuant to Rule 30(b)(6) does not waive Rule 602; nor was the FTC obligated to raise objections

16    about Qualcomm's improper use of Rule 30(b)(6) testimony at trial during discovery.

17    *Qualcomm's Position*

18    The FTC did not identify which depositions it believed were subject to its Rule 32(a)

19    objections until weeks after Qualcomm served designations of those depositions.  With respect to

20    Mr. Johnson, the deponent pursuant to Rule 30(b)(6) was his employer, Bain & Company, not

21    Mr. Johnson personally.  Bain is headquartered in Boston, which is not within 100 miles of the

22    Court.  With respect to Ms. Maghame, Qualcomm understands that the FTC has been in

23    discussions with her counsel regarding waiving any objection to the use of her deposition, to

24    avoid burden to her third-party employer Via Licensing.  Qualcomm believes that it would be

25    efficient to the Court and less burdensome to third parties for the FTC to forego any objections

26    based on Rule 32(a) for these witnesses.  However, Qualcomm has reserved the right to call

27    Ms. Maghame or Mr. Johnson live at trial if the FTC stands on its objections and they are

28    sustained by the Court, and the witnesses are included on Qualcomm's live witness list.

1    The FTC's objections to testimony provided by witnesses pursuant to Rule 30(b)(6) are

2    misplaced because that Rule allows an organizational entity such as a corporation to testify

3    through a representative concerning "information known or reasonably available to the

4    organization".  The FTC has cited no law excluding such deposition testimony at trial on the

5    ground that it is "not based on personal knowledge" of the corporate representative rather than of

6    the organization being deposed.  The FTC belatedly raised its objection based on the corporate

7    representatives' lack of personal knowledge months after discovery closed, even though the FTC

8    itself took depositions pursuant to Rule 30(b)(6).  To the extent that the Court is inclined to

9    entertain the FTC's objections, the Court should consider such objections in the context of

10   particular testimony that is actually offered by Qualcomm at trial.

11        •    Testimony of Dr. Bertram Huber

12   **FTC's Position**

13        Qualcomm has indicated that it intends to present testimony from Dr. Bertram Huber at

14   trial.  At deposition, Dr. Huber testified that his opinions are limited to his critique of the FTC's

15   experts' positions "specifically vis-a-vis the ETSI IPR Policy." Aug. 8, 2018 Deposition of Dr.

16   Bertram Huber at 57:16-58:7.  Dr. Huber attended ETSI meetings and should not be able to

17   testify to his recollections of those meetings as a percipient witness.  *See* Fed. R. Civ. P. 26; Fed.

18   R. Evid. 702.

19   **Qualcomm's Position**

20        Dr. Huber is an expert on the development of cellular standards, the ETSI IPR Policy and

21   industry practice and understanding relating thereto.  The FTC did not move to exclude any

22   portion of Dr. Huber's expert testimony by August 30, 2018, the deadline for the Parties to file

23   motions to exclude expert testimony.  (ECF No. 678.)  Further, each party was limited to two

24   motions to exclude expert testimony, and the FTC filed two such motions, neither relating to

25   Dr. Huber.  (*See* ECF Nos. 788, 790.)  The FTC should not be permitted to evade the Court's

26   scheduling order and numerical limit, without leave from the Court, by raising at trial a broad

27   objection to the scope of Dr. Huber's expert testimony.  In any event, the FTC's objection is not

28   well-taken.  Aside from the fact that Dr. Huber's experience is not the sole basis for his expert

1  testimony, Federal Rule of Evidence 702 expressly permits an expert to testify on the basis of his

2  "experience" (in addition to the other bases for Dr. Huber's testimony), and Dr. Huber is qualified

3  to offer expert testimony on the topics addressed by his expert report, as he has done in several

4  other cases.  *E.g., TCL Commc'n Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson,* No.

5  8:14-CV-00341 JVS-DFMx (C.D. Cal.); *Evolved Wireless, LLC v. Apple, Inc.,* No. 15-CV-542-

6  SLR-SRF (D. Del.); *In the Matter of Certain 3G Mobile Handsets & Components Thereof,* Inv.

7  No. 337-TA-613 (ITC).  Qualcomm reserves the right to oppose any objection to Dr. Huber's

8  testimony on these or any other grounds.

