Jennifer Milici, D.C. Bar No. 987096
J. Alexander Ansaldo, Va. Bar No. 75870
Wesley G. Carson, D.C. Bar No. 1009899
Elizabeth A. Gillen, Cal. Bar No. 260667
Nathaniel M. Hopkin, N.Y. Bar No. 5191598
Kenneth H. Merber, D.C. Bar No. 985703
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
(202) 326-2912; (202) 326-3496 (fax)
jmilici@ftc.gov

*Attorneys for Plaintiff Federal Trade Commission*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, <br><br> Plaintiff, <br><br> vs. <br><br> QUALCOMM INCORPORATED, a Delaware corporation, <br><br> Defendant. | Case No. 5:17-cv-00220-LHK <br><br> **PLAINTIFF FEDERAL TRADE COMMISSION'S HIGH PRIORITY OBJECTION RESPONSES FOR CLOSING ARGUMENTS, JANUARY 29, 2019** |

1      The Federal Trade Commission ("FTC") submits the following responses to Qualcomm's high priority objections ("HPOs") to the FTC's closing argument demonstratives. The FTC has no HPOs to Qualcomm's closing argument demonstratives.

     Following the exchange of closing demonstratives and an initial meet and confer, the FTC made several changes to its closing demonstratives in response to Qualcomm's stated concerns. Multiple rounds of meet and confer followed, with the FTC ultimately agreeing to over a dozen changes in the spirit of compromise. Qualcomm, however, continues to press the below high priority objections to the FTC's citation to record evidence in its closing slides. Qualcomm's attempt to curtail the FTC's argument should be denied.

     "It is well established that a trial court has broad discretion in controlling closing arguments." *Wagner v. Cty. of Maricopa*, 747 F.3d 1048, 1059 (9th Cir. 2013) (*citing United States v. Spillone*, 879 F.2d 514, 518 (9th Cir.1989)). One of the primary reasons a trial court will confine a party's closing argument is to uphold its duty to "prevent any improper arguments" that may confuse a jury. *See Peterson v. Tri-Cty. Metro. Transp. Dist. of OR*, 333 F. App'x 312, 313 (9th Cir. 2009) (citation omitted) (finding district court was well within discretion to confine closing argument where it may have conflicted with jury instructions). Such concerns are less pronounced in the bench trial context, where the finder of fact is well equipped to distinguish between statements being made for argument and those that quote or restate the evidence admitted at trial. Parties have "reasonable latitude to fashion closing arguments," which includes "the freedom to argue reasonable inferences based on the evidence." *United States v. Ruiz*, 710 F.3d 1077, 1083 (9th Cir. 2013) (citation omitted).

     All of Qualcomm's objections to the FTC's demonstratives are on the grounds that citations to record evidence are misleading in the context of the slide. The citations are not misleading. And, given prior disclosure of the FTC's demonstratives, Qualcomm will have the opportunity to address these points in closing. Qualcomm's objections should be overruled.

**I.     FTC's Responses to Qualcomm's HPOs**

*Response to Qualcomm HPO No. 1 (Slide 29, "Qualcomm Refused Rivals' Licensing Requests in Breach of SSO Commitments")*. Qualcomm objects that a "see also" citation to Mr.

1   Reifschneider's statements to the IRS on the FTC's demonstrative slide 29 is "misleading"

2   because the cited material supposedly does not relate to the slide's topic: Qualcomm's breach of

3   SSO commitments to make licenses available to rivals on FRAND terms. But Mr. Reifschnider's

4   statements are clearly germane to the slide's topic and not misleading. In the cited statements, Mr.

5   Reifschneider addressed Qualcomm's decision to stop granting rights to rival chip makers

6   altogether. CX6786R at Tr. 32:19-22 (ECF No. 1455-1). He noted that Qualcomm has made

7   FRAND commitments, CX6786R at Tr. 33:2-7 (ECF No. 1455-1), and so refusing to enter any

8   kind of agreement was "not a great, you know, position to be in in terms of defending yourself

9   against, you know, claims that you've broken those promises to make the technology available."

