ANDREW C. FINCH
*Principal Deputy Assistant Attorney General*

DAVID L. ANDERSON (CABN 149604)
*United States Attorney*

MICHAEL F. MURRAY
*Deputy Assistant Attorney General*

WILLIAM J. RINNER
*Chief of Staff and Senior Counsel*

DANIEL E. HAAR
*Acting Chief, Competition Policy & Advocacy Section*
U.S. Department of Justice
Antitrust Division
950 Pennsylvania Avenue, N.W.
Office 3230
Washington, D.C. 20530-0001
(202) 598-2846
daniel.haar@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br>    Plaintiff,<br><br>v.<br><br>QUALCOMM INCORPORATED,<br>    Defendant. | Case No. 5:17-cv-00220-LHK<br><br>**STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA** |

1

STATEMENT OF INTEREST OF THE UNITED STATES
Case No. 5:17-cv-00220-LHK

## I. INTRODUCTION

The United States respectfully submits this Statement of Interest, pursuant to 28 U.S.C. § 517, to advise the Court of its interests in this matter with respect to the enforcement of the antitrust laws and the protection of competition and innovation for the benefit of consumers.[1]

The United States respectfully submits that, in the event that the Court finds liability on any of the FTC's claims, the Court should order additional briefing and hold a hearing on issues related to a remedy.[2] The United States further submits that, in fashioning a remedy, the Court should take careful consideration of all relevant issues and effects of such a remedy. That includes the principle that, although a proper remedy must restore any competition lost due to actions found to have violated the antitrust laws, a remedy should work as little injury as possible to other public policies. The United States underscores, however, that it takes no position at this time on the underlying merits of the FTC's claims or on any other issues related to the Court's pending determination of liability.

## II. BACKGROUND

The Federal Trade Commission filed this action on January 17, 2017, alleging that various practices of Qualcomm related to its licensing of patents essential for technological standards involving cellular telephones and its sales of baseband processors (or "chips") violated Section 5 of the FTC Act, which is largely premised on legal standards incorporated from

---

[1] Pursuant to 28 U.S.C. § 517, "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in any court of the United States, or in a court of a State, or to attend to any other interest of the United States." The filing of a Statement of Interest pursuant to § 517 does not constitute intervention and does not make the United States a party to the proceeding.

[2] Nothing in this Statement of Interest is intended to apply to a case where a defendant does not dispute the appropriate remedy and agrees to a proposed consent judgment with the government. *See* 15 U.S.C. § 16(b)–(h).

Section 2 of the Sherman Act.[3]  *See* Complaint ¶ 147.

In the parties' Joint Pretrial Statement, the FTC requested that if Qualcomm is found liable for violating the FTC Act, it should be ordered (among other things) to renegotiate its existing licensing agreements—a request that does not appear to be limited to those licenses affected by Qualcomm's allegedly anticompetitive practices in the relevant markets.  *See* Joint Pretrial Statement at 3.  The United States understands that the now-completed trial itself focused almost exclusively on issues related to liability, and the Court has not requested post-trial briefing or scheduled a post-trial hearing on remedy.  The Court did, however, indicate a willingness to entertain briefing and potentially discovery on the issue of remedy if it finds for the FTC on liability.[4]

### III. ARGUMENT

#### A. If the Court Finds Liability, an Evidentiary Hearing Is Necessary Before the Imposition of a Remedy

If the Court finds that Qualcomm has violated the FTC Act, it should permit additional briefing and schedule an evidentiary hearing to resolve any disputes regarding the scope and impact of injunctive relief.  "It is a cardinal principle of our system of justice that factual disputes must be heard in open court and resolved through trial-like evidentiary proceedings."  *United States v. Microsoft Corp.*, 253 F.3d 34, 101 (D.C. Cir. 2001).  In antitrust trials, as in other civil cases, therefore, "[a] party has the right to judicial resolution of disputed facts not just as to the liability phase, but also as to appropriate relief."  *Id.*  In *Microsoft*, the D.C. Circuit reversed the

---

[3] Even though the FTC does not directly enforce the Sherman Act, courts have held that a violation of the Sherman Act constitutes an unlawful "unfair method of competition" under Section 5 of the FTC Act, 15 U.S.C. § 45. *See, e.g.*, *FTC v. Cement Inst.*, 333 U.S. 683, 691–93 (1948).  The United States takes no position on the contours of the FTC Act's prohibition.

[4] *See* Oct. 24, 2018 Hr'g Tr. at 38:23–40:4.

district court's order of divestiture in a government case alleging violations of Section 2 of the Sherman Act because, among other independent reasons, the court failed to hold an evidentiary hearing despite Microsoft's request for one.  The court of appeals explained that "a trial on liability . . . does not substitute for a relief-specific evidentiary hearing unless the matter of relief was part of the trial on liability." *Id.*  There are "exceptions to the requirement for an evidentiary hearing only when facts are not in dispute or when parties waive an evidentiary hearing." *Idaho Watersheds Project v. Hahn*, 307 F.3d 815, 830 (9th Cir. 2002); *see also Chicago Bridge & Iron Co. N.V. v. FTC*, 534 F.3d 410, 442 (5th Cir. 2008) (hearing generally required where "new evidence was not presented at trial or important factual issues were not resolved by the trier of fact in respect to the remedy").

