EIMER STAHL LLP
Nathan P. Eimer
neimer@eimerstahl.com
Brian Y. Chang (SBN 287757)
bchang@eimerstahl.com
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
Phone: (312) 660-7600
Fax: (312) 692-1718

*Attorneys for LG Electronics, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION<br><br>     Plaintiff,<br>v.<br><br>QUALCOMM INCORPORATED,<br>a Delaware corporation,<br><br>     Defendant. | Case No. 5:17-CV-00220-LHK-NMC<br><br>**BRIEF OF AMICUS CURIAE LG ELECTRONICS, INC. IN OPPOSITION TO QUALCOMM'S MOTION TO STAY THE JUDGMENT PENDING APPEAL** |

# INTEREST OF *AMICUS CURIAE* AND SUMMARY OF ARGUMENT

*Amicus curiae* LG Electronics, Inc., ("LGE") is a Korean electronics company and an original equipment manufacturer ("OEM") that designs, markets, and sells Cellular Handsets. Op. 3. As an OEM, LGE has suffered numerous harms resulting from Qualcomm's anticompetitive conduct in the chip industry, which this Court has detailed. That conduct, as found by this Court, has included "cutting off LGE's chip supply, threatening to withdraw technical support, threatening to require the return of software, charging higher patent royalty rates when LGE used a rival's instead of Qualcomm's chip, giving LGE chip incentive funds if LGE purchased at least 85% of its chips from Qualcomm, and giving rebates on the price of Qualcomm's chips." Op. 45. To remedy these and other violations, this Court (among other orders) enjoined Qualcomm (1) not to condition its supply of modem chips on a customer's patent license status and to negotiate license terms in good faith and in a non-discriminatory manner, op. 227; (2) to make exhaustive SEP licenses available to modem-chip suppliers on fair, reasonable, and non-discriminatory ("FRAND") terms, op. 229; and (3) not to enter express or de facto exclusive dealing agreements for the supply of modem chips, op. 229–30. In support of each of these remedies, the Court explicitly cited the risk of ongoing harm to LGE, among other businesses and consumers, as a reason justifying relief.

Because "issuance of the stay [would] substantially injure" LGE, the Court should deny Qualcomm's extraordinary motion. *Nken v. Holder*, 556 U.S. 418, 434 (2009). At this very moment, LGE and Qualcomm are negotiating several new license agreements, for CDMA, 4G, and 5G, as well as a new chip purchase agreement. Declaration of JongSang Lee, June 11, 2019 at ¶ 3, attached as Exhibit 2 to LG's Motion for Leave to File (hereinafter "Lee Decl."). Because, as this Court found, there is an extremely high risk that Qualcomm will persist in its anticompetitive conduct—and directly harm LGE and any other companies currently negotiating with Qualcomm—absent enforcement of its order, this Court should deny Qualcomm's motion.[1]

---

[1] In the interest of avoiding duplication, this brief will not repeat the arguments (which it hereby adopts) in the Federal Trade Commission's opposition to Qualcomm's motion.

# ARGUMENT

## I. A Stay Should Not Issue If It Would Substantially Injure An Interested Non-Party

"[A] stay pending appeal is an extraordinary remedy." *In re Rivera*, No. 5:15-CV-402-EJD, 2015 WL 6847973, at *2 (N.D. Cal. Nov. 9, 2015). It is not "a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009). "Instead, it is an exercise of judicial discretion." *Luna v. O'Keefe*, No. 17-CV-02129-LHK, 2018 WL 2197555, at *1 (N.D. Cal. May 14, 2018) (Koh, J.) (citation omitted). Thus a court must evaluate the traditional stay factors "with obligatory restraint." *In re Rivera*, 2015 WL 6847973, at *2.