9  • Declaration and Expert Report of Bénédicte Fauvarque-Cosson

10  **FTC's Position**

11  Qualcomm's exhibit list includes the declaration and expert report of Ms. Bénédicte

12  Fauvarque-Cosson.[18]  The list suggests that Qualcomm will not seek to introduce the declaration

13  and report through a sponsoring witness, but instead will request that these materials be

14  considered under Fed. R. Civ. P. 44.1. Rule 44.1 is not a rule of evidence and cannot be used to

15  establish a basis for admission of an exhibit at trial. To the extent that the Court finds it necessary

16  to consider issues of foreign law, the FTC reserves its rights to present material appropriate for

17  consideration on such issues, including Ms. Fauvarque-Cosson's deposition testimony, and other

18  evidence of the content of foreign law.

19  **Qualcomm's Position**

20  The FTC has known that Qualcomm may seek to submit the expert report of

21  Prof. Fauvarque-Cosson pursuant to Rule 44.1 since May 11, 2018, when Qualcomm filed a

22  Notice of Intent to Raise Issues of Foreign Law that identified her expert report.  (ECF No. 737.)

23  Further, in opposing Qualcomm's Motion to Take a Trial Deposition of Prof. Fauvarque-Cosson

24  before she became a judge of the Conseil d'État of France, the FTC argued that Qualcomm would

25  not suffer significant prejudice without her testimony because "under Rule 44.1, the Court may

26  _____

27  [18] Prof. Fauvarque-Cosson was retained by Qualcomm as an expert witness and was deposed on
    August 16, 2018. The Court denied Qualcomm's Motion to take a trial deposition of

28  Prof. Fauvarque-Cosson. *See* September 21, 2018 Order Denying Qualcomm's Motion for Leave
    to Take the Trial Deposition of an Imminently Unavailable Expert Witness, ECF No. 865.

1   consider any relevant material or source in determining foreign law, whether or not it is admitted

2   into evidence".  (ECF No. 863-2 at 7.)  The FTC purports to reserve the right to submit other

3   materials for consideration under Rule 44.1, but it still has not identified any materials or

4   deposition testimony it would seek to submit.  Qualcomm reserves the right to object to any

5   materials that the FTC has not timely disclosed.

6   •   <u>Documents Subject to a Request for Judicial Notice</u>

7   ***FTC's Position***

8   Qualcomm's exhibit list includes documents containing the hearsay statements of third

9   parties, including responses to Korea Fair Trade Commission questionnaires submitted by third

10  parties. On its exhibit list, Qualcomm suggests that it will not seek to introduce these documents

11  through a sponsoring witness, but instead will request pursuant to Fed. R. Evid. 201 that the Court

12  take judicial notice of their contents. Qualcomm has not identified the specific facts that it will

13  ask the Court to judicially notice. The FTC will object to the admission, through judicial notice or

14  otherwise, of any disputed statements made out of court by third parties for the truth of the matter

15  asserted. Such statements are not appropriate for judicial notice under Fed. R. Evid. 201(b), which

16  provides that a "court may judicially notice a fact that is not subject to reasonable dispute because

17  it … is generally known within the trial court's territorial jurisdiction; or … can be accurately and

18  readily determined from sources whose accuracy cannot reasonably be questioned." *See also*

19  Court's Order Granting in Part and Denying in Part Motion to Dismiss and/or Strike, Case No.

20  17-MD-02773-LHK, ECF No. 175 at 16-17 (denying request to take judicial notice of facts in

21  Apple's Redacted First Amended Complaint in *Apple Inc. v. Qualcomm Inc.*, S.D. Cal. Case No.

22  17-CV-00108, Dkt. No. 83 where Qualcomm disputed facts contained in the complaint).  The

23  Court's judicial notice of particular undisputed facts in a document does not render other facts in

24  the document appropriate for judicial notice.

25  ***Qualcomm's Position***

26  The FTC's objection to the referenced submissions to the Korea Fair Trade Commission is

27  misplaced because the Court already took judicial notice of the submissions in connection with its

28  decision on the FTC's Motion for Partial Summary Judgment, without objection by the FTC.