10  CX6786R at Tr. 33:11-17 (ECF No. 1455-1). In the next sentence, Mr. Reifschneider explained

11  why Qualcomm had adopted its approach of not licensing rivals: "You know, we also have a big

12  chipset business, you know, of our own, and we're also interested in protecting that, right."

13  CX6786R at Tr. 33:18-20 (ECF No. 1455-1).  These statements directly relate to Qualcomm's

14  commitments to SSOs.

15       Qualcomm appears to believe that the next two sentences of Mr. Reifschneider's

16  statement provide needed context. There, Mr. Reifschneider noted that Qualcomm would

17  sometimes, "when pressed," enter non-exhaustive agreements because competing chip makers

18  had "information that can be, you know, useful to us in terms of who they're selling their chips to,

19  so we can make sure that, you know, we know where the chips are going, and we can get our

20  royalty on the product that contains the chips." CX6786R at Tr. 33:20-34:5 (ECF No. 1455-1).

21  Qualcomm's limited willingness to enter non-exhaustive agreements to "make sure…we can get

22  our royalty" on *handsets* is entirely consistent with the FTC's argument that Qualcomm has

23  breached its SSO commitments. In fact, this additional "context" simply explains that improving

24  Qualcomm's ability to collect handset royalties on handsets containing rivals' chips protects

25  Qualcomm's chip business.

26       *Response to Qualcomm HPO No. 2 (Slide 30, "License Refusals Supported Elevated*

27  *Royalties from No License-No Chips")*. Qualcomm objects that one of Mr. Blecker's statements

28  to the IRS, cited in Slide 30 of the FTC's demonstratives, is taken out of context. The

demonstrative presents Qualcomm statements to the IRS confirming that Qualcomm could not extract desired royalties from a chip supplier because, as Mr. Blecker acknowledged, "it would be hard to convince a court that that was a fair royalty also." CX6786R at Tr. 73:20-21 (ECF No. 1455-1). That statement was played at trial, and is not misleading in the context of the slide.

Mr. Blecker addressed Qualcomm's average per-handset royalty, which he could not recall precisely and estimated at $10. He explained "you couldn't charge a ten-dollar royalty on a chipset that cost five dollars, or six dollars, or seven dollars." CX6789R at Tr. 73:10-15 (ECF No. 1455-1). Similarly, Mr. Gonell observed that the problem with trying to collect the average per-handset royalty on a chip is that "as a practical matter you can't." CX6789R at Tr. 73:16-19 (ECF No. 1455-1). In response, Mr. Blecker stated "Yeah, and it would be hard to convince a court that that was a fair royalty also." CX6786R at Tr. 73:20-21 (ECF No. 1455-1). In context, it is quite clear that Mr. Blecker is referring to Qualcomm's average per-unit handset royalty, measured in dollars, being applied to a modem chip rather than a handset. The statement is not presented in a misleading way on the FTC's demonstrative.[1] Qualcomm's objection should be overruled.

---

[1] For the Court's convenience, the full context of Mr. Blecker's statement at page 73 of the IRS meeting transcript, CX6786R at Tr. 73:10-24 (ECF No. 1455-1), is presented below:

```
10    MR. BLECKER: Yeah, but if I would average royalty on
11    all the handsets that we collect royalties on -- I don't
12    remember what it is anymore, I used to know the number -- but
13    if -- if it were ten dollars, for example, you couldn't charge
14    a ten-dollar royalty on a chipset that cost five dollars, or
15    six dollars, or seven dollars.
16    MR. GONELL:· Theoretically you could --
17    MR. BLECKER:· You could.
18    MR. GONELL:· -- but as a practical matter you can't.
19    As a practical matter it's hard.
20    MR. BLECKER:· Yeah, and it would be hard to convince
21    a court that that was a fair royalty also.
22    MR. GONELL:· Well, I know courts look at the
23    economist, and the economist will tell you the company should
24    be indifferent between those things
25    MR. HOWELL:· Right.· No, we're your silent partner.
1     We want for you to make a lot of money, for that to happen.
2     MR. BLECKER:· But it's on the handset is where the
3     money is.
```

*Response to Qualcomm HPO No. 3 (Slide 34, "Qualcomm's Anticompetitive Apple Contracts")*. Qualcomm objects to the FTC's inclusion of the phrase "Apple refrains from challenging Qualcomm's licensing model, 2007-2016," and the citations following it, on the grounds that cited testimony "does not support" the statement.