Holding a hearing on the appropriate remedy is vital in monopolization cases because the obligations courts impose often have far-reaching effects and can re-shape entire industries.[5]  As one previous head of the Antitrust Division put it, "Section 2 remedies should not crush a tiger's spirit; they should train, not tame. Among other things, this means that equitable remedies should not interfere with the defendant's innovation incentives going forward."  Thomas O. Barnett, *Section 2 Remedies: What to Do After Catching the Tiger by the Tail*, 76 Antitrust L.J. 31, 35 (2009).  The effects of an antitrust remedy, however, are not always intended; if overly broad, a remedy ultimately may cause harm to competition and consumers.  *See* 3 Philip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 653e, at 152 (4th ed. 2016) ("Wholly apart from fairness, . . . a policy [of far reaching equitable sanctions] would undesirably deter firms from engaging in superficially restrictive conduct that is in fact reasonably necessary to competition on the

---

[5] By contrast, a separate hearing on remedies may be unnecessary in a typical challenge to an unconsummated merger under Section 7 of the Clayton Act, 15 U.S.C. § 18, where the predominant effect of an injunction would be to preserve the status quo ante.

merits."); *see also* William F. Baxter, *Separation of Powers, Prosecutorial Discretion, and the 'Common Law' Nature of Antitrust Law*, 60 Tex. L. Rev. 661, 699 (1982) (discussing how antitrust judgments can "unreasonably restrain competition").

Indeed, there is a plausible prospect that an overly broad remedy in this case could reduce competition and innovation in markets for 5G technology and downstream applications that rely on that technology.[6] Such an outcome could exceed the appropriate scope of an equitable antitrust remedy. Moreover, it has the distinct potential to harm rather than help competition.

For these reasons, the United States respectfully submits that this Court should order additional briefing and hold an evidentiary hearing, focused on these and other remedial issues.

**B. Antitrust Remedies Should Do as Little Harm as Possible to Other Public Policies**

It is black-letter antitrust law that, upon a finding of liability, "[a]ntitrust relief should unfetter a market from anticompetitive conduct and pry open to competition a market that has been closed by defendants' illegal restraints." *Ford Motor Co. v. United States*, 405 U.S. 562, 577–78 (1972). Although antitrust law violators "must expect some fencing in" from a remedy that fully restores competition, *Otter Tail Power Co. v. United States*, 410 U.S. 366, 381 (1973), "[c]ourts are not authorized in civil proceedings to punish antitrust violators." *United States v. E. I. du Pont de Nemours & Co.*, 366 U.S. 316, 326 (1961). For the same reasons, antitrust

---

[6] Internal Apple documents that recently became public describe how, in an effort to "[r]educe Apple's net royalty to Qualcomm," Apple planned to "[h]urt Qualcomm financially" and "[p]ut Qualcomm's licensing model at risk," including by filing lawsuits raising claims similar to the FTC's claims in this case. Reed Albergotti, *Apple Said Qualcomm's Tech Was No Good. But in Private Communications, It Was 'the Best.'*, Wash. Post, Apr. 19, 2019, https://www.washingtonpost.com/technology/2019/04/19/apple-said-qualcomms-tech-was-no-good-private-communications-it-was-best. One commentator has observed that these documents "potentially reveal[] that Apple was engaging in a bad faith argument both in front of antitrust enforcers as well as the legal courts about the actual value and nature of Qualcomm's patented innovation." *Id.*

remedies do not properly redress consumer harms that stem from factors other than a loss of competition.

Nevertheless, because antitrust relief is equitable in nature, a court must take into account various public and private concerns beyond competition when crafting a remedy.  In *United States v. E. I. du Pont de Nemours & Co.*, the Supreme Court explained that a court in fashioning an antitrust remedy must be guided by "three dominant influences": (1) "[t]he duty of giving complete and efficacious effect to the prohibitions of the statute;" (2) "the accomplishing of this result with as little injury as possible to the interest of the general public;" and (3) "a proper regard for the vast interests of private property."  366 U.S. at 327–28.  Accordingly, although a court typically may not balance other public policies against antitrust law's express goal of protecting competition, the remedial measures it imposes to fully restore competition must do as little harm as possible to various public and private interests.  *See also Hartford-Empire Co. v. United States*, 323 U.S. 386, 409 (1945), *supplemented*, 324 U.S. 570 (1945) (in government suit for injunction, "we may not impose penalties in the guise of preventing future violations").

Because an overly broad remedy could result in reduced innovation, with the potential to harm American consumers, this Court should hold a hearing and order additional briefing to determine a proper remedy that protects competition while working minimal harm to public and private interests.

**IV.  CONCLUSION**

For the foregoing reasons, the United States respectfully submits that, if this Court finds liability on the FTC's claims, it should hold a hearing and request additional briefing, so that it carefully may consider how to fashion a proper antitrust remedy that fully restores any

competition as a result of the challenged practices, without causing harm to competition, innovation, and consumers.

DATED: May 2, 2019  Respectfully submitted,

ANDREW C. FINCH
*Principal Deputy Assistant Attorney General*
DAVID L. ANDERSON
*United States Attorney*
MICHAEL F. MURRAY
*Deputy Assistant Attorney General*
WILLIAM J. RINNER
*Chief of Staff and Senior Counsel*
DANIEL E. HAAR
*Acting Chief, Competition Policy & Advocacy Section*
U.S. Department of Justice
Antitrust Division

/s/ Andrew C. Finch
ANDREW C. FINCH