One such factor—which Qualcomm does not mention—is "whether issuance of the stay will substantially injure the other parties interested in the proceeding." *Luna*, 2018 WL 2197555, at *1; *see Nken*, 556 U.S. at 434. Critically, "[t]his test permits the Court to consider the harm to non-parties." *E. Bay Sanctuary Covenant v. Trump*, 354 F. Supp. 3d 1085, 1092 (N.D. Cal. 2018) (citing *Latta v. Otter*, 771 F.3d 496, 500 (9th Cir. 2014); *Lair v. Bullock*, 697 F.3d 1200, 1215 (9th Cir. 2012)). Thus, this Court in *East Bay Sanctuary Covenant* declined to stay its injunction of an immigration rule that threatened non-party asylum seekers with "significant harms." 354 F. Supp. 3d at 1088, 1092. Applying the same logic, a federal court in Texas denied a debtor's motion to stay a bankruptcy order, reasoning that a stay "would substantially injure interested third parties—specifically, the mortgage company and mortgage servicing company." *Lall v. Powers*, No. 3:19-CV-0398-B, 2019 WL 2249717, at *3 (N.D. Tex. May 24, 2019). And a federal judge in Ohio granted a stay in a tax case precisely to avoid harming "third parties." *NorCal Tea Party Patriots v. Internal Revenue Serv.*, No. 1:13-cv-341, 2015 WL 13187292, at *1 (S.D. Ohio July 15, 2015). These decisions—of which there are many—underscore the significance of non-party impact in the stay analysis.

## II. Issuing a Stay Would Substantially Injure LGE By Depriving It of the Protection Afforded by Four of This Court's Lawful Remedies

Of the Court's five injunctive orders, four in particular will help protect LGE from Qualcomm's ongoing anticompetitive practices. Conversely, staying those orders would "substantially injure" LGE. *Luna*, 2018 WL 2197555, at *1.

*First*, without this Court's order that Qualcomm "not condition the supply of modem chips on a customer's patent license status" and that it "negotiate or renegotiate license terms with customers in good faith under conditions free from the threat of lack of access to or discriminatory provision of modem chip supply or associated technical support or access to software," op. 227, LGE will be substantially harmed.

For years, Qualcomm has targeted LGE and other OEMs with precisely these tactics—and will do so again, if the Court lets it. As this Court explained, Qualcomm's threats to "OEMs' chip supply are an ongoing company practice that began with Qualcomm's co-founder, Dr. Irwin Jacobs." Op. 210.  In 2004, Jacobs threatened to "stop accepting LGE purchase orders," "cease all shipments of" chips, "withdraw all of its substantial . . . technical support," and "require that LGE return to QUALCOMM all versions and derivations of [its] WCDMA ASIC software." Op. 48.  Jacobs testified that Qualcomm followed through on this threat and "did not ship to [LGE] the chips that were specified." Op. 48.  LGE negotiated an end to this dispute from a position of extreme weakness, given that "LGE had no option but to agree to whatever Qualcomm demanded" lest it endanger LGE's "mobile business."  Op. 49 (citation omitted).  It gave in to Qualcomm's high royalty rates and other demands, including chip incentive funds, "effectively result[ing] in [Qualcomm's] exclusivity" as LGE's chip supplier. Op. 49. This pattern repeated in later negotiations, which the Court has described.  Op. 45–52.

Without the benefit of this Court's injunction, LGE will immediately face the same threats.  Lee Decl. ¶ 8. LGE's agreements with Qualcomm expired on December 31, 2018, and the two companies are currently negotiating new license agreements for CDMA, 4G, and 5G, as well as a new chip purchase agreement. Lee Decl. ¶¶ 3, 6.  To protect LGE in continuing negotiations over the next set of long-term agreements, it is necessary—as this Court found—to prohibit "Qualcomm from cutting off [LGE's] chip supply, technical support, and access to software ensures that Qualcomm and [LGE] can negotiate patent license terms that reflect the fair value of Qualcomm's patents, rather than terms that reflect Qualcomm's monopoly power in modem chips."  Op. 228.  Otherwise, Qualcomm will once again "exercise its dominance to extract unreasonably high royalties," and will "continue to charge unreasonably high royalty rates would perpetuate its artificial surcharge on rivals' chips, which harms rivals, OEMs, and consumers." Op. 228.

*Second*, LGE also faces substantial harm if this Court puts on hold its order that Qualcomm "make exhaustive SEP licenses available to modem-chip suppliers on fair, reasonable, and non-discriminatory ('FRAND') terms and to submit, as necessary, to arbitral or judicial dispute resolution to determine such terms." Op. 229.

This licensing strategy has harmed LGE in at least two ways. To start, because "[t]his practice has promoted rivals' exit from the market, prevented rivals' entry, and delayed or hampered the entry and success of other rivals," Qualcomm can demand—and has demanded—"unreasonably high royalty rates" from LGE and other OEMs. Op. 114. Indeed, LGE testified (and this Court found) that Qualcomm's favored royalty is "so high that it could lead to an aggregate royalty that would make it impossible to generate profit on handsets." Op. 175. Making matters worse, Qualcomm's unreasonably high royalty rates have "continue[d] the cycle of anticompetitive harm because royalty revenues fund" the "enormous chip incentive funds." Op. 189.