1  (ECF No. 931 at 10.)  In those submissions, Qualcomm's baseband processor competitors

2  reported having no licenses (or, in one instance, a single license) to cellular SEPs.  Those

3  statements are not barred by the rule against hearsay at least because they are contrary to the

4  proprietary or pecuniary interests of those companies (Fed. R. Evid. 804(b)(3)(A)), many of

5  which have claimed that licensing baseband processor suppliers is industry practice among

6  holders of cellular SEPs or have claimed that they have been harmed by the lack of a license to

7  Qualcomm's cellular SEPs.  Further, the FTC has not shown that those statements are subject to

8  reasonable dispute after having full discovery of the companies that submitted those statements.

9               • _Testimony the FTC Asserts Is Improper Lay Opinion_

10  **_FTC's Position_**

11        The FTC is submitting a motion _in limine_ seeking an order precluding any fact witness

12  testimony relating to the importance or value of Qualcomm's patent portfolio, or how

13  Qualcomm's technical contributions or innovations compare to those of other licensors, on the

14  grounds that such testimony would constitute improper opinion testimony by a lay witness.  _See_

15  Fed. Rule Evid. 701.

16  **_Qualcomm's Position_**

17        The FTC cannot establish that any testimony to be offered by Qualcomm (1) would

18  constitute "opinion testimony" or (2) would be barred by Federal Rule of Evidence 701, which

19  permits opinion testimony by a lay witness.  The FTC apparently seeks to prevent Qualcomm

20  from introducing important testimony demonstrating the importance of its patent portfolio and its

21  innovations to cellular and non-cellular technologies.  Such testimony does not constitute

22  improper lay testimony, and Qualcomm will oppose the FTC's attempt to exclude it.

23               • _Topics the FTC Asserts Are Related to a Claim of Privilege_

24  **_FTC's Position_**

25        The FTC is submitting a motion _in limine_ seeking an order excluding evidence concerning

26  Qualcomm's internal valuation of its patents on the grounds that Qualcomm withheld discovery

27  on this topic on privilege grounds.

28

1    *Qualcomm's Position*

2         As Qualcomm indicated when the FTC previously challenged Qualcomm's claim of

3    privilege over the patent ratings.  (ECF No. 734 at 5.)  Qualcomm will offer testimony based on

4    witnesses' own experience and knowledge, not any evidence related to or informed by the patent

5    ratings.  Qualcomm will oppose the FTC's motion *in limine*.

6         **B.       Qualcomm's Statement of Disputed Evidentiary Issues**

7         Qualcomm identifies the following evidentiary issues that it understands to be disputed by

8    the FTC.

9         •       Exclusion of Evidence Provided by Huawei

10   *Qualcomm's Position*

11        Qualcomm will file a motion in *limine* to exclude testimony and documents provided by

12   Huawei Technologies, Co. and its employees. Huawei, headquartered in China, is a licensee of

13   Qualcomm, a competing baseband processor supplier, and a major competitor of Qualcomm in

14   the development of standardized technology for 5G. In this case, Huawei refused to produce

15   documents in response to a subpoena served by Qualcomm on a U.S. subsidiary or in response to

16   Letters of Request for International Judicial Assistance issued by the Court.  It voluntarily

17   produced only a small number of cherry-picked documents and completely excluded *any* relevant

18   internal documents about its licensing negotiations with Qualcomm.[19] At the FTC's request,

19   however, Huawei voluntarily made witnesses available for deposition testimony, which the FTC

20   has designated for submission at trial. During the discovery period, Qualcomm moved to strike

21   Huawei witnesses from the FTC's Rule 26 disclosures based on its failure to provide meaningful

22   discovery, and Judge Cousins denied Qualcomm's request "without prejudice to refiling as a

23   renewed motion to strike or motion *in limine* after discovery closes". (ECF No. 537.) It would be

24   fundamentally unfair to permit the FTC to rely on testimony from witnesses that refused to

25   produce anything but cherry-picked documents and that Qualcomm therefore did not have the

26   _____

[19] The FTC's comparison to another third party, Nokia, is inapt, because (to Qualcomm's
27   knowledge) Nokia did not refuse to produce broad swaths of documents in response to any
     requests by the FTC.