Qualcomm has not articulated to the FTC an objection that the statement itself is misleading, and there is no requirement that the FTC include on its closing argument slides a comprehensive set of all possible citations from the trial record. In any event, the cited testimony *does* support the statement that Apple refrained from challenging Qualcomm's licensing model. In the testimony cited, Apple's Jeff Williams responds to a reference to his prior testimony, and a further question, regarding "the reasons that Apple accepted that 7.50 [royalty] amount."  He explains that Apple agreed to Qualcomm's net royalty terms in 2011 and 2013 in part because it believed it could not "pursue [Qualcomm] legally" without losing access to Qualcomm's chips. Williams Tr. 889:4-13. Mr. Blevins testified about Apple's inability to challenge Qualcomm because of "the royalty leverage" that Qualcomm had because Apple "had to buy their chips," and Apple's later decision to "establish a supplemental chip source" to increase its ability to challenge Qualcomm's licensing model. Blevins Tr. 711:3-17 (discussing CX0534, an Apple presentation dated April 24, 2014). Apple sued Qualcomm in January 2017, only after it began buying some modem chips from Intel. See Williams Tr. 889:14-18, 890:8-9.

*Response to Qualcomm HPO No. 4 (Slide 43, "Fabian Gonell's Testimony Corroborates Prof. Shapiro's Analysis")*. Qualcomm objects that the demonstrative is "misleading" because it uses excerpts of Mr. Gonell's testimony. The demonstrative is not misleading, and Qualcomm has not even identified what portion of testimony should be included for "completeness." The demonstrative shows why Mr. Gonell's testimony corroborates Prof. Shapiro's analysis of anticompetitive harm. Qualcomm has also objected that the slide "conflates two topics," but the FTC is entitled to explain in its closing argument how the evidence that has been admitted at trial supports its expert's analysis.

On direct examination of Mr. Gonell, Qualcomm counsel pursued a long line of questioning regarding Qualcomm's no license-no chips policy and so-called "historical reasons

for why Qualcomm doesn't price the I.P. into the chip." Tr. 1417:7-8; 1421:6-7. Mr. Gonell explained that, under its current policies, every time Qualcomm sells a chip, it receives price "X" for the chip and royalty "Y" for use of Qualcomm's intellectual property. Tr. 1422:7-1423:13. This description parallels Prof. Shapiro's explanation that the "all-in price" for a modem chip is the nominal chip price plus the per-handset royalty that Qualcomm charges. Tr. 1129:12-15.

Mr. Gonell went on to explain the impact on Qualcomm if it were to sell its modem chips exhaustively: when using rival chips, OEMs could force Qualcomm to defend its royalty demands in court or arbitration. Tr. 1421:22-1423:5. If forced to litigate, Mr. Gonell explained that Qualcomm would at most recover "Y," but that would only happen if "we win on everything." Tr. 1423:2-13. Mr. Gonell then explained that, in response, Qualcomm would have to lower the all-in price that it collects from OEMs. Tr. 1423:9-16. This testimony corroborates the proposition that, by structuring its business to avoid a neutral royalty determination, Qualcomm evades an important competitive constraint on the royalty and all-in price that it can collect.

The demonstrative in question shows how Mr. Gonell's testimony corresponds with Prof. Shapiro's analysis, as reflected in Prof. Shapiro's demonstratives. Qualcomm is free to explain during its argument why it thinks the evidence is inconsistent with Professor Shapiro's analysis, or what two topics it believes are conflated by the demonstrative. But Qualcomm's disagreement with the FTC's argument does not mean that the demonstrative is misleading or should be stricken. The Court should overrule Qualcomm's objection.

Dated: January 29, 2019

Respectfully submitted,

FEDERAL TRADE COMMISSION,

_/s/ Jennifer Milici_
Jennifer Milici
J. Alexander Ansaldo
Wesley G. Carson
Elizabeth A. Gillen
Nathaniel M. Hopkin
Kenneth H. Merber
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
(202) 326-2912; (202) 326-3496 (fax)
jmilici@ftc.gov

***Attorneys for Federal Trade Commission***