Reduced competition in modem chips caused by Qualcomm's conduct is not theoretical, it can be seen in the market. Within hours of the announcement of Qualcomm's April 16, 2019, settlement of Apple's sprawling suit against it, which included a multiyear chipset supply deal with Apple, Intel announced its exit from the 5G modem chip market. *See* Angela Moscaritolo, "Intel Exits 5G Modem Business Following Apple, Qualcomm Deal", PC Magazine (April 17, 2019) *available at* pcmag.com/news/367829/intel-exits-5g-modem-business-following-apple-qualcomm-deal. As Intel's Chief Executive Bob Swan stated, "In light of the announcement of Apple and Qualcomm, we assessed the prospects for us to make money while delivering this [5G] technology for smartphones and concluded at the time that we just didn't see a path." Asa Fitch, "Intel Trims Financial Forecast on Weaker Demand From Cloud, China", Wall Street Journal (April 25, 2019) *available at* wsj.com/articles/intel-trims-financial-forecast-for-year-11556225435. Moreover, Qualcomm's licensing practices have also harmed LGE even more directly, by preventing it from entering the chip supply market in the first place, as this Court expressly found. Op. 122 (describing Qualcomm's refusal to license LGE in 2015, which caused LGE not to "enter[ ] the market as a modem chip supplier").

Without the protection afforded by this Court's second order, LGE will once again face the prospect of unreasonably high royalty rates and an inability to enter the chip supplier market. Lee Decl.

¶ 9. In the agreements that LGE and Qualcomm are currently negotiating, it is obviously important that LGE secure terms that do not make it impossible for it to generate a profit on handsets. By opening up the chip-supply market and weakening Qualcomm-erected barriers to entry, the order clears a path to more reasonable terms. The order also ensures that, should it wish to, LGE may enter the chip market "without fear of an infringement action." Op. 229.

**Third**, the Court's injunction also protects LGE by forbidding Qualcomm from entering into "express or de facto exclusive dealing agreements for the supply of modem chips." Op. 229–31. Qualcomm's power to demand such agreements forces LGE to choose between paying unreasonably high prices and having no outside options for chipsets. Lee Decl. ¶ 10. This Court found that Qualcomm very recently compelled OEMs to enter into exclusive dealing arrangements, such as its conditioning of Samsung's rebates on chipset exclusivity. Op. 219. If a stay issues, Qualcomm will surely revert to squeezing LGE and other OEMs through similar arrangements in order to "foreclose competition in [the] emerging [5G modem chip] market." Op. 230. Since LGE is currently negotiating long-term agreements with Qualcomm at this very moment, this threat is far from hypothetical.

**Fourth**, the Court's injunction also protects LGE by forbidding Qualcomm from interfering with LGE's ability to communicate with government agencies about potential law enforcement or regulatory matters. This is important because LGE has currently appeared in support of the Korea Fair Trade Commission's (KFTC) case against Qualcomm. As the Court noted, Qualcomm used its leverage against Samsung to force it to withdraw its support of the KFTC in the same proceedings. Op. 231-32. In a related development, Apple also formally withdrew its support of the KFTC in the same proceedings within a few hours of signing an agreement settling its litigation with Qualcomm. *See* Choi Hyung-jo, "Apple exits Qualcomm-KFTC trial in South Korea after reaching settlement," MLex Market Insight (Apr. 17, 2019). Without protection from the Court's order, Qualcomm might seek to retaliate against LGE for its participation in support of the KFTC. Lee Decl. ¶ 11.

## CONCLUSION

Because "issuance of the stay will substantially injure" LGE, to say nothing of Qualcomm's other customers and competitors, the Court should decline to grant such an extraordinary remedy. *Luna*, 2018 WL 2197555, at *1.

| | |
|---|---|
| Dated: June 11, 2019 | Respectfully submitted, |
| | By:  /s/ Nathan P. Eimer |
| | Nathan P. Eimer |
| | neimer@eimerstahl.com |
| | Brian Y. Chang (SBN 287757) |
| | bchang@eimerstahl.com |
| | EIMER STAHL LLP |
| | 224 South Michigan Avenue |
| | Suite 1100 |
| | Chicago, IL 60604 |
| | Phone: (312) 660-7600 |
| | Fax: (312) 692-1718 |
| | |
| | *Attorneys for* |
| | *LG Electronics, Inc.* |