28

JOINT PRETRIAL STATEMENT
                                                                      Case No. 5:17-cv-00220-LHK-NMC

1    opportunity to meaningfully cross-examine.[20]

2    ***FTC's Position***

3            The FTC will oppose Qualcomm's motion. Qualcomm has not identified the specific

4    Huawei testimony it seeks to exclude or any specific way in which it has been prejudiced by the

5    discovery voluntarily provided by Huawei in this action. Like other third parties located outside

6    of the United States, Huawei voluntarily produced documents beyond those Qualcomm could

7    have obtained through the Hague Convention process. *See* Jan. 31, 2018 Joint Discovery

8    Statement, ECF No. 524 at 3.[21] The fact that Huawei did not perform a document search to

9    Qualcomm's liking as a foreign third party is not a valid basis for excluding testimony from

10   Huawei witnesses altogether. Moreover, Qualcomm's claim that it did not have the "opportunity

11   to meaningfully cross-examine" Huawei witnesses is unfounded. Huawei is a customer and

12   licensee of Qualcomm's, and Qualcomm is equally knowledgeable regarding its dealings with

13   Huawei.

14                      •       Exclusion of Evidence Provided by LG

15   ***Qualcomm's Position***

16           Qualcomm will file a motion *in limine* to exclude a document purporting to reflect the

17   "voluntary" written responses of LG  Electronics, Inc. LG is a licensee of Qualcomm that is

18   headquartered in the Republic of Korea. LG's responses are inadmissible hearsay, and LG, a

19   Qualcomm licensee with a direct financial interest in this case, has unfairly denied Qualcomm

20   *any* opportunity to cross-examine any LG witness regarding its "voluntary" responses or to

21   defend itself against LG's self-selected and self-serving written statements.  LG's "voluntary"

22   responses should therefore be excluded pursuant to Federal Rules of Evidence 403 and 802.

23   ***FTC's Position***

24

25   _____

     [20] The FTC's assertion below that Qualcomm had enough basis to examine the witnesses because
26   Huawei is a Qualcomm customer and licensee is frivolous; Qualcomm was deprived of the
     internal Huawei communications showing Huawei's true views and positions.

27   [21] For example, Qualcomm has stated it will present witnesses and testimony from Nokia at trial,
     which—similar to Huawei—is beyond the subpoena power of the Court and voluntarily produced
28   a limited set of documents in response to the Parties' requests.

The FTC will oppose Qualcomm's motion. Qualcomm's claim that it has been unfairly denied an opportunity to examine LG witnesses is a mischaracterization of the record. Both Qualcomm and the FTC had an equal opportunity to submit questions to, and request documents from LG. LG witnesses responded to questions posed by both Parties, and produced certain documents requested by Qualcomm, to the extent permitted by the Korean Central Authority.

- Exclusion of Boston Consulting Group Documents

***Qualcomm's Position***

To the extent Qualcomm is not allowed to present testimony from Mr. Varadarajan at trial (an issue covered in further detail above), Qualcomm will file a motion *in limine* to exclude documents appearing on the FTC's exhibit list that were generated by Mr. Varadarajan's employer, Boston Consulting Group, as inadmissible hearsay and based on Federal Rule of Civil Procedure 37(c). The FTC apparently will request admission of the documents on the basis of a conclusory and boilerplate declaration provided by Mr. Varadarajan, who participated in generating some but not all of the documents. The FTC, however, did not obtain nor disclose Mr. Varadarajan's declaration to Qualcomm until after the close of fact discovery and (as noted above) has opposed Qualcomm's request for Mr. Varadarajan to testify at trial concerning the documents the FTC will seek to admit. The FTC should not be permitted to sandbag Qualcomm with a late declaration while denying it the opportunity to present testimony concerning the BCG documents.

Indeed, the FTC has asserted that it "obtained the declaration from BCG in lieu of seeking the Court's leave to conduct an out-of-time deposition", but at no time did the FTC raise the possibility of seeking an out-of-time deposition of BCG with Qualcomm or with the Court.  Nor did the FTC advise Qualcomm or the Court that it supposedly faced "significant delay on BCG's part in obtaining information", as it had claimed in prior drafts of this Joint Pretrial Statement. The FTC now argues below that Qualcomm "had every opportunity" to seek BCG testimony before the deadline; so too did the FTC have every opportunity to seek such deposition or

1   declaration before the deadline.  The FTC simply chose to let the discovery cut-off expire.[22]

2   After it produced the declaration, however, the FTC argued that any further deposition of BCG or

3   Mr. Varadarajan would be prejudicial because the FTC "was bound by the Court's discovery

4   orders, which did not permit it to continue to take discovery after March 30 in search of

5   incrementally better witnesses than those identified in its Rule 26 disclosures".  (ECF No. 780 at

6   16.)  The FTC should not be permitted to evade the Court's discovery schedule to obtain

7   "incrementally better" evidence, and then seek to deny Qualcomm any opportunity to rebut it.

8          Further, the FTC has not shown that the BCG document are records of a regularly

9   conducted activity pursuant to Federal Rules of Evidence 803(6) and 902(11) or that they are

10  admissible as a statement by a Qualcomm agent within the scope of the agency relationship.  To

11  the extent Qualcomm is not allowed to present testimony from Mr. Varadarajan at trial,

12  Qualcomm will object to the admission of the BCG documents.

13  ***FTC's Position***

14         Qualcomm's objection to BCG documents created for Qualcomm's own Board of

15  Directors is not well-founded. Qualcomm itself has claimed privilege over material in certain

16  BCG documents on the grounds that BCG was acting as its agent. The declaration to which

17  Qualcomm objects is limited and straightforward, stating merely that BCG documents are

18  authentic business records containing statements made by the agent of a party opponent. The

19  underlying documents were timely produced, in at least one case from Qualcomm's own files,

20  and Qualcomm had every opportunity to seek BCG testimony about them before the fact

21  discovery deadline. The fact that Qualcomm did not do so until after the deadline, without this

22  Court's leave, is not a basis to exclude the documents.

23             •       Exclusion of Testimony by Ira Blumberg, Vice President of Litigation and

24                     Intellectual Property at Lenovo

25  ***Qualcomm's Position***

26         Qualcomm will object to certain deposition testimony by Ira Blumberg of Lenovo that

27  

28  [22] Nor may the FTC fairly blame BCG for any delay.  The FTC has been receiving documents and
testimony from BCG since 2016, during its pre-Complaint investigation.

was designated by the FTC. In the designated testimony, Mr. Blumberg (who is a fact witness and not an expert witness) offered his legal opinions concerning Qualcomm's conduct, such as whether Qualcomm had engaged in "patent misuse", whether Qualcomm licensing terms are "compliant with Qualcomm's FRAND obligations" and whether Qualcomm's conduct might constitute an "illegal tie" under the antitrust laws. The testimony should be excluded as improper opinion testimony; it is well-established that a fact witness (even one who is a lawyer) may not offer legal opinions, which "invade [] the province of the judge". *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1059 (9th Cir. 2008). The testimony is independently objectionable because the FTC has not alleged that Qualcomm violated the antitrust laws in the ways that Mr. Blumberg hypothesizes (*i.e.*, it alleges no patent misuse or illegal tie). Mr. Blumberg's testimony should be excluded.

***FTC's Position***

Mr. Blumberg testified at length regarding his involvement in Lenovo's licensing program, and most significantly, as the primary Lenovo executive who participated in licensing negotiations with Qualcomm in 2013. He offers relevant and helpful testimony based on his personal knowledge of the relevant events that transpired in connection with those negotiations. His impressions of those events and views he developed while negotiating with Qualcomm are not transformed into "legal opinions" merely because he is an attorney. To the extent Qualcomm has objections to specific testimony from Mr. Blumberg offered at trial, it should object at that time.

-      <u>FTC's Improper Designation of Investigation Materials</u>

***Qualcomm's Position***

The FTC has improperly designated "Qualcomm's responses to the FTC's Civil Investigative Demands served in In re Qualcomm Incorporated, FTC File No. 141-0199". Initially, the FTC's purported designation was made pursuant to Paragraph (D)(3) of the Court's Guidelines, which permits the designation of "deposition testimony or other discovery to be offered at trial". Qualcomm's responses to requests made by the FTC during its investigation, however, do not constitute "discovery" in this action (such as interrogatory responses or

responses to requests for admission served pursuant to the Federal Rules of Civil Procedure) that may be designated in accordance with the Guidelines.

After Qualcomm challenged the FTC's improper designations, the FTC belatedly purported to add to its exhibit list *all* of Qualcomm's responses to the FTC's Civil Investigative Demands ("CID") *as a single trial exhibit*.  The FTC did so on November 29—the day this Joint Pretrial Statement was due—even though the Court's October 24 Order required it to disclose all of its trial exhibits no later than November 9 or November 21.  The FTC has not specified which materials among the hundreds of pages of responses and large volume of Qualcomm data the FTC intends to offer as evidence, thus circumventing the limitations imposed by the Court on the number of exhibits each side is permitted to present at trial.  The FTC states that it "largely did not ask the same questions in interrogatories that it had asked in its pre-Complaint CID", but that only illustrates the prejudice to Qualcomm because (unlike the FTC) Qualcomm had no opportunity to ask the FTC questions during the investigation (and was limited to serving 15 interrogatories in this case).  Qualcomm is prejudiced by the FTC's belated, wholesale and indiscriminate designation of investigation materials, which circumvents both the Court's schedule and the Court-imposed limitations on the number of allowed trial exhibits, and should thus not be permitted.[23]

***FTC's Position***

Qualcomm's responses to the FTC's pre-complaint Civil Investigative Demand ("CID") are its own sworn admissions. There is nothing improper about the FTC's designation of Qualcomm's CID responses, and it is unclear why Qualcomm is seeking a procedural basis for the exclusion of sworn statements it made to the FTC.[24] Moreover, Qualcomm cannot be prejudiced by any alleged belated disclosure where the FTC identified Qualcomm's CID

---

[23] The FTC refers to the fact that both Parties included compilations of materials on their exhibit lists.  But, unlike the FTC, Qualcomm has listed compilations of materials that are clearly logically related and meant to be used at trial as a single exhibit (such as collections of patents Qualcomm's expert has addressed in his report).

[24] It is also surprising that Qualcomm objects to the FTC's creation of a single compilation exhibit containing all of Qualcomm's CID responses, where Qualcomm itself has included several expansive compilation exhibits on its own list.

1  responses on its initial proposed Joint Exhibit List on November 9, 2018. .

2  • FTC's Belated Disclosure of Additional Trial Exhibits

3  ***Qualcomm's Position***

4  Pursuant to the Court's October 24, 2018 Order, the Parties were required to disclose all

5  potential trial exhibits (up to 650 exhibits) by November 21, and then reduce their potential trial

6  exhibits to 450 by November 27.  On November 27 and 29, however, the FTC purported to *add*

7  trial exhibits that it had not previously disclosed.  When Qualcomm asked the FTC to identify

8  where on its trial exhibit lists the FTC had disclosed these documents, the FTC declined to do so.

9  Qualcomm abided by the Court's Order and is prejudiced by the FTC's belated addition of

10  previously undisclosed trial exhibits because (among other things) it did not have any opportunity

11  to identify any witnesses, deposition testimony or other exhibits that may have been prompted by

12  the exhibits.  Qualcomm objects to the present disclosure of these proposed trial exhibits and will

13  object to any use by the FTC of these belatedly disclosed trial exhibits.

14  ***FTC's Position***

15  Qualcomm has not identified any prejudice suffered by the FTC's addition of three

16  individual trial exhibits. Two of the three additions were inadvertent:  one was a duplicate of a

17  previously disclosed exhibit, and the second was added as a result of a typographical error. Both

18  parties—including Qualcomm—have reserved their rights to make additions to the exhibit list

19  where necessary, and particularly where such additions would not prejudice the opposing party.

20  **XII.** **Bifurcation, Separate Trial of Issues**

21  The Court's April 19, 2017 Case Management Order, ECF No. 75 at 2, provided for a

22  single bench trial. The Court stated in November 2017 that the trial will address both liability and

23  remedy issues.  (*See* Nov. 15, 2017 Hr'g Tr. at 4:21-5:1.)  At the October 24, 2018 Case

24  Management Conference, the Court raised the possibility of deferring a request by the FTC for a

25  permanent injunction until after trial has concluded and only in the event that the Court finds a

26  violation on the basis of the trial record.  This issue is further addressed in briefs submitted by the

27  Parties on October 31 and November 7, 2018.

28

**XIII.  Estimate of Trial Time**

Pursuant to the Court's Case Management Orders, a bench trial will begin on Friday, January 4, 2019, and will continue for 10 trial days.  (ECF Nos. 75 at 2; 308 at 2; 922 at 2.)  Each side is limited to 25 hours for evidence, and to 30 minutes for opening statements.  (*See* ECF No. 922 at 2.)

**XIV.  Other**

**A.  High Priority Objections**

*FTC's Position*

The Court's October 24 Order limited each party to 10 high priority objections per day, addressed in no more than 6 pages. Given that the Court's October 24 Order limits the Parties to 250 joint exhibits total plus 150 exhibits per side at trial (or roughly 55 exhibits per day), the FTC has proposed further limits on the number of high priority objections that each Party may file, in order to streamline the trial.  Specifically, the FTC has proposed a limit of 5 high priority objections per side per day, amounting to roughly 1 high priority objection for every 10 documents introduced at trial.

*Qualcomm's Position*

The Court determined the number of high-priority objections allocated to each party at the October 24, 2018 Case Management Conference and memorialized it in its October 24 Order. The FTC provides no good cause for the Court to deviate from that Order.  Further, given the FTC's ongoing effort to add more documents to its individual exhibit list than contemplated by the Court (as discussed above, in connection with the joint exhibit list) and to "designate" hundreds of pages of investigation responses (subject to Qualcomm's objection, above), it would be unfair to reduce the number of high-priority objections Qualcomm may use to challenge inadmissible materials among the FTC's purported designations.  As with the numerical limit on exhibits, the FTC is again simply seeking to re-argue the Court's prior order for no good reason.

**B.  Order of Videotaped Deposition Testimony**

*FTC's Position*

The FTC has proposed that, subject to the Court's approval, videotaped deposition

testimony of a witness be presented during the case of the party proposing the designations. Specifically, the Party that has designated videotaped deposition testimony will play its designations, together with any counter-designations made for the sake of completeness, during its case. If the other Party has designated different videotaped deposition testimony from the same witness other than for the sake of completeness, that party will play such testimony during its own case, together with any counter-designations made for the sake of completeness. In each instance, the designated testimony will be played chronologically. Any testimony designated by a party, whether for completeness or otherwise, will be counted against that party's time at trial.

**Qualcomm's Position**

Qualcomm believes that it may be more efficient and helpful to the Court if the Court heard both Parties' designations of a deposition consecutively and on a single day, rather than splitting them so that separate portions of a single deposition are played in each Party's case, on different days potentially weeks apart. Qualcomm, however, defers to the Court's preferences with respect to this issue. Qualcomm agrees that any testimony designated by a party, whether for completeness or otherwise, should be counted against that party's time at trial.

Dated: November 29, 2018

*The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues of fact and law remaining to be litigated, this order shall supplement the pleadings and govern the course of trial of this action, unless modified to prevent manifest injustice*

FEDERAL TRADE COMMISSION

_s/ Jennifer Milici_ _____
Jennifer Milici
Wesley G. Carson
J. Alexander Ansaldo
Joseph R. Baker
Elizabeth A. Gillen
Daniel Matheson
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
(202) 326-2912; (202) 326-3496 (fax)
jmilici@ftc.gov

**_Attorneys for Federal Trade Commission_**

CRAVATH, SWAINE & MOORE LLP

By:   _s/ Gary A. Bornstein_ _____

Gary A. Bornstein
Yonatan Even
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Tel: (212) 474-1000
Fax: (212) 474-3700
gbornstein@cravath.com
yeven@cravath.com

Robert A. Van Nest
Eugene M. Paige
Justina Sessions
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
Facsimile: (415) 397-7188
rvannest@keker.com
epaige@keker.com
jsessions@keker.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Richard S. Taffet
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178-0060
Tel: (212) 309-6000
Fax: (212) 309-6001
richard.taffet@morganlewis.com

Willard K. Tom
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave. NW
Washington, DC 20004-2541
Tel: (202) 739-3000
Fax: (202) 739 3001
willard.tom@morganlewis.com

Geoffrey T. Holtz
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: (415) 442-1000
Fax: (415) 442-1001
geoffrey.holtz@morganlewis.com

***Attorneys for Defendant Qualcomm
Incorporated***

1

### **FILER'S ATTESTATION**

2

3

I, Gary A. Bornstein, am the ECF user whose identification and password are being used to file this Joint Status Report. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that the signatories on this document have concurred in this filing.

4

5

*s/ Gary A. Bornstein